1  JEFFREY H. WOOD
   Acting Assistant Attorney General
2  U.S. Department of Justice
   Environment & Natural Resources Division
3  NORMAN L. RAVE, JR. (D.C. 431602)
   Environmental Defense Section
4  601 D Street, NW, Suite 8000
   Washington, DC 20004
5  Tel.     (202) 616-7568
   norman.rave@usdoj.gov
6
7
   *Attorneys for Defendants*
8
9
              **IN THE UNITED STATES DISTRICT COURT**
10
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11
                   **SAN FRANCISCO DIVISION**
12
13
   | FOOD & WATER WATCH, INC, et al., | Case No.: 17-cv-02162-EMC |
14 |  | |
   | Plaintiffs, | |
15 |  | FEDERAL DEFENDANTS' |
   | v. | NOTICE OF MOTION AND MOTION |
16 |  | TO DISMISS |
   | U.S. Environmental Protection Agency, | |
17 | et al., | DATE:   November 30, 2017 |
   |  | TIME:    1:30 pm |
18 | Defendants. | Courtroom:  5, 17th Floor |
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

Please take notice that on November 30, 2017 at 1:30 p.m. or as soon thereafter as counsel can be heard, Defendants United States Environmental Protection Agency ("EPA") and Scott Pruitt, EPA Administrator, in his official capacity, will move this Court, located in Courtroom 5, 17th Floor, United States Court House located at 450 Golden Gate Avenue, San Francisco, California, to dismiss all claims in the present litigation.

## RELIEF REQUESTED

The relief Defendants seek is dismissal of all claims in the present matter.

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................1

    A.  Statutory and Regulatory Background ..........................................................2

       1. TSCA Section 6 ..............................................................................2

       2. TSCA Section 21 ............................................................................4

    B.  Factual Background ......................................................................................6

ARGUMENT .............................................................................................................................7

I.   STANDARD OF REVIEW ......................................................................................7

II.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS'
PETITION ON ITS FACE DOES NOT PRESENT A BASIS FOR EPA TO
PROCEED WITH THE REQUESTED RULEMAKING AND THEREFORE
THERE IS NO BASIS FOR GRANTING RELIEF .................................................8

CONCLUSION ........................................................................................................................14

i

## TABLE OF AUTHORITIES

**Cases**

*Auer v. Robbins,*
   519 U.S. 452 (1997) ........................................................................ 8

*Chevron, U.S.A., Inc. v. NRDC,* ("*Chevron*"),
   467 U.S. 837 (1984) ................................................................... 7, 11

*Christopher v. Harbury,*
   536 U.S. 403 (2002) ........................................................................ 7

*Kentuckians for the Commonwealth, Inc. v. Rivenburgh,*
   317 F.3d 425 (4th Cir. 2003) ........................................................ 8

*Neitzke v. Williams,*
   490 U.S. 319 (1989) ........................................................................ 7

*Rybachek v. EPA,*
   904 F.2d 1276 (9th Cir. 1990) ..................................................... 7

*Trumpeter Swan Society v. EPA,*
   774 F.3d 1037 (D.C. Cir. 2014) ................................................ 11

*United States v. Larionoff,*
   431 U.S. 864 (1977) ........................................................................ 8

**Statutes**

15 U.S.C. § 2602(2) ........................................................................... 2

15 U.S.C. § 2602(4) ...................................................................... 3, 9

15 U.S.C. § 2605 ................................................................................. 2

15 U.S.C. § 2605(a)-(c) .................................................................... 8

15 U.S.C. § 2605(a) .................................................................. 1, 3, 5

15 U.S.C. § 2605(a) (1976) ............................................................. 5

ii

15 U.S.C. § 2605(b) .................................................................................................... 2

15 U.S.C. § 2605(b)(1)(A) .......................................................................................... 2

15 U.S.C. § 2605(b)(1)(C) .......................................................................................... 2

15 U.S.C. § 2605(b)(2)(A)-(B) .................................................................................. 12

15 U.S.C. § 2605(b)(2)(A) .......................................................................................... 4

15 U.S.C. § 2605(b)(2)(B)-(C) .................................................................................... 4

15 U.S.C. § 2605(b)(3)(C) .......................................................................................... 4

15 U.S.C. § 2605(b)(4) ................................................................................................ 2

15 U.S.C. § 2605(b)(4)(A) ..................................................................................... 3, 6

15 U.S.C. § 2605(b)(4)(B) .......................................................................................... 2

15 U.S.C. § 2605(b)(4)(C)(ii) ...................................................................................... 4

15 U.S.C. § 2605(b)(4)(E) ........................................................................................... 4

15 U.S.C. § 2605(b)(4)(E)(i) ...................................................................................... 12

15 U.S.C. § 2605(b)(4)(F) ........................................................................................... 3

15 U.S.C. § 2605(b)(4)(F)(i) ....................................................................................... 9

15 U.S.C. § 2605(b)(4)(G) .......................................................................................... 3

15 U.S.C. § 2605(c)(1) ....................................................................................... 2, 3, 12

15 U.S.C. § 2605(i)(1) ........................................................................................... 3, 8

15 U.S.C. § 2620 ......................................................................................................... 1

15 U.S.C. § 2620(b)(1) ................................................................................................ 4

15 U.S.C. § 2620(b)(4)(A) .......................................................................................... 5

15 U.S.C. § 2620(b)(4)(B) .......................................................................................... 5

15 U.S.C. § 2620(b)(4)(B)(ii) (1976) ......................................................................... 5

15 U.S.C. § 2620(b)(4)(B)(ii) ............................................................................ 6, 8, 13

15 U.S.C. § 2625(c) ................................................................................................... 13

15 U.S.C. § 2625(c)(1) ................................................................................................ 2

15 U.S.C. § 2625(c)(2)(A) ........................................................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................ 1, 7

Civil L.R. 7-2 ...................................................................................................... 1

**Federal Register**

82 Fed. Reg. 11,878 (Feb. 27, 2017) ........................................ 4, 6, 7, 12, 13, 14

82 Fed. Reg. 33,726 (July 20, 2017)................................................... 4, 9, 10

**Other Authorities**

162 Cong. Rec. S3519 (June 7, 2016) ............................................................... 9

https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/how-epa-evaluates-
    safety-existing-chemicals ............................................................................ 2

https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/prioritizing-existing-
    chemicals-risk-evaluation ........................................................................... 2

https://www.epa.gov/tsca-inventory/about-tsca-chemical-substance-inventory .............. 12

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7-2, defendants United States Environmental Protection Agency and Scott Pruitt, Administrator, in his official capacity (collectively "EPA") respectfully submit this Motion to Dismiss.

## I.    INTRODUCTION

Plaintiffs in this action seek an order compelling EPA to initiate a rulemaking pursuant to section 6(a) of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2605(a), to ban the introduction of "fluoridation chemicals" into drinking water.  This action is brought pursuant to TSCA section 21, 15 U.S.C. § 2620, which provides that any person may petition EPA to commence a section 6(a) rulemaking, and further provides that, if EPA denies the petition, the petitioner may commence an action in district court for de novo review of its administrative petition.[1]  If the Court finds that the plaintiff has demonstrated by a preponderance of the evidence that the chemical substance poses "an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation, under the conditions of use," it shall order EPA to initiate the requested rulemaking.

This case should be dismissed for failure to state a claim on which relief can be granted because Plaintiffs' administrative petition on its face does not provide sufficient information for either EPA or the Court to determine that a chemical substance poses an unreasonable risk under the conditions of use of the substance because (1) the petition, as submitted to EPA, fails to identify a specific "chemical substance," and (2) it does not address any conditions of use of "fluoridation chemicals" other than in drinking water. Accordingly, Plaintiffs' petition does not meet the minimum legal standards for the

---

[1] As described in the parties' Joint Case Management Statement, EPA believes that the Court's review of Plaintiffs' administrative petition is limited to the administrative record.  DE 23 at 4-5.

1   evaluation of chemical substances under TSCA and, therefore, as a matter of law, cannot

2   provide a basis for a determination that "fluoridation chemicals" pose an unreasonable

3   risk under the conditions of use, which is a prerequisite for relief.

4         A.      **Statutory and Regulatory Background**

5               1.      **TSCA Section 6**

6               Section 6 of TSCA, 15 U.S.C. § 2605, as amended in 2016, establishes a

7   three-step process by which EPA is to evaluate and manage the risk posed by "chemical

8   substances."[2]  *See* https://www.epa.gov/assessing-and-managing-chemicals-under-

9   tsca/how-epa-evaluates-safety-existing-chemicals.  The amended statute also requires

10  EPA to promulgate regulations to govern the process.  15 U.S.C. §§ 2605(b)(1)(A),

11  (b)(4)(B).  The first step in the process is for EPA to screen chemical substances and

12  classify them as high-priority or low-priority.  15 U.S.C. § 2605(b); *see*

13  https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/prioritizing-existing-

14  chemicals-risk-evaluation.  EPA must complete a prioritization decision on a chemical

15  within 9-12 months of initiating the prioritization process for that chemical.  15 U.S.C.

16  § 2605(b)(1)(C).  Chemical substances classified as high-priority move on to the second

17  step in the process.

18              The second step is a risk evaluation of the high-priority chemical substance.  *Id.*

19  § 2605(b)(4).  In conducting a risk evaluation, EPA is required to, among other things,

20  integrate and assess available information on hazards and exposures, including exposures

21  ——————————————————

22  [2] Subject to specified exceptions, a "chemical substance" is "any organic or inorganic
    substance of a particular molecular identity, including -- (i) any combination of such
23  substances occurring in whole or in part as a result of a chemical reaction or occurring in
    nature and (ii) any element or uncombined radical."  15 U.S.C. § 2602(2).  TSCA section
24  26(c) gives EPA broad discretion to group chemical substances into categories and
    authorizes EPA to take any actions authorized by statute – including the section 6
25  prioritization, risk evaluation and regulatory actions described above – by category,
    rather than by individual chemical substance.  15 U.S.C. § 2625(c)(1).  EPA may
26  categorize chemical substances based on similarity in molecular structure, similarity in
    use, or any other basis suitable for purposes of TSCA.  *Id.* § 2625(c)(2)(A).
27

28

1   to potentially exposed or susceptible subpopulations identified as relevant by EPA, for

2   the conditions of use of the chemical substance; not consider costs or other nonrisk

3   factors; and take into account where relevant the likely duration, intensity, frequency, and

4   number of exposures under the conditions of use of the chemical substance.  *Id*.

5   § 2605(b)(4)(F). The objective of the risk evaluation is to determine whether the chemical

6   substance "presents an unreasonable risk of injury to health or the environment, without

7   consideration of costs or other nonrisk factors . . . under the conditions of use."  *Id*.

8   § 2605(b)(4)(A).  A risk evaluation must be completed within 3 years of initiation,

9   although EPA may extend this deadline by up to six months.  *Id*. § 2605(b)(4)(G).

10       If EPA determines that the chemical substance does not present an unreasonable

11  risk under the conditions of use, EPA must issue an order incorporating that

12  determination.  15 U.S.C. § 2605(i)(1).  On the other hand, if EPA determines that a

13  chemical does present an unreasonable risk under the conditions of use, step 3 of the

14  process is triggered, in which EPA is required to promulgate a regulation imposing those

15  requirements that EPA determines will eliminate the unreasonable risk.  *Id*. § 2605(a).  A

16  section 6(a) rulemaking must be completed within two years of completion of the risk

17  evaluation; EPA may extend this deadline for up to two years, although the total length of

18  extensions of the deadlines for the risk evaluation and section 6(a) rulemaking for a

19  chemical may not exceed two years.  *Id*. § 2605(c)(1).

20       Central to this scheme is the concept of "conditions of use."  The conditions of

21  use of a chemical substance are "the circumstances, as determined by the Administrator,

22  under which a chemical substance is intended, known, or reasonably foreseen to be

23  manufactured, processed, distributed in commerce, used, or disposed of."  15 U.S.C.

24  § 2602(4).  In promulgating the regulations required by the 2016 TSCA Amendments to

25  implement the new risk evaluation procedure, EPA concluded that the statute gives the

26  Agency some discretion to limit the conditions of use included within the scope of its

27  evaluation.  However, the Agency explained that, "[a]s EPA interprets the statute, the

28  Agency is to exercise that discretion consistent with the objective of conducting a

3

1   technically sound, manageable evaluation to determine whether a chemical substance –

2   *not just individual uses or activities* – presents an unreasonable risk."  82 Fed. Reg.

3   33,726, 33,729 col. 1 (July 20, 2017) (emphasis added).

4          The statute also establishes minimum throughput requirements for this 3-step

5   process.  EPA was required to have ten risk evaluations ongoing by December 2016, 15

6   U.S.C. § 2605(b)(2)(A),[3] and must maintain a steady state of at least 20 high-priority

7   chemicals undergoing risk evaluation beginning in December 2019.  *Id.*

8   §§ 2605(b)(2)(B)-(C), 2605(b)(3)(C).  In addition, TSCA section 6 authorizes

9   manufacturers to request risk evaluations, and if EPA receives a sufficient number of

10  compliant requests, EPA must be conducting between five and ten such risk evaluations

11  beginning in December 2019.  *Id.* §§ 2605(b)(4)(C)(ii), 2605(b)(4)(E).

12                **2.      TSCA Section 21**

13         Section 21 of TSCA provides, in relevant part, that "[a]ny person" may petition

14  EPA to initiate a proceeding to promulgate a regulation under section 6(a).  15 U.S.C.

15  § 2620(a).  The petition must "set forth the facts which it is claimed establish that it is

16  necessary to issue . . . a rule under . . . section [6]."  15 U.S.C. § 2620(b)(1).  Such a

17  petition, in effect, asks EPA to jump immediately to step 3 of the statutory process

18  described above and promulgate a regulation concerning the manufacture, processing,

19  distribution in commerce, use, or disposal of a chemical substance.  Accordingly, EPA

20  has determined that TSCA section 21 requires a petition for a section 6(a) rule to present

21  a scientific basis for action that is reasonably comparable, in its quality and scope, to a

22  risk evaluation under TSCA section 6(b), such that it would provide the basis for a

23  regulation that fully complies with the requirements of section 6(a).  82 Fed. Reg. 11,878,

24  11,880 col. 2 (Feb. 27, 2017).

25

26  _____

27  [3] These ongoing first ten risk evaluations are for 1,4-Dioxane, 1-Bromopropane,
    Asbestos, Carbon Tetrachloride, Cyclic Aliphatic Bromide Cluster, Methylene Chloride,
28  N-methylpyrrolidone, Pigment Violet 29, Tetrachloroethylene, and Trichloroethylene. 81
    Fed. Reg. 91,927, 91,928 col. 2 (Dec. 19, 2016).

4

Section 21 further provides that if EPA denies the petition, the petitioner may commence a civil action to compel EPA to initiate the requested rulemaking.  15 U.S.C. § 2620(b)(4)(A).  In such an action "the petitioner shall be provided an opportunity to have such petition considered by the court in a de novo proceeding."  *Id*. § 2620(b)(4)(B). If the plaintiff demonstrates by a preponderance of the evidence that the chemical substance or mixture presents an unreasonable risk to health or the environment under the conditions of use, the Court shall order EPA to commence the requested rulemaking.  *Id*.

Congress made important corresponding changes to sections 6 and 21 in the 2016 TSCA Amendments.  Prior to the Amendments, TSCA, including section 6(a), did not contain the phrase or concept of "conditions of use."  Rather, section 6(a) authorized rulemaking upon an EPA determination that "there is a reasonable basis to conclude that . . . a chemical substance or mixture presents or will present an unreasonable risk of injury to health or the environment."  15 U.S.C. § 2605(a) (1976) (amended 2016). Correspondingly, pre-amendment section 21 authorized a court to compel section 6(a) rulemaking if the petitioner demonstrated that "there is a reasonable basis to conclude that the issuance of [a section 6(a)] rule . . . is necessary to protect against an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2620(b)(4)(B)(ii) (1976) (amended 2016).

As described above, the amended section 6(a) authorizes rulemaking if EPA determines "in accordance with subsection [6](b)(4)(A)" (the risk evaluation provision described above as step 2 of the 3-step process) that a chemical substance presents an unreasonable risk of injury to health or the environment.  15 U.S.C. § 2605(a).  Section 6(b)(4)(A), in turn, requires EPA to conduct risk evaluations to determine "whether a chemical substance presents an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant to the risk evaluation by the Administrator, under the conditions of use."  *Id*. § 2605(b)(4)(A). Congress correspondingly amended the judicial petition portion of section 21 to align it

5

1    with these section 6 provisions, so that the finding a court must make to compel EPA

2    action tracks verbatim with this section 6(b)(4)(A) risk evaluation standard.[4]  15 U.S.C.

3    § 2620(b)(4)(B)(ii).

4        **B.    Factual Background**

5            On November 23, 2016, EPA received a petition submitted by Plaintiffs pursuant

6    to TSCA section 21 requesting that EPA ban the introduction of "fluoridation chemicals"

7    into drinking water.  Declaration of Norman L. Rave, Jr. ("Rave Decl."), Exhibit 1

8    (without attachments).  EPA denied the petition on February 17, 2017.  82 Fed. Reg.

9    11,878 (Feb. 27, 2017) (Rave Decl. Exhibit 2).  In denying the petition, EPA found that

10   the petition, on its face, did not set forth facts that provided a basis to initiate the

11   requested rulemaking.  First, the petition requested that EPA regulate "fluoridation

12   chemicals" but did not identify the specific chemical substances for which action was

13   requested.  *Id.* at 11,888 col. 1.  Thus, it did not meet the basic requirement for requesting

14   a rulemaking for a chemical substance under TSCA section 6(a), i.e., identification of the

15   chemical substance.  Nor did the petition provide the basic factual information required

16   by EPA to determine whether it would be appropriate to regulate "fluoridation

17   chemicals" as a category.  Second, the petition did not provide any analysis of any

18   conditions of use of the chemical substances covered by the petition other than use in

19   fluoridating drinking water.  *Id.* at 11,888 cols. 1-2.  Thus, it did not provide a basis under

20   the statute for regulation under section 6(a).  In this regard, EPA determined that the

21   authority in section 21(a) to petition the Agency for a rule under section 6(a) to regulate a

22   chemical must be read as authorizing petitions for rules *that would actually comply with*

23   *that section*, by eliminating any unreasonable risks presented by the chemical. 82 Fed.

24   Reg. at 11,880 col. 2.  In this regard, the statutory requirement to set forth the facts to

25   establish that it is necessary to issue the requested rule must be interpreted to require the

26   _____

27   [4] Because section 21 pertains to a citizen petition, and not a finding by the EPA
     Administrator, the language omits the phrase "identified as relevant to the risk evaluation
28   by the Administrator" found in section 6. 15 U.S.C. §§ 2605(b)(4)(A), 2620(b)(4)(B)(ii).

6

1  presentation of facts sufficient to support such a statutorily-compliant rulemaking –

2  which the petition did not do.

3       EPA also determined that, even if the petition were deemed to have met the

4  threshold statutory requirements, the data presented by the petition were not of sufficient

5  quality to demonstrate an unreasonable risk.  *Id.* at 11,882-88.  Specifically, EPA

6  concluded that "[t]he petition has not set forth a scientifically defensible basis to

7  conclude that any persons have suffered neurotoxic harm as a result of exposure to

8  fluoride in the U.S. through the purposeful addition of fluoridation chemicals to drinking

9  water or otherwise from fluoride exposure in the U.S."  *Id.* at 11,887 col. 1.

10       Plaintiffs commenced this action by filing a Complaint on April 18, 2017.  ECF

11  No. 1.

12  **ARGUMENT**

13  **I.  STANDARD OF REVIEW**

14       A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

15  sufficiency of the complaint.  *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  A

16  claim may be dismissed under Rule 12(b)(6) either because it asserts a legal theory that is

17  not cognizable as a matter of law or because it fails to allege sufficient facts to support a

18  cognizable legal claim.  *Neitzke v. Williams,* 490 U.S. 319, 325, 327-28 (1989).

19       In reviewing an agency's construction of a statute it administers, courts must first

20  decide "whether Congress has directly spoken to the precise question at issue."  *Chevron,*

21  *U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842 (1984) ("*Chevron*").  If so, "that is the end of

22  the matter; for the court, as well as the agency, must give effect to the unambiguously

23  expressed intent of Congress."  *Id.* at 842-43.  However, "if the statute is silent or

24  ambiguous with respect to the specific issue, the question for the court is whether the

25  agency's answer is based on a permissible construction of the statute."  *Id.* at 843.

26  Particular deference is due where the Agency's decision on the meaning of a statute

27  involves reconciling conflicting policies committed to the Agency's care and expertise

28  under the Act.  *Rybachek v. EPA*, 904 F.2d 1276, 1284 (9th Cir. 1990).  In addition, a

7

1   reviewing court must defer to EPA's interpretation of its own regulations unless that

2   interpretation is "plainly erroneous or inconsistent with the regulation."  *Kentuckians for*

3   *the Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 439 (4th Cir. 2003) (quoting *Auer*

4   *v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted)).  *See also*

5   *United States v. Larionoff*, 431 U.S. 864, 872 (1977).

6   **II.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS'**

7   **PETITION ON ITS FACE DOES NOT PRESENT A BASIS FOR EPA TO
      PROCEED WITH THE REQUESTED RULEMAKING AND**

8   **THEREFORE THERE IS NO BASIS FOR GRANTING RELIEF**

9        Congress amended TSCA sections 6(a)-(c) to require EPA to review chemical

10   substances in commerce to ensure that they do not present an unreasonable risk of injury

11   to health or the environment under the conditions of use.  The result of the statutory

12   process is that EPA either: (1) concludes, following risk evaluation, that the subject

13   chemical substance does not present an unreasonable risk and issues an order to that

14   effect under section 6(i)(1); or (2) regulates the chemical under section 6(a) to ensure that

15   it no longer will present any unreasonable risks that are identified during the risk

16   evaluation.   Plaintiffs' section 21 petition does not provide enough information to allow

17   the Agency or the Court to evaluate "fluoridation chemicals" under this statutory scheme

18   because it does not identify the specific chemical substances at issue and does not present

19   a scientific basis to conclude that any chemical substances present an unreasonable risk

20   of injury to health or the environment under the conditions of use within the meaning of

21   TSCA section 21(b)(4)(B)(ii), 15 U.S.C. § 2620(b)(4)(B)(ii).  Because the petition on its

22   face does not meet the minimum legal standards for the evaluation of chemical

23   substances under TSCA, the Court cannot provide the relief Plaintiffs seek, and the

24   Complaint should be dismissed.

25        To effectuate the statutory objective, in the 2016 TSCA Amendments, Congress

26   made clear that EPA was to perform risk evaluations on high-priority chemical

27   substances that would include evaluation of the conditions of use of the chemical

28   substance needed to determine whether the chemical substance – not just individual uses

1   – presents an unreasonable risk of injury to health or the environment.  Specifically, the

2   statute requires that, in conducting a risk evaluation, EPA shall "integrate and assess

3   available information on hazards and exposures for the *conditions of use* of the chemical

4   substance . . . ."  15 U.S.C. § 2605(b)(4)(F)(i) (emphasis added).  Furthermore, the

5   Amendments specifically added a definition of "conditions of use" to the statute, which

6   are "the circumstances, as determined by the Administrator, under which a chemical

7   substance is intended, known, or reasonably foreseen to be manufactured, processed,

8   distributed in commerce, used, or disposed of."  15 U.S.C. § 2602(4).  The legislative

9   history also makes clear that a risk evaluation must reach a determination of unreasonable

10  risk on all conditions of use within the scope of the risk evaluation.  162 Cong. Rec.

11  S3519 (June 7, 2016).   Specifically, a colloquy between Senators Inhofe and Vitter

12  makes clear that the scope of a risk evaluation under section 6 is intended to be

13  comprehensive and include the conditions of use of the chemical substance except for

14  those that EPA, in its discretion, has determined pose minimal risk or are already well

15  controlled.  *Id*. at S3519-20.

16         In promulgating the regulations required by the Amendments to implement the

17  new risk evaluation procedure, EPA explained that, while the statute gives the Agency

18  some discretion to limit the conditions of use included within the scope of its evaluation,

19  "[a]s EPA interprets the statute, the Agency is to exercise that discretion consistent with

20  the objective of conducting a technically sound, manageable evaluation to determine

21  whether a chemical substance – *not just individual uses or activities* – presents an

22  unreasonable risk."  82 Fed. Reg. at 33,729 col. 1 (emphasis added).  Accordingly, the

23  Agency made clear that, while EPA could, in its discretion, exclude from the risk

24  evaluation conditions of use that are de minimis or otherwise insignificant and therefore

25  do not require evaluation, the evaluation must include those activities that are necessary

26

27

28

9

1    to determine whether the substance presents an unreasonable risk.  *Id.* at 33,729 cols. 1-

2    2.[5]

3           Because, the grant of a section 21 petition requesting a TSCA section 6(a) rule

4    has the same effect as a finding of unreasonable risk by EPA under step 2 of the section 6

5    process, i.e., it requires EPA to commence a rulemaking to eliminate the unreasonable

6    risk posed by the chemical substance, the statutory scheme would be substantially

7    undermined if section 21 petitions were not required to present a scientific basis for

8    action that is reasonably comparable, in its quality and scope, to a risk evaluation by EPA

9    under TSCA section 6(b).  At the very least, a petitioner must identify the chemical

10   substance(s) at issue, address the conditions of use of the chemical substance(s), and

11   either evaluate the risks associated with those conditions of use or explain why those

12   conditions of use are insignificant or otherwise unnecessary to include within the scope

13   of a risk evaluation.  If a petition does not do so, it does not provide the basis for EPA to

14   proceed with a section 6(a) rulemaking that complies with the statute.

15          The 2016 amendments to section 21 demonstrate that Congress intended that

16   section 21 petitions requesting a section 6(a) rule present assessments of the risks of

17   chemical substances that are comparable to those that would appear in EPA risk

18   evaluations.  As described above, Congress was careful to amend the section 21 provision

19   for judicial action on section 6(a) petitions to track verbatim the section 6(b)(4)(A)

20   provision setting out the determination that EPA must make upon completion of a risk

21   evaluation.  Thus, it is clear that Congress intended the finding a court must make to

22   compel EPA action to be comparable to, and based on the same scope and quality of

---

24   [5] EPA also determined that certain activities associated with chemical substances are

25   generally not conditions of use within the meaning of TSCA section 6, and therefore
     would generally not be included within the scopes of risk evaluations.  For example, EPA

26   determined that the use of a product containing a chemical substance, such as use in
     previously installed insulation, is generally not a condition of use if the chemical

27   substance is no longer, and is not reasonably foreseen to be, manufactured, processed or
     distributed for that use (so called "legacy uses").  82 Fed. Reg. at 33,729 cols. 1-2.

28

1   information as, an EPA determination under section 6(b)(4)(A).  Most relevant here, the

2   finding must be based on an evaluation of the chemical substance under its conditions of

3   use.

4            EPA's interpretation of these related provisions of TSCA is clearly reasonable

5   and thus entitled to deference under *Chevron*.[6]  Any other interpretation would be

6   inconsistent with Congress' clear intention to establish an orderly process for

7   comprehensive review and, as necessary, regulation of the risks posed by chemical

8   substances.  In order to meet the requirements of the statute, a section 6(a) rule must

9   eliminate any unreasonable risks that have been identified through the risk evaluation

10  process, so that the public is assured that the chemical substance does not present an

11  unreasonable risk under *all* conditions of use assessed in the risk evaluation.  If the statute

12  were interpreted to allow petitioners to force a section 6(a) rulemaking based on analysis

13  of a single condition of use, it would require EPA to conduct a "catch-up" risk evaluation

14  addressing the conditions of use not addressed by the petition.  Nothing in the statute

15  authorizes the Court to impose that obligation on EPA.  Moreover, to issue the required

16  section 6(a) rule within the time required by section 6(c), EPA would have to conduct this

17  "catch-up" evaluation without the benefit of the time period that TSCA section 6(b)

18  would ordinarily afford EPA (*i.e.,* time to prioritize a chemical substance, conduct a

19  careful review of its conditions of use, and receive the benefit of concurrent public

20  comment).  *See* 82 Fed. Reg. at 11,880 col. 2.

21           Congress could not have intended this result, i.e., that an administrative petition

22  addressing only a single use could compel EPA to undertake a risk evaluation for a

23  chemical substance that had not been through the risk prioritization process.  The

24

25  [6] While section 21 provides for "de novo" review of plaintiffs' claim of unreasonable
26  risk, that standard does not apply to EPA's interpretation of the underlying provisions,
    particularly where Congress has specifically required EPA to interpret those provisions
27  through regulations.  *See Trumpeter Swan Society v. EPA*, 774 F.3d 1037, 1040 (D.C.
    Cir. 2014) (applying *Chevron* standard of review to EPA's interpretation of TSCA
28  section 21).

1   prioritization process established in section 6(b) recognizes that a number of chemical

2   substances may present an unreasonable risk of injury to health or the environment and

3   charges EPA with prioritizing those that should be addressed first.  As explained above,

4   EPA was required to have ten chemical substances undergoing risk evaluation as of

5   December 2016, and must have at least 20 high-priority substances undergoing risk

6   evaluation by December 2019 (and as many as ten substances nominated for risk

7   evaluation by manufacturers).  15 U.S.C. §§ 2605(b)(2)(A)-(B), 2605(b)(4)(E)(i).  EPA is

8   obligated to complete rulemakings to address any unreasonable risks identified in these

9   risk evaluations within prescribed timeframes.  15 U.S.C. § 2605(c)(1).  These required

10   activities will place considerable demands on EPA resources.  Indeed, Congress carefully

11   tailored the mandatory throughput requirements of TSCA section 6, based on its

12   recognition of the limitations of EPA's capacity and resources, notwithstanding the

13   sizeable number of chemical substances that will ultimately require review.[7]  Under this

14   scheme, it is not reasonable to believe that Congress intended to empower petitioners to

15   promote chemicals of particular concern to them above other chemicals that may well

16   present greater overall risk, and force completion of expedited risk evaluations and

17   rulemakings on those chemicals, based on risks arising from one condition of use.  *See* 82

18   Fed. Reg. at 11,880 col. 3.

19          Plaintiffs' petition, on its face, clearly fails to present a scientific basis for action

20   that is reasonably comparable, in its quality and scope, to a risk evaluation under TSCA

21   section 6(b) that would provide the basis for a compliant rule under section 6(a).  It thus

22   provides an inadequate basis for EPA to grant the petition or for the Court to compel EPA

23   to undertake a rulemaking.  While the petition is based on the alleged neurological effects

24   of exposure to unspecified "fluoridation chemicals," Rave Decl. Exhibit 1 at 29, it

25   addresses only the use of such fluoridation chemicals in drinking water.  As Plaintiffs'

26

27   [7] There are more than 85,000 chemicals on the TSCA Chemical Substance Inventory
28   subject to this prioritization, risk evaluation, and regulation scheme.
     https://www.epa.gov/tsca-inventory/about-tsca-chemical-substance-inventory.

1   Complaint acknowledges, ECF No. 1 at ¶ 2, several different chemicals are used for this

2   purpose, and by failing to distinguish between them, the petition provides no basis for

3   EPA or the Court to determine whether there are any differences among the chemicals

4   that could affect the level of risk they pose.  While EPA has discretion to act on

5   chemicals as a category under TSCA section 26(c), 15 U.S.C. § 2625(c), the petition

6   contains inadequate information about the properties or conditions of use of the

7   individual chemical substances for EPA or the Court to determine whether they should be

8   considered as a category for purposes of risk evaluation and any necessary regulation.

9          Further, Plaintiffs' petition provides no information about any other conditions of

10  use of fluoridation chemicals, which is clearly not sufficient information to perform a risk

11  evaluation that could support a statutorily-compliant section 6(a) rule.  Under Congress'

12  clearly stated intent, an acceptable risk evaluation must consider the conditions of use of

13  each chemical substance subject to the evaluation.  82 Fed. Reg. at 11,888 col. 2.

14  Plaintiffs' petition does not meet this test.  The petition provides no information about the

15  uses of fluoridation chemicals other than as a drinking water additive, and makes no

16  attempt to evaluate the risk from these other uses, or to demonstrate that such risks are

17  insignificant or otherwise unnecessary to completion of a risk evaluation.  Without such

18  an analysis, there is no way for EPA to promulgate a rule that comprehensively addresses

19  whatever risk fluoridation chemicals might pose.  Thus, Plaintiffs' petition does not set

20  out the facts that would enable the Court to determine that any chemical substance

21  presents an unreasonable risk of injury under the conditions of use within the meaning of

22  TSCA section 21(b)(4)(B)(ii), 15 U.S.C. § 2620(b)(4)(B)(ii).

23         In sum, because a petition under section 21 acts as a substitute for steps 1 and 2 of

24  the process Congress mandated for rules under section 6, a legally sufficient section 21

25  petition requesting a section 6(a) risk management rule must provide EPA with all of the

26  information required for the Agency to initiate that rulemaking.  Plaintiffs' petition fails

27  this test because it does not identify the specific chemicals at issue, nor any conditions of

28  use of "fluoridation chemicals" other than as an additive to drinking water.  Petitioners'

1  attempt to compel EPA to take one prescribed action, i.e., ban the introduction of

2  "fluoridation chemicals" into drinking water, is clearly inconsistent with Congress' intent

3  that EPA rulemaking under section 6 should comprehensively regulate the risk posed by

4  chemical substances.[8]

5                                   **CONCLUSION**

6          Because Plaintiffs' administrative petition on its face fails to provide a basis for a

7  regulation under TSCA section 6, there is no basis for the Court to compel EPA to

8  commence such a proceeding to promulgate such a regulation, which is the only relief

9  available under section 21.  Accordingly, the Complaint should be dismissed for failure

10  to state a claim on which relief can be granted.

11  Dated:   September 25, 2017                    Respectfully submitted,

12                                                 JEFFREY H. WOOD
                                                   Acting Assistant Attorney General
13

14                                                 /s/ *Norman L. Rave, Jr.*
                                                   NORMAN L. RAVE, JR.
15                                                 Environmental Defense Section
                                                   601 D Street, NW, Suite 8000
16                                                 Washington, DC 20004
                                                   Tel: (202) 616-7568
17                                                 Email: norman.rave@usdoj.gov
18
19                                                 *Attorneys for Defendants*
20
21
22
23
24
25
26

27  _____

28  [8] As EPA stated in its denial of Plaintiffs' petition, Plaintiffs are free to submit a petition
    that clearly identifies the chemical substances at issue and addresses the other conditions
    of use those chemical substances.  82 Fed. Reg. at 11,888 col. 2.

                                            14

**[PROPOSED] ORDER**

Before the Court is Defendants' Motion to Dismiss.  Upon due consideration and for good cause shown, the Motion is GRANTED and Plaintiffs' Complaint is hereby dismissed.

IT IS SO ORDERED.

DATED this _____ day of _____, 2017.


_____

EDWARD M. CHEN
United States District Court Judge

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that a true and correct copy of the foregoing was served by Notice

3  of Electronic Filing this 25th day of September, 2017, upon all ECF registered counsel of

4  record using the Court's CM/ECF system.

5

6                                            /s/ *Norman L. Rave, Jr.*
                                             Norman L. Rave, Jr., Trial Attorney
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28