MICHAEL CONNETT, ESQ., CA Bar No. 300314
CHRIS NIDEL, ESQ., D.C. Bar No. 497059
(to be admitted *pro hac vice*)
FOOD & WATER WATCH
1814 Franklin St., Suite 1100
Oakland, California 94612
Telephone:    (510) 922-0720
Facsimile:    (310) 922-0723

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

| | |
|---|---|
| FOOD & WATER WATCH, et al., | Civ. No. 17-CV-02162-EMC |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO LIMIT REVIEW TO THE ADMINISTRATIVE RECORD AND TO STRIKE PLAINTIFFS' JURY DEMAND** |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al. | |
| Defendants. | DATE:   January 25, 2018 |
| | TIME:   1:30 pm |
| | COURTROOM:  No. 5, 17th Floor |

i

# <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ........................................................................................................... 1

  A. THE PLAIN MEANING AND LEGISLATIVE HISTORY OF
   SECTION 21 SHOWS THAT TSCA CITIZEN SUITS ARE
   ORDINARY "CIVIL ACTIONS" FOR WHICH THE NORMAL
   RULES OF DISCOVERY APPLY .................................................................. 1

    1. Section 21 Citizen Suits Are "Civil Actions," Not "Petitions for
     Judicial Review" ................................................................................. 2

    2. "De Novo Proceeding" Is an All-Encompassing Term that
     Includes *Both* the Standard *and* Scope of Review ......................... 2

    3. Plaintiffs Need Only "Set Forth the *Facts*" in their Administrative
     Petition, But Must Prevail by a "Preponderance of the *Evidence*"
     in Court .............................................................................................. 5

    4. Section 21 Specifically Allows for "Expert Witnesses," and Thus
     Necessarily Contemplates Expert Discovery .................................... 6

  B. *REILLY* CONFIRMS THAT TSCA CITIZEN SUITS ARE NOT
   LIMITED TO THE ADMINISTRATIVE RECORD; *TRUMPETER*'S
   PASSING COMMENT TO THE CONTRARY IS INCOMPATIBLE
   WITH *KRAAYENBRINK* ............................................................................. 7

  C. THE PLAIN LANGUAGE OF SECTION 21 IS SIMILAR TO (BUT
   CLEARER AND STRONGER THAN) A CITIZEN SUIT STATUTE
   THAT THE SUPREME COURT HELD PROVIDES FOR DE NOVO
   SCOPE OF REVIEW .................................................................................... 9

  D. EPA'S ARGUMENTS DO NOT WITHSTAND SCRUTINY ....................... 12

    1. EPA's Assertion About What "Congress Intended" Flatly
     Contradicts the Legislative History of Section 21 ............................ 12

    2. The Plain Meaning of the Words "Such Petition" Is Not
     Interchangeable with "Administrative Record" ................................ 12

    3. Congress Unequivocally Waived EPA's Sovereign Immunity ........... 13

    4. EPA Cites APA Case Law as Authority for the Scope of Review,
     But APA Does Not Apply to Section 21 De Novo Proceedings .......... 14

    5. EPA Cites ERISA Case Law as Authority for the *Scope* of
     Review, But ERISA Only Provides for a De Novo *Standard* of
     Review and Is Thus Inapposite ........................................................ 14

    6. The Fact that Plaintiffs Had an "Opportunity to Make Their Case"
     to EPA Is *Not* a Basis for Denying a De Novo Proceeding ............... 15

III. CONCLUSION ...................................................................................................... 17

ii

PLAINTIFFS' OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO LIMIT REVIEW TO THE
ADMINISTRATIVE RECORD AND TO STRIKE PLAINTIFFS' JURY DEMAND

# TABLE OF AUTHORITIES

**Cases**

*Asarco, Inc. v. U.S. Evntl. Prot. Agency*, 616 F.2d 1153 (9th Cir. 1980)....................................6

*Barnhart v. Sigmon Coal Co*., 534 U.S. 438 (2002). ....................................................................4

*Bennett v. United States*, 371 F.2d 859 (Ct. Cl. 1967) .................................................................4

*Califano v. Yamasaki*, 442 U.S. 682 (1979). ................................................................................2

*Callejo v. Resolution Tr. Corp*., 17 F.3d 1497  (D.C. Cir. 1994) ..................................................4

*County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*,
492 U.S. 573 (1989) .......................................................................................................................8

*Democratic Leadership Council, Inc. v. United States*, 542 F. Supp. 2d 63 (D.D.C.
2008)..................................................................................................................................................4

*Doe v. United States*, 821 F.2d 694 (D.C. Cir. 1987)...................................................................3

*Evntl. Def. Fund v. Reilly*, 909 F.2d 1497 (D.C. Cir. 1990)...............................................passim

*Evntl. Def. Fund v. Thomas*, 657 F. Supp. 302 (D.D.C. 1987), ..............................5, 16, 17

*Ewing v. C.I.R.*, 122 T.C. 32 (2004)..............................................................................................4

*Federal Energy Regulatory Comm'n v. City Power Marketing, LLC*, 199 F. Supp. 3d
218 (D.D.C. 2016)..........................................................................................................................2

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, (1989) ..........................................3, 14

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) .............................................................14

*Hackley v. Roudebush*, 520 F.2d 108 (D.C. Cir. 1975)................................................................4

*Hall v. Norton*, 266 F.3d 969 (9th Cir. 2001)...............................................................................14

*Hyatt v. Kappos*, 625 F.3d 1320 (Fed. Cir. 2010), ..............................................3, 9, 10, 11

*In re Swanson*, 289 B.R. 372 (Bankr. C.D. Ill. 2003) ...................................................................8

*Kappos v. Hyatt*, 566 U.S. 431 (2012) .................................................................................passim

*McClelland v. Andrus*, 606 F.2d 1278 (D.C. Cir. 1979) ................................................................7

*Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938 (9th Cir.
1995)................................................................................................................................................15

*N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404 (1960).....................................................................2

*Oregon Nat. Res. Council v. Allen*, 476 F.3d 1031 (9th Cir. 2007) ............................................3

*San Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971 (9th Cir. 2014) .............14

*Saunders v. United States*, 507 F.2d 33 (6th Cir. 1974).............................................................3

*Sheet Metal Workers v. EEOC*, 478 U.S. 421 (1986)...................................................................8

*Trumpeter Swan Society v. E.P.A.*, 774 F.3d 1037 (D.C. Cir. 2014). .........................................8

*U.S. Dep't of Energy v. Ohio*, 503 U.S. 607 (1992)....................................................................13

*U.S. v. Bloom*, 149 F.3d 649 (7th Cir.1998)..................................................................................8

*W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011) ................................3, 9

*Washington Toxics Coal. v. Evntl. Prot. Agency*, 413 F.3d 1024 (9th Cir. 2005)...................14

*Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency*, No. CV 10-863-PHX-
MHM, 2011 WL 905656 (D. Ariz. Mar. 15, 2011)........................................................................9

*WWC Holding Co. v. Sopkin*, 488 F.3d 1262 (10th Cir. 2007) ....................................................8

**Federal Rules**

Fed. R. Civ. Proc. 1 ........................................................................................................................2

Fed. R. Civ. Proc. 26(b)..................................................................................................................1

Fed. R. Civ. Proc. 81 ......................................................................................................................2

**Statutes**

15 U.S.C. § 2618(a) ................................................................................................2

15 U.S.C. § 2618(b) ............................................................................................4, 6

15 U.S.C. § 2618(c) ................................................................................................4

15 U.S.C. § 2620(b)(1) ..........................................................................................15

15 U.S.C. § 2620(b)(2) ....................................................................................5, 6, 13

15 U.S.C. § 2620(b)(3) ..........................................................................................13

15 U.S.C. § 2620(b)(4)(A) ..................................................................................2, 13

15 U.S.C. § 2620(b)(4)(B) ...............................................................................passim

15 U.S.C. § 2620(b)(4)(C) ......................................................................................6

16 U.S.C. § 1540(g) ................................................................................................3

35 U.S.C. § 145 ................................................................................................9, 10

5 U.S.C. § 706 ........................................................................................................4

**Other Authorities**

50 Fed. Reg. 4426 ................................................................................................16

BLACK'S LAW DICTIONARY 568 (3d ed. 2001) ..........................................................3

MERRIAM-WEBSTER DICTIONARY (online ed.) ..........................................................3

S. Rep. No. 94-698 (1976) ...............................................................................passim

PLAINTIFFS' OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO LIMIT REVIEW TO THE
ADMINISTRATIVE RECORD AND TO STRIKE PLAINTIFFS' JURY DEMAND

1

2                                  I.       **INTRODUCTION**

3           EPA asks this Court for a sweeping order that would exempt this "civil action" from Federal Rule

4    of Civil Procedure 26(b) and deny Plaintiffs their right to discovery.   This request is not only

5    incompatible with the plain meaning of the Toxic Substances Control Act (TSCA), but runs directly

6    counter to Congress's clearly expressed intent in the legislative history.   Congress has commanded,

7    without exception, that TSCA citizen petitioners "*shall*" be provided a "de novo *proceeding*."   15 U.S.C.

8    § 2620(b)(4)(B) (emphases added).   Federal courts have long recognized that a "de novo proceeding" is

9    an all-encompassing term that includes both the standard and *scope* of review.   *E.g.*, *Environmental*

10   *Defense Fund v. Reilly,* 909 F.2d 1497, 1506 (D.C. 1990).   Consistent with this, the Senate Report on the

11   TSCA bill states, in no uncertain terms, that Congress provided the de novo proceeding for the purpose of

12   "develop[ing] a record."   S. Rep. No. 94-698, at 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4491, 5503.

13   As with analogous citizen suit statutes, therefore, the parties to this action are "free to introduce new

14   evidence . . . subject only to the rules applicable to all civil actions, the Federal Rules of Evidence and the

15   Federal Rules of Civil Procedure."   *Kappos v. Hyatt*, 566 U.S. 431 (2012).   The Court should thus deny

16   EPA's motion for a protective order in its entirety.[1]

17

18                                 II.       **ARGUMENT**

19   **A.       THE PLAIN MEANING AND LEGISLATIVE HISTORY OF SECTION 21**
20   **          SHOWS THAT TSCA CITIZEN SUITS ARE ORDINARY "CIVIL ACTIONS"**
21   **          FOR WHICH THE NORMAL RULES OF DISCOVERY APPLY**

22          In determining whether the normal rules of discovery should apply to a civil action in federal

23   court, Federal Rule of Civil Procedure 1 "is the logical place to start."   *Federal Energy Regulatory*

---

[1] Although Plaintiffs maintain their position that factual findings in Section 21 civil suits are within the province of a jury, Plaintiffs have elected to withdraw their jury demand, thus mooting EPA's motion to strike.

1

*Comm'n v. City Power Marketing, LLC*, 199 F. Supp. 3d 218, 231 (D.D.C. 2016).  Rule 1 provides that the Federal Rules of Civil Procedure "govern the procedure in *all* civil actions and proceedings in the United States district courts, except as stated in Rule 81."  Fed. R. Civ. Proc. 1 (emphasis added).  Rule 81 contains no exception for TSCA citizen suits.  Fed. R. Civ. Proc. 81.  The Federal Rules of Civil Procedure thus govern this case, absent congressional intent to the contrary.

Congress has the authority to "specify that certain types of actions are governed by procedures other than the Federal Rules," but "a 'clear expression' of such congressional intent is 'necessary' before a court should depart from the Federal Rules." *Id*. (citing *N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407 & n. 6 (1960) and *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)).  As set forth herein, the plain language of Section 21 provides no "clear expression" of Congress's intent to exclude TSCA citizen suits from the normal Federal Rules.  Indeed, the plain meaning and legislative history of Section 21 show that TSCA citizen suits are ordinary civil actions for which the ordinary rules of discovery should apply.

**1.      Section 21 Citizen Suits Are "Civil Actions," Not "Petitions for Judicial Review"**

Section 21 refers to TSCA citizen suits as "civil action[s]."  15 U.S.C. § 2620(b)(4)(A) ("[T]he petitioner may commence a *civil action* in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition." (emphasis added)).  By contrast, Section 19 of TSCA refers to judicial challenges of rules issued by EPA as "petitions for judicial review."  15 U.S.C. § 2618(a) ("[A]ny person may file a *petition for judicial review* of such rule or order with the United States Court of Appeals for the District of Columbia Circuit . . . .") (emphasis added)).  Notably, the word "review" does not appear in 15 U.S.C. § 2620(b)(4)(B).

**2.      "De Novo Proceeding" Is an All-Encompassing Term that Includes *Both* the Standard *and* Scope of Review**

Section 21 provides that plaintiffs who file a civil action "*shall* be provided an opportunity to have such petition considered by the court in a *de novo proceeding*."   15 U.S.C. § 2620(b)(4)(B)

(emphasis added).  As Justice Ginsburg has explained, "[d]e novo means here, as it ordinarily does, a fresh, independent determination of 'the matter' at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion."  *Doe v. United States*, 821 F.2d 694, 697–98 (D.C. Cir. 1987); *accord Saunders v. United States*, 507 F.2d 33, 36 (6th Cir. 1974).

While there are certain laws that limit a court's de novo review to either the standard[2] or scope[3] of review, Congress did not carve out any such limitation in Section 21.  Instead of limiting the court's de novo review to the standard or the scope, Congress used the all-encompassing term "de novo *proceeding*."  A "proceeding" is a "legal action" and includes "all acts and events between the time of commencement and the entry of judgment."  BLACK'S LAW DICTIONARY 568 (3d pocket ed. 2001); MERRIAM-WEBSTER DICTIONARY (online ed.), https://www.merriam-webster.com/dictionary/proceeding (accessed Jan. 5, 2018).  Under its plain and ordinary meaning, therefore, "de novo proceeding" is broad enough to encompass both the standard and scope of review.  In fact, federal courts have repeatedly used the term "de novo proceeding" in just this manner.[4]

---

[2]  Under the Employee Retirement Income Security Act ("ERISA"), courts must use a de novo standard of review when reviewing benefit determinations of plan administrators.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 105, 115 (1989).  Although the statutory text of ERISA does not explicitly identify what the standard of review should be, the Supreme Court has held that principles of trust law require it to be de novo, unless the benefits plan invests the administrator with discretion.  *Id.*

[3]  In considering citizen suits under the Endangered Species Act (ESA), the Ninth Circuit has held that courts are not constrained by the APA as to the scope of review, but are constrained by the APA as to the standard of review.  *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) (discussing scope of review); *Oregon Nat. Res. Council v. Allen*, 476 F.3d 1031, 1036 (9th Cir. 2007) (discussing standard of review).  While courts are not limited to the administrative record in ESA citizen suits, the scope of review is not as broad as it is in TSCA citizen suits because the ESA statute does not provide for de novo proceedings (16 U.S.C. § 1540(g)), and ESA citizen suits are generally challenging agency rules or orders that have undergone the full notice and comment process.

[4]  *See, e.g.*, *Hyatt v. Kappos*, 625 F.3d 1320, 1338 (Fed. Cir. 2010), *aff'd and remanded*, 566 U.S. 431 (2012) ("Since it is a de novo proceeding, the [agency] findings and fact-based rulings are not reviewed on the deferential 'substantial evidence' standard, *and* the methodology of analysis of the evidence *does not depend on whether the [agency] had also received the same evidence*." (emphasis

Continued on the next page

Section 21's use of the all-encompassing term "de novo proceeding" takes on added significance when read in the context of Section 19.  In Section 19, Congress specifically differentiated the standard of review from the scope of review, and provided specific guidance as to both.  See 15 U.S.C. § 2618(b) & (c). Specifically, Congress instructed that the standard of review for Section 19 cases be governed by the Administrative Procedures Act (APA), 15 U.S.C. § 2618(c) (citing 5 U.S.C. § 706), and identified the scope of information to be reviewed as the administrative record plus certain additional "oral and written presentations." 15 U.S.C. § 2618(b).

Section 19 demonstrates that Congress was well aware when drafting TSCA of the difference between the standard and scope of review, as well as the value of providing guidance to reviewing courts if different rules apply to each.  Congress's use of the all-encompassing term "de novo proceeding" in Section 21, therefore, evinces Congress's intent that the de novo proceeding encompass both the standard and scope of review.  *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002).  In fact, the legislative history leaves no room for a contrary interpretation, as the Senate Report for the 1976 TSCA bill states that the district court will "***gather[] evidence***" and that a "de novo procedure is essential to ***provide the opportunity to develop . . . a record***."  S. Rep. No. 94-698, at 9, 13 (1976) (emphases added), *reprinted in* 1976 U.S.C.C.A.N. 4491, at 4499, 5503.

---

Continued from the previous page

added)); *Callejo v. Resolution Tr. Corp.*, 17 F.3d 1497, 1501 n.3 (D.C. Cir. 1994) (characterizing "de novo proceedings" as "de novo trials" and distinguishing them from de novo reviews that are limited to the administrative record); *Hackley v. Roudebush*, 520 F.2d 108, 118 (D.C. Cir. 1975) (treating the term "de novo proceeding" as interchangeable with the term "de novo trial"); *Bennett v. United States*, 371 F.2d 859, 861 (Ct. Cl. 1967) (using term "de novo proceeding" to discuss a trial in which both parties "introduce[ed] evidence in this court not previously presented before the Board"); *Democratic Leadership Council, Inc. v. United States*, 542 F. Supp. 2d 63, 70 (D.D.C. 2008) (stating that because tax refund cases are "de novo proceedings," the "court's determination of the plaintiff's tax liability . . . does not require (or even ordinarily permit) th[e] court to review findings or a record previously developed at the administrative level." (citation omitted)); *Ewing v. C.I.R.*, 122 T.C. 32, 58 (2004), *vac'd on other grounds*, 439 F.3d 1009 (9th Cir. 2006) ("Of course, in situations where Congress has provided for de novo proceedings in the reviewing court, the record rule by its terms does not apply.").

PLAINTIFFS' OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO LIMIT REVIEW TO THE
ADMINISTRATIVE RECORD AND TO STRIKE PLAINTIFFS' JURY DEMAND

### 3. Plaintiffs Need Only "Set Forth the *Facts*" in their Administrative Petition, But Must Prevail by a "Preponderance of the *Evidence*" in Court

Section 21 draws a distinction between the information required to prevail at the administrative level with the information required to prevail in district court. This distinction helps to explain why Congress provided for the de novo proceeding.

At the administrative level, the petitioner need only "set forth the *facts*," whereas at the judicial level, the petitioner must produce "*evidence*." *Compare* 15 U.S.C. § 2620(b)(2) *with* § 2620(b)(4)(B) (emphases added). The "facts" asserted in an administrative petition are *not* synonymous with the "evidence" to be produced in court. For starters, Section 21 provides no requirement that the petitioners support their asserted facts at the administrative level with any accompanying documentation,[5] let alone competent expert testimony. Instead, Section 21 places the burden of vetting the facts on the EPA. *See id.* § 2620(b)(2). Further, Section 21 gives the EPA absolute discretion in what investigative procedures it will use to vet the facts; indeed, EPA has the option of conducting *no investigation at all*. *See id.* ("The Administrator *may* hold a public hearing or *may* conduct such investigation or proceeding as the Administrator deems appropriate in order to determine whether or not such petition should be granted." (emphasis added)); *Evntl. Def. Fund v. Thomas*, 657 F. Supp. 302, 309 (D.D.C. 1987), *aff'd sub nom. Evntl. Def. Fund v. Reilly*, 909 F.2d 1497 (D.C. Cir. 1990) ("The statute grants EPA absolute discretion to deny petitions for any reason; indeed, the statute expressly contemplates that the agency may take no action on a petition at all.").

The only requirements that Section 21 imposes on the EPA is that the Agency make its decision within 90 days and that it publish its "reasons" for denying the petition should it decide to do so. *Id.* § 2620(b)(2). Accordingly, the administrative record (such that it can even be characterized as such[6]) may

---

[5] Even though not required by the statute, Plaintiffs did attached supporting documentation to their Petition. But this supporting documentation is not "evidence." Rather it is material that experts can reasonably rely upon to provide expert testimony, which *would* be evidence. and Plaintiffs intend to offer such testimony at trial.

[6] The Senate Report suggests that Congress did not consider the petition and EPA's reasons for denial to constitute an administrative record. *See* S. Rep. No. 94-698, at 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4491, 5503 ("In a judicial review of [EPA's] denial of a citizen's petition or failure to act, there would be no record upon which the review could be based  . . . .").

5

PLAINTIFFS' OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO LIMIT REVIEW TO THE ADMINISTRATIVE RECORD AND TO STRIKE PLAINTIFFS' JURY DEMAND

be comprised solely of competing (evidence-free) assertions by the petitioners and EPA.

By contrast, if the petitioner files a civil action in district court to challenge EPA's denial, the plaintiff must convince the court by a "preponderance of the evidence" that an unreasonable risk exists. *Id.* § 2620(b)(4)(B). Because this evidence will often not yet exist at all, and will rarely, if ever, be complete following a short 90-day administrative process, it would violate the plain meaning of the statute—and raise significant due process concerns—to limit plaintiffs to the administrative record. The legislative history bears this out. Specifically, in the 1976 Senate Report, Congress pointed to the limited nature of the administrative record in Section 21 petitions as the reason why de novo proceedings were necessary at the district court level. To quote:

> In a judicial review of [EPA's] denial of a citizen's petition or failure to act, *there would be no record upon which the review could be based*, and therefore a de novo procedure is essential to provide the opportunity to develop such a record.

S. Rep. No. 94-698, at 13 (1976) (emphasis added), *reprinted in* 1976 U.S.C.C.A.N. 4491, 5503.

### 4. Section 21 Specifically Allows for "Expert Witnesses," and Thus Necessarily Contemplates Expert Discovery

Section 21 specifically contemplates experts testifying at trial, thereby further confirming Congress's intent to not limit Section 21 civil actions to the administrative record. As set forth in the statute, a district court "may award costs of suit and reasonable fees for attorneys and *expert witnesses* if the court determines that such an award is appropriate." 15 U.S.C. § 2620(b)(4)(C) (emphasis added).[7] By definition, a court that hears expert testimony at trial goes beyond the administrative record before the EPA. *See Asarco, Inc. v. U.S. Evntl. Prot. Agency*, 616 F.2d 1153, 1157 (9th Cir. 1980) (suggesting district court conducted de novo review, despite court's claim to the contrary, because court "hear[d] expert testimony instead of confining itself to review of the administrative record"). Further, if expert witnesses are permitted to testify at trial, the Federal Rules of Civil Procedure, as well as basic due

---

[7] Section 19 also permits recovery for expert witness fees, which is consistent with the fact that 15 U.S.C. § 2618(b) permits the reviewing court to consider "additional oral and written submissions."

PLAINTIFFS' OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO LIMIT REVIEW TO THE ADMINISTRATIVE RECORD AND TO STRIKE PLAINTIFFS' JURY DEMAND

process considerations, require that expert discovery be permitted as well.  *See* Fed. R. Civ. Proc. 26(a)(2); *McClelland v. Andrus*, 606 F.2d 1278, 1286 (D.C. Cir. 1979) ("[D]iscovery must be granted if in the particular situation a refusal to do so would prejudice a party as to deny him due process.").

> **B.**   ***REILLY* CONFIRMS THAT TSCA CITIZEN SUITS ARE NOT LIMITED TO THE ADMINISTRATIVE RECORD; *TRUMPETER*'S PASSING COMMENT TO THE CONTRARY IS INCOMPATIBLE WITH *KRAAYENBRINK***

In *Environmental Defense Fund v. Reilly,* 909 F.2d 1497 (D.C. 1990), the D.C. Court of Appeals confronted the question of whether TSCA permits petitioners to simultaneously seek a de novo and APA review of an EPA denial of a Section 21 petition.  To resolve this question, the court considered the compatibility of the two remedies.  *Reilly*, 909 F.2d at 1506.  As the court explained, the two remedies "are incompatible in major respects," including:

> The plaintiff in a Section 21 proceeding is entitled to de novo consideration of his petition for issuance of a new rule, but APA review, save in rare instances, must be conducted on the administrative record.  The Section 21 plaintiff must demonstrate, by a preponderance of the evidence, a risk affecting health or the environment; on APA review, the agency's action must be evaluated on the record.

*Id.* at 1506 (footnotes omitted).  As can be seen in this passage, the D.C. Court of Appeals repeatedly distinguished Section 21's de novo proceeding from a review that is conducted on the administrative record.  While this was not the holding of the case, it was one of the reasons the court gave for its holding that the two remedies cannot be pursued simultaneously.  *See id.* ("[T]he Section 21 and the APA remedies are incompatible in major respects, a circumstance inveighing against the theory that Congress sanctioned concurrent use of both.").  Accordingly, the *Reilly* court's comments on the scope of review[8] in a Section 21 de novo proceeding were not merely passing incidental comments, but were part of the explicit rationale for its holding.

---

[8]   EPA contends that the *Reilly* court only addressed Section 21's standard of review, not its scope.  EPA Mot. 2:7-16.  But this is not so.  As noted above, the *Reilly* court was interested in assessing the "compatibility" of the two remedies, and in doing so, the *Reilly* court identified the differences in *both* the standard and scope of review.  While EPA quotes one sentence from *Reilly* that discusses the standard of review, the two sentences that immediately precede it (which EPA omits) discuss the scope of review. *See* EPA Mot. 3:13-15 (quoting *Reilly*, 909 F.2d at 1506).

7

PLAINTIFFS' OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO LIMIT REVIEW TO THE ADMINISTRATIVE RECORD AND TO STRIKE PLAINTIFFS' JURY DEMAND

Despite this, EPA argues that this Court should eschew reliance on *Reilly* in favor of *Trumpeter Swan Society v. E.P.A.*, 774 F.3d 1037, 1039 (D.C. Cir. 2014).  In *Trumpeter*, the court was confronted with a question that was totally unrelated to the meaning of Section 21, let alone to the scope of Section 21's de novo proceeding.  Specifically, the *Trumpeter* court addressed the question of whether Section 3(2)(B) of TSCA permits the EPA to regulate spent lead bullets and shot, which the court answered in the negative.  *Trumpeter*, 774 F.3d at 1038.  Unlike in *Reilly*, the court's passing comment about the scope of review in Section 21 cases was *not* part of the rationale for the court's holding on spent lead bullets.  *Id.* at 1042.  Accordingly, the *Trumpeter* court's passing comment about de novo proceedings warrants substantially less weight than the comments in *Reilly*.  *See Sheet Metal Workers v. EEOC*, 478 U.S. 421, 490 (1986) (O'Connor, J., concurring in part and dissenting in part) ("Although technically dicta, . . . an important part of the Court's rationale for the result that it reache[s] is entitled to greater weight . . . ."); *see also County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 668 (1989) (Kennedy, J., concurring in judgment in part and dissenting in part) ("As a general rule, the principle of stare decisis directs us to adhere not only to the holdings of our prior cases, but also their explications of the governing rules of law."); *WWC Holding Co. v. Sopkin*, 488 F.3d 1262, 1271 n.6 (10th Cir. 2007) (statements that "provide[] the rationale for our holding" and which are "integral to our decision" are "not dicta"); *In re Swanson*, 289 B.R. 372, 374 (Bankr. C.D. Ill. 2003) (citing *U.S. v. Bloom*, 149 F.3d 649, 653 (7th Cir.1998)) ("Statements that explain the court's rationale are part of its holding.").

The *Trumpeter* court's passing comment about the scope of review under Section 21 should not just be given less weight than *Reilly*, it should be disregarded in its entirety.  This is because *Trumpeter*'s passing comment is at odds with a recent holding of the Ninth Circuit.  Specifically, the Ninth Circuit has squarely held that where citizen suits are not governed by the APA, courts "may consider evidence

outside the administrative record."[9]  *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011); *Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency*, No. CV 10-863-PHX-MHM, 2011 WL 905656, at *3 (D. Ariz. Mar. 15, 2011) ("The *Kraayenbrink* Court stated unequivocally that the scope of review for ESA citizen-suit claims is not provided for by the APA and as a result parties may submit and the court may consider evidence outside the administrative record . . . .").  The *Trumpeter* court's passing suggestion, therefore, that courts are limited to the administrative record in TSCA citizen suits (despite the fact that the APA does not govern them) is incompatible with *Kraayenbrink*.

### C. THE PLAIN LANGUAGE OF SECTION 21 IS SIMILAR TO (BUT CLEARER AND STRONGER THAN) A CITIZEN SUIT STATUTE THAT THE SUPREME COURT HELD PROVIDES FOR DE NOVO SCOPE OF REVIEW

The U.S. Supreme Court recently confronted a question that is similar to the one raised by EPA's motion, albeit in a different statutory scheme.  In *Kappos v. Hyatt*, 566 U.S. 431 (2012), the Court addressed whether civil actions under 35 U.S.C. § 145 ("Section 145") may introduce evidence in district court that was not considered by the administrative agency.  Section 145 provides persons the right to challenge patent denials by the U.S. Patent & Trademark Office (PTO).  Similar to EPA's argument here, the PTO argued that district courts are severely limited in considering information that had not been presented to the PTO.  *Kappos*, 566 U.S. at 437.  The Supreme Court rejected this contention and held that parties are "free to introduce new evidence in § 145 proceedings subject only to the rules applicable to all civil actions, the Federal Rules of Evidence and the Federal Rules of Civil Procedure."  *Id*. at 444 (quoting *Hyatt v. Kappos*, 625 F.3d 1320, 1331 (Fed. Cir. 2010) (en banc)).

---

[9]  *Kraayenbrink* addressed the citizen suit provision under the Endangered Species Act (ESA), but its ruling is applicable to for the limited purpose of demonstrating that the court is not limited to the Unlike Section 21, the ESA citizen suit statute does not include the words "de  novo," let alone the words "de novo proceeding."   Further, unlike TSCA citizen suits, ESA citizen suits are generally challenging agency decisions that have undergone the full notice and comment process, and thus have well developed administrative records.  For these reasons, the  additional discovery issues in ESA cases are often quite limited in scope

The Supreme Court's holding in *Kappos* is instructive to the question presented here because, as explained herein, the statutory language of 35 U.S.C. § 145 is similar to (although not as clear and strong as) Section 21.  The statutory text of 35 U.S.C. § 145 reads as follows:

> An applicant dissatisfied with the decision of the Patent Trial and Appeal Board in an appeal under section 134(a) may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have *remedy by civil action* against the Director in the United States District Court for the Eastern District of Virginia if commenced within such time after such decision, not less than sixty days, as the Director appoints. *The court may adjudge that such applicant is entitled* to receive a patent for his invention, as specified in any of his claims involved in the decision of the Patent Trial and Appeal Board, *as the facts in the case may appear* and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law.

(emphases added).

The Supreme Court began its analysis of this statute by emphasizing the fact that it uses the words "civil action."  *Kappos*, 566 U.S. at 437.  An en banc opinion of the Federal Circuit, which the Supreme Court affirmed, emphasized this fact as well.  *Hyatt*, 625 F.3d at 1327.  This is instructive because Section 21 also uses the term "civil action" to describe the citizen suit remedy under TSCA.  15 U.S.C. § 2620(b)(4).

Next, the Supreme Court drew attention to the fact that the district court is authorized to "adjudge that such applicant is entitled to receive a patent . . . as the facts in the case may appear."  *Kappos*, 566 U.S. at 437.  The Federal Circuit's en banc panel emphasized this fact as well, on the grounds that it shows Section 145 "does not merely afford judicial review of agency action."  *Hyatt*, 625 F.3d at 1327. In other words, Section 145 places the focus on whether the plaintiff can prove his entitlement to a patent, which is a distinct inquiry from the backwards-looking focus on the merits of the PTO's decision.  This is exactly what TSCA does as well, as it places the burden on the plaintiff to prove "to the satisfaction of the court" that an "unreasonable risk" exists, which is distinct from a backwards-looking focus on EPA's reasons for denying the administrative petition.  15 U.S.C. § 2620(b)(4)(B).

10

Finally, and perhaps most importantly, the Supreme Court concluded its textual analysis by observing that: "*By its terms, §145 neither imposes unique evidentiary limits* in district court proceedings nor establishes a heightened standard of review for factual findings by the PTO."  *Kappos*, 566 U.S. at 437 (emphasis added).  Similarly, the Federal Circuit's en banc panel observed:

> The statute provides no indication that this civil action is somehow different from a customary civil action. In particular, § 145 does not provide that unique rules of evidence, separate from or supplementary to the Federal Rules of Evidence that apply to all civil actions, control to limit an applicant's ability to introduce new evidence before the district court.

*Hyatt*, 625 F.3d at 1327.  Similarly, by its own terms, TSCA: (i) does not provide any indication that a Section 21 civil action "is somehow different from a customary civil action"; (ii) does not provide "any unique rules of evidence, separate from or supplementary to the Federal Rules of Evidence"; and (iii) does not "limit an [petitioner's] ability to introduce new evidence before the district court."

The plain language of Section 21 is actually clearer and more compelling than the plain language of Section 145 in showing that the normal rules of civil actions must apply.  This is because, unlike Section 145, Section 21 expressly identifies the civil action as being a "de novo proceeding."  15 U.S.C. § 2620(b)(4)(B).  As noted earlier, federal courts use the term "de novo proceeding" interchangeably with "de novo trial" as a proceeding which includes *both* a de novo standard *and* de novo scope of review.  As the Federal Circuit in *Hyatt* noted, a "de novo proceeding" is one in which the district court's analysis of evidence "does not depend on whether the [agency] had also received the same evidence."  625 F.3d at 1338.  Accordingly, the fact that Section 21 includes the words "de novo proceeding," whereas Section 145 does not, makes it an easy call that TSCA citizen suits should be governed by the ordinary federal rules of civil procedure and evidence.

///

///

///

---

11

### D.     EPA'S ARGUMENTS DO NOT WITHSTAND SCRUTINY

In its motion, EPA advances a number of arguments that do not withstand scrutiny. Plaintiffs now address these arguments.

#### 1.     EPA's Assertion About What "Congress Intended" Flatly Contradicts the Legislative History of Section 21

EPA contends that the "the plain language of the statute demonstrates that *Congress intended* that . . . the scope of the Court's review is limited to the administrative record before the Agency when it denied Plaintiffs' administrative petition." Mot. at 2:21-25 (emphasis added). This contention, however, is directly at odds with Congress's own explanation of its intent.  As noted earlier, the Senate Report to the TSCA bill explicitly states that the district court will "***gather[] evidence***" and that the "de novo procedure is essential to ***provide the opportunity to develop . . . a record***."  S. Rep. No. 94-698, at 9 & 13 (1976) (emphasis added), *reprinted in* 1976 U.S.C.C.A.N. 4491, 4499 & 5503. The de novo proceeding remedy was thus provided for the express purpose of "develop[ing] a record," which is diametrically opposite to Congress wanting to confine district courts to the "administrative record."  EPA makes no attempt to explain how its declaration of Congress's intent is compatible with these unmistakably clear pronouncements in the Senate Report.

#### 2.     The Plain Meaning of the Words "Such Petition" Is Not Interchangeable with "Administrative Record"

EPA's contention that Congress intended to limit the scope of review to the "administrative record" is premised on the purported "plain language" of the words "such petition."  EPA mot. 19-25.  It is not at all clear or obvious, however, why the term "such petition" is interchangeable with the term "administrative record"; indeed the legislative history and statutory text strongly suggest that "such petition" simply refers to the action being requested.   First, the Senate Report states that "there would be no record upon which the [district court] review could be based," which suggests that Congress did not consider the petition and EPA response to qualify as a competent record for judicial review.  S. Rep. No.

94-698, at 13 (1976) *reprinted in* 1976 U.S.C.C.A.N. 4491, 5503. Second, the words "such petition" occur repeatedly throughout Section 21 and almost always in reference to the EPA granting or denying it. *See* 15 U.S.C. § 2620(b)(2) ("The Administrator may hold a public hearing . . . to determine whether or not such petition should be granted."); *id.* § 2620(b)(3) ("If the Administrator denies such petition, the Administrator shall publish in the Federal Register the Administrator's reasons for such denial."); *id.* § 2620(b)(4(A) ("[I]f the Administrator fails to grant or deny such petition within the 90-day period . . . ."). Obviously, EPA is not granting or denying the "administrative record," nor is it granting or denying the facts stated in the petition.  Instead, EPA is denying the rulemaking being requested.  The most plausible interpretation of the words "such petition," therefore, is that they refer to the rulemaking that petitioners seek to initiate.  EPA makes no attempt to explain why this is not so.

### 3. Congress Unequivocally Waived EPA's Sovereign Immunity

EPA appears to argue that the scope of review must be narrowly construed on the grounds that the citizen suit provision "is a waiver of the United States sovereign immunity."  EPA Mot. 3:17-19 & 5:20-21.  The Agency has failed to offer any authority for this implied proposition.  The one case that EPA cites merely affirms the "common rule" that "any waiver of the National Government's sovereign immunity must be unequivocal."  *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992).  In other words, it is the waiver of sovereign immunity itself that must be strictly construed (i.e., does the statute permit suits against the federal government?), not the subsequent interpretation of what evidence a court can consider.  *See Kappos*, 566 U.S. at 444 (holding that the full panoply of federal rules of civil procedure and evidence apply in citizen suits against PTO).  Here, Section 21 explicitly authorizes citizens to file suit against the EPA, and specifically authorizes district courts to compel EPA to initiate rulemaking proceedings.  Congress was thus unequivocal in waiving the United States's sovereign immunity from TSCA citizen suits.

---

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4. EPA Cites APA Case Law as Authority for the Scope of Review, But APA Does Not Apply to Section 21 De Novo Proceedings

EPA repeatedly cites inapposite APA case law as authority for the scope of review for de novo proceedings under Section 21.  For example, EPA quotes *Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2001) for the proposition that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  EPA Mot. 3:27-4:3. What EPA fails to mention is that this passage from *Hall* is explicitly addressing the "appropriate APA standard of review."  *See Hall*, 266 F.3d at 977 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)).  Similarly, the EPA cites *San Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971, 992-93 (9th Cir. 2014) to define the four circumstances where courts can consider extra-record evidence.  EPA Mot. at 6:3-17.  *San Luis* is an APA case.  EPA's reliance on these APA cases is misplaced because both *Reilly* and the Ninth Circuit precedent make clear that the APA is inapplicable to TSCA citizen suits.  *See, e.g.*, *Washington Toxics Coal. v. Evntl. Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005) (holding that APA does not govern when statute "independently authorizes a private right of action," because the private right of action provides an "express, adequate remedy").  Accordingly, APA case law is inapposite to the scope of review at issue here.

### 5. EPA Cites ERISA Case Law as Authority for the *Scope* of Review, But ERISA Only Provides for a De Novo *Standard* of Review and Is Thus Inapposite

EPA cites ERISA case law for authority on what evidence a court may consider in a de novo *scope* of review, yet the de novo review in ERISA cases is limited to the *standard* of review.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 105, 115 (1989) (holding that basic trust principles require application of a de novo "standard of review" in ERISA cases).[10]  The question about what

---

[10]   Unlike the TSCA statute, where the statutory text explicitly requires citizen suit "proceeding[s]" to be "de novo," the words "de novo" do not appear anywhere in the ERISA statute.  *See Firestone*, 489 U.S. at 109 ("ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations.").

14

PLAINTIFFS' OPPOSITION TO THE FEDERAL DEFENDANTS' MOTION TO LIMIT REVIEW TO THE ADMINISTRATIVE RECORD AND TO STRIKE PLAINTIFFS' JURY DEMAND

evidence can be considered in ERISA cases is thus significantly different than the question raised here. In ERISA cases, the question is whether, and under what circumstances, a court conducting a de novo *standard* of review must look beyond the administrative record to ensure an informed and independent review of the administrator's decision.[11]  Here, by contrast, the question is what evidence a court can consider when conducting a "de novo proceeding" (which encompasses *both* the standard *and* scope of review).  The scope of review in a de novo proceeding is significantly broader because the admissibility of new evidence is *not* conditioned on being necessary to reviewing the merits of agency's decision.  The ERISA case law is thus inapposite to the scope of review under TSCA.[12]

### 6. The Fact that Plaintiffs Had an "Opportunity to Make Their Case" to EPA Is *Not* a Basis for Denying a De Novo Proceeding

EPA argues that the district court should be limited to considering the administrative record because "Plaintiffs had ample opportunity to make their case to EPA."  EPA Mot. 5:6.  There is nothing, however, in the statutory text or legislative history to support this contention.  The statute, of course, requires petitioners to make their case to EPA.  *See* 15 U.S.C. § 2620(b)(1) (requiring petitioners to "set forth the facts which it is claimed establish that it is necessary to issue, amend, or repeal a rule").  Since every petitioner must make their case to EPA, EPA's interpretation, if accepted, would effectively disqualify every citizen petitioner from a de novo scope of review.  This is certainly not what Congress intended, as Congress established the de novo proceeding for the express purpose of "develop[ing] a

_____

[11]  *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995) (addressing the "scope of review that a district court may use upon de novo review of a plan administrator's decision" and holding that "new evidence may be considered under certain circumstances to enable the full exercise of informed and independent judgment").

[12]  In the initial Joint Case Management Statement, Plaintiffs' counsel cited ERISA case law for guidance on the scope of review in this case.  ECF No. 23, at 3.  At that time, Plaintiffs' counsel had not yet had an opportunity to comprehensively review the case law to assess the applicability of ERISA to TSCA.  Since the Court has ordered the parties to draft a new Joint Case Management Statement, Plaintiffs intend to amend the language in the Statement so that it no longer cites or relies upon this inapposite case law.

record."  S. Rep. No. 94-698, at 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4491, 5503.

EPA's contention that Plaintiffs had "ample" opportunity to make their case does not salvage the argument.  Just as beauty lies in the eye of the beholder, whether the opportunity was "ample" or not is intrinsically subjective and standard-less.  Indeed, Plaintiffs disagree with EPA's characterization here: Plaintiffs had an opportunity to make their case, but there was nothing about this opportunity that went beyond the ordinary.  The fact that "[t]here was no limit placed on the length of [Plaintiffs'] petition or the type or number of references that Plaintiffs could attach to it" (EPA Mot. at 5:6-7) is the default rule for *every* citizen petition and thus hardly noteworthy.  Moreover, the fact that Plaintiffs had an opportunity to "present their views to EPA orally" (EPA Mot. at 5:9) means little since EPA refused to answer any questions at the meeting, and never held any hearings where Plaintiffs could respond to EPA's scientific contentions, thereby denying Plaintiffs any opportunity to understand and respond to EPA's positions prior to publication of EPA's denial in the Federal Register.

But, even *if* Plaintiffs had "ample" opportunity to make their case, there is nothing in the statute that conditions or otherwise limits the right to a de novo proceeding on this nebulous ground.  Indeed, the statute commands, in no uncertain terms and without exception, that a plaintiff in a TSCA citizen suit "*shall* be provided an opportunity to have such petition considered by the court in a de novo proceeding." 15 U.S.C. § 2620(b)(4)(B) (emphasis added).  It is instructive here to consider the facts in *Reilly*.  In *Reilly*, the petitioners submitted a far longer brief than Plaintiffs did here (103 pages vs. 29 pages); the EPA held several "meetings" where the petitioners presented their concerns which were documented by EPA in the form of "minutes"; and EPA actually created an "administrative record."  *See Thomas*, 657 F. Supp. at 312 (stating that petitioners had submitted a "103-page petition"); 50 Fed. Reg. 4426, at 4436 (referencing a "meeting following submission of . . . petition" in which petitioners provided further input to EPA); *id.* at 4448 (notifying the public that EPA had created an "administrative record" which contained *inter alia* "minutes of meetings").  Yet, despite the more extensive record at issue in *Reilly*, the

district court permitted discovery.  *See Thomas*, 657 F. Supp. at 312 (ordering parties to notify court "as to the amount of time needed for additional discovery").  The district court in *Reilly* thus appears to have recognized what the plain meaning of the statute makes clear: that the right to a de novo proceeding is not limited or curtailed by the perceived extent to which plaintiffs were able to 'make their case' to EPA.

### III.    <u>CONCLUSION</u>

Congress has instructed that Section 21 citizen petitioners "shall" be provided a "de novo proceeding."  The plain meaning of these words, together with the clearly expressed intent of Congress in the legislative history, make it abundantly clear that TSCA citizen suits are not limited to the administrative record.  Accordingly, this Court should deny EPA's motion for a protective order.

January 5, 2018                                     Respectfully submitted,


                                                   /s/ Michael Connett
                                                   MICHAEL CONNETT
                                                   Attorney for Plaintiffs

---

1

## **CERTIFICATE OF SERVICE**

2

      I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic

3

Filing this 5th day of January, 2018, upon all ECF registered counsel of record using the Court's

4

EM/ECF system.

5

6                                          /s/ Michael Connett
                                           MICHAEL CONNETT
7                                          Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28