UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | Case No. 17-cv-02162-EMC <br><br> **ORDER DENYING DEFENDANT'S MOTION TO LIMIT REVIEW TO THE ADMINISTRATIVE RECORD** <br><br> Docket No. 41 |

This is an action under Section 21 of the Toxic Substances Control Act ("TSCA"), codified at 15 U.S.C. § 2620, challenging Defendant Environmental Protection Agency ("EPA")'s denial of Plaintiffs' petition to regulate the fluoridation of drinking water supplies. The EPA moves for a protective order limiting the scope of review in this litigation to the administrative record,[1] a request that would effectively foreclose Plaintiffs from introducing any evidence in this litigation that was not attached to their administrative petition. The text of the TSCA, its structure, its purpose, and the legislative history make clear that Congress did not intend to impose such a limitation in judicial review of Section 21 citizen petitions. The Court therefore **DENIES** the EPA's motion.

## I. FACTUAL BACKGROUND

The Court assumes familiarity with the facts of this case, which are set forth in more detail in the Court's recent order denying the EPA's motion to dismiss. *See* Docket No. 42. In sum, Plaintiffs petitioned the Environmental Protection Agency to issue a rule under Section 6(a) of the Toxic Substances Control Act, codified at 15 U.S.C. § 2620 ("TSCA"), prohibiting the

---

[1] The EPA also moved to strike Plaintiffs' demand for a jury trial on the basis that this is a case in equity not at law, but Plaintiffs have withdrawn their demand so the issue is moot.

fluoridation of drinking water supplies. Plaintiffs' petition was supported by voluminous scientific material which Plaintiffs claim demonstrates that the ingestion of fluoride causes neurotoxic harm. Plaintiffs allege that this harm is unnecessary and therefore unreasonable because fluoride's positive effects on dental health can be achieved through topical application of the chemical, thereby avoiding the harms associated with ingestion. The EPA denied the petition and Plaintiffs subsequently filed suit.

Now, the parties dispute whether the Court's review should be confined to the administrative record (*i.e.*, Plaintiffs' petition and the EPA's official denial) according to principles generally applicable to the review of agency action under the Administrative Procedure Act (5 U.S.C. §§ 701, *et seq*.), or whether the TSCA authorizes Plaintiffs to introduce evidence and take discovery beyond the administrative record.

## II. STATUTORY BACKGROUND

The TSCA provides that when the EPA denies a citizen petition, "the petitioner may commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition." 15 U.S.C. § 2620(b)(4)(A) (commonly referred to as Section 21). It further provides:

> In an action under subparagraph (A) respecting a petition to initiate a proceeding to issue a rule under section 2603, 2605, or 2607 of this title . . . *the petitioner shall be provided an opportunity to have such petition considered by the court in a de novo proceeding*. If the petitioner demonstrates *to the satisfaction of the court* by a preponderance of the evidence that—
>
> [ . . . ]
>
> (ii) in the case of a petition to initiate a proceeding for the issuance of a rule under section 2605(a) or 2607 of this title . . . . the chemical substance or mixture to be subject to such rule or order presents an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation, under the conditions of use.
>
> the court shall order the Administrator to initiate the action requested by the petitioner.

15 U.S.C. § 2620(b)(4)(B) (emphasis added).

No statutory provision specifically addresses the scope of review in a judicial action, *i.e.*,

2

whether the reviewing court is constrained to the materials presented to and considered by the agency.

### III. DISCUSSION

Statutory interpretation begins with the text of the statute. *See Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 802 (9th Cir. 2017). "When an examination of the plain language of the statute, its structure, and purpose clearly reveals congressional intent, our judicial inquiry is complete. But if the plain meaning of the statutory text remains unclear after consulting internal indicia of congressional intent, we may then turn to extrinsic indicators, such as legislative history, to help resolve the ambiguity." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1073 (9th Cir. 2016) (quotations and citations omitted). Additionally, "when a statute is ambiguous and we have the benefit of an administrative agency's interpretation, we may defer to it if it is based on a permissible construction of the statute." *Eleri v. Sessions*, 852 F.3d 879, 882 (9th Cir. 2017).

The EPA argues that the statute clearly limits the Court's review to the administrative record because it states that petitioner is only entitled "an opportunity to have *such petition* considered by the court in a de novo proceeding." 15 U.S.C. § 2620(b)(4)(A) (emphasis added). It follows, according to the EPA, that "such petition" refers to the administrative record before the EPA, and Plaintiffs therefore are limited in this litigation to relying on the evidence already submitted to the agency in connection with the petition. Moreover, the EPA argues that because the statute requires the administrative petition to present the "facts" necessary for a rule, it follows that a plaintiff cannot then seek to introduce new "facts" in litigation without infringing upon sovereign immunity.

Plaintiffs, in contrast, argue that Defendant's reading of "such petition" is contradicted by the text of the statute, which guarantees a "de novo *proceeding*" rather than "de novo *review*"; that the statute only requires the citizen petition to present the agency with "facts" supporting its position, rather than "evidence"; that the statute permits a prevailing plaintiff to recover costs for expert witnesses, undermining the notion that Congress intended to preclude discovery; and that the legislative history affirms that Congress envisioned discovery rather than a limited

3

administrative record (as typically would be the case in judicial review under, *e.g.*, the Administrative Procedure Act ("APA")) in litigation under this provision.

As explained below, Plaintiffs' interpretation is more persuasive in light of the statutory text, structure, and purpose.

A. <u>Statutory Text</u>

The statute does not explicitly provide for a scope of review. Rather, it states that the plaintiff shall be entitled to "an opportunity to have such petition considered by the court in a de novo proceeding." 15 U.S.C. § 2620(b)(4)(B). Defendant seizes upon the term "such petition" to support a limited scope of review, and Plaintiff seizes upon the term "de novo *proceeding*" to support an unrestricted scope of review.

    1. <u>The Phrase "such petition" Does Not Imply a Limitation to the Administrative Record</u>

Defendant's reliance on the term "such petition" to imply a limited *scope* of review is unpersuasive. Defendant treats "such petition" as equivalent to "administrative record," but does not explain why that elision is justified or logical. If "such petition" is read literally, then it would mean "such petition," *i.e.*, only the materials submitted by the citizen petitioner. Under that literal reading, the EPA's denial of the petition and any scientific materials the EPA cites in support of the denial would also be excluded from the Court's scope of review because they would not be in "such petition." Rather, it would be in the EPA's response to "such petition." By expanding the term "such petition" to "administrative record" so that it encompasses the EPA's denial, the EPA has implicitly conceded that the term cannot be construed literally to circumscribe the scope of record review to "such petition."

If the term should not be construed literally, then it is unclear why the EPA's narrow interpretation should be adopted. The EPA relies principally on language in *Trumpeter Swan Soc. v. E.P.A.* stating that, "[i]n the normal TSCA section 21 case, we would review the administrative record to determine whether the environmental groups had [demonstrated their burden]." 774 F.3d 1037, 1042 (D.C. Cir. 2014). That passing remark, however, did not involve reasoned analysis of the question and was not part of the court's holding, which concerned the "antecedent

4

issue" whether the regulation of "spent bullets" was categorically excluded from the scope of the EPA's regulatory authority (it was). *Id.* Moreover, the *Trumpeter* court did not specifically address the significance of the term "such petition." The dicta from *Trumpeter*, therefore, does not carry persuasive weight here.

In addition, *Trumpeter* does not address the D.C. Circuit's earlier holding in *Environmental Defense Fund v. Reilly*, 909 F.2d 1497 (D.C. Cir. 1990). In that case, the plaintiffs had sought review of their Section 21 citizen petition requesting regulation of dioxins and furans concurrently under the TSCA's judicial review provisions and the Administrative Procedure Act. They settled their TSCA claim but sought to proceed on the APA claim. The district court dismissed and plaintiffs appealed. The appellate court held that "Congress did not intend to permit a litigant challenging an administrative denial of such a [Section 21 citizen] petition to utilize simultaneously both Section 21 and the APA." *Id.* at 1501. The basis for the D.C. Circuit's decision was the inherent "incompatibility" between de novo review under Section 21 and the scope and standard of review under the APA. The D.C. Circuit explained:

> The plaintiff in a Section 21 proceeding is entitled to de novo consideration of his petition for issuance of a new rule, *but APA review, save in rare instances, must be conducted on the administrative record*. The Section 21 plaintiff must demonstrate, by a preponderance of the evidence, a risk affecting health or the environment; *on APA review, the agency's action must be evaluated on the record*. While the Section 21 court, proceeding de novo, is free to disregard EPA's reasoning and decision, *APA review is restricted and highly deferential*. If the Section 21 plaintiff carries his burden and the court makes any one of the statutorily-specified determinations, the court itself directs the disposition to be made of the petition. On the other hand should a district court on APA review find agency action defective, either substantively or procedurally, it ordinarily must remand to the agency for further proceedings.

*Id.* at 1506 (emphasis added).

The D.C. Circuit's contrast between Section 21 and the APA is significant. The D.C. Circuit reasoned in *Reilly* not only that the *standard* of review (*i.e.*, the degree of deference owed to the agency's position) differed under the TSCA and APA, but also that the *scope* of review was distinct, as the court reiterated several times the APA's presumptive limitation to the administrative record as a factor distinguishing TSCA from APA review. The clear implication of

United States District Court
For the Northern District of California

*Reilly* is that Section 21 petitions are not limited to the administrative record.[2]

Accordingly, the EPA's interpretation of the term "such petition" with respect to the scope of review is not persuasive because it contradicts the EPA's own position and is not supported by case law.

### 2. The Phrase "de novo proceeding" Suggests a Broader Scope of Review

The EPA argues that the term "de novo" alone does not suggest an entitlement to discovery beyond the administrative record. However, the EPA ignores the third word—"de novo *proceeding*." Thus, the only cases it cites in support of its argument are inapposite because they do not involve statutes that use the term "de novo proceeding" but rather discuss the scope of "de novo *review*." *See Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir. 1990) (in ERISA cases subject to de novo *review*, the district court "review[s] the administrator's decision *de novo*, that is without deference to the decision or any presumption of correctness, based on the record before the administrator"); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 853-55 (1986) (stating that "[t]he legal rulings of the CFTC, like the legal determinations of the agency in [another case], are subject to *de novo* review").

As Plaintiffs point out, a "proceeding" is "[t]he regularly and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." Proceeding, Black's Law Dictionary (10th ed. 2014). The term "is more comprehensive than the word 'action,' but it may include in its general sense all the steps or measures adopted in the prosecution or defense of an action, including the pleadings and judgment." *Id.*

Thus, federal courts have used the term "de novo proceeding" to encompass more than a standard of review limited to an administrative record, permitting consideration of evidence beyond such a record. *See Hyatt v. Kappos*, 625 F.3d 1320, 1338 (Fed. Cir. 2010), *aff'd and remanded*, 566 U.S. 431 (2002) ("Since it is a de novo proceeding, the [agency] findings and fact-based rulings are not reviewed on the deferential 'substantial evidence' standard, and the

---

[2] The EPA's citation to *Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2001), is therefore inapposite, because it involved the scope of review under the APA.

6

methodology of analysis of the evidence *does not depend on whether the [agency] had also received the same evidence.*" (emphasis added)); *Callejo v. Resolution Tr. Corp.*, 17 F.3d 1497, 1501 n.3 (D.C. Cir. 1994) (characterizing "de novo proceedings" as "de novo trials" and distinguishing them from de novo reviews limited to the administrative record); *Hackley v. Roudebush*, 520 F.2d 108, 118 (D.C. Cir. 1975) (using the term "de novo proceeding" interchangeably with "de novo trial"); *Bennett v. United States*, 371 F.2d 859, 861 (Ct. Cl. 1967) (using term "de novo proceeding" to discuss proceeding where extra-record evidence was introduced); *Democratic Leadership Council, Inc. v. United States*, 542 F.Supp.2d 63, 70 (D.D.C. 2008) (explaining that in "de novo proceedings" the reviewing court does not simply rely on "a record previously developed at the administrative level"); *Ewing v. C.I.R.*, 122 T.C. 32, 58 (2004), *vac'd on other grounds*, 439 F.3d 1009 (9th Cir. 2006) ("Of course, in situations where Congress has provided for de novo proceedings in the reviewing court, the record rule by its terms does not apply.").[3] *Cf. Doe v. U.S.*, 821 F.2d 694, 697-98 (D.C. Cir. 1987) ("De novo means here, as it ordinarily does, a fresh, independent determination of 'the matter' at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion.");[4] *Saunders v. U.S.*, 507 F.2d 33, 36 (6th Cir. 1974) (holding that "trial de novo" "requires a reexamination of the entire matter rather than a mere determination of whether the administrative findings are supported by substantial evidence."); *id.* ("Since the procedures followed at the administrative level do not provide for discovery or testing the evidence of the Department of Agriculture by cross-examination, it is particularly important that an aggrieved person who seeks judicial review in a trial de novo not be deprived of these traditional tools unless

---

[3] Defendant attempts to distinguish the cases cited by plaintiff on the basis that the remarks were made in passing, that they involved cases where review was not confined to the administrative record, or they were specific to the statute involved. Reply at 5. Though these cases are not binding, they are simply evidence that the term "de novo proceeding" is treated interchangeably with "de novo trial." In contrast, Defendant has not identified any examples where the term "de novo proceeding" was used to refer simply to de novo review confined to an administrative record.

[4] It is true, as the EPA points out, that the court also mentioned that "de novo" did not necessarily "entail any trial-type hearing" where no hearing was required at the agency level, but that caveat does not affect the analysis here because the TSCA provides for a "de novo proceeding" whereas in *Doe* it only provided for a "determin[ation]" de novo. *See Doe*, 821 F.2d at 698 nn. 9, 10.

1 it is clear that no issue of fact exists.").

Accordingly, the statutory text more readily supports the view that Plaintiffs are not confined by the administrative record in this de novo proceeding.

B. <u>Statutory Structure</u>

Plaintiffs' reading is also supported by the structure of the statute. As Plaintiffs point out, the TSCA provides for two different judicial review procedures of citizen petitions. Under Section 21, citizen petitions that request the EPA to initiate a *new* rule are entitled to a "de novo proceeding." *See* 15 U.S.C. § 2620(b)(4)(B). In contrast, citizen petitions that merely request the *amendment* or *repeal* of a prior rule are entitled to a more limited form of judicial review as specified in Section 19 based on the Administrative Procedure Act, with some modifications. *See* 15 U.S.C. § 2618(c)(B) (stating that "Section 706 of Title 5 [*i.e.*, the APA] shall apply to review of a rule or order under this section," except as specifically provided).

That Congress specifically stated that citizen petitions requesting *new* rules are entitled to a "de novo proceeding" while citizen petitions requesting the *amendment* or *repeal* of a rule are only entitled to APA-like review strongly suggests that "de novo proceeding" means something broader than record review. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452 (2002) ("[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation and citation omitted)).

The EPA does not provide a reasonable explanation for why the statute would use different language to mean the same standard of review in both sections as EPA so argues. The EPA contends that Section 19 provides for review in the courts of appeal, which would not consider new evidence, but that begs the question and actually supports the opposite conclusion. Section 21 petitions are *not* sent to the courts of appeal but rather to the trial court in the first instance. The different procedure and the different description of review available suggest that judicial review for the denial of a Section 21 petition seeking a new rule is not limited to an administrative

record.[5]

C. Statutory Purpose

The purpose of judicial review in the TSCA context also more readily supports Plaintiffs' interpretation. According to the TSCA, plaintiffs must demonstrate to "the satisfaction of the court by a preponderance of the evidence" whether a particular chemical substance presents an unreasonable risk of harm. *See* 15 U.S.C. § 2620(b)(4)(B). Thus, the court is not being asked to pass upon the sufficiency of the EPA's reasons for denying the petition or the correctness of the EPA's analysis or conclusion. The statute does not state plaintiffs must demonstrate a risk "by a preponderance of the evidence *presented in the petition.*" Rather, the purpose of judicial review is to establish "to the satisfaction of the court by a preponderance of the evidence" that there is in fact evidence of an unreasonable risk of harm. *See* 15 U.S.C. § 2620(b)(4)(B).

This purpose distinguishes TSCA cases from the ERISA cases relied upon by Defendant, where courts are presumptively limited to the administrative record unless the plaintiff clearly establishes a need for extra-record evidence. *See*, *e.g.*, *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007); *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995); *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 519-20 (1st Cir. 2005). The ERISA case-law is inapplicable here because it emerges from a context that differs in important respects.

First, the ERISA statute does not provide for either a standard or scope of review; both standards have been judicially-crafted. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109-115 (1989). In contrast, the TSCA explicitly guarantees a "de novo proceeding," which, as explained above, strongly suggests no limitation to the administrative record.

Second, the rationale for limiting de novo review in ERISA cases to the record is tied

---

[5] Plaintiffs also argue that the TSCA envisions discovery because it permits the prevailing plaintiff to seek reimbursement for expert witness fees. *See* 15 U.S.C. § 2620(b)(4)(C). However, this factor is neutral because, as the EPA points out, APA-level record review also permits for expert witness testimony to aid the Court's understanding of the administrative record. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992-93 (9th Cir. 2014) (explaining four common exceptions to record review under the APA, including "when supplementing the record is necessary to explain technical terms or complex subject matter"). Thus, the mere provision of expert costs is not necessarily inconsistent with the EPA's interpretation.

9

specifically to effectuating ERISA's purpose. As explained in *Quisinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017 (4th Cir. 1993), one of the foundational cases explaining the scope of review in ERISA cases, "ERISA was designed to promote internal resolution of claims, and to permit broad managerial discretion on the part of pension plan trustees in formulating claims procedures, and to encourage informal non-adversarial proceedings." *Id.* at 1022 (quotation and citation omitted). Moreover, "a primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Id.* (quotation and citation omitted). It was the "importance of promoting internal resolution of claims and encouraging informal and non-adversarial proceedings" that "guide[d] [the court] in determining the appropriate scope of review under a *de novo* standard." *Id.* (emphasis in original). Confining review, at least in most instances, to the administrative record furthers the specific goals of ERISA.

The TSCA context is decidedly different. As previously noted by the Court, the overarching purpose of the TSCA is to protect the public from chemicals that pose an unreasonable risk to health and the environment, and citizen petitions are considered a powerful tool in forcing the EPA's hand in that regard. *See* Docket No. 42 at 18-20. Indeed, "[t]he responsiveness of government is a critical concern and the citizens' petition provision will help to protect against lax administration of the [TSCA]." S. Rep. 94-698, reproduced at 1976 U.S.C.C.A.N. 4491, 4503.[6] Thus, in contrast to ERISA, the role of citizen oversight, including access to federal courts, weighs considerably against any possible interest in promoting internal resolution of claims. A de novo proceeding in district court modeled after traditional trial-like

---

[6] Plaintiffs claim that another reason for rejecting the record review standard is that the EPA has "absolute discretion in what investigative procedures it will use to vet the facts" as well as "the option of conducting no investigation at all." The Court need not reach the question whether the EPA actually has "absolute discretion," particularly in light of language in *Reilly* which expressly left open the question whether a citizen petitioner could pursue APA remedies on a Section 21 petition in lieu of Section 21 judicial review. *Reilly*, 909 F.2d at 1502 ("We need not and do not decide whether APA review would have been available to appellants had they chosen that route exclusively."). The Court notes, however, that if Plaintiffs were correct, that would bolster their interpretation in two respects. First, it would be another distinction from the ERISA context, where administrators are bound by their fiduciary obligations and the benefit plan terms. Second, it would provide another reason for comprehensive judicial review to effectuate TSCA's purpose.

10

proceedings would not conflict with the purpose of the TSCA, but would instead effectuate it.

This background—as well as the lack of any express statutory language to the contrary—also explains why Defendant's general argument that standard administrative law principles should apply is not persuasive. Plaintiffs cite to *Kappos v. Hyatt*, 566 U.S. 431 (2012) to support their view. There, the Supreme Court considered whether a person whose patent application had been denied by the Patent and Trademark Office (PTO) and then filed a civil action in district court pursuant to 35 U.S.C. § 145 could submit additional evidence beyond the administrative record. That statute provides that individuals have a "remedy by civil action" in which "[t]he court may adjudge that such applicant is entitled to receive a patent . . . as the facts in the case may appear[.]" 35 U.S.C. § 145. As the Supreme Court observed, "[b]y its terms, § 145 neither imposes unique evidentiary limits in district court proceedings nor establishes a heightened standard of review for factual findings by the PTO." *Kappos*, 566 U.S. at 437. Accordingly, the Supreme Court held that no limitations to consideration of extra-record evidence applied other than those generally imposed by the Federal Rules of Civil Procedure and Federal Rules of Evidence. *Id.*

In reaching its holding, the Supreme Court rejected the PTO's argument that, notwithstanding the absence of an express limitation, the statute "should be read in light of traditional principles of administrative law, which Congress codified in the APA." *Id.* at 438. The Supreme Court instead reasoned that the purpose of administrative exhaustion—"the avoidance of premature interruption of the administrative process," *id.* at 439 (quotation and citation omitted)—was already served because the suit could not be brought until that process was complete. Moreover, the Court noted that Section 145 "does not provide for remand to the PTO to consider new evidence, and there is no pressing need for such a procedure because a district court . . . has the ability and the competence to receive new evidence and to act as a factfinder." *Id.*

Similarly, here, Section 21 does not provide for remand to the agency, and there is no reason why a court would be unable to adjudicate whether an unreasonable risk has been shown on the basis of new evidence, even if the EPA had not seen the evidence in connection with the

11

administrative petition.[7]

The legislative history also supports Plaintiffs' interpretation regarding the purpose of a de novo proceeding under Section 21. The Senate Committee Report regarding this provision states that, "[i]n a judicial review of the Administrator's denial of a citizen's petition or failure to act, there would be no record upon which the review could be based, and therefore a de novo procedure is essential to provide the opportunity to *develop* such a record." S. Rep. 94-698 (1976), reproduced at 1976 U.S.C.C.A.N. 4491, 4503 (emphasis added). Moreover, the Report states that "[a]fter *gathering evidence* in a de novo procedure, the courts would be authorized to require the initiation of the action requested if the petitioner has shown that the action requested is justified." *Id.* at 4499 (emphasis added). The House Conference Report similarly explains that the statute "affords greater rights to a person petitioning for the issuance of a rule or order [than to a petitioner seeking the amendment or repeal of a rule] because in such a situation the Administrator will not previously have addressed the issue by rule or order." H. R. Conf. Rep. 94-1679 (1976), reproduced at 1976 U.S.C.C.A.N. 4539, 4583. The clear implication is that Congress intended the Section 21 judicial review petition to go beyond the record; there is no way to square the language concerning "gathering evidence" and "develop[ing] a record" with Defendant's interpretation.

Defendant argues that the legislative history is ambiguous because it applies "at most" to circumstances where the EPA fails to respond to a petition. This appears to be based on the premise that when the EPA denies a petition and publishes its reasons, there is a record for the Court to review. This premise is mistaken because even when the EPA fails to publish its reasons for a denial, a record exists in the form of the petition itself. Moreover, it is equally possible—as Plaintiffs assert—that the legislative history suggests that Congress did not view the petition and

---

[7] Defendant attempts to distinguish *Kappos* on the basis that prior case law had already accepted the proposition that the district court could accept new evidence. This distinction is immaterial however. The issue in *Kappos* was whether the ability to submit new evidence should be limited pursuant to general APA principles, the exact argument the EPA makes here (having conceded that the same exceptions to APA record review would also apply here, including the receipt of expert testimony to aid the court in understanding the record). Thus, *Kappos* is highly relevant to this case insofar as statutory construction is concerned.

12

1 denial to constitute an adequate record, particularly when compared with the more comprehensive record that would be generated under a formal rulemaking process subject to notice-and-comment.[8] Finally, and perhaps most importantly, the legislative history is clearly referring *both* to situations where the EPA denies a petition by publishing its reasons and when it does so constructively by failing to act within 90 days. Defendant's interpretation of the legislative history is not persuasive.

As the statute itself makes clear, the purposes of the TSCA, at least with respect to Section 21 citizen petitions seeking institution of a new rule, are not served by general administrative law principles. That conclusion is bolstered by the legislative history, which indicates that Congress intentionally provided for a "de novo proceeding" under Section 21 broader than the APA-like review under Section 19.

D. <u>Policy</u>

Defendant ultimately falls back on policy arguments, some of which have significant force. For example, Defendant argues that Plaintiffs already had an "opportunity" to make a case to the EPA with all the evidence they need because they did not have any time limits or restrictions on when they could submit their petition or what evidence they could include to support it. If petitioners are permitted to simply file suit, then they will be able to file barebones administrative petitions and then sandbag the EPA with new evidence in litigation, effectively depriving the agency of an opportunity to avoid litigation by reviewing an adequate petition on the merits first. Moreover, the EPA contends that an open record would render meaningless the requirement that the administrative petition "set forth the facts" making a rule necessary. *See* 15 U.S.C. § 2620(b)(1).

The EPA's concerns are forceful but ultimately do not bear the weight of the statutory text, structure, purpose, and legislative history to the contrary. Defendant's argument also overlooks policy reasons why an open record would be permitted. For example, as Plaintiffs pointed out at

---

[8] The stark contrast between the record developed after notice-and-comment and the "record" consisting of a petition and official denial also explains why Section 19 judicial review (governing the first situation) is limited to APA-like deference while Section 21 review (governing the latter situation) is broader.

the hearing, new studies relevant to the merits have been issued after their petition was denied, and therefore they were unable to present such evidence in their petition. Defendant also overlooks the fact that even though a petitioner has unlimited time to prepare their initial petition, they do not have a chance to respond to the EPA's denial or evidence prior to this civil proceeding.[9] Finally, EPA's concern might carry greater force if the purpose of judicial review were to review the soundness of the EPA's findings, but here it is to determine whether an unreasonable harm is proved "to the satisfaction of the court," 15 U.S.C. § 2620(b)(4)(B)(ii), not, *e.g.*, whether the EPA's actions appear supported by substantial evidence.

The EPA's concern about the risk of being sandbagged and surprised with new evidence in litigation not presented in the EPA petition, although fair, is likely exaggerated. Citizen petitioners do not gain much by withholding evidence supporting their position from the EPA. They have every incentive to make their best case and present their best evidence directly to the EPA in an administrative petition. The administrative process is quick and efficient, as the EPA must act within 90 days of receiving a petition. Litigation, in contrast, will certainly take much longer and undoubtedly involve greater expense. Indeed, the Supreme Court rejected a similar concern in *Kappos*. It found unpersuasive the PTO's argument that permitting new evidence to be submitted to a district court would "encourage patent applicants to withhold evidence from the PTO intentionally with the goal of presenting that evidence for the first time to a nonexpert judge," because "[a]n applicant who pursues such a strategy would be intentionally undermining his claims before the PTO on the speculative chance that he will gain some advantage in the § 145 proceeding by presenting new evidence to a district court judge." 566 U.S. at 445.

Further, contrary to the EPA's suggestion, the Court's interpretation would not render the requirement to present an administrative petition setting forth the "facts" requiring a rule meaningless. *See* 15 U.S.C. § 2620(b)(1). The EPA mistakenly assumes that the only way to give

---

[9] As Plaintiffs state, despite being offered an opportunity for an oral meeting, the EPA allegedly "refused to answer any questions at the meeting, and never held any hearings where Plaintiffs could respond to EPA's scientific contentions, thereby denying Plaintiffs any opportunity to understand and respond to EPA's positions prior to publication of EPA's denial in the Federal Register." Opp. at 16.

14

that requirement meaning is to require an evidentiary record in litigation to be confined to the administrative record, but that is not necessarily the case. In recognition of the TSCA's reference to "such petition," the Court, while not strictly bound by the administrative record, might impose limits on new evidence, requiring, for instance, that any evidence not submitted or referenced in the petition be subject to exclusion if the petition failed to give reasonable notice of such evidence or if there is not good cause to submit such new evidence (such as where a new study has emerged). This would assign the petition a role similar to a complaint framing the case and setting the boundaries of evidence for trial.[10] Although the Court is not prepared to articulate a precise standard by which to judge the scope of new evidence to be permitted in this "de novo proceeding," affording some weight to the scope of the petition would give meaning to the requirement that "such petition . . . set forth the facts which . . . establish that it is necessary to issue . . . a rule," 15 U.S.C. § 2620(b)(1), and would also afford significance to the exhaustion requirement under Section 21 of the TSCA, while at the same time not confining judicial review to that which would obtain traditionally under the APA.

Furthermore, the Court's holding does not foreclose the possibility of limiting discovery depending on the equities when a petitioner's conduct so requires, such as when a barebones petition is presented, but the EPA is purposefully ambushed with a mountain of new evidence or specific allegations in litigation. For example, in *Kappos*, Justice Sotomayor, joined by Justice Breyer, explained in a concurring opinion that "[c]onsistent with ordinary equity practice and procedure, there may be situations in which a litigant's conduct before the PTO calls into question

---

[10] In this regard, a useful analogy may be found in the context of employment discrimination under Title VII of the Civil Rights Act. Under Title VII, a plaintiff must file an administrative charge with the Equal Employment and Opportunity Commission or an analogous state agency before filing suit. *See*, *e.g.*, *Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003). A common theme in such cases arises when a plaintiff makes an allegation in litigation that a defendant believes was not fairly presented in the administrative charge. When that occurs, courts do not automatically reject the new allegations. Rather, "[e]ven when an employee seeks judicial relief for claims not listed in the original EEOC charge, the complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quotation and citation omitted). Further, a court may consider "all allegations of discrimination that either fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *Id.* (quotation and citation omitted, emphasis in original). The overarching notion is fair notice.

the propriety of admitting evidence presented for the first time in a § 145 proceeding before a district court." *Kappos*, 566 U.S. at 447 (Sotomayor, J., concurring). One example is when a petitioner refuses to provide the agency with information upon request and in connection with a petition, but later seeks to introduce the same evidence in litigation. *Id.* As explained by Justice Sotomayor, the exercise of such equitable authority is "limited, and must be exercised with caution," so as to protect persons who "fail[] to present evidence . . . due to ordinary negligence, a lack of foresight, or simple attorney error." *Id.* But it may nevertheless provide a means to address the EPA's concern that, in the absence of a strict limitation to the administrative record, the sky would be the limit.

Indeed, the absence of a presumptive limitation to the administrative record under Section 21 does not mean that discovery will be unbridled. Discovery is still limited to matters "relevant" to the "claim[s] or defense[s] and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Given the elements of the claim (likely defined by the petition herein), discovery should be focused on scientific evidence and expert discovery regarding the risk of injury to health or the environment posed by the chemical substances at issue in Plaintiffs' petition. At the hearing, Plaintiffs stated that their discovery requests could include document discovery related to internal studies the EPA has performed or other data it possesses, including that received from third parties, which relates to whether fluoride chemicals present a risk of neurotoxic harm. On its face, that does not appear burdensome or unreasonable, particularly in light of the fact that such evidence would not have been previously available to Plaintiffs but is within the scope of the petition.[11] However, because the nature of any discovery is still hypothetical, the Court's comments are without prejudice to the parties' ability to raise discovery disputes, should they arise, through this Court's Standing Order regarding civil discovery disputes.

In sum, Defendant has not shown that the TSCA creates a presumptive rule against discovery nor a limitation of review to the administrative record.

---

[11] The EPA's claim that Plaintiffs could have obtained such evidence through the Freedom of Information Act is unavailing as litigants in civil discovery are often entitled to more than the FOIA statute provides. Moreover, FOIA waiting times are often very long and may unduly delay the ability to present a complete petition to the EPA prior to litigation.

16

### IV. <u>CONCLUSION</u>

For the reasons stated, the Court **DENIES** Defendant's motion for a protective order limiting review to the administrative record. The statutory text, structure, purpose, and legislative history all support the conclusion that TSCA Section 21 judicial review is not subject to APA-like limitations or principles. The parties shall meet and confer and agree upon a discovery plan consistent with this Order.

This order disposes of Docket No. 41.

**IT IS SO ORDERED**.

Dated: February 7, 2018

_____
EDWARD M. CHEN
United States District Judge