**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

| | |
|---|---|
| FOOT & WATER WATCH, INC, et al., ) ) )      Plaintiffs, ) ) VS. ) ) U.S. Environmental Protection ) Agency, et al., ) )      Defendants. ) _____) | **No. C 17-2162 EMC** San Francisco, California Friday, January 26, 2018 |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
    FOOD & WATER WATCH
    1814 Franklin Street, Suite 1100
    Oakland, California 94612
**BY:  MICHAEL CONNETT, ESQUIRE**

For Defendants:
    U.S. Department of Justice
    Environment & Natural Resources
     Division
    Environmental Defense Section
    601 D Street, NW, Suite 8000
    Washington, DC 20004
**BY:  NORMAN L. RAVE, JR., TRIAL ATTORNEY**

**Reported By:  Katherine Powell Sullivan, CSR No. 5812, RMR, CRR**
              **Official Reporter**

| | |
|---|---|
| 1 | **Friday - January 26, 2018**                              **10:20 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:** Calling case C 17-2162, Food & Water Watch |
| 5 | versus Environmental Protection. |
| 6 | Counsel, please come to the podium and state your name for |
| 7 | the record, and also hand me your business card. |
| 8 | **MR. CONNETT:** Good morning, Your Honor. Michael |
| 9 | Connett on behalf of plaintiffs. |
| 10 | **THE COURT:** All right. Thank you, Mr. Connett. |
| 11 | **MR. RAVE:** Good morning, Your Honor. Norman Rave, |
| 12 | from the Department of Justice, on behalf of the defendants. |
| 13 | **THE COURT:** All right. Thank you, Mr. Rave. |
| 14 | So the question here is, what kind of proceeding are we |
| 15 | going to have under this section? And is it essentially a |
| 16 | typical APA kind of review of the administrative record, but |
| 17 | with a de novo non-deferential sort of scope? Or is this |
| 18 | essentially like a trial with evidence and all sorts of stuff? |
| 19 | And, you know, again, the statute is not crystal clear. |
| 20 | It does use the term "de novo proceeding," which is |
| 21 | interesting. It doesn't say "de novo review," which would be |
| 22 | the normal way you designate taking the administrative record, |
| 23 | like in an ERISA case or certain other kinds of cases, and |
| 24 | apply to it a non-deferential -- you know, not the substantial |
| 25 | evidence test or the clear error test but something less |

1  deferential.  But it used the word "proceeding."
2      The government says, well, it says "such petition."
3  That's the predicate to all this.  But if "such petition" were
4  to mean only the evidence in the petition, that would mean, in
5  a weird technical way, I couldn't consider anything that the
6  EPA says.
7      And there, if they were to act on it and present a body of
8  evidence and a record, because it's not part of, quote, such
9  petition, if it had said "such petition" or "such proceedings
10 before the administrative agency" then that would be a little
11 clearer.
12     So I'm not -- I'm having trouble seeing how I could
13 literally read this in the way that the government suggests.
14         **MR. RAVE:**  Your Honor, again, we think that one should
15 focus on the petition and EPA's response.  And I think the most
16 compelling reason is because if that's not the case, that
17 really, sort of, obviates and makes meaningless the whole
18 requirement to submit the petition to EPA in the first place.
19     Under plaintiff's argument, you know, if somebody just
20 gave the EPA a single piece of paper and said, you know,
21 chemical X is a carcinogen and, therefore, you should ban its
22 use, that would be enough to then come in and have a whole long
23 trial without producing any evidence, without any threshold.
24     And, you know, Congress set up a very specific process
25 here, where the petitioner has to submit a petition to EPA

1   which sets out the facts that it believes justifies the rule
2   making, and then gives EPA a very limited time period, 90 days,
3   and there's a limited time period to bring the action in
4   district court.  And then to say, well, at that point, you just
5   throw all that out and start over again sort of just obviates
6   that whole process.
7            **THE COURT:**  So it's almost a notion of exhaustion, why
8   we have the exhaustion doctrine, exhaustion of administrative
9   remedies to give the agency a fair chance.  And we do that in
10  many, many cases, whether it's employment cases, whether it's
11  Federal Tort Claims Act, whether it's tax court, whether it's
12  administrative review.
13     So what about that?  I mean, your theory would mean it
14  wouldn't put much of a premium or requirement on the petition.
15  You could file a petition.  The agency reacts.  And then you
16  add 50 new things when you go to court.  That doesn't seem to
17  be very conducive to an orderly way of proceeding.
18           **MR. CONNETT:**  Well, Congress made clear in the statute
19  that the petitioner is entitled to a de novo proceeding.  And
20  obviously a petitioner, when going forward to the EPA with
21  their petition, has every interest in the world to present the
22  facts that support their case.
23     But Congress does use different terms in the statute.  And
24  on the petition level you have to provide the facts to the EPA.
25  And the EPA doesn't have to do anything about it.  Congress

1  specifically allows EPA to ignore it.  Doesn't have -- section
2  subparagraph (b)(2) says EPA may conduct an investigation if it
3  deems fit.  But it doesn't need to.
4      But irregardless of whether EPA responds to the petition
5  or doesn't respond to the petition, Section 21 is clear that
6  the petitioner is entitled to a de novo proceeding.  The
7  statute does not differentiate between whether EPA responded to
8  the petition or not.
9      And the legislative history is clear that Congress
10 specifically contemplated that the district court would gather
11 evidence.
12     And one of the important points, if you see in the *Reilly*
13 court, the D.C. circuit discusses this, and it's there in the
14 legislative history as well, which is that Congress, under
15 Section 21, differentiates between a citizen petition that
16 seeks to initiate a new rule versus a citizen petition that
17 seeks to amend or repeal an existing rule.
18     And so in Congress, in the legislative history, states
19 that where you're dealing with amending or repealing an
20 existing rule, you have a record, you have a thorough record.
21 Because EPA in the past, in enacting a rule or an order, has
22 gone through a lengthy notice and comment period and has
23 established a substantive record.
24     But here we're not dealing with that.  We're dealing with
25 a petition to EPA, which EPA can ignore or just file a Federal

1  Register --
2       **THE COURT:**  So the fact that there are two different
3  processes, one of which appears to be wide open, the other is
4  more constrained, more typical APA, demonstrates Congress knew
5  the difference between the two and used the word "de novo
6  proceeding" purposefully, et cetera, et cetera?
7       **MR. CONNETT:**  (Nods head.)
8       **THE COURT:**  I understand that.  I think the biggest
9  concern is a notion that it's not conducive, maybe it's not
10 fair to the agency to present, you know, less than a full
11 record and have them act on it and then run to court and then
12 produce a wholly different record.
13      **MR. CONNETT:**  Well, I don't think we're dealing
14 with -- and certainly not in this case, we certainly have no
15 intent of doing that.  I don't think we're dealing with a
16 wholly different record.
17      **THE COURT:**  What would be new?  What are we arguing
18 about here?  Give me a little preview.  What's the difference?
19      **MR. CONNETT:**  Certainly.
20    Well, under the statute, it's our burden to prove by a
21 preponderance of the evidence --
22      **THE COURT:**  Yes, I understand that.
23      **MR. CONNETT:**  -- that there's an unreasonable reason.
24      **THE COURT:**  You have a petition, you had a petition
25 that wasn't acted on accordingly, and now you want to come to

1  court.
2       So I'm asking you, in this court, in addition to what --
3  what would you supplement, in other words?  What kinds of
4  things would you add?
5       **MR. CONNETT:**  Certainly.
6       First thing is we would intend to affirmatively present
7  our case in the form of expert testimony.  Now, our experts
8  will clearly rely upon --
9       **THE COURT:**  The same experts that provided information
10 in the petition?
11      **MR. CONNETT:**  Well, we didn't have to -- the statute
12 doesn't require providing information in the form of expert
13 testimony and doesn't provide any mechanism for expert
14 testimony.
15      But, certainly, the information and the exhibits and
16 studies that we attached to our petition would certainly be the
17 material that the --
18      **THE COURT:**  So the scope of the material, the scope of
19 what you're presenting is the same, but you want to present
20 live testimony?  Or is there more stuff?
21      **MR. CONNETT:**  There is more stuff.  And it's -- it's
22 not a wholly different record as EPA might --
23      **THE COURT:**  Give me an example.
24      **MR. CONNETT:**  For example, in September of this past
25 year, 2017, the National Institutes of Health -- the first ever

1  NIH-funded study on fluoride and IQ was published in an NIH
2  journal, *Environmental Health Perspectives*.
3      And that study found a significant effect of low levels of
4  fluoride exposure on children's IQ.  And the levels that the
5  study found could lower IQ are levels of exposure that
6  Americans are receiving in fluoridated areas.
7           **THE COURT:**  All right.  So that's an interesting
8  point.  So what happens, under your theory, if you're confined
9  to the record, and it takes some time for things to percolate
10 and this to proceed, what about intervening developments?
11          **MR. RAVE:**  Well, you know, first of all, I think they
12 should be submitted to the agency first.
13          **THE COURT:**  Like an exhaust, you go back --
14          **MR. RAVE:**  Go back to the agency, right, Your Honor.
15     And, you know, even if the record -- it's limited to the
16 record, there is a recognized --
17          **THE COURT:**  Why didn't Congress just make this an
18 explicit APA-type proceeding then?  That's what you're
19 suggesting.  That's what you would do under the APA; right?
20          **MR. RAVE:**  That's what you would do under the APA.
21     Your Honor, for whatever reason, they chose a different
22 standard of review.  They chose --
23     (Unreportable simultaneous colloquy.)
24          **THE COURT:**  It's not just scope of review.  It's a
25 different process.

1        **MR. RAVE:**  Well, it's definitely a different process
2   if you decide that Congress intended it's a different process.
3        We believe Congress intended the Court's review to be
4   based on the petition that the agency -- that the petitioner
5   presented to EPA, and EPA's response, but that the Court was
6   then to assess that evidence on its own.
7        And I want to point out, Your Honor, that they have yet --
8   Mr. Connett didn't identify anything he wants to seek discovery
9   about.  He said there's a new study he wants to introduce, and
10  he wants to utilize experts.  Which, certainly, the experts
11  could certainly be done under record review.
12       So the question still, I think, is out there, that he
13  hasn't answered yet, is, what would be the purpose of discovery
14  in this case?
15       **MR. CONNETT:**  Well, that's not our burden at this
16  point in time.
17       EPA is seeking a broad-sweeping motion to exclude all
18  discovery in this case.  It's their motion.  It's our position
19  that the normal rules of discovery apply and that we are
20  entitled to submit discovery requests to seek information
21  that's relevant under the governing standards.
22       But I'll give the Court some examples of some of the
23  information that we would seek to discover.
24       First, would we would intend to -- and these would be -- I
25  do not envision a very expansive discovery in this case, to be

clear about that.

But I do think there are areas that are relevant to clarifying and discovering information that will help meet our burden of proving by a preponderance of the evidence that there's an unreasonable risk.

And, for example, if EPA has conducted internal analyses of fluoride neural toxicity, we believe that would be potentially discoverable.

We believe if EPA has internal data that shows the levels of fluoride -- urinary fluoride or serum fluoride in children living in fluoridated areas, that that data would be highly relevant and probative to our contention that the levels of exposure being experienced in fluoridated areas are putting people at risk.

So those are some examples on document requests.

**THE COURT:** So, basically, any internal documents or studies or things that are possessed --

**MR. CONNETT:** And that might include, as well, if they have received documentation from third parties that might further reflect upon the scientific issues at issue with fluoride neurotoxicity.

I think there's room for interrogatories here to clarify EPA's position with respect to some of the factual predicates at issue with this -- with the question of fluoride neurotoxicity that I think could help clarify the matters for

1   the Court and further -- our experts would be able to rely upon
2   in their -- in forming their opinions.
3       But I believe in this case to the extent -- and I expect,
4   again, our discovery. I do not -- this is not going to be a
5   fishing expedition, Your Honor. I can assure you of that.
6       And to the extent that we submitted discovery requests
7   that EPA thinks is too broad or might implicate a privilege,
8   that's something that EPA has a clear mechanism for that. And
9   we can brief that issue with a well-developed factual context.
10      But what EPA seeks to do here is a sweeping motion that
11  excludes all of our rights, which -- and I should just
12  emphasize again, EPA's position is not only completely at odds
13  with the plain language of the phrase "de novo proceedings,"
14  but it's just directly at odds with Congress's own words in
15  both the Conference Report and the Committee Report.
16      Congress expressly stated that it viewed the district
17  court proceeding as one that -- where evidence would be
18  gathered, where the district court would develop the record.
19  EPA has failed to explain that away.
20      And I should note, EPA -- when Congress was writing the
21  TSCA law, after it had written the law, it actually went to
22  EPA. And you can see this in the legislative history. It went
23  to EPA and says, If you have any concerns with any of the
24  provisions in TSCA, please let us know. And EPA did. EPA
25  provided a few comments on certain sections.

1  And EPA urged Congress to pass the law.  And, notably, EPA
2 did not identify any concerns whatsoever with the citizen suit
3 provision.  It had an opportunity, but it did not.  It did not
4 mention any concerns with the way that Congress had written
5 Section 21.
6  That was EPA's opportunity to provide the policy concerns
7 that it now has identified.  But it didn't.  And it urged --
8  **THE COURT:**  Well, that could be interpreted several
9 ways.  That could be because EPA didn't read it as opening the
10 door wide open to a trial.
11  I mean, it would have been even more probative if the EPA
12 said, We don't like this because it looks like you can ignore
13 the normal administrative exhaustion process, and this is such
14 a radical departure from the EPA that it's going to be unfair
15 and unwieldy to the agency, and then Congress turned around and
16 said too bad.  That would have been pretty probative.
17  So it has some value, but I'm not -- you know, frankly,
18 it's the statute structure and the language of the statute that
19 I think is most compelling here.  I think it is supported by
20 the legislative history.  I think it's supported, you know, by
21 the contrast of, for instance, Section 19.
22  And I am troubled by the administrative exhaustion
23 problem.  But this is not the first time that courts have
24 addressed that particular issue.  The sandbagging question, the
25 courts have addressed it.  In fact, the [inaudible] Supreme

1  Court addressed it with respect to patent, sort of,
2  applications, saying it's unlikely that somebody would -- an
3  applicant would intentionally undermine their position for the
4  agency just to have a shot at judicial review.
5      Because de novo or not, when you come to this court, any
6  court, with the agency on one side, that's a little different
7  than winning before the agency.
8      So there is a risk there.  There is a potential problem of
9  administrative exhaustion, but it's not unique to this statute.
10 And the question is, can I find something in the structure and
11 the language of the statute that addresses that?  And
12 everything with regard to the text of the statute --
13     **MR. RAVE:**  We do think, Your Honor, the language "such
14 petition" really means that the focus should be on the
15 petition.
16     **THE COURT:**  Like I said, my first comment, if you say
17 "such petition" really means such petition, then you're limited
18 to the petition itself.
19     **MR. RAVE:**  Your Honor, I think it's reasonably read as
20 such petition and EPA's response, unless EPA has not responded
21 at all.
22     And the Senate Conference Report is somewhat ambiguous on
23 its face because it says there will be no record.  Of course
24 there is a record.  There will always be some records because,
25 at a minimum, there will be a petition and EPA's response.

1  That doesn't make any sense just right on its face.
2          **THE COURT:**  Isn't there also an interpretation to say
3  an opportunity to have such petition considered by the Court,
4  that it -- it may define some limits?
5      It maybe does have some definitional parameters here.  You
6  can't start introducing whole new things.  But things like
7  intervening studies right on point, or experts to explain
8  what's in the petition, it may affect the scope.  And maybe
9  that's a fair reading of that, because it does say "such
10 petition."
11     It doesn't mean -- you know, again, sky is not the limit
12 with respect to petition.  It's got to be reasonably related.
13 And maybe, as we do in many other proceedings, maybe the
14 presumption is if you're going to introduce something new there
15 has to be some indication why that wasn't in there.
16     Was there diligence?  You know, intervening new facts, et
17 cetera, is the kind of thing that might be -- new studies is
18 the kind of thing that there's a good reason not to have it in
19 such petition.
20     So it's not necessarily one extreme or the other.  Maybe
21 "such petition" can be given some meaning because it's meant to
22 define, like, a complaint.
23     That's why we have complaints.  It defines a parameter.
24 You can't add new causes of action on the eve of trial.  That
25 doesn't mean you can't develop evidence in furtherance of the

1  allegations.
2       **MR. RAVE:**  Except they were supposed to do that before
3  they submitted the petition in the first place.
4       **MR. CONNETT:**  Well, we did.  We presented a pretty
5  comprehensive petition.  But that doesn't mean we're now -- I
6  mean, the statute is clear that doesn't -- you're not frozen in
7  time.
8       We now have to -- we made factual allegations in our
9  petition.  We made factual allegations.  There was virtually no
10 process after that.  And now we -- our burden is to come to
11 this court and to show the evidence to prove up our factual
12 allegations.  And that's what we intend to do.
13      And we believe with some limited discovery that will
14 further allow us to meet our burden.  And that's the right as
15 provided by Congress.
16      **MR. RAVE:**  Your Honor, that's what they should do when
17 they submit the petition.  And they did, they submitted 300
18 some studies along with --
19      **THE COURT:**  So is there a problem if they had an
20 expert, in your view, talk about those studies and what they
21 mean?
22      **MR. RAVE:**  No, Your Honor.  I think we've said that in
23 our briefing a couple of times, that we understand.  But that's
24 simply a recognized exception to record review.
25      **THE COURT:**  All right.  And what if they discover

1  something they didn't have access to before, reasonable access
2  to, like a new study or something in the files of the EPA that
3  is enlightening, that they didn't have, that wasn't public,
4  would that be allowed to supplement the record?
5      **MR. RAVE:** Again, you know, we think that the EPA
6  should have new evidence, that the EPA should have the first
7  chance to review that and make a determination.
8      **THE COURT:** Well, in that case, if it's something out
9  of the files of the EPA --
10     **MR. RAVE:** Well, no.  And I don't think there's any --
11 anything -- what could be in the files of EPA?
12     **THE COURT:** I know.  That's what they're asking.
13     **MR. RAVE:** And they certainly could have requested it
14 through FOIA had they wanted to know --
15     **THE COURT:** Well, now you're imposing an additional --
16     **MR. RAVE:** Well, now they want to impose the burdens
17 through discovery, so it's --
18     **THE COURT:** Well, that may not be an inconsistent
19 thing.  You can still have discovery with "such petition" if
20 one were to read "such petition" as kind of at least putting
21 some boundaries on the parameters of what might be and to use
22 that as a basis but allow for some expansion since this is a
23 de novo proceeding.
24     **MR. RAVE:** Yes, Your Honor.
25     **THE COURT:** All right.  I will take this under

1  submission.  And I'm going to have to define what that means.
2  And if I do come out with a decision that does allow for some
3  expansion of the record, or some discovery, I'm going to direct
4  the parties to meet and confer.
5      My inclination is that, you know, certainly things that
6  are within the files of the EPA, it seems like if this is not
7  strictly limited, that may be fair ground because it's, you
8  know -- but we'll see.
9          **MR. RAVE:**  Right.  Although, I have more problems.
10 They're talking about interrogatories.  That's sort of
11 [unintelligible] opinions about things which don't seem
12 relevant to the evidence.
13         **THE COURT:**  I'm not so sure about that either.
14 Documents I can see.  Well, let me think about that.
15         **MR. CONNETT:**  And, certainly, since this is a case
16 where it will be presented in the form of expert testimony,
17 that -- that would entail expert discovery.  And we would have
18 the right to depose their experts.  They would have the right
19 to depose our experts.
20         **THE COURT:**  Well, and I think the question is:  What
21 are the experts going to testify on?  If they are going to
22 testify on things that have already been presented, I think
23 that's pretty clear.
24     If they're going to help the Court understand what these
25 300 studies mean, if they're going to present sort of a new

1  theory or something, that depends on what I determine is the
2  proper scope.
3          **MR. RAVE:**  Right.  And that's an important
4  distinction, Your Honor.
5          **THE COURT:**  I anticipate there would be cross expert
6  discovery.  Even if you take the same studies, experts may have
7  different interpretations.  And to present it to me, I think,
8  you'll want to have a fair chance to have discovery on that.
9      So I do anticipate there would be some of that.  The
10 question is scope.  And so I'm going to try to give some
11 definition of that --
12         **MR. RAVE:**  Thank you, Your Honor.
13         **THE COURT:**  -- in my order.
14         **MR. CONNETT:**  Thank you.
15         **THE COURT:**  All right.  I'm not going to set any
16 dates, other dates, other than let's set, as a control date, a
17 status conference 90 days out.  But I may advance that because
18 I'm hoping to get a decision out earlier.
19         **MR. RAVE:**  Is it possible to do that telephonically,
20 Your Honor, since I'm in D.C.?
21         **THE COURT:**  Yeah, we can do that, because you've come
22 out here, now, several times.  If it's just a status
23 conference, we can do that telephonically.
24         **MR. RAVE:**  Thank you, Your Honor.
25         **THE CLERK:**  April 19, at 10:30.

            **THE COURT:**  All right.  We'll talk to you then.  Or maybe before.  If I issue a decision in advance, it may be fruitful then for us to talk about scope of discovery.  Or if you have any questions about that, we can talk about that.  Okay.

            **MR. CONNETT:**  Thank you, Your Honor.

            **MR. RAVE:**  Thank you.

       (At 10:45 a.m. the proceedings were adjourned.)

                                - - - -


                        CERTIFICATE OF REPORTER

       I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Wednesday, June 20, 2018




                    *Katherine Sullivan*
       _____
            Katherine Powell Sullivan, CSR #5812, RMR, CRR
                        U.S. Court Reporter