September 27, 2018

Hon. Edward M. Chen
District Judge
U.S. District Court Northern District of California
450 Golden Gate Avenue, Courtroom 5-17th Floor
San Francisco, CA 94102

      Re:  Case No. 17-cv-02162-EMC: *Food & Water Watch, et al. v. Environmental Protection Agency, et al*. – Discovery Letter Brief

Dear Judge Chen:

  Over the past two months, counsel for the Parties (with full and complete authority on discovery matters) have engaged in extensive meet and confers[1] in an attempt to resolve several discovery disputes. Lead trial counsel for the Parties have now concluded that no agreement can be reached. By this letter, Plaintiffs ask this Court to compel Defendants to produce documents in response to certain Requests for Production and to produce a witness in response to Plaintiffs' Amended Notice of 30(b)(6) Deposition.

 **A)** **Statement of Plaintiffs' Position on Documents Requests:**

  On June 8, Plaintiffs served their First (and Only) Set of Requests for Production. (**Exhibit A**). Pursuant to the Court's discovery ruling (ECF No. 53, at 16:13-21), Plaintiffs limited their requests to scientific matters raised by Plaintiffs' Section 21 Petition. To help EPA focus and streamline its document search, Plaintiffs provided targeted requests related to specifically defined studies, papers, and meetings (Nos. 10-29 & 33-34) which are the only requests for production that Plaintiffs ask this Court to compel. For example, Plaintiffs requested EPA documents related to the first-ever NIH-funded study of fluoride and IQ, which was published in September 2017. (Nos. 14, 28, 34). This much anticipated and methodologically rigorous study (*which was funded, in part, by the EPA*) found that fluoride ingestion during pregnancy correlates with significant and sizable IQ loss in children and thus strongly supports Plaintiffs' position. Internal EPA documents showing, *inter alia*, that EPA's own scientists recognize the strength of this study (A) would be probative reliance material for Plaintiffs' experts, (B) would assist the Court in assessing the testimony of EPA's litigation experts, and (C) would help identify potential witnesses. A similar basis for discovery applies to each of the other specific studies, papers, and meetings that Plaintiffs have identified in their requests.

  Despite the probative value of EPA's internal assessments of these studies, EPA has taken the sweeping position that any views of its individual scientists are wholesale irrelevant. The only documents EPA has produced, therefore, are official EPA and third-party documents that were already available in the public domain. This runs counter to the Court's discovery ruling which permitted Plaintiffs to discover "evidence [that] would not have been previously available to Plaintiffs but is within the scope of the petition." (ECF No. 53 at 16:19-21.) EPA has not even *searched* for internal documents and, as such, has not produced a privilege log and has yet to assert a privilege for any document. While EPA has indicated it will broadly assert the deliberative process privilege, courts have made clear this privilege is not a blank check: i.e., the privilege does not apply unless the communication is *both* pre-decisional *and* deliberative. *E.g.*, *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920-23 (9th Cir. 1992). Plaintiffs ask this Court, therefore, to compel EPA to produce non-privileged internal documents that are responsive

---

[1] The meet and confers have been telephonic. Under the Court's Civil Standing Order 4(a), there is good cause for not having an in-person meeting because counsel for the Parties are located on different coasts.

to Request Nos. 10 to 29 and 33 to 34, and, to the extent EPA asserts a privilege, a privilege log. Plaintiffs ask that the privilege log provide: (1) the date of the document, (2) author, (3) recipient, (4) subject matter of the document, and (5) basis of privilege.

### B) Statement of Plaintiffs' Position on Amended 30(b)(6) Deposition Notice:

Plaintiffs' Amended 30(b)(6) Deposition Notice seeks to clarify whether, and to what extent, EPA's current safety standards (the MCLG and RfD) considered neurotoxicity as a potential risk of fluoride. (**Exhibit B**) Based on the sworn and unsworn representations that Plaintiffs have received so far in this case, it appears EPA's safety standards did not meaningfully consider fluoride neurotoxicity, and, as such, cannot be used to demonstrate a neurological safe level of fluoride. A 30(b)(6) deposition of an EPA representative will help to resolve this material issue. Yet, despite the limited scope of Plaintiffs' Amended Notice, EPA is refusing to produce a witness on the following meritless grounds:

First, EPA contends it is irrelevant that EPA's fluoride safety standards fail to establish a neurologically safe level of fluoride, because such evidence, *by itself*, fails to satisfy Plaintiff's burden of affirmatively proving a risk. The relevance and admissibility of evidence does not depend, however, on whether the evidence proves, by itself, the ultimate conclusion. Second, EPA contends the deposition is unnecessary because the issues have been addressed in prior written discovery and/or publicly available documents. Courts have consistently ruled, however, that this is not a proper basis to avoid the obligations imposed by Rule 30(b)(6). *E.g.*, *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 539-541 (D. Nev. 2008). Third, EPA suggests that the 30(b)(6) deposition would invade the deliberative process privilege. However, a deposition of an EPA officer about matters already decided and acted upon is, by its nature, post-decisional and non-deliberative and thus not subject to the deliberative process privilege. *See N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 152–53 (1975) ("[T]he public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted.") Fourth, EPA erroneously claims that the deposition amounts to expert discovery, but Plaintiffs are seeking to find out "the reasons which did supply the basis for an agency policy actually adopted," *id.* at 152-53, which is a factual inquiry, not an expert one. The deposition is thus a proper subject of fact discovery.

### C) Statement of EPA's Positions:

Under amended Rule 26(b), relevance alone will not justify discovery; discovery must also be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b); *see also* Fed. R. Civ. P. 26 committee notes. This Court has already determined that "discovery should be focused on *scientific evidence and expert discovery* regarding the risk of injury to health or the environment posed by the chemical substances at issue in Plaintiffs' petition." (ECF No. 53 at 16) (emphasis added). Instead, Plaintiffs' discovery unnecessarily focuses on internal discussion and the personal opinions of agency personnel. Given the scope of discovery already defined by the Court, EPA searched for and produced responsive documents relevant to the existence of scientific studies and data rather than EPA's interpretation of that data.

Specifically, Plaintiffs' RFPs 10-11 seek "[a]ll documents and correspondence that relate to the September 8, 2014 meeting" between Plaintiffs and EPA. Such requests are immaterial and not proportional to the needs of the case because this Court has already determined that the "sufficiency of the EPA's reasons for denying the petition or the correctness of the EPA's analysis or conclusion" are not at issue. (ECF No. 53 at 9).

Next, Plaintiffs' RFPs 12-29 and 33-34 seek "[a]ll documents and correspondence that relate to" specifically defined studies. To the extent Plaintiffs' requests sought information that reflects upon EPA's

internal discussion of those studies, EPA objected on the grounds that any discovery concerning the interpretation of scientific or technical issues that require specialized knowledge falls under the scope of Fed.R.Civ.Evid. 702 and Fed.R.Civ.P. 26(a). EPA will produce such information during expert discovery pursuant to the scheduling Order. Additionally, EPA flagged for Plaintiffs the potential that such requests likely impinge on EPA's deliberative process privilege. Even assuming there is correspondence reflecting statements that contradict EPA policy, the deliberative process privilege "'prevent[s] injury to the quality of agency decisions' by ensuring that the 'frank discussion of legal or policy matters' in writing, within the agency, is not inhibited by public disclosure." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (citation omitted). The privilege does not exclude factual information and "allow[s] agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of State of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992), as amended on denial of reh'g (Sept. 17, 1992).* Nevertheless, Plaintiffs implicitly reflect their desire to harm the agency by attacking its credibility through compelled testimony of its own scientists. In any case, EPA has not asserted the privilege because the information sought by Plaintiffs is immaterial in the first instance. Because this discovery seeks to reflect on the correctness of EPA's conclusions, the issue is not germane to a claim or defense. "Rather, the purpose of judicial review is to establish 'to the satisfaction of the court by a preponderance of the evidence' that there is in fact [scientific] evidence of an unreasonable risk of harm." (ECF No. 53 at 9). Thus, EPA will defend against the sufficiency of Plaintiffs' scientific contentions through expert testimony.

      EPA also objected to Plaintiffs' deposition notice on grounds similar to those addressed above. The amended notice states that Plaintiffs will withdraw Topics 3-4 if EPA provides sworn statements confirming what it has already established through written discovery and party conferences. *See* Exhibit B. Plaintiffs have not identified any legal or logical need for a sworn statement that justifies the burden to EPA of designating a representative to testify on these topics. Given the emphasis placed on proportionality and the tailoring of discovery under amended Rule 26(b), *Great Am. Ins. Co. of New York* does not carry substantial weight. While there may be circumstances where dual-pronged discovery tactics might be justified, Topics 3-4 are not reasonably tailored to the needs of this case and are unnecessarily duplicative.

      Plaintiffs assert that Topics 1-2 seek to clarify questions related to EPA's MCLG for fluoride and associated reviews under the Safe Drinking Water Act. While EPA takes the position as a matter of policy that neurotoxicity is not a risk of concern at doses below those associated with the MCLG and RfD, EPA is not required to defend that policy position in this litigation. Moreover, in public documents addressing the issue which have already been provided to Plaintiffs, EPA has noted that the available data on neurotoxicity are not sufficient to assess the public health relevance to the U.S. population. Thus, Plaintiffs are unable to identify how inquiry into the MCLG for fluoride is relevant to the availability and existence of scientific studies and data necessary to demonstrate an unreasonable risk. Even if the Court were to find the MCLG an arguably relevant topic of inquiry, Plaintiffs' attempt to discover facts supporting contentions made and positions taken by EPA through a Rule 30(b)(6) deposition is inefficient and unreasonable because the factual and scientific predicates for EPA's denial of the petition are publicly expressed and identified in the document denying the petition. Under Rule 26, courts shall limit discovery if that which is sought is obtainable from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i).

      Plaintiffs have not provided a convincing explanation of how the disputed discovery relates to the only fact "of consequence" in this litigation—whether there is scientific evidence of an unreasonable risk of injury. *See* Fed.R.Evid. 401. Accordingly, the Court should deny Plaintiffs' request.

Respectfully submitted,

*/s/ Michael Connett*  
C. ANDREW WATERS  
MICHAEL CONNETT  
WATERS, KRAUS & PAUL  

*Attorneys for Plaintiffs*

JEFFREY H. WOOD  
Acting Assistant Attorney General  
Environment and Natural Resources Division  

*/s/ Debra J. Carfora*  
(by permission)  
DEBRA J. CARFORA  
JOHN THOMAS H. DO  

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing this 27th day of September, 2018, upon all ECF registered counsel of record using the Court's CM/ECF system.

                                              /s/ *Michael Connett*
                                            MICHAEL CONNETT
                                            Attorney for Plaintiffs