December 12, 2018

Hon. Edward M. Chen
U.S. District Court Northern District of California
450 Golden Gate Avenue, Courtroom 5-17th Floor
San Francisco, CA 94102

                **Re: Case No. 17-cv-02162-EMC:** *Food & Water Watch, et al. v. EPA, et al*. – **Second Discovery Letter Brief**

Dear Judge Chen:

      Pursuant to the Court's order (ECF No. 68), Defendants produced a privilege log for 391 documents. The subject of this dispute concerns 61 documents that Plaintiffs contend are not protected by the deliberative privilege. Lead counsel with full authority on discovery matters have met and conferred[1] and concluded that no agreement can be reached. Plaintiffs thus ask this Court to compel Defendants to produce these documents.

    A)   <u>Statement of Plaintiffs' Position:</u>

        <u>Category 1</u>: **"Ongoing Consideration of Health Effects Due to Exposure to Fluoride"**

      The Court granted Plaintiffs' motion to compel because "EPA's documents and correspondence relating to the specified studies are relevant to . . . whether the ingestion of fluoride in drinking water causes neurotoxic effects." (ECF No. 68 at 1:18-21.) The Court's order thus contemplated that EPA would produce documents containing the EPA's evaluation of the neurotoxicity studies at issue. Despite this, EPA has asserted the deliberative privilege for 30 documents on the basis that they reflect "the evaluation of EPA's ongoing consideration of health effects due to exposure to fluoride in drinking water." (**Exhibit A**)

      It is axiomatic that the deliberative privilege only applies to documents that are *both* "pre-decisional" *and* "deliberative," *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). "Like all evidentiary privileges that derogate a court's inherent power to compel production of relevant evidence, the deliberative privilege is narrowly construed." *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000). It is EPA's burden to establish the applicability of the privilege. *Id.*

      EPA has failed to satisfy either prong. <u>First</u>, EPA failed to identify a *decision* that the evaluations *predate* and were prepared to assist. Instead, EPA nebulously asserts that the evaluations are "necessary to carry out EPA's mission of reducing the health risks to persons served by public water systems," and that EPA "may choose to revise" the fluoride standard at some indefinite point in the future. (**Exhibit C**, at 8 ¶ 11.) As the Ninth Circuit has explained, however, "[a]ny memorandum always will be 'predecisional' if referenced to a decision that possibly may be made at some undisclosed time in the future." *Assembly*, 968 F.2d at 921. <u>Second</u>, EPA has failed to show that the evaluations are "deliberative" in the way that courts have defined the term. Specifically, EPA has described the evaluations as "discussions of fluoride's health effects." (Exhibit C, at 11, ¶ 8.) Scientific evaluation, however, is not deliberative unless it involves "the exercise of policy-oriented judgment." *Greenpeace*, 198 F.R.D. at 544 (citing *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1437–39 (D.C. Cir. 1992); *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir. 1980)). Consistent with this, the district court in *Natural Resources Defense Council vs. U.S. Dep't of Defense*, 442 F. Supp. 2d 857, 874-75 (C.D. Cal. 2006) rejected EPA's assertion of deliberative privilege for "health effects" documents it seeks to withhold here. The Court should do the same here.

---

[1] The meet and confers have been telephonic. Under the Court's Civil Standing Order 4(a), there is good cause for not having an in-person meeting because counsel for the Parties are located on different coasts.

1

ADDENDUM: On December 8, 2018, a week after Plaintiffs served their half of this letter brief, EPA served an amended privilege log which contains factual assertions that contradict the previous November 2, 2018 privilege log. Specifically, EPA now contends that all of the evaluations in Category 1 were part of EPA's "Six Year Review" of its safe drinking water standards. However, as can be seen in **Exhibit D**, the prior privilege log had a separate category for evaluations related to the Six Year Review, *and none of the evaluations at issue in Category 1 were included in that list*. Further, the sworn declaration by David Ross specifically distinguished between the "ongoing discussions" at issue here with the evaluations specifically related to the Six Year Review. *See* Exhibit C (compare para 11 with para 8).

### Category 2: Documents Related to NTP's Systematic Study of Animal Studies

The second category of documents that Plaintiffs seek to compel are 31 documents related to a systematic study of animal research on fluoride neurotoxicity that was conducted by a third party (National Toxicology Program, NTP). (**Exhibit B**.) As with Category 1, there is no actual EPA decision or policy at issue here. EPA contends that the documents relate to EPA's "final comments and evaluation" of the study, and thereby expansively treats "final comments and evaluation" of a third-party study as a "decision" or "policy." (Exhibit C, at 6-7, ¶ 10). Further, the communications at issue are matters of scientific, not policy, judgment. *Greenpeace*, 198 F.R.D. at 544 ("[T]he fact that scientific expertise is brought to bear 'does not transform interpretations of facts into communications protected by the deliberative process privilege.'") Indeed, the NTP publication does not purport to set forth a "policy" on fluoride; it purports, instead, to be an objective, scientific assessment of the animal research on fluoride neurotoxicity.[2] Pursuant to the Court's Order, therefore, EPA should produce these documents about the study as they "are relevant to the ultimate issue the Court must decide—whether the ingestion of fluoride in drinking water causes neurotoxic harm." (ECF No. 68, at 1:18-21).

**A) Statement of Defendants' Position:**

As an initial matter, EPA seeks leave to fully brief and be heard on the issue before the Court. The allotted space and letter brief form is inadequate to properly defend and protect the asserted privilege and vital government interest in the quality of administrative decision-making.[3] The deliberative process privilege is "predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Dow Jones & Co. v. Dep't. of Justice*, 917 F.2d 571, 573 (D.C. Cir. 1990). Additionally, the Court must conduct a fact-based inquiry concerning the "function of the documents in issue in the context of the administrative process that generated them." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 138 (1975); *see also Assembly of Cal*, 968 F.2d at 919 (explaining that "this is a fact based inquiry."). To that end, if the Court does not allow for briefing, EPA requests that the Court consider the second declaration of David P. Ross, Assistant Administrator for the EPA Office of Water, attached hereto as **Exhibit E**, describing the information that is protected by the privilege and setting forth the reasons for protecting it. Attached to the declaration is EPA's amended privilege log (limited to those documents in dispute) describing with further specificity the nature and context of each document and justification for the assertion of the privilege. If the Court is still not satisfied with EPA's assertion of the privilege, EPA requests that the Court conduct an *in camera* review of the documents prior to ordering that they be produced. Should the Court ultimately decide that any of the documents should be produced, EPA requests a protective order shielding the documents from public disclosure and ensuring that the documents will not be used for purposes other than this litigation.

The deliberative process privilege applies to documents that are "predecisional" and "deliberative," and is designed to protect "the confidentiality of the give-and-take that occurs among agency members in the formulation of policy." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). "A

---

[2] The final copy of the NTP review is available at: https://ntp.niehs.nih.gov/ntp/results/pubs/rr/reports/rr01_508.pdf.

[3] On or before December 14, EPA will provide Plaintiffs with a Third Discovery Letter Brief seeking a protective order shielding EPA from having to produce certain witnesses for deposition. EPA recommends that the Court consider the issues presented by both letter briefs concurrently, as there is significant overlap in interests that EPA seeks to protect.

'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Assembly of Cal.*, 968 F.2d at 920 (internal citations omitted). A document is deliberative if 'disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id.* The privilege covers both inter- and intra-agency deliberative documents, *Modesto Irrigation Dist. v. Gutierrez*, No. 1:06-cv-00453 OWW DLB, 2007 WL 763370, at *6 (E.D. Cal. Mar. 9, 2007). The documents at issue here were all appropriately claimed as privileged.

The government is not required to point to a specific decision as long as it can demonstrate that the documents were prepared to assist decisionmaking on a specific issue. *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002). The court's decision in *Greenpeace* ignores the Ninth Circuit's recognition that the purpose of the privilege is to protect "a process by which governmental *decisions and policies* are formulated." *Nat'l Wildlife Fed'n*, 861 F.2d at 1117 (emphasis added); *see also Ctr. for Biological Diversity v. Norton*, 336 F. Supp. 2d 1155, 1159 (D.N.M. 2004) (finding *Greenpeace* "unduly narrow"). Nevertheless, unlike the objective scientific evaluation of the type described by the court in *Greenpeace,* the documents at issue here were specifically prepared for advising EPA decisionmakers in regulatory matters under EPA's jurisdiction and in making policy recommendations to other Executive Branch agencies. *See* Second Ross Decl. ¶¶ 8-12.[4] The documents reflect the discussion and resolution of science-based policy considerations; including, for example, how to exercise discretion in evaluating the strength and utility of studies and in resolving uncertainties and variabilities presented by the secondary evidence available for evaluation of fluoride. In instances where such uncertainties are present, the administrative outcome can depend not only on objective scientific fact but also on the discretionary exercise of science-policy decisionmaking. Disclosure of documents revealing the give and take leading to the exercise of such discretion could, therefore, undermine the public's confidence in regulations that govern public health, ultimately hindering EPA's ability to carry out its mission of protecting human health and the environment from contaminants in drinking water. *See* Second Ross Decl. ¶ 13.

The deliberative process privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The contested documents at issue here reflect the tentative opinions and recommendations of federal government employees across a number of Executive Branch agencies that work collaboratively to understand the effects that exposure to fluoride have on human health and to contemplate the science and public policies to address those effects. Such communications may not have been made if staff knew that their candid views would be disclosed. *See* Second Ross Decl. ¶ 13. Indeed, the contested documents were instrumental to the development of science and public policies, not at issue in this litigation, concerning the public's exposure to fluoride. *See Coastal States*, 617 F.2d at 866 (explaining that the privilege protects against "premature disclosure of proposed policies before they have been finally formulated or adopted."); s*ee also* Second Ross Decl. ¶¶ 8-12. Further, if EPA is ordered to produce the documents, the resulting harm to EPA's deliberative process would outweigh any potential benefit to Plaintiffs because disclosure could "confus[e] the issues and mislead[] the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Id.* The harm to EPA, along with the predecisional nature and deliberative context of each contested document is further provided for in the Second Declaration of David P. Ross and amended privilege log attached thereto.

---

[4] On the eve of filing, Plaintiffs removed 6 documents, EPA0121687, EPA0148194, EPA0148216, EPA0160464, EPA0163811, and EPA0227737, from the scope of this letter brief. Mr. Ross was unavailable to amend paragraphs 3 and 9 of his declaration to remove reference to these documents prior to filing.

Respectfully submitted,

*/s/ Michael Connett*
C. ANDREW WATERS
MICHAEL CONNETT
WATERS, KRAUS & PAUL
*Attorneys for Plaintiffs*


/s/ *Debra J. Carfora* (by permission)
DEBRA J. CARFORA
United States Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
*Attorney for Defendants*