# Exhibit C

# Declaration of David Ross Asserting the Deliberative Process Privilege

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| FOOD & WATER WATCH, INC, et al., Plaintiffs, <br><br> v. <br><br> U.S. Environmental Protection Agency, et al., <br><br> Defendants. | Case No.: 17-cv-02162-EMC |

# DECLARATION OF DAVID P. ROSS ASSERTING THE DELIBERATIVE PROCESS PRIVILEGE

I, David P. Ross, declare that the following statements are true and correct to the best of my knowledge and belief, that they are based upon my personal knowledge and on information supplied to me by employees of the United States Environmental Protection Agency ("EPA"), and that they are provided in conjunction with the Privilege Log of the United States submitted in the above-captioned case.

1. I am the Assistant Administrator for the EPA Office of Water ("OW") which is located at 1200 Pennsylvania Avenue, NW, Washington, D.C. 20460. OW develops national programs, policies and regulations to address contaminants in drinking water and to restore and maintain oceans, watersheds, and their aquatic systems to protect human health, support economic and recreational activities, and provide healthy habitat for fish, plants and wildlife. Among other responsibilities, OW is responsible for administering the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300f et seq. In the above-captioned action, Food and Water Watch seeks an order compelling EPA to ban the purposeful addition of fluoride into drinking water under section 21 of the Toxic Substances Control Act, 15 U.S.C. § 2620.

1

2. On October 3, 1984, the Administrator of EPA delegated to Assistant Administrators the authority to assert, during judicial litigation, the deliberative process privilege with respect to documents and materials within the control of the Agency, such as documents and materials developed by personnel in their respective offices on EPA's behalf (National Delegation 1-49, October 3, 1984; TN 106 approved July 20, 2016).

3. EPA is responding to the First Set of Requests for Production of Documents, submitted by Plaintiffs in the above-captioned case. Attached to this Declaration is a list of 205 documents for which OW asserts the deliberative process privilege. In asserting the deliberative process privilege, EPA limits its claim of privilege to those documents that are deliberative, the release of which would harm the important government interest in the quality of administrative decision-making. In determining which documents are subject to the deliberative process privilege, EPA has applied the following principles: (1) the privilege protects from disclosure only those documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions are made or policies are formulated; (2) withheld material must be opinion, deliberation, advice, recommendation, or evaluation by those responsible for advising on the advantages and disadvantages of proposed agency decision or policy; (3) withheld material must be directed toward formulation of a policy or decision being debated within the agency at the time; (4) withheld material must be pre-decisional, must contain advice or recommendations, and must not merely comment upon already established policy.

4. In cases involving a large volume of materials, the 1984 policy memorandum permits the Assistant Administrator to assert the deliberative process privilege for documents

based on a personal briefing or review of a representative sample of those documents. I have received a personal briefing from OW staff and the EPA Office of General Counsel ("OGC") regarding the use of the deliberative process privilege for these documents and my staff has provided me with 14 documents that constitute a representative sample of the 205 documents for which OW asserts the deliberative process privilege. I have examined all of the documents provided in the representative sample, each of which is explained in the paragraphs below.

5. Based on the briefing provided and on my review of the representative sample of documents, I have concluded that these documents satisfy the deliberative process privilege principles. Specifically, all of these documents were prepared by inter- and intra-agency personnel to develop and offer analysis, recommendations, comments, or advice on then-pending agency decisions regarding potential alteration of the existing national primary drinking water regulations for fluoride as required by law and EPA's ongoing consideration of fluoride's health effects, which is part of the process by which governmental decisions and policies are formulated.

6. The 14 representative sample documents I personally reviewed were selected from three categories: (1) drafts and discussions regarding EPA's Six Year Review 3 under the SDWA; (2) drafts and discussions of EPA's comments on systematic literature reviews conducted by the National Toxicology Program ("NTP"); and (3) inter- and intra-agency deliberations on important legal and policy issues relating to EPA's ongoing consideration of fluoride's health effects.

7. The first category of documents I reviewed were drafts and discussions regarding EPA's SDWA Six-Year Review 3 (82 Fed. Reg. 3518 (Jan. 11, 2017)). Under SDWA section

1412(b)(9), 42 U.S.C. § 300g-1(b)(9), EPA must conduct a review every six years of existing national primary drinking water regulations and determine which, if any, need to be revised. The purpose of the "Six-Year Review" is to evaluate current information for regulated contaminants to determine if there is new information on health effects, treatment technologies, analytical methods, occurrence and exposure, implementation and/or other facts that provides a health or technical basis to support a regulatory revision that will improve or strengthen public health protection.

8. This first category of documents contains internal discussions about specific decision points in how fluoride would be addressed in the Six-Year Review 3. Examples of the types of documents that fall into this category that were included in the representative sample are:

- Pre-decisional and draft briefing materials containing staff analysis and input for the OW Deputy Assistant Administrator for the Six-Year Review 3 of National Primary Drinking Water Regulations (EPA0219019). Options selection briefings, by their very nature, are designed to provide an array of options and staff-level opinions to policymakers for their review and ultimate decision for how to proceed in using EPA's regulatory authority.
- Email discussions of edits to a draft of the fluoride section of EPA's third Six-Year Review of existing national primary drinking water regulations (EPA0112047). The discussion is pre-decisional and reflects the internal deliberation of EPA staff that led to the development of the agency's position

regarding the existing regulations for fluoride in EPA's third Six-Year Review, which, along with the basis therefore, was publicly released in December 2016.

- Edits to a draft of the fluoride section of EPA's Six-Year Review 3 - Health Effects Assessment for Existing Chemical and Radionuclide National Primary Drinking Water Regulations – Summary Report (USEPA, 2016(h)) (EPA0029027). These drafts, circulated among EPA staff, contain annotations and edits that reflect EPA staff opinions, evaluations, and recommendations as to the technical analysis and evaluation of EPA's ongoing consideration of health effects due to exposure to fluoride in drinking water.

- Draft, pre-decisional response to the comments received from the interagency review process under Executive Order 12866 on the Six Year Review 3 Federal Register Notice (EPA0081780).  Under EO 12866, certain EPA actions are subject to review by the Office of Management and Budget and other agencies, which gives a formal opportunity for frank discussion between agencies and the opportunity to improve actions based on input from across the Federal government. While a summary of the changes made during the EO 12866 process is available on the public docket, release of the draft response to comments would expose internal discussions that EPA held regarding what changes should be made in response to the comments received from other Agencies and pre-decisional bases for doing so.

- Pre-decisional draft of "Weight-of-Evidence" Document for Reproduction and Developmental Health Effects, Intelligence Quotient (IQ) Health Effects in

Children and Effects on the Endocrine System due to Exposure to Fluoride in Drinking Water. The draft, written by an EPA contractor and circulated among EPA staff, contains annotations that reflect EPA staff opinions, evaluations, and recommendations as to the technical analysis and evaluation of studies leading up to the development of the Six-Year Review 3 (EPA0116793).

9. The second category of documents that I reviewed were drafts and discussions of EPA's comments on systematic literature reviews conducted by the NTP, a division of the National Institutes of Health in the US Department of Health and Human Services. In 2015, NTP requested comments on nominations for evaluation of non-cancer health outcomes of chemicals. Once NTP selected fluoride for evaluation and systematic review of the literature regarding neurotoxic effects of fluoride, NTP sent EPA confidential drafts and requested assistance during the interagency comment period. Such interactions and requests for interagency comments from other Federal agencies are routine as EPA strives to share expertise between subject matter experts in order to improve the Agency's scientific products and so that, among other things, government resources are used most efficiently and effectively to protect public health and the environment while making sure that EPA efforts are not duplicated.

10. Examples of the types of document that fall into this second category that were included in the representative sample are:

- Draft annotations and edits on the Proposed NTP Systematic Review on Fluoride Exposure and Potential for Developmental Neurotoxicity, which was shared between EPA employees before they were sent to NTP in the interagency comment process (EPA0120789). EPA's internal annotations and comments

6

provide views and recommendations of EPA staff and managers related to the development of EPA's final comments and evaluation of the proposed study.

- Communications between EPA employees that reflect a pre-decisional exchange of ideas and opinions concerning potential EPA comments on the confidential draft of NTP's fluoride systematic literature review report of animal studies (EPA0120731 and EPA0323473). EPA's internal annotations and comments as well as any subsequent discussions on the comments, provide views and recommendations of EPA staff and managers related to the development of EPA's final comments and evaluation of the study.

- Communications between EPA and NTP staff discussing the NTP Systematic Review of Fluoride Exposure and Potential for Developmental Neurotoxicity. These documents reflect upon the interagency review process and provide the views and recommendations from EPA staff that led to the development of EPA's final comments and evaluation of the study (EPA0112948).

- Draft Communication Strategy and Messaging NTP Program of Study on Fluoride reflecting interagency cooperation concerning the characterization of the NTP animal literature review and the ongoing consideration of health effects due to exposure to fluoride in drinking water (EPA0247044). These documents reflect upon the interagency review process and provide the views and recommendations from EPA staff that led to the development of EPA's final recommendations to the NTP.

- Pre-decisional interagency discussion coordinating on the draft communication strategy and messaging for the NTP systematic literature review on fluoride (EPA0107153). These documents reflect upon the interagency review process and provide the views and recommendations from EPA staff leading to EPA's final recommendations to the NTP.

11. The third category of documents that I reviewed were ongoing discussions of fluoride's health effects as necessary to carry out EPA's mission of reducing the health risks to persons served by public water systems. See, e.g., SDWA section 1412(b)(1)(A), 42 U.S.C. § 300g-1(b)(1)(A). As described in ¶6, SDWA requires regular review of EPA's implementing regulations; fluoride is a contaminant regulated by SDWA regulations. In addition, EPA may choose to revise its SDWA regulations, including those that apply to fluoride, at any time, and EPA is regularly consulted by other federal agencies, including the Centers for Disease Control and National Institutes of Health, regarding the health effects of chemicals the Agency regulates, including fluoride.

12. Examples of the types of documents that fall into this third category that were included in the representative sample are:

- Interagency discussion concerning the validity of scientific reports that reflect upon EPA's recommendations and ongoing evaluation of health effects due to exposure to fluoride in drinking water (EPA0112798).

- Pre-decisional internal Agency discussion concerning studies and ongoing interagency coordination that reflect upon EPA's recommendations and ongoing

8

evaluation of health effects due to exposure to fluoride in drinking water (EPA0118380).

- Pre-decisional discussion regarding draft public statements being considered by CDC which reflect on an evaluation of EPA's ongoing consideration of health effects due to exposure to fluoride in drinking water (EPA0148216). These documents reflect upon the interagency review process and provide the views and recommendations from EPA staff leading to EPA's final recommendations to CDC.

13. If the candid views of staff contained in these documents are required to be disclosed, the quality of future inter- and intra-agency deliberations on important legal and policy issues, such as the EPA's ongoing consideration of health effects due to exposure to fluoride in drinking water, would suffer. In my opinion, EPA and other federal employees would hesitate to give their complete, honest recommendations on issues based on fears that these candid recommendations would be provided to, and misunderstood by, the public and other entities with whom EPA interacts. If the authors of the documents had known that the documents would someday be released to the public, then these communications would likely not have been made or may have been limited, and EPA would not have been able to effectively carry out its responsibilities under the SDWA.

14. Staff persons involved in these communications do not have authority to make final decisions on the matters under discussion. Staff discussions, evaluations, or recommendations expressed in the documents at issue have no official or binding effect and may not represent the ultimate reasons for the Agency's actions. Thus, release of the documents

would cause public confusion about the reason for an Agency decision, ultimately hindering the Agency's ability to carry out its mission of protecting human health and the environment from contaminants in drinking water. The resulting harm to the Agency's internal deliberation process outweighs any potential benefit to the public or litigant from disclosure of the documents because their release would likely chill the free and open communication among staff and policy makers.

15. For the reasons explained above, I assert the deliberative process privilege for each of the 205 documents identified in Attachment 1 to this Declaration and referenced in the Privilege Log of the United States submitted for the above-captioned case.

Pursuant to 28 U.S.C. § 1746, and under penalty of perjury, I declare the foregoing is true and correct to the best of my knowledge.

Date  11/16/18

David P. Ross
Assistant Administrator
Office of Water
U.S. Environmental Protection Agency

Attachment 1 to Declaration of David P. Ross
List of Deliberative Process Documents