December 20, 2018

Hon. Edward M. Chen
U.S. District Court Northern District of California
450 Golden Gate Avenue, Courtroom 5-17th Floor
San Francisco, CA 94102

**Re:**  Case No. 17-cv-02162-EMC: *Food & Water Watch, et al. v. EPA, et al*. – Third Discovery Letter

Dear Judge Chen:

On November 21, Plaintiffs noticed the depositions of three EPA employees.  EPA objects to these depositions and seeks a protective order shielding it from the disclosure of information protected by the deliberative process privilege.  Lead counsel with full and complete authority on discovery matters have conferred telephonically[1] and have concluded that no agreement can be reached.

**A) Statement of EPA's Position:**

EPA seeks a protective order prohibiting the noticed depositions because they are duplicative, unnecessary, and seek inadmissible testimony protected by the deliberative process privilege. In order to adequately defend the asserted privilege and vital government interests related to agency decisionmaking, EPA seeks leave to fully brief and be heard on the issue before the Court. Federal Rule of Civil Procedure 26(c) provides that, for good cause shown, a court may issue a protective order precluding or limiting discovery against a party as required by the interests of justice. Good cause is shown here. First, Plaintiffs have already deposed EPA concerning the scientific bases that underlie EPA's regulation of Fluoride under the Safe Drinking Water Act (SDWA).[2] Having to produce three additional witnesses would be duplicative and burdensome, especially because the opinions of individual agency staff are not expressions of EPA policy or decisionmaking. Second, the testimony Plaintiffs seek to elicit is clearly for the purpose of challenging the scientific merit of EPA's existing regulations. But such inquiry is irrelevant because neither the factual nor legal validity of EPA's regulation of Fluoride under the SDWA is at issue in this litigation. *See Order* at 14 (ECF No. 53) (the purpose of judicial review "is to determine whether an unreasonable harm is proved to the satisfaction of the court, not, e.g., whether the EPA's actions appear supported by substantial evidence."). It is also inappropriate because it would reveal the deliberative process leading to such regulation.

By way of background, EPA's MCL and MCLG for Fluoride are based on the toxicity endpoint for severe dental fluorosis. The science concerning the toxicity endpoints from exposure to Fluoride has been debated for decades. In 2006, the National Research Council published a report, completed at the request of EPA, to review potential toxicity endpoints for Fluoride. Since the conclusions of the NRC report were published, EPA has considered revisions to its regulation of Fluoride for other potential health effects, including neurotoxicity, during the statutorily mandated review cycles.[3] Each time EPA has reviewed the standards, it has determined that its regulation of Fluoride in drinking water should not be revised. Plaintiffs now seek to depose particular EPA staff

---

[1] There is good cause for a telephonic conference because counsel for the Parties are located on different coasts.
[2] Under SDWA, EPA is charged with establishing goals and standards for drinking water quality know as Maximum Contaminant Levels (MCLs) and Maximum Contaminant Level Goals (MCLGs).  Plaintiffs refer to the standards set for Fluoride under the SDWA as "safety standards," though EPA does not refer to them as such. Plaintiffs conducted a Rule 30(b)(6) deposition of EPA on October 15, 2018, for nearly 6.5 hours.  Topic number 1 concerned EPA's MCLG for Fluoride.
[3] *See, e.g.*, SDWA section 1412(b)(9)(six-year review provision directing the Agency to "review and revise" NPDWRs "as appropriate"). EPA works to evaluate the risks of contaminants, including fluoride, throughout the entire six-year cycle.

to inquire about their participation in this process and communications with the National Toxicology Program (NTP) during its reviews of fluoride.[4] Such inquiry is irrelevant and inappropriate.

While regulatory decisions to protect public health depend heavily on scientific information, the decision-making process requires the agency to resolve scientific conflicts and uncertainties in light of the agency's prior experience and specific statutory mandates. In other words, such regulatory considerations require the exercise of discretionary policy decision-making in the administrative resolution of scientific disputes. While Plaintiffs want to make this case about EPA's existing regulation of Fluoride under the SDWA, the legal claim before the Court seeks to compel EPA, using its authority under TSCA, to directly regulate or ban the fluoridation of community water systems based on the specific endpoint of neurotoxicity. The relevant provision of TSCA directs the Court to resolve the inherently controversial questions of scientific interpretation "without consideration of costs or other nonrisk factors." 15 U.S.C. § 2620 (b)(4)(B)(ii). The Court's inquiry, therefore, turns on the documentary data, rather than the merit of EPA's existing regulation under a completely different statutory scheme.

Even if EPA's regulation of Fluoride under the SDWA is marginally relevant, which EPA does not concede, it would not be appropriate to depose agency staff about agency decision-making in which they participated especially where, as here, the rationale of those final decisions is memorialized in public records. If certain recommendations or opinions were included as the basis for EPA's decisions, those recommendations are included in the public record and Plaintiffs have already had the opportunity to inquire as to the basis during their extensive October 15 deposition of EPA. The unofficial or non-public interpretations, discussion, comments, communications, or opinions by EPA staff, however, are part of the exchange of ideas—the give and take—central to the formation of such policy or decisions protected by the deliberative process privilege. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (explaining that the deliberative process privilege is designed to protect "the confidentiality of the give and take that occurs among agency members in the formulation of policy," and to encourage candid and open circulation of ideas and opinions). Such unofficial opinions are shielded by the privilege because they could "confus[e] the issues and mislead[] the public by . . . suggesting reasons and rationales for a course of action that were not in fact the ultimate reasons for the agency's action." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). For these reasons, EPA seeks a protective order prohibiting, or in the alternative, limiting the noticed depositions of EPA staff.

### B) Statement of Plaintiffs' Position:

EPA's motion for a protective order represents a sudden, and unjustified, change in position.[5] Plaintiffs first notified EPA of their intent to depose individual EPA scientists in October, and EPA agreed to make the witnesses available for deposition. (**Exhibit A**) In early December, after finalizing the schedule for the three depositions, EPA changed its position. The EPA is entitled to change its position, but it has failed to identify any legitimate basis, let alone extraordinary circumstances, for the sweeping relief it now seeks. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.")

First, the depositions are unquestionably relevant to the issues in this case. **Kristina Thayer** was the lead author of the National Toxicology Program's systematic review of animal research on fluoride neurotoxicity, and is currently the Division Director of EPA's Integrated Risk Information System (IRIS), which is a program at EPA that conducts risk assessments to establish the safe doses for chemicals (i.e., the "reference doses"). Plaintiffs seek to ask Thayer questions about the NTP study she authored, as well as questions about how EPA establishes

---

[4] Plaintiffs seek to depose Kristina Thayer, who was employed by NTP before working at EPA. EPA believes the topics of inquiry will cross into deliberative communications between the agencies that EPA seeks to protect in the dispute at issue in the Second Discovery Letter, and as such requests the Court to consider both issues together.

[5] EPA has also changed its position as to how the privilege dispute should be resolved. As memorialized in the October 30, 2018 Joint Statement, the Parties stipulated to resolve the dispute by "joint discovery letter brief." ECF No. 72 at 4:23-24. Despite this, EPA has now unilaterally asked the Court to have the issue "fully briefed." *See* 2nd Discovery Ltr. Br. at 2.

the safe dose for neurotoxicants like fluoride. Both of these matters are of obvious relevance to the case, and will assist the experts, as well as the Court, in determining whether the doses of fluoride currently added to public water supplies are safe according to EPA's own risk assessment procedures. **Paul Price** is the EPA scientist who wrote the safe drinking water standard ("MCLG") for fluoride back in the 1980s. It is a matter of public record that Price vehemently disagreed with the standard that the Agency asked him to write, as he believed it was too high to protect public health.[6] Plaintiffs seek to explore the basis for Price's concerns, which will assist the experts and the Court in determining how much weight to give to EPA's "safety" standard for fluoride in water. Finally, **Joyce Donohue** is a senior toxicologist in EPA's Office of Water. Donohue has been reviewing the scientific literature on fluoride for EPA for almost two decades, and was the principal author of EPA's 2010 risk assessment on fluoride. Plaintiffs seek to ask Donohue questions about the risk assessment, as well as recent EPA-funded studies which have found adverse neurological effects from prenatal fluoride exposure, including cognitive impairments and ADHD. This is testimony that the experts will be able to rely upon, and which will assist the Court in addressing the neurological risks posed by fluoridation chemicals.

Second, the deliberative process privilege is of no avail to EPA's motion. With respect to **Paul Price**, Plaintiffs do not intend to use any of the documents at issue in the Second Discovery Letter Brief, as the deposition will exclusively focus on publicly available documents that were created more than 25 years ago. *See* 5 U.S.C. § 552(b)(5) ("[T]he deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested.")  With respect to **Kristina Thayer** and **Joyce Donohue**, courts have repeatedly held that blanket assertions of deliberative privilege to quash a deposition are "premature," and that the proper procedure is to assert the privilege in response to specific questions. *E.g.*, *Alpha I, L.P. ex rel. Sands v. United States*, 83 Fed. Cl. 279, 289–90 (2008); *Libertarian Party of Ohio v. Husted*, 33 F. Supp. 3d 914, 920 (S.D. Ohio 2014). That said, Plaintiffs do not anticipate asking questions that will invade upon the deliberative privilege, as the privilege does not forbid questions about matters already decided and acted upon, including EPA's prior risk assessments on fluoride, EPA's policies and procedures for risk assessments in general, and NTP's animal study. *See N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 152–53 (1975) ("[T]he public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted.")

Third, contrary to EPA's contention, the depositions are not duplicative of the one EPA deposition that Plaintiffs have taken. EPA's 30(b)(6) representative, Edward Ohanian, had no knowledge of Dr. Price's concerns with the MCLG, and thus the deposition of Price will be entirely distinct from the 30(b)(6) deposition. Similarly, Ohanian was not involved with the NTP animal study, and Plaintiffs asked him no questions about it; thus, the deposition of Thayer will not be duplicative either. Lastly, Plaintiffs did not ask Ohanian any questions that Plaintiffs intend to ask Donohue concerning the recent EPA-funded studies which have found IQ loss and ADHD as a result of prenatal exposures to fluoride.

Fourth, EPA appears to contend that professional assessments by individual EPA scientists are not relevant if they are not official "expressions of EPA policy or decisionmaking." If EPA is making this argument, it is incorrect. Professional assessments of EPA scientists on the technical matters they are responsible for working on at the Agency are the type of material that experts can reasonably rely upon, and will help to assist the Court in assessing the competing testimony of the retained experts in this case. To the extent that such testimony could, in some instances, be characterized as expert testimony, it is within the scope of expert testimony that percipient witnesses can provide testimony as non-retained experts in developing "the factual underpinnings of the case." *Downey v. Bob's Disc. Furniture Holdings, Inc*., 633 F.3d 1, 6-7 (1st Cir. 2011).

---

[6] On the day the MCLG was announced, Price circulated a memo, which read, in part: "Up to now EPA, under the Safe Drinking Water Act, has regulated fluoride in order to prevent children from having teeth which looked like they had been chewing brown shoe polish and rocks. The old standard, which was based upon the consumer's average shoe size and the phase of the moon, generally kept fluoride levels below 2.4 mg/L. EPA in response to new studies, which only confirmed the old studies, and some flat out political pressure, has decided to raise the standard to 4 mg/L. This increase will allow 40% of all children to have teeth gross enough to gag a maggot."

Respectfully submitted,

/s/ *Debra J. Carfora*
DEBRA J. CARFORA
United States Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
*Attorney for Defendants*

*/s/ Michael Connett (*by permission)
C. ANDREW WATERS
MICHAEL CONNETT
WATERS, KRAUS & PAUL
*Attorneys for Plaintiffs*