DEBRA J. CARFORA
JOHN THOMAS DO
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
601 D Street, NW, Suite 8000
Washington, DC 20004
Tel.   (202) 514-2640
debra.carfora@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| FOOD & WATER WATCH, INC, et al.,<br><br>              Plaintiffs,<br><br>              v.<br><br>U.S. Environmental Protection Agency, et al.,<br><br>              Defendants. | Case No.: 17-cv-02162-EMC<br><br>**SUPPLEMENTAL BRIEFING RE: SECOND DISCOVERY LETTER (ECF NO. 79).** |

On March 12, 2019, the Court issued an Order requiring supplemental briefing on the parties' Second Discovery Letter, in which Plaintiffs seek to compel 61 documents withheld by the Environmental Protection Agency ("EPA") pursuant to the deliberative process privilege. (ECF No. 90). The Court requests that EPA identify the "policy decisions" for which certain withheld documents are predecisional.

## I. Decisions and Policies to Which the Withheld Materials are Predecisional

The withheld materials at issue in this brief reflect advisory opinions, recommendations, and deliberations of EPA staff requested by the National Toxicology Program ("NTP"). The documents identified in paragraph 10 of the Ross Declaration are predecisional to the government's policy concerning what association, if any, exists between fluoride and impairments in learning and memory, as published in the final report titled *Systematic Literature Review on the Effects of Fluoride on Learning and Memory in Animal Studies* ("Animal Literature Review"). The documents identified in paragraph 11 of the Ross Declaration are predecisional to NTP's decision concerning the initiation of a new government program studying potential adverse health effects in humans exposed to fluoride.

The Ninth Circuit has adopted the D.C. Circuit's definition of the term "predecisional." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir. 1997). "A 'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Id.* (quoting *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)). The Ninth Circuit also recognizes materials as "predecisional" if they are "antecedent to the adoption of agency policy." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). Thus, the deliberative process privilege protects the "deliberations comprising *part of a process* by which governmental *decisions and policies* are formulated.'" *Maricopa*, 108 F.3d at 1092 (*quoting Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772 (D.C. Cir. 1978)) (emphasis added). The privilege applies equally to inter- or intra-agency documents. *Id.*

1

The documents identified in paragraph 10 of the Ross Declaration reflect "recommendations, draft documents, proposals, suggestions, and other subjective documents" prepared to assist NTP in reaching a policy decision concerning the existence of an alleged association between fluoride and impairments in learning and memory. *See Maricopa*, 108 F.3d at 1093 (defining these types of documents as predecisional). NTP "provides the scientific basis for government programs, activities, and policies that promote health or lead to the prevention of disease." National Toxicology Program, https://ntp.niehs.nih.gov/ (last visited March 19, 2019). The stated objective of the Animal Literature Review at issue here was to "develop NTP level-of-evidence conclusions . . . about whether fluoride exposure is associated with impairments in learning and memory" in animals. Exhibit A at 4.[1] Thus, the final Animal Literature Review represents the government's policy as to whether the overall body of scientific evidence existing at that time of publication suggests adverse effects on learning and memory in animals exposed to fluoride.

Even if the Court were to find that the Animal Literature Review does not set forth a "policy," that finding would not preclude shielding from disclosure the materials prepared to assist the NTP in reaching science-based policy decisions during the process of review. In providing toxicological conclusions on substances of public health concern, NTP exercises policy-judgment in determining how to validate and resolve competing scientific methods and inferences. To reach its conclusions in the Animal Literature Review, NTP identified the available literature, extracted data from the identified studies, accessed the quality and validity of individual studies, and extrapolated animal findings in the context of human exposure levels in the United States. *Id.* In so doing, NTP

---

[1] The Animal Literature Review is 141 pages in length. NTP Research Report, Systematic Review of the Effects of Fluoride on Learning and Memory in Animal Studies (July 2016), https://ntp.niehs.nih.gov/ntp/results/pubs/rr/reports/rr01_508.pdf. For ease of reference, EPA has attached to this brief as Exhibit A the first five pages, which includes the "objective" statement.

2
CASE NO. 17-CV-02162-EMC
SUPPLEMENTAL BRIEFING RE: SECOND DISCOVERY LETTER

1 sought from EPA consultation in determining how to resolve such science-policy[2]
2 considerations. Ross Declaration ¶ 10.

3 In *Center for Biological Diversity v. Norton*, 336 F. Supp. 2d 1155, 1157 (D.N.M. 2004), documents were withheld by the U.S. Fish & Wildlife Service ("FWS") in an Administrative Procedure Act challenge to a non-listing determination. Plaintiffs in that case argued that because the applicable statutory process required FWS to rely only on scientific data, policy considerations or decision-making documents created during review could not be withheld under the deliberative process privilege. *Ctr. for Biological Diversity*, 336 F. Supp. 2d at 1159. The court disagreed, noting that while the listing decision required reliance on scientific data, it did not preclude the agency from creating protected deliberative material during the process. *Id.* So to here, where NTP's review relied on scientific data, but NTP still had to make decisions in interpreting that data and resolving methodology disputes. The deliberative materials are predecisional because NTP requested those materials in the process of resolving the scientific-disputes presented by the overall body of evidence. *See Maricopa*, 108 F.3d at 1094 (explaining that the documents were prepared to advise the decision-maker in arriving at his decision).

In *Maricopa*, the Forest Service withheld portions of an internal investigative report on allegedly illegal and unethical management of the Southwestern Region of the Forest Service. S*ee generally Maricopa*, 108 F.3d 1089. The Forest Service withheld the material because it was generated as part of the agency's deliberative process in deciding how to respond to the allegations. *Id*. at 1091. The Ninth Circuit found that the materials withheld were predecisional because they comprised part of the process of "deciding what action, if any, [the decision-maker] was obligated to take in response to the particular allegations." *Id*. at 1094. Similarly, here, the documents withheld by EPA

---

[2] The term "science-policy" refers to the collaborate approach of applying scientific knowledge and consensus to the development of public policies.

comprised part of the process by which NTP reached decisions necessary for making level-of-evidence conclusions concerning fluoride's potential health effects. Accordingly, the materials identified in paragraph 10 of the Ross Declaration are predecisional to NTP's conclusions published in the final Animal Literature Review.

The documents identified in paragraph 11 of the Ross Declaration were requested by NTP in the process of deciding whether to initiate a new program aimed at evaluating potential adverse effects in humans exposed to fluoride.  *See* National Toxicology Program Board of Scientific Counselors; Announcement of Meeting; Request for Comments, 80 Fed. Reg. 61831-01 (Oct. 14, 2015) (seeking public comments on NTP's conceptual developmental neurotoxicity review).  NTP sought from EPA staff recommendations and opinions to assist NTP in developing a conceptual scope for the program that would involve both systematic literature analysis and new research.  *See* Summary Minutes NTP Board of Scientific Counselors at 11 (December 1 - 2, 2015), https://ntp.niehs.nih.gov/ntp/about_ntp/bsc/2015/december/bsc_dec2015_minutes_508.pdf (discussing NTP staff coordination with EPA).  The documents withheld by EPA comprised part of the process by which NTP decided a scope and priority for the proposed program.  *Id.*; Ross Declaration ¶ 11.  Accordingly, the materials identified in paragraph 11 of the Ross Declaration are predecisional to NTP's decision concerning the initiation of the proposed human studies program.

**II.     Request for a Protective Order**

Should the Court find the materials not to be predecisional, EPA reasserts its request for a protective order shielding the 61 documents subject to this dispute from public disclosure.  Fed. R. Civ. P. 26(c); *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (explaining a court may limit, forbid, or prescribe the terms on which discovery may be had).  There is good cause to issue a protective order prohibiting Plaintiffs from releasing publically or using any of the 61 documents subject to this dispute for purposes other than this litigation.

4

CASE NO. 17-CV-02162-EMC
SUPPLEMENTAL BRIEFING RE: SECOND DISCOVERY LETTER

One of the Plaintiffs in this matter is the Fluoride Action Network ("FAN"), an organization that seeks to end water fluoridation in the United States. EPA contends that much of Plaintiffs' fact discovery in this matter is aimed at obtaining irrelevant information that can be used to otherwise support and fund FAN's ideology. For example, on December 30, 2018, Plaintiffs' counsel posted to YouTube.com a promotional video describing the procedural posture of this matter and expressing an intent to release information obtained during depositions of Centers for Disease Control and Prevention and NSF International.[3] Neither organization is a party to this case, and none of the information obtained from those depositions is relevant to issues presented in this litigation.

Regardless of how the Court resolves the initial question of whether the withheld materials are predecisional, the documents are deliberative in that they include "subjective documents which reflect the personal opinions of [EPA staff] rather than the policy of the agency." *See Maricopa*, 108 F.3d at 1093. There could be real harm from the public release of the material. Among other things, FAN could use the preliminary and staff-level positions reflected in them to embarrass EPA staff and mislead the public regarding the health risks associated with fluoride in such a way as to discourage candid discussion within and among government agencies. *See* Fed. R. Civ. P. 26(c) (the Court may issue an order to protect a party from embarrassment or oppression). Accordingly, good cause exists for the issuance of a protective order.

---

[3] Available as of the filing of this brief, the abstract to the video seeks donations to FAN. *See* https://youtu.be/M9zIiv_E2j0?t=1m20s (stating intent to release "interesting" internal EPA documents);
 https://youtu.be/M9zIiv_E2j0?t=3m40s (expressing anticipation for releasing deposition transcripts);
https://youtu.be/M9zIiv_E2j0?t=12m15s (expressing an intent to "share everything we got" after the case because it will be of "great interest and help in a number of ways going forward").

5
CASE NO. 17-CV-02162-EMC
SUPPLEMENTAL BRIEFING RE: SECOND DISCOVERY LETTER

Respectfully submitted this 19th day of March, 2019.

/s/ *Debra J. Carfora*
DEBRA J. CARFORA
JOHN THOMAS DO
Attorneys for Defendant
International Boundary and Water Commission, United States Section

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing this 19th day of March, 2019, upon all ECF registered counsel of record using the Court's CM/ECF system.

                /s/ *Debra J. Carfora*
                Debra J. Carfora, Trial Attorney