C. ANDREW WATERS, ESQ., CA Bar No. 147259
MICHAEL CONNETT, ESQ., CA Bar No. 300314
WATERS KRAUS & PAUL
222 N. Pacific Coast Hwy, Suite 1900
El Segundo, CA 90245
310-414-8146 Telephone
310-414-8156 Facsimile
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# AT SAN FRANCISCO

| | |
|---|---|
| FOOD & WATER WATCH, INC, et al.,<br>Plaintiffs,<br><br>v.<br><br>U.S. Environmental Protection Agency, et al.,<br><br>Defendants. | Case No.: 17-cv-02162-EMC<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: SECOND DISCOVERY LETTER BRIEF (ECF NO. 79)** |

Pursuant to the Court's March 12, 2019 Order (ECF No. 90), Plaintiffs submit this Supplemental Brief in support of their motion to compel the production of certain withheld documents.[1]

### 1. The "Six-Year Review" Documents Are Not Privileged Because They Are Scientific Assessments That Do Not Involve the Exercise of Policy Judgment

In paragraphs 8(c) and 8(d) of David Ross's Second Declaration, EPA asserts a privilege for 20 documents that reflect EPA's "technical analysis and evaluation" of the scientific literature on fluoride. Even *if* these documents are "pre-decisional" to the Six Year Review (as EPA now claims[2]), they are only subject to the deliberative process privilege if they are *deliberative*. This is where EPA's assertion of privilege falters, because, as discussed herein, courts have repeatedly held that scientific assessments are *not* deliberative if they do not involve discretionary *legal or policy evaluation.*

"The purpose of the deliberative process privilege 'is to prevent injury to the quality of agency decisions' by ensuring that the 'frank discussion of *legal or policy matters*' . . . is not inhibited by public disclosure." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1092–93 (9th Cir. 1997) (emphasis added) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975)). Accordingly, to come within the scope of the privilege the document must "'make[] recommendations or express opinions *on legal or policy* matters.'" *First Resort, Inc. v. Herrera*, 2014 WL 988773, at *5 (N.D. Cal. Mar. 10, 2014) (Westmore, J.) (emphasis added) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1992)).

Courts have repeatedly held that *scientific assessments* are not deliberative unless they involve the exercise of discretionary policy-making judgment. *E.g.*, *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir. 1980) ("[U]nless the opinion of an expert somehow reflects the deliberative process of decision or policy making, the opinion as such does not come within the exemption."); *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 279 F. Supp. 3d 121, 151 (D.D.C. 2017) ("[T]o fall under the deliberative

---

[1] The documents at issue are identified in paragraphs 8, 10, 11, and 12 of the Second Ross Declaration. Prior to filing the Discovery Letter Brief, Plaintiffs agreed to remove the PHS documents (para. 9) from the scope of the motion.
[2] In EPA's initial privilege log, EPA did not identify any of these documents as being related, in any way, to the Six Year Review. (ECF No. 79, at 2).

1

process privilege, expert opinion must relate to an exercise of discretionary policy-making judgment."); *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 544 (W.D. Wash. 2000) ("In order to be protected, expressions of expert opinion and professional judgment must relate to the exercise of policy-oriented judgment.").

Courts have recognized that "scientific determinations are unlikely to reflect 'preliminary positions or ruminations about how to exercise discretion on some policy matter.'" *Ctr. for Biological Diversity*, 279 F. Supp. 3d at 151. For example, as one court has explained, "to determine the toxicity of a pesticide," EPA is "significantly constrained by species-specific data that informs the scientific conclusion of whether a given dose of pesticide would exceed an acceptable level of concern." *Id*. This kind of scientific assessment is "a far cry from the 'exercise[s] of discretion and judgment calls' that are typically protected by the deliberative process privilege." *Id.* It is immaterial if the scientific documents are relied upon by decisionmakers because "factual reports . . . are frequently used by decisionmakers in coming to a determination and yet it is beyond dispute that such documents would not be exempt from disclosure." *Natural Resources Defense Council vs. U.S. Dep't of Defense*, 442 F. Supp. 2d 857, 875 (C.D. Cal. 2006) (emphasis omitted). Courts have also expressly rejected the argument that releasing draft scientific evaluations will discourage candid discussions within agencies. *Nw. Envtl. Advocates v. U.S. E.P.A.*, 2009 WL 349732, at *8 (D. Or. Feb. 11, 2009). Courts have thus compelled federal agencies, including EPA, to produce "draft scientific documents," *Nw. Envtl. Advocates*, 2009 WL 349732, at *7; "draft assessments [which] weigh and evaluate scientific data, studies, reports, and other relevant information," *Ctr. for Biological Diversity*, 279 F. Supp. 3d at 150; and documents reflecting the individual views of Agency scientists, *Parke, Davis & Co*, 623 F.2d at 6-7; *Greenpeace*, 198 F.R.D. at 544.

With these considerations in mind, the four documents identified in **paragraph 8(c)** of David Ross's second declaration are unlikely to be privileged, even *if* they are pre-decisional to the Six Year

Review. The four documents are duplicates of a draft report written by an outside contractor[3] which objectively evaluates the scientific literature on fluoride's developmental health effects, including IQ. The Court will be receiving this report as part of its *in camera* review (i.e., **EPA 0206505/Log Doc # 311**). By EPA's own description, the contractor's assessment of the scientific literature does not provide opinions or recommendations on policy, such as whether EPA should lower the permissible levels of fluoride in water. Further, although the draft "contain[s] annotations and edits" by EPA scientists, these edits do not pertain to policy evaluation, but instead "reflect EPA staff opinions, evaluations, and recommendations *as to the technical analysis and evaluation of the literature*." Ross Decl. ¶ 8(c). To the extent there is *any* policy evaluation in this document, these portions must be segregated absent a "particularized explanation of non-segregability" by EPA. *Ctr. for Biological Diversity*, 279 F. Supp. 3d at 150.

A similar analysis applies to the sixteen documents identified in **paragraph 8(d),** one of which the Court will be receiving for its *in camera* review (i.e., **EPA0235568/Log Doc # 325**). EPA describes these documents as "EPA staff notes and communications *analyzing certain studies* related to fluoride." Ross 2nd Decl. ¶ 8(d). By EPA's own description, these communications pertain "to the technical analysis and evaluation of the literature" and thus do not appear to involve the exercise of *policy* judgment.

### 2. EPA Has Failed to Articulate an Intelligible "Policy Decision" for the NTP Documents Identified in Paragraphs 10 and 11 of the Ross Declaration

In its Supplemental Brief, EPA fails to articulate an intelligible policy decision for the documents identified in paragraphs 10 and 11 of the Second Ross Declaration. EPA contends that the documents pertain to "the government's policy concerning what association, if any, exists between fluoride and impairments in learning and memory." (ECF No. 91, at 2:10-11). Whether fluoride affects learning/memory, however, is not a question of "policy," but a question of science. By its own terms, the NTP's systematic review does not claim to establish a "policy"; instead, it reports NTP's scientific assessment of the published animal research on learning and memory.

---

[3] In David Ross's First Declaration, he states that this report was "written by an EPA contractor." (ECF 79-3, p. 6).

EPA alternatively argues that the "policy decision" is NTP's exercise of "policy judgment in determining how to validate and resolve competing scientific methods and inferences."[4] (ECF No. 91, at 3:19-20). This argument is equally unavailing, as it collapses the pre-decisional requirement into the deliberative. Moreover, courts have rejected the notion that the type of judgment involved in evaluating scientific literature is equivalent to the type of judgment involved in "policy evaluation." As one court recently explained, "[t]o be sure, even scientific determinations depend on certain assumptions, and reasonable people can and do disagree about scientific forecasts and projections," but "these kinds of analyses are a far cry from the 'exercise[s] of discretion and judgment calls' that are typically protected by the deliberative process privilege." *Ctr. for Biological Diversity*, 279 F. Supp. 3d at 151.

**3. EPA's Arguments for Withholding the NTP Documents Are at Odds with Its Own Disclosures in This Case**

Several of EPA's arguments for withholding the NTP documents are at odds with the disclosures that EPA has already made in this case. First, EPA contends that "drafts of the NTP report" are privileged because they do not reflect an "official agency position" and "any comparison between the preliminary drafts and the final document could reveal the deliberations . . . ."[5] Ross 2nd Decl. ¶ 10(b). However, EPA produced a draft of the NTP review when it served Ross's First Declaration, and noted that it was producing this draft "after further review" (i.e., the disclosure was not inadvertent). (**Exhibits A & B**). Similarly, EPA contends that drafts of NTP's "communication strategy" and NTP's "concept document" are privileged because they are "pre-decisional and do[] not reflect an official agency position."[6] Ross 2nd Decl. ¶¶ 10(d) & 11(b). However, EPA produced drafts of both of these documents "after further review" alongside Ross's first declaration. (**Exhibits C & D**).

---

[4] Although EPA is invoking this privilege on behalf of NTP, there are no representations in EPA's briefing or declarations that NTP has been consulted, let alone that NTP shares EPA's view that these materials are privileged.
[5] *See Nw. Envtl. Advocates*, 2009 WL 349732, at *7 ("The fact that plaintiff could use the drafts to reconstruct the decisionmaking process in this case is irrelevant.").
[6] The Court will be receiving versions of the communication strategy and concept documents as part of the *in camera* review (i.e., EPA0247044/Log Doc #345 and EPA0120841/Log Doc # 276).

The inconsistent arguments that EPA has used to withhold documents is further illustrated by the Agency's partial withholding of document **EPA0129900**/**Log Doc # 287**. EPA is withholding the portion of this document that quotes an NTP report on fluoride and learning that *NTP submitted to the Australian government* in 2015. (**Exhibit E**). Clearly, a document shared with a *foreign government* does not qualify as either an intra- or inter-agency communication. *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 237 F. Supp. 2d 17, 30 (D.D.C. 2002). EPA appears to recognize this because it has produced NTP's full report to the Australian government in this litigation. (**Exhibit F**). Nevertheless, EPA's Amended Privilege Log continues to assert a privilege for EPA0129900/Log Doc #287..

### 4. EPA Has Failed to Provide Good Cause for a Protective Order

The Ninth Circuit has made clear that a party seeking relief under Rule 26(c) "bears the burden, for each document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130–31 (9th Cir. 2003). This burden is *not* met where a party resorts to "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Thus, "[g]eneral allegations of . . . embarrassment that may result" is "insufficient to justify judicial endorsements of an umbrella confidentiality agreement." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 484 (3d Cir. 1995). Here, EPA bases its request for relief on the type of broad and unsubstantiated allegations that courts have repeatedly held to be insufficient. EPA contends that Plaintiffs "could" use the documents to embarrass EPA staff or "mislead" the public (ECF No. 91 at 6:15-18), but fails to provide any specific examples to substantiate this claim. The only thing EPA cites is a video where Plaintiffs express their justified intention to make documents publicly available. There is nothing improper about public disclosure, especially since this case involves issues that are clearly of "legitimate public interest"— i.e., the potential neurologic risks posed by chemicals added to over 200 million Americans' water supply. *See Glenmede*, 56 F.3d at 484.  The Court should thus deny EPA's baseless request.

Respectfully submitted this 21st day of March, 2019.

/s/ Michael Connett
MICHAEL CONNETT
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing this 21st day of March, 2019, upon all ECF registered counsel of record using the Court's CM/ECF system.

/s/ *Michael Connett*
MICHAEL CONNETT
Attorney for Plaintiffs