C. ANDREW WATERS, ESQ., CA Bar No. 147259
MICHAEL CONNETT, ESQ., CA Bar No. 300314
WATERS, KRAUS & PAUL
222 N. Pacific Coast Hwy, Suite 1900
El Segundo, CA 90245
310-414-8146 Telephone
310-414-8156 Facsimile

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

| | |
|---|---|
| FOOD & WATER WATCH, et al.,<br><br>               Plaintiffs,<br><br>vs.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.<br><br>               Defendants. | Civ. No. 17-CV-02162-EMC<br><br>**PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE ANY EVIDENCE IN SUPPORT OF A DEFERRAL OF RULEMAKING UNDER 15 U.S.C. § 2620(b)(4)(B)(ii).**<br><br>Judge: Hon. Edward M. Chen<br>Date: Jan 7, 2017 (Pretrial Conference)<br>Time: 2:30 p.m.<br>Courtroom: 5 - 17th Floor |

## INTRODUCTION

Section 21 of the Toxic Substances Control Act (TSCA) permits a Court to defer a rulemaking proceeding if *two* requisite facts are *both* proven to be true: (1) the extent of the risk posed by the chemical at issue in the litigation is less than the risk(s) posed by the chemicals that EPA is taking action on under TSCA, *and* (2) there are insufficient resources available to EPA to take the action requested by Plaintiffs. 15 U.S.C. § 2620(b)(4)(B)(ii). EPA has indicated it will introduce evidence to obtain relief under this provision of the statute, including by introducing new, undisclosed expert opinions. Any such evidence, however, should be excluded under FRCP 37(c) and FRE 403 for the following two reasons.

First, EPA's one and *only* witness on the "relative risk" factor, admitted that she has no opinion on this issue, nor even a basis for an opinion. EPA has no competent grounds, therefore, for meeting its burden on the relative risk factor. Accordingly, any evidence to satisfy the second factor (i.e., inadequate Agency resources) will be the proverbial "bridge to nowhere," with EPA predictably and inevitably unable to meet its ultimate burden of proof. The Court should thus exclude any evidence whose only relevance is 15 U.S.C. § 2620(b)(4)(B)(ii) because such evidence will be a waste of judicial resources and scarce trial time.

Second, EPA's last-minute attempt to cure this defect by introducing new, undisclosed expert opinions in a bifurcated trial at some undefined point in the future runs represents an unjustified and prejudicial end run around EPA's discovery obligations and should be excluded under FRCP 37(c).

## FACTUAL BACKGROUND

During <u>fact discovery</u>, Plaintiffs served an interrogatory asking EPA to identify any and all fact witnesses it intends to call at trial.  EPA responded that it "does not have any fact witnesses it intends to call at this time," while adding that it reserved the right to call "any witness needed for rebuttal or impeachment, and any witness disclosed pursuant to Fed. R. Civ. P. 26(a)(2)." **Ex. 1** at 3. At no point did EPA amend this interrogatory response. Thus, EPA did not identify any fact witnesses to provide testimony relevant to the factors set forth in 15 U.S.C. § 2620(b)(4)(B)(ii).

During <u>expert discovery</u>, EPA designated only one expert to address the factors in 15 U.S.C. § 2620(b)(4)(B)(ii). This expert was Dr. Tala Henry, the Deputy Director of the Office of Pollution Prevention and Toxics. **Ex. 2** at 2:16-23. According to EPA's disclosure, Dr. Henry is a non-retained expert who will provide testimony on the "relative risks posed by chemicals evaluated and prioritized under TSCA." *Id.* at 2:22-23. At her deposition, however, Dr. Henry made clear that she has *no* opinions to offer on relative risk. **Ex. 3** at 482:5-15, 491:17-492:2, 499:12-19, 500:10-14, 505:3-9, 506:20-507:18. For example, when asked if she would be offering any opinion on the extent of risks posed by the 10 initial "Work Plan"[1] chemicals, Dr. Henry replied with a one-word answer, "No." *Id.* at 482:5-15. When asked if she would be offering any opinions on the risks posed by the 90 chemicals in the Work Plan ,[2] Dr. Henry again replied, "No." *Id.* at 491:17-492:2. The record is thus clear that (1) Dr. Henry is the one and only witness that EPA has to address the Section 21(b)(4)(B)(ii) factors, and (2) Dr. Henry has no opinions on the requisite relative risk issue, nor even the basis for such an opinion.

Aware of the fatal defect in Dr. Henry's testimony, EPA is now requesting (in the Joint Pretrial Conference Statement) a bifurcation procedure to allow EPA to present evidence on the risks posed by the Work Plan chemicals at some undefined point in the future after the trial is complete. EPA bases this request on its contention that EPA can only make a determination of relative risks after it has completed the risk evaluations for each of the 10 Work Plan chemicals. This is the first time in the litigation that EPA has expressed any intent to ask for a bifurcation procedure.

///

///

///

---

[1] Section 6(b)(2)(A) requires that EPA conduct risk evaluations "on 10 chemical substances drawn from the 2014 update of the TSCA Work Plan for Chemical Assessments and shall publish the list of such substances" within 180 days of June 22, 2016. 15 U.S.C. § 2605(b)(2)(A).
[2] Section 6(b)(2)(B) requires that EPA continue to select chemicals from the Work Plan for risk evaluations on an ongoing basis. 15 U.S.C. § 2605(b)(2)(A).

## ARGUMENT

**A.    EVIDENCE TO SUPPORT RELIEF UNDER 15 U.S.C. § 2620(b)(4)(B)(ii) SHOULD BE EXCLUDED UNDER FRE 403 BECAUSE IT WILL BE FUTILE AND THEREBY A WASTE OF TIME**

Under FRE 403, "the court may exclude evidence if its probative value is substantially outweighed by a danger of . . . wasting time." Here, EPA has indicated its intent to seek a deferral in the rulemaking under Section 21(b)(4)(B)(ii). To be entitled to relief under this statutory provision, EPA must prove *both* that (1) the relative risk of fluoridation chemicals is less than the risk posed by the chemicals EPA is currently working on under TSCA, *and* (2) EPA currently has inadequate resources to begin a rulemaking proceeding on fluoridation chemicals. 15 U.S.C. § 2620(b)(4)(B)(ii). To meet its burden, Plaintiffs anticipate that EPA will present evidence to prove the *second* factor (i.e., inadequacy of EPA's current resources). This evidence, however, will be futile, because EPA has no evidence to prove the *first* factor (i.e., relative risk). As discussed above, the one and *only* witness that EPA identified to address the relative risk issue stated, under oath, that she has *no* opinions on this issue. **Ex. 3** at 482:5-15, 491:17-492:2, 499:12-19, 500:10-14, 505:3-9, 506:20-507:18. Accordingly, because EPA has no ability to prove the first factor, it will be a needless waste of judicial resources and scarce trial time to introduce evidence on the second factor. The Court should thus exclude this evidence under FRE 403.

**B.    THE COURT SHOULD DENY ANY ATTEMPT BY EPA TO INTRODUCE NEW, UNDISCLOSED EXPERT OPINIONS ON THE RELATIVE RISK ISSUE**

In the Joint Pretrial Conference Statement, EPA has requested a bifurcation procedure to permit a separate trial at some undefined point in the future to address the relative risk issue. EPA bases this request on its contention that it could not have presented any opinion on relative risks prior to the completion by the risk evaluations of the 10 initial Work Plan chemicals. An implicit premise of EPA's bifurcation request is that the Agency should be permitted to offer new, undisclosed expert opinions. The Court should deny this request under FRCP 37.

FRCP 37 provides that "If a party fails to provide information or identify a witness as required by

Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc 37(c)(1).

Here, the record is clear that EPA did not identify any expert opinion on the relative risk issue during discovery in this case. Under FRCP 37, therefore, any such opinion *must* be excluded unless EPA can meet its burden of showing that the failure to disclose was substantially justified or harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."); *Pineda v. City & Cty. of San Francisco*, 280 F.R.D. 517, 520 (N.D. Cal. 2012) ("The party facing the sanctions has the burden to prove that the failure to comply was either substantially justified or harmless.").

### 1.   Not Substantially Justified

EPA's failure to disclose was not substantially justified. Plaintiffs filed this action in April of 2017, well over two years ago. The parties have since engaged in numerous meet and confers about scheduling, and have filed no less than *six* Joint Case Management Statements with the court. ECF Nos. 23, 49, 55, 72, 87, & 104. At no point in any of the meet and confers and Joint Case Management Statements did EPA ever alert Plaintiffs or the Court to the Agency's potential need for additional time to develop opinions on the relative risk issue. The first time that Plaintiffs learned of EPA's position on this matter was during the drafting of the Joint Pretrial Conference Statement.

Even *if* EPA had timely disclosed their position on the need for additional time to develop opinions, there is no clear reason why EPA needs to wait until the risk evaluations are complete before offering an opinion on the relative risk issue. EPA is not a stranger to the 10 Work Plan chemicals it is currently evaluating—indeed, each of these chemicals were the subject of a previous prioritization assessment where EPA compiled information on hazards, exposure, and persistence. Further, EPA is privy to the data generated by the ongoing evaluations (some of which have been released in draft form). Information was

thus available that permitted EPA to make some form of comparative assessment.  EPA, however, chose to forego making any attempt at all.

### 2.  Not Harmless

EPA's failure to disclose is anything but harmless. First, as evident by EPA's bifurcation request, EPA will not be able to provide the new information until some undefined point in the future after the 10 risk evaluations are complete. In the Joint Pretrial Conference Statement, EPA states that the risk evaluations "are expected to be complete within the next 6 months." Accordingly, EPA will be providing the new, undisclosed opinion(s) *no less* than four months *after* the completion of trial on the merits. Under this proposal, therefore, EPA will effectively be getting a deferral in the rulemaking proceeding *irrespective* of how the Court ultimately decides. This is *per se* prejudicial to Plaintiffs.

Additionally, under EPA's proposed approach, additional expert discovery would need to be conducted so that Plaintiffs could discover EPA's new opinions, and basis thereof, prior to the second phase of trial. Plaintiffs would also likely elect to produce their own rebuttal opinions, all of which would require considerable additional expenses for the (budget-wary) Plaintiff citizen groups, including expert fees, deposition costs, and travel expenses. Furthermore, since this second round of expert discovery would necessarily have to occur *after* the completion of the 10 risk evaluations, the second trial phase would be delayed even further.

### CONCLUSION

EPA has had over two years to prepare its evidence for this case. Now, on the eve of trial, EPA seeks a bifurcation procedure that will permit it to introduce new, undisclosed information at some undefined point in the future. This last-minute request is an implicit acknowledgement that EPA cannot currently meet its burden for obtaining relief under Section 21(b)(4)(ii). For the reasons stated above, the Court should deny this request under FRCP 37(c) because it is neither substantially justified nor harmless.

The Court should also exclude, under FRE 403, all evidence—such as EPA's current resources—

that is solely relevant to Section 21(b)(4)(ii). The Court should do this because EPA has no ability to meet its ultimate burden of proof on the relative risk factor, and thus the introduction of evidence that is solely relevant to Section 21(b)(4)(ii) will be unduly wasteful of judicial resources and scarce trial time.

December 19, 2019                              Respectfully submitted,

                                              _/s/ Michael Connett___
                                              MICHAEL CONNETT
                                              Attorney for Plaintiffs

# **Exhibit 1**

JONATHAN D. BRIGHTBILL
Deputy Assistant Attorney General
Environment and Natural Resources Division

DEBRA J. CARFORA
JOHN THOMAS H. DO
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC. 20044-7611
(202) 514-2640 (Carfora)
(202) 514-2593 (Do)
(202) 514-8865 (fax)
debra.carfora@usdoj.gov
john.do@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOOD & WATER WATCH, et al., | Civil Action No. 4:17-cv-02162-EMC |
| Plaintiffs, | |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND SET OF INTERROGATORIES** |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants. | |

## RESPONSE TO INTERRAGTORIES

**15.  Identify the name and, if known, the address, and telephone number of each individual that Defendants plan to use as a fact witness at trial— along with the subjects of their testimony and any discoverable information each individual is likely to have.**

Because this matter "should be focused on scientific evidence and expert discovery regarding the risk of injury to health or the environment posed by the chemical substances at issue in Plaintiffs' petition," (Order Denying Defendant's Motion to Limit Review to the Administrative Record at 16, ECF No. 53), EPA does not have any fact witnesses it intends to call at this time.  EPA reserves the right to amend this answer in response to ongoing discovery and any evidentiary rulings from the Court.  Further, EPA reserves all rights to call any witness needed to lay foundation for relevant documents, any witness needed for rebuttal or impeachment, and any witnesses disclosed pursuant to Fed. R. Civ. P. 26(a)(2).  Finally, without waiving the right to move to exclude witnesses, EPA reserves the right to call any witness identified by Plaintiffs.


JONATHAN D. BRIGHTBILL
Deputy Assistant Attorney General
Environment and Natural Resources Division


*/s/ Debra J. Carfora*
DEBRA J. CARFORA
JOHN THOMAS H. DO
Attorneys for Defendants

3
DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND SET OF INTERROGATORIES 4:17-cv-02162-EMC

# **Exhibit 2**

1  DEBRA J. CARFORA
2  JOHN THOMAS H. DO
   U.S. Department of Justice
3  Environment & Natural Resources Division
   Environmental Defense Section
4  P.O. Box 7611
   Washington, DC. 20044-7611
5  Tel.    (202) 514-2640 (Carfora)
           (202) 514-2593 (Do)
6  Fax     (202) 514-8865
7  debra.carfora@usdoj.gov
   john.do@usdoj.gov
8

9  *Attorneys for Federal Defendants*

10

11              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12                **SAN FRANCISCO DIVISION**

13

14  FOOD & WATER WATCH, INC., et al.,          No. 3:17-cv-02162-EMC

15
                                                **FEDERAL DEFENDANTS' EXPERT**
16            Plaintiffs,                        **DISCLOSURES AND DESIGNATIONS**
                                                **(JUNE 27, 2019)**
17        v.

18  U.S. ENVIRONMENTAL PROTECTION
    AGENY, et al.,
19
              Defendants.
20

21

22

23          Pursuant to Federal Rule of Civil Procedure 26(a)(2) and the Court's Scheduling Order,

24  Federal Defendants hereby provide the following disclosures and designations of witnesses

25  Federal Defendants may use at trial to present evidence under Federal Rule of Evidence 702, 703,

26  or 705:

27

28

I. EXPERTS REQUIRED TO PROVIDE A WRITTEN REPORT

A. Gary D. Slade, PhD, DipDPH, BDSc, Professor of Dentistry and Director of Oral Epidemiology at the University of North Carolina at Chapel Hill, and Registered Dentist, 385 South Columbia Street, CB#7455, Chapel Hill, NC 27599-7455.

1. Area of expertise: Oral/dental epidemiology, dentistry, dental public health, and the relationship between dental health benefits and water fluoridation.

2. Report: Dental Health Benefits of Fluoride in Drinking Water (June 2019)

B. Charlotte W. Lewis, MD, MPH, board certified pediatrician and attending physician at the University of Washington Medical Center and Seattle Children's Hospital,  and Associate Professor of Pediatrics and Adjunct Associate Professor of Pediatric Dentistry at the University of Washington, Box 354920, Seattle, WA 98195-4920.

1. Area of expertise: Public health, dental public health, pediatrics, oral/dental health disparities, impact of dental carries, and relative merits of water fluoridation versus alternative public health measures.

2. Report: Public Health and Community Water Fluoridation (June 2019)

II. EXPERTS NOT REQUIRED TO PROVIDE A WRITTEN REPORT

A. Tala R. Henry, PhD, Deputy Director of the Office of Pollution Prevention and Toxics (OPPT) at the U.S. Environmental Protection Agency (EPA) and former Director of Risk Assessment Division of OPPT, 1200 Pennsylvania Avenue, NW, Washington, DC 20460.

1. Subject matter on which the witness is expected to present evidence: EPA's chemical safety program led by OPPT, EPA's implementation of the 2016 TSCA Amendments, EPA's risk evaluation and assessment guidance and principles, toxicology, and the relative risks posed by chemicals evaluated and prioritized under TSCA.

2. Summary of the facts and opinions to which the witness is expected to testify:

2

As part of EPA's chemical safety program led by the Office of Pollution Prevention and Toxics (OPPT), EPA has been diligently working to implement the Toxic Substances Control Act (TSCA), as amended. On June 22, 2016, the Frank R. Lautenberg Chemical Safety for the 21st Century Act (Pub. L. 114-182) was signed into law. It included substantial changes to EPA's authorities and responsibilities under TSCA. Amended TSCA – including new mandatory deadlines for EPA to evaluate chemicals and a new risk-based standard for finding unreasonable risks separate from managing those risks using costs or other non-risk factors – has necessitated substantial changes within EPA's program, requiring significant time, effort, and resources to implement the new statutory requirements.

Following these 2016 TSCA amendments, EPA was required to begin the risk evaluation process for 10 chemicals under TSCA section 6(b)(2)(A) to determine whether they present unreasonable risk of injury to health or the environment, based on the best available science and weight of scientific evidence, as required by TSCA sections 26(h) and 26(i), and the Agency's final rule, *Procedures for Chemical Risk Evaluation Under the Amended Toxic Substances Control Act* (82 Fed. Reg. 33,726 (July 20, 2017)). In December 2016, EPA published the initial list of 10 chemicals and began the process of evaluating their risks. These first 10 chemicals for risk evaluation were selected from the 2014 Update to EPA's TSCA Work Plan for Chemical Assessments (the "Work Plan") – a list of 90 chemicals which were identified by EPA for further evaluation prior to the 2016 TSCA amendments using a systematic screening system that considered combined hazard, exposure and persistence and bioaccumulation characteristics – which fluoride is not listed on. *TSCA Work Plan for Chemical Assessments: 2014 Update*, available at https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/tsca-work-plan-chemical-assessments-2014-update. In November 2018, EPA released a draft risk evaluation for Pigment Violet 29, and the remaining nine draft risk evaluations will be released this summer/fall to meet the statutory deadlines under TSCA section 6(b)(4)(G).

Aside from initiating risk evaluations for 10 chemicals, TSCA also requires EPA to implement a new prioritization process to designate a chemical as either a high-priority for risk evaluation or a low-priority for which risk evaluation is not warranted at the time.  This process is codified in EPA's final rule, Procedures for Prioritization of Chemicals for Risk Evaluation Under the Toxic Substances Control Act (82 Fed. Reg. 33,753 (July 20, 2017)).  Per the statute, the process must take between nine and twelve months, and incorporate certain risk-based criteria and opportunities for public input. Upon completion of one risk evaluation, EPA must have another chemical ready to designate as high-priority, such that there will always be at least 20 risk evaluations ongoing at any given time. At least 50% of those chemicals must come from the TSCA Work Plan, until the Work Plan chemicals are exhausted.  In March 2019, EPA initiated the prioritization process for 40 additional chemical substance candidates (i.e., 20 high-priority candidates, and 20 low-priority candidates), including several more solvents and formaldehyde, 84 Fed. Reg. 10,491 (March 21, 2019). Concurrently with the 10 risk evaluations and additional prioritization requirement, EPA is also reviewing 2 requests, with 1 additional request expected, for risk evaluation from manufacturers under TSCA Section 6(b).  Further, since 2016 EPA has been developing proposed rules for certain PBT chemicals as directed under TSCA section 6(h). This rule was proposed on June 21, 2019, which must be finalized within 18 months.

Where EPA identifies unreasonable risks under the conditions of use in its risk evaluation, those risks must be managed through rulemaking under TSCA section 6(a) so that the unreasonable risks under the conditions of use are no longer present. This process requires that risk management staff work closely with the risk assessment staff to ensure that any prohibitions or restrictions on the chemical are sufficient to eliminate the unreasonable risk. When proposing and promulgating a TSCA section 6(a) rule to prohibit or restrict a condition of use, EPA has to follow additional requirements under TSCA section 6(c) and must "consider, to the extent practicable, whether technically and economically feasible alternatives that benefit health or the environment,

compared to the use so proposed to be prohibited or restricted, will be reasonably available as a substitute when the proposed prohibition or other restriction takes effect." 15 U.S.C. § 2605(c)(2)(C). EPA would also determine which, if any, TSCA section 6(g) requirements may apply before promulgating a regulation. Further, under TSCA section 6(g)(1)(C), EPA may find a need for exemption of regulation of water fluoridation because of its substantial benefit to health compared to reasonably available alternatives, if any are identified at all. These determinations would require extensive work within EPA, collaboration with other federal government agencies, and discussion with outside stakeholders before a section 6(a) rule could be promulgated.

If the court were to find that fluoride presents an unreasonable risk to health or the environment, EPA should be able to regulate the risk found based on these considerations. However, unlike the other chemicals EPA is evaluating under TSCA section 6, it would be extremely challenging to develop an appropriate regulation under section 6(a) since OPPT would not have a completed risk evaluation to guide its risk management activities. Taking into account all of these considerations, it would likely take at least 4 years, the time allowed by TSCA section 6(c)(1) to propose and finalize such a rule.

The volume of ongoing and expected future work is unprecedented and all available staff resources are being used to meet the existing statutory deadlines. Adding the proposal and finalization of an additional section 6(a) rule for fluoride, which is not on the Work Plan or identified as a high priority chemical for risk evaluation, would cause significant strain to the TSCA regulatory program as it diligently works to meet the substantial requirements Congress imposed for chemicals which EPA has already identified may pose risks to human health or the environment.

1    Dated:   June 27, 2019                          Respectfully submitted,

2                                                    /s/ *John Thomas H. Do*
3                                                    DEBRA J. CARFORA
     JOHN THOMAS H. DO
4                                                    U.S. Department of Justice
     Environment & Natural Resources Division
5                                                    Environmental Defense Section
6                                                    601 D Street, NW, Suite 8000
     Washington, DC 20004
7                                                    Tel: (202) 514-2640
     Emails:        john.do@usdoj.gov
8                                                                    debra.carfora@usdoj.gov

9                                                    *Attorneys for Federal Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 3

FOOD & WATER WATCH

VS

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

**TALA HENRY**

August 20, 2019



888-779-9974

```
1          Q      Okay.  But certainly for the

2   majority of them, they are not limited to a

3   single condition of use, correct?

4          A      That is correct.

5          Q      And are you offering any opinions in

6   this case on the extent of the risk to health

7   or the environment posed by these ten

8   chemicals undergoing risk evaluation?

9          A      No.

10         Q      Are you offering any opinions in

11  this case on the extent of the risk to health

12  or environment posed by those ten chemicals as

13  compared to the extent of the risk presented

14  by fluoridation chemicals?

15         A      No.

16         Q      Now, systematic review.  Are you

17  aware of any studies that have attempted to

18  assess the reproducibility of systematic

19  reviews that incorporate the key elements

20  identified by the NRC?

21         A      The reproducibility like of the
```

1    **Q    They were not identified on the list**

2    **of 1,245.   Okay.**

3         A    Not as stated.

4              (Videographer left the room.)

5    **Q    And --**

6              MS. CARFORA:  I just want the record

7    to reflect the videographer just left the

8    room.

9              COURT REPORTER:  His car's been

10   locked in the garage.

11             MS. CARFORA:  Okay.  I just want the

12   record to reflect -- I just want on the record

13   that he's left the room and it's still

14   running.

15             MR. CONNETT:  Right.

16        BY MR. CONNETT:

17        **Q    Now, these 90 chemicals that were**

18   **ultimately identified in the 2014 work plan**

19   **document, are you offering any opinions in**

20   **this case as to the extent of the risk to**

21   **health or environment posed by those 90**

1    **chemicals?**

2        **A      No.**  And EPA's very explicit in the

3    work plan that that list does not constitute a

4    risk evaluation or risk assessment.

5        **Q      How many draft risk evaluations of**

6    **these first ten chemicals has EPA produced so**

7    **far?**

8        A      I believe four, although the fourth

9    one I don't have 100 percent certainty as to

10   whether it's left the building, so to speak.

11       **Q      So the violet --**

12       A      Pigment violet 29.

13       **Q      1-BP?**

14       A      Yes.

15       **Q      And what are the other two drafts?**

16       A      HBCDs, hexabromocyclododecane was

17   peer reviewed, as well as was it 1-BP we just

18   did?

19       **Q      Yes, we mentioned 1-BP.  HBCD, has**

20   **that been -- has that draft been released to**

21   **the public?**

1    evaluation under the conditions of use.

2    That's the whole purpose.

3           So again, it's sort of like what we

4    call a screening process.  We consider some of

5    the same information.  So sort of a risk-based

6    prioritization, but the level of data

7    gathering and evaluation for that type of a

8    process that has to be done in that short of a

9    time is far, far less than what you need to do

10   in a risk evaluation.

11        BY MS. CARFORA:

12        Q    Do you have an opinion on whether

13   the alleged risk of fluoride is less than the

14   risks known for the chemicals on the work

15   plan?

16           MR. CONNETT:  Asked and answered,

17   lack of foundation and overbroad.

18        A    Having not conducted a risk

19   evaluation on any of them, no.

20        BY MS. CARFORA:

21        Q    Because it would be impossible; is

1    that right?

2              MR. CONNETT:  Leading.

3        A    Well, again, we haven't gone through

4    the process.  Any of them.  With fluoride, we

5    have not done prioritization, nor have we done

6    a risk evaluation.  We also haven't done --

7    completed a risk evaluation on any TSCA

8    chemicals on the work plan.

9         BY MS. CARFORA:

10       Q    Could you rank the alleged risk to

11   fluoride among the 90 chemicals on the work

12   plan?

13            MR. CONNETT:  Lack of foundation.

14       A    No.

15        BY MS. CARFORA:

16       Q    Why not?

17       A    Because it's not a risk assessment.

18   There's hazard is considered an exposure but

19   they're never integrated together.  They're

20   just scored separately.

21       Q    What do you mean by scored

1    developmental neurotoxicity?

2        A    I was not aware.

3        Q    Okay.  If -- okay.  Now, of the ten

4    chemicals currently undergoing risk evaluation

5    at EPA under TSCA, can you identify for me any

6    chemical on that list which has greater

7    exposure potential in the United States than

8    fluoridation chemicals?

9        A    I cannot.  I don't have the facts

10   and figures in front of me for any of them.

11       Q    But you have some understanding

12   being involved with this process.  You have

13   some understanding as to the nature of the

14   chemicals being reviewed, right?

15       A    To some degree.

16       Q    So based on your understanding as to

17   the ten chemicals that are being evaluated

18   right now, can you identify for me any

19   chemical where there is greater potential

20   exposure than with fluoridation chemicals?

21       A    Without again looking at the

1  exposure assessment for all of them, I cannot.

2      Q    Can you -- of those ten chemicals,

3  do you have any reason to believe that any of

4  those chemicals has an exposure potential of

5  200 million Americans?

6      A    Again, I don't have the figures in

7  front of me.  Some of these chemicals have a

8  very large number of uses so depending on

9  who's using them, I just don't know.  It's

10 possible.

11     Q    Of these ten chemicals that are

12 currently being evaluated, do any of these

13 chemicals have prospective cohort studies

14 linking the chemical to adverse effects in

15 human beings?

16     A    Asked and answered, but not to my

17 knowledge.

18     Q    So not to your knowledge, correct?

19     A    Right.  I don't know.

20     Q    Okay.  Did you say that EPA has now

21 identified the second batch of high-priority

1    chemicals that will be going for risk

2    evaluation?

3         A    We have identified a list of 20 that

4    we are considering as candidates for

5    prioritization.

6         Q    Of those 20 chemicals, are you -- do

7    any of those chemicals have prospective cohort

8    studies linking them to adverse effects in

9    humans?

10        A    I don't have that knowledge.

11        Q    Of those 20 chemicals, is there any

12   chemical where there is an exposure potential

13   in the United States of 200 million or more

14   Americans?

15        A    I don't have that knowledge, and

16   again in the prioritization process I, would

17   not expect that we would have that level of

18   detail information.

19             MR. CONNETT:  Okay.  I have no

20   further questions.

21             MS. CARFORA:  The deposition is

1  DEBRA J. CARFORA
2  JOHN THOMAS H. DO
   BRANDON N. ADKINS
3  SIMI BHAT
   U.S. Department of Justice
4  Environmental Defense Section
   P.O. Box 7611
5  Washington, D.C. 20044
   Tel: (202) 514-2640
6  Fax: (202) 514-8865
   Email: debra.carfora@usdoj.gov
7
8  *Attorneys for Defendants*

9

10              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
11                 **SAN FRANCISCO DIVISION**

12                                    | Case No. 17-CV-02162 EMC

13  FOOD & WATER WATCH, INC., et al.,  | **DEFENDANTS' OPPOSITION TO**
                                      | **PLAINTIFFS' MOTION IN LIMINE**
14              Plaintiffs,            | **NO. 2 TO EXCLUDE ANY EVIDENCE IN**
                                      | **SUPPORT OF A DEFERRAL OF**
15        v.                          | **RULEMAKING UNDER 15 U.S.C. §**
                                      | **2620(b)(4)(B)(ii)**
16  U.S. ENVIRONMENTAL PROTECTION
   AGENCY, et al.,                    |
17                                    | Date:   January 7, 2020
              Defendants.             | Time:   2:30 p.m.
18                                    | Place:  Courtroom 5, 17th floor
19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs have already argued that this Court should grant summary judgment on the same issue for which they now seek to exclude evidence. Plaintiffs have not offered any new arguments in their motion in limine, but continue to insist that EPA must immediately prove that rulemaking should be deferred under 15 U.S.C. § 2620(b)(4)(B)(ii) and also that EPA cannot do so. EPA maintains its position: whether rulemaking should be deferred is not ripe for inquiry until the Court determines the extent of risk, if any, posed by adding fluoridation chemicals to drinking water to reach a recommended optimal concentration for reducing tooth decay of 0.7 milligrams per liter (mg/L).

**BACKGROUND**

Plaintiffs brought this action under section 21 of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2620, claiming that the introduction of fluoridation chemicals into drinking water causes an unreasonable risk to human health. If Plaintiffs prevail, then "the court shall order [EPA] to initiate" rulemaking, unless the court finds "that the extent of the risk to health or the environment alleged by the petitioner is less than the extent of risks to health or the environment with respect to which [EPA] is taking action under this chapter and there are insufficient resources available to [EPA] to take the action requested by the petitioner." *Id*. § 2620(B). In that case, "the court may permit [EPA] to defer initiating the action requested by the petitioner until such time as the court prescribes." *Id*.

The deferral process refers to ongoing EPA action addressing risks to health or the environment under TSCA. When amending TSCA in 2016, Congress required EPA to systematically conduct risk evaluations of chemicals. 15 U.S.C. § 2605(b)(2). EPA was required to choose ten chemicals initially and complete risk evaluations for those chemicals within three and a half years. *Id*. §§ 2605(b)(2)(A), (G). EPA must also designate "high-priority" and "low-priority" substances. *Id*. §§ 2605(1)(B). After the initial batch of ten chemicals, EPA must "ensure that risk evaluations are being conducted on at least 20 high-priority substances and that at least

20 chemical substances have been designated as low-priority substances," and EPA must "continue to designate priority substances and conduct risk evaluations . . . at a pace consistent with the ability of [EPA] to complete risk evaluations" within three and a half years. *Id*. §§ 2605(b)(2)(B), (C), (G).

In December 2016, EPA published a list of ten chemicals drawn from the Work Plan for initial risk evaluations and began the process of evaluating their risks. 81 Fed. Reg. 91,927 (Dec. 19, 2016). The first risk evaluations under the amended TSCA are expected to be complete in 2020.

## ARGUMENT

This Court has not decided that fluoridation chemicals pose an "unreasonable risk" of injury to health, and it may never do so. Until this Court determines the level of risk posed by the chemicals at issue in this case, EPA cannot be expected to prove that other chemicals pose a greater risk. EPA must first understand how the Court has characterized the risks of the chemicals that Plaintiffs have identified. Until the Court determines the extent of the risk posed by fluoridation chemicals, if at all, that must be managed pursuant to EPA's authority under TSCA section 6(a), EPA also cannot be expected to prove that it lacks the resources to initiate the rulemaking(s). Further, EPA's list of chemicals on which it is taking action and the Agency's available resources change over time. Any questions relating to deferral of rulemaking are unripe unless and until the Court orders rulemaking.

Because the issue of deferral of rulemaking is unripe, this Court should bifurcate proceedings, focus only on the risk posed by fluoridation chemicals at this stage of the proceeding, decide the extent of the risk that will require rulemaking (if at all), and then consider whether rulemaking should be deferred. The Federal Rules of Civil Procedure afford this Court great discretion to bifurcate proceedings. Fed. R. Civ. P. 42(b). The Court may bifurcate "[f]or convenience, to avoid prejudice, or to expedite and economize." *Id*. Bifurcating the deferral issue would be more convenient, expeditious and economical. Requiring EPA to present evidence on

Defendants' Opposition to Plaintiffs' Motion in Limine No. 2 on Deferral
Case No. 17-cv-02162 EMC

2

the extent of the risk with respect to other chemicals on which the Agency is taking action and on the Agency's resources would elongate trial. More importantly, if the Court ultimately decides that fluoridation chemicals do not pose an unreasonable risk of injury to health, the Court would not need to hear evidence on this issue at all.

Even if this Court believes that EPA should generally present evidence on the extent of the risk with respect to other chemicals on which the Agency is taking action and the Agency's resources before the Court determines whether EPA must initiate rulemaking, the circumstances of this case are unusual. This is the first case in which Plaintiffs seek to convince a court of the unreasonable risk of their chosen chemicals under the 2016 TSCA Amendments. Given the timing of Plaintiffs' suit, trial will be complete before the time allowed by statute for EPA to complete the first ten risk evaluations. In the future, EPA may be able to introduce evidence about these completed risk evaluations to explain the risk of the chemicals on which the Agency may be taking action. It might be possible for EPA to present this evidence at the same time that a future plaintiff attempts to prove the unreasonable risk of its chosen chemical. To hear evidence on the extent of the risk posed by other chemicals, this Court should wait for those risk evaluations to be complete.

Plaintiffs also broadly contend that the Court should exclude "all evidence—such as EPA's current resources—that is solely relevant" to the deferral issue. Pls. Mot. at 5-6. But EPA's resources are not solely relevant to deferral. EPA also seeks to introduce this evidence to demonstrate the extent of EPA resources necessary to conduct a chemical risk evaluation pursuant to TSCA's statutory and scientific requirements. Plaintiffs argue that they can demonstrate unreasonable risk of injury to health pursuant to "EPA's longstanding risk assessment policies." Pls.' MSJ at 1. EPA disputes whether Plaintiffs have conducted any risk assessment, and disputes whether Plaintiffs' demonstrate compliance with EPA's risk assessment policies generally, or those more specific to TSCA risk evaluations. EPA intends to demonstrate the extent of resources necessary for compliance, including, but not limited to, the various expertise required to complete

a risk evaluation under TSCA. Thus, EPA's evidence on available resources is also being offered to dispute the credibility and sufficiency of Plaintiffs' expert testimony on risk assessment.

## CONCLUSION

This Court has broad discretion to bifurcate proceedings. Because the deferral issue is unripe, this Court should decide to hear evidence relating to deferral in a later proceeding. Plaintiffs have given no legal reason that EPA's evidence on its available resources should be excluded from any proceeding.

Date: December 16, 2019

Respectfully Submitted,

*/s/Simi Bhat*
Debra J. Carfora
Brandon N. Adkins
John Thomas H. Do
Simi Bhat
United States Department of Justice
Environment & Natural Resources Division
301 Howard St., Ste. 1050
San Francisco, CA 94105
Tel: (415) 744-6473
Fax: (202) 514-8865
Email: simi.bhat@usdoj.gov

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

Pursuant to stipulation, I hereby certify that on this 17th day of December, 2019, a true and correct copy of the foregoing Defendants' Opposition To Plaintiffs Motion in Limine No. 2 was served on counsel for Plaintiffs by email.

*/s/ John Thomas H. Do*
John Thomas H. Do
United States Department of Justice