C. ANDREW WATERS, ESQ., CA Bar No. 147259
MICHAEL CONNETT, ESQ., CA Bar No. 300314
WATERS, KRAUS & PAUL
222 N. Pacific Coast Hwy, Suite 1900
El Segundo, CA 90245
310-414-8146 Telephone
310-414-8156 Facsimile

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

FOOD & WATER WATCH, et al.,

Plaintiffs,

vs.

U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.

Defendants.

Civ. No. 17-CV-02162-EMC

**PLAINTIFFS' ADMINISTRATIVE MOTION TO ADD FOUR EPA DOCUMENTS TO THE EXHIBIT LIST, PURSUANT TO LOCAL RULE 7-11**

Plaintiffs hereby move, pursuant to Local Rule 7-11, for leave to add four EPA documents to their Exhibit List. EPA was unwilling to stipulate to this request thus necessitating the instant motion. As set forth herein, Plaintiffs promptly notified EPA of their intent to use these documents upon learning of their existence; the documents are clearly relevant to the issues in this case; and EPA will not be prejudiced by their introduction because EPA wrote the documents and was therefore well aware of them. The Court should use its broad discretion under FRCP 16 to grant this administrative motion.

**PROCEDURAL HISTORY**

Pursuant to the Court's Pretrial Order, the parties' joint exhibit list was initially due on December 17, 2019; a deadline that was later extended two days to December 19, 2019 at the parties' request. ECF Nos. 107 & 137. On December 20, 2019, the Court continued the trial date from February 3, 2020 to April 20, 2020. ECF No. 155.

Shortly after filing the joint exhibit list on December 19, EPA notified Plaintiffs that it desired to make some corrections to the list and refile. Connett Decl. ¶ 2. Plaintiffs did not object. *Id.* On January 15, 2020, Plaintiffs notified EPA that Plaintiffs wished to add a few additional EPA documents to the amended exhibit list. *Id.* ¶¶ 3 & 5. After receiving no response, Plaintiffs sent a follow-up email on February 3 requesting a meeting in order to discuss the various changes that the parties desired to make. *Id.* ¶ 7. Counsel for the parties then engaged in several telephonic meet and confers to discuss amending the exhibit list. *Id.* ¶ 8. On February 7, Plaintiffs provided EPA with a list of 6 EPA documents that Plaintiffs wished to add. *Id.* ¶ 9. On February 19, EPA notified Plaintiffs that it would not consent to these documents being added to the corrected exhibit list,[1] and advised Plaintiffs that they would need to file an administrative motion to get the Court's permission to do so. *Id.* ¶ 10. Shortly thereafter, Plaintiffs reduced the number of documents to 4, but EPA maintained its objection. *Id.* ¶ 11.

[1] The parties filed a corrected exhibit list on February 26, 2020. ECF No. 159.

## FACTUAL BACKGROUND

The EPA documents that Plaintiffs wish to add to the exhibit list fall into two categories: (1) EPA water intake data, and (2) EPA's recent risk evaluations under TSCA.

EPA Water Intake Data

In 2019, the EPA published an update to its *Exposure Factors Handbook* ("*Handbook*")[2] which is a document "intended for use by exposure and risk assessors both within and outside the U.S. EPA as a reference tool and primary source of exposure factor information." **Ex. C** at 1-3. In the 2019 update, EPA focused exclusively on the question of how much tap water Americans drink. **Ex. D**. As described by EPA, the update "includes a comprehensive review of the scientific literature through 2017" and sets forth "the most up-to-date and scientifically sound" data on tap-water consumption in the U.S.[3] *Id.* at 3-1. As part of this update, EPA identified the data that it believes most accurately reflect tap water consumption for each age group in the population, including formula-fed infants, pregnant women, and the elderly. *Id.* at 3-1, 3-4, 3-7, & 3-9.

Neither Plaintiffs, nor their counsel, were aware of EPA's *Handbook*, including the 2019 update, until late January 2020. Connett Decl. ¶ 6. Plaintiffs' risk assessment expert, Dr. Kathleen Thiessen, relied upon an older 2006 analysis from the National Research Council for her estimates of fluoride ingestion from tap water. EPA's expert, Dr. Tala Henry, criticized Dr. Thiessen's reliance on the NRC data, stating that "[l]iterature searches for critical components of a risk evaluation (exposure assessment) appear not to have been conducted." **Ex. E** at 1. EPA has made clear it intends to advance this argument at trial, noting in its Trial Brief that:

---

[2] Through this motion, Plaintiffs seek to add the 2019 update, as well as the introduction to the *Handbook* (which was published in 2011) to their exhibit list. The history of the *Handbook*, and its periodic updates, is described on the EPA website at: https://www.epa.gov/expobox/about-exposure-factors-handbook.

[3] EPA's 2019 report expresses tap water intake data in terms of milliliters per kilogram of body weight per day (mL/kg/day). This data permits direct calculation of fluoride exposure from fluoridated water because fluoridated water contains 0.7 micrograms of fluoride per milliliter. Thus, a formula-fed infant who ingests 100 mL/kg/day in a fluoridated community will ingest 70 micrograms per kilogram of bodyweight, which can alternatively be expressed as 0.07 milligrams per kilogram of bodyweight (mg/kg/day).

> Dr. Henry will . . . testify that whether the NRC 2006 data should be relied upon for an exposure assessment in this case requires a careful analysis of whether it can and should be used for measuring exposure today. Dr. Thiessen did not conduct this analysis.

ECF No. 146 at 10:14-16. Notably, neither Dr. Henry nor EPA ever disclosed that *EPA had just completed the very type of comprehensive review which EPA faults Dr. Thiessen for not conducting*. Whatever the reason for EPA's omission, the important fact is that EPA's updated tap-water intake data *support Dr. Thiessen's exposure estimates* (and her risk characterization thereof). In fact, EPA's data shows that formula-fed infants consume *more* water (and thus more fluoride) than Dr. Thiessen had estimated. Plaintiffs will demonstrate this at trial by simply comparing NRC's water intake data with the water intake data that EPA's 2019 report identified as "the most up-to-date and scientifically sound" to use.[4]

<u>EPA's Recent Risk Evaluations Under TSCA</u>

EPA has recently released two new TSCA risk evaluations. In November of 2019, EPA released its draft risk evaluation for N-Methylpyrrolidone ("NMP"), and in February 2020, EPA released its draft risk evaluation for Trichloroethylene ("TCE"). Connett Decl. ¶¶ 4 & 11. Neither Plaintiffs nor their counsel were aware of the NMP risk evaluation until early January, but upon learning of it, Plaintiffs promptly notified EPA of their intent to add the document to their exhibit list. *Id.* ¶¶ 3-4. The NMP risk evaluation is particularly probative because it is the only risk evaluation under the amended TSCA where EPA has found unreasonable risks based on *non-cancer* risks alone, including developmental toxicity. The EPA did so based *solely* on *animal* data, and despite the fact that human exposures are *far below* the doses that cause effects in animals. The EPA's findings of unreasonable risk for NMP thus further underscore the strength of the current evidence on fluoride, because there is abundant *human* evidence of harm from fluoride, including at doses that are exceeded by people consuming fluoridated tap water.

---

[4] For example, Dr. Thiessen relied on NRC's estimate that 5% of formula-fed infants under 6 months of age in fluoridated areas consume **204 mL/kg/day** of tap water. EPA's updated data shows that infants <1 month of age, 1 to <3 months, and 3 to <6 months of age consume 240 mL/kg/day, 285 mL/kg/day, and 171 mL/kg/day, respectively, for a 6 month average of **221 mL/kg/day**. *See* **Ex. D** at 3-9.

**LEGAL STANDARD**

District courts have "broad discretion" to "control the course of litigation under Federal Rule of Civil Procedure 16." *Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011). Where, as here, the Court has issued a pretrial order (i.e., ECF No. 107), "the order controls the course of the action *unless the court modifies it*." FRCP 16(d) (emphasis added). Even when a district court issues a *final* pretrial conference order under FRCP 16(e), the court "retains a 'certain amount of latitude to deviate from a pretrial order'" in order to "prevent manifest injustice." *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, No. 1:11-CV-00845-SKO, 2013 WL 3803911, at *1 (E.D. Cal. July 19, 2013) (quoting FRCP 16(e) and *Manley v. AmBase Corp.*, 337 F.3d 237, 249 (2d Cir.2003)). In *Fresno Rock*, therefore, the court permitted the defendant to add new exhibits after the final FRCP 16**(e)** order because, *inter alia*, the documents had "been in the possession of Plaintiffs during the course of the litigation" and there was no evidence that defendant sought the amendment in "bad faith." *Fresno Rock*, 2013 WL 3803911, at *4. Similarly, a district judge in the Northern District of California permitted the defendant to add exhibits after a final FRCP 16**(e)** order because, *inter alia*, the plaintiff was already well aware of the documents as evident by the fact the plaintiff had previously intended to use them as exhibits. *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 U.S. Dist. LEXIS 142097, at *9 (N.D. Cal. Oct. 5, 2014).

**ARGUMENT**

Unlike in *Fresno Rock* and *GPNE Corp.*, the final pretrial conference in this case is still over a month away (i.e., March 31, 2020) and the Court has not yet issued an order under FRCP 16(e). As such, the more stringent "manifest injustice" standard that applies to modifications of FRCP 16(e) orders does *not* apply here, and the Court has broad discretion to grant the Plaintiffs' request. *Avila*, 633 F.3d at 833. But even *if* the Court had already issued a final 16(e) order, *Fresno Rock* and *GPNE Corp.* demonstrate that relief here would still be warranted for the reasons discussed below.

First, as in *Fresno Rock* and *GPNE Corp.*, EPA was aware of each of the 4 documents that

Plaintiffs seek to add because they are documents which EPA wrote and published. It can hardly be deemed prejudicial to EPA for the Court to know what EPA has said in its own publications.

Second, as in *Fresno Rock* and *GPNE Corp*., Plaintiffs first discovered these documents *after* filing the initial Exhibit List and thus the instant motion is not the result of an intentional "trial by ambush" strategy. One of the documents (i.e., TCE risk evaluation) was not even published until February 2020, and the NMP risk evaluation was not published until November 2019—shortly before the filing deadline for the exhibit list. Connett Decl. ¶¶ 4 & 11. Further, EPA's update to the *Handbook* was not published until February 2019 (three months *after* the close of document discovery) and was not cited by any of the parties' experts. When Plaintiffs became aware of the *Handbook* in January 2020, they *promptly* notified EPA of their intent to use these materials at trial. Connett Decl. ¶¶ 6-9. Plaintiffs thus acted in good faith.

Third, the two EPA documents on water intake are of clear relevance to the issues in this case and will assist the Court in its factfinding. EPA's TSCA expert, Dr. Henry, has explained that the risk evaluation in this case should "compare the exposure of humans . . . (i.e., the dose resulting from exposure to the fluoride), *specifically applicable to the condition(s) of use*, to the dose of fluoride identified in the hazard assessment to have no adverse effects." **Ex. E** at 23. Here, the *only* "condition of use" at issue is fluoridated drinking water. EPA's *Handbook* is thus relevant as it permits a direct estimate—using "*the most up-to-date and scientifically sound*" data—of the daily fluoride doses that Americans ingest from drinking fluoridated water, including susceptible subgroups such as infants and pregnant women.

Finally, EPA's risk evaluations for NMP and TCE are relevant to this case because they help to demonstrate how EPA has defined unreasonable risk *in practice* (not just in theory). Since EPA has taken the position that Plaintiffs did not perform a credible risk evaluation under TSCA, it is relevant and probative to understand how EPA has conducted its own risk evaluations, and how EPA has made unreasonable risk findings for other chemicals based on far less evidence of harm than is now available for fluoride. For the foregoing reasons, the Court should use its broad discretion to grant this motion.

February 26, 2020

Respectfully submitted,

*/s/ Michael Connett*
MICHAEL CONNETT
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing this 26th day of February, 2020, upon all ECF registered counsel of record using the Court's CM/ECF system.

*/s/ Michael Connett*
MICHAEL CONNETT