Pages 1 - 17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

FOOD & WATER WATCH, et al.,      )
                                 )
         Plaintiffs,             )
                                 )
   VS.                           )    NO. C 17-02162 EMC
                                 )
U.S. ENVIRONMENTAL PROTECTION    )
AGENCY, an agency of the         )
United States; et al.,           )
                                 )
         Defendants.             )
_____)

                        San Francisco, California
                        Monday, March 9, 2020

                  TRANSCRIPT OF PROCEEDINGS

TELEPHONIC APPEARANCES:

For Plaintiffs:
                    WATERS KRAUS & PAUL
                    222 North Pacific Coast Highway
                    Suite 1900
                    El Segundo, California 90245
               BY:  MICHAEL P. CONNETT
                    ATTORNEY AT LAW
For Defendants:
                    U.S. DEPARTMENT OF JUSTICE
                    Environment and Natural Resources Div.
                    601 D Street, NW
                    Washington, D.C.  20004
               BY:  DEBRA CARFORA
                    ATTORNEY AT LAW

REPORTED BY:  ANA M. DUB, RDR, CRR, CCRR, CRG, CCG
              OFFICIAL REPORTER, CSR NO. 7445

| | |
|---|---|
| 1 | **<u>Monday - March 9, 2020</u>**                                    **<u>9:59 a.m.</u>** |
| 2 | <u>P R O C E E D I N G S</u> |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  Calling Civil Action 17-2162, Food & Water |
| 5 | Watch, Inc., et al. versus Environmental Protection Agency, |
| 6 | et al. |
| 7 | Counsel, please state your appearances for the record, |
| 8 | starting with plaintiffs' counsel. |
| 9 | **MR. CONNETT:**  Good morning, Your Honor.  This is |
| 10 | Michael Connett on behalf of the plaintiffs. |
| 11 | **THE COURT:**  All right.  Thank you, Mr. Connett. |
| 12 | **MS. CARFORA:**  Good morning, Your Honor.  This is Debra |
| 13 | Carfora on behalf of EPA. |
| 14 | **THE COURT:**  All right.  Thank you, Ms. Carfora. |
| 15 | So the question is, with respect to these four documents |
| 16 | that the plaintiffs want to add, the first question is, this is |
| 17 | past the deadline, the Rule 16 deadline, and I'd like to know |
| 18 | what good cause there is for not introducing these documents |
| 19 | earlier. |
| 20 | **MR. CONNETT:**  Yes, Your Honor. |
| 21 | First, one of the documents, the risk evaluation for TCE, |
| 22 | was only published in February of this year; so it was |
| 23 | published after the pretrial filing deadline.  The risk |
| 24 | evaluation for NMP was not published until sometime in |
| 25 | November 2019, which was after the close of expert discovery |

1  and was at a point in time when we were working on the MSJ

2  hearing and doing a lot of preparation for pretrial.

3       Documents where we were -- this is a complex case,

4  Your Honor.  I think you'd appreciate that.  And we have a lot

5  of documents in this case.  We produced to EPA over 14,000

6  pages of documents in discovery, and we have extensive expert

7  reports in this case dealing with a large number of studies.

8  And we have been working diligently to disclose to EPA those

9  materials that we think are relevant and probative.

10      And this one particular risk evaluation, which, again, was

11 published at some point in November of 2019, we just did not

12 become aware of it.  And I first became aware of it on

13 January 10th, and very soon thereafter, I notified EPA's

14 counsel to let them know that we intended to add it to our

15 exhibit list.

16      And I would note, Your Honor, that as originally

17 contemplated under the Court's pretrial order, there was a

18 one-and-a-half-month notice period, essentially, between the

19 filing of the exhibit list and trial.  And here, after

20 the Court continued the trial date to April 20th, we gave EPA

21 over two and a half months' notice for these four documents.

22 So they actually had more notice for these four documents than

23 was originally contemplated under the pretrial order for the

24 exhibit list.

25           **THE COURT:**  All right.  Let me ask the other side.

1          And the question is:  What's the irreparable harm here?

2     What's the prejudice, considering these are EPA documents and

3     there is still time before trial?

4          **MS. CARFORA:**  Thank you, Your Honor.

5          The prejudice is compounded here.  There's a number of

6     points here.

7          First of all, the EPA's position with the documents is not

8     necessarily the content of the documents or the data.  It is

9     how plaintiffs intend to use that data.  That is the key here.

10    That has been EPA's position throughout this litigation.

11         That is, what the plaintiffs are attempting to do here,

12    they are attempting to basically introduce a new expert opinion

13    based on data that has been available to them and their experts

14    since as early as 2011.  So -- and for whatever reason,

15    plaintiffs and their experts relied on data from 2006 to base

16    their opinions on, and those were the opinions that were

17    presented to EPA.

18         At this point, for whatever reason, more than six months

19    after plaintiffs were on notice, as of August 1st when

20    Dr. Henry issued her rebuttal report and put plaintiffs on

21    notice that, as a very big initial issue, we had a problem with

22    using data that old, going back to 2006.  So plaintiffs have

23    been on notice of Dr. Henry's critique for more than six months

24    and still did not -- to this point, to today, have not

25    supplemented their expert opinion.  They have not disclosed to

1    EPA what their expert's new opinion will be on the basis of

2    this data that has been available to them since 2011.

3         And so what plaintiffs are really seeking to do here is

4    they're seeking to supplement their expert reports.  And that

5    is compounded because, number one, we have no idea what their

6    experts are going to say; so we can't depose their experts

7    without having -- without knowing what their new opinions are

8    going to be.

9         Number two, we need time to at least -- if his point is,

10   ultimately, to supplement, which we do not concede, but if they

11   do, we would need time to review those opinions.  We would need

12   time to determine if those opinions need to be rebutted and

13   what witnesses could rebut them; and then we would need to put

14   aside time for depositions of multiple witnesses here.

15        Which, I think EPA came to the Court back in September.

16   In September, we asked the Court to extend the discovery

17   deadline here for the very limited purpose of seeking expert

18   discovery on the NTP draft.  And we sought -- EPA has been

19   consistent.  What we were seeking was a fair, balanced approach

20   to offering supplemental opinions on new data that we had

21   just -- that we had just discovered.

22        And plaintiffs argued, and the Court agreed, that it was

23   too late and that it was way past the deadline and that -- in

24   fact, what plaintiffs argued there was that they were going to

25   be prejudiced by the idea that we would have to redepose their

1    experts because it would cost too much money, which makes it

2    extremely, you know, inconsistent and surprising to me that

3    they would now be willing to just offer their experts up, you

4    know, and it's inconsistent with their argument before.

5          So there are a number of -- also, the third issue why it's

6    not harmless is because Federal Rules 26(a) and 26(e), along

7    with 37(C), demand that supplemental opinions and documents be

8    disclosed and that, if they're not disclosed, that they are

9    kept out of evidence.

10         And even under 26, plaintiffs here do not reach the burden

11   under 26 to add their documents.  So under Rule 26 and in the

12   Ninth Circuit, you cannot supplement -- supplementing an expert

13   report means correcting inaccuracies or filling gaps of

14   incomplete information based on a record that was not available

15   at the time of the initial disclosures.

16         To the extent that the information is being used to

17   support and underscore the strength of Dr. Thiessen's existing

18   report, as plaintiffs discuss on page 3 of their motion, the

19   supplement would be inappropriate because the information was

20   available to them at the time of disclosure.

21         And to the extent the information is being used to

22   generate an entirely new calculation of the chemical-specific

23   exposure, the supplemental information goes far beyond simply

24   correcting inaccuracies or filling gaps in the report.

25         So EPA is compoundly prejudiced at three different levels.

1          **THE COURT:**  All right.  What about the one report that

2    was released in February, after the disclosure dates?

3          **MS. CARFORA:**  Well, the issue with the TPE -- first,

4    let me address that.

5      EPA had a motion in limine pending concerning -- these are

6    not risk evaluations.  They are draft risk evaluations.  Okay?

7    So EPA has expressly disclaimed that the documents are not

8    final and they can change after peer review.

9      And so we have a motion in limine pending on a number of

10   draft risk evaluations that plaintiffs had also disclosed late,

11   but before the pretrial filing; so we agreed to allow them to

12   be on the expert list.  And we agreed that we would just

13   file -- I'm sorry -- on the exhibit list.  And we agreed that

14   we would just file a motion in limine to address our issues

15   with that.

16     And so the TPE risk evaluation published in February '20,

17   again, if they're going to supplement their expert opinions on

18   the basis of that, we're entitled to disclosure of what those

19   opinions would be.  But at the very least, those documents --

20   those draft risk evaluations are subject to EPA's motion in

21   limine.

22          **THE COURT:**  All right.  So I understand --

23          **MR. CONNETT:**  Your Honor, may I respond?

24          **THE COURT:**  Hold on.

25     So I understand they're subject, substantively, to a

1    motion in limine.  But with respect to disclosure, that is the

2    one document -- if the motion in limine is denied, that is one

3    document that was -- at least there's a reason, an excuse not

4    to have disclosed that earlier.

5         **MS. CARFORA:**  We would concede that the documents

6    could come onto the exhibit list for the purpose of

7    supplementing the exhibit list.

8         But we still don't know how plaintiffs intend to use that

9    document or how plaintiffs' experts intend to -- if at all,

10   they intend to elicit testimony on that document.  And because

11   we don't know that, we're prejudiced.

12        I would concede that it could be supplemented on the

13   exhibit list at this point because it wasn't published until

14   February 2020, but I would reserve the right to argue whether

15   or not that document should, number one, be admitted or, number

16   two, if plaintiffs tried to elicit testimony on it, I would

17   request the right to object to it at that time.

18        **THE COURT:**  All right.  So I want the plaintiff to,

19   among other things, address how they would intend to introduce

20   the February '20 TCE risk evaluation draft.

21        And what deadline or what timeline are you anticipating if

22   there's going to be a supplement to an expert disclosure in

23   that regard?

24        **MR. CONNETT:**  All right.  Yes, Your Honor.

25        First, pursuant to the Court's order last week, we met and

1    conferred with defense counsel, and we -- they asked that if we

2    did have a supplemental deposition, that we provide a

3    supplemental report.  We're fine with doing that.  It would be

4    a very short report, two to three pages.  We would have it done

5    by this Friday.  And we gave them dates of March 24th and

6    March 25th to depose Kathy Thiessen, our risk assessment

7    expert.

8         But I'd like to take a step back, Your Honor, and respond

9    to what I think is just an incorrect characterization that

10   defense counsel made about the other document.

11        Counsel stated that we're providing a whole new expert

12   opinion, and that's just not the case.  And I'd like to put

13   this in context here.

14        Dr. Thiessen did an exposure assessment where she relied

15   upon data from the National Research Council that was published

16   in 2006.  Now, in response to that, EPA criticized her for not

17   having done an extensive literature review to determine if the

18   2006 data is still applicable and still accurate for current

19   water consumption patterns.  That's their criticism coming at

20   our expert.  Well, what we discovered in January of this year

21   is that EPA did that very exact analysis last year.

22        And so the idea that it would be prejudicial for the EPA

23   to be confronted with its own exposure assessment is just hard

24   for me to understand.  I mean, this is the EPA doing the exact

25   type of exposure assessment that they fault Dr. Thiessen for

1    not doing.

2         So to be clear, all it will do, Your Honor, by introducing

3    that water intake data, is just demonstrate that Dr. Thiessen's

4    current estimate and current opinion is supported by EPA's own

5    exposure assessment.  That's it.

6         It's not going to be adding a new opinion.  It's not going

7    to change her opinion in any way whatsoever.  She's just going

8    to say:  My exposure estimate, which is based on the National

9    Research Council data, is also consistent with and supported by

10   EPA's own exposure assessment that they did last year.

11        It literally, Your Honor, will be about maybe a minute or

12   two of testimony, just to demonstrate that her exposure

13   estimates are supported by EPA's own analysis.

14        And I think, Your Honor, here, where we're dealing with a

15   case that implicates a national policy, a premium should be

16   placed on resolving this case on the merits and getting the

17   facts correct.

18        And the idea that EPA should still be entitled to make a

19   frivolous, incorrect argument that Dr. Thiessen's data is

20   somehow incorrect or that we somehow don't know whether it's

21   still applicable to the current situation in the United States

22   is just a factually bankrupt argument, and I think plaintiff

23   would be prejudiced by EPA being able to assert that in court.

24        So, again, we're not offering a new opinion with respect

25   to the water intake data.  We're just showing that it supports

1  Dr. Thiessen's currently existing opinion.

2      And so pursuant to your Court's order, we have confirmed

3  with EPA, we will provide a very short, three- to four-page

4  supplemental report by Friday, and we'll make Dr. Thiessen

5  available for a deposition later this month.

6      So, and then, when it comes to the NMP evaluation from

7  November, it's a highly relevant document, Your Honor, to this

8  case.  EPA's central defense in this litigation is that

9  plaintiff has not considered the scientific data in a way

10  consistent with TSCA under the new amended act.  And that risk

11  evaluation from November of last year demonstrates in many ways

12  that plaintiff did do the correct risk evaluation and did it

13  consistent with how EPA actually does it in practice.

14      So, again, allowing the introduction and some brief

15  testimony on the NMP risk evaluation will help to resolve this

16  case on the merits.

17          **THE COURT:**  All right.  Let me ask the Government.

18          **MS. CARFORA:**  Your Honor, may I be heard on that?

19          **THE COURT:**  I do.  And I want you to address:  If, in

20  fact, there is a disclosure of how the plaintiffs intend to

21  supplement or amend their expert disclosure and you have a

22  chance to depose their expert several weeks before trial, why

23  shouldn't I wait and see at least what that disclosure looks

24  like before making a ruling?

25          **MS. CARFORA:**  Thank you, Your Honor.

1    There's a couple of issues in this.  I think plaintiffs

2  are narrowing the prejudice to EPA.  It's not just -- I mean,

3  first of all, you know, this is about diligence.  This, before

4  the Court, is about diligence.

5    Plaintiffs just, you know, expressed to the Court that

6  this document's very important on the merits.  We completely

7  disagree with that, which underscores the need to have expert

8  testimony on this document if it's going to be used.  But not

9  just expert testimony from plaintiff.  We need to see how

10  plaintiffs intend to use the data.  And then EPA should

11  absolutely have an opportunity to determine if it needs to

12  rebut the evidence and, if it needs to rebut the evidence, how.

13    The first thing I can tell you is that I have in my hand a

14  signed declaration from Dr. Henry that I'm prepared to file

15  with the Court, if the Court would like to see it, immediately

16  following this hearing that, basically, not only will she be --

17  on the basis of what plaintiffs have represented to us and to

18  the Court in their supplemental motion, we're just assuming,

19  for the purposes of this hearing, that Dr. Henry would be the

20  expert witness that should rebut this potential testimony or

21  evidence.

22    On that assumption, Dr. Henry has declared that she --

23  that having to review a supplement and/or having to rebut a

24  supplement and/or having to appear for deposition on that

25  supplement would be a substantial hardship not just to herself,

but the entire OPPT program, which is currently trying to meet

its statutory deadlines under the amended TSCA to get all of

these draft risk evaluations finalized and published.

There is not one published draft evaluation under amended

TSCA yet, and EPA is under enormous pressure to get those

published and get them -- and to get them out and get

regulations around them.  And Dr. Henry has declared that she

is just -- that it would be a substantial burden to her and to

EPA; that she has scheduled all of her responsibilities around

the Court's order in this case; that she's already had to

reschedule many of those responsibilities based on the amended

scheduling orders that have come out -- there's been a number

of them over the past couple of months -- and that she has work

travel between -- I think it's the 14th and the 20th, if I'm

right.

So it's prejudice to EPA because, you know, we will not

have an opportunity to rebut it.  We have -- at this point,

March 24th is less than 30 days before the start of trial.  And

there's plenty of case law in the Ninth Circuit and in the

Northern District of California that suggests that that

prejudice is too high to allow this type of supplement at this

point.

            THE COURT:  Let me ask you, Ms. Carfora.

Hold on.

If Dr. Henry is permitted -- and of course she would if

1   this is allowed -- to review and rebut, one solution is -- it's

2   not clear to me that she would have to be made available for a

3   deposition because that's part of the price that the plaintiff

4   is going to have to pay for this late, belated disclosure.

5       So I don't see a burden if I were to limit this to just

6   her ability to rebut and file a supplemental declaration

7   addressing any change.  I find that hard to believe, that that

8   is so burdensome and more burden- -- especially compared to

9   having to prepare for trial itself, that that would carry the

10  day.

11      So that would be one approach, is to allow you, if you

12  want, to take the deposition of Dr. Thiessen, but I'm not going

13  to permit a deposition of Dr. Henry because it's late

14  disclosure.

15      **MS. CARFORA:**  And I appreciate that, and I know

16  Dr. Henry will appreciate that.

17      I think the problem is, the first layer of prejudice is

18  not cured, which is, you know, we are all trying to prepare for

19  trial, not just DOJ, but at EPA as well, and her resources are

20  extremely limited.  EPA and her program -- she's the deputy

21  director of this program.  She has responsibilities that she

22  has laid out in her declaration that are enormous in terms of

23  implementing this program and getting these draft evaluations

24  out and getting regulations for these chemicals done.

25      And I think that -- I think that Dr. Henry will say that

1    even reviewing and having to take the time out to review and

2    issue a supplemental report on her end would be prejudicial and

3    would be burdensome to her and the program.

4        **THE COURT:**  Well, what makes this case unique, in a

5    sense, is that the documents here are not, sort of, third-party

6    documents or other documents out in the world that have been

7    discovered that one party wants to introduce, that the other

8    party has to respond to with no notice.  Here, although

9    belated, these are documents from the EPA, some of which may

10   pertain directly to some of the criticism of the plaintiffs'

11   expert.  So these are documents that have been readily

12   available, obviously, to the aggrieved party.  In fact, these

13   are the documents of the aggrieved party.  So there's a

14   different equity here than would naturally obtain.  On the

15   other hand, there's an interest in full disclosure, timely

16   disclosure, in order for each side to be able to prepare for

17   trial and not to have last-minute surprises.

18       So it seems to me that the fair thing to do is, I want to

19   wait and see what this disclosure is -- because the plaintiff

20   has promised that this is going to be a very limited and short

21   and consistent supplementation and it's going to be done by

22   this Friday -- before I make a final decision.  But my

23   inclination is, if it is what the plaintiff says it is and the

24   defendant is given an opportunity to take the deposition -- I

25   assume it's only going to be one expert's testimony that's

1   going to be supplemented.  Is that correct?

2           **MR. CONNETT:**  That is correct, Your Honor.

3           **THE COURT:**  All right.  So it's a singular expert.

4   I think preparing for that singular expert's supplementation,

5   which is based on the EPA's own documents, given that we still

6   have several weeks before trial, and the fact that I'm going to

7   allow Dr. Henry to file a rebuttal or supplemental expert

8   declaration in response, if she wishes, but she's not going to

9   be subject to a deposition.

10       So I'm going to -- that's my tentative ruling, but I'm

11   going to defer until I see.  And I want the parties -- I want

12   the plaintiff to file with the Court the supplemental

13   declaration so I can see for myself what it is.

14          **MR. CONNETT:**  We will do that, Your Honor.  Again, we

15   will be producing the report on Friday; so I will file that

16   with the Court on Friday.

17          **THE COURT:**  Okay.  And so I want to see --

18       We don't have the original?

19       (Discussion off the record between the law clerk and

20   the Court.)

21          **THE COURT:**  I'd like you to file the original report

22   along with the supplemental report so it's all in one place,

23   for our convenience, so I can have it all and compare.

24          **MR. CONNETT:**  Yes, we will do that, Your Honor.

25          **THE COURT:**  All right.  And then I will at that point

1    take the matter under submission and get out a ruling.  If I

2    need further argument or briefing on this, I'll ask for it; but

3    otherwise, I will take it under submission.

4              **MS. CARFORA:**  Thank you, Your Honor.

5              **MR. CONNETT:**  Thank you, Your Honor.

6              **THE COURT:**  All right.  Thank you.

7              **THE CLERK:**  Court is in recess.

8                   (Proceedings adjourned at 10:06 a.m.)

9                              ---o0o---

10

11                    <u>**CERTIFICATE OF REPORTER**</u>

12         I certify that the foregoing is a correct transcript

13   from the record of proceedings in the above-entitled matter.

14

15   DATE:   Wednesday, April 29, 2020

16

17

18   _____

19       Ana M. Dub, CSR No. 7445, RDR, CRR, CCRR, CRG, CCG
                  Official Reporter, U.S. District Court

20

21

22

23

24

25