# ORDER FOR SUPPLIES OR SERVICES

PAGE 1 OF PAGES 8

**IMPORTANT:** Mark all packages and papers with contract and/or order numbers.

| | |
|---|---|
| **1. DATE OF ORDER** 05/28/1999 | **2. CONTRACT NO. (If any)** N/A |
| **3. ORDER NO.** 9W-0262-NAEX | **4. REQUISITION/REFERENCE NO.** CH9082 QT-DC-99-002337 |

**5. ISSUING OFFICE** (Address correspondence to)
U.S. EPA   Mail Drop: 3903R
ADMINISTRATIVE CONTRACT SERVICE CENTER
401 M STREET SW
WASHINGTON, DC 20460

**6. SHIP TO:**
a. NAME OF CONSIGNEE: U.S. EPA   Project Officer: ELLEN S BROWN
OFFICE OF POLICY ANALYSIS & REVIEW
b. STREET ADDRESS: 401 M STREET S.W.   Mail Drop: 5103
c. CITY: WASHINGTON   d. STATE: DC   e. ZIP CODE: 20460
f. SHIP VIA:

**7. TO:**
a. NAME OF CONTRACTOR: ODENSE UNIVERSITY
b. COMPANY NAME: PHILIPPE GRANDJEAN
c. STREET ADDRESS: WINSLOWPARKEN 17, DM 5000 Denmark
d. CITY: Odense   e. STATE: DM   f. ZIP CODE:

**8. TYPE OF ORDER**
[X] a. PURCHASE — REFERENCE YOUR: _____
Please Furnish the following on the terms and conditions specified on both sides of this order and on the attached sheets, if any, including delivery as indicated.
[ ] b. DELIVERY — Except for billing instructions on the reverse, this delivery order is subject to instructions contained on this side only of this form and is issued subject to the terms and conditions of the above-numbered contract.

**10. REQUISITIONING OFFICE:** IMMEDIATE OFFICE HEALTH & ECOL CRIT DIV
Buyer: PHILLIP D OSBORNE (202) 564-4782

**9. ACCOUNTING AND APPROPRIATION DATA**
CH9082 1999 B   28H   20102B 2505   $24650.00   Corp Status: CORPORATE

**11. BUSINESS CLASSIFICATION** (Check appropriate box(es))
[ ] a. SMALL   [ ] b. OTHER THAN SMALL   [ ] c. DISADVANTAGED   [ ] d. WOMAN-OWNED

| 12. F.O.B. POINT | 14. GOVERNMENT B/L NO. | 15. DELIVER TO F.O.B. POINT ON OR BEFORE Date | 16. DISCOUNT TERMS |
|---|---|---|---|
| FOB DESTINATION | | | NET 30 |

**13. PLACE OF**
a. INSPECTION: DESTINATION
b. ACCEPTANCE: City _____ State _____

## 17. SCHEDULE (See reverse for Rejections)

| ITEM NO. (a) | SUPPLIES/SERVICES (b) | QUANTITY ORDERED (c) | UNIT (d) | UNIT PRICE (e) | AMOUNT (f) | QUANTITY ACCEPTED (g) |
|---|---|---|---|---|---|---|
| 1 | Benchmark Model See Statement of Work | 1 | LOT | $24,650.00 | $24,650.00 | |

| 18. SHIPPING POINT | 19. GROSS SHIPPING WEIGHT | 20. INVOICE NO. | | |
|---|---|---|---|---|
| | | | $ .00 | 17(h) TOT (Cont. Pages) |

See Billing Instructions On Reverse

**21. MAIL INVOICE TO:**
a. Name: HQ FINANCIAL SERVICES DIVISION   U.S. EPA   Mail Drop 2734R
b. Street Address (or P.O. Box): 401 M STREET, SW
c. City: WASHINGTON   d. STATE: DC   e. ZIP CODE: 20460

$ 24,650.00   17(i) GRAND TOTAL

**22. UNITED STATES OF AMERICA BY (Signature)** _[signature]_
**23. NAME (Typed):** PHILLIP D OSBORNE   (202) 564-4782
**TITLE:** CONTRACTING/ORDERING OFFICER

AUTHORIZED FOR LOCAL REPRODUCTION / Previous edition not usable   OPTIONAL FORM 347 (REV. 6/95) / Prescribed by GSA/FAR 48 CFR 53.213(e)

Clause(s):

| | | | |
|---|---|---|---|
| FAR | 52.213-3 | Notice to Suppliers | (APR 84) |
| FAR | 52.204-3 | Taxpayer Identification | (JUN 97) |
| FAR | 52.213-1 | Fast Payment Procedure | (APR 84) |

This clause is included by reference.

| | | | |
|---|---|---|---|
| EPAAR | 52.222-26 | Equal Opportunity | (APR 84) |
| FAR | 52.232-33 | Mandatory Information for Electronic Funds Transfer Payment | (AUG 98) |

Incorporated by reference.

FAR a　52.232-34　Payment by Electronic Funds Transfer–Other than Central Contractor Registration (i)　(MAY 99)
PAYMENT BY ELECTRIC FUNDS TRANSFER–OTHER THAN CENTRAL CONTRACTOR REGISTRATION (MAY 1999)

(a) Method of payment.

(1) All payments by the Government under this contract shall be made by electronic funds transfer (EFT) except as provided in paragraph (a)(2) of this clause. As used in this clause, the term "EFT" refers to the funds transfer and may also include the payment information transfer.

(2) In the event the Government is unable to release one or more payments by EFT, the Contractor agrees to either—

(i) Accept payment by check or some other mutually agreeable method of payment; or

(ii) Request the Government to extend payment due dates until such time as the Government makes payment by EFT (but see paragraph (d) of this clause).

(b) Mandatory submission of Contractors EFT information.

(1) The Contractor is required to provide the Government with the information required to make payment by EFT (see paragraph (j) of this clause). The Contractor shall provide this information directly to the office designated in this contract to receive that information (hereafter: "designated office") by no later than 15 days prior to submission of the first request for payment. If not otherwise specified in this contract, the payment office is the designated office for receipt of the Contractors EFT information. If more than one designated office is named for the contract, the Contractor shall provide a separate notice to each office. In the event that the EFT information changes, the Contractor shall be responsible for providing the updated information to the designated office(s).

FAR b　52.232-34　Payment by Electronic Funds Transfer–Other than Central Contractor Registration (ii)　(MAY 99)
PAYMENT BY ELECTRIC FUNDS TRANSFER (Continued)

(2) If the Contractor provides EFT information applicable to multiple contracts, the Contractor shall specifically state the applicability of this EFT information in terms acceptable to the designated office. However, EFT information supplied to a designated office shall be applicable only to contracts that identify that designated office as the office to receive EFT information for that contract.

(c) Mechanisms for EFT payment. The Government may make payment by EFT through either the Automated Clearing House (ACH) network, subject to the rules of the National Automated Clearing House Association, or the Fedwire Transfer System. The rules governing Federal payments through the ACH are contained in 31 CFR part 210.

(d) Suspension of payment.

(1) The Government is not required to make any payment under this contract until after receipt, by the designated office, of the correct EFT payment information from the Contractor. Until receipt of the correct EFT information, any invoice or contract financing request shall be deemed not to be a proper invoice for the purpose of prompt payment under this contract. The prompt payment terms of the contract regarding notice of an improper invoice and delays in accrual of interest penalties apply.

FAR c    52.232-34    Payment by Electronic Funds Transfer—Other than Central Contractor Registration (III)   (MAY 99)
PAYMENT BY ELECTRIC FUNDS TRANSFER (Continued)

(2) If the EFT information changes after submission of correct EFT information, the Government shall begin using the changed EFT information no later than 30 days after its receipt by the designated office to the extent payment is made by EFT. However, the Contractor may request that no further payments be made until the updated EFT information is implemented by the payment office. If such suspension would result in a late payment under the prompt payment terms of this contract, the Contractors request for suspension shall extend the due date for payment by the number of days of the suspension.

(e) Liability for uncompleted or erroneous transfers.

(1) If an uncompleted or erroneous transfer occurs because the Government used the Contractors EFT information incorrectly, the Government remains responsible for—

(i) Making a correct payment;

(ii) Paying any prompt payment penalty due; and

(iii) Recovering any erroneously directed funds.

(2) If an uncompleted or erroneous transfer occurs because the Contractors EFT information was incorrect, or was revised within 30 days of Government release of the EFT payment transaction instruction to the Federal Reserve System, and—

(i) If the funds are no longer under the control of the payment office, the Government is deemed to have made payment and the Contractor is responsible for recovery of any erroneously directed funds; or

(ii) If the funds remain under the control of the payment office, the Government shall not make payment and the provisions of paragraph (d) shall apply.

FAR d    52.232-34    Payment by Electronic Funds Transfer—Other than Central Contractor Registration (IIII)   (MAY 99)
PAYMENT BY ELECTRIC FUNDS TRANSFER (Continued)

(f) EFT and prompt payment. A payment shall be deemed to have been made in a timely manner in accordance with the prompt payment terms of this contract if, in the EFT payment transaction instruction released to the Federal Reserve System, the date specified for settlement of the payment is on or before the prompt payment due date, provided the specified payment date is a valid date under the rules of the Federal Reserve System.

(g) EFT and assignment of claims. If the Contractor assigns the proceeds of this contract as provided for in the assignment of claims terms of this contract, the Contractor shall require as a condition of any such assignment, that the assignee shall provide the EFT information required by paragraph (j) of this clause to the designated office, and shall be paid by EFT in accordance with the terms of this clause. In all respects, the requirements of this clause shall apply to the assignee as if it were the Contractor. EFT information that shows the ultimate recipient of the transfer to be other than the Contractor, in the absence of a proper assignment of claims acceptable to the Government, is incorrect EFT information within the meaning of paragraph (d) of this clause.

(h) Liability for change of EFT information by financial agent. The Government is not liable for errors resulting from changes to EFT information provided by the Contractors financial agent.

FAR         52.233-3         Protest after Award - cont.   (AUG 96)
(d) If a stop-work order is not canceled and the work covered by the order is terminated for default, the Contracting Officer shall allow, by equitable adjustment or otherwise, reasonable cost resulting from the stop-work order.
(e) The Government's right to terminate this contract at any time are not affected by actions taken under this clause.
(f) If, as the result of the Contractor's intentional or negligent misstatement, misrepresentation, or miscertification, a protest related to this contract is sustained, and the Government pays costs, as provided in FAR 33.102(b)(2) or 33.104(h)(1), the Government may require the Contractor to reimburse the Government the amount of such costs.  In addition to any remedy available, and pursuant to the requirements of Subpart 32.6, the Government may collect this debt by offsetting the amount against any payment due the Contractor under any contract between the Contractor and the Government.

FAR         52.249-1         Termination for Convenience of the Government (Fixed Price) (Short Form)   (APR 84)
This clause is incorporated by reference.

CUSTOM                  INVOICES
Invoices shall be prepared in original and at least one copy, containing the following information:  Purchase Order Number, description of commodities/services furnished, period of performance, taxpayer ID number and amount due. Invoices shall be submitted to the address specified in block 21 of this order.

CUSTOM                  INCORPORATION OF CONTRACTOR'S TECHNICAL PROPOSAL
The Contractor's technical proposal entitled National Center for Environmental Research and Quality Assurance Grants and Fellowship System, dated April 27, 1999, is incorporated into this delivery order.

CUSTOM                  PROJECT OFFICER
The project officer defined in block 6 is hereby designated as the project officer for this requirement.  As such, he/she shall

1 - Provide all information of a general nature necessary in the performance of this order.
2 - Be responsible for inspection and acceptance of the services for the certification of
    invoices.

The PROJECT OFFICER DOES NOT have the authority to issue any technical direction which changes or modifies the scope of work, or alter the period of performance.

CUSTOM                  For PO & Payment Information
For payment information, contact the Finance Office on (202)565-2550.  For purchase order information, contact the "Buyer" indicated in block 10 of your Purchase Order.

CUSTOM                  TAX
The Federal Government is exempted from paying taxes.  The tax exempt number is 52-085-2895.

## Additional Terms and Conditions

Year 2000 Compliance

Any product offered or electronic and authorization system delivered under this contract is warranted to be Year 2000 compliant.  Year 2000 Compliant means accurately processing date/time data (including, but not limited to, calculating, comparing, and sequencing) from, into, and between the twentieth and twenty-first centuries, and the years 1999 and 2000 and leap year calculations, when used in accordance with the product documentation provided by the contractor, provided that all products used in combination with the contractor's product properly exchange date data with it.

## SUPPLEMENTAL INVOICING INFORMATION

If desired, this order (or a copy thereof) may be used by the Contractor as the Contractor's invoice, instead of a separate invoice, provided the following statement, (signed and dated) is on (or attached to) the order: "Payment is requested in the amount of $ _____ . No other invoice will be submitted." However, if the Contractor wishes to submit an invoice, the following information must be provided: contract number (if any), order number, item number(s), description of supplies or services, sizes, quantities, unit prices, and extended totals. Prepaid shipping costs will be indicated as a separate item on the invoice. Where shipping costs exceed $10 (except for parcel post), the billing must be supported by a bill of lading or receipt. When several orders are invoiced to an ordering activity during the same billing period, consolidated periodic billings are encouraged.

## RECEIVING REPORT

Quantity in the "Quantity Accepted" column on the face of this order has been: ☐ inspected, ☐ accepted, ☐ received by me and conforms to contract. Items listed below have been rejected for the reasons indicated.

| SHIPMENT NUMBER | PARTIAL FINAL | | DATE RECEIVED | SIGNATURE OF AUTHORIZED U.S. GOV'T. REP. | DATE |
|---|---|---|---|---|---|
| TOTAL CONTAINERS | GROSS WEIGHT | RECEIVED AT | | TITLE | |

## REPORT OF REJECTIONS

| ITEM NO. | SUPPLIES OR SERVICES | QUANTITY REJECTED | UNIT | REASON FOR REJECTION |
|---|---|---|---|---|
| | | | | |

* U.S. government Printing Office: 1996 - 388-789/20005

OPTIONAL FORM 347 (REV. 6/95) / Prescribed by GSA/FAR 48 CFR 53.213(e)

Purchase Order # 9W-0252-NAEX

Statement of Work

Title: Benchmark Modeling of the Faroese Methyl Mercury Data.

Background: In December 1997, EPA released an eight-volume Mercury Study Report to Congress, mandated by the Clean Air Act Amendments of 1990. The Report evaluated the human health and environmental impacts of mercury emissions to the air resulting from human activity. The Report also considered technologies for control of mercury emissions and what those technologies would cost to implement.

At the time of the Mercury Study Report to Congress, it became apparent that considerable new data on the health effects of methyl mercury in humans were emerging. However, as many of these new data had either not been published or had not yet been subject to rigorous review, EPA decides that it was premature to consider making a change in the 1995 methyl mercury RfD at that time. This decision was supported by the Agency's SAB.

In response to SAB's comment regarding the future need to reassess the current RfD in light of the newly emerging data and because of various limitations and uncertainties in the available information, EPA participated in an interagency review of the human data on methyl mercury. This review took the form of a scientific workshop with external scientific experts in November 1998. The purpose of the workshop was to discuss and evaluate the major epidemiologic studies associating methyl mercury exposure with an array of developmental measures in children. On the final day of the workshop each panel presented oral summaries of their discussions and offered preliminary findings and recommendations in a plenary session. One of the recommendations was to perform a benchmark modeling of the Faroese methyl mercury study data, in efforts to develop common endpoints using similar analytical methods.

Purpose:
The purpose of this simplified acquisition is to have an expert perform benchmark modeling of the Faeroes methyl mercury data, adjusting for covariables. It is critical that this calculation be performed by July 7, 1999 based on the Agency's need to develop guidance levels for affected communities.

Task description: A benchmark dose (BMD) is the dose of a substance that corresponds to a prescribed increase in the response (called the benchmark response or BMR) of a health effect. A statistical lower bound on the benchmark dose (BMDL) has been proposed as a replacement for the no-observable-adverse-effect-level (NOAEL) in setting acceptable exposure levels. The BMD is intended to be used as an alternative to the NOAEL in deriving a point of departure for low dose extrapolations. The BMD is a dose corresponding to some change in the level of response to background, and is not dependent on the doses used in the study. The BMR is based on a biologically significant level of response or on the response level at the lower detection limit of the observable dose range for a particular endpoint in a standard study design. The BMD approach does not reduce uncertainty inherent in extrapolating from animal data to humans and

## Purchase Order # 9W-0252-NAEX

does not require that a study identify a NOAEL, only that at least one dose be near the range of the response level for the BMD.

The completion of this task by the specified time period (July 7, 1999) is pivotal to the Agency's decision making process. The *Methyl Mercury Congressional Report*, developed in 1997, is currently being reviewed by the National Academy of Sciences (NAS) technical review board. Pending their review, EPA will initiate the development of a risk assessment to provide guidance on the human health effects from methyl mercury exposure. The benchmark calculation is also a critical piece of information for the upcoming scientific World Health Organization (WHO) workgroup meetings, in July of 1999) on methyl mercury contamination and the process in which the scientific community will address this issue. Any delay in completing the benchmark calculation would result in an unacceptable time frame for the Agency's completion of their assessment.

### Deliverables/Schedule:

1. The contractor shall perform a benchmark modeling of the Faroese methyl mercury data via a comparable methodology (The Crump Program) as was used in the Faroese data set. The draft results of the benchmark modeling shall be submitted to EPA Project Officer for review and comment by June 23, 1999.

2. The contractor shall submit to the EPA Project Officer the final results of the benchmark modeling, incorporating EPA Project Officer's comments, by July 7, 1999.

The final deliverable shall be provided to the Project Officer (PO) in electronic format on a 3.5" diskette in WordPerfect for Windows version 6.1 (WPWIN6.1) and as three (3) hard unbound single sided copies.

### EPA PROJECT OFFICER:

Ellen Brown (6103)
Office of Policy Analysis and Review
Office of Air and Radiation
202/260-7428