C. ANDREW WATERS, ESQ., CA Bar No. 147259
MICHAEL CONNETT, ESQ., CA Bar No. 300314
WATERS, KRAUS & PAUL
222 N. Pacific Coast Hwy, Suite 1900
El Segundo, CA 90245
310-414-8146 Telephone
310-414-8156 Facsimile

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

| | |
|---|---|
| FOOD & WATER WATCH, et al., | Civ. No. 17-CV-02162-EMC |
| Plaintiffs, | **PLAINTIFFS' OBJECTIONS TO EPA'S EXPERT TRIAL DECLARATIONS AND STATUS UPDATE ON EXHIBIT LIST** |
| vs. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al. | |
| Defendants. | |

Pursuant to the Clerk's Notice entered on April 24, 2020 (ECF No. 177), Plaintiffs hereby lodge their objections to EPA's expert trial declarations, and provide a status update on the exhibit list.

**STATUS UPDATE ON EXHIBIT LIST**

The parties have met and conferred and have been able to resolve all but one of their remaining evidentiary objections. The only objection that remains is Plaintiffs' objection to EPA Exhibit No. 543, which is a Senate report that Plaintiffs maintain is inadmissible hearsay. This document, much like case law, can rightfully be cited in legal arguments regarding statutory interpretation, but it has no proper place as *evidence* at trial because it is hearsay without an applicable exception. *See Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers & Employees of Outside Local Unions & Dist. Counsel's (Iron Workers) Pension Plan*, 467 F. Supp. 2d 91, 98 (D.D.C. 2006) (citing cases).

In addition to resolving all but one of the exhibit objections, the parties have also agreed to three additional factual stipulations and have withdrawn additional exhibits. Plaintiffs have withdrawn Exhibit Nos. 1, 2, 4, 8, 9, 10, 21, 22, 24, 28, 29, 30, 40, 50, 51, 59, 60, and 61.

## PLAINTIFFS' OBJECTIONS TO EPA'S TRIAL DECLARATIONS

### A. Dr. Ellen Chang's <u>Non-Disclosed</u> Opinion on "Hazard"

In her expert report for this case, Dr. Chang conducted a "causal analysis" (i.e., not a risk assessment) and concluded that current scientific evidence "is not sufficient to demonstrate a *causal* effect" of fluoridation on neurotoxic outcomes. **Ex. A** (Chang Expert Report) at 7, 9, 15, 62, 87-88. As with the systematic reviews that Dr. Chang conducts on behalf of Exponent's industrial clients, Dr. Chang's expert report emphasized the difference between causation and association. *Id.* at 15, 62, & 87. But therein lay the problem because EPA does not use a causation standard for risk assessment; in fact, EPA's *Guidelines for Neurotoxicity Risk Assessment* specifically state that an *association* is "sufficient evidence" of a hazard, and proof of causality is *not* required. **Ex. B** (*Guidelines*) at 53. Now, in her trial declaration, Dr. Chang has offered a new opinion using a fundamentally different standard than she used in her expert report. Specifically, Dr. Chang is now offering the new opinion that the evidence does not persuasively demonstrate that neurotoxicity is "likely to be a *hazard*" of community water fluoridation, which she appears to define as an "association."[1] **Ex. C** (Chang Decl.) ¶¶ 13, 14, 30, 32, 33, 35, 181, 189, 198, 201, 208, & 218.

Dr. Chang's declaration makes clear that she recognizes a material distinction between her opinions on hazard and causation. This is evident, for example, in paragraph 202 of her declaration where, immediately after opining that the strength factor of Bradford Hill does not support a *hazard* finding, Dr.

---

[1] Since Dr. Chang never discussed or defined the term "hazard" in her expert report, Plaintiffs are left to rely on her trial declaration to understand what she means by this term. Based on paragraphs 14 and 197, Dr. Chang appears to be defining hazard as meaning an association. **Ex. C** ¶ 14 & 197.

Chang opines that it "*also* does not weigh in favor of a true *causal* relationship." Ex. C ¶ 202. Dr. Chang makes this same distinction in paragraphs 209 and 218. *Id.* ¶ 209 & 218. Plaintiffs ask that Dr. Chang's new opinion on hazard be stricken, and that her opinion be properly limited to causation.

### B. Dr. Tala Henry's <u>Non-Disclosed</u> Opinions on Margin of Exposure

In her trial declaration, Dr. Henry offers undisclosed criticisms of Dr. Kathleen Thiessen's Margin of Exposure (MOE) analysis. **Ex. D** (Henry Decl.) ¶ 169. Dr. Henry's expert rebuttal report never mentioned Dr. Thiessen's MOE analysis, and at her deposition, Dr. Henry testified that *she did not know if Dr. Thiessen did an MOE analysis.* **Ex. E** (Henry Rebuttal Expert Report) at 19-22; **Ex. F** (Henry Dep.) at 335:3-6. Dr. Henry thus did not even have knowledge of this issue, let alone an opinion.

### C. Dr. Tala Henry's <u>Non-Disclosed</u> Opinions on Benchmark Dose

Dr Henry's trial declaration offers undisclosed, extensive criticisms of Dr. Philippe Grandjean's Benchmark Dose (BMD) analysis. **Ex. D** (Henry Decl.) ¶ 130-143. This criticism is nowhere to be found in Dr. Henry's expert rebuttal report. **Ex. E** (Henry Rebuttal Report) at 22-24. In fact, Dr. Henry's expert report never once even mentioned Dr. Grandjean's BMD analysis. *Id.* Instead, the report criticized Dr. Grandjean for not doing a systematic review of the literature and for purportedly applying methods that are not appropriate to use under TSCA. *Id.* When pressed at her deposition to identify which "methods" she was referring to, Dr. Henry was unable to answer. **Ex. F** (Henry Dep.) at 340:18-345:10. After repeatedly attempting to no avail to elicit Dr. Henry's opinions on these methods, Plaintiffs' counsel informed her that Dr. Grandjean conducted a BMD analysis. *Id.* at 345:11-17. Dr. Henry then conceded that BMD is an appropriate method to use under TSCA and offered one limited critique: i.e., that Dr. Grandjean based his analysis on unpublished data. *Id.* at 346:1-7, 349:19-350:12.

In contrast to the bumbling and limited critique that Dr. Henry offered at her deposition, she has managed to become an expert on BMD in the succeeding months and now seeks to offer extensive

criticisms of Dr. Grandjean's BMD analysis. These criticisms include, *inter alia*, that Dr. Grandjean (i) failed to properly articulate his rationale for selecting the source data; (ii) used a flawed rationale to select the BMR; (iii) failed to adequately specify the dose-response models; (iv) failed to use adequate graphics; and (v) failed to adequately discuss the confidence limit procedures. **Ex. D** (Henry Decl.) ¶¶ 130-143. These are detailed opinions that bear no relationship to the expert that Plaintiffs deposed last summer, which is patently unfair. EPA should not be able to funnel Agency knowledge through its employee-expert (turning her into a de facto 30(b)(6) representative), particularly on the eve of trial. Plaintiffs ask that Dr. Henry's opinions on BMD be strictly limited to what she was able to offer during expert discovery.

### D. Dr. Tala Henry's Recitation of <u>Hearsay</u> BMD Guidance

In her assessment of Dr. Grandjean's BMD analysis, Dr. Henry provides an extensive recitation of EPA's guidance on BMD. **Ex. D** (Henry Decl.) ¶¶ 130-132. In addition to the reasons already stated, this recitation should be stricken on grounds of hearsay. First, Dr. Henry never cited or relied upon this guidance as part of her expert report, and thus it is not admissible under FRE 703. **Ex. E** (Rebuttal Report) at 25-26. Second, the document is not on EPA's exhibit list and thus will not otherwise be in evidence.

May 27, 2020                              Respectfully submitted,

*/s/ Michael Connett*
MICHAEL CONNETT
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing this 27th day of May, 2020, upon all ECF registered counsel of record using the Court's CM/ECF system.

*/s/ Michael Connett*
MICHAEL CONNETT