# Exhibit E

**Summary of the facts and opinions to which Tala R. Henry, Ph.D is expected to testify:**

**I.      Summary of Opinions**

In response to the expert opinions offered by Dr. Kathleen Thiessen and Dr. Phillipe Grandjean on the methods for conducting risk assessments, and in particular, the methods for conducting a risk evaluation under the Toxic Substances Control Act (TSCA) based on the currently available scientific evidence, Dr. Henry will testify to the following:

- Dr. Thiessen's report is not a credible source of evidence for making conclusions regarding unreasonable risks under TSCA due to critical limitations, including:

    *1.      Mischaracterization of EPA hazard assessments and dose-response analyses as "risk assessments" and omission to any reference to or discussion of resources available in the public domain that describe the relevant and sound requirements and procedures for conducting a risk evaluation under section 6(b)(4) of TSCA.*

    *2.      There are inadequate or undocumented literature searches and Systematic Review. Literature searches for critical components of a risk evaluation (exposure assessment) appear not to have been conducted; and quality and relevancy reviews, using systematic review methods, for hazard data (animal and human) are not provided to ensure the risk determination is based on the weight of the scientific evidence (WoSE).*

    *3.      The reference dose (RfD) derived by EPA in the document, Fluoride: Dose-Responses Analysis for Non-cancer Effects, has as no relevance to the question of whether the artificial fluoridation of drinking water creates unreasonable risk because it is not fit-for-purpose for a TSCA risk evaluation.*

    *4.      The methodology for determining unreasonable risk is fundamentally flawed because it relies on the statutory framework and assessment methodologies used to review new chemicals substances under TSCA Section 5, which has different risk assessment requirements and findings than for risk evaluations on existing chemicals under TSCA Section 6.*

- Dr. Grandjean's report is not a credible source of evidence for making conclusions regarding unreasonable risks under TSCA due to critical limitations, including:

    *1.      The methodology for determining unreasonable risk is fundamentally flawed because it fails to demonstrate that the key tenets of systematic review were applied to his report and is presented in a manner that suggests biased and pre-conceived conclusions.*

    *2.      The report draws inappropriate and unsupported conclusions. Conclusions in the purported risk assessment conducted are inappropriate because the calculation exercise and the conclusions for making unreasonable*

1

MCLG, are significantly different than the exposure assessment and risk characterization steps in a TSCA risk evaluation and reflect fit-for-purpose procedures necessary to implement different statutory and/or regulatory frameworks.

Under the SDWA process, once the MCLG (non-enforceable health goal) is determined, EPA sets a Maximum Contaminant Level (MCL) (enforceable standard), which does consider costs and other non-risk factors. In most cases, the standard is a maximum contaminant level (MCL).

## VII. Critique of Dr. Thiessen's Report

Dr. Henry will testify that Dr. Thiessen's report is not a credible source of evidence for making conclusions regarding unreasonable risks under the Toxic Substances Control Act (TSCA) due to critical limitations, as described below.

### A. Mischaracterization of Hazard Assessments and Dose-Response Analysis as "Risk Assessments."

Dr. Thiessen continuously refers to as "risk assessments" Toxicological Profiles developed by EPA's IRIS Program. IRIS assessments provide only the first two steps in a risk assessment – the hazard identification and dose-response assessment. As such, IRIS assessments are hazard/effects assessments only. Thus, any mention in Dr. Thiessen's report of IRIS assessments as risk assessments is a mischaracterization. For example, Dr. Thiessen claims that EPA applied its Guidelines for Neurotoxicity Risk Assessment to 10 risk assessments, while instead citing to 10 IRIS assessments. Dr. Thiessen also incorrectly characterizes the 2011 and 2014 NRC/NAS recommendations to the IRIS program as recommendations on how to conduct risk assessments. This is fundamentally inaccurate. Moreover, Dr. Thiessen inaccurately refers to the fluoride dose-response analysis conducted by EPA in 2010 as a risk assessment, when it contains the hazard identification and dose-response analysis only. Therefore, any conclusions drawn regarding risks that are based on a reference to an IRIS hazard assessment or an EPA dose-response analysis are not accurate or credible.

### B. Lack of Reference to Requirements for Conducting a Risk Evaluation under TSCA.

Dr. Thiessen's report omitted any reference to or discussion of resources available in the public domain that describe the requirements and procedures for conducting a risk evaluation under section 6(b)(4) of TSCA (See TSCA Statute; Procedures for Chemical Risk Evaluation under the Amended Toxic Substances Control Act (Risk Evaluation Rule) (82 Fed. Reg. 33726 (July 20, 2017)); Guidance to Assist Interested Persons in Developing and Submitting Draft Risk Evaluations Under the Toxic Substances Control Act and Application of Systematic Review in TSCA Risk Evaluations). The Risk Evaluation Rule identifies the requisite steps and data requirements of a risk evaluation process. The additional guidance documents provide transparency about the components that should be included and the processes by which EPA will consider risk evaluations under TSCA. In Dr. Henry's opinion, any expert opinion regarding risk assessment approaches or procedures necessary to support an action under TSCA section 6

should consider these available resources and, at the very least, attempt to provide data and information consistent with such guidance. Such an approach is absent from Dr. Thiessen's report. Because EPA's guidance presents the key factors and risk evaluation process necessary to foster predictability and transparency in making a risk determination under TSCA, any conclusion omitting such considerations, including best available science and weight of the scientific evidence, is not credible.

### C. Inadequate or Undocumented Literature Searches and Systematic Review.

Literature searches for critical components of a risk evaluation (i.e., exposure assessment) do not appear to have been conducted, and quality and relevancy reviews using systematic review methods for hazard data—for both animals and humans—are not provided. Omission of exposure information is a critical limitation because to make an unreasonable risk finding under TSCA, regulations requires all components of a risk evaluation and all streams of evidence to have been systematically reviewed to ensure that risk determinations are based on the Weight of the Scientific Evidence. Not only is a properly conducted systematic review required under TSCA, but, in Dr. Henry's opinion, it is a necessary course of action to demonstrating reliance on the best available science and WoSE.

Additionally, Dr. Thiessen's report focuses primarily on only one component of a risk evaluation, the hazard assessment. Even within this limited domain, Dr. Thiessen's report fails to document that systematic review methods or approaches were applied in reviewing the literature she identifies to support her hazard assessment. Instead, Dr. Thiessen's report focuses on the quantity of studies and does little to address the quality of studies used to make conclusions based on the WoSE.  As such, Dr. Thiessen's ad hoc "weight of evidence" assertion is not credible because it fails to demonstrate foundational considerations, such as objectivity and transparency, in the process.

### D. Inappropriate Use of RfD Derived by EPA's Office of Water.

In Dr. Thiessen's critique of the RfD derived by EPA (Fluoride: Dose-Response Analysis for Non-cancer Effects (U.S. EPA, 2010)) she refers to the "[c]urrent EPA Reference Dose," which is an RfD derived by EPA's OW for the specific purpose of supporting the development of water quality standards, which has no relevance in the TSCA context because it is not fit-for-purpose for a TSCA section 6 risk evaluation. More specifically, this RfD has no relevance to the question at hand because EPA does not generally use RfDs for TSCA risk evaluations for a variety of reasons.

In the time that has passed since the OW derived their RfD, numerous additional studies of potential fluoride toxicity have been published as documented by Dr. Chang and Dr. Tsuji. Consequently, scientific standards and the WoSE approaches laid out in TSCA section 26 and implementing regulations (Procedures for Chemical Risk Evaluation under the Amended Toxic Substances Control Act (82 Fed. Reg. 33726 (July 20, 2017)) would necessitate that EPA undertake its systematic review process to identify and evaluate not only the data/information

that underlies the OW RfD, but also data that has become available since the time the OW RfD was derived. Furthermore, the procedures and methods established in the TSCA statute, regulations, and guidance would need to be applied in order to develop a hazard assessment for a TSCA risk evaluation. Not only are these scientific standards required by statute and regulations under TSCA, but they are generally accepted scientific standards for making risk determinations based on the Best Available Science and WoSE.  For these reasons—lack of systematic review, WoSE and, most notably that EPA does not use RfDs in TSCA risk evaluations—the RfDs presented by Dr. Thiessen are irrelevant to a credible risk determination under TSCA.

E. **Fundamental Flaws in Methodology for Determining Unreasonable Risk.**

First, Dr. Thiessen erroneously asserts that EPA has defined unreasonable risk. In fact, EPA did not define unreasonable risk based on overwhelming public comment supporting EPA's position that a static definition of unreasonable risk would be inappropriate to capture the broad set of health and environmental risk measures and information that might be relevant to chemical substances and, as public commenters correctly pointed out, the science of risk characterization is still evolving. Second, Dr. Thiessen asserts several factors EPA considers in determining unreasonable risk.  These assertions, however, are based on risk determinations made under Section 5 of TSCA rather than Section 6.

Section 5 of TSCA provides the statutory authority and requirements for assessing and managing new chemicals (i.e., chemicals not currently in commerce). Fluoride chemicals appear on the TSCA inventory, meaning they are existing chemicals as defined by TSCA, and therefore the statutory requirements governing risk evaluation and risk management for fluoride chemicals are those defined in TSCA section 6. Indeed, the plaintiffs' petition for rulemaking specifically requested that EPA take action under TSCA section 6. The framework EPA applies in conducting risk assessments under TSCA section 5, while based on widely accepted fundamental risk assessment principles and the National Research Council's (NRC) risk assessment paradigm, identify methods and assumptions are necessarily different than considerations for actions under section 6 due to: (1) substantial differences in the quantity and types of data typically available for new chemicals; and (2) the short timeframe (i.e., 45 to 90 days) TSCA imposes for completing new chemical reviews including both the assessment and associated risk management.  Additionally, Dr. Thiessen's report utilizes the TSCA Section 5 screening analysis, which was designed to support a rapid hazard assessment for the purpose of efficiently binning chemical assessments into those which require additional and often more detailed or refined analysis (for high or moderate hazard chemicals) and those which conservative screening indicate are of low hazard and do not warrant detailed or refined analysis.

This classification scheme is based on dose/concentration values from standardized, guideline animal toxicity tests. As such, the approach was neither intended nor envisioned to be used with human studies.  This is because human toxicity data are rarely, if ever, available for new chemicals. In conducting risk evaluations of existing chemicals under TSCA section 6, EPA generally does not deploy rapid screening or 'binning' of a chemical to inform the level of

analysis that will be required, but rather EPA performs a much more intensive literature review and systematic review process as described in Application of Systematic Review under TSCA. This more robust process is appropriate in making risk determinations on existing chemicals, like water fluoridation chemicals. Hence, this entire section of Dr. Thiessen's report is flawed in that it claims to support an unreasonable risk determination using risk assessment approaches and a regulatory framework that EPA uses for new chemicals rather than for existing chemicals.

Due to these fundamental and significant flaws in approach, Dr. Thiessen's conclusion regarding unreasonable risk of neurotoxic effects of fluoride are not supported.

## VIII. Critique of Dr. Grandjean's Report

Dr. Henry will testify that Dr. Grandjean's report is not a credible source of evidence for making conclusions regarding unreasonable risks under the Toxic Substances Control Act (TSCA) due to critical limitations, as described below.

### A. Inadequate or Undocumented Literature Searches and Systematic Review.

To make risk determinations under TSCA, regulations require all components of a risk evaluation and all streams of evidence to have been systematically reviewed to ensure that risk determinations are based on the Weight of the Scientific Evidence. Not only is a properly conducted systematic review required under TSCA, but it is the necessary course of action when making a risk determination that is based on the Best Available Science and WoSE. Dr. Grandjean claims to have followed the general approaches used and applied by the World Health Organization's International Agency for Research on Cancer (IARC) (IARC, 2006) and EPA when evaluating scientific information, however, Dr. Grandjean's statement is not supported by his presentation of the scientific information, which lacks the key elements of systematic review. For example, Dr. Grandjean stated that his expert report focused on the evidence that "carries the greatest weight"; however, Dr. Grandjean did not describe the principles and methods used, the reliability of the principles and methods used, nor how he reliably applied the principles and methods with evaluating or "weighing" the quality, reliability, and relevance of the cited scientific information. Dr. Grandjean also stated that he does not "necessarily cite all reports that may be relevant," which suggests that his review is not be based on sufficient facts or data and that he did not utilize reliable principles and methods that would ensure a comprehensive gathering and evaluation of that information.

Dr. Grandjean summarizes studies on fluoride and childhood IQ testing, but did not state the principles and methods that he used and applied with identifying the cited literature, evaluating the quality of the individual studies, and stating why specific studies were included or excluded from his review. Dr. Grandjean provides an opinion on fluoride neurotoxicity in humans that he asserts is based on the "weight of epidemiological evidence," however, nowhere in his report is described the methods and criteria he used to review studies or to conduct a weight of evidence analysis. As such, and as discussed above, Dr. Grandjean's "weight of evidence" assertion is not

22

credible because it fails to demonstrate foundational considerations, such as objectivity and transparency, in the process. Rather, it is Dr. Henry's opinion that Dr. Grandjean selectively cited literature, including data from his own publications, to support biased and pre-conceived conclusions about the neurotoxicity of fluoride.

### B.   Inappropriate and Unsupported Conclusions.

First, Dr. Grandjean twice references the 2006 NRC Report as supporting his assertion that fluoride's predominant benefit to teeth comes from topical contact with the outside enamel, and not from ingestion. The NRC report makes no such conclusion, and in fact explains that is not the consensus on this matter (National Research Council, 2006).

Second, Dr. Grandjean makes conclusions by "[a]pplying methods for standards setting routinely used by EPA," but then applies methods used to derive a Maximum Contaminant Level (MCL) in drinking water, under the Safe Drinking Water Act (SDWA). Not only are the regulatory purpose and statutory framework in which MCLs are applied different than the purpose and framework under TSCA, but the values derived, and the methods used to derive them are necessarily different than conducting a risk evaluation under TSCA. Most notably, the MCL is a concentration in water that must not be exceeded under the implementing framework of the SDWA. In contrast, a TSCA risk evaluation would compare the exposure of humans and the environment (i.e., the dose resulting from exposure to the fluoride), specifically applicable to the condition(s) of use, to the dose of fluoride identified in the hazard assessment to have no adverse effects. Using this comparison, the risk characterization, would indicate the 'margin of exposure, by which the exposures are greater than or less than the no adverse effect levels. The TSCA risk evaluation process results in a risk estimate, rather than an exposure concentration. The risk estimate is then used to make a determination about unreasonable risk under TSCA. Dr. Grandjean's associated calculation exercise and the conclusions for making unreasonable risk determinations are not fit-for-purpose for a risk evaluation under TSCA. Furthermore, Dr. Grandjean's derivation has not been subject to peer review nor public notice and comment – both of which are required components of making a final unreasonable risk determination under TSCA and are scientifically sound processes for making risk determinations based on the best available science and WoSE.

Third, Dr. Grandjean concedes that it is "hard to judge the overall fluoride exposure levels in U.S. populations exposed to fluoridated drinking water" due to paucity of data. Consequently, Dr. Grandjean relies on Canadian data in his analysis. While it is not uncommon to use data derived from non-US populations in conducting risk evaluation under TSCA, it is imperative that such data be evaluated for its relevance to the US population. EPA's application of systematic review under TSCA includes an evaluation domain against which studies are evaluated to judge such relevance [Evaluation domain = Study Participation: Study design elements characterizing the selection of participants in or out of the study (or analysis sample), which influence whether the exposure-outcome distribution among participants is representative of the exposure-outcome

23

distribution in the overall population of eligible persons.]. Given that Dr Grandjean did not conduct a systematic review of the studies he used to support his analysis, there is not enough data or information from which to opine on whether Dr. Grandjean's use of Canadian fluoride levels as representative for the US population is reliable or relevant.

Due to these fundamental and significant flaws in approach, Dr. Grandjean's conclusions regarding the neurotoxic effects of fluoride are not supported.

**References**

Bilotta GS, Milner AM, Boyd I (2014) *On the use of systematic reviews to inform environmental policies*. Environ Sci Pol. 42: 67-77. http://dx.doi.org/10.1016/j.envsci.2014.05.010

Chang, E (2019) Expert Report of Ellen Chang, Sc.D., *prepared on behalf of defendant 01 August 2019*, Food and Water Watch, et al. v. U.S. EPA, Action No. 17-CV-02162, U.S. Federal Court, 95 pp.

Grandjean, P (2019) *Expert report of Philippe Grandjean, MD, DMSc, prepared on behalf of plaintiffs 21 June 2019*, Food and Water Watch, et al. v. U.S. EPA, Action No. 17-CV-02162, U.S. Federal Court, 77 pp.

Higgins JPT and Green S (editors) (2011) *Cochrane Handbook for Systematic Reviews of Interventions* Version 5.1.0. The Cochrane Collaboration. Available from http://handbook.cochrane.org

IARC (2006) *Preamble, IARC monographs on the evaluation of carcinogenic risks to humans, International Agency for Research on Cancer (IARC),* World Health Organization, Lyon, France, 27 pp., available at: https://monographs.iarc.fr/wp-content/uploads/2018/06/CurrentPreamble.pdf (accessed on 28 July 2019)

National Research Council (1983) *Risk Assessment in the Federal Government: Managing the Process*. Washington, DC. National Academies Press.

National Research Council (1994) *Science and Judgment in Risk Assessment*. Washington, DC. The National Academies Press.

National Research Council (1996) *Understanding Risk: Informing Decisions in a Democratic Society*. Washington, DC: The National Academies Press.

National Research Council (2009) *Science and Decisions: Advancing Risk Assessment*. Washington, DC: The National Academies Press.

National Research Council (2014) *Review of EPA's Integrated Risk Information System (IRIS) Process*. Washington, DC: The National Academies Press.

National Academy of Sciences (2017) *Application of systematic review methods in an overall strategy for evaluating low-dose toxicity from endocrine active chemicals*. In Consensus Study Report. Washington, D.C.: The National Academies Press.

Stephens MF, Betts K, Beck NB, Cogliano V, Dickersin K, Fitzpatrick S, Freeman J, Gray G, Hartung T, McPartland J, Rooney AA, Scherer RW, Verloo D, Hoffmann S (2016) *The Emergence of Systematic Review in Toxicology*. Toxicological Sciences. 152 (1): 10-16. 2016. DOI: *https://doi.org/10.1093/toxsci/kfw059*

Thiessen, K (2019) *Expert Report of Kathleen M. Thiessen*, PhD, *prepared on behalf of plaintiffs 21 June 2019*, Food and Water Watch, et al. v. U.S. EPA, Action No. 17-CV-02162, U.S. Federal Court, 151 pp.

Tsuji, J (2019) *Expert Rebuttal Report of Joyce Tsuji*, *prepared on behalf of defendant 01 August 2019*, Food and Water Watch, et al. v. U.S. EPA, Action No. 17-CV-02162, U.S. Federal Court, 57 pp.

U.S. EPA (1984) *Risk Assessment and Management Framework for Decision Making*. EPA 600-9-85-002. https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=20008KTF.txt

U.S. EPA (1986a) *Guidelines for Mutagenicity Risk Assessment*. EPA 630-R-98-003. https://www.epa.gov/sites/production/files/2013-09/documents/mutagen2.pdf

U.S. EPA (1986b) *Guidelines for Carcinogen Risk Assessment*. EPA 630-R-00-004. https://cfpub.epa.gov/ncea/risk/recordisplay.cfm?deid=54933

U.S. EPA (1986c) *Guidelines for the Health Risk Assessment of Chemical Mixtures*. EPA 630-R-98-002. https://www.epa.gov/sites/production/files/2014-11/documents/chem_mix_1986.pdf

U.S. EPA (1991) *Guidelines for Developmental Toxicity Risk Assessment*. EPA 600-FR-91-001. https://www.epa.gov/sites/production/files/2014-11/documents/dev_tox.pdf

U.S. EPA (1992) *Guidelines for Exposure Assessment*. EPA 600-Z-92-001. https://cfpub.epa.gov/ncea/risk/recordisplay.cfm?deid=15263

U.S. EPA (1992) *Framework for Ecological Risk Assessment.* RPA/630/R-92/001/ https://www.epa.gov/risk/framework-ecological-risk-assessment

U.S. EPA (1995) *Policy for Risk Characterization; Science Policy Council Handbook.* EPA-100-B-00-002 https://www.epa.gov/risk/risk-characterization-handbook

U.S. EPA (1996) *Guidelines for Reproductive Toxicity Risk Assessment*. EPA 630-R-96-009. https://www.epa.gov/sites/production/files/201411/documents/guidelines_repro_toxicity.pdf

U.S. EPA (1998a) *Guidelines for Neurotoxicity Risk Assessment*. EPA 630-R-95-001F. 1998. https://www.epa.gov/sites/production/files/2014-11/documents/neuro_tox.pdf

U.S. EPA (1998b) *Guidelines for Ecological Risk Assessment*. EPA-630-R-95-002F https://www.epa.gov/risk/guidelines-ecological-risk-assessment

U.S. EPA (2000) *Risk Characterization Handbook*. EPA 100-B-00-002 https://www.epa.gov/sites/production/files/2015-10/documents/osp_risk_characterization_handbook_2000.pdf

U.S. EPA (2002) *Guidelines for Ensuring and Maximizing the Quality, Objectivity, Utility and Integrity of Information Disseminated by the Environmental Protection Agency*. EPA-260R-02-008 https://www.epa.gov/quality/guidelines-ensuring-and-maximizing-quality-objectivity-utility-and-integrity-information

U.S. EPA (2005) *Guidelines for Carcinogen Risk Assessment.* EPA-630-P-03-001F https://www.epa.gov/sites/production/files/2013-09/documents/cancer_guidelines_final_3-25-05.pdf

U.S. EPA (2010) *Fluoride: Dose-Responses Analysis for Non-cancer Effects*. EPA-820-R-10-018 https://www.epa.gov/sites/production/files/2015-09/documents/fluoride-study-summaries.pdf

U.S. EPA. (2014) *Framework for Human Health Risk Assessment to Inform Decision Making*. EPA/100/R-14/001  https://www.epa.gov/sites/production/files/2014-12/documents/hhra-framework-final-2014.pdf

U.S. EPA (2015) *Peer Review Handbook*, 4th edition. EPA 100-B-15-001. https://www.epa.gov/sites/production/files/2016-03/documents/epa_peer_review_handbook_4th_edition.pdf

U.S. EPA (2016) Weight of Evidence in Ecological Assessment. EPA-100-R16-001 https://cfpub.epa.gov/si/si_public_record_report.cfm?Lab=OSA&dirEntryId=335523

U.S. EPA (2017) *Guidance to Assist Interested Persons in Developing and Submitting Draft Risk Evaluations Under the Toxic Substances Control Act*. EPA-740-R17-001 https://www.epa.gov/sites/production/files/2017-06/documents/tsca_ra_guidance_final.pdf

U.S. EPA (2018) *Application of Systematic Review in TSCA Risk Evaluations.* EPA-740-P1-8001 https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/application-systematic-review-tsca-risk-evaluations