1    C. ANDREW WATERS, ESQ., CA Bar No. 147259
     MICHAEL CONNETT, ESQ., CA Bar No. 300314
2    WATERS, KRAUS & PAUL
     222 N. Pacific Coast Hwy, Suite 1900
3    El Segundo, CA 90245
     310-414-8146 Telephone
4    310-414-8156 Facsimile

5    *Attorneys for Plaintiffs*

6                    UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
7                          AT SAN FRANCISCO

8    _____

9    FOOD & WATER WATCH, et al.,            )    Civ. No. 17-CV-02162-EMC
                                            )
10                          Plaintiffs,     )    **PLAINTIFFS' RESPONSE TO**
                 vs.                        )    **DEFENDANTS' OBJECTIONS TO**
11                                          )    **DECLARATIONS OF HOWARD HU**
     U.S. ENVIRONMENTAL PROTECTION          )    **AND BRUCE LANPHEAR**
12   AGENCY, et al.                         )
                                            )
13                          Defendants.     )
                                            )
14   _____)

15

16        Pursuant to the Court's request, Plaintiffs hereby provide their response to EPA's objections to

17   the declarations of Dr. Howard Hu and Dr. Bruce Lanphear.

18        **A.  Dr. Lanphear's Passing Reference to the UCSF Study Is Not an "Opinion"**

19        In his declaration, Dr. Lanphear makes a passing factual comment about the recent University of

20   California San Francisco (UCSF) cohort study. Dr. Lanphear states that the study is a similar, but smaller,

21   study than the one he and his colleagues published from the MIREC cohort in 2018 (Till et al. 2018).

22   This is not an "opinion" but a simple factual observation. Further, since the UCSF study is separately

23   addressed by Dr. Grandjean, it is hard to understand what prejudice would befall EPA by this factual

24   observation remaining in Dr. Lanphear's declaration.

25

26        The *de minimis* nature of Dr. Lanphear's passing reference to the UCSF study can be further

27   appreciated when comparing it to Dr. Tala Henry's extensive use of the undisclosed *Benchmark Dose*

28

*Technical Guidance* document, as discussed in Plaintiffs' objections. Rather than making a passing reference to this *Guidance*, Dr. Henry cites this undisclosed document at length as the basis for her *extensive* (and *undisclosed*) opinions on Dr. Grandjean's BMD analysis.

Finally, if EPA fears Plaintiffs will elicit live testimony from Dr. Lanphear about the UCSF study, this fear can be put to rest here because Plaintiffs have no intention of doing so, and will represent to the Court that they will not do so.

### B.  Dr. Hu's Passing Reference to Thomas (2018) Is *De Minimus*

EPA's objection to Dr. Hu's passing reference in a footnote to the Thomas abstract suffers from similar problems as its objection to Dr. Lanphear's passing reference to the UCSF study. Even if Dr. Hu's statement that the results of Thomas (2018) are "consistent" with the results of Bashash (2017) constitutes an "opinion," Dr. Hu expressly disclaims reliance on these results because they have not yet been published. Moreover, EPA can hardly claim to be surprised by the Thomas (2018) study because its own expert (Ellen Chang) references it many times in her trial declaration.[1]  **Ex. A** (Chang Declaration) ¶¶ 182, 195, 226, 227, 250, 255, & 260. Further, at no point does Dr. Chang offer the opinion that the Thomas study is inconsistent with the Bashash study, and thus Dr. Hu's passing statement is not at odds with EPA's expert testimony.

### C.  Dr. Hu's Opinion that Fluoride's Effect Size Rivals Lead Was Properly Disclosed

EPA objects to Dr. Hu's opinion that fluoride-associated reductions in IQ "rival the effect sizes associated with lead exposure." This opinion, however, was properly disclosed. First, in the Supplemental Statement of Facts, the effect size observed in Dr. Hu's fluoride studies is described as "notably large." **Ex. B** at 12. Second, as EPA acknowledges in its brief, Dr. Hu specifically testified at his deposition that the effect size rivals the effect of lead. Third, Dr. Hu's studies on lead and IQ are no secret to EPA. In

---

[1]     Dr. Chang cites the biomedical journal *Fluoride* as the source of the abstract, but it was originally published in the *British Medical Journal*. *Compare* Chang Decl. ¶ 195 *with* Hu Decl. at 19:9-10.

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO
DECLARATIONS OF HOWARD HU AND BRUCE LANPHEAR

fact, Dr. Hu's studies on lead and neurodevelopment were *funded by EPA* (**Ex. C** at e330; **Ex. D** at 868), and EPA relied upon the dose-response data on blood lead and IQ from Dr. Hu's 2006 study (Tellez-Rojo et al. 2006) as support for its national air standard for lead. **Ex. E** at 66978-79 & 66703. The Agency is thus well aware of Dr. Hu's findings on lead and IQ. Even *if* Plaintiffs' disclosure was inadequate, therefore, it is hard to see the prejudice this has caused EPA. This is especially so given that both Dr. Lanphear and Dr. Grandjean have made the same point in their disclosures (i.e., that the effect size of fluoride rivals that of lead), and thus EPA has been on clear notice that this is an issue in the case. **Ex. F** at 9; **Ex. G** at 10.

### D.  Dr. Hu's Use of Scatterplots on Lead/IQ Is Proper Testimony for a Non-Retained Expert

Both of the lead scatterplots that Dr. Hu references in his declaration come from Dr. Hu's own research on the same cohort (ELEMENT) that form the basis of his opinions on fluoride. The scatterplots are thus interwoven into the factual basis upon which Dr. Hu is basing his opinions in the case, and serve to further support his disclosed opinion that the ELEMENT studies provide "scientifically reliable and robust results" on the relationship between fluoride and neurodevelopment. Further, unlike the undisclosed opinions by EPA's non-retained expert (Dr. Tala Henry), Dr. Hu never indicated lack of knowledge or lack of an opinion on this issue at his deposition.

To the extent that Plaintiffs were required to specifically disclose these scatterplots as part of Dr. Hu's disclosures, the failure to do so can hardly be deemed prejudicial to EPA. As noted above, EPA is no stranger to Dr. Hu's research on lead as the Agency not only funded it, but relied upon it for regulatory purposes. **Ex. C** at e330; **Ex. E** at 66978-79 & 66703. Further, EPA has been on notice that Plaintiffs will be introducing testimony on the proper interpretation of scatterplots.[2] In Dr. Lanphear's disclosures, for

---

[2]   By contrast, the non-disclosed opinions from EPA"s experts that Plaintiffs identified in their objections (i.e., hazard, MOE, and BMDL) were not disclosed by *any* of EPA's experts, or in *any* of EPA's disclosures. Plaintiffs are thus first learning about these materially new opinions on the doorstep of trial.

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO
DECLARATIONS OF HOWARD HU AND BRUCE LANPHEAR

example, Plaintiffs disclosed that "[a]dditional perspective can be obtained for the degree of scatter and degree of variance explained by fluoride in these graphs by comparing them to similar published results for studies of lead and IQ." **Ex. F** at 10. Similarly, in his expert rebuttal report, Dr. Grandjean noted: "I am aware that similar scatterplots have been published showing the effects, e.g., of lead and IQ, and I believe that such scattering of results would not convince the EPA that lead is not neurotoxic." **Ex. G** at 12.

While permitting Dr. Hu to explain the scatterplots from his ELEMENT research will make it more difficult for EPA to advance a *litigation* position on scatterplots that is at odds with how EPA has interpreted scatterplots *in practice*, it is questionable whether this rises to prejudice for purposes of law and public policy.

### E.  Further Comment on EPA's Objections to Dr. Joyce Donohue's Testimony

As Dr. Donohue's testimony makes clear, she believes the new studies on fluoride and IQ support a reassessment of *all* fluoride standards, not just the MCLG, and not just the standards in the US. Her testimony is thus not an indictment of the MCLG but of the entire framework by which fluoride is currently regulated, in the US and abroad.[3] This testimony should be admitted because it is *highly probative*, coming as it does from EPA's *in-house expert on fluoride* in a case where EPA's *litigation* experts are willing to claim that the science is "overwhelmingly poor quality" (e.g., Tsuji Trial Decl. ¶ 16) and, in essence, much ado about nothing. Further, Dr. Donohue's testimony at 257:1-8 is relevant and probative for a separate reason: it supports the credibility of Plaintiffs' expert, Dr. Bruce Lanphear. Finally, Plaintiffs wish to clarify two points to prevent any confusion that may have been inadvertently caused by the highlighting of Dr. Donohue's deposition transcript in Exhibit B to EPA's Statement on Unresolved Objections (ECF No. 205-2). In this exhibit, the testimony from page 243 (line 23) to 244

---

[33]     In other words, Dr. Donohue's testimony does not cast aspersions on EPA's MCLG because she is not singling it out for unique treatment or criticism.

4

(line 10) is highlighted, but this is *not* part of the page lines that Plaintiffs have designated. Conversely, there is no highlighting on page 258 from line 9 to 16, but this testimony will be eliminated if 257:25-258:8 is removed because it will have no intelligible context without that designation. The designations in dispute are thus 254:25-255:4, 257:1-8, and 257:25:258:16.

June 1, 2020                                  Respectfully submitted,


*/s/ Michael Connett*
MICHAEL CONNETT
Attorney for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO
DECLARATIONS OF HOWARD HU AND BRUCE LANPHEAR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing this 1st day of June, 2020, upon all ECF registered counsel of record using the Court's CM/ECF system.

/s/ Michael Connett
MICHAEL CONNETT

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO
DECLARATIONS OF HOWARD HU AND BRUCE LANPHEAR