DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
SIMI BHAT
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-2640
Fax: (202) 514-8865
Email: debra.carfora@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendant. | Case No. 17-CV-02162 EMC<br><br>**EPA'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO EPA'S EXPERT TRIAL DECLARATIONS**<br><br>Date:   June 5, 2020<br>Time:  9:30 a.m.<br>Place:  Courtroom 5, 17th floor |

Defendant United States Environmental Protection Agency ("EPA") submits this response to Plaintiffs' Objections to EPA's Expert Trial Declarations as directed by the Court during a Status Conference on May 29, 2020.

**RESPONSE TO OBJECTIONS TO DR. CHANG'S TRIAL DECLARATION**

Dr. Ellen Chang is not offering a new opinion on hazard. Dr. Chang describes plainly in her report that Plaintiffs' conclusion that "there is sufficient evidence to conclude that neurotoxicity is a hazard" is undercut by Plaintiffs' failure to conduct a causal analysis. Ex. A, Chang Expert Rep. at 87-88. As EPA's expert Dr. Tala Henry will explain, causation is relevant to a hazard assessment. Ex. B, Henry Decl. ¶ 104 (a "hazard assessment" requires considering "quality, consistency, relevancy, coherence and biological plausibility"); *see also* Ex. C, Chang Decl. ¶ 61 (describing essentially the same factors as Dr. Henry for causal analysis); Ex. B, Henry Decl. ¶ 100; Ex. D, Henry Dep. 480:1-7 (testifying that Plaintiffs have not provided evidence that "a specific concentration caus[es] a specific effect").

Plaintiffs had the opportunity to ask Dr. Chang about hazard at her deposition, and Dr. Chang explained that "[t]here are degrees of classification of the level of evidence" supporting hazard, Ex. E, Chang Deposition 123:16-125:8, as exemplified by the National Toxicology Program's specific definitions for presumed, suspected, and known "hazards," *id.* 68:10-69:1. Plaintiffs' error stems from their misapprehension of "hazard" as meaning only an association reported in a single animal study. The 1998 Guidelines that Plaintiffs cite themselves recognize different classifications of hazard. Ex. H, 1998 Guidelines Excerpt at 56 ("potential neurotoxic hazard" is not sufficient to describe "human hazard potential"). Plaintiffs will again be able to ask Dr. Chang about hazard at trial. She will explain that she is not providing a regulatory definition of hazard; instead, she applied widely-accepted scientific criteria to assess whether the observed association can establish a true causal relationship—i.e., a hazard. The Court should overrule Plaintiffs' objections.[1]

---

[1] Although not entirely clear, Plaintiffs appear to be objecting to paragraphs 13, 14, 30, 32, 33, 35, 181, 189, 198, 201, 208, and 218. Plaintiffs' objections are overly broad and vague. Plaintiffs should be required to more specifically identify which specific lines of testimony they object to and the specific reasons for each objection. One of these paragraphs does not even contain the word "hazard." Ex. C, Chang Decl. ¶ 14.

**RESPONSE TO OBJECTIONS TO DR. HENRY'S TRIAL DECLARATION**

Dr. Henry is a non-retained percipient expert who was not required to provide a written report. When disclosing an expert who is not required to provide a written report, a party must state the "subject matter" on which the witness is expected to testify and "a summary of the facts and opinions" to which the witness is expected to testify. *See* Fed. R. Civ. P. 26(a)(2)(C). EPA disclosed Dr. Henry as a non-retained expert, including with its disclosure both a statement of the subject matter on which she is expected to offer an opinion and a summary of facts and opinions.

### I.  DR. HENRY'S OPINIONS ON MARGIN OF EXPOSURE

Plaintiffs object to paragraph 169 of Dr. Henry's declaration on the basis that it offers an "undisclosed criticism" of Dr. Kathleen Thiessen's Margin of Exposure (MOE) analysis. ECF No. 207 at 2-3 ("Pls.' Objs."). In paragraph 168 of her trial declaration, Dr. Henry testifies that the methods and assumptions for conducting risk evaluations under TSCA section 5 are different in application. Ex. B, Henry Trial Decl. ¶ 168. Then, in paragraph 169, Dr. Henry explains how Dr. Thiessen's use of section 5 methods resulted in critical deficiencies in the derivation of her Benchmark MOE. *Id.* ¶ 169. EPA properly disclosed Dr. Henry's opinion and the basis thereof. *See* Ex. I, Excerpt Henry Summary Excerpt at 1, 21-22.

Dr. Thiessen's original discussion of her MOE analysis was included in Section E of her initial report. Ex. F, Thiessen Rpt. Excerpt at 63-66. This entire section of Dr. Thiessen's report, which includes her MOE analysis, cites and relies upon recent TSCA risk evaluations completed pursuant to TSCA section 5. *See* Ex. F at 64-65. In relevant part, EPA disclosed the following description in the summary of Dr. Henry's opinions:

> [Dr. Thiessen's] methodology for determining unreasonable risk is fundamentally flawed because it relies on the statutory framework and assessment methodologies used to review new chemicals substances under TSCA Section 5, which has different risk assessment requirements and findings than for risk evaluations on existing chemicals under TSCA Section 6.

Ex. I at 1. Section VII.E of the summary of facts explains why the methods and assumptions under TSCA section 5 are necessarily different than considerations for actions under section 6. Ex. I at

21-22. Noting that "this entire section [E] of Dr. Thiessen's report is flawed in that it claims to support an unreasonable risk determination using risk assessment approaches and a regulatory framework that EPA uses for new chemicals rather than for existing chemicals." Ex. I at 22.

Plaintiffs' argument that Dr. Henry did not recall at her deposition whether Dr. Thiessen conducted an MOE proves nothing. Dr. Henry testified: "Sitting here at this moment, I don't recall." Ex. D, Excerpt Henry Dep. 335:5-6. She was not offered any opportunity to refresh her recollection, nor did she testify that she had no opinion regarding the MOE. In fact, she later clarified:

> Q	And you're -- one of your criticisms is that Dr. Thiessen used criteria that are generally applied for Section 5 analyses, right?
>
> A	The criteria *as well as the entire procedure*, yes.

Ex. D 333:17-334:5 (emphasis added).

To justify the derivation of Benchmark MOEs in her initial report, Dr. Thiessen cites to EPA's application of uncertainty factors ("UFs") in assessment of new chemical substances under section 5. Then, in Dr. Thiessen's Second Supplemental Report, served on EPA on March 13, 2020, more than seven months after the close of expert discovery, Dr. Thiessen attempted to cure her deficiency by using analogies to the selection and application of UFs in Section 6 draft risk evaluations. In response to Dr. Thiessen's new opinion, EPA supplemented its disclosures. In that supplement, EPA disclosed Dr. Henry's opinion that Dr. Thiessen "inappropriately analogizes uncertainty factors across chemicals without recognizing that the selection and application of uncertainty factors are inherently specific not just to a chemical, but more specifically to the available data set or underlying study." *See* Ex. G, Fed. Defs.' Second Suppl. to Their Expert Disclosures and Designations at 5.

Thus, Dr. Henry's opinion that Dr. Thiessen's "application of her UFs to the existing toxicological data base for fluoride are unjustified," Exhibit B, Henry Declaration ¶ 169, was properly disclosed pursuant to Rule 26(a)(2)(C). The Court should overrule Plaintiffs' objection.

## II. DR. HENRY'S OPINIONS ON BENCHMARK DOSE

Plaintiffs object to paragraphs 130-143 of Dr. Henry's declaration on the basis that it offers an undisclosed criticism of Dr. Grandjean's Benchmark Dose (BMD) analysis. Pls.' Objs. at 3-4. Paragraphs 130-135 establish facts concerning the type of information recommended by EPA guidance for a transparent presentation of BMD output values. Ex. B, Henry Trial Decl. ¶¶ 130-135. Paragraphs 136-143 identify the omissions in Dr. Grandjean's presentation of his methodology that prevented Dr. Henry from having the information necessary to reconstruct or critically evaluate Dr. Grandjean's BMD calculation and conclusions. Ex. B, Henry Trial Decl. ¶¶ 136-143.

In relevant part, the summary of opinions includes Dr. Henry's opinion that Dr. Grandjean draws inappropriate and unsupported conclusions, including his BMD calculation exercise. *See* Ex. I at 1-2. Section VIII.A of the summary explains that "Dr. Grandjean claims to have followed the general approaches used and applied by the . . . EPA when evaluating scientific information, however, Dr. Grandjean's statement is not supported by his presentation of the scientific information . . . .". *Id.* at 23. Further, Section VIII.B of the summary explains that "Dr. Grandjean's associated calculation exercise and the conclusions for making unreasonable risk determinations are not fit-for-purpose for a risk evaluation under TSCA." *Id.*

Thus, Dr. Henry's opinion that Dr. Grandjean did not support his BMD analysis in a manner consistent with EPA's risk evaluation and assessment guidance and principles was properly disclosed pursuant to Rule 26(a)(2)(C). Even if the Court disagrees, however, any error was harmless because Dr. Henry was asked about and explained her critique at her deposition.

> Q  Would you agree that EPA does BMD analyses in making a risk determination under TSCA?
>
> A  Yes. My critique of his BMD analysis was that he stated it was based on data which he did not present or provide to us so we could not possibly even look at that.
>
> . . .
>
> Q  Well, you're referring here to Dr. Grandjean's statement about following the general approaches used by the World Health Organization and EPA, right?

> A  It's a generalized comment about all of his statements. He also stated -- does not describe his principles and methods used. He did in fact reference BMD analysis as I recall but not in any sort of depth and he did not also present the actual results. Does not cite all reports that may be relevant. Doesn't describe methods and criteria used to review studies or conduct weight of evidence. Again, this is all leading up to the data that he then uses which we have -- there's no transparency whatsoever.

Ex. D 346:1-348:12. Thus, the Court should overrule Plaintiffs' objection.

### III.  REFERENCE TO THE BMD GUIDANCE IS NOT HEARSAY

Plaintiffs object to paragraphs 130-132 of Dr. Henry's declaration as hearsay. Pls.' Objs. at 4. Those paragraphs do not include hearsay material, and even if they did, the testimony is admissible. Ex. B, Henry Trial Decl. ¶¶ 130-132. Paragraphs 130-132 offer a *summary* of EPA's *Benchmark Dose Technical Guidance* with regard to reporting recommendations for transparent presentation of BMD output values. Dr. Henry relied on the *Benchmark Dose Technical Guidance* in forming her opinion. Because Dr. Henry is a non-retained percipient expert not required to provide a written report, EPA was under no obligation to disclosure reliance materials. *Compare* Fed. R. Civ. P. 26(a)(2)(B)(iii) *with* 26(a)(2)(C). Dr. Henry's testimony concerning the *Benchmark Dose Technical Guidance* is not hearsay, but even if it were, it is excepted from the rule against hearsay as a public record. Hearsay is admissible if it is a public record of a public office that sets out "the office's activities." Fed. R. Evid. 803(8)(A)(i). This hearsay exception "is designed to allow admission of official records and reports prepared by an agency or government office for purposes independent of specific litigation." *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 743 (N.D. Cal. 2011) (quoting *United States v. Stone*, 604 F.2d 922, 925 (5th Cir.1979)) (emphasis added). The *Benchmark Dose Technical Guidance* is EPA technical guidance available on EPA's website. This document was not prepared in advance of litigation and thus should be afforded the usual presumption of trustworthiness given to public documents.

Date: June 1, 2020
Washington, D.C.

Respectfully Submitted,

*/s/ Debra J. Carfora*
Debra J. Carfora
John Thomas H. Do
Brandon N. Adkins
Simi Bhat
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-2640
Fax: (202) 514-8865
Email: debra.carfora@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of June, 2020, a true and correct copy of the foregoing EPA's Response to Plaintiffs' Objections to EPA's Expert Trial Declarations was filed electronically with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

> */s/ Debra J. Carfora*
> Debra J. Carfora
> United States Department of Justice