# Exhibit C

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al.,<br><br>                Plaintiffs,<br>    v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>                Defendants. | Case No. 17-CV-02162 EMC<br><br>**TRIAL DECLARATION OF ELLEN T. CHANG, SC.D.** |

**TRIAL DECLARATION OF ELLEN T. CHANG, SC.D.**

specified criteria for the selection and analysis of literature. In the absence of such a complete and systematic approach, an evaluation of the literature is susceptible to bias favoring studies with a certain pattern of results, instead of being based on objective indicators of study quality. The results of some studies are likely to be emphasized over others based on subjective or arbitrary characteristics. Interpretations of individual studies are also susceptible to bias, particularly when those studies are not considered in the context of a full systematic review.

11. In contrast to Plaintiffs' experts, I undertook a systematic literature review of the published epidemiological evidence on any potential association between fluoride exposure and developmental neurotoxicity in humans. I defined *a priori* criteria that would distinguish relevant search results from irrelevant results, searched multiple databases, identified approximately 2,707 potentially relevant articles, applied my relevancy criteria to screen the titles and abstracts of the identified articles, reviewed the full text of 123 potentially relevant studies, and synthesized and interpreted the results using accepted epidemiological considerations of study quality.

12. Of these 123 studies, 31 studies lacked original data, leaving 92 relevant studies with original data.

13. My assessment based on this systematic literature review is that the overall weight of scientific evidence does not establish that neurodevelopmental harm is likely to be a hazard of community water fluoridation in the U.S.

14. The overall weight of the scientific evidence does not establish a strong, consistent, coherent, or biologically plausible association between consumption of fluoridated drinking water in the range of 0.7 mg/L and adverse neurodevelopmental outcomes in humans, such as a reduction of childhood intelligence quotient (IQ) or development of attention deficit disorder/attention deficit hyperactivity disorder (ADD/ADHD).

## B. Analysis

56. The ultimate goal of epidemiological research is to identify the causes of human health problems and, ideally, the means of preventing them. Therefore, a systematic review of epidemiological literature naturally leads to the question of whether the available evidence supports a hypothesis that an exposure causes a harm. However, a conspicuous gap in the Plaintiffs' experts' reports in this matter is that none of them present a structured analysis of the relevant epidemiological studies of fluoride exposure and developmental neurotoxicity.

57. Without such an analysis, an epidemiologist cannot say whether the statistical associations observed in many of the available epidemiological studies are truly due to the impact of fluoride exposure.

58. A causal analysis also enables the structured presentation of conclusions regarding the overall weight of the scientific evidence. That is because a causal analysis requires an evaluation of the overall weight of the scientific evidence from relevant epidemiological studies, taking into account evidence from relevant toxicological and mechanistic studies.

59. In a causal analysis, an epidemiologist considers the possibility of bias, confounding, and chance as explanations for a given statistically significant association observed in an individual epidemiological study.

60. I conducted a formal causal analysis to assess the association between fluoride exposure and human developmental neurotoxicity. In so doing, I was able to organize my conclusions regarding the overall weight of the scientific evidence using considerations that are widely accepted as relevant to assessing epidemiological evidence.

61. As a framework for this causal analysis I used the set of general guidelines formulated by Sir Austin Bradford Hill; these guidelines or "viewpoints" are commonly used by epidemiologists and accepted in the scientific community and in legal settings. Hill's nine considerations are described briefly below.

- *Strength*: Magnitude of the observed association between the exposure and the health outcome of interest; all else being equal, strong associations are less likely than weak associations to be due to confounding or bias.
- *Consistency*: Repeated observation of an association between the exposure and the health outcome of interest by different investigators across different study settings; repetition helps to reduce the probability of chance as an explanation for an observed association.
- *Specificity*: Limitation of an observed association to a single exposure and a single health effect; absence of specificity does not necessarily reduce the likelihood of causality.
- *Temporality*: Sequence by which a cause must precede an effect in time.
- *Biological gradient*: Exposure-response trend by which occurrence of the health outcome increases in accordance with greater exposure.
- *Plausibility*: Credibility of a causal relationship based on current knowledge in toxicology, biology, and other fields; depends on present scientific evidence, which is subject to change.
- *Coherence*: Accordance of a causal relationship with the known natural history and biology of the health outcome of interest; depends on present scientific evidence, which is subject to change.
- *Experiment*: Evidence from studies with controlled or quasi-controlled exposures, such as interventions or preventive actions; such evidence often is absent or not applicable.
- *Analogy*: Comparability to similar exposure-outcome associations; often can be postulated to support or oppose a causal relationship, and does not necessarily enhance or reduce the likelihood of causality.

62. These guidelines were intended for the evaluation of statistically significant associations—that is, associations described by Hill as being beyond the play of chance.