# Exhibit G

DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
SIMI BHAT
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC. 20044-7611
Tel.    (202) 514-2640 (Carfora)
        (202) 514-2593 (Do)
        (202) 616-9174 (Adkins)
        (202) 532-5563 (Bhat)
Fax    (202) 514-8865
debra.carfora@usdoj.gov
john.do@usdoj.gov
brandon.adkins@usdoj.gov
simi.bhat@usdoj.gov

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al.,<br><br>Plaintiffs,<br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENY, et al.,<br><br>Defendants. | No. 3:17-cv-02162-EMC<br><br>**FEDERAL DEFENDANTS' SECOND SUPPLEMENT TO THEIR EXPERT DISCLOSURES AND DESIGNATIONS (APRIL 18, 2020)** |

Pursuant to Federal Rule of Civil Procedure 26(a)(2) and (e), Federal Defendants hereby supplement the summary of the facts and opinions to which Tala R. Henry, PhD, is expected to testify. In response to the "Second Supplemental Report on Fluoride in Drinking Water" offered by Dr. Thiessen, and in addition to the previous summaries of expected testimony, Dr. Henry will also testify to the following:

Dr. Thiessen's second supplemental report does not cure her failure to conduct a robust exposure assessment. Rather, it highlights her failure to use scientific information, protocols, and methodologies in a manner consistent with the best available science or generally acceptable scientific standards for risk assessment. Generally accepted scientific standards require that each step in the risk assessment process be supported by, among other considerations, a documented literature search, an explanation of the available sources of data, and an analysis of the full body of available data. Because Dr. Thiessen fails to either explain the full body of available sources of exposure data or offer an analysis of that body of available data to support selection of the data she used in her assessment as the most reliable and relevant fit for a fluoride-specific exposure assessment, Dr. Thiessen's opinion cannot be critically assessed. The inability to critically assess Dr. Thiessen's scientific judgment prevents any conclusions regarding confidence in the underlying data. Thus, Dr. Thiessen's opinion, even as supplemented, remains unreliable for assessing risk.

As an initial matter, Dr. Thiessen's failure to identify the 2019 Exposure Factors Handbook Chapter 3 Update ("Exposure Factors Handbook") in her original report or first supplemental report demonstrates the importance of conducting literature searches and compiling bibliographies of literature, as a critical component of systematic review, upon which each subsequent step relies. So too in her second supplemental report, the lack of an initial or updated literature search underscores the inherent uncertainty of the data source she relies on in support of her opinion on risk.

Even assuming arguendo that the Exposure Factors Handbook is the most reliable and relevant source of intake data fit for a fluoride-specific exposure assessment, Dr. Thiessen fails to document or describe any scientific basis or rationale for selecting the specific intake estimates she now asserts bolster the alleged accuracy of her risk estimates. Without a description of these rationales, the scientific basis underlying Dr. Thiessen's exposure estimates cannot be critically examined. The inability to critically assess Dr. Thiessen's scientific justification for identifying the specific intake estimates pursuant to generally acceptable scientific standards reinforces the unreliability of her opinion on risk.

Next, Dr. Thiessen's comparison of her own methodologies to EPA's draft TSCA section 6 risk evaluations is inappropriate under TSCA and critically flawed pursuant to generally acceptable scientific practices for risk assessment.

Despite a large body of guidance and information describing risk evaluation protocols that must be employed to support a risk determination under Section 6 of TSCA, including the TSCA Risk Evaluation Rule and Guidance to Assist Interested Persons in Developing and Submitting Draft Risk Evaluations Under TSCA, Dr. Thiessen's second supplemental report equates her approach using methods under TSCA section 5 to methods employed by EPA pursuant to TSCA section 6. Section 5 of TSCA provides the statutory authority and requirements for assessing and managing new chemicals (i.e., chemicals not currently in commerce). Section 5 imposes a short timeframe (45 to 90 days) for completing new chemical reviews, generally because the quantity and types of data typically available for new chemicals are very limited and when available, are typically standardized, guideline animal toxicity tests. New chemicals assessments under section 5 have greater uncertainty because they are often based on less chemical-specific data. The more robust risk evaluation process provided for in section 6 is most often conducted using chemical-specific data to do a more refined, chemical-specific assessment. Thus, the framework EPA applies to the review of new chemicals under TSCA section 5, while based on widely accepted

fundamental risk assessment principles, incorporates methods and assumptions that are different than considerations for actions under section 6.

Moreover, Dr. Thiessen fails to acknowledge that EPA's section 6 draft risk evaluations use scientific information, technical procedures, measures, methods, protocols, methodologies, or models, employed in a manner consistent with the best available science, fit for the chemical-specific evaluation. Each of EPA's draft risk evaluations use systematic review methods to document and analyze chemical-specific data availability, applicability, characteristics, quality issues, and limitations, which are all critical elements to modern risk assessment under generally acceptable scientific standards. The assessment of risk posed by water fluoridation chemicals (existing chemicals as defined by TSCA) requires the assessment of an existing body of chemical-specific data. It is only through a carefully conducted and well-documented systematic review that the fullest picture of the available data can be evaluated and fit-for-purpose methodologies be employed for use in each step of a fluoride-specific risk assessment across all reasonably available data streams (e.g., fate, hazard identification, dose-response, exposure). Thus, Dr. Thiessen's attempt to justify employed assumptions by gross analogy, in the absence of chemical-specific justifications for making such assumptions, underscore her omission of basic, fundamental, and key aspects of risk assessment under generally acceptable scientific standards.

==Dr. Thiessen uses analogies to EPA draft risk evaluations as substitutes for conducting a proper risk characterization that incorporates TSCA section 6 approaches.== However, these analogies are inappropriate because they do not compare analogous circumstances. For example, Dr. Thiessen inappropriately compares EPA's use of animal studies to quantify risk estimates for NMP with the use of animal studies for fluoride, when the composition of the best available science is markedly different. She further inappropriately analogizes exposure data for workers exposed to TCE to exposure data for infants and the elderly, even though pathways of exposure are different and exposure data were collected differently. She also inappropriately analogizes the effects

associated with endpoints measured in TCE and NMP animal studies with effects in fluoride animal studies, even though different endpoints were measured. She also inappropriately analogizes uncertainty factors across chemicals without recognizing that the selection and application of uncertainty factors are inherently specific not just to a chemical, but more specifically to the available data set or underlying study.

      In any case, it is important to note that EPA expressly disclaims the finality of all draft risk evaluations as subject to change after public comment and peer review. To date, EPA has not made any final determination of unreasonable risk, via a TSCA risk evaluation, under the amended TSCA.

      Because all of Dr. Thiessen's expert reports prevent a reasoned evaluation concerning the application of her scientific judgment and, therefore, prevent any conclusions regarding confidence in the underlying data, her opinion, even as supplemented, remains unreliable for assessing risk.

Dated:   April 18, 2020

/s/ *Debra J. Carfora*
DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
SIMI BHAT

*Attorneys for Federal Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on April 18, 2020 on Michael P. Connett, mconnett@waterskraus.com.

/s/ *Debra J. Carfora*
Debra J. Carfora, Senior Trial Attorney