# Exhibit I

**Summary of the facts and opinions to which Tala R. Henry, Ph.D is expected to testify:**

**I.      Summary of Opinions**

In response to the expert opinions offered by Dr. Kathleen Thiessen and Dr. Phillipe Grandjean on the methods for conducting risk assessments, and in particular, the methods for conducting a risk evaluation under the Toxic Substances Control Act (TSCA) based on the currently available scientific evidence, Dr. Henry will testify to the following:

- Dr. Thiessen's report is not a credible source of evidence for making conclusions regarding unreasonable risks under TSCA due to critical limitations, including:

    1.   *Mischaracterization of EPA hazard assessments and dose-response analyses as "risk assessments" and omission to any reference to or discussion of resources available in the public domain that describe the relevant and sound requirements and procedures for conducting a risk evaluation under section 6(b)(4) of TSCA.*

    2.   *There are inadequate or undocumented literature searches and Systematic Review. Literature searches for critical components of a risk evaluation (exposure assessment) appear not to have been conducted; and quality and relevancy reviews, using systematic review methods, for hazard data (animal and human) are not provided to ensure the risk determination is based on the weight of the scientific evidence (WoSE).*

    3.   *The reference dose (RfD) derived by EPA in the document, Fluoride: Dose-Responses Analysis for Non-cancer Effects, has as no relevance to the question of whether the artificial fluoridation of drinking water creates unreasonable risk because it is not fit-for-purpose for a TSCA risk evaluation.*

    4.   *The methodology for determining unreasonable risk is fundamentally flawed because it relies on the statutory framework and assessment methodologies used to review new chemicals substances under TSCA Section 5, which has different risk assessment requirements and findings than for risk evaluations on existing chemicals under TSCA Section 6.*

- Dr. Grandjean's report is not a credible source of evidence for making conclusions regarding unreasonable risks under TSCA due to critical limitations, including:

    1.   *The methodology for determining unreasonable risk is fundamentally flawed because it fails to demonstrate that the key tenets of systematic review were applied to his report and is presented in a manner that suggests biased and pre-conceived conclusions.*

    2.   *The report draws inappropriate and unsupported conclusions. Conclusions in the purported risk assessment conducted are inappropriate because the calculation exercise and the conclusions for making unreasonable*

1

> *risk determinations are fundamentally flawed because they rely on a different statutory framework and assessment methodologies that are not fit-for-purpose for a TSCA risk evaluation.*

## II. Qualifications

Dr. Henry is a toxicologist with over 25 years of technical and managerial experience at the U.S. Environmental Protection Agency (EPA, or "the Agency"). Dr. Henry received a Ph.D. in Pharmacology from the University of Minnesota in 1994 and completed post-doctoral research in Toxicology at the University of Wisconsin in 1996.

During Dr. Henry's 25 years at EPA, Dr. Henry has provided toxicology and risk assessment expertise and guidance, oversight and daily programmatic management to multiple chemical management programs, and leadership of science policy development and implementation across EPA, with other federal agencies and in several international fora. Dr. Henry's most recent toxicology and risk assessment experience at EPA has been in the Office of Pollution Prevention and Toxics (OPPT), which is responsible for implementing the TSCA, including to interpret statutory provisions, develop policy and implementation strategies, and execute the 2016 amendments to TSCA. Since May 2019 Dr. Henry has been the Deputy Director of OPPT and was acting in this position from May 2018 to May 2019.

From October 2013 to May 2018 Dr. Henry was the Director of the Risk Assessment Division (RAD) within OPPT. As Division Director of RAD Dr. Henry provided technical and managerial leadership and oversight for conducting human health and environmental hazard, exposure and risk assessments of new and existing chemicals under TSCA. Dr. Henry was also a senior toxicologist in RAD from April 2006 to July 2009. From July 2009 through October 2013, Dr. Henry served as a senior manager and ultimately the Division Director, of the National Program Chemicals Division (NPCD) within OPPT. Dr. Henry's responsibilities in that position included to lead and oversee development of regulatory and non-regulatory approaches for managing risks of chemicals of high priority to the Agency, including those that pose persistent risks due to past uses (e.g., lead, PCBs, mercury, and asbestos).

During Dr. Henry's tenure in OPPT, she also represented EPA and the United States government in a number of international chemical assessment and management venues, including task forces and expert panels and fora such as the Organization for Economic Cooperation and Development (OECD), the Helsinki Chemicals Forum, and the United Nations Persistent Organic Pollutants Review Committee (POPRC) for the Stockholm Convention.

Dr. Henry has also worked within other EPA offices, including the Office of Water (OW), Office of Research & Development (ORD), and the Region 8 Office in Denver, Colorado. In OW, Dr. Henry was a Senior Toxicologist and the Program Manager/Coordinator of the Chemical Criteria Program. As such, Dr. Henry participated in the technical aspects of Ambient Water Quality Criteria Program. In particular, Dr. Henry provided technical expertise and oversight for implementing the then newly revised, *2000 Methodology for Deriving Ambient Water Quality Criteria for the Protection of Human Health* and led an effort to revise the *Guidelines for Deriving Numerical National Water Quality Criteria for the Protection of Aquatic Organisms*

that underlies the OW RfD, but also data that has become available since the time the OW RfD was derived. Furthermore, the procedures and methods established in the TSCA statute, regulations, and guidance would need to be applied in order to develop a hazard assessment for a TSCA risk evaluation. Not only are these scientific standards required by statute and regulations under TSCA, but they are generally accepted scientific standards for making risk determinations based on the Best Available Science and WoSE.  For these reasons—lack of systematic review, WoSE and, most notably that EPA does not use RfDs in TSCA risk evaluations—the RfDs presented by Dr. Thiessen are irrelevant to a credible risk determination under TSCA.

### E. Fundamental Flaws in Methodology for Determining Unreasonable Risk.

First, Dr. Thiessen erroneously asserts that EPA has defined unreasonable risk. In fact, EPA did not define unreasonable risk based on overwhelming public comment supporting EPA's position that a static definition of unreasonable risk would be inappropriate to capture the broad set of health and environmental risk measures and information that might be relevant to chemical substances and, as public commenters correctly pointed out, the science of risk characterization is still evolving. Second, Dr. Thiessen asserts several factors EPA considers in determining unreasonable risk.  These assertions, however, are based on risk determinations made under Section 5 of TSCA rather than Section 6.

Section 5 of TSCA provides the statutory authority and requirements for assessing and managing new chemicals (i.e., chemicals not currently in commerce). Fluoride chemicals appear on the TSCA inventory, meaning they are existing chemicals as defined by TSCA, and therefore the statutory requirements governing risk evaluation and risk management for fluoride chemicals are those defined in TSCA section 6. Indeed, the plaintiffs' petition for rulemaking specifically requested that EPA take action under TSCA section 6. The framework EPA applies in conducting risk assessments under TSCA section 5, while based on widely accepted fundamental risk assessment principles and the National Research Council's (NRC) risk assessment paradigm, identify methods and assumptions are necessarily different than considerations for actions under section 6 due to: (1) substantial differences in the quantity and types of data typically available for new chemicals; and (2) the short timeframe (i.e., 45 to 90 days) TSCA imposes for completing new chemical reviews including both the assessment and associated risk management.  Additionally, Dr. Thiessen's report utilizes the TSCA Section 5 screening analysis, which was designed to support a rapid hazard assessment for the purpose of efficiently binning chemical assessments into those which require additional and often more detailed or refined analysis (for high or moderate hazard chemicals) and those which conservative screening indicate are of low hazard and do not warrant detailed or refined analysis.

This classification scheme is based on dose/concentration values from standardized, guideline animal toxicity tests. As such, the approach was neither intended nor envisioned to be used with human studies.  This is because human toxicity data are rarely, if ever, available for new chemicals. In conducting risk evaluations of existing chemicals under TSCA section 6, EPA generally does not deploy rapid screening or 'binning' of a chemical to inform the level of

analysis that will be required, but rather EPA performs a much more intensive literature review and systematic review process as described in Application of Systematic Review under TSCA. This more robust process is appropriate in making risk determinations on existing chemicals, like water fluoridation chemicals. Hence, this entire section of Dr. Thiessen's report is flawed in that it claims to support an unreasonable risk determination using risk assessment approaches and a regulatory framework that EPA uses for new chemicals rather than for existing chemicals.

Due to these fundamental and significant flaws in approach, Dr. Thiessen's conclusion regarding unreasonable risk of neurotoxic effects of fluoride are not supported.

## VIII.   Critique of Dr. Grandjean's Report

Dr. Henry will testify that Dr. Grandjean's report is not a credible source of evidence for making conclusions regarding unreasonable risks under the Toxic Substances Control Act (TSCA) due to critical limitations, as described below.

### A.   Inadequate or Undocumented Literature Searches and Systematic Review.

To make risk determinations under TSCA, regulations require all components of a risk evaluation and all streams of evidence to have been systematically reviewed to ensure that risk determinations are based on the Weight of the Scientific Evidence. Not only is a properly conducted systematic review required under TSCA, but it is the necessary course of action when making a risk determination that is based on the Best Available Science and WoSE. Dr. Grandjean claims to have followed the general approaches used and applied by the World Health Organization's International Agency for Research on Cancer (IARC) (IARC, 2006) and EPA when evaluating scientific information, however, Dr. Grandjean's statement is not supported by his presentation of the scientific information, which lacks the key elements of systematic review. For example, Dr. Grandjean stated that his expert report focused on the evidence that "carries the greatest weight"; however, Dr. Grandjean did not describe the principles and methods used, the reliability of the principles and methods used, nor how he reliably applied the principles and methods with evaluating or "weighing" the quality, reliability, and relevance of the cited scientific information. Dr. Grandjean also stated that he does not "necessarily cite all reports that may be relevant," which suggests that his review is not be based on sufficient facts or data and that he did not utilize reliable principles and methods that would ensure a comprehensive gathering and evaluation of that information.

Dr. Grandjean summarizes studies on fluoride and childhood IQ testing, but did not state the principles and methods that he used and applied with identifying the cited literature, evaluating the quality of the individual studies, and stating why specific studies were included or excluded from his review.  Dr. Grandjean provides an opinion on fluoride neurotoxicity in humans that he asserts is based on the "weight of epidemiological evidence," however, nowhere in his report is described the methods and criteria he used to review studies or to conduct a weight of evidence analysis.  As such, and as discussed above, Dr. Grandjean's "weight of evidence" assertion is not

credible because it fails to demonstrate foundational considerations, such as objectivity and transparency, in the process. Rather, it is Dr. Henry's opinion that Dr. Grandjean selectively cited literature, including data from his own publications, to support biased and pre-conceived conclusions about the neurotoxicity of fluoride.

### B. Inappropriate and Unsupported Conclusions.

First, Dr. Grandjean twice references the 2006 NRC Report as supporting his assertion that fluoride's predominant benefit to teeth comes from topical contact with the outside enamel, and not from ingestion. The NRC report makes no such conclusion, and in fact explains that is not the consensus on this matter (National Research Council, 2006).

Second, Dr. Grandjean makes conclusions by "[a]pplying methods for standards setting routinely used by EPA," but then applies methods used to derive a Maximum Contaminant Level (MCL) in drinking water, under the Safe Drinking Water Act (SDWA). Not only are the regulatory purpose and statutory framework in which MCLs are applied different than the purpose and framework under TSCA, but the values derived, and the methods used to derive them are necessarily different than conducting a risk evaluation under TSCA. Most notably, the MCL is a concentration in water that must not be exceeded under the implementing framework of the SDWA. In contrast, a TSCA risk evaluation would compare the exposure of humans and the environment (i.e., the dose resulting from exposure to the fluoride), specifically applicable to the condition(s) of use, to the dose of fluoride identified in the hazard assessment to have no adverse effects. Using this comparison, the risk characterization, would indicate the 'margin of exposure, by which the exposures are greater than or less than the no adverse effect levels. The TSCA risk evaluation process results in a risk estimate, rather than an exposure concentration. The risk estimate is then used to make a determination about unreasonable risk under TSCA. Dr. Grandjean's associated calculation exercise and the conclusions for making unreasonable risk determinations are not fit-for-purpose for a risk evaluation under TSCA. Furthermore, Dr. Grandjean's derivation has not been subject to peer review nor public notice and comment – both of which are required components of making a final unreasonable risk determination under TSCA and are scientifically sound processes for making risk determinations based on the best available science and WoSE.

Third, Dr. Grandjean concedes that it is "hard to judge the overall fluoride exposure levels in U.S. populations exposed to fluoridated drinking water" due to paucity of data. Consequently, Dr. Grandjean relies on Canadian data in his analysis. While it is not uncommon to use data derived from non-US populations in conducting risk evaluation under TSCA, it is imperative that such data be evaluated for its relevance to the US population. EPA's application of systematic review under TSCA includes an evaluation domain against which studies are evaluated to judge such relevance [Evaluation domain = Study Participation: Study design elements characterizing the selection of participants in or out of the study (or analysis sample), which influence whether the exposure-outcome distribution among participants is representative of the exposure-outcome