DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
SIMI BHAT
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-2640
Fax: (202) 514-8865
Email: debra.carfora@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>　　　　　　　Defendants. | Case No. 17-CV-02162 EMC<br><br>**DEFENDANTS' POST-TRIAL RESPONSIVE BRIEF REGARDING STANDING**<br><br>Trial: June 8-17, 2020 |

Despite having multiple opportunities to demonstrate standing in this case, Plaintiffs still have not connected the theoretical harms of headaches, physical pain, and dementia with their particular exposure to community water fluoridation. No witnesses at trial attested to such a connection. *None* of the literature Plaintiffs mentioned in passing link these harms to the low level of fluoride found in community water. And Plaintiffs' remaining self-serving declarations provide more plausible alternative explanations for their claimed symptoms. Plaintiffs have therefore fallen far short of their burden to establish the harms of headaches, physical pain, or dementia in old age, or even a substantial probability of such harms imminently occurring.

## I. NO PLAINTIFF HAS SHOWN A SUBSTANTIAL THREAT OF IMMIMENT INJURY FROM COMMUNITY WATER FLUORIDATION TO CONFER CONSTITUTIONAL STANDING

Plaintiffs appear to misunderstand their burden to prove constitutional standing *at trial*, citing cases discussing allegations in complaints instead. Plaintiffs' reliance on these cases is especially misplaced because their reading conflicts with the Supreme Court's more recent decision, *Clapper v. Amnesty International, USA*, 568 U.S. 398 (2013), in which the Court held that an "objectively reasonable likelihood" of future injury is not the standard to establish standing. *Id*. at 410. Under the applicable standard, plaintiffs' asserted injury must be "certainly impending" in order to fulfill the constitutional requirement of "imminence." *Id*.

Applying *Clapper*, this District Court held that a mere "increased risk of future injury" alone is insufficient for standing. *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 921 (N.D. Cal. 2015). The Court further observed that, to the extent the Ninth Circuit and the Second Circuit had misinterpreted Supreme Court precedent to find standing based on "reasonable concern" or "credible threat," those cases "have been abrogated by *Clapper*'s 'certainly impending' and 'substantial risk' standards." *Id*. at 921-22 (describing *Covington v. Jefferson County.*, 358 F.3d 626 (9th Cir. 2004); *Hall v. Norton*, 266 F.3d 969 (9th Cir. 2001); and *Cen. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002)). While an injury can still be "probabilistic," i.e., a risk, that risk must be substantial. *Nat. Res. Def. Council v. EPA ("NRDC")*, 735 F.3d 873, 879 (9th Cir. 2013); *see also Food & Water Watch v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015) ("[T]his Court has limited its jurisdiction over cases alleging the possibility of increased-risk-of-

harm to those where the plaintiff can show *both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account."[1]

### A. Plaintiffs Have Not Shown a "Certainly Impending" Risk of Suffering Headaches Due To Community Water Fluoridation.

Plaintiffs raise a strawman, contending that the various causes of Ms. Simms's headaches only illustrate that she is an "eggshell plaintiff" with heightened sensitivity. EPA does not dispute that Ms. Simms claims to be sensitive to many headache triggers. Nonetheless, Plaintiffs have not shown that her headaches are traceable to community water fluoridation, or that the relief they seek would redress her claimed injury. Indeed, Ms. Simms has admitted that her headaches have continued even after avoiding drinking fluoridated water. Dep. Designations, ECF No. 237, at 57. Plaintiffs' "eggshell plaintiff" argument further calls into question redressability for Ms. Simms' claimed injury of headaches given Plaintiffs' characterization of Ms. Simms as especially sensitive, and given that TSCA does not require EPA to eliminate all risk. Plaintiffs have not proven that the remedy they seek would redress Ms. Simms's headaches.

Plaintiffs are also wrong in their new attenuated, contention that NRC 2009 connects headaches to community fluoridation because it references case reports in which people had hypersensitive reactions to fluoride as low as 0.02 mg/kg/day. As Dr. Tsuji stated, the NRC 2009 committee did not consider case reports to be reliable about dose. Tr. 739:21-740:3. In any case, there is no evidence that any studies or reports ever claimed hypersensitivity to fluoride was manifested as headaches. NRC 2006 is clear that Waldbott's case reports suggest only "possible

---

[1] Plaintiffs seek to place more weight on *NRDC* than it can bear. In that case, the Ninth Circuit detailed why plaintiffs there faced a "certainly impending" risk while plaintiffs in another case who sought to ban a vaccine did not. *Id*. at 879. The difference was that the standing declarants in *NRDC* had children who were at "high" risk. Plaintiffs here wrongly assert that the standing declarants in *NRDC* did not have children of the age who would be harmed; the declarants had both infants and toddlers who were at risk presently or prospectively. *See e.g.,* Wong Decl. ¶ 2, *NRDC,* (Dkt. No. 18-5) (nine-month-old); Taylor Decl. ¶ 3, *NRDC,* (Dkt. No. 18-4) (three-year-old); Peled Decl. ¶ 2, *NRDC,* (Dkt. No. 18-3) (one-year-old); *see NRDC*, 735 F.3d at 880. Plaintiffs here are also incorrect that EPA never calculated a margin of exposure in that case. *Id*. at 876. EPA had calculated a margin of exposure that the plaintiffs in *NRDC* argued required mitigation. *Id*. at 881. Here, no party has shown that there is a "high" risk or "certainly impending" risk of neurodevelopmental injury to Plaintiffs.

gastrointestinal hypersensitivity." Ex. 13 at 270. There is no evidence that he labeled any other reactions, like headaches, as hypersensitive, or attributed those reactions to any specific dose. The only other manifestation of hypersensitivity that Plaintiffs ever attributed to NRC 2009 was the beneficial effects on the thyroid. Tr. 1039:11-1040:3. Furthermore, Plaintiffs have not provided any evidence that Ms. Simms consumes enough fluoridated drinking water to amount to an exposure of 0.02 mg fluoride/kg/day, which, by their own admission, reflects very high consumption. Thiessen Decl., ECF No. 202-1, ¶ 153 (0.02 mg/kg/day is higher than the rate of 90th percentile consumers); ECF No. 100 (stipulation with all purported facts for standing).

### B. No Human Study has Examined the Connection between Physical Pain and Community Water Fluoridation.

Regarding Kyle Adams' alleged pain from topical contact to fluoridated water, Adams Decl., ECF No. 100-7, ¶¶ 11, 16, Plaintiffs muster a single citation to a hot plate latency test reported in McPherson 2018, in which the most highly exposed rats jumped off a hot plate faster. This Court has rejected the application of animal studies to establish human standing. *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1061 (N.D. Cal. 2015). In any event, McPherson 2018 did not assess pain from topical contact with fluoridated water, focusing instead on *developmental* exposure from *ingestion* of fluoride. It also examined doses of 20 mg/L of fluoride, which is *conservatively twice* the equivalent human exposure found in community water fluoridation. Tr. 763:24-25; Tr. 686:11-14, 761:18-19 and 762:4-8 (4 mg/L is a more comparable to human exposure); Thiessen Decl. at 74 (0.79 mg/kg/day is the equivalent). And the study authors did not call the results adverse. *See* Tr. 751:17-19 and 752:24-753:9 (suggesting that McPherson's learning and memory tests were the most robust to date and those conclusions are meaningful to the extent they addressed NTP 2016's data gaps). In addition, this hot plate test result is uncorroborated by other named studies; the opposite results have been reported. *See e.g.,* Tsuji Decl., ECF No. 199, ¶ 94 (citing Wu and Jiang); Tr. 751:1-13; 753:13-18; 754:12-16.

### C. The Threat of Dementia is Too Generalized and Speculative.

Ms. Lavelle's vague assertion of "apprehension" of developing dementia or Alzheimer's Disease is not particular to her. Lavalle Decl., ECF No. 100-3, ¶6. Plaintiffs have conceded this.

Tr. Mot. Summ. J. 20:22-21:4 ("THE COURT: There's nothing specific about Ms. LaVelle. MR. CONNETT: Not specific in terms of whether she's at any heightened risk, herself."). This harm is premised on a universal fear of old age, and it is too generalized for standing. *See* EPA's Post-trial Standing Br., ECF No. 250-1, at 9-10. Moreover, there is no credible evidence that Ms. Lavelle is at actual risk of such harm from community water fluoridation. None of Plaintiffs' passing citations to animal studies (NRC 2006, NTP 2016, Cao 2019) or human studies (Shao 2003, Li 2016, Russ 2019) address this question.

The cited page of NRC 2006 offers no explanation on the dose or means by which rats were exposed to *aluminum* fluoride, which is not used in drinking water, and shows that aluminum was the substance of concern. Ex. 13 at 222; Tsuji Decl. ¶¶ 38 (dose delivery is critical), 105 (fluoride exposure without aluminum showed *no association* with adverse affects). On the next page, NRC 2006 concludes that study of "environmentally relevant doses" were required and "effects … caused by fluorides *cannot* be related to specific alterations in behavior or to known diseases." Ex. 13 at 223 (emphasis added); *see* Tr. Ex. 553 at 2 ("at levels below 4.0 mg/L, NRC found no evidence substantial enough to support negative health effects other than severe dental fluorosis." Tr. Ex. 553 at 2. Further, NTP 2016 reached no conclusions on dementia and Alzheimer's Disease either. As for Cao 2019, a single sentence statement about an animal study without relevant, basic information on the dosage, how the dose was administered, and the controls taken, can hardly meet Plaintiffs' burden to show a real, immediate harm. Thiessen Decl. ¶ 182.

The brief testimony on the "sparse" human data is equally uninformative. Thiessen Decl. ¶ 183. Plaintiffs concede that Li 2016 found *no association* between fluoride and cognitive decline in the elderly. Grandjean Decl., ECF No. 198-3, ¶ 74; Thiessen Decl. ¶ 182; Tr. 304:8-305:9. Shao 2003 was a cross-sectional study that compared "healthy" adults to those with *skeletal* fluorosis living in an endemic fluorosis area in China. Grandjean Decl., ECF No. 198-3, ¶ 74; Tr. 298:17-300:23. With such comparison groups exposed to unknown environmental contaminants and no information on the source or amount of the "heavy" exposure, it is little surprise that such a poorly designed study found associations with adverse health effects. *Id.* The Russ study considered fluoride exposure based on *residence after age 60* to "sugges[t] further research" be done to

examine a connection with dementia. Thiessen Decl. ¶ 183. Again, Plaintiffs failed to provide the exposure levels. The Russ study, at most, could caution Ms. Lavelle from living in a fluoridated community when she is 60. Ultimately, Plaintiffs' string of "predictive assumptions" and hypotheses—that Ms. Lavelle's potential future exposure to fluoridated water could build up in her bones at certain amounts, which could be released later in life in such possible quantities to perhaps cause Alzheimer's Disease—is a generalized fear, neither substantial nor immediate. *Fla. Audubon v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996).

### D. Plaintiffs' Alleged Avoidance Costs Are Past Self-Inflicted Injuries

Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm." *Clapper*, 568 U.S. at 416. Because no Plaintiff is at substantial risk of future headaches, pain, dementia, or neurodevelopmental harm from community water fluoridation, any financial avoidance costs are not cognizable for standing. *Food & Water Watch*, 808 F.3d at 918-19 (increased costs that are "the product of their fear" does not confer standing); *San Diego Gun Rights v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (future harm, not past injury, is needed).

### E. Plaintiffs Have Not Suffered a Procedural Injury.

Plaintiffs argue that EPA "depriv[ed] plaintiffs of … a de novo proceeding under TSCA," which is an injury sufficient for standing. Pls.' Supp. Br. at 13. Having completed a trial, Plaintiffs cannot argue that they were deprived of one. Their procedural injury argument is unfounded.

## II. BECAUSE THE ALLEGED HARMS WERE NOT IDENTIFIED IN THE PETITION, PLAINTIFFS LACK STATUTORY STANDING.

Although some of the aforementioned studies were listed in the petition, the harms of headaches, pain, dementia, and Alzheimer's Disease were not mentioned once, so Plaintiffs cannot challenge EPA's petition denial based on such harms. Plaintiffs' citation to the Endangered Species Act and Clean Water Act, Pls.' Supp. Br., ECF No. 247, at 1, is misplaced because those statutes lack the administrative petition requirement of TSCA. *See also Ctr. for Biological Diversity v. Marina Point Dev. Co.,* 566 F.3d 794, 802-04 (9th Cir. 2009) (a party cannot bring suit based on matters not presented in a required notice of intent to sue). As such, Plaintiffs lack standing, and the Court must find in favor of EPA.

Date: July 23, 2020

Respectfully Submitted,

*/s/John Thomas H. Do*
DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
SIMI BHAT
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Email: debra.carfora@usdoj.gov