DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
SIMI BHAT
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-2640
Fax: (202) 514-8865
Email: debra.carfora@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

FOOD & WATER WATCH, INC., et al.,

　　　　　　　Plaintiffs,

　　　v.

UNITED STATES ENVIRONMENTAL

PROTECTION AGENCY, et al.,

　　　　　　　Defendants.

Case No. 3:17-cv-02162 EMC

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' FURTHER
STATEMENT ON EPA'S POSITION
REGARDING A NEW PETITION
(ECF No. 258)**

Plaintiffs' Further Statement on EPA's Position Regarding a New Petition (ECF No. 258) is procedurally inappropriate and substantively untrue. Plaintiffs have continuously sought to mask the weaknesses, inconsistencies, and variability of the existing available scientific information for evaluating potential neurotoxic effects from exposure to fluoride from community water fluoridation programs by accusing EPA of acting contrary to its mission of protecting human health and the environment. In so doing, Plaintiffs fail to acknowledge that EPA must be able to defend the actions the agency takes, and that EPA's ability to protect human health and the environment depends in part upon the public's ability to trust the science and the scientific process that informs public policy decisions.

The key studies upon which Plaintiffs relied at trial were not published at the time Plaintiffs submitted their 2016 petition to EPA. Those studies (the ELEMENT and MIREC studies) have multiple limitations and must be interpreted in context of the various other human and toxicological evidence available, as Plaintiffs' expert Dr. Howard Hu explained at trial. *See* Hu Trial Tr. Vol. 3, 340:4-23. By releasing their raw data and a detailed explanation of their statistical methods, the authors of the studies could satisfy incongruities and ensure the scientific record is clear. However, to date, despite multiple requests from the scientific community, the authors have failed to do so. At trial Dr. Grandjean conceded: "*And I think we should* -- and it has already been agreed with Dr. Hu and Dr. Lanphear. We [will] [sic] do a joint study where we rely on the raw data from both, both studies, and calculate the real benchmark dose levels in accordance with EPA's recommendation." Grandjean Trial Tr. Vol. 2, 177:16-20 (emphasis added).

Thus, as represented to Plaintiffs and as described in the parties' Joint Case Management Statement (ECF No. 257), EPA takes the position that a *meaningful substantive review*, as contemplated by the Court, of the evolving scientific evidence published since Plaintiffs submitted their 2016 petition should include raw data for the key studies upon which Plaintiffs rely and, according to Dr. Grandjean's trial testimony, is forthcoming. Further, as represented to Plaintiffs and as described in the parties' Joint Case Management Statement, EPA's position is based on the *specific evidence-base available* for evaluating potential neurotoxic effects from

exposure to fluoride from community water fluoridation programs as necessary to support a potential TSCA section 6(a) rulemaking. Not, as Plaintiffs allege in their subsequent filing, a broader policy shift.

Additionally, EPA would like to clarify for the Court that, to the extent Plaintiffs are now "willing to provide the data underlying Dr. Grandjean's risk calculations," Plaintiffs were in fact obligated to disclose the data underlying Dr. Grandjean's risk calculations prior to trial. Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires the disclosure of all facts or data considered by an expert witness in forming their opinions. In addition, on September 10, 2019, EPA served a Notice of Taking Depositions Duces Tecum of Dr. Grandjean requesting, *inter alia*, disclosure of any written communication between the witness and a third party that identifies facts, data, or assumptions that the expert relied upon in forming the opinions to be expressed. *See* attached Exhibit A. Dr. Grandjean testified at trial that it was Dr. Budtz-Jorgensen, a third party, that "scanned the figure from the ELEMENT study where he extracted the data points where we were missing one. And then he applied the software, the statistical approach, which is similar to EPA's software, to actually calculate on the basis of the raw data the exact BMD and the exact BMDL, except that we were missing one data point." Grandjean Trial Tr. Vol. 2, 132:17-22. Additionally, Plaintiffs had an ongoing obligation to supplement EPA's Request for Production of all documents pertaining to a dose-response relationship between exposures to fluoride and a neurotoxic effect. *See* attached Exhibit B, First Set of Requests for Production No. 5; Fed. R. Civ. P. 26 (explaining that a party who has responded to a request for production "must supplement"). Thus, where Dr. Grandjean's opinions relied upon Dr. Budtz-Jorgensen's underlying risk calculations, Plaintiffs were obligated to disclose that data prior to trial.

Respectfully Submitted,

Dated: August 4, 2020

*/s/ Debra J. Carfora*
DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
SIMI BHAT

*Attorneys for Defendants*

2

DEFENDANTS' RESPONSE TO PLAINTIFFS' FURTHER STATEMENT ON EPA'S POSITION REGARDING A NEW PETITION
Case No. 3:17-cv-02162 EMC

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of August, 2020, a true and correct copy of the foregoing Defendants' Response to Plaintiffs' Further Statement on EPA's Position Regarding a New Petition was filed electronically with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Debra J. Carfora*
Debra J. Carfora
United States Department of Justice

3

DEFENDANTS' RESPONSE TO PLAINTIFFS' FURTHER STATEMENT ON EPA'S POSITION REGARDING A NEW PETITION
Case No. 3:17-cv-02162 EMC