DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
SIMI BHAT
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-2640
Fax: (202) 514-8865
Email: debra.carfora@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al., | Case No. 3:17-cv-02162 EMC |
| Plaintiffs, | |
| v. | **EPA's Motion For Relief From Order Holding Proceedings in Abeyance (ECF No. 262)** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | DATE: December 10, 2020 TIME: 1:30 pm Courtroom: Zoom Webinar |
| Defendants. | |

## INTRODUCTION

Plaintiffs lack standing. The Court all but held as much in the August 10, 2020 Order Holding Proceedings in Abeyance (ECF No. 262) ("Abeyance Order"). The Court should have dismissed this case for lack of jurisdiction, but instead has permitted Plaintiffs an opportunity to create standing where none exists. If the Court declines to dismiss this case now, EPA requests in the alternative that, should Plaintiffs submit a new petition (as directed by the Court) and should EPA deny the petition, the Court require Plaintiffs to seek leave to amend their complaint and EPA be provided an opportunity to oppose such a request.

## BACKGROUND

The Court is already familiar with the factual and procedural background in this matter. EPA will not repeat that history here, except in relevant part.

On November 22, 2016, Plaintiffs petitioned EPA to prohibit the addition of fluoridation chemicals to drinking water supplies. EPA denied the petition on February 17, 2017. On April 18, 2017, Plaintiffs filed this action to compel EPA to undertake rulemaking on fluoridation chemicals. Under TSCA's citizen petition provision, 15 U.S.C. § 2620, a party whose petition for a new rulemaking under § 2605 is denied may commence a civil action in district court; the court is to consider the petition in a de novo proceeding.

In December 2017, EPA moved to limit the scope of review in this matter to the administrative record. The Court concluded that the text of TSCA, its structure, its purpose, and the legislative history all demonstrated that Congress did not intend to impose such a limitation for judicial review of section 21 citizen petitions. Full discovery ensued, which included a number of formal discovery disputes resolved by the Court and informal discovery disputes resolved by the parties. For example, the parties spent a considerable amount of time negotiating Plaintiffs' desire to limit the depositions of Plaintiffs' 12 standing witnesses. In May 2019, the parties entered into a stipulation intended to limit the evidence that Plaintiffs may introduce to establish their standing at each stage of the litigation, including trial. Specifically, in exchange for foregoing additional depositions, Plaintiffs agreed to confine their standing evidence to certain declarations

1  and deposition designations. The "Standing Stipulation and Order" was further endorsed by the

2  Court. (ECF No. 102).

3  The Court conducted a seven-day trial in June 2020 where the parties abided by the

4  Standing Stipulation and Order. After closing arguments, the Court recognized the substantial

5  difference between the administrative record and what was presented at trial, and the likelihood of

6  forthcoming publications on the relationship between fluoride and neurotoxicity. Trial Tr.

7  1130:23-1131:4. In light of this, the Court encouraged the parties to "reboot" the case through

8  consideration of an amended or a new petition. *Id*. 1136:3-7. The Court noted that the trial record

9  was closed, but ordered the parties to meet and confer to discuss the possible options, setting a

10  status conference on August 6. *Id*. 1151:17-1152:17. The parties engaged in extended discussions

11  regarding a new or an amended petition and possible settlement options. EPA ultimately concluded

12  that (1) TSCA provides no mechanism authorizing reconsideration of the 2016 petition, (2)

13  Plaintiffs' proposal to simply repackage the trial record would be insufficient for EPA to reach a

14  finding of unreasonable risk, and (3) committing additional government resources to the November

15  2016 petition would compound the lost opportunity costs to the government when its officers are

16  not engaging in their normal duties.

17  Nevertheless, over the parties' mutual objections, the Court ordered the proceedings to be

18  held in abeyance. Abeyance Order at 5. In the Abeyance Order, the Court expressed in detail its

19  doubt as to whether Plaintiffs had standing, particularly given that Plaintiffs failed to demonstrate

20  any link between the evidence presented at trial, which focused on potential *neurodevelopmental*

21  harm, and the harms of headaches, increased pain sensitivity, and an increased risk of Alzheimer's

22  disease or dementia which they personally complain *as adults*. *Id*. at 2-3. The Court went on to

23  explain that holding the case in abeyance would permit Plaintiffs to address its standing issues and

24  allow EPA to consider the scientific developments since the original petition was filed, including

25  a yet-to-be published *Monograph on Systematic Review of Fluoride Exposure and*

26  *Neurodevelopmental and Cognitive Health Effects* by the National Institute of Environmental

27

28

EPA'S MOTION FOR RELIEF FROM ORDER HOLDING PROCEEDINGS IN ABEYANCE (ECF NO. 262)
Case No. 3:17-cv-02162 EMC

Health Sciences' National Toxicity Program ("NTP"), a Spanish cohort study,[1] and a pooling analysis of the MIREC/ELEMENT cohort data. *Id*. at 4. The Court directed Plaintiffs to file a new petition and urged EPA to give such a petition due consideration on the merits in light of the substantial scientific evidence proffered at trial. *Id*. at 4-5. Further, the Court noted that "[s]hould the EPA deny the new petition, the Court will permit amendment of the complaint herein and consider permitting supplementation of the record in this case to account for, *e.g.*, new evidence contained in the new petition or new studies published since the trial in this case." *Id*. at 5.

In prematurely granting Plaintiffs leave to amend their Complaint, the Court did not address the significant prejudice to EPA, Federal Rule of Civil Procedure 15, the Standing Stipulation and Order, or otherwise allow for argument.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) authorizes a court to relieve a party from a court's order on six bases. The sixth basis is a catch-all encompassing "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) is thus properly invoked where principles of equity mandate relief. *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) ("Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice."). Further, a ruling is otherwise void if the court lacks jurisdiction. Fed. R. Civ. P. 60(b)(4).

## ARGUMENT

## I.   THE COURT MUST DISMISS THIS CASE FOR LACK OF JURISDICTION.

Federal courts are courts of limited jurisdiction and may only exercise that jurisdiction which has been granted to them by Congress. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Before this Court can consider the merits of an issue, it must first determine whether the Plaintiffs have properly invoked its jurisdiction. *Steel Co. v. Citizens for a Better Env't*,

---

[1] L, Santa-Marina; A, Jimenez-Zabala; A, Molinuevo; M, Lopez-Espinosa; C, Villanueva; I, Riano; F, Ballester; J, Sunyer; A, Tardon; J, Ibarluzea, *Fluorinated water consumption in pregnancy and neuropsychological development of children at 14 months and 4 years of age*, Environmental Epidemiology: October 2019 - Volume 3 - Issue - p 386-387 doi: 10.1097/01.EE9.0000610304.33479.18 (concluding that at low doses, fluoride could present a dose-response pattern with a beneficial effect).

1    523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."). It is

2    well settled that federal jurisdiction depends on the facts as they exist when the complaint is filed.

3    *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989). Because at least one of the

4    essential elements of standing is lacking, here, this case *must* be dismissed for lack of subject

5    matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). [2]

6        "At trial, Plaintiffs were required to prove the elements of standing by a preponderance of

7    *evidence*." Abeyance Order at 2 (emphasis in the original) (citing *Lujan*, 504 U.S. at 561). Because

8    Plaintiffs failed to show "any relationship between the evidence presented on neurodevelopmental

9    harm to fetuses/infants and the harms alleged by the named Plaintiffs, it is *doubtful* they have

10   carried their burden of demonstrating that they would likely be redressed by a favorable ruling

11   from the Court." *Id*. at 3 (emphasis added). "Plaintiffs' standing is also problematic because the

12   evidence of the harm alleged by the named Plaintiffs was practically non-existent at trial." *Id*.

13       Because Plaintiffs have failed to convince the Court—by a preponderance of the

14   evidence—that fluoride exposure poses a substantial risk of harm, or even a credible threat, to the

15   named Plaintiffs or that their harms are likely to be redressed, the case *must* be dismissed for lack

16   of subject matter jurisdiction.

17       EPA acknowledges the Court's efforts to devise a practicable way for Plaintiffs to correct

18   their standing deficiencies. However, even if a new set of plaintiffs could demonstrate standing for

19   judicial review of a new administrative petition, such standing does not confer jurisdiction upon

20   this Court to consider a cause of action that rests upon the November 2016 petition. First, the

21   mechanism envisioned by the Court to enable Plaintiffs to address their serious standing

22   deficiencies is not permitted by statute. Second, permitting Plaintiffs to try to correct their lack of

23   standing by filing a new petition with new parties would once again rob EPA of the benefit it

24   bargained for in stipulating to certain rules of engagement *in this litigation*.

25

26

27   _____

     [2] This motion does not invite additional briefing on standing, which the parties have briefed

28   extensively. *See, e.g.*, ECF No. 250 & 254.

**A.      Amendment of the existing Complaint for judicial review of the November 2016 Petition cannot cure the standing deficiencies.**

Assertions of standing to pursue judicial review of a *new* petition cannot cure the deficiencies in Plaintiffs' standing for judicial review of a cause of action that rests upon the November 2016 petition. This is so because on its own, TSCA does not provide a free-standing cause of action to challenge whether a chemical substance presents an unreasonable risk. Rather, TSCA explicitly grants to the district court of the United States jurisdiction to consider the merits of particular petitions[3] submitted to EPA. Because Plaintiffs lack standing for judicial review of the November 2016 petition, their sole cause of action fails. The same petitioners, or a new set of petitioners, may submit to EPA a new petition based on different facts. If EPA denies *such* new *petition*, and Plaintiffs (or a new set of Plaintiffs) seek judicial review thereof, Plaintiffs must assert a new cause of action. Thus, there is no prejudice to Plaintiffs' ability to submit a new petition under TSCA Section 21. But there can be no doubt that the cause of action based on the November 2016 petition has been exhausted, as Plaintiffs failed to prove standing at trial. *See Newman–Green, Inc.*, 490 U.S. at 830 (explaining that federal jurisdiction depends on the facts as they exist when the complaint is filed). Indeed, the Court has no authority to create equitable exceptions to jurisdictional requirements and "must nonetheless decide the jurisdictional question before it irrespective of the possibility of harsh consequences." *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 937 n.4 (2009).

In any case, the real inequity lies with EPA.

**B.      Granting Plaintiffs a Do-Over to Attempt to Establish Standing After Years of Litigation and a Seven-Day Trial Would Unfairly Prejudice EPA.**

To permit Plaintiffs an opportunity to create standing in this litigation by adding a new cause of action based on a new petition would compound the prejudice to EPA. The Standing Stipulation and Order, which governs "the introduction of evidence in support of Plaintiffs' claims of standing throughout this *litigation*, including trial," provides that Plaintiffs will "rely

---

[3] TSCA section 21(a), 15 U.S.C. § 2620, provides that any person may petition EPA to commence a section 6(a) rulemaking. Congress used the phrase "such petition" six times in section 21(b) to describe the section 21(a) petition submitted by a petitioner to request a proceeding for the issuance of a rule.

exclusively" on the declarations and depositions already provided to the Court to establish the "factual basis" for standing, and otherwise bars supplementation. ECF No. 102 at 2 (emphasis added). Indeed, despite forcing the government to spend enormous resources defending a series of frivolous fishing-depositions, Plaintiffs refused to meet their obligation to produce for deposition certain standing witnesses. Instead, Plaintiffs sought to prevent such depositions and made a strategic decision to enter into the Standing Stipulation with full knowledge and acceptance of the risks they were taking in the bargain, which was also endorsed by the Court. In a new case, Plaintiffs could aver new facts in support of their standing, but they have already agreed *not* to do so in this litigation. Plaintiffs cannot be now permitted to evade their binding agreement embodied in the Standing Stipulation and Order simply because it is clear they have failed to demonstrate their standing.

Moreover, a finding that Plaintiffs lack standing in this matter in no way prevents them from relying on parts of the record developed during this litigation to pursue a new petition or cause of action. EPA would likewise be entitled to respond to that new petition and defend that new case, based on new facts, as it deems appropriate. For example, had the Plaintiffs produced a systematic review in prosecuting the November 2016 petition, or had the Court allowed expert testimony on the draft NTP Monograph, which is a systematic review, it *would* have altered the course of EPA's defense strategy in this litigation.

In sum, while EPA would be prejudiced by the Court sua sponte bestowing upon Plaintiffs an opportunity to create standing where none exists, dismissal would in no way prejudice the ability of a new set of Plaintiffs to submit to EPA for consideration a new administrative petition and to seek judicial review thereof, if the petition is denied (or if the Administrator fails to grant or deny such petition within the statutory period). However, because Plaintiffs have failed to prove standing at trial for their sole cause of action in this litigation, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Citizens for a Better Env't*, 523 U.S. at 94.

1

**II.      THE COURT SHOULD AT LEAST REQUIRE PLAINTIFFS TO MOVE TO AMEND THEIR COMPLAINT, WHICH WOULD PROVIDE EPA WITH A FAIR OPPORTUNITY TO RESPOND TO SUCH A MOTION.**

2

3        If the Court does not dismiss this case for lack of standing, then the Abeyance Order should

4 be amended to require Plaintiffs to seek leave to amend their complaint should EPA deny a new

5 petition. Doing so will allow the parties to fairly brief the propriety of amendment.

6        Although Rule 15(b) embodies a liberal policy in favor of allowing pleading amendments

7 even after trial, *United States v. Gila Valley Irrigation Dist.*, 859 F.3d 789, 804 (9th Cir. 2017),

8 leave "is not to be granted automatically," *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th

9 Cir. 1990). A district court should not grant leave to amend if an amendment would, among other

10 things, cause an undue delay in the litigation or prejudice the opposing party. *See id.* It is this

11 consideration of prejudice to the opposing party that carries the greatest weight. *See DCD*

12 *Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987); *Howey v. United States*, 481 F.2d

13 1187, 1190 (9th Cir. 1973) (stating that "the crucial factor is the resulting prejudice to the opposing

14 party"). Plaintiffs have not requested leave to amend their complaint, and it was error for the Court

15 to prematurely relieve Plaintiffs from their obligation to seek leave to amend without consideration

16 of the manifest prejudice to EPA.

17        Accordingly, should the Court decline to dismiss the case, Plaintiffs must be required to

18 seek leave to amend the complaint so that EPA has an opportunity to oppose such request and be

19 heard regarding the propriety of an amendment and the prejudice EPA would suffer.

20

21 Dated: October 28, 2020            Respectfully Submitted,

22                                    */s/ Debra J. Carfora*
23                                    DEBRA J. CARFORA
                                      JOHN THOMAS H. DO
24                                    BRANDON N. ADKINS
                                      SIMI BHAT
25
26                                    *Attorneys for Defendants*
27
28

7

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of October, 2020, a true and correct copy of the foregoing Motion for Relief from Order Holding Proceedings in Abeyance was filed electronically with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Debra J. Carfora*
Debra J. Carfora
United States Department of Justice

EPA'S MOTION FOR RELIEF FROM ORDER HOLDING PROCEEDINGS IN ABEYANCE (ECF NO. 262)
Case No. 3:17-cv-02162 EMC