1    C. ANDREW WATERS, ESQ., CA Bar No. 147259
     MICHAEL CONNETT, ESQ., CA Bar No. 300314
2    KAY GUNDERSON REEVES, ESQ., *Pro Hac Vice*
     WATERS, KRAUS & PAUL
3    222 N. Pacific Coast Hwy, Suite 1900
     El Segundo, CA 90245
4    310-414-8146 Telephone
     310-414-8156 Facsimile
5
6    *Attorneys for Plaintiffs*

7

8                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                          AT SAN FRANCISCO

10   _____

11   FOOD & WATER WATCH, et al.,          )    Civ. No. 17-CV-02162-EMC
                                          )
12                          Plaintiffs,   )    **PLAINTIFFS' MOTION FOR LEAVE TO**
             vs.                          )    **AMEND THEIR COMPLAINT WITH**
13                                        )    **SUPPLEMENTAL PLEADINGS**
     U.S. ENVIRONMENTAL PROTECTION        )
14   AGENCY, et al.                       )    DATE: April 1, 2021
                                          )    TIME: 1:30 pm
15                          Defendants.   )    Courtroom: Zoom Webinar
                                          )
16                                        )
                                          )
17   _____

18
              PLEASE TAKE NOTICE that on April 1 at 1:30 p.m., before the Honorable Edward M. Chen,
19
     Plaintiffs will and hereby do move for leave to amend their complaint with supplemental pleadings.
20
     Unless otherwise directed by the Court, the hearing shall be conducted by Zoom Webinar, and all are
21
     directed to the Court's website at https://cand.uscourts.gov/judges/chen-edward-m-emc/ for further
22
     information. Plaintiffs seek leave to amend their complaint for the purpose of adding allegations of
23
     occurrences and events that have transpired since the commencement of this litigation.
24

25

26

27

28

**Table of Contents**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .................................... 2

III.    FACTUAL ALLEGATIONS IN SUPPLEMENTAL COMPLAINT ........................................... 7

IV.     LEGAL FRAMEWORK ...................................................................................... 9

        A.      Supplemental Pleadings Promote Judicial Economy by Avoiding the
                Cost and Delay of Separate Actions and Are Permitted with "Extreme
                Liberality" ............................................................................................... 9

        B.      The Party Opposing Supplementation Bears the Burden of Showing Why
                Leave Should *Not* Be Granted .......................................................... 10

        C.      Under Rule 15(d), Standing Defects May Be Cured by Events that Occur
                *After* the Complaint Was Filed ........................................................ 10

V.      ARGUMENT ........................................................................................................ 12

        A.      Assuming *Arguendo* that There Were Standing Defects in Plaintiffs'
                Original Complaint and Trial Evidence, These Defects Have Been Cured
                by Newly Arising Facts ........................................................................ 12

        B.      Supplementing the Complaint Will Promote Judicial Economy by
                Avoiding the Need for a Second Lengthy and Duplicative Lawsuit ................ 16

        C.      Supplementing the Complaint with Newly Arising Facts on Standing
                Will Not Be Futile ................................................................................ 17

        D.      Supplementation Is Not Unduly Delayed and Would Not Be Unduly
                Prejudicial ............................................................................................. 17

VI.     CONCLUSION .................................................................................................... 20

1

**Table of Authorities**

2

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water District*,
   Case No. 13-cv-883-JGB, 2020 WL 5775174 (C.D. Cal. July 8, 2020) .................................. 10, 17, 18

3

4

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
   938 F.3d 1147 (9th Cir. 2019) ................................................................................................ 13

5

*Aristocrat Techs. v. Int'l Game Tech.*,
   No. C-06-03717 RMW, 2010 WL 2486194 (N.D. Cal. June 15, 2010) ....................................... 10, 17

6

7

*Association of Community Organizations for Reform Now v. Fowler*,
   178 F.3d 350 (5th Cir. 1999) .................................................................................................. 14

8

*Athena Feminine Techs., Inc. v. Wilkes*,
   No. No. C 10–4868 SBA, 2013 WL 450147 (N.D. Cal. Feb. 6, 2013) ...................................... 10

9

10

*Atkins v. Reiten*,
   313 F.2d 673 (9th Cir. 1963) .................................................................................................... 9

11

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003) .................................................................................................... 14

12

13

*Brook v. Sing*,
   No. CIV S-09-1364 GEB, 2012 WL 78417 (E.D. Cal. Jan. 10, 2012) ...................................... 10

14

*Cabell v. Zorro Prods. Inc.*,
   No. 5:15-CV-00771-EJD, 2016 WL 9180435 (N.D. Cal. Sept. 23, 2016) ............................ 10, 17, 18

15

16

*Catron County Bd. Of Com'rs, New Mexico v. United States Fish & Wildlife Service*
   75 F.3d 1429 (10th Cir. 1996) ................................................................................................ 15

17

*Central Delta Water Agency v. U.S.*,
   306 F.3d 938 (9th Cir. 2002) .................................................................................................. 14

18

19

*Citizens for Better Forestry v. U.S. Dept. of Agriculture*,
   341 F.3d 961 (9th Cir. 2003) .................................................................................................. 15

20

*Covington v. Jefferson Cnty.*,
   358 F.3d 626 (9th Cir. 2004) .................................................................................................. 14

21

22

*Day v. Kaiser Aluminum & Chem. Corp.*,
   905 F.2d 1540 (9th Cir. 1990) ............................................................................................. 9, 18

23

*E.g.*, *Natural Resources Defense Council v. United States Environmental Protection
   Agency*, 735 F.3d 873 (9th Cir. 2013) ................................................................................... 14

24

25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ............................................................................................................... 13

26

*Gadbois v. PharMerica Corp.*,
   809 F.3d 1 (1st Cir. 2015) ............................................................................................. 1, 16, 17

27

28

*Hall v. Norton*,
   266 F.3d 969 (9th Cir. 2001) .................................................................................................. 14

1

*Jones v. Ryan*,
No. CV-13-01032-TUC-RM, 2015 WL 13684705 (D. Ariz. Nov. 12, 2015) ........................ 10, 17, 18

*Keith v. Volpe*,
858 F.2d 467 (9th Cir. 1988) ............................................................................................ 2, 9

*LaSalvia v. United Dairymen of Arizona*,
804 F.2d 1113 (9th Cir. 1986) ............................................................................................ 18

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................................................................... 13, 14

*Lyon v. U.S. Immigration & Customs Enf't*,
308 F.R.D. 203 (N.D. Cal. 2015) ........................................................................................ 17

*Malem Med., Ltd. v. Theos Med. Sys., Inc.*,
No. C-13-5236 EMC, 2015 WL 270092 (N.D. Cal. Jan. 20, 2015)........................................ 9, 19

*Mathews v. Diaz*,
426 U.S. 67 (1976) ........................................................................................................... 11

*McColm v. San Francisco Hous. Auth.*,
No. C 06-07378 CW, 2008 WL 5054203 (N.D. Cal. Nov. 24, 2008)..................................... 17

*Miller v. Rykoff–Sexton, Inc.*,
845 F.2d 209 (9th Cir.1988) ............................................................................................... 17

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ......................................................................................................... 14

*Morongo Band of Mission Indians v. California State Board of Equalization*,
858 F.2d 1376 (9th Cir.1988)).......................................................................................... 11

*Morrison v. Genuine Parts Co.*,
828 F.2d 708 (11th Cir.1987)............................................................................................ 19

*Nat'l Wildlife Fed'n v. Hodel*,
839 F.2d 694 (D.C.Cir.1988)............................................................................................ 15

*Natural Resources Defense Council v. U.S. Environmental Protection Agency*,
542 F.3d 1235 (9th Cir. 2008) ...................................................................................... 15, 16

*New Amsterdam Casualty Co. v. Waller*,
323 F.2d 20 (4th Cir.1963) ................................................................................................. 9

*New York Pub. Interest Research Grp. v. Whitman*,
321 F.3d 316 (2d Cir. 2003) ......................................................................................... 14, 16

*Northstar Fin. Advisors Inc. v. Schwab Investments*,
779 F.3d 1036 (9th Cir. 2015) ............................................................................. 1, 11, 16, 17

*Oregon Nat. Desert Ass'n v. McDaniel*,
282 F.R.D. 533 (D. Or. 2012)............................................................................................. 9

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Planned Parenthood of S. Arizona v. Neely*,
  130 F.3d 400 (9th Cir. 1996) …………………………………………………………………  10

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007) ...............................................................................................................11

*Saladin v. City of Milledgeville*,
  812 F.2d 687 (11th Cir. 1987) ...............................................................................................14

*San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*,
  236 F.R.D. 491 (E.D. Cal. 2006).......................................................................................9, 17

*San Luis & Delta-Mendota Water Authority v. Jewell*,
  747 F.3d 581 (9th Cir. 2014) ...........................................................................................14, 19

*Scahill v. D.C.*,
  909 F.3d 1177 (D.C. Cir. 2018).......................................................................1, 11, 16, 17

*St. Bernard Par. Gov't v. United States*,
  143 Fed. Cl. 676 (2019).................................................................................................11, 17

*U. S. for Use of Atkins v. Reiten*,
  313 F.2d 673 (9th Cir. 1963) ...............................................................................................10

*U.S. ex rel. Gadbois v. PharMerica Corp.*,
  809 F.3d 1 (1st Cir. 2015) .....................................................................................................11

*Waldorf v. Shuta*,
  142 F.3d 601 (3d Cir. 1998) .................................................................................................19

*Yates v. Auto City 76*,
  299 F.R.D. 611 (N.D. Cal. 2013) ...........................................................................9, 10, 16, 18

**Statutes**

15 U.S.C. § 2605 ..............................................................................................................................15

15 U.S.C. § 2620 ......................................................................................................................2, 5, 15

Federal Rule of Civil Procedure 15(a)............................................................................................10

Federal Rule of Civil Procedure 15(d) ....................................................................................passim

Federal Rule of Civil Procedure 60(b) .............................................................................................6

# I.      <u>INTRODUCTION</u>

On August 6, 2020, the Court invited Plaintiffs to amend their pleadings to, in part, "remove the complicated standing issues with respect to the current named plaintiffs." *Id.* at 20:14-17; ECF No. 262 at 5:10-18. Later, in response to a motion from EPA, the Court ordered that Plaintiffs file a motion seeking leave to amend their pleadings, and directed that "[i]n seeking leave to amend, Plaintiffs will have to justify their request, including addressing why any attempt to allege a new basis for standing . . . would not be futile." ECF No. 277 at 4:13-15. Now that EPA has denied Plaintiffs' supplemental petition, Plaintiffs hereby move for leave to amend their complaint with the attached supplemental pleadings.

The central criticism that the EPA has levied against the allegations in Plaintiffs original complaint, and the trial evidence that flowed therefrom, is that none of Plaintiffs' standing witnesses are subject to the neurodevelopmental risks of early-life fluoride exposure that were the focus of Plaintiffs' trial evidence. While several of the Plaintiffs are mothers of school-age children ranging in ages from 8 to 16 (*see* ECF No. 100-3 ¶ 3; ECF No. 100-5 ¶ 4.), EPA has repeatedly suggested that standing would require a woman who is pregnant, actively seeking to become pregnant, or the parent of a recently born child. ECF No. 133 at 14:9-17; ECF No. 248 at 2:2-7.

Although Plaintiffs' standing declarants were not pregnant or seeking to become pregnant at the time this litigation commenced, this is no longer the case. As set forth in the Supplemental Complaint, Food & Water Watch member Jessica Trader (a standing declarant at trial who was identified in the original complaint) conceived a child in or about December 2020 and is now three months pregnant and intending to have two more children. Although the general rule is that standing must exist at the commencement of litigation, the Ninth Circuit (as with most other federal circuits) has recognized that there are exceptions to this rule. *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1046 (9th Cir. 2015). One of these exceptions is that if facts arise during the pendency of the litigation that cure an existing standing defect *and* these newly arising facts are set forth in a supplemental pleading under Federal Rule of Civil Procedure 15(d). *Id.* at 1044-48; *Scahill v. D.C.*, 909 F.3d 1177, 1184 (D.C. Cir. 2018); *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5–6 (1st Cir. 2015). It is thus well established that Rule 15(d) may be used to cure standing defects, and, indeed, the use of Rule 15(d) to cure defects is strongly favored,

particularly where, as here, it will promote judicial economy by preventing the needless waste of judicial resources with a lengthy and redundant second lawsuit. *Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988).

Accordingly, as set forth herein, even if Plaintiffs had a standing defect at the commencement of litigation (which Plaintiffs dispute), the newly arising facts regarding Jessica Trader's pregnancy are sufficient to cure this defect. Plaintiffs thus move for leave to file these supplemental pleadings so that this case, which has already gone to trial, may be resolved on the merits rather than a technicality, and so that neither the Court nor the parties will need to waste extensive resources on an unnecessary second litigation.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On November 22, 2016, multiple petitioners submitted to EPA a citizen petition under Section 21 of the Toxic Substances Control Act ("TSCA"; 15 U.S.C.A. §2620(a)), requesting that the agency prohibit the addition of fluoridation chemicals to drinking water in order to protect the public, including susceptible subpopulations, from fluoride's neurotoxic risks. After EPA denied this petition in February 2017, Plaintiffs timely commenced this suit to challenge that denial by filing a complaint in this Court. ECF No. 1.   While certain individuals were identified as plaintiffs, others—like Jessica Trader— were identified as members of organizational plaintiffs like Food & Water Watch. *See, e.g.,* ECF No. 1, ¶¶ 32-36.   Although the Court issued several scheduling orders (ECF No. #3, 14, 58, 107, 131), none set a deadline for amending pleadings, but in any event, Plaintiffs never amended their original complaint.

This Court denied EPA's motion to dismiss that original complaint on December 21, 2017 (ECF No. 42), and in 2019, the agency moved for summary judgment, claiming, among other things, that because the Plaintiffs could not "claim 'neurotoxic injury or credible threat of neurotoxic injury' as a result of their exposure to fluoridation chemicals," they lacked Article III standing.   ECF No. 156 at 5:3-7.   EPA also argued that, to have standing, the facts and injuries alleged in the complaint had to "track" those alleged in the petition to the agency.   *Id.* at 6:2-5, 7:1-2. On December 30, 2019, the Court denied the agency's motion, and in so doing, expressly rejected EPA's prudential standing contention that "if petitioners do not suffer the unreasonable risk presented to EPA, then they do not have a cause of action to challenge EPA's denial of their petition in Court." *Id.* at 5:21-6:1. As the Court noted, "[t]here is no language in the statute suggesting a limitation on who may proceed with such a lawsuit." *Id.* at 5:22-23. The Court further

concluded that Plaintiffs had set forth enough evidence to establish a "plausible inference" that the headaches suffered by Food and Water Watch member Julie Simms had been caused by her exposure to fluoridated water. *Id.* at 9:3-7.

The case was then tried to the Court in June 2020. In its closing argument, EPA's counsel argued that the Plaintiffs lacked standing because "none of these plaintiffs are or were pregnant or alleged future plans for pregnancy.  None have infants or even small children. And none of these plaintiffs complain of a concrete reasonable fear of cognitive deficits." ECF No. 245, Tr. 6/17/20 at 1067:21-24. Similarly, in a post-trial order, the Court explained that Plaintiffs' evidence at trial "focused overwhelmingly, if not exclusively, on the contention that fluoride poses a risk of *neurodevelopmental* harm," yet noted that none of the Plaintiffs claim to have suffered harm from developmental (i.e., early life) exposures. ECF No. 262 at 1:14-2:12. Elsewhere the Court has noted, "it's obvious who would have standing." ECF No. 245 at 1135:25-1136:2.

With respect to the merits of Plaintiffs' Section 21 claim, the Court observed that Plaintiffs had presented "serious evidence" that raises "serious questions" about the neurological risks posed by fluoridation chemicals. ECF No. 245, Tr. 6/17/20 at 1133:5-23. However, because Plaintiffs principally relied on recent studies funded by the National Institutes of Health (the "ELEMENT" and "MIREC" studies) that were not yet available at the time of the original petition, the Court noted that the evidence at trial was a "substantially different body of evidence" than EPA had considered in denying the petition. *Id.* at 1130:23-1131:4. Further, the Court noted that EPA had "applied a standard of causation which, from my read of TSCA, is not accurate. . . . It's not the proper standard." *Id.* at 1131:5-9, 1132:20-21, 1137:20-22.

In light of the aforementioned issues at trial, the Court asked the parties to meet and confer "to discuss possibilities of either an amended petition and reconsideration by the EPA or, if necessary, start a new petition, since it's a fairly rapid process, and to hold my decision and my adjudication of this in abeyance and give the agency a chance to relook. And, hopefully, relook at it under the proper standard of review." *Id.* at 1131:17-1132:21, 1142:4-9. The Court called on the EPA to give the evidence a "serious look" and "meaningful substantive review." *Id.* at 1137:20-22, 1142:4-9.

The parties responded to the Court's request in a joint statement which was followed by an August 6, 2020 hearing. At the hearing, the Court directed the Plaintiffs to submit a new petition to the EPA to include the new evidence produced at trial, any revised National Toxicology Program ("NTP") report, and to attempt to "remove the complicated standing issues with respect to the current named plaintiffs and those who filed the original petition." ECF No. 264 at 20:14-17; ECF No. 262 at 5:10-18. Until that had been accomplished, the Court would hold the case in abeyance:

> So that's what I'm going to do. I'm going to hold the case in abeyance now. I'm going to indicate that I am opening -- I will – I'm going to reopen, be willing to reopen the evidence for things that arise, intervening developments, intervening studies, intervening things. And if necessary, to resolve any standing or jurisdictional issues, if there's some pleading questions or evidentiary questions that need to be looked at.

*Id.* at 35:12-19.  The Court reiterated that if the EPA did not take any action on the Plaintiffs' new petition, "we could formally require to you file a new complaint and then I consolidate the cases, or you just simply amend the complaint. Frankly, I don't see why one or the other has to be done. The simple way is to amend the complaint." *Id.* at 33:11-17. In the meantime, the Court held the proceedings in abeyance and left the trial record open because "we may need to take some additional evidence."  *Id.* at 22:3-6.

These decisions were reflected in a formal order dated August 10, 2020, which provided further direction:

> The Court urges Plaintiffs to include in the new petition as much underlying data and as many calculations as possible (including those of Dr. Grandjean) and to include as much of the information as might be found in a systematic review as practicable. The Court likewise urges the EPA to give such a petition due consideration on the merits in light of the substantial scientific evidence proffered at trial. The EPA is urged *not* to deny the petition simply because a complete set of raw data from the studies cited in the petition is not provided or available. Should the EPA deny the new petition, the Court will permit amendment of the complaint herein and consider permitting supplementation of the record in this case to account for, *e.g.*, new evidence contained in the new petition or new studies published since the trial in this case.

ECF No. 262 at 5:10-18 (emphasis in original). As this Court would later confirm, it issued this "abeyance order in the first place" so that EPA is "able to fully reconsider its denial of Plaintiffs original petition." ECF No. 277 at 2:9-11.

In September 2020, the NTP released its revised systematic review of the fluoride neurotoxicity literature, which concluded, among other things, that fluoride exposure was "*presumed to be a cognitive neurodevelopmental hazard to humans*" because of the "consistent and robust pattern of findings in human studies across several different populations demonstrating that higher fluoride exposure (e.g., >1.5 mg/L in drinking water) is associated with lower IQ and other cognitive effects in children."[1] ECF No. 270-4 at 14 of 321. Later, in November 2020, a draft manuscript of a pooled benchmark dose analysis of the NIH-funded ELEMENT and MIREC studies was released, which found that the joint data from the studies supported a BMDL well below the exposure levels in fluoridated areas. ECF No. 270-7.

Shortly thereafter, Plaintiffs submitted a supplemental petition to EPA, which they filed with the Court on November 5. ECF No. 270 and 270-1.[2] As noted in the Plaintiffs' November 5 filing, EPA has treated petitions seeking the same relief as a prior petition as a "motion to reconsider." ECF No. 270 at 2:11-19; ECF No. 270-1 at 1-2. The supplemental petition that Plaintiffs submitted, which sought the same relief as the initial petition, thus afforded EPA the opportunity that the Court had urged to reconsider its denial of the original petition in light of the "substantial scientific evidence proffered at trial." ECF No. 245 at 1142:9; ECF No. 262 at 5:12-14.

Consistent with the Court's directives, the Plaintiffs' supplemental petition included a systematic review (in the form of the NTP's revised monograph), together with the trial record, including the trial transcripts, exhibits, expert declarations, written discovery materials, and undisputed facts. ECF No. 270-1 at 4 n.3; ECF No. 270-3; ECF No. 270-4; ECF No. 270-7; ECF No. 270-8. The Plaintiffs also submitted the pooled Benchmark Dose analysis of the ELEMENT and MIREC studies, including the data underlying

---

[1] On February 9, 2021, the National Academy of Sciences Engineering and Medicine (NASEM) issued its peer review assessment of the NTP review. See https://www.nationalacademies.org/event/10-19-2020/review-of-the-revised-ntp-monograph-on-fluoride-exposure-and-neurodevelopmental-and-cognitive-health-effects-meeting-2. The NASEM recommended that NTP present its analysis more clearly and transparently, including making it more clear that the NTP's hazard assessment is not equipped to make determinations of risk of fluoride below 1.5 mg/L because "drawing conclusions about the effects of low fluoride exposure (less than 1.5 mg/L) would require a full dose-response assessment." p. 14. Plaintiffs generally agree with NASEM on this latter point, as explained in Plaintiffs' supplemental petition. ECF No. 270-1 at 8. Importantly, none of the NASEM's recommendations should have any bearing on NTP's hazard conclusion that fluoride is a presumed neurotoxicant in human beings.

[2] Plaintiffs filed a supplemental petition rather than a new petition based on their apprehension that a new petition under 15 U.S.C. § 2620 would require a new *de novo* proceeding, and thereby an entirely new, lengthy and costly litigation.

the analysis so that EPA could verify the findings. ECF No. 270-1 at 11. Plaintiffs' supplemental filing also set forth the proper standard to be used in evaluating risk (based on EPA's own admissions at trial), and explained how the trial evidence and NTP systematic review negated EPA's justifications for denying the original petition. ECF No. 270-1 at 2-4. The supplemental petition also explained that Petitioner Organizations, including Plaintiff Food & Water Watch, have members who live in fluoridated areas who are pregnant and/or actively seeking to become pregnant:

> Petitioner Organizations have many members of childbearing age living in fluoridated areas who are subject to the risks identified by the NIH-funded prospective studies. The members of Petitioner Organizations include women who are currently pregnant, women who are actively seeking to become pregnant, and/or mothers of infants. This includes, but is not limited to, Food & Water Watch members Jennifer Baugh, Jacqueline Devereaux, Brooke Errett, Leah Garland, Hanna Rodgers, Olivia Stancil, Whitney Stolman, **Jessica Trader**, and Chassity Woolums. In light of the science linking early-life exposure to fluoridated water to adverse neurodevelopmental effects, each of these members is taking steps to limit their child's exposure to fluoride, including through purchasing filtered and bottled water.

ECF No. 270-1 at 11.

On October 28, 2020—almost 80 days after the Court issued its August 10 "abeyance" order—the EPA sought relief from that order under Federal Rule of Civil Procedure 60(b), claiming that because the Court had allegedly recognized that the Plaintiffs lacked standing, it should have dismissed the case, not directed the Plaintiffs to re-submit a petition to the agency. ECF No. 277 at 1:25-28. The Court denied the motion, finding it procedurally improper and explaining that "the Court has not yet ruled on whether Plaintiffs have standing or not, so there is nothing to reconsider." *Id.* at 2:12-4:2, 3:18-19. Noting that Plaintiffs' supplemental petition identified additional members of Plaintiff organization, Food & Water Watch, who were pregnant, actively seeking to become pregnant, and/or mothers of infants, the Court granted EPA's request for relief only insofar as it requested that Plaintiffs "seek leave to amend their complaint should the EPA deny their supplemental petition" to demonstrate why "any attempt to allege a new basis for standing . . . would not be futile." *Id.* at 4:13-15.

On January 19, 2021, EPA responded to Plaintiffs' supplemental petition. After acknowledging that it had discretion to reopen the administrative record and consider the new evidence, EPA declined to do so, citing the agency's many other priorities, including three risk evaluations requested by

manufacturers. ECF No. 278-1 at 2.  Though this Court had denied EPA's earlier motion for summary judgment after expressly finding that "a petitioner is not required to comply with the processes and criteria outlined in [TSCA] Section 6 and 26 when submitting a petition pursuant to Section 21" (*see* ECF No. 156 at 19:13-16, 21:23-24), the EPA declined to reconsider the Plaintiffs' supplemental petition because—despite the inclusion of NTP's 300+ page systematic review—it did not "satisfy the legal requirements necessary for EPA to initiate a proceeding for a section 6(a) rulemaking." ECF No. 278-1 at 2, 3.   EPA also cited agency guidance that describes the quality of information to be submitted in support of a Section 21 petition. *Id.* at 3. The EPA did not note, however, that the cited guidance states:

* it "does not impose any legally binding requirements"';

* "EPA may take action that is at variance with the recommendations in this document and may change them at any time without public notice"; or

* the "guidance avoids being prescriptive" as EPA's "goal is to ensure that external parties have flexibility to use the best available science by adapting and keeping current with changing science."[3]

With respect to the trial evidence, EPA stated (without reopening the administrative record to formally find) that its "position concerning the evidence presented at trial has not changed." ECF No. 278-1 at 4. Despite conceding at trial that proof of causation under the condition of use is not a pre-requisite for a risk determination (ECF No. 197 at 4:4-8; ECF No. 244, Tr. 6/16/20 at 985:15-987:19; ECF No. 245, Tr. 6/17/20 at 1109:5-8), EPA's letter explains that the purportedly inconsistent evidence of harm at 0.7 mg/L negates a hazard conclusion. ECF No. 278-1 at 4. Further, EPA declined to consider either the NTP's revised systematic review or pooled benchmark dose analysis because both studies are still in draft form. *Id.* at 5-6. Yet, in the same letter, EPA relied upon an unpublished study from Spain which the Agency stated "contradicts the findings of the MIREC and ELEMENT studies." *Id.* at 6-7.

### III.    FACTUAL ALLEGATIONS IN SUPPLEMENTAL COMPLAINT

Pursuant to the Court's direction that Plaintiffs file either a new or amended complaint if EPA denies the re-submitted petition (*see, e.g.,* ECF No. 264 at 33:11-20), Plaintiffs hereby file the instant

---

[3] EPA introduced this guidance as Exhibit 538 at trial.

motion for leave to amend their complaint with supplemental pleadings. The proposed Supplemental Complaint, which is attached hereto as Exhibit A, adds the following three categories of allegations regarding occurrences that post-date the filing of the original complaint:

**Procedural History of Case:** Allegations describing this Court's post-trial orders and directions.

**Jessica Trader's Pregnancy:** Allegations describing the recent change in circumstances for Jessica Trader, a Food & Water Watch member who was identified as a person suffering from dental fluorosis (as a result of over-exposure to fluoride) in both the original complaint and in Plaintiffs' Trial Exhibit 57. ECF No. 1 ¶ 32; ECF No. 100-4. As set forth in the Supplemental Complaint, in the fall of 2020 Jessica began seeking to have a baby with her fiancé. Suppl. Compl. ¶ 40. In or about December 2020, Jessica conceived her first child and is currently three months pregnant. *Id.*

Jessica lives in a city that adds fluoridation chemicals to the water. *Id.* ¶¶ 39. In light of the scientific research linking prenatal and early childhood fluoride exposure to adverse neurological effects, including recent peer-reviewed studies funded by the NIH, Jessica is concerned about the neurodevelopmental effects that fluoridation chemicals may have on her child. *Id.* ¶ 41. To protect against this risk, Jessica is incurring expenses (e.g., purchasing non-fluoridated water) to reduce her child's *in utero* exposure to fluoridated tap water, and intends to continue doing so postnatally. *Id.* ¶ 42.

Jessica is currently 34 years old and intends to have two more children. *Id.* ¶ 43. So long as EPA continues to permit fluoridation chemicals to be added to water, Jessica intends to continue incurring expenses to protect her children both prenatally and postnatally. *Id.* Jessica would incur these expenses to protect her children even if fluoridated water posed no direct risk to herself. *Id.* ¶ 44. Despite incurring these ongoing expenses, however, there is no way for Jessica to fully eliminate her children's exposure to fluoridation chemicals due to these chemicals' ubiquity in processed foods and beverages made in the U.S. and lack of labeling. *Id.* ¶ 45.

**NIH-Funded Studies:** Allegations conforming to the evidence introduced at trial regarding the findings of the National Institute of Health's recent prospective studies on the impact of early life fluoride exposure on neurodevelopment, and the vulnerability of the fetal brain to fluoride exposure.

# IV.   LEGAL FRAMEWORK

### A.   Supplemental Pleadings Promote Judicial Economy by Avoiding the Cost and Delay of Separate Actions and Are Permitted with "Extreme Liberality"

Courts are invested with "broad discretion" and "broad power" to permit supplemental pleadings under Federal Rule of Civil Procedure 15(d). *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988); *U. S. for Use of Atkins v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963); *Yates v. Auto City 76*, 299 F.R.D. 611, 613 (N.D. Cal. 2013). As the Ninth Circuit has explained, "[t]he goal of Rule 15 is to promote judicial efficiency by avoiding 'the cost, delay and waste of separate actions, which must be separately tried and prosecuted.'" *Keith*, 858 F.2d at 473. By prioritizing substance over form, Rule 15(d) helps "facilitate a decision on the merits" rather than technicalities; the Rule reflects "a policy of favoring amendments . . . with extreme liberality." *Day v. Kaiser Aluminum & Chem. Corp.*, 905 F.2d 1540, *3 (9th Cir. 1990); *see also Malem Med., Ltd. v. Theos Med. Sys., Inc.*, No. C-13-5236-EMC, 2015 WL 270092, at *4 (N.D. Cal. Jan. 20, 2015) ("[B]oth supplementation and amendment are 'favored,' and leave should be liberally given, even if there was some undue delay . . . .").

Supplemental pleadings are "[s]o useful . . . and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears, though the court has the unquestioned right to impose terms upon their allowance when fairness appears to require them." *Keith*, 858 F.2d at 473 (quoting *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir.1963)); *see also Oregon Nat. Desert Ass'n v. McDaniel*, 282 F.R.D. 533, 536 (D. Or. 2012) ("Courts apply Rule 15(d) to further judicial economy and convenience and liberally construe it absent a showing of prejudice to defendant.").

The interests of judicial economy that Rule 15(d) promotes are so favored that courts have permitted supplementation in actions that had already reached final disposition. See *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 403 (9th Cir. 1997) ("Plaintiffs correctly note that in a handful of cases, parties have been permitted to supplement complaints that had been the bases of earlier actions despite the fact that those actions had reached final disposition."); *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 236 F.R.D. 491, 501-02 (E.D. Cal. 2006) (permitting supplementation despite in case that was "effectively over" with "the only recent activity" being "litigation concerning attorneys fees").

1

2

**B.  The Party Opposing Supplementation Bears the Burden of Showing Why Leave Should *Not* Be Granted**

3

4

5

6

7

8

The standard for granting or denying a supplemental pleading under Rule 15(d) is "the same as the standard for granting or denying [an amended complaint] under Rule 15(a)." *Yates*, 299 F.R.D. at 614 (quoting *Athena Feminine Techs., Inc. v. Wilkes*, No. No. C 10–4868 SBA, 2013 WL 450147 at \*2 (N.D. Cal. Feb. 6, 2013)). In considering whether to permit a supplemental pleading, "a court's focus is on judicial efficiency," but "factors such as prejudice to the defendant, laches, or futility may weigh against allowing a supplemental pleading." *Yates*, 299 F.R.D. at 613-14.

9

10

11

12

13

14

15

16

17

18

19

As with motions to amend under Rule 15(a), the party opposing leave to amend under 15(d) bears the burden of showing why leave should *not* be granted. *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water District*, Case No. 13-cv-883-JGB, 2020 WL 5775174 at \*2 (C.D. Cal. July 8, 2020) ("The party opposing amendment bears the burden of showing prejudice, unfair delay, bad faith, or futility of amendment."); *Cabell v. Zorro Prods. Inc.*, No. 5:15-CV-00771-EJD, 2016 WL 9180435, at \*3 (N.D. Cal. Sept. 23, 2016) ("The party opposing a motion to supplement bears the burden of showing prejudice."); *Jones v. Ryan*, No. CV-13-01032-TUC-RM, 2015 WL 13684705, at \*1 (D. Ariz. Nov. 12, 2015) ("The party opposing amendment bears the burden of showing that these factors are present."); *Aristocrat Techs. v. Int'l Game Tech.*, No. C-06-03717 RMW, 2010 WL 2486194, at \*1 (N.D. Cal. June 15, 2010) ("The party opposing the amendment bears the burden of showing why leave to amend should not be granted.").

20

21

**C. Under Rule 15(d), Standing Defects May Be Cured by Events that Occur *After* the Complaint Was Filed**

22

23

24

Federal Rule of Civil Procedure 15(d) permits "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented."[4]

25

26

27

28

---

[4] *See U. S. for Use of Atkins v. Reiten*, 313 F.2d 673, 674 (9th Cir. 1963) ("Since the additional allegations in appellant's 'amended complaint' related to events which had 'happened since the date of the pleading sought to be supplemented,' Rule 15(d), Federal Rules of Civil Procedure, was applicable."); *Brook v. Sing*, No. CIV S-09-1364 GEB, 2012 WL 78417, at \*1 (E.D. Cal. Jan. 10, 2012) ("Amended pleadings relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading. Supplemental pleadings deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings.").

Fed R. Civ. Proc. § 15(d) (emphasis added). Rule 15(d) permits supplementation "even though the original pleading is defective in stating a claim or defense." *Id.* As the Advisory Committee has explained, Rule 15(d) seeks to "avoid needlessly remitt[ing] [plaintiffs] to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief." Fed. R. Civ. Proc 15(d) cmts.

While Rule 15(d) is "phrased in terms of correcting a deficient statement of 'claim' or a 'defense,' a lack of subject-matter jurisdiction should be treated like any other defect for purposes of defining the proper scope of supplemental pleading." *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th Cir. 2015). As the Ninth Circuit has explained, the general principle that "'subject matter jurisdiction must exist as of the time the action is commenced' . . . . does not extend to supplemental pleadings filed pursuant to Fed. R. Civ. P. 15(d)." *Id.* at 1046 (quoting *Morongo Band of Mission Indians v. California State Board of Equalization*, 858 F.2d 1376 (9th Cir. 1988)). Thus, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, the courts look to the amended complaint to determine jurisdiction." *St. Bernard Par. Gov't v. United States*, 143 Fed. Cl. 676, 680 (2019) (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007)). Consistent with this, "[t]he Supreme Court has confirmed that supplemental pleadings can be used to cure subject matter jurisdiction deficiencies." *Id.* (citing *Mathews v. Diaz*, 426 U.S. 67, 75 (1976)).

For the foregoing reasons, most federal circuit courts, including the Ninth Circuit, have held that facts arising after the commencement of litigation can cure standing defects that would otherwise exist so long as these newly arising facts are alleged in a supplemental pleading. *St. Bernard*, 143 Fed. Cl. at 683-89 (discussing cases); *Scahill v. D.C.*, 909 F.3d 1177, 1184 (D.C. Cir. 2018) ("[W]e hold that a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint."); *Northstar Fin. Advisors*, 779 F.3d at 1043-48; *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5–6 (1st Cir. 2015) (citing cases). As the D.C. Circuit Court of Appeals has explained, "the alternative approach," which a minority of courts have adopted, "forces a plaintiff to go through the unnecessary hassle and expense of filing a new lawsuit when events subsequent to filing the original complaint have fixed the jurisdictional problem." *Scahill*, 909 F.3d at 1184.

## V.   ARGUMENT

**A.   Assuming *Arguendo* that There Were Standing Defects in Plaintiffs' Original Complaint and Trial Evidence, These Defects Have Been Cured by Newly Arising Facts**

It is effectively undisputed in this case that a pregnant woman living in a fluoridated area would have standing to bring a citizen petition against EPA over the neurotoxic risks posed by fluoridation chemicals. At the hearing on EPA's motion for summary judgment, the Court asked EPA's counsel "what's an example, a hypothetical, of somebody who would satisfy [standing]?" ECF No. 133 at 14:9-17. Counsel responded "I think one who could satisfy standing is someone who is an expectant parent who – who could be consuming fluoridated water, and, and that could have potential effects on the baby she's carrying in utero." *Id.* at 14:12-15. Consistent with this, EPA's post-trial standing brief criticized Plaintiffs' standing evidence on the following grounds:

> the Plaintiffs in this action have not identified a single individual Plaintiff or member of a Plaintiff organization who can credibly fear the neurotoxic harms of reduced IQ or ADHD. Not a single declarant is a member of the alleged susceptible subpopulations. None has infants or young children of any age of concern. ***It is undisputed no standing declarant is pregnant, expects to be pregnant, or even expressed a desire to become pregnant***.

ECF No. 248 at 2:2-7 (emphasis added). EPA has thus implicitly, if not explicitly, agreed that Plaintiffs would have standing in this case if they have a declarant who is pregnant or is seeking to become pregnant. Similarly, while the Court has not yet ruled on Plaintiff's standing evidence, the Court has indicated that a person who is subject to the neurodevelopmental risks of fluoride (e.g., a pregnant woman) would meet the standing threshold. ECF No. 262 at 1-3; *see also* ECF No. 245, Tr. 6/17/20 at 1135:25-1136:2 ("[I]t's obvious who would have standing, where there wouldn't be a question.").

It is true that none of the standing witnesses that Plaintiff named in the original Complaint were pregnant at the time the litigation commenced. It is also true that none of these witnesses were pregnant or seeking to become pregnant at the time of trial. However, in the fall of 2020, Food and Watch member Jessica Trader—a standing declarant who was identified in the original complaint (ECF No. 1 ¶ 32), and whose declaration was submitted into evidence at trial (Pls' Trial Ex. 57)—began seeking to have a baby with her fiancé. In or about December 2020, Jessica became pregnant and is currently three months pregnant. Jessica, who lives in a fluoridated area, is incurring ongoing expenses (e.g. purchasing fluoride-

free bottled water) to protect her child from the neurological risks posed by fluoride. While Jessica has concerns about fluoridated water's effect on her own health (given her history of over-exposure as reflected by her dental fluorosis diagnosis), even if she had no concerns for her own health, she would still take measures to minimize her exposure in order to protect her unborn child. Jessica and her fiancé intend to have two more children and Jessica intends to continue incurring expenses to reduce her children's exposure to fluoridation chemicals for as long as they are added to water. These new facts, which arose after the commencement of litigation, are clearly sufficient to establish standing, as even EPA has recognized throughout this litigation. ECF No. 133 at 14:9-17.

While EPA has agreed that a person in Jessica's position would have standing, Plaintiffs will now set forth the doctrinal basis for how Jessica provides standing for the Plaintiffs.

Jessica Trader is a member of Food & Water Watch, which was an original petitioner to EPA in 2016, and an original Plaintiff in this action. For an organization like Food & Water Watch to have associational or representational standing, it must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[5] *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019). EPA has never disputed in this litigation that the second and third requirements have been satisfied, so Plaintiffs will focus here on the first prong.

Jessica Trader has standing to sue EPA in her own right because she has suffered an "injury in fact" that is fairly traceable to the challenged EPA action and is likely to be redressed by a favorable decision.[6] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). One of the injuries-in-fact that Jessica has suffered is the credible threat of neurodevelopment harm that her unborn child faces from exposure to the fluoridation chemicals added to her city's water. The Ninth Circuit has repeatedly recognized that a "credible threat" of an injury is sufficiently concrete to constitute an injury in fact under Article III, meaning that the injury

---

[5] There is no requirement that an organization's members be added as individual plaintiffs as such a requirement would defeat the purpose of representational standing.

[6] In a multiple plaintiff case, only one plaintiff need have standing. *Preminger v. Peake*, 552 F.3d 757, 764 (9th Cir. 2008).

need not yet have manifested itself.[7] The degree of threatened risk sufficient to support standing "is qualitative, not quantitative, in nature,'" and the qualitative bar is modest.[8] For example, in cases involving exposures to environmental toxicants, involuntary exposure to the toxicant is sufficient, by itself, to create an injury-in-fact, irrespective of whether such exposure has been shown to pose a risk of harm.[9] The "substantial scientific evidence" that Plaintiffs' experts presented a trial on the neurodevelopmental risks of early-life fluoride exposure, which included a series of NIH-funded studies that "even EPA acknowledges . . . are the highest quality, most reliable studies to date on the subject" (ECF No. 262 at 4-5), easily satisfies the credible threat threshold for purposes of standing.[10] Moreover, this credible threat is causing a financial injury to Jessica in the form of ongoing economic costs to reduce her child's risk, which is a separate and distinct injury-in-fact. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-154 (2010) (holding that economic costs incurred by farmers seeking to avoid possible contamination by defendant's genetically-engineered crops is sufficiently concrete to constitute an injury-in-fact).

Jessica Trader's injury-in-fact (and, by extension, Food & Water Watch's injury-in-fact) is fairly traceable to the challenged EPA conduct at issue in this case. As the Supreme Court has made clear, government conduct for purposes of standing includes both government action and *inaction*. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992). Here, there is no dispute that EPA has the authority under TSCA

---

[7] *See, e.g.*, *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 645 (9th Cir. 2014) ("'[A] credible threat of harm is sufficient to constitute actual injury for standing purposes, whether or not a statutory violation has occurred.'"); *Covington v. Jefferson Cnty.*, 358 F.3d 626, 641 (9th Cir. 2004) ("A credible threat of risks to [plaintiffs'] home yields a loss of enjoyment of property. That is enough for injury in fact . . . ."); *Central Delta Water Agency v. U.S.*, 306 F.3d 938, 950 (9th Cir. 2002) ("[A] credible threat of harm is sufficient to constitute actual injury for standing purposes . . . ."); *Hall v. Norton*, 266 F.3d 969, 976 (9th Cir. 2001) ("[E]vidence of a credible threat to the plaintiff's physical well-being from airborne pollutants falls well within the range of injuries to cognizable interests that may confer standing.").

[8] *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003); *Association of Community Organizations for Reform Now v. Fowler*, 178 F.3d 350, 357–58 (5th Cir. 1999); *Saladin v. City of Milledgeville*, 812 F.2d 687, 691 (11th Cir. 1987).

[9] *E.g.*, *Natural Resources Defense Council v. United States Environmental Protection Agency*, 735 F.3d 873, 875-6, 878 (9th Cir. 2013) (holding that plaintiffs challenging an EPA pesticide regulation had standing because the regulation would unavoidably cause their children to be exposed to the pesticide, without requiring evidence that the exposure was actually associated with harm); *New York Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 325–26 (2d Cir. 2003) (holding that plaintiffs in an air pollution case had standing based on the possibility of exposure, without requiring facts showing that the air pollution levels would actually be sufficient to present a risk).

[10] For summaries of the trial evidence on neurodevelopmental risks, including the NIH-funded studies, see: ECF No. 198-1 (Hu Decl.); ECF No. 198-2 (Lanphear Decl.); ECF No. 198-3 (Grandjean Decl.); ECF No 202-1 (Thiessen Decl.); ECF No. 256 ¶¶ 77-494 (Pls' Proposed Findings of Fact).

---

to ban or otherwise regulate the addition of fluoridation chemicals to drinking water.[11] 15 U.S.C. § 2605(a) (providing EPA the authority to "prohibit[] or otherwise restrict[]" the "particular use" of chemical substances that pose an unreasonable risk to human health). The credible threat that Jessica Trader faces (and by extension Food & Water Watch) is a direct result of EPA's failure to exercise its authority under TSCA to ban or otherwise regulate fluoridation chemicals (i.e., EPA inaction). The traceability prong is thus satisfied.

Jessica Trader's injury is redressable through a favorable decision by this Court. As courts have noted, the redressability and traceability analyses "often replicate one another, particularly in cases where, as here, the relief requested is merely the cessation of illegal conduct." *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 705–06 (D.C.Cir.1988) (citing cases). A favorable ruling by this Court would require EPA "to initiate a proceeding for the issuance of a rule under section 2605(a)," which will, in turn, require EPA to ensure that fluoridation chemicals "no longer present" an unreasonable risk. 15 U.S.C. §§ 2605(a) & 2620(b)(4)(B)(ii). While there is no way to predict with certainty what the outcome of EPA's rulemaking process will be, certainty of a favorable administrative result is *not* required for redressability. *See Citizens for Better Forestry v. U.S. Dept. of Agriculture*, 341 F.3d 961, 975–76 (9th Cir. 2003) (stating that a petitioner "who asserts the inadequacy of a government agency's decision . . . need not show that further analysis by the government would result in a different conclusion"); *Catron County Bd. Of Com'rs, New Mexico v. United States Fish & Wildlife Service*, 75 F.3d 1429, 1433 (10th Cir. 1996) (describing as "immaterial" the possibility that an administrative proceeding might not provide the desired outcome); *Hodel*, 839 F.2d at 705–06 ("A party seeking judicial relief need not show to a certainty that a favorable decision will redress his injury. A mere likelihood will do."). If certainty of a favorable administrative result were required for standing, *no Section 21 plaintiff would ever have standing*, since the only relief the statute provides is the commencement of a rulemaking proceeding. *See Natural Resources Defense Council v. U.S. Environmental Protection Agency*, 542 F.3d 1235, 1245-6 (9th Cir. 2008) ("[O]ne cannot

---

[11] A Memorandum of Understanding between the EPA and FDA specifically vests EPA with the authority under TSCA "to regulate direct and indirect additives to drinking water as chemical substances and mixtures." MOU 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, available at: https://www.fda.gov/about-fda/domestic-mous/mou-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.

1
2
demonstrate the efficacy of regulations that have yet to be issued.'"). Jessica Trader's injury (and by extension Food & Water Watch's injury) is thus redressable by a favorable ruling from this Court.

3
4
5
6
7
8
Finally, while Jessica Trader was not pregnant or seeking to become pregnant at the commencement of this litigation, this "standing defect" can be cured by supplementing the pleadings to allege this newly arising fact.  *Scahill v. D.C.*, 909 F.3d 1177, 1184 (D.C. Cir. 2018) ("[W]e hold that a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint."); *Northstar Fin. Advisors*, 779 F.3d at 1043-48; *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5–6 (1st Cir. 2015) (same).

9
10
11
For the foregoing reasons, even if the Court were to disregard all of the allegations of injury-in-fact (e.g., headaches, dental fluorosis, etc) in the original complaint and the trial evidence related thereto,[12] the allegations of standing in the Supplemental Complaint are sufficient to establish standing.

12
13
**B.   Supplementing the Complaint Will Promote Judicial Economy by Avoiding the Need for a Second Lengthy and Duplicative Lawsuit**

14
15
16
17
18
19
20
21
22
23
24
In considering whether to permit a supplemental pleading, "a court's focus is on judicial efficiency." *Yates*, 299 F.R.D. at 613-14. This interest in judicial economy is implicated by the current motion, and strongly favors supplementation. As the Ninth Circuit has explained, "[t]o determine if efficiency might be achieved" by supplementing the pleadings, "courts assess 'whether the entire controversy between the parties could be settled in one action.'" *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997). In other words, if supplementing the pleading would avoid the need for a second lawsuit, Rule 15's interest in promoting judicial economy is satisfied. That is clearly the case here. Specifically, if supplementation is denied and the Court were to find that Plaintiffs do not have standing based on the allegations (and the trial evidence related thereto) in the original complaint, Plaintiffs would need to file a new Section 21 petition with the EPA, which EPA is virtually certain to deny given its reasoning in its recent response to the supplemental petition. After EPA's inevitable denial, Plaintiffs would need to file a

25
26
27
28
_____

[12] Plaintiffs maintain their position that the pleadings in the Original Complaint, and the trial evidence that flowed therefrom, were sufficient to establish standing, particularly given the relaxed standard in environmental toxicant cases. *See NRDC*, 735 F.3d at 875-6, 878; *Whitman*, 321 F.3d at 325–26. Rather than repeat their arguments regarding the original allegations here, Plaintiffs refer the Court to their prior briefing on the issue. ECF No. 247; ECF No.  251-1; ECF No. 256 ¶¶ 495-597 & 635-668.

whole new lawsuit in federal court seeking the same exact relief as here based on essentially the same evidence. Given that this litigation has consumed the better part of four years, with extensive fact discovery, expert discovery, and trial proceedings, repeating the litigation would be a substantial waste of judicial resources. This needless wasting of judicial resources is precisely what Rule 15(d) was designed to prevent. *See San Luis & Delta-Mendota Water Auth.*, 236 F.R.D. at 501 ("[A]llowing supplementation serves the interest of judicial economy, as consuming administrative and judicial resources of the court in not having to open a new case, randomly assigning it, going through the related-case low number analysis, and initiating Rule 16 scheduling as if this were a new case, do not serve judicial economy.").

### C.  Supplementing the Complaint with Newly Arising Facts on Standing Will Not Be Futile

As this Court has previously noted, "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 216 (N.D. Cal. 2015) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988)); *see also McColm v. San Francisco Hous. Auth.*, No. C 06-07378 CW, 2008 WL 5054203, at *1 (N.D. Cal. Nov. 24, 2008) (same). While it is ultimately EPA's burden to show that amendment would be futile,[13] even if it were Plaintiffs' burden to prove non-futility, Plaintiffs have met that burden for the reasons described above. In short, since the Supplemental Complaint alleges newly arising facts (e.g., Jessica Trader's pregnancy) that establish standing under even the EPA's constrained conception of the doctrine, any standing defect in the original complaint is cured. *See Scahill*, 909 F.3d at 1184 (holding that Rule 15(d) alleviates plaintiffs from going through "the unnecessary hassle and expense of filing a new lawsuit when events subsequent to filing the original complaint have fixed the jurisdictional problem"); *accord St. Bernard*, 143 Fed. Cl. at 683-89; *Northstar Fin. Advisors*, 779 F.3d at 1043-48; *PharMerica Corp.*, 809 F.3d at 5–6.

### D.  Supplementation Is Not Unduly Delayed and Would Not Be Unduly Prejudicial

To the extent that EPA contends that supplementation of the pleadings is unduly delayed or unduly prejudicial, it has the burden of demonstrating why. *Agua Caliente Band of Cahuilla Indians*, 2020 WL

---

[13] *Agua Caliente Band of Cahuilla Indians*, 2020 WL 5775174 at *2 ("The party opposing amendment bears the burden of showing prejudice, unfair delay, bad faith, or futility of amendment."); *accord Cabell*, 2016 WL 9180435, at *3; *Jones,* 2015 WL 13684705, at *1; *Aristocrat Techs.*, 2010 WL 2486194, at *1.

5775174 at *2; *Cabell*, 2016 WL 9180435, at *3; *Jones*, 2015 WL 13684705, at *1; *Aristocrat Techs.*, 2010 WL 2486194, at *1. Given the "extreme liberality" that Rule 15(d) encourages for permitting supplementation when doing so will promote judicial economy, EPA's burden is a heavy one. *Day v. Kaiser Aluminum & Chem. Corp.*, 905 F.2d at 1540. If EPA seeks to meet this burden in its response, Plaintiffs will address these issues more fully in their reply. In the meantime, Plaintiffs offer the following observations.

First, this motion is not unduly delayed. Undue delay is generally established where a party has repeatedly failed to amend their pleadings after being given an opportunity to do so. That is not the situation here. Plaintiffs did not believe there was a need, and thus had no intention, to amend their pleadings until the Court invited the Plaintiffs to do so at the post-trial hearing on August 6, 2020. ECF No. 264 at 33:11-17. Further, pursuant to the Court's guidance at that time, Plaintiffs held off on filing their amended pleadings until after EPA had issued a decision with respect to the supplemental petition. ECF No. 262 at 5:15-18 ("Should the EPA deny the new petition, the Court will permit amendment of the complaint herein and consider permitting supplementation of the record . . . ."). As the EPA did not issue its decision on the supplemental petition until January 19, 2021, the instant motion is not unduly delayed. Moreover, even *if* there had been undue delay, this Court has recognized that "undue delay by itself is not enough to deny an amendment to a pleading; there must also be, e.g., prejudice, bad faith, or futility." *Yates*, 299 F.R.D. at 614.

Second, supplementing the pleadings would not be unduly prejudicial to EPA. In evaluating whether supplementation would be prejudicial, courts have considered whether it would impose an excessive degree of additional discovery. *See LaSalvia v. United Dairymen of Arizona*, 804 F.2d 1113, 1119 (9th Cir. 1986) (finding no prejudice from amending pleadings based, in part, on the fact that "little additional discovery would be needed"); *Lyon*, 308 F.R.D. at 215 (finding no prejudice, in part, because "allowing the addition of the Bakersfield facility would require little additional discovery"). Here, as in *LasSalvia* and *Lyon*, supplementation would impose "little additional discovery" as the newly arising facts involve just one standing declarant. To the extent that EPA even felt the need to take Ms. Trader's deposition, it would likely be quite short given the very basic facts at issue. Moreover, to the extent that the EPA is concerned about the costs of taking the deposition, Plaintiffs would be prepared to pay for the

1    costs of the court reporting service. *Malem Med., Ltd. v. Theos Med. Sys., Inc.*, No. C-13-5236 EMC, 2015

2    WL 270092, at *3–4 (N.D. Cal. Jan. 20, 2015) (finding that any prejudice arising from taking deposition

3    as a result of supplementation was cured by plaintiffs' agreement to pay the costs).

4            Third, while the instant motion does come at a relatively advanced stage of this litigation (i.e., post

5    trial), courts have permitted supplementation even after reaching a final disposition so long as the court

6    retained jurisdiction. *See, e.g.*, *Neely*, 130 F.3d at 403 (citing cases); *San Luis & Delta-Mendota Water*,

7    236 F.R.D. at 501-02. The situation at bar compares favorably to these prior cases because no final

8    disposition has yet been rendered. Further, the Court has specifically stated that the record is not closed,

9    and that the Court might permit additional evidence. ECF No. 262 at 5:7-10; ECF No. 264 at 22:3-6, 35:12-

10   19.

11           Fourth, Plaintiffs anticipate that EPA will argue that the parties' stipulation on standing (ECF No.

12   101) precludes the possibility of supplementation. Plaintiffs, however, are filing this motion at the

13   invitation of the Court, which specifically suggested that Plaintiffs develop the record "to remove the

14   complicated standing issues with respect to the current named plaintiffs." ECF No. 264 at 20:13-22, 22:22-

15   23:3; *see also* ECF No. 277 at 4:13-15.. In fact, courts "are vested with *broad discretion* in determining

16   whether to hold a party to a stipulation of whether the *interests of justice* require that the stipulation be set

17   aside." *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709 (11th Cir.1987) (emphases added). Here, the

18   interests of justice do require that the stipulation be set aside, as the Court appears to have implicitly

19   recognized by inviting Plaintiffs to further develop their basis for standing.

20           A key factor for determining whether the interests of justice require setting aside a stipulation is

21   "the occurrence of intervening events since the parties agreed to the stipulation." *Waldorf v. Shuta*, 142

22   F.3d 601, 617–18 (3d Cir. 1998). Here, there is an intervening event: the pregnancy of Jessica Trader in

23   December 2020. At the time the parties entered into the stipulation in May of 2019, neither Jessica nor any

24   of the other standing declarants was pregnant or seeking to become pregnant.

25           Finally, this is not a situation where setting aside the stipulation will prevent EPA from having to

26   go to trial: *the trial has already occurred*. If anything, splitting the case into two and forcing a second

27   lengthy and duplicative lawsuit against EPA will require EPA to spend *more time and expense on litigation,*

28   *not less.* Thus, while the impact on EPA from setting aside the stipulation needs to be considered, any such

impact appears to be relatively minor. At worst, setting aside the stipulation will subject EPA to having this case decided on the merits, rather than a technicality. But given that the EPA is *a government agency whose mission is protect public health*, having a case about public health decided on the merits hardly amounts to undue prejudice. The interests of justice thus support setting aside the stipulation.

## VI.   CONCLUSION

With this proposed pleading amendment, the Plaintiffs address prior concerns or criticisms raised by both the EPA and this Court about the apparent divergence between the proof Plaintiffs presented at trial to prove the merits of their claim and the specific harms stated by the original Plaintiffs. The proposed Supplemental Complaint adds allegations about newly arising facts regarding Jessica Trader, a member of Food & Water Watch who was identified in the original complaint and was a standing declarant at trial. These allegations show that subsequent to the commencement of this litigation, and indeed subsequent to the completion of trial, Jessica Trader began seeking to have a baby with her fiancé and became pregnant in or about December 2020. Jessica now fears, and is incurring ongoing expenses to protect against, the very sort of neurodevelopmental harm that was the focus of Plaintiffs' trial evidence, including the NIH-funded MIREC and ELEMENT studies. Given that there is no longer a viable dispute that Jessica Trader (and, by extension, Food & Water Watch) lack standing, and given that Rule 15(d) permits supplementation if occurrences or events arise that cure standing defects in the original pleading, Plaintiffs respectfully request that the Court grant the instant motion to amend the complaint with the attached supplemental pleadings.

February 19, 2021                                      Respectfully submitted,


                                                       */s/ Michael Connett*
                                                       MICHAEL CONNETT
                                                       KAY GUNDERSON REEVES
                                                       Attorneys for Plaintiffs

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic

3

Filing this 19th day of February, 2021, upon all ECF registered counsel of record using the Court's

4

CM/ECF system.

5

6

*/s/ Michael Connett    .*
MICHAEL CONNETT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28