DEBRA J. CARFORA
JOHN THOMAS H. DO
BRANDON N. ADKINS
SIMI BHAT
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-2593
Fax: (202) 514-8865
Email: john.do@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | Case No. 3:17-cv-02162 EMC <br><br> **EPA's Opposition to Plaintiffs' Motion for Leave to Amend Their Complaint with Supplemental Pleadings (ECF No. 279)** <br><br> Date: April 22, 2021 <br> Time: 1:30 pm <br> Courtroom: Zoom webinar |

## INTRODUCTION

It has been four years since EPA issued the decision challenged in this case, one and a half years since the close of discovery, and nine months since trial. Plaintiffs' belated motion to supplement their complaint under Rule 15(d) with new allegations about an existing standing declarant must be denied. The parties entered into an agreement to end discovery on standing "throughout this litigation," and that agreement is embodied in a stipulation that this Court endorsed long ago. Order Granting Stipulation, ECF No. 102 at 2 (May 22, 2019). When Plaintiffs previously suggested they might try to introduce new standing evidence on existing plaintiffs, this Court foreclosed that option, stating: "I'm not going to allow any new evidence on standing. That door is closed." Hearing Tr. Aug. 6, 2020, 26:9-10.

Plaintiffs now seek to force that door open. Any supplementation of the record is prejudicial to EPA, which has already devoted many years and resources to this litigation, despite Plaintiffs' failure to establish jurisdiction. Plaintiffs' motion to supplement their complaint is further prejudicial because Plaintiffs have included new allegations not only about a standing declarant, but also about new draft scientific documents. If the Court were to allow the proposed amendment, it would prompt another round of expert discovery and testimony and further delay resolution of this case.

The most logical way to address all new developments is through a new petition to EPA, and, if necessary, a new, streamlined case. A new petition would allow EPA to comprehensively consider all the evidence, including the new evidence Plaintiffs seek to bring before the Court now. This Court has already suggested that Plaintiffs "submit a new petition" to EPA and recognized the value of EPA's analysis of the entire body of science in response to a petition. *Id*. 27:16-17. Plaintiffs may obtain relief in response to their new petition without further judicial review. And if EPA denies the petition, Plaintiffs could file a new case, for which their alleged harm will not long post-date the new complaint.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 15(d) does not compel district courts to permit supplementation of complaints, but affords them discretion. *Keith v. Volpe*, 858 F. 2d 467, 476 (9th Cir. 1988). The "absen[ce]" of "a showing of prejudice to the defendant" is critical to the exercise of that discretion. *Id*. at 475 (emphasis added); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) (discussing Rule 15 policy generally and Rule 15(a) specifically in reflecting that "prejudice is the touchstone of the inquiry"). Other factors considered when reviewing Rule 15 motions are bad faith, undue delay, and the futility of adding the allegations. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). The standard for amendment of the pleadings "becomes progressively more difficult" at each successive stage of litigation. *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998) (affirming district court's denial of motion to amend pleadings to add a standing allegation pretrial).

A motion to supplement will be futile if Plaintiffs cannot prove the new allegations, such as when Plaintiffs have agreed to a stipulation that precludes them from introducing evidence. To overcome futility, the stipulation must be set aside. For the stipulation to be set aside, Plaintiffs must show "manifest injustice" to themselves, lack of prejudice to the opposing party, and minimal inconvenience to the Court. *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1388 (9th Cir. 1987); *see also* Fed. R. Civ. P. 16(e) (final pretrial orders which "facilitate the admission of evidence" may only be modified to "prevent manifest injustice"). Only in "exceptional circumstances" will a court set aside a stipulation. *U.S. Dep't of Labor v. Kerr-McGee Chem. Corp.*, 985 F.2d 577, 577 (9th Cir. 1993).

**ARGUMENT**

Plaintiffs' motion to supplement their complaint post-trial should be denied for two reasons. One, supplementation will be futile because Plaintiffs are precluded by stipulation from introducing evidence to prove that they have standing. Though they argue that the Court can set aside the stipulation, Plaintiffs do not meet any of the factors for voiding a stipulation. They will not suffer manifest injustice, EPA will be prejudiced, and the Court will be inconvenienced. The

second reason for denying supplementation overlaps with the second and third factors for voiding a stipulation: additional piecemeal litigation will prejudice EPA and inconvenience the Court. The most efficient and sensible path forward is for Plaintiffs to submit a new petition to EPA under the Toxic Substances Control Act ("TSCA") Section 21, 15 U.S.C. § 2620. If EPA denies the petition, Plaintiffs can bring a new case in which they can attempt to prove their standing unencumbered by stipulation, and in which all of the expert testimony will be based on a single body of evidence, not one that continues to evolve with every phase of the case.

### I. Supplementing the Complaint Would Be Futile Because Standing Cannot Be Cured.

Plaintiffs' motion to supplement should be denied because it is futile. *Nunes*, 375 F.3d at 808. Before trial in this case, Plaintiffs agreed to a stipulation that precludes them from submitting any further standing evidence, and that stipulation was endorsed by the Court. ECF No. 102 at 2 ("Stipulation"). The Stipulation provides that Plaintiffs are to "rely exclusively" on the declarations and depositions already provided to the Court to establish the "factual basis" for standing. *Id*. The Stipulation governs "the introduction of evidence in support of Plaintiffs' claims of standing *throughout* this litigation, including trial." *Id*. (emphasis added). Under this Stipulation, Plaintiffs were able to introduce facts that were considered by this Court without submitting their witnesses to additional depositions and examination at trial. EPA made countless decisions in light of this Stipulation regarding the scope of subsequent expert testimony, the extent of evidentiary challenges, the amount of resources invested in this case, among other things. Having benefited from the Stipulation, Plaintiffs cannot undo it now. They are bound by the Stipulation and will not be able to prove that they have standing. This Court has already decided that no new evidence on standing will be allowed: "That door is closed." Hearing Tr. Aug. 6, 2020, 26:9-10. This case must be dismissed, not further extended by allowing supplementation of the complaint.

Plaintiffs argue that the Court has discretion to set aside the Stipulation but fail to cite or discuss the governing case law. Plaintiffs have not even attempted to show that they fulfill any of the three prerequisites for setting aside the parties' stipulation: (1) manifest injustice to Plaintiffs;

(2) lack of prejudice to EPA; and (3) minimal inconvenience to the Court. *Seymour*, 809 F.2d at 1388.[1] Additionally, because the Stipulation was incorporated into the parties' pretrial statement, Pretrial Statement, Appendix B, at 8, ECF No. 153-1 (December 19, 2019), Plaintiffs must also show "manifest injustice" to amend the pretrial statement under the Federal Rule of Civil Procedure 16(e). This brief first addresses "manifest injustice." Continuing this litigation will also prejudice EPA and inconvenience the Court, but these factors will be addressed in the next section because prejudice is an independent reason for denying supplementation.

The most critical factor in deciding whether to set aside a stipulation is whether denying a request to do so would result in "manifest injustice" to the party seeking to set aside the stipulation. Plaintiffs will not suffer manifest injustice. The circumstances here are not similar to the few "exceptional" cases in which courts have decided that justice cannot be served without setting aside the stipulation. *See, e.g.*, *U.S. Dep't of Labor*, 985 F.2d at 577; *cf. United States v. Cutler*, 676 F.2d 1245, 1248 (9th Cir. 1982) (voiding a stipulation to prevent a criminal defendant from being convicted based on an outdated law); *United States v. Technic Servs.*, 314 F.3d 1031, 1045 (9th Cir. 2002), overruled on other grounds by *United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010) (en banc) (the *Technic Services* court decided that plaintiffs should not be barred from seeking relief if they were fraudulently misled to enter into a stipulation). Plaintiffs will not be imprisoned based on an outdated law. They voluntarily entered into the Stipulation and will not suffer manifest injustice if they cannot supplement their complaint.

To the contrary, Plaintiffs will still be able to seek relief from EPA and the Court after this case is dismissed. As this Court suggested, Plaintiffs can submit a "new petition" to allow EPA to

---

[1] The out-of-circuit case that Plaintiffs rely on also applies the "manifest injustice" standard to the question whether to set aside a stipulation. *Waldorf v. Shuta*, 142 F.3d 601, 614, 618 (3d Cir. 1998) (noting that the district court observed that "it is well-settled by decisional law in this and other circuits that a stipulation remains in effect unless the trial court finds that such vitality would result in 'manifest injustice'" and affirming the district court's decision that no manifest injustice would result). Though they cited the case, Plaintiffs did not apply the manifest injustice standard.

address new scientific developments.² Hearing Tr. Aug. 6, 2020, 27:16-17. If EPA grants the petition, Plaintiffs will have obtained relief without further taxing judicial resources. And should EPA deny a new petition, Plaintiffs can file a new case, which can proceed efficiently, without multiple iterations of discovery.

Plaintiffs' argument that facts have changed since trial does not justify setting aside the Stipulation. While an "intervening change in law" can result in manifest injustice, Plaintiffs cite no case in which a court held that a *factual* development rendered a stipulation unjust. *See United States v. Cutler*, 676 F.2d 1245, 1248 (9th Cir. 1982). Parties would never agree to stipulations if they could be undone merely because circumstances change. *Fed. Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir. 1991) ("Everyone benefits when parties agree to make stipulations. . . . In order for this system to work, however, the parties must be able to depend on the stipulations. If a trial judge can, as here, ignore a clear stipulation of the parties, the incentive to enter stipulations is eliminated. Worse yet, it offers a whole new ground for strategic behavior, as parties can try to get the trier of fact to pass on matters that have already been agreed to.").

Even if new facts could render a stipulation manifestly unjust, the facts here do not. When the parties entered into the Stipulation, the possibility that a declarant could change her plans was entirely foreseeable. Plaintiffs must have been aware that Ms. Trader was not bound to her plans not to have children at the time of the Stipulation, just as Defendants have always been aware that the standing declarants were not bound to their plans to avoid fluoridated water. The Stipulation equally prevents both parties from inquiring further into changed facts. Given that Ms. Trader's pregnancy did not occur until well after trial—during the abeyance later imposed by the Court—Plaintiffs have lacked standing throughout this case.³ Justice requires dismissal, not the reopening

---

² Plaintiffs did not submit a new petition. Rather, they submitted a self-styled "supplement" to their November 2016 petition with a request that EPA reopen the administrative record and reconsider its original February 2017 denial of the petition. EPA Notice, ECF No. 278 at 3 (Jan. 19, 2021). Plaintiffs do not challenge that denial in their proposed supplemental complaint.

³ EPA preserves the argument that even if Plaintiffs were able to prove their new allegations about Ms. Trader, they would still lack standing.

of this case. *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (finding no manifest injustice and denying reconsideration when it "would serve no need other than to correct what has—in hindsight—turned out to be a poor strategic decision").

**II. EPA Would Be Highly Prejudiced By Reopening This Case.**

To justify their request that the Court supplement the complaint and void the stipulation at this late date, Plaintiffs must show that EPA would not be prejudiced and that the Court will not be inconvenienced. *Nunes*, 375 F.3d at 808; *Seymour*, 809 F.2d at 1388. Plaintiffs cannot make these showings because reopening this case would be prejudicial and inefficient. In their motion, Plaintiffs portray the impact on EPA as something less than "undue" prejudice. Mot. for Leave to File Suppl. Compl. ECF No. 279 at 20. But the applicable standard is whether there would be a "lack of prejudice" to EPA, not whether there would be "undue prejudice." *Seymour*, 809 F.2d at 1388; *see also Nunes*, 375 at 808 (considering the "prejudice to the opposing party"). Plaintiffs tacitly acknowledge that there is at least some prejudice to EPA, and that prejudice is reason enough to deny Plaintiffs' motion.

The prejudice to EPA would be substantial. Plaintiffs minimize EPA's concerns by claiming that EPA need only review a standing declaration and potentially take one deposition of the declarant. To be clear, Plaintiffs' proposed supplemental complaint contains allegations not only about Ms. Trader, but also about draft scientific papers that post-date trial. This demonstrates, and opposing counsel has confirmed, that Plaintiffs seek to reopen expert discovery. *See* Suppl. Compl. ¶ 32; *see also* Mot. for Leave to File Supp. Compl. at 5. Specifically, Plaintiffs intend to present testimony by multiple experts on topics including a new draft pooled analysis of the Mexico City and Canada cohorts that has not yet been peer reviewed. By filing the motion to supplement their complaint, Plaintiffs seek to reopen expert discovery, thereby forcing a new trial on a cherry-picked selection of new draft scientific papers.[4]

---

[4] Counsel for EPA attempted to resolve this dispute and mitigate some of the prejudice to EPA that would result from supplementing the complaint by negotiating the scope and terms of potential future discovery and evidence. The parties were unable to reach agreement. Plaintiffs'

EPA cannot expend further resources on this case without being prejudiced. EPA has already devoted substantial resources over four years of litigation, and, meanwhile, many Agency priorities have been under-resourced. Given the "length of time this case has been pending," reopening the record now is unjustifiably prejudicial to EPA. *See Mullen v. Surtshin*, 590 F. Supp. 2d 1233, 1238 (N.D. Cal. 2008) (denying motion to supplement pleadings in case pending for over five years). By discarding the parties' evidentiary stipulation and engaging in further fact-finding on the new allegations, the Court will "substantially delay" the resolution of this case, which should have been dismissed long ago. *Caruso v. Solorio*, No. 1:15-cv-00780-AWI-EPG, 2019 WL 6009465, at *3 (E.D. Cal. Nov. 14, 2019) (denying motion to supplement pleadings in case pending for approximately four years). And should Plaintiffs prevail based on post-trial evidence, they will likely seek attorneys' fees from EPA for the entire case, even though they have lacked standing and this Court has lacked jurisdiction for years.

The prejudice to EPA would be compounded if Plaintiffs are allowed to introduce evidence of their biased selection of draft scientific documents. The parties and the Court would need to reconcile facts about the science admitted in the original trial with the new drafts. And if discovery continues while the drafts become final, will the parties restart expert discovery in this case for a third time? Plaintiffs' request to reopen the case to address draft scientific documents has no logical end. There will likely always be new studies and research, and the Court cannot reopen the record every time Plaintiffs identify a new document they would like to add for the purpose of this Court's review of a decision made by EPA years ago.

The timing of Plaintiffs' motion also unfairly prejudices EPA. A prior draft of the National Toxicology Program ("NTP") monograph has been available since 2019. Yet Plaintiffs have waited until now to seek to reopen this case with allegations concerning the current draft NTP monograph, without waiting for the final NTP monograph. Notably, Plaintiffs do not even mention

---

motion should be denied, but if the Court is considering granting the motion, EPA requests to be heard on conditions that should be imposed on allowance of a supplemental complaint, including conditions on future discovery and evidence, that might mitigate the prejudice to EPA. *See Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (courts have the "unquestioned right to impose terms" on the allowance of supplemental pleadings "when fairness appears to require them").

in their proposed supplemental complaint that the draft NTP monograph they cite was recently peer-reviewed by the National Academies of Sciences, Engineering and Medicine ("NASEM"). In that peer review, NASEM found that "more clear and convincing evidence" is needed to support any hazard finding, and specifically concluded that NTP's proposed hazard finding at 1.5 mg/L is unjustified. EPA Not., ECF No. 281 (Feb. 22, 2021). Plaintiffs would have this Court selectively disregard the NASEM peer review and rely only on the draft NTP monograph. Mot. for Leave to File Supp. Compl. at 5 n.1. But the most significant development since trial has been that following NASEM's peer review, NTP decided to forgo concluding that fluoride is a hazard at any level. EPA Notice, ECF No. 281 (Feb. 22, 2021). Rather, NTP will be issuing only a "state-of-the-science" report. *Id*.

The timing of Plaintiffs' motion, if granted, would allow Plaintiffs to present their evidence, but deny EPA the opportunity to present evidence of the final result of NTP's process. Unless EPA can present evidence that, after years of investigation, NTP will not be reaching a conclusion that fluoride is a hazard at any level, EPA will be highly prejudiced by Plaintiffs' introduction of the new scientific information referenced in their proposed supplemental complaint because that information will lack context. Any evidence Plaintiffs seek to present on the dose of fluoride that may produce a neurodevelopmental response has no bearing on risk until they can establish that neurotoxicity is a hazard of fluoride exposure.

Plaintiffs also chose to file their motion to supplement after reviewing an un-peer-reviewed, draft manuscript of a pooled analysis of the Canadian and Mexico City cohorts, but before acquiring further information from other cohorts. Though Plaintiffs' epidemiology expert is on the advisory board of the Spain cohort, which has generated at least two relevant abstracts (including one post-trial),[5] Plaintiffs have not cited those abstracts or waited for further results from that cohort, though they had previously cited other abstracts. Asking the Court to reopen the

---

[5] Ibarluzea, Jesus, et al., Are Low Fluoride Levels in Drinking Water Really Detrimental for Neurodevelopment in Childhood, International Society for Environmental Epidemiology, Aug. 24-27, 2020 ("Conclusions: Positive associations between fluoride levels during pregnancy and neuropsychological development at 4 years of age were found. Detrimental effects of fluoride in neurodevelopment were not supported by our data.").

case to consider one draft paper without the others is prejudicial to EPA. Further, the timing of Plaintiffs' motion limits EPA's ability to gather more scientific evidence that could rebut the limited selection of new drafts they seek to present to the Court. Yet granting the motion would require EPA to devote substantial resources to further litigation.

The most logical and least prejudicial path forward is for Plaintiffs to submit a new TSCA section 21 petition (not a request for reconsideration of a prior petition) based on the most recent scientific evidence to EPA. EPA could grant the relief Plaintiffs seek, obviating the need for further judicial review and, if not, Plaintiffs could file a new case. EPA has long argued that judicial review of a TSCA section 21 petition must be based on the record before the Agency at the time of its decision on the petition, and EPA preserves that argument. Though this Court has held otherwise, it has also reflected that when the trial record "is very, very different and has evolved substantially differently than what was presented" to the Agency, problems arise in judicial review. Trial Tr. 1132:13-14. Plaintiffs' plan to introduce selected new draft scientific documents to support their supplemental complaint raises the same problem once again.

Already, the science has evolved beyond what Plaintiffs presented to EPA in their "supplement and request for reconsideration." The most recent NASEM peer review was released on February 9, 2021, following EPA's response to Plaintiffs' submission. EPA Notice, ECF No. 281 (Feb. 22, 2021). The final NTP monograph may well be another difference between the evidence presented to the Court and the evidence before EPA. In its response to Plaintiffs' submission, EPA reflected that both the NASEM peer review and the final monograph "will provide significant information for informing whether exposure to fluoride under the condition of use may be of concern for human health." EPA Notice at 7, ECF No. 278 (Jan. 19, 2021). NTP's final decision, after years of investigation, to forego a conclusion concerning the neurotoxicity of fluoride exposure, and issue only a state-of-the-science document, is significant information that should first be presented to the Agency, should Plaintiffs continue to believe that community water fluoridation poses an unreasonable risk of injury to human health.

Requiring Plaintiffs to follow the correct administrative process for a TSCA section 21 petition and present evidence to the Agency before Plaintiffs seek judicial review would be less prejudicial to EPA and more convenient to the Court than allowing Plaintiffs to supplement their complaint now. EPA should have the first opportunity to comprehensively consider all of the evidence, including the NTP monograph in its context and the new evidence that Plaintiffs seek to rush before the Court. If EPA grants the petition, Plaintiffs will not need to seek further judicial review. If EPA denies the petition, the Court will benefit from EPA's fulsome response to all of the evidence. And in a new case, the Court will not need to decide whether and how to unwind the Stipulation. Plaintiffs can make an unconstrained attempt to demonstrate they have standing at the time they file their new complaint.

Dated: March 26, 2020                                Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/Simi Bhat*
　　　　　　　　　　　　　　　　　　　　　　　　　　DEBRA J. CARFORA
　　　　　　　　　　　　　　　　　　　　　　　　　　JOHN THOMAS H. DO
　　　　　　　　　　　　　　　　　　　　　　　　　　BRANDON N. ADKINS
　　　　　　　　　　　　　　　　　　　　　　　　　　SIMI BHAT

　　　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*