1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7     FOOD & WATER WATCH, INC., et al.,          Case No. 17-cv-02162-EMC

8                 Plaintiffs,

9           v.                                   **ORDER GRANTING PLAINTIFFS'
                                                 MOTION FOR LEAVE TO
10    UNITED STATES ENVIRONMENTAL                SUPPLEMENT COMPLAINT**
      PROTECTION AGENCY, et al.,
11                                               Docket No. 279
                  Defendants.
12

13

14

15          Section 6(a) of The Toxic Substances Control Act (TSCA) requires Defendant United

16    States Environmental Protection Agency (EPA) to regulate the use of certain chemical substances

17    that it determines pose an unreasonable risk to health or the environment.  15 U.S.C. § 2605(a).

18    Section 6(b), in turn, requires the EPA to perform its own *sua sponte* evaluation of the risks posed

19    by certain chemical substances "under the conditions of use."  *Id.* § 2605(b)(4)(A).  The statute

20    defines the "conditions of use" as "the circumstances, as determined by the Administrator, under

21    which a chemical substance is intended, known, or reasonably foreseen to be manufactured,

22    processed, distributed in commerce, used, or disposed of."  *Id.* § 2602(4).  Section 21 of the TSCA

23    permits any person to petition the EPA to initiate rulemaking under Section 6(a) if the petitioner

24    demonstrates a chemical substance poses an unreasonable risk of harm.  *Id.* § 2620(a).

25          Plaintiffs petitioned the EPA under Section 21 to regulate the fluoridation of drinking

26    water supplies under Section 6(a) because, they maintain, the ingestion of fluoride poses an

27    unreasonable risk of neurotoxic harm to humans.  After the EPA denied Plaintiffs' petition,

28    Plaintiffs filed this suit seeking judicial review of the EPA's determination.

United States District Court
Northern District of California

1          Pending before the Court is Plaintiffs' motion for leave to supplement their complaint with

2     standing and scientific allegations pursuant to Federal Rule of Civil Procedure 15(d).  *See* Docket

3     No. 279 ("Mot.").  For the following reasons, the Court **GRANTS** Plaintiffs' motion for leave to

4     amend.

5                                I.        **BACKGROUND**

6          This order assumes familiarity with the lengthy factual and procedural background of this

7     case and therefore only recites the facts and background necessary to resolve the pending motion.

8          On November 22, 2016, Plaintiffs filed their original petition asking the EPA to conduct

9     rulemaking to prohibit the addition of fluoridation chemicals to drinking water supplies, which the

10    EPA denied on February 17, 2017.  *See* Mot. at 2.  Plaintiffs promptly filed suit in this Court

11    shortly thereafter on April 18, 2017.  *See* Docket No. 1. ("Compl.").

12         More than two years into the case and about a year before trial, on May 22, 2019, the

13    parties stipulated to the introduction of evidence in support of Plaintiffs' standing claims.  *See*

14    Docket No. 102 ("Standing Stipulation").  In that stipulation, the parties agreed that Plaintiffs

15    would "rely exclusively" on the declarations attached to the stipulation "to establish the factual

16    basis in support of [their] claims of standing." *Id.* ¶ 1.  The stipulation also stated that the parties

17    agreed to submit the declarations "in lieu of live direct testimony, as evidence in support of

18    Plaintiffs' claims of standing at trial." *Id.* ¶ 5.

19         From June 8 to 19, 2020, the Court held a bench trial in this case.  *See* Docket No. 219.

20    On August 10, 2020, before issuing its findings of facts and conclusions of law, the Court issued

21    an order holding all proceedings in abeyance in order to "afford the EPA an opportunity to

22    consider the significant scientific developments that have occurred since the original petition was

23    filed."  Docket No. 262 ("Abeyance Order") at 5.  The Court instructed Plaintiffs to file "a *new*

24    petition with the EPA" including "as much underlying data and as many calculations as possible,"

25    and the EPA to "give such petition due consideration on the merits in light of the substantial

26    scientific evidence proffered at trial." *Id.* at 5 (emphasis added).

27         In its abeyance order, the Court also reiterated its concern, stated at the conclusion of trial,

28    "that there are serious questions regarding whether the named Plaintiffs in this case have standing"

United States District Court
Northern District of California

1    because "[t]he evidence presented by Plaintiffs at trial focused overwhelming, if not exclusively,

2    on the contention that fluoride poses a risk of *neurodevelopmental* harm." *Id.* at 1.  The standing

3    problem, as the Court saw it, was that "[n]one of the standing Plaintiffs in this case claim to be

4    subject to [] risk of [neurodevelopmental] harm; there are no allegations that the named Plaintiffs

5    are pregnant, planning to become pregnant, or caring for infants." *Id.* at 2.  In other words,

6    "Plaintiffs have failed to demonstrate any link between the evidence presented at trial—which,

7    again, pertained to neurotoxic harm to fetuses and infants—and the harms of which they

8    personally complain." *Id.*  Importantly, the abeyance order stated that "should the EPA deny the

9    new petition, the Court will permit amendment of the complaint herein." *Id.* at 5.

10            On November 4, 2020, Plaintiffs filed a supplemental petition[1] with the EPA, *see* Docket

11   No. 271-1 ("Supp. Pet."), requesting that the EPA reconsider its earlier denial in light of new

12   information, including:

13                  1) the trial record together with Plaintiffs' admitted exhibits and
                    summary of the record; 2) the MIREC and ELEMENT studies; 3)
14                  the pooled BMD analysis of the MIREC and ELEMENT data; 4) the
                    National Toxicology Program's [NTP's] revised draft monograph
15                  containing a systematic review of the fluoride literature; 5) a
                    published statement from former NTP director Dr. Linda Birnbaum,
16                  about the 'consequential' findings of the NTP's revised monograph;
                    6) the facts to which the parties stipulated at trial; and 7) several
17                  orders of this Court which reject legal positions that EPA relied
                    upon in its denial of the initial petition.
18

19   *See* Docket No. 272 ("Opp'n to Relief Mot.") at 2.  The supplemental petition also explained that

20   Plaintiffs had members who lived in fluoridated areas who were pregnant and/or actively seeking

21   to become pregnant.  Supp. Pet. at 11.  According to Plaintiffs, it is the EPA's practice to consider

22   supplemental petitions seeking identical relief as "motions for reconsideration," *id.* at n.1 (citing

23   cases), such that the supplemental petition allowed the EPA to fully reconsider its denial of

24   Plaintiffs original petition, which is why this Court issued the abeyance order in the first place.

25            On October 28, 2020, the EPA filed a "motion for relief" from the abeyance order pursuant

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [1] Plaintiffs explain that they filed a supplemental petition rather than a new petition "based on their
28   apprehension that a new petition under 15 U.S.C. § 2620 would require a *de novo* proceeding, and
     thereby an entirely new, lengthy and costly litigation."  Mot. at 5 n.2.

3

United States District Court
Northern District of California

1    to Federal Rule of Civil Procedure 60(b)(6). *See* Docket No. 265 ("Relief Mot."). The gravamen

2    of the relief motion was that the Court erred because it "should have dismissed this case for lack of

3    jurisdiction, but instead has permitted Plaintiffs an opportunity to create standing where none

4    exists." *Id.* at 1. The EPA asked this Court to vacate its abeyance order and dismiss this case with

5    prejudice. *Id.*

6         While the supplemental petition and relief motion were pending, Jessica Trader, a Food &

7    Water Watch (FWW) member, conceived her first child on December 2020. *See* Docket No. 279-

8    1 ("Proposed Supp. Compl.") ⁋ 39. She is now five-months pregnant.

9         On January 13, 2021, the Court denied the relief motion in part as to the EPA's request to

10   vacate the abeyance order and dismiss the complaint, but granted it in part as to the EPA's request

11   to amend the abeyance order to require Plaintiffs to seek leave to amend the complaint should the

12   EPA deny their supplemental petition. *See* Docket No. 277.

13        On January 19, 2021, the EPA denied Plaintiffs' supplemental petition after

14   acknowledging that it had discretion to reopen the administrative record, consider the new

15   scientific evidence, and reconsider its denial of the original petition. *See* Docket No. 278-1 ("2021

16   EPA Denial") at 7 ("EPA declines to exercise its discretionary authority to reopen the

17   administrative record and reconsider the February 17, 2017 petition denial."). In denying the

18   supplemental petition, the EPA addressed the merits of the supplemental petition, concluding that

19   "the scientific evidence submitted for evaluating the risk of neurotoxic effects from exposure to

20   fluoride is insufficient for EPA to reach an informed risk determination." *Id.* at 3–6. Importantly,

21   the EPA underscored that "new information regarding the exposure and health effects of exposure

22   to fluoride continues to develop," such that "without the final NTP monograph, reconsidering the

23   petition denial at this time would not be prudent use of EPA's resources." *Id.* at 7. The final NTP

24   monograph is thus essential for the EPA to properly assess the merits of Plaintiffs' supplemental

25   petition and any similar petition Plaintiffs might file in the future.

26        On February 19, 2021, Plaintiffs filed the instant motion for leave to supplement their

27   complaint. *See* Mot. The proposed supplemental complaint adds three types of allegations. First,

28   it describes the Court's post-trial orders. *See* Proposed Supp. Compl. ⁋⁋ 29–35. Second, it alleges

United States District Court
Northern District of California

that Jessica Trader, a Food & Water Watch (FWW) member who lives in a city that adds

fluoridation chemicals to the water and who suffered from dental fluorosis as a result of over-

exposure to fluoride, began attempting to conceive her first child in the fall of 2020, conceived her

first child on December 2020, is currently three months pregnant, and intends to have two more

children. *Id.* ¶¶ 39–43.  In order to limit her unborn child's *in utero* exposure to fluoridated tap

water, Jessica has and will continue to "purchas[e] bottled water and purchas[e] replacement

cartridges for her home water filtration system.  These safety measures to protect her child

represent an ongoing economic burden to Jessica." *Id.* ¶¶ 42–43.  According to the supplemental

complaint, "[e]ven if fluoridated water posed no risk to Jessica personally, she would still incur

the expense of purchasing non-fluoridated water in order to protect her unborn child and future

children." *Id.* ¶¶ 44.  Moreover, "it is 'impossible' for Jessica to eliminate her children's exposure

to fluoridation chemicals so long as the EPA permits them to be added to drinking water," and

"due to  their ubiquitous presence in processed foods and beverages made in the United States and

lack of labeling for fluoride content." *Id.* ¶ 45 (quoting *Nat. Res. Def. Council v. EPA*, 735 F.3d

873, 875–76 (9th Cir. 2013)).  This order will refer to these allegations as the "Supplemental

Standing Allegations."

Third, and finally, the supplemental complaint adds allegations conforming to the evidence

introduced at trial regarding the findings of the National Institute of Health's (NIH's) recent

prospective studies on the impact of early life fluoride exposure on neurodevelopment, and the

vulnerability of the fetal brain to fluoride exposure. *Id.* ¶¶ 89–113.  Importantly, the supplemental

complaint also adds a summary of the NTP's draft monograph and the Benchmark Dose (BMD)

pooled analysis of the data used in the ELEMENT and MIREC studies, which was made available

on November 4, 2020. *Id.* ¶¶ 30, 32.  This memorandum will refer to these allegations as the

"Supplemental Scientific Allegations."

## II.       MOTION FOR LEAVE TO SUPPLEMENT

A.       Legal Standard

Supplemental pleadings are governed by Rule 15(d), which provides that, "[u]pon motion

of a party the court may, upon reasonable notice and upon such terms as are just, permit the party

United States District Court
Northern District of California

<div style="float:left">United States District Court<br>Northern District of California</div>

1    to serve a supplemental pleading setting forth transactions or occurrences or events which have

2    happened since the date of the pleading sought to be supplemented."  Fed. R. Civ. P. 15(d).

3           New claims, new parties, and allegations regarding events that occurred after the original

4    complaint was filed are all properly permitted under Rule 15(d).  *See Griffin v. Cnty. School Bd. of*

5    *Prince Edward Cnty.*, 377 U.S. 218, 226 (1964); *see also Eid v. Alaska Airlines, Inc.*, 621 F.3d

6    858, 874 (9th Cir. 2010) ("Rule 15(d) provides a mechanism for parties to file additional causes of

7    action based on facts that didn't exist when the original complaint was filed."); *Keith v. Volpe*, 858

8    F.2d 467, 473 (9th Cir. 1988) ("Rule 15(d) is intended to give district courts broad discretion in

9    allowing supplemental pleadings.").  Importantly, Rule 15(d) "is a tool of judicial economy and

10   convenience" and "is intended to give district courts broad discretion in allowing supplemental

11   pleadings."  *Keith*, 858 F.2d at 473.  The rule "enabl[es] a court to award complete relief, or more

12   nearly complete relief, *in one action*, and to avoid the cost, delay and waste of separate actions

13   which must be separately tried and prosecuted."  *Id.* (emphasis added) (quoting *New Amsterdam*

14   *Casualty Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963)).  Therefore, because the goal

15   of Rule 15(d) is to promote judicial efficiency, supplementation is generally favored.  *See Planned*

16   *Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (citing *Keith*, 858 F.2d at 473).

17          "The legal standard for granting or denying a motion to supplement under Rule 15(d) is the

18   same as for amending one under 15(a)."  *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203,

19   214 (N.D. Cal. 2015) (quoting *Paralyzed Veterans of Am. v. McPherson*, No. C 06–4670 SBA,

20   2008 WL 4183981, at *26 (N.D. Cal. Sept. 9, 2008)).  In determining whether leave should be

21   granted to supplement (or amend) the pleadings pursuant to a district court's discretion, the

22   Supreme Court has stated that:

23          [i]n the absence of any apparent or declared reason—such as undue
             delay, bad faith or dilatory motive on the part of the movant,
24          repeated failure to cure deficiencies by amendments previously
             allowed, undue prejudice to the opposing party by virtue of
25          allowance of the amendment, futility of amendment, etc.—the leave
             sought should, as the rules require, be "freely given."
26

27   *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Ninth Circuit, the above listed factors—referred

28   to as the *Foman* factors—are not weighted equally.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316

1    F.3d 1048, 1051–52 (9th Cir. 2003) ("Not all of the factors merit equal weight.  As this circuit and

2    others have held, it is the consideration of prejudice to the opposing party that carries the greatest

3    weight." (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)).  Rather,

4    courts have held that "the crucial factor is the resulting prejudice to the opposing party."  *Howey v.*

5    *United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).  A motion may be denied, however, on

6    grounds of futility of the proposed amendments irrespective of prejudice.  *See generally Hoang v.*

7    *Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018); *see also Ecological Rights Found. v. Pac.*

8    *Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013).

9         Courts also consider whether allowing leave to supplement would align with the goal of

10   Rule 15(d), which is to promote judicial efficiency by resolving the parties' disputes in one action.

11   *See Planned Parenthood of S. Ariz.*, 130 F.3d at 402; *Keith*, 858 F.2d at 473.

12   B.   Analysis

13        The EPA does not dispute that Plaintiffs "may cure standing deficiencies through

14   supplemental pleadings."  *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th

15   Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015) (quoting *Northstar*

16   *Fin. Advisors, Inc. v. Schwab Invs.,* 781 F. Supp. 2d 926, 932–33 (N.D. Cal. 2011)).  Nor does it

17   dispute, for purposes of its opposition, that Plaintiffs' Supplemental Standing Allegations in fact

18   cure the complaint's standing deficiencies.  *See* Docket No. 285 ("Opp'n") at 5, n.2.[2]  Instead, the

19   EPA urges the Court to deny Plaintiffs leave to supplement their complaint for two reasons: (1) it

20   would be futile because Plaintiffs stipulated not to introduce new evidence to prove that they have

21   standing; and (2) it would prejudice the EPA.  Neither of these arguments has any merit.

22   Moreover, granting leave to supplement the complaint would promote judicial efficiency.

23        1.   Supplementation Would Not be Futile

24        The EPA's only futility argument is that the parties' May 2019 standing stipulation

25   _____

26   [2] The EPA "preserves the argument that even if Plaintiffs were able to prove their new allegations
     about Ms. Trader, they would still lack standing."  Opp'n at 5, n.2.  As stated on the record during
27   the hearing on the instant motion, the EPA may file a motion challenging the merits of the
     Supplemental Standing Allegations later.  It is worth mentioning that, in the Court's preliminary
28   view, the Supplemental Standing Allegations do appear to cure the complaint's standing
     deficiencies.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "precludes [Plaintiffs] from submitting any further standing evidence."  Opp'n at 3.  Not so.

2    "[R]elief from a pretrial order [or stipulation] is committed to the district court's discretion."

3    *Seymour v. Summa Vista Cinema, Inc.*, 909 F.2d 1385, 1388 (9th Cir. 1987) (citing *Angle v. Sky*

4    *Chef, Inc.*, 535 F.2d 492, 495 (9th Cir. 1976)).  District courts have "broad discretion in deciding

5    whether to hold the parties to a stipulation."  *Common Cause S. Christian Leadership Conf. of*

6    *Greater L.A. v. Jones*, 213 F. Supp. 2d 1110, 1112 (C.D. Cal. 2002) (quoting *McMorgan & Co. v.*

7    *First Cal. Mortg. Co.,* 931 F. Supp. 699, 703 (N.D. Cal.1996)); *see also United States v. Kanu*,

8    695 F.3d 74, 78 (D.C. Cir. 2012) ("Stipulations entered into by the parties 'in the course of legal

9    proceedings are not as irrevocable as other contracts,' and the '[t]rial court[ ] may, in the exercise

10   of sound judicial discretion and in furtherance of justice, relieve parties from stipulations into

11   which they have entered." (quoting *Nat'l Audubon Soc'y, Inc. v. Watt*, 678 F.2d 299, 307 (D.C.

12   Cir. 1982)); *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1098 (10th Cir. 1991) ("District courts . . .

13   are vested with broad discretion in determining whether to hold a party to a stipulation."); *Am.*

14   *Honda Motor Co. v. Richard Lundgren, Inc.*, 314 F.3d 17, 21 (1st Cir. 2002) ("Stipulations

15   between parties are not 'absolute,' and a party may be relieved of a stipulation for good cause—

16   which means, in a nutshell, that good reason must exist and that relief must not unfairly prejudice

17   the opposing party or the interests of justice." (quoting *TI Fed. Credit Union v. DelBonis,* 72 F.3d

18   921, 928 (1st Cir.1995)).  Courts can relieve parties of pre-trial stipulations and orders if they

19   demonstrate (1) "manifest injustice," (2) "lack of prejudice to [the opposing party]," and (3)

20   "minimal inconvenience to the court."  *Seymour*, 909 F.2d at 1388.  All three of these factors

21   support setting aside the standing stipulation here.

22        First, Plaintiffs will suffer manifest injustice if they are prevented from supplementing

23   their pleadings because that would likely require this Court to dismiss their case.  Contrast

24   *Seymour*, 909 F.2d at 1388 ("liability was unaffected by the excluded evidence").  District courts

25   often set aside stipulations when the facts underlying those stipulations change in a material way

26   *after* the stipulation is entered.  *See, e.g.*, *Peschel v. City of Missoula through Missoula Police*

27   *Dep't*, No. CV 08-79-M-RFC-JCL, 2008 WL 11417151, at *1 (D. Mont. Dec. 30, 2008) (setting

28   aside stipulation that in-car arrest video was "gone" because the police identified a computer from

8

United States District Court
Northern District of California

1    which the video might be retrievable); *McMorgan*, 931 F. Supp. at 703 (setting aside stipulation

2    recognizing joint client relationship because subsequently discovered facts showed that no such

3    relationship existed); *Sam Galloway Ford, Inc. v. Universal Underwriters Ins. Co.*, 793 F. Supp.

4    1079, 1082 (M.D. Fla. 1992) (setting aside pre-trial factual stipulation because newly discovered

5    evidence indicated that the facts stipulated to were incorrect); *Morrison v. Genuine Parts Co.*, 828

6    F.2d 708, 709 (11th Cir. 1987) (setting aside pre-trial damages stipulation because evidence at trial

7    revealed the actual damages where much lower than the stipulated damages).  In these cases, as

8    here, the facts that compel setting aside the stipulations were not known or readily ascertainable at

9    the time the parties entered the stipulations; new facts were material to the outcome of the case

10   and that ignoring them would result in manifest injustice.  *Sam Galloway Ford*, 793 F. Supp. at

11   1082 ("Justice cannot be done unless the *actual facts* of the case go to trial, and this Court is not

12   interested in erroneous facts going to trial due to a pretrial stipulation that was made before the

13   true facts were completely discovered and brought to light.").  Here, Ms. Trader's pregnancy is the

14   kind of intervening factual development that justifies setting aside the standing stipulation because

15   it occurred *after* the parties entered the stipulation; it is material to standing.

16         Second, setting aside the standing stipulation would not prejudice the EPA.  The EPA

17   broadly contends that it "made countless decisions in light of this Stipulation regarding the scope

18   of subsequent expert discovery, the extent of evidentiary challenges, the amount of resources

19   invested in this case, among other things."  Opp'n at 3.  But the EPA has failed to demonstrate

20   how it would have presented different evidence at trial had it known Ms. Trader was pregnant.

21   The scientific issues were clearly joined at trial.  *See Eminence Cap.*, 316 F.3d at 1052 (9th Cir.

22   2003) ("[The] party opposing amendment 'bears the burden of showing prejudice.'" (quoting

23   *DCD Programs*, 833 F.2d at 185)).

24         The EPA also fails to respond to Plaintiffs' contention that supplementation would impose

25   "little additional discovery," *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir.

26   1986), because the Supplemental Standing Allegations involve only one person who is already

27   involved in the case.  Mot. at 18.  As Plaintiffs point out, at most the EPA would need to conduct a

28   short deposition of Ms. Trader narrowly focused on her standing allegations.  *See, e.g.*, *LaSalvia*,

9

United States District Court
Northern District of California

1    804 F.2d at 1119 ("We see no prejudice to defendants in allowing the amendment.  Because most

2    of the information on the added claim would be available in UDA's own files, little additional

3    discovery would be needed."); *Lyon*, 308 F.R.D. at 215 ("While allowing the addition of the

4    Bakersfield facility would require little additional discovery, requiring Plaintiffs to bring a second

5    suit on behalf of detainees at the Bakersfield facility would force them to duplicate several

6    depositions already taken for this suit.").  And, as Plaintiffs correctly point out, allowing the

7    Supplemental Standing Allegations about Ms. Trader would not undo all the benefits of the

8    standing stipulation for the EPA.  *See* Docket No. 287 ("Reply") at 8.  The standing stipulation

9    still holds for the other eight witnesses.

10       Additionally, the EPA's prejudice argument is wholly undermined by the fact that the EPA

11    repeatedly asks the Court to dismiss this case for lack of standing so that Plaintiffs could file a

12    *third* petition with the EPA and, if that petition is denied, an entirely *new* case challenging that

13    denial.  *See* Opp'n at 1 ("The most logical way to address all new developments is through a *new*

14    petition to EPA, and, if necessary, a new, streamlined case." (emphasis added)); *id.* ("[I]f EPA

15    denies the petition, Plaintiffs could file a *new* case, for which their alleged harm will not long post-

16    date the new complaint." (emphasis added)); *Id.* at 3 ("If EPA denies the petition, Plaintiffs can

17    bring a *new* case in which they can attempt to prove their standing unencumbered by stipulation,

18    and in which all of the expert testimony will be based on a single body of evidence, not one that

19    continues to evolve with every phase of the case." (emphasis added)); *id.* at 5 ("And should EPA

20    deny a new petition, Plaintiffs can file a *new* case, which can proceed efficiently, without multiple

21    iterations of discovery." (emphasis added)).  Starting from scratch with a third petition and a new

22    case cannot be more efficient or less prejudicial to the EPA; it would further delay the resolution

23    of this dispute and could require all parties—including the EPA—to re-do discovery, dispositive

24    motions, and even trial.  To the contrary, the best way to preserve the resources the EPA has

25    already invested in this case and to expeditiously dispose of Plaintiffs' claims is to allow the

26    Supplemental Standing Allegations and any limited discovery related thereto to be considered in

27    addition to the existing record so that this Court, which has already conducted an entire bench trial

28    on the merits, can adjudicate the merits as soon as possible.

United States District Court
Northern District of California

1    Third, and relatedly, setting aside the standing stipulation would greatly inconvenience the

2    Court, which has already expended considerable time and resources in adjudicating the parties'

3    dispositive motions and in holding a bench trial.  Asking this Court—or any other Court down the

4    line—to start from scratch would impair judicial economy.

5    Accordingly, the Court has ample and justifiable reason set aside the stipulation.

6         2.     <u>Supplementation Would Not Prejudice the EPA</u>

7    For the reasons stated above,[3] the EPA would not be prejudiced if the Court were to allow

8    Plaintiffs to supplement their complaint with the allegations of Ms. Trader's standing to sue.

9    The EPA also argues, however, that it would be prejudiced if the Court allows Plaintiffs to

10   supplement their complaint with the Supplemental Scientific Allegations because doing so would

11   require the Court to reopen expert discovery.  Opp'n at 6.  In fact, the EPA avers in its opposition

12   that it has tried to "mitigate some of the prejudice to EPA that would result from supplementing

13   the complaint by negotiating the scope and terms of potential future discovery and evidence," to

14   no avail.  *Id.* at 6 n.4.

15   As this Court has indicated, the evolving science warrants reopening of expert discovery

16   and trial evidence.  For example, on January 26, 2021, the National Academy of Science,

17   Engineering and Medicine (NASEM) peer-reviewed the draft NTP monograph—with which

18   Plaintiffs seek to supplement the complaint—and issued a letter report concluding as follows:

19   > Even though the evidence provided appears to show consistent
20   > indications of an association between exposure to high fluoride
> concentrations and cognitive deficits in children, the monograph
> falls short of providing a clear and convincing argument that
21   > supports its assessment.  It also needs to emphasize that much of the
> evidence presented comes from studies that involve relatively high
22   > fluoride concentrations and that the monograph cannot be used to
> draw conclusions regarding low fluoride exposure concentrations
23   > (less than 1.5 mg/mL), including those typically associated with
> drinking water fluoridation.
24
Docket No. 280-1 ("NASEM Letter Report").

25
26   In response to the NASEM's letter report, the NTP issued a statement on February 9, 2021,

27   _____

28   [3] The EPA acknowledges in its opposition that "the second reason for denying supplementation overlaps with the second and third factors for voiding a stipulation: additional piecemeal litigation will prejudice EPA and inconvenience the Court."  Opp'n at 2–3.

1    stating that it "will carefully consider all of the committee's comments as [it] finalize[s] and

2    publish[es] the NTP Fluoride Monograph as a 'state of the science' document later in 2021."

3    Docket No. 280-2 ("NTP's Statement").  The EPA contends that this statement means that the

4    "NTP decided to forgo concluding that fluoride is a hazard at any level."  Opp'n at 8.  Therefore,

5    according to the EPA, allowing Plaintiffs to supplement their complaint with only the *draft* NTP

6    monograph would allow them to present their evidence "but deny EPA the opportunity to present

7    evidence of the *final* result of NTP's process," which might contradict the draft.  *Id.*

8            Similarly, Plaintiffs' seek to supplement their complaint with the draft manuscript of the

9    Mexican and Canadian cohorts' pooled analysis, but not the analyses of other cohorts that show

10   conflicting results, including those of a Spanish cohort that has issued relevant abstracts since the

11   trial.  *Id.* at 8 n.5 (citing Ibarluzea, Jesus, et al., Are Low Fluoride Levels in Drinking Water

12   Really Detrimental for Neurodevelopment in Childhood, International Society for Environmental

13   Epidemiology, Aug. 24–27, 2020 ("Conclusions: Positive associations between fluoride levels

14   during pregnancy and neuropsychological development at 4 years of age were found.  Detrimental

15   effects of fluoride in neurodevelopment were not supported by our data.").  According to the EPA,

16   allowing Plaintiffs to supplement now would "limit EPA's ability to gather more scientific

17   evidence that could rebut the limited selection of new drafts they seek to present to the Court."  *Id.*

18   at 9.

19           The Court agrees.  The EPA should be given a chance to weigh in, on, *e.g.*, the final NTP

20   monograph, the NASEM Letter Report, and possibly the Canadian, Mexican, and Spanish cohorts

21   studies after they are peer-reviewed.

22           Allowing Plaintiffs to add the Supplemental Scientific Allegations would not preclude the

23   EPA to weigh in when more scientific evidence becomes available.  The Court intends to continue

24   to hold the case in abeyance at least until the final NTP monograph is released and possibly until

25   the Canadian, Mexican, and Spanish cohorts are peer-reviewed.  The Court may instruct Plaintiffs

26   to file a new or second supplemental petition with the EPA and afford the EPA an opportunity to

27   reconsider its administrative review and, if necessary, to further litigate the issues in this Court.

28

United States District Court
Northern District of California

1

United States District Court
Northern District of California

3.      Supplementation Promotes Judicial Economy

2          Finally, and most importantly, allowing Plaintiffs to supplement the allegations in their

3   complaint would surely promote judicial economy.  "In deciding whether to permit a supplemental

4   pleading, a court's focus is on judicial efficiency."  *Yates v. Auto City 76*, 299 F.R.D. 611, 613

5   (N.D. Cal. 2013); *see also Planned Parenthood of S. Ariz.,* 130 F.3d at 402 (9th Cir.1997)

6   ("[P]romot[ing] judicial efficiency [is] the goal of Rule 15(d)." (citing *Keith*, 858 F.2d at 473)).

7   Judicial efficiency is achieved where "the entire controversy between the parties could be settled

8   *in one action.*'"  *Planned Parenthood of S. Ariz.*, 130 F.3d at 402 (emphasis added) (quoting 6A

9   Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Prac. And Proc.: Civil 2D* §

10  1506 (1990)).

11         In *Planned Parenthood of Southern Arizona*, the district court issued a final order

12  declaring Arizona's parental consent abortion statute unconstitutional and entered a permanent

13  injunction in September 1992.  *Id.* at 401.  That final disposition was never appealed.  *Id.*  The

14  Arizona legislature then amended the law several years later, and the district court allowed

15  Plaintiffs to supplement their original complaint with allegations pertaining to the amended law,

16  instead of requiring them to file a new lawsuit.  *Id.* at 402.  The Ninth Circuit held that the district

17  court abused its discretion in allowing the plaintiffs to supplement their original complaint because

18  "[t]he supplemental complaint filed by plaintiffs involved *a new and distinct action* that should

19  have been the subject of a separate suit."  *Id.* at 402.  In other words, permitting the plaintiffs to

20  supplement their original complaint could not promote judicial efficiency because the first case

21  had "reached final disposition," *id.* at 403, such that "there would necessarily be two actions," *id.*

22  at 402.

23         Here, by contrast, the instant case has not reached final disposition; the Court has not

24  entered a final appealable order disposing of Plaintiffs' claims.  Therefore, unlike in *Planned*

25  *Parenthood of Southern Arizona,*  allowing Plaintiffs' Supplemental Standing Allegations would

26  lead this Court to adjudicate "the entire controversy between the parties . . . in one action,"

27  avoiding the need for Plaintiffs to file a second lawsuit, which is the entire *raison d'être* of Rule

28  15(d).  *Id.*; *see also Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d at 1044 ("Rule 15(d)

1    permits a supplemental pleading to correct a defective complaint and circumvents 'the *needless*

2    *formality and expense of instituting a new action* when events occurring after the original filing

3    indicated a right to relief." (emphasis added) (quoting Wright, Miller, & Kane, Federal Practice

4    and Procedure: Civil 3d § 1505, pgs. 262–63.)); *Keith*, 858 F.2d at 473 ("Rule 15(d) . . . is a useful

5    device, enabling a court to award complete relief, or more nearly complete relief, *in one action*,

6    and to *avoid the cost, delay and waste of separate actions* which must be separately tried and

7    prosecuted." (emphases added) (quoting *New Amsterdam Casualty Co.*, 323 F.2d at 28–29));

8    *Scahill v. D.C.*, 909 F.3d 1177, 1184 (D.C. Cir. 2018) ("[W]e hold that a plaintiff may cure a

9    standing defect under Article III through an amended pleading alleging facts that arose after filing

10   the original complaint.  The alternative approach forces a plaintiff to go through the *unnecessary*

11   *hassle and expense of filing a new lawsuit* when events subsequent to filing the original complaint

12   have fixed the jurisdictional problem." (emphasis added)).

13        The Court in the instant case can promote judicial efficiency by allowing supplementation

14   of the original complaint because the instant action is still ongoing.  If anything, the EPA's

15   proposal to instead dismiss this action and instruct the Plaintiff to file a new petition contravenes

16   judicial efficiency because it would likely result in re-litigating this case from scratch.  This

17   needless duplication of efforts and waste of judicial resources is precisely what Rule 15(d) was

18   designed to prevent.  *See San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 236

19   F.R.D. 491, 501 (E.D. Cal. 2006) ("[S]upplementation serves the interest of judicial economy, as

20   consuming administrative and judicial resources of the court in not having to open a new case,

21   randomly assigning it, going through the related-case low number analysis, and initiating Rule 16

22   scheduling as if this were a new case, do not serve judicial economy.").

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.      CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for leave to supplement their complaint.  Should the EPA seek to challenge Plaintiffs' standing, it shall file a motion to dismiss within thirty (30) days from the date of this order.  The abeyance of this case otherwise remains in place until further ordered.

This order disposes of Docket No. 279.

**IT IS SO ORDERED**.

Dated: May 11, 2021

_____

EDWARD M. CHEN
United States District Judge

15