BRANDON N. ADKINS
PAUL A. CAINTIC
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Email: Brandon.Adkins@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| FOOD & WATER WATCH, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | Case No. 17-CV-02162 EMC <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO LIFT THE STAY AND TAKE THE CASE OUT OF ABEYANCE, CROSS-MOTION TO LIFT STAY TO DECIDE MERITS ON TRIAL RECORD, AND MEMORANDUM IN SUPPORT THEREOF** <br><br> Date:  October 20, 2022 <br> Time:  1:30 p.m. <br> Place:  Via Zoom Webinar |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

NOTICE OF OPPOSITION AND CROSS-MOTION ...................................................... v

MEMORANDUM IN SUPPORT ......................................................................................... 1

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 5

     I.      The Court Should Lift the Abeyance Only to Decide this Case Based on the Trial Record. ............................................................................................................... 5

     II.    If the Court Does Not Decide the Case Now Based Only on the Trial Record, the Court Should Keep the Case in Abeyance Until NTP Finalizes its Systematic Review. ............................................................................................................... 8

     III.   Plaintiffs Failed to Support Their Request for Far-Ranging Post-Trial Discovery. ............................................................................................................... 11

CONCLUSION .................................................................................................................... 15

ATTACHED DECLARATIONS:

     DECLARATION OF NTP DIRECTOR RICHARD P. WOYCHIK, Ph.D.

     DECLARATION OF BRANDON N. ADKINS

## TABLE OF AUTHORITIES

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*,

    624 F.3d 1253 (9th Cir. 2010) ...................................................................... 8

*Alaska Survival v. Surface Transp. Bd.*,

    705 F.3d 1073 (9th Cir. 2013) .................................................................... 13

*Bailey v. Enloe Med. Ctr.*,

    No. 18-00055, 2022 WL 4134833 (E.D. Cal. Aug. 17, 2022)................................ 13

*City of Pomona v. SQM N. Am. Corp.*,

    866 F.3d 1060 (9th Cir. 2017) .................................................................... 12

*Davis v. Cal. Dep't of Corrs. & Rehab.*,

    No. 08-4481, 2013 WL 1208965 (N.D. Cal. Mar. 25, 2013) ........................... 13, 14

*Food & Water Watch, Inc. v. EPA*,

    302 F. Supp. 3d 1058 (N.D. Cal. 2018) ...................................................... 2, 13

*Hill v. Cnty. of Maricopa*,

    No. 18-02613, 2020 WL 1275749 (D. Ariz. Mar. 17, 2020).................................. 13

*Lockheed Martin Corp. v. Network Sols., Inc.*,

    194 F.3d 980 (9th Cir. 1999) ...................................................................... 13

*McDaniels v. United States*,

    No. 14-2594, 2021 WL 3625327 (C.D. Cal. June 30, 2021)................................ 13

*Moriarty v. Am. Gen. Life Ins. Co.*,

    No. 17-1709, 2021 WL 6197289 (S.D. Cal. Dec. 31, 2021) ............................... 7

*Our Children's Earth v. Leland Stanford Jr. Univ.*,

    No. 13-00402, 2015 WL 12964638 (N.D. Cal. Oct. 29, 2015) ........................... 15

*W. Coast Theater Corp. v. City of Portland*,

    897 F.2d 1519 (9th Cir. 1990) .................................................................... 14

**Statutes**

15 U.S.C. § 2620................................................................................ 2, 13

Defendants' Opposition to Plaintiffs' Motion to Lift Stay and Cross-Motion
Case No. 17-cv-02162 EMC

**Rules**

Fed. R. Civ. P. 1 ................................................................................................ 1, 8

Fed. R. Civ. P. 26 ................................................................................................. 2

Civil L.R. 37-3 ................................................................................................... 12

Defendants' Opposition to Plaintiffs' Motion to Lift Stay and Cross-Motion
Case No. 17-cv-02162 EMC

**NOTICE OF OPPOSITION AND CROSS-MOTION**

PLEASE TAKE NOTICE that on October 20, 2022, at 1:30 p.m., before the Honorable Edward M. Chen, United States District Judge, via Zoom webinar, Defendants will and hereby do oppose Plaintiffs' Motion to Lift the Stay and Take the Case Out of Abeyance (ECF No. 306) and cross-move to lift the stay and decide the merits of this case based *only* on the existing trial record. Plaintiffs noticed their Motion for a hearing on, and the Court recently continued the status conference to, the same day. ECF No. 308.

Defendants' opposition and cross-motion are based on the Memorandum in Support below, the attached declarations, the record of this action, and any argument that may be presented.

## MEMORANDUM IN SUPPORT

## INTRODUCTION

After a year and a half of discovery and seven days of trial based on theories and evidence that the Court acknowledged was "a substantially different body of evidence tha[n] was presented to the EPA" in the administrative petition, the Court asked, "Doesn't it make sense to have the agency take a second look?" Trial Tr. 1130:25–1131:4, 1131:18–19 (June 17, 2020). The Court further questioned whether the Toxic Substances Control Act ("TSCA") "contemplated a situation where the record before the Court under a Section 21 petition is very, very different and has evolved substantially differently than what was presented." *Id.* at 1132:8–14. It has now been over two years since trial, and the parties are no closer to a final judgment. In fact, Plaintiffs now seek to reopen discovery and conduct a *second* trial based on yet *another* record they intend to create during this judicial proceeding, which, if permitted, will be even further divorced from the petition presented to EPA in 2016. This is not what Congress envisioned when it enacted the citizen petition provisions under TSCA section 21, which plainly require a party to exhaust its administrative remedies by presenting its petition to EPA before filing a complaint seeking the same relief in district court.

As this Court has already acknowledged, science is never finished. And that is no less true here with respect to scientific research about the potential neurodevelopmental effects of fluoride exposure. But EPA deserves resolution of the district court proceedings. *See* Fed. R. Civ. P. 1. The Court has a complete trial record and was prepared to decide the merits of this case on that record. Plaintiffs, too, expressed satisfaction with the record at the close of trial. The essential reasons the Court put the case into abeyance—to give Plaintiffs another opportunity to establish standing and to allow EPA a "second look" at research published after it denied the petition—have been satisfied. The Court should lift the abeyance *only* to decide the case based on the trial record.

## BACKGROUND

In November 2016, Plaintiffs petitioned EPA under TSCA section 21 to request that EPA initiate a proceeding for the issuance of a TSCA section 6 rule to prohibit the addition of fluoridation chemicals to public drinking water supplies. EPA denied the petition in February

1

2017. In April 2017, Plaintiffs filed this action to compel EPA to initiate the requested rulemaking proceeding. Under TSCA's citizen petition provision, a party whose petition to initiate a proceeding to issue a *new* rule under section 6 is denied may commence a civil action in district court, and the court is to consider the petition in a de novo proceeding. 15 U.S.C. § 2620(b)(4)(B).

In December 2017, EPA moved to limit the scope of review in this matter to the administrative record. The Court concluded that Congress did not intend to impose such a limitation for judicial review of section 21 citizen petitions. 302 F. Supp. 3d 1058 (N.D. Cal. 2018). Full discovery ensued. EPA produced over ten thousand pages of documents, and the parties disclosed twelve expert witnesses (nine of whom prepared written reports under Rule 26(a)(2)(B) and in some cases also prepared rebuttal reports) and took over twenty depositions. This is in addition to many discovery disputes that were resolved informally or through motions practice.

After the close of trial in June 2020, the Court encouraged the parties to consider whether there was a mechanism for EPA to engage in a "meaningful substantive review" of the new evidence that was never in the underlying petition—that is, to "reboot" the case through consideration of an amended or new petition. Trial Tr. 1136:3–7, 1142:6–9. The parties engaged in extended discussions regarding a new or an amended petition and possible settlement options. As EPA explained in its motion for relief from the Abeyance Order, EPA ultimately concluded that (1) TSCA does not establish a procedural mechanism for petitioners to request reconsideration of a petition response, (2) Plaintiffs' proposal to simply repackage the trial record would be insufficient for EPA to reach a finding of unreasonable risk, and (3) committing additional government resources to reopen the administrative record and reconsider EPA's denial of the November 2016 petition would further strain limited agency resources. *See* EPA Mot. for Relief 2, ECF No. 265.

In August 2020, over the parties' mutual objections, the Court ordered the proceedings to be held in abeyance. Abeyance Order 4, ECF No. 262. The primary rationale for placing the case in abeyance was because the Court was "doubtful" that Plaintiffs carried their burden to establish standing, *id.* at 3, and the Court, as it expressed at the close of trial, wanted to spare Plaintiffs from "a lot of heartache and a lot of headache" that would result if the case was "thrown out because of

2

standing." Trial Tr. 1135:18–1136:7. "In addition to standing issues," the Court explained that holding the case in abeyance would allow EPA to consider scientific studies in the trial record that were published after EPA denied the administrative petition. Abeyance Order 4. Finally, the Court also explained that there may be other forthcoming scientific developments, including the National Toxicology Program's ("NTP's") "Monograph on the Systematic Review of Fluoride Exposure and Neurodevelopmental and Cognitive Health Effects" (hereinafter "Systematic Review") or "other developments that are also impending and which would shed important light on the issues contested in this case (e.g., pooling of the MIREC/ELEMENT data, publication of the Spanish birth cohort studies study, etc.)." *Id.* The Court directed Plaintiffs to file a new petition and urged EPA to give such a petition due consideration on the merits in light of the substantial scientific evidence proffered at trial. *Id*. at 4–5.

In October 2020, EPA moved for relief from the Abeyance Order because the Court should have dismissed the case for lack of jurisdiction. EPA Mot. for Relief 1. In the alternative, EPA requested that if Plaintiffs submit a new petition and EPA denies that new petition, the Court require Plaintiffs to seek leave to amend their complaint and that EPA be provided an opportunity to oppose such a request. *Id.* The Court denied in part EPA's motion for relief as procedurally improper. Order Denying Mot. for Relief 2–4, ECF No. 277. Since EPA moved for relief, Plaintiffs had filed a purported "supplement" to the administrative petition, rather than a new petition as the Court directed. *See* ECF No. 270. Nevertheless, the Court explained that "EPA [was] now able fully to reconsider its denial of Plaintiffs['] original petition, *which is why this Court issued the abeyance order in the first place*." Order Denying Mot. for Relief 2 (emphasis added). The Court granted EPA's alternative request to require that Plaintiffs seek leave to amend their complaint. *Id.* at 4.

In January 2021, EPA responded to Plaintiffs' purported "supplement" to their administrative petition. 2021 EPA Resp., ECF No. 278-1. EPA declined to exercise its discretion to reopen the administrative record and reconsider its denial of Plaintiffs' petition. *Id.* at 2. EPA concluded that the studies in Plaintiffs' "supplement" that were duplicative of what was presented at trial—including the MIREC and ELEMENT birth cohort studies—did not justify reopening the

administrative record and reconsidering its petition denial. *Id.* at 5. EPA reached the same conclusion with respect to NTP's September 2020 revised draft Systematic Review, which Plaintiffs attached to their "supplement." *Id.* In particular, EPA explained that NTP's revised draft was at the time undergoing a second round of review by the National Academies of Science, Engineering, and Medicine ("NASEM") after NASEM had previously expressed "substantive concerns" with how NTP evaluated the evidence. *Id.* EPA concluded, "While the science on this issue develops and, particularly, without the final NTP monograph [Systematic Review], reconsidering the petition denial at this time would not be a prudent use of EPA's resources." *Id.* at 7.

In February 2021, Plaintiffs moved to supplement their complaint with new allegations about an existing standing declarant and new draft scientific documents. ECF No. 279. EPA opposed the motion for two reasons. Opp'n to Mot. to Amend Pleadings, ECF No. 285. First, Plaintiffs were precluded by stipulation from introducing any new standing evidence. *Id.* at 3–6. Second, additional piecemeal litigation would prejudice EPA, which had at that time already devoted substantial resources over four years of litigation, by further delaying resolution of this case. *Id.* at 6–10.

The Court granted Plaintiffs' motion to supplement their complaint with allegations that one of the named plaintiffs conceived her first child in December 2020 and intends to have two more children. Order Granting Pls.' Mot. for Leave 5, 8–11, ECF No. 290. The Court also allowed Plaintiffs to supplement their complaint with additional allegations regarding draft scientific papers, including an interim draft of NTP's Systematic Review, because EPA would "be given a chance to weigh in, on, *e.g.*, the final NTP monograph [Systematic Review], the NASEM Letter Report, and possibly the Canadian, Mexican, and Spanish cohort[] studies after they are peer-reviewed." *Id.* at 12. Indeed, the Court observed that "[t]he final NTP monograph [Systematic Review] is thus essential for the EPA to properly assess the merits of Plaintiffs' supplemental petition and any similar petition Plaintiffs might file in the future." *Id.* at 4. The Court concluded, "The Court intends to continue to hold the case in abeyance *at least* until the final NTP monograph [Systematic Review] is released and possibly until the Canadian, Mexican, and Spanish cohorts

4

1   are peer-reviewed." *Id.* at 12 (emphasis added). The Court stated that it "may instruct Plaintiffs to

2   file a new or second supplemental petition with the EPA and afford the EPA an opportunity to

3   reconsider its administrative review and, if necessary, to further litigate the issues in this Court."

4   *Id.*

5        Now, two years after trial, the case remains in abeyance and the parties are no closer to a

6   final judgment. *See* Joint Status Reports, N.D. Cal. No. 17-cv-2162 (ECF Nos. 295, 299, 304).

**ARGUMENT**

8   **I.    THE COURT SHOULD LIFT THE ABEYANCE ONLY TO DECIDE THIS CASE**
9   **BASED ON THE TRIAL RECORD.**

10        EPA agrees that the Court should lift the abeyance but *only* for the purpose of deciding this

11  case based on the trial record. Critically, the Court, EPA, and Plaintiffs believed the Court had a

12  sufficient record to decide the merits of this case at the close of trial. After closing arguments on

13  the final day of trial, the Court suggested that the parties find a way to "reboot" the case to allow

14  Plaintiffs to attempt to cure their standing deficiency and so EPA could take into account studies

15  that were presented at trial but which were published after EPA denied the petition. Trial

16  Tr. 1135:18–1136:7. But the parties were satisfied that the trial record was sufficient for the Court

17  to render a decision. Indeed, counsel for Plaintiffs expressed concern over any further delay and

18  represented that Plaintiffs "certainly believe [they] have presented sufficient evidence to

19  demonstrate a risk under the proper standard under Section 6." *Id.* at 1143:23–25. The Court agreed

20  that the trial record was sufficient to render a decision on the merits. The Court stated, "This case

21  has been tried. *I have the record and if I have to, I will rule on it*." *Id.* at 1145:9–11 (emphasis

22  added). The Court also stated, "at this point the record for the trial is closed. It's completed." *Id.*

23  at 1152:9–10.

24        Moreover, the Court's primary rationale for placing this case in abeyance—to allow

25  Plaintiffs to attempt to cure their standing deficiency because the Court was "doubtful" that

26  Plaintiffs carried their burden to establish standing—is no longer an issue. Abeyance Order 3;

27  *accord* Pls.' Mot. to Lift Stay 12, ECF No. 306. Instead of placing this case in abeyance, the Court

28  should have dismissed the case at that moment (and prior to allowing Plaintiffs to supplement their

5

complaint after trial) because the Court lacked Article III jurisdiction. *See* EPA Mot. for Relief 3–6. However, the Court gave Plaintiffs yet *another* opportunity to fix their standing defects—after the Court held that Plaintiffs "barely" established standing at the summary judgment phase (based on alleged neurotoxic harm in the form of "headaches") and after a seven-day trial that followed the Court's summary judgment decision. *See* Summ. J. Order 9, ECF No. 156. In May 2021, the Court permitted Plaintiffs to supplement their complaint with new standing allegations that one of the named plaintiffs, Jessica Trader, conceived her first child in December 2020. Order Granting Pls.' Mot. for Leave 4, 15. In doing so, the Court allowed Plaintiffs—after trial—to walk away from a Court-endorsed stipulation reflecting the parties' pre-trial agreement regarding the evidence Plaintiffs could rely upon to support their standing. *Id.* at 2, 7–11. The Court further ordered that if EPA should seek to challenge Plaintiffs' standing, it must file a motion to dismiss within thirty days of the Order. *Id.* at 15. EPA did not file a motion to dismiss the supplemental allegations for lack of standing. *See* Joint Status Report 2, ECF No. 295.[1]

The Court's additional reason for placing the case in abeyance—to allow EPA an opportunity to consider scientific developments since it denied the petition—is also no longer present. *Accord* Pls.' Mot. to Lift Stay 13. Plaintiffs failed to file a new petition and instead submitted to EPA a purported "supplement" to their original petition. As explained above, EPA considered the "supplement," including the scientific studies that were published after EPA denied the petition, and declined to reopen the administrative record. EPA concluded that the evidence Plaintiffs submitted was insufficient for reaching an informed risk determination under TSCA. 2021 EPA Resp. 2. EPA also spent considerable resources analyzing the existing and new evidence streams in this litigation. The Agency concluded that Plaintiffs' "supplement" consisted almost entirely of the record presented during the two-week trial and that EPA's position concerning evidence presented at trial had not changed. *Id.* at 4. Thus, the Agency has now "take[n] a second

---

[1]    After trial, the Court acknowledged that, absent Plaintiffs' new post-trial allegations, Plaintiffs lacked standing and dismissal would be required. *See* Order Granting Pls.' Mot. for Leave 8 (finding that "Plaintiffs will suffer manifest injustice if they are prevented from supplementing their pleadings because that would likely require this Court to dismiss their case").

look" at the studies that were published after it denied the petition, as the Court suggested. Trial Tr. 1131:17–19.

That NTP has not finalized its Systematic Review does not justify withholding a decision on the merits any longer. To be sure, EPA's position has been that the NTP Systematic Review would have been an important piece of evidence in this case. *Accord* Order Granting Pls.' Mot. for Leave 4 ("The final NTP monograph [Systematic Review] is thus essential for the EPA to properly assess the merits of Plaintiffs' supplemental petition and any similar petition Plaintiffs might file in the future."). The draft NTP Systematic Review, however, was not part of the trial record. Indeed, Plaintiffs actually opposed EPA's request for a short extension of pretrial deadlines to allow limited discovery regarding NTP's September 2019 draft Systematic Review, and the Court denied EPA's motion. ECF Nos. 114, 115. Plaintiffs then attempted to introduce the same draft document as a standalone trial exhibit, and EPA moved in limine to exclude it. ECF No. 141. After conferring with counsel for EPA, Plaintiffs withdrew their opposition to EPA's motion in limine. *See* ECF No. 182; *see also* Further Pretrial Conference Order 22, ECF No. 197. The Court should respect the pre-trial litigation positions that the parties have already taken and make a decision on the merits based on the resulting trial record and nothing else.

Finally, the other forthcoming studies that the Court referred to in its Abeyance Order—that is, the pooled benchmark dose analysis using data from the Mexico City and Canada cohorts and the Spanish birth cohort studies—were published *after* trial and *after* the Court granted Plaintiffs leave to supplement their complaint. *See* 2d Joint Status Report 1 n.1, 2, ECF No. 299. As the Court acknowledged, "scientific research is never 'finished,'" and that is no less true with respect to scientific research regarding the potential neurodevelopment effects of fluoride exposure. Abeyance Order 4. Indeed, scientific studies on fluoride will almost certainly be published after the Court decides the merits of this case. But "Plaintiff[s] [are] not entitled to play-by-plays of ever-changing data." *Moriarty v. Am. Gen. Life Ins. Co.*, No. 17-1709, 2021 WL 6197289, at *4 (S.D. Cal. Dec. 31, 2021).

In sum, none of the considerations that moved the Court to put the case in abeyance persists today. EPA respectfully submits that it is entitled to a decision by this Court, based on the extensive

7

record achieved at the close of trial in June 2020. As the Court explained: "[T]he best way to preserve the resources the EPA has already invested in this case and to expeditiously dispose of Plaintiffs' claims is to allow the Supplemental Standing Allegations and any limited discovery related thereto to be considered in addition to the *existing record* so that this Court, *which has already conducted an entire bench trial on the merits, can adjudicate the merits as soon as possible*." Order Granting Pls.' Mot. for Leave 10 (emphasis added). The Court should do exactly that. EPA has committed significant resources to consideration of Plaintiffs' petition and litigating this case and is entitled to a decision. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1255 (9th Cir. 2010) ("While district courts enjoy a wide latitude of discretion in case management, this discretion is circumscribed by the courts' overriding obligation to construe and administer the procedural rules so as to 'secure the just, speedy, and inexpensive determination of every action and proceeding.'" (quoting Fed. R. Civ. P. 1)). Plaintiffs have not identified any reason—indeed, there is none—why the Court cannot make a decision based on the record that was presented at trial—a record with which Plaintiffs were content. The Court should decide the merits of this case on that record.

## II.   IF THE COURT DOES NOT DECIDE THE CASE NOW BASED ONLY ON THE TRIAL RECORD, THE COURT SHOULD KEEP THE CASE IN ABEYANCE UNTIL NTP FINALIZES ITS SYSTEMATIC REVIEW.

The Court should lift the stay and decide the merits of this case based only on the trial record. *See supra* Part I. However, if the Court decides not to lift the abeyance to decide the merits based *only* on the trial record now, the Court should keep the case in abeyance until NTP concludes its process with respect to the Systematic Review. To do otherwise would unfairly prejudice EPA.

To begin, the Court already determined that Plaintiffs' reliance on cherry-picked post-trial evidence necessitates waiting until the NTP Systematic Review is final. EPA explained that allowing Plaintiffs to supplement the complaint and take additional merits discovery would prejudice EPA. *See* Opp'n to Mot. to Amend Pleadings 6–10. Those same arguments continue to apply. In particular, with respect to Plaintiffs' supplemental allegations regarding the draft NTP Systematic Review, EPA explained that, like any draft scientific document, the final result of NTP's process may contradict the draft (including that NTP decided to forgo concluding that

fluoride is a hazard at any level). *Id.* at 8–9; *see also* EPA Notice, ECF No. 281. The Court agreed and decided that EPA should be allowed to submit evidence regarding the *final* NTP Systematic Review. Order Granting Pls.' Mot. for Leave 12. The Court explained that it "intends to continue to hold the case in abeyance *at least* until the final NTP monograph [Systematic Review] is released and *possibly* until the Canadian, Mexican, and Spanish cohorts are peer-reviewed. The Court may instruct Plaintiffs to file a new or second supplemental petition with the EPA and afford the EPA an opportunity to reconsider its administrative review and, *if necessary*, to further litigate the issues in this Court." *Id.* (emphasis added). Again, EPA's position is that the Court should decide the merits now based on only the trial record (which would entirely avoid any issue with waiting for NTP to conclude its Systematic Review). *See supra* Part I. And a new petition cannot provide the basis for this Court's decision on the petition submitted in 2016. But if the Court is not inclined to decide the case now based only on the trial record, the Court should leave the case in abeyance until NTP's process is complete consistent with the Court's prior Order.

The Court should also reject Plaintiffs' speculation—primarily based on hearsay by an unidentified "individual with knowledge"—that NTP's final Systematic Review "may never be released" due to "political pressures." Pls.' Mot. to Lift Stay 8, 13–15; *see* Connett Decl. ¶¶ 1–3, 5, ECF No. 306-1. Such delay is a byproduct of a thorough scientific process. EPA submits with this brief a declaration by Richard P. Woychik, Ph.D., the Director of NTP. As Director Woychik states, the first draft of NTP's Systematic Review from September 2019 proposed a "hazard conclusion" for fluoride. Woychik Decl. ¶ 4. At NTP's request, NASEM reviewed the draft Systematic Review and published its report in March 2020. *Id.* NTP prepared a second draft Systematic Review (September 2020) and again asked NASEM to review the draft. *Id.* ¶ 5. NASEM publicly issued its review of the second draft in February 2021. *Id.* Of particular relevance here, NASEM concluded:

> Even though the evidence provided appears to show consistent indications of an association between exposure to high fluoride concentrations and cognitive deficits in children, the monograph [Systematic Review] falls short of providing a clear and convincing argument that supports its assessment. It also needs to emphasize that much of the evidence presented comes from studies that involve relatively high fluoride concentrations and that *the monograph [Systematic Review] cannot be*

*used to draw conclusions regarding low fluoride exposure concentrations (less than 1.5 mg/mL), including those typically associated with drinking water fluoridation.*

NASEM Review 1–2, ECF No. 281-1 (emphasis added).

NTP subsequently removed the hazard conclusion for fluoride from the draft Systematic Review and separated the quantitative statistical analysis into a separate "Meta-Analysis Manuscript." Woychik Decl. ¶ 5. NTP now refers to its Systematic Review as a "State of the Science" Monograph. *Id.*; *see also* NTP Statement 1, ECF No. 281-2.[2] At the request of Director Woychik and the Assistant Secretary for Health, both the "State of the Science" Monograph and the Meta-Analysis Manuscript were reviewed internally by entities of the Department of Health and Human Services between July 2021 and June 2022. Woychik Decl. ¶ 5. In February 2022, Director Woychik asked the NTP Board of Scientific Counselors ("BSC") to review (with the assistance of a working group) the adequacy of NTP's responses to the reviews of the Meta-Analysis Manuscript and, in June 2022, expanded that request to include NTP's response to the reviews of the "State of the Science" Monograph. *Id.* ¶ 6. Looking forward, NTP currently anticipates that the membership of the working group assisting the BSC with this review will be finalized by November 2022 and that the working group can report on its findings to the BSC at a public meeting in early 2023. *Id.* ¶ 7. After the BSC makes its recommendations, Director Woychik will decide about potential publication and dissemination of the State of the Science Monograph and the Meta-Analysis Manuscript. *Id.* ¶ 8.

Relatedly, reopening discovery before the final NTP Systematic Review is released would put the parties back in the same position they were in when EPA sought a short extension of pretrial deadlines to accommodate the release of an earlier draft of the NTP Systematic Review in September 2019. Near the end of discovery, EPA learned that the release of a draft systematic review of fluoride exposure and neurodevelopmental effects by NTP was imminent. Decl. of Debra Carfora 4–5, ECF No. 113-1. EPA promptly moved to extend the discovery and dispositive motions deadlines to accommodate the release of the draft. Mot. to Enlarge Time for Limited

---

[2]     The "State of the Science" monograph is likely to be entitled "NTP Monograph on the State of the Science Concerning Fluoride Exposure and Neurodevelopmental and Cognitive Health Effects: A Systematic Review." Woychik Decl. ¶ 5.

Expert Discovery 2–3, ECF No. 113. EPA explained that a brief extension would minimize the inefficiency and confusion that would otherwise result from proceeding with litigation prior to the release of the draft. EPA proposed that the parties supplement their expert disclosures and allow for narrow depositions on the experts' opinions regarding the draft. Plaintiffs rejected this approach. ECF No. 114. Questioning the trustworthiness of a draft document that would not represent NTP's final position and arguing that any delay would prejudice their litigating position, Plaintiffs requested that the parties proceed with the truncated briefing schedule on the record at the time. The Court agreed with Plaintiffs and denied EPA's motion. Order Denying Defs.' Mot. for Extension of Time, ECF No. 115. The Court found persuasive Plaintiffs' "fear" of substantial expenses from having to re-depose multiple experts and paying their own experts to supplement their reports. *Id.* at 3. The Court noted that both parties' experts would be able to opine on the underlying literature that NTP reviewed. *Id.*

In a complete reversal, Plaintiffs now seek to reopen discovery over a later *draft* of the NTP Systematic Review. This is entirely unfair to EPA and would impose the same expenses that the Court previously found overly burdensome when it denied EPA's motion for an extension of time. Further, EPA's epidemiologist, Dr. Ellen Chang, is no longer available as an expert witness. Adkins Decl. ¶ 2. Thus, in addition to the expense of identifying another expert epidemiologist, EPA would now be deprived of the benefit of incorporating testimony regarding the NTP Systematic Review with the opinions of its existing experts (as it had tried to do three years ago). Plaintiffs must live with the consequences of the litigation position they adopted.

Finally, to the extent the Court permits Plaintiffs to reopen discovery regarding the draft NTP Systematic Review, EPA renews its third motion in limine to exclude from evidence the draft NTP Systematic Review and reserves it rights to amend that motion to reflect Plaintiffs' attempt to introduce a different interim draft. *See* ECF No. 141.

## III.   PLAINTIFFS FAILED TO SUPPORT THEIR REQUEST FOR FAR-RANGING POST-TRIAL DISCOVERY.

Plaintiffs ask the Court to "set a schedule for supplemental expert discovery and an abbreviated second trial where experts from both sides can summarize for the Court the scientific

11

research that has been published since the June 2020 trial." Pls.' Mot. to Lift Stay 2. Plaintiffs provide the following non-exhaustive list of post-trial research on which they would like to take discovery and conduct a trial: their expert's pooled benchmark dose analysis of the Canada and Mexico City data, the Spanish cohort studies, an interim September 2020 draft of NTP's Systematic Review (which contains the hazard conclusion that NTP subsequently removed), NASEM's peer review of NTP's draft Systematic Review, and 10 unnamed "additional studies." *Id.* Plaintiffs fail to offer any legal support to justify their "proposed course of action" to reopen discovery and conduct a second trial. *Id.* at 15; *see City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (listing factors to determine whether the moving party has met burden to reopen discovery); Civil L.R. 37-3 (establishing the discovery requests beyond the "discovery cut off" are generally not permitted).

And given Plaintiffs' expansive request, it is difficult to imagine how the second trial that Plaintiffs envision would be "abbreviated." Plaintiffs ask for far more than this Court imagined when it put the case in abeyance. *See* Abeyance Order 4. Indeed, the Court "intend[ed] to continue to hold the case in abeyance at least until the final NTP monograph [Systematic Review] is released and *possibly* until the Canadian, Mexican, and Spanish cohorts are peer-reviewed." Order Granting Pls.' Mot. for Leave 12 (emphasis added). The Court never suggested that the Parties would be permitted to introduce *all* scientific research published since the June 2020 trial, which, in Plaintiffs' estimation, includes at a minimum thirteen publications.

After closing arguments at trial, the Court expressed concern about the breadth of new evidence introduced at trial that was not presented to EPA in the underlying petition: "I don't know if [TSCA] contemplated a situation where the record before the Court under a Section 21 petition is very, very different and has evolved substantially differently than what was presented." Trial Tr. 1132:8–14. As the Court is aware, EPA maintains that TSCA does not contemplate such a situation. *See* EPA Mot. to Limit Review 2–6, ECF No. 41; Reply in Supp. of EPA Mot. to Limit Review 2–5, ECF No. 47. Indeed, there would be no purpose in requiring a petitioner to exhaust its administrative remedies by first presenting to EPA its petition, which must "set forth the facts which it is claimed establish that it is necessary" to initiate the requested action, if the petitioner

could then present what is in essence a different petition to a district court in a TSCA section 21 proceeding. 15 U.S.C. § 2620(b)(1); *see Alaska Survival v. Surface Transp. Bd.*, 705 F.3d 1073, 1080 (9th Cir. 2013) (recognizing that exhaustion allows administrative agencies to "utilize [the agency's] expertise, correct mistakes, and avoid unnecessary judicial intervention."). In the Court's Order declining to limit the scope of review, the Court acknowledged that EPA had a "fair" concern "about the risk of being sandbagged and surprised with new evidence in litigation not presented in the EPA petition," but held that the EPA's concern was "likely exaggerated." 302 F. Supp. 3d at 1069. As the trial record shows, EPA's concern was not exaggerated. And to make matters worse, Plaintiffs now seek to create a third record—again without first submitting a new petition to EPA—through another round of extensive and costly discovery and a second trial.

Moreover, the second round of discovery and trial that Plaintiffs contemplate will unfairly prejudice EPA. First, further delay in a resolution of the merits of this case is prejudicial to EPA. *Davis v. Cal. Dep't of Corrs. & Rehab.*, No. 08-4481, 2013 WL 1208965, at *3 (N.D. Cal. Mar. 25, 2013) (denying motion to reopen discovery in part because doing so "will substantially delay the resolution of this case"); *McDaniels v. United States*, No. 14-2594, 2021 WL 3625327, at *3 (C.D. Cal. June 30, 2021) ("[T]he Court acknowledges that delaying the proceedings . . . can constitute prejudice to the non-moving party."); *Bailey v. Enloe Med. Ctr.*, No. 18-00055, 2022 WL 4134833, at *3 (E.D. Cal. Aug. 17, 2022) ("This action has also been pending for many years, so if discovery were reopened, [defendants] would be unfairly prejudiced, and this case would be more unduly delayed than it already has been."). "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Reopening discovery and holding a second trial will further delay a resolution of the merits of this case, thereby unfairly prejudicing EPA. *See, e.g.*, *Hill v. Cnty. of Maricopa*, No. 18-02613, 2020 WL 1275749, at *4 (D. Ariz. Mar. 17, 2020) (finding defendants were prejudiced where reopening discovery would "constitute a much more significant delay in resolving this matter, as the parties would need time to draft their [discovery] requests, prepare their answers, litigate any additional discovery motions, and re-file any dispositive motions").

Second, the second round of discovery and trial Plaintiffs seek would put a significant strain on limited agency resources. Indeed, at the close of trial, the Court recognized that EPA suffers from resource constraints. Trial Tr. 1147:6–9. EPA will suffer severe prejudice if forced to go through extensive discovery once more, including additional motions practice and another trial. *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1524 (9th Cir. 1990) (finding defendants were prejudiced because their responses to, *inter alia*, plaintiffs' request for a discovery extension "cost [defendants] time and money in the preparation and filing of opposition memoranda and appearances at hearings").

Further, to date, the government has expended nearly $450,000 on expert witnesses (including fees paid to Plaintiffs' experts), and counsel and program staff have devoted immense time to this matter. Adkins Decl. ¶ 3. The additional discovery Plaintiffs seek will force the government to commit more resources to secure expert reports and testimony covering the minimum thirteen studies Plaintiffs seek to take discovery on. And to the extent EPA offers opinion testimony by its own employees, EPA will have to internalize the cost of having those employees spend time away from their normal duties to meet the extended demands of this litigation. This comes at a time when EPA is already operating on limited resources to implement TSCA. *See* Testimony of EPA Assistant Administrator Freedhoff Before the Senate Committee on Environment & Public Works (June 22, 2022), Adkins Decl. Ex. A. What is more, Dr. Chang, EPA's expert epidemiologist, is no longer available as an expert. *Id.* ¶ 2. Thus, to the extent EPA retains another expert epidemiologist, the government will incur the added expense of locating and retaining an entirely new expert who is unfamiliar with this case. *See Davis*, 2013 WL 1208965, at *3 (denying plaintiffs motion to reopen discovery in part because "reopening discovery will substantially delay the resolution of this case and will increase the likelihood that key witnesses may become unavailable or that their memories of the events at issue in this action will fade"). And even then, EPA will lack the benefit of presenting streamlined testimony regarding the epidemiological studies through the testimony of a single expert witness.

In short, Plaintiffs have not provided a persuasive justification for their request to conduct a second round of far-ranging discovery and to conduct a second trial. Indeed, there is none. Rather,

1   their proposed course of action is akin to an "endless rolling production [that] would undermine

2   the mandate of Federal Rule of Civil Procedure 1 to apply the rules 'to secure the just, speedy, and

3   inexpensive determination of every action." *Our Children's Earth v. Leland Stanford Jr. Univ.*,

4   No. 13-00402, 2015 WL 12964638, at *3 (N.D. Cal. Oct. 29, 2015).

5                                            **CONCLUSION**

6           For the foregoing reasons, the Court should lift the abeyance only to decide this case on

7   the trial record. Alternatively, if the Court does not lift the abeyance to decide this case now only

8   on the trial record, the Court should keep the case in abeyance until a final NTP Systematic Review

9   is released so as not to unfairly prejudice EPA, and then the parties can confer over a schedule to

10  govern future proceedings.

11  Date: September 26, 2022
    Washington, D.C.

12

13                                                  Respectfully Submitted,

14                                                  */s/ Brandon N. Adkins*
                                                    BRANDON N. ADKINS
15                                                  PAUL A. CAINTIC
                                                    United States Department of Justice
16                                                  Environment & Natural Resources Division
                                                    P.O. Box 7611
17                                                  Washington, D.C. 20044
                                                    Tel: (202) 616-9174 (Adkins)
18                                                  Tel: (202) 514-2593 (Caintic)
                                                    Fax: (202) 514-8865
19                                                  Brandon.Adkins@usdoj.gov
                                                    Paul.Caintic@usdoj.gov
20

21                                                  *Attorneys for Defendants*

22

23

24

25

26

27

28

Defendants' Opposition to Plaintiffs' Motion to Lift Stay and Cross-Motion
Case No. 17-cv-02162 EMC

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September, 2022, a true and correct copy of the foregoing Defendants' Opposition to Plaintiffs' Motion to Lift the Stay and Take the Case Out of Abeyance, Cross-Motion to Lift Stay to Decide Merits on Trial Record, and Memorandum in Support Thereof was filed electronically with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Brandon N. Adkins*
Brandon N. Adkins
United States Department of Justice