Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

FOOD & WATER WATCH, INC., et al.,  )
                                    )
            Plaintiffs,             )
                                    )
   VS.                              )   NO. 17-cv-02162-EMC
                                    )
ENVIRONMENTAL PROTECTION AGENCY,    )
et al.,                             )
                                    )   San Francisco, California
            Defendants.             )
_____)

                                        Thursday, April 22, 2021

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES</u>**:  (By Zoom Webinar)

For Plaintiffs:

                        WATERS KRAUS & PAUL
                        222 North Pacific Coast Highway
                        Suite 1900
                        El Segundo, California  90245
                BY:  **MICHAEL P. CONNETT, ESQ.**

                        WATERS KRAUS & PAUL
                        3141 Hood Street
                        Suite 700
                        Dallas, Texas  75219
                BY:  **KAY GUNDERSON REEVES, ESQ.**

                        NIDEL & NACE, PLLC
                        5335 Wisconsin Avenue NW.
                        Suite 440
                        Washington, DC  20015
                BY:  **CHRISTOPHER T. NIDEL, ESQ.**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
                Official Reporter, U.S. District Court

        (Appearances continued, next page)

**APPEARANCES, CONTINUED**:


For Defendants:
                          U.S. DEPARTMENT OF JUSTICE
                          Environment & Natural Resources
                             Division
                          Post Office Box 7611
                          Washington, D.C.  20044
                   BY:   **BRANDON N. ADKINS, ESQ.**
                         **DEBRA J. CARFORA, ESQ.**
                         **SIMI BHAT, ESQ.**

**Thursday, April 22, 2021**                                          **1:31 p.m.**

#### P R O C E E D I N G S

**THE COURTROOM DEPUTY:**  Court is now in session, the Honorable Edward M. Chen is presiding.  Calling civil action 17-2162, Food Water Watch, Inc., et al. versus Environmental Protection Agency, et al.

Counsel, please state your appearances for the record, beginning with counsel for plaintiffs.

**MR. CONNETT:**  Good afternoon, Your Honor.  Michael Connett on behalf of the plaintiffs.

**THE COURT:**  Good afternoon, Mr. Connett.

**MR. NIDEL:**  Good afternoon, Your Honor.  This is Chris Nidel on behalf of the plaintiffs.

**THE COURT:**  All right.  Thank you, Mr. Nidel.

Ms. Reeves, you are muted.

**MS. REEVES:**  Sorry, I was having trouble unmuting.  Good afternoon, Your Honor.  This is Kay Reeves for the plaintiffs.

**THE COURT:**  All right, thank you, Ms. Reeves.

**MS. CARFORA:**  Good afternoon, Your Honor.  Debra Carfora on behalf of the EPA.

**THE COURT:**  Good afternoon, Ms. Carfora.

**MR. ADKINS:**  Good afternoon, Your Honor.  Brandon Adkins on behalf of EPA.

**THE COURT:**  Good afternoon, Mr. Adkins.

1              **MS. BHAT:**  And good afternoon, Your Honor.  Simi Bhat

2      on behalf of EPA.

3              **THE COURT:**  Thank you, Ms. Bhat.

4      Let me ask, the -- it seems to me if one were to look at

5      the merits of the standing question, if amendment were to be

6      allowed, it's evidence that standing would be established

7      relative to the asserted harms here.

8      And so to step back, I mean, you know, this is Rule 15(d)

9      and -- you know, the same factors that would apply under Rule

10     15(a), which is generally a fairly liberal standard.  But the

11     major question is prejudice to the defendant in allowing this.

12     And the obvious question that is begged is if I were to

13     decline leave in this case, and thereby forcing the plaintiff

14     to sort of start the process again by either bringing a new

15     complaint or -- I don't know if that requires filing a new

16     petition with the EPA.

17     But, absent some different position taken by the EPA,

18     which, so far the EPA has indicated its inclination not to,

19     absent further developments in the field, we could be right

20     back here, I don't know, months from now, another year from

21     now.

22     What's -- what's to be gained by saying no rather than

23     just biting it off now and moving forward?

24              **MS. BHAT:**  Your Honor, two points to that.  One,

25      plaintiffs would need to submit a new petition to EPA

1   presenting all of the evidence to EPA, including the NTP's

2   forthcoming final decision that it will not be reaching a

3   hazard conclusion.

4        That is something that the Court has been interested in;

5   that is something that EPA -- something it was interested in,

6   in its response to plaintiff's supplemental administrative

7   petition.  That evidence would be before EPA.  EPA could make a

8   reasoned judgment, based on the entire body of evidence.

9        But two, prejudice in this case is that right now EPA is

10  stuck with a trial record that was developed in reliance on the

11  standing stipulation.  EPA understood that the allegations at

12  risk were that plaintiffs were trying to establish an

13  unreasonable risk under the conditions of use.  But now, with

14  these new allegations about the standing declarant, plaintiffs

15  are also trying to establish there is a concrete and

16  particularized risk to this standing declarant.  And those are

17  not allegations that EPA was dealing with in building this

18  trial record.

19           **THE COURT:**  What would be different, Ms. Bhat -- I

20  mean, the issue was clearly joined about risk or not with

21  respect to fluoridization of water and at different levels.

22  We went through a lot of stuff.

23       What would the EPA have done differently, had it had the

24  now specific allegations about Ms. Trader's pregnancy?

25  Wouldn't the same experts -- can you point to an expert who

```
 1  would have said something different, or piece of evidence on

 2  the merits of the question that would have been done

 3  differently?  I'm puzzled by that.

 4         MS. BHAT:  Yes, Your Honor.  We had a limited amount

 5   of time and words for our expert declaration, and we focused

 6   on unreasonable risk in general, and not on particularized

 7   risk.

 8      To just give one example, the gender of a child was an

 9  issue on merits, but we didn't really explore it, right,

10  because we were talking about unreasonable risk in general.

11  But if we had been talking about unreasonable risk as to this

12  particular standing declarant, that is something that we would

13  have done more discovery about, we would have explored more at

14  trial.

15      And, you know, I don't want to give away all of our

16  strategy regarding how we would defend against these new

17  standing allegations, but we made so many decisions in reliance

18  on the standing stipulation about whether to move to exclude

19  experts, to exclude evidence, evidentiary objections, not --

20  you can't rebut every single piece of evidence the plaintiffs

21  are going to present.  Right?  With the limited amount of time,

22  you have to make strategic decisions.  And we made those

23  strategic decisions on reliance on the standing stipulation.

24  And those decisions just pervade the entire record.

25      It would be prejudicial to EPA to allow plaintiffs to
```

1    introduce things --

2           **THE COURT:**  Let me look at it this way.  Here's my

3     view.

4        If I were to allow the amendment, and possibly including

5     the amendment which you oppose that brings in at least the

6     current state of the studies, including the draft NTP, the

7     National Academy response, et cetera, my inclination is:  What

8     do we do?

9        My intent in this case is to not adjudicate, to reach a

10    final adjudication, frankly, until I see the final NTP report,

11    as a minimum.  And plaintiff may not want to hear that.  And I

12    don't know what the EPA's view is.  But this is so critical,

13    and so central, frankly, but you're responsible for the Court

14    to make findings without seeing what the NTP ultimately does.

15       So that's going to come in -- you know, the way this is

16    going to work is, if this case is not dismissed, is that

17    frankly, I'm going to put this case on hold until we get these

18    results.  If we get the pooled peer-reviewed study completed

19    from the Mexico and the Canadian studies, great.  If we get a

20    peer-reviewed completed publication of the Spanish study,

21    great.  I don't know whether we need those or not; we'll see.

22    Kind of depends on what the NTP does.  Gotta have to the NTP;

23    that is critical.  And so each side will have a chance.

24       My intent is to reopen the evidence, because it's been --

25    it would have been some significant developments at that point.

1    And, and do phase two of this trial.  And so whatever you would

2    have wanted to present, you'll have a chance.

3         But, you know, frankly, I think the focus is going to be

4    on, you know, what we were focused on, given the enhancement of

5    some more data now.  And hopefully we'll get some more -- these

6    two other studies -- the pooled study and the Spanish study --

7    in, so we'll have a more complete record.

8         But, so, in that -- under those circumstances, I'm not

9    sure why I wouldn't allow the amendment.  If you assume that

10   that's what I'm going to do, what's the harm in allowing the

11   amendment?

12        **MS. BHAT:**  Your Honor, EPA wants, I think, what you

13   want also.  It's to assess the evidence with NTP's final

14   conclusion.  And Congress created this process where EPA would

15   have the first shot at assessing the evidence.

16        And Your Honor has recognized that there is value in the

17   expert agency's judgment in assessing all of the evidence.

18   There is a value in following this administrative process, and

19   seeing EPA's decision in light of NTP's final conclusion.

20        **THE COURT:**  And one thing I could do is require the

21   plaintiff to file another -- either a petition or a

22   supplemental, however it's phrased -- to give the EPA a

23   chance, once the NTP report is finalized, to assess.

24        And I know that entails some delay.  But there's some

25   merit in having the Agency -- if -- if it looks like there's a

chance that there will be a reexamination based on a completed

NTP study, and perhaps the pooled -- the addition of the pooled

study and the Spanish study.  And I might do that, in any

event.

          **MS. BHAT:**  Your Honor, respectfully, you've already

provided an opportunity for plaintiffs to do that, to file a

new petition, and they did not.  They did not follow your

instructions.  And, you know, we aren't sure whether they will

now.

     But just taking a step back at the broader inquiry here,

this is no mere motion to amend, where there's nothing stopping

plaintiffs from presenting more evidence.  We have a

stipulation here.  We have a pretrial order limiting the scope

of evidence.  And so the inquiry is whether there would be

manifest injustice to plaintiffs.

     If they can file a new petition and start a new case, what

is the manifest injustice?  Like, why not hold plaintiffs to

the stipulation that they voluntarily agreed to?  Why not

follow the pretrial order?  There is no manifest injustice

here, whereas there is prejudice to EPA.  There is prejudice to

EPA substantively, as I've explained.  There's also prejudice

in terms of delay, delaying resolution of this case, and

expending more resources.

     And those were exactly the elements of prejudice that

compelled this Court not to grant EPA's motion to extend

1   discovery to address the draft NTP monograph back in 2019.

2          **THE COURT:**  Let me ask the converse question.

3      What's the problem, if -- if what EPA wants is an

4   opportunity -- once the NTP study is finalized and the

5   conclusions and the report is done, if the EPA has the

6   opportunity to do that, provided a supplemental petition or a

7   supplement is filed, or whether it's called "reconsideration,"

8   whatever that thing is called other than a new petition, that

9   gives the EPA a full opportunity to take it and run with it, if

10  they want.  Why would it have to be framed as a new petition?

11         **MS. BHAT:**  Well, Your Honor, this case should be

12   dismissed.  And then that whole dispute about the current

13   petition would go away.  There has to be a new petition to

14   start, if you dispute.

15      Regarding why there has to be a new petition as opposed to

16  some sort of supplement, the new petition is supposed to

17  contain all of the information that is necessary for EPA to

18  make a decision.

19      Remember, the first petition that plaintiffs submitted to

20  EPA four years ago really didn't have any of the information

21  that has been presented to the Court.  And plaintiffs' attempt

22  to do this supplement really was not sufficient.  It did not

23  contain all of the information needed for EPA to make a

24  decision.  So what EPA wants is for plaintiffs to go through

25  the administrative process.

1          And, the administrative process is designed in a way to be

2     streamlined.  Plaintiffs are supposed to present all of the

3     evidence in one document to the Agency, such that EPA can

4     answer the petition within 90 days.  It's supposed to be the

5     most efficient way to answer this question.  Litigation takes

6     much more time, is much more complicated, and is

7     resource-intensive.  That's why this dispute should be resolved

8     through the administrative process.

9               **THE COURT:**  Let me hear from the plaintiffs.

10         Why -- why not -- especially, there's going to be yet more

11    information.  Why not file a new petition, as opposed to the

12    alternative of a further supplemental petition?

13              **MR. CONNETT:**  Well, first, Your Honor, as we pointed

14     out in our supplemental petition and in some of the briefing

15     in this case, EPA has repeatedly recognized in the past that

16     it has the discretion to reconsider a prior denial of a

17     petition, without having a new petition.  So, so there's

18     nothing at all that stops the Agency from exercising its

19     discretion if we were to submit a supplemental petition, which

20     we're happy to do, Your Honor.

21         There's nothing -- according to EPA's own repeated

22    admissions in the past, there's nothing that precludes the

23    Agency from exercising its discretion to consider that

24    supplemental evidence, and to reconsider its prior denial.  I

25    did not hear an explanation from counsel as to why that would

1    not be an appropriate course of action.

2        And if the concern of counsel is that we're not going to

3    include all the information, and we're going to do it in a

4    piecemeal fashion, we can address that concern, Your Honor, by

5    simply providing to EPA in the supplemental all of the evidence

6    that we think is sufficient to establish a risk.  So there

7    shouldn't be any concern there.  We will present a

8    comprehensive presentation of all of the evidence, including

9    the final NTP report.

10        Our concern, Your Honor, in terms of filing a new

11   petition, our concern -- our apprehension is that under the

12   statute as written, the -- a new petition may trigger a

13   requirement for entirely new litigation, which is

14   fundamentally counter to the interests in judicial efficiency

15   and judicial economy that Rule 15 seeks to promote.

16        So we believe, Your Honor, it makes sense for all

17   parties, including the EPA, to have this resolved in this

18   case, rather than to redo everything simply because EPA wants

19   us to fashion it as a new petition.  We've been working on

20   this case now for four years.  I can't -- the prejudice to

21   plaintiffs would obviously be quite profound.  We would be

22   stuck litigating, for three or four more years, an entirely

23   new litigation.

24        Whereas if we take this approach, Your Honor, where

25   plaintiffs were to submit a supplemental petition which would

1  include the NTP's final report to the EPA, we can, I think,

2  deal with these issues in a much more efficient manner.

3  Which, again, is precisely what Rule 15 encourages.  Rule 15

4  strongly favors deciding and resolving all issues in one

5  litigation, if it's possible.

6      And it's absolutely possibly here.  EPA has recognized it

7  has the authority, it has the discretion to reconsider the

8  denial of a prior petition through a supplemental petition.

9  There is nothing that stops the Agency from doing that here.

10     I think, Your Honor, that is the course of action that

11  will save all parties, including the Court, resources.

12         **THE COURT:**  Well, what I find helpful to this

13  analysis is the actual denial of the reopening was a

14  substantive denial.  I mean, the EPA looked at the evidence,

15  commented on that, commented upon the state of the NTP study.

16  And, and, and essentially found that this was not sufficient

17  to warrant reopening.  So it was kind of a merit-based

18  assessment.  And it is evident to me that the EPA does have

19  the discretion to reopen, if it thinks that the evidence

20  warrants it.

21     And so I think the path that I'm tentatively charting --

22  and that is, number one, to allow the amendment, but two, to

23  essentially continue to hold this case in abeyance until at

24  least the NTP study is complete, and at the appropriate time,

25  direct the plaintiffs to file another supplemental petition to

1    give the EPA an opportunity, with this new evidence completed,

2    to -- to see if it wants to reopen, and give it a chance to

3    look at -- reweigh the merits of this thing.

4        And if it doesn't, then I think this Court will have

5    fulfilled -- even though it is not technically required, will

6    have fulfilled the -- what I consider the important comity

7    considerations of allowing the Agency an opportunity -- they

8    don't have to -- but an opportunity, a full opportunity to look

9    at the record that we're going to be looking at, for the most

10   part.

11       I understand things continue to evolve, and there may be

12   new studies.  So month to month, things may change.  But at

13   least the major developments, the major benchmarks, which at

14   this point appear to me to be the NTP final monograph,

15   especially in response to the concerns raised by the National

16   -- by the National Academy, you know, is just something that is

17   going to be important.

18           **MR. CONNETT:**  (Nods head)

19           **THE COURT:**  And so I'm going to allow the

20   amendment -- allow the standing allegations to go forward.

21   And, and allow the amendment -- and the fact that the -- the

22   amended complaint includes, you know, some additional stuff,

23   that's -- frankly, that's not going to -- that's not

24   dispositive to what the end result is going to be, which is

25   either:  Upon reconsideration the EPA decides to take action,

1   or if not, it's back in this -- in this Court's court, in

2   which case my intent would be to reopen the record, and we're

3   going to have a sort of phase-two trial.

4        I don't like to do that, but this is so important, and the

5   evolving science is so material, I don't see how we can ignore

6   that.

7             **MR. CONNETT:**  (Nods head)

8             **THE COURT:**  And so the EPA will get its full

9   opportunity, if it wants to challenge the standing at that

10  point, of the -- you know, of the association, you know, we

11  can do so.  If it wants, you know, to put in more evidence

12  about Ms. Trader.  But frankly, the bigger question is: What's

13  the science?

14       But this way there's, I think, minimal prejudice to the

15  EPA.  EPA will have, as an agency, an opportunity to review

16  before we do anything the evidence that I think is important,

17  once it gets developed.  It will have an opportunity, if it

18  wants, to inquire into Ms. Trader and to challenge her

19  standing.  And so I don't see any prejudice from that.  It

20  makes sense from a judicial-economy point of view, and

21  maintains the comity and respect of the EPA that I want to give

22  to the EPA.

23       So I'm going to grant the motion, but continue to stay

24  this case, pending developments on the scientific front.

25            **MS. CARFORA:**  Your Honor, can I ask a couple of

clarifying questions?

**THE COURT:** Yeah.

**MS. CARFORA:** The first, I just want to make sure that it's kind of clear to everybody at the hearing, I want to make sure that what I'm hearing is the same thing that what Mr. Connett may be hearing.

And so for clarification, I think what I hear the Court saying is: Let's wait until NTP is finalized and published. Once that's done, plaintiffs can choose whether or not they want to submit a new petition to EPA, or otherwise want to try to seek reconsideration again -- even though it will be six years later -- of that petition.

And then at that time, EPA will have their opportunity to consider the record, issue a decision as to either the new petition or the reconsideration. And at that time we would come back to the Court, I assume, to seek a status conference or something, and that everything will be stayed, including discovery, until after all of that process happens.

**THE COURT:** That's my intent, is to allow the science to develop, bring it back, at least give the EPA an opportunity to revisit it, because that's kind of part of the indication in its denial. And then if it doesn't get resolved at that level, we resume here, and we'll pick up where we left off. Albeit -- I don't know how many month or year gap, but after some gap. But given the development of the science, I

1    think it is the right thing to do.

2            **MS. CARFORA:**  And will the Court issue an order that

3    addresses the standing stipulation?

4            **THE COURT:**  Yeah.  I will.  They'll have the

5    discretion to essentially override that stipulation, or take

6    orders beyond that.  And I find that the circumstances, based

7    on what we -- I understand the -- the elements necessary, and

8    I will issue an order so stating.

9            **MS. CARFORA:**  Thank you, Your Honor.

10           **THE COURT:**  All right?

11           **MS. BHAT:**  Your Honor, may I also ask, will EPA be

12   responding to the supplemental pleading now?  Or, because the

13   case is going into abeyance, will EPA's deadline --

14           **THE COURT:**  I don't see a need to.  I mean, rather

15   than -- I mean, I suppose if you see an obvious problem with

16   the motion to dismiss, I mean, maybe we should hear it.  On

17   the standing question.  If you think that these allegations

18   are not sufficient to establish standing, you have the right

19   do that.

20       And maybe we should -- if you've got -- if there is an

21   issue there, you think, notwithstanding the amendment, that

22   there's still no standing, maybe we ought to adjudicate that.

23   Because I don't want to go through all this and then we find

24   out, you know, nine months later that there's a standing

25   problem.  I think maybe we should clear that issue.

1          **MS. BHAT:**  Your Honor, I think we would need more

2     discovery on this, on the standing question.  And so we're

3     happy to just have our deadline be tolled in terms of

4     responding to the pleading until we can have that discovery.

5          **THE COURT:**  I'll toll it for now.  But I don't want

6     to -- if you think you have a standing problem, I don't want

7     to wait until after trial or, you know, after we've geared up

8     for trial a second time, or do all this stuff, find out.  I

9     want to resolve that.

10         So what I think I'll do is this.  Let's set a status

11    conference for, let's say, 120 days out.  And at that point, I

12    will -- if you haven't already decided to bring a motion, I'll

13    set a deadline for bringing any challenge -- at least, a

14    standing challenge to the complaint, so we can get that issue

15    out of the way.

16         **MS. CARFORA:**  Well, Your Honor, just to clarify,

17    though, doesn't that somewhat put the cart before the horse,

18    so to speak, in that we don't know if there's a challenge to

19    standing because we don't know what the next administrative

20    petition looks like.

21         So that is, if the science develops between now and

22    whenever NTP gets developed, and petitioners file a new

23    petition or otherwise seek reconsideration and they have

24    different grounds for their petition, then we won't know

25    whether there's a standing issue --

1      **THE COURT:**  No, but I think you know -- based on the

2   petition now, based on the complaint, we can make a standing

3   analysis, as it stands now.  And so there's no mystery.  I

4   don't think it's that complicated.

5      So I am going to -- I do want to adjudicate the standing

6   issue, at least, based on the current record.  Now, if it

7   changes, you know, if the theory changes or something else, I

8   -- I'm hard-pressed to imagine what that would be.  But if

9   somehow that changes, that may be without prejudice to a second

10  motion for judgment on the pleadings or some other, you know,

11  dismissal aspect.

12     But I want to at least get the threshold questions out of

13  the way.  So, we'll set a date at that point for any motion to

14  dismiss on standing.

15     And it sounds like the NTP said they are going to --

16  sometime this year, they're going to complete their report.  We

17  don't know when, so it may be still months away.  But at least,

18  set 120 days, we'll have a better sense.

19     So Angie, why don't we set a status.  Four months from now

20  would be in August.

21     **THE COURTROOM DEPUTY:**  August 26, Your Honor, at

22  10:30.

23     **THE COURT:**  Does anybody have any idea when the --

24  how long it might take for the pooled study and the Spanish

25  study to be -- for peer review to be completed, and if it's

1    going to be published?  How long do these things normally

2    take?

3              **MR. CONNETT:**  For the pooled analysis, Your Honor, we

4    don't have a date.  But we do understand it's undergoing peer

5    review now, and that it's -- that it may be published in the

6    near term.

7              **THE COURT:**  Okay.

8              **MR. CONNETT:**  Maybe a month or two.  But obviously,

9    there's no way of knowing for sure.

10             **THE COURT:**  It sounds likely in this year.

11             **MR. CONNETT:**  Yes.  I do think that's the case.

12             **THE COURT:**  How about the Spanish study?  What do we

13   know about that?

14             **MS. BHAT:**  We -- Your Honor, it will be hard to give

15   a good estimate.  We just don't have that information.

16             **THE COURT:**  Do you know if it is under going peer

17   review, as we speak?

18             **MS. BHAT:**  As we understand, the authors are planning

19   to submit it for publication.  But I'm not sure where they are

20   in that process.

21             **THE COURT:**  Okay.  Well, the more information, the

22   better, is all I can say.  But, that's -- I think the key's

23   NTP.  I think we all realize that.  So we'll -- we'll see.  So

24   we'll know more in 120 days from now.  Maybe the pooled study

25   will be published by then.

1        **MR. CONNETT:**  Your Honor, just one point of

2   clarification with respect to the deadline on a motion to

3   dismiss for standing, if the EPA was to pursue that route.

4        Did you say that that would need to be filed before the

5   status conference on --

6        **THE COURT:**  No.  I'm going to set it at the status

7   conference.

8        **MR. CONNETT:**  Okay.

9        **THE COURT:**  Probably in short order after that.  So I

10  expect to resolve that problem sooner.  So that's what we'll

11  talk about at that point.

12       All right.  So, we'll see you in August.

13       **MR. CONNETT:**  Thank you, Your Honor.

14       **THE COURT:**  Thank you everyone.

15       **MS. BHAT:**  Thanks, Your Honor.

16       **MS. REEVES:**  Thank you.

17       (Proceedings concluded)

## CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Friday, September 30, 2022