BRANDON N. ADKINS
PAUL A. CAINTIC
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Email: Brandon.Adkins@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al.,<br><br>                Plaintiffs,<br><br>       v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>                Defendants. | Case No. 17-CV-02162 EMC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO LIFT STAY TO DECIDE MERITS ON TRIAL RECORD**<br><br>Date:    October 26, 2022<br>            (rescheduled per ECF No. 313)<br>Time:   3:30 p.m.<br>Place:  Via Zoom Webinar |

EPA submits the following reply in support of its cross-motion to lift the stay to decide the merits of this case on the trial record.[1] EPA Opp'n & Cross-Mot., ECF No. 309.

**First**, **the parties agree that the Court should lift the abeyance and decide the merits of this case based *only* on the trial record**. *See, e.g.*, Pls.' Reply 1, ECF No. 312 ("Plaintiffs . . . would *not* object to the Court issuing its determination without taking further evidence (other than the supplemental facts on standing)."). Indeed, of the two options for relief that Plaintiffs request from this Court, Plaintiffs' option A is to "render a determination based on the current trial record (as EPA proposes)." *Id.* Rarely have EPA and Plaintiffs been in such firm agreement. The Court, too, agreed that the trial record was sufficient to render a decision on the merits. *See* EPA Opp'n & Cross-Mot. 5.

Since Plaintiffs filed their motion and EPA filed its cross-motion, counsel for the parties have conferred and agreed to a process by which Plaintiffs would offer evidence to substantiate the Supplemental Standing Allegations that the Court permitted Plaintiffs to add to their complaint.[2] *See* Order Granting Pls.' Mot. for Leave, ECF No. 290; Pls.' Reply 8 n.6. Thus, the Court could resolve the pending motions entirely (and on consent of the parties) by lifting the abeyance only to decide the merits of the case on the trial record and nothing else.

**Second**, **if the Court is disinclined to decide the merits based *only* on the trial record now, the Court should keep the case in abeyance until NTP concludes its process with respect to the Systematic Review**. EPA Opp'n & Cross Mot. 8–11. EPA respectfully urges the Court to avoid an unnecessary dispute about whether and when there should be a second round of discovery and trial by deciding the merits of the case based only on the trial record. If the Court is to reopen the merits record at all, the Court should keep the case in abeyance until NTP concludes its process regarding the Systematic Review.

---

[1] Defined terms have the same meaning that is attributed to them in EPA's Opposition and Cross-Motion.

[2] EPA's agreement to the process is expressly without waiver of its rights to argue on appeal, if appropriate, that the Court should have dismissed for lack of standing after trial and should not have permitted Plaintiffs to supplement their complaint with new standing allegations or otherwise to correct Plaintiffs' standing deficiencies after trial.

As an initial matter, Plaintiffs' contentions that NTP has already "finalized" its Systematic Review or that a May 2022 draft of the Systematic Review is the "'final' report that the parties and the Court have been waiting for" are plainly wrong. *See* Pls.' Reply 5, 13. NTP has not yet concluded its process with respect to the Systematic Review or published a final report. In fact, NTP has not published any of its interim drafts either. Indeed, the two drafts that were made public—dated September 6, 2019, and September 16, 2020—were released through NASEM's website as part of NASEM's normal practice ahead of peer-review meetings. *See, e.g.*, Carfora Decl. ¶ 21, ECF No. 113-1.[3] Moreover, the cover page of the 2020 revised draft states, "[This DRAFT Monograph] has not been formally disseminated by NTP. It does not represent and should not be construed to represent any NTP determination or policy." *See* ECF No. 270-4. A similar disclaimer appears on every subsequent page of the draft. As Plaintiffs have acknowledged, "[t]he conclusions of [NTP's] draft review . . . will not necessarily reflect the conclusions in the final report." Pls.' Opp'n to Mot. to Enlarge Time 2, ECF No. 114. While it is true that Dr. Woychik's declaration referred to "potential publication" of the Systematic Review, there was never any guarantee of the results of NTP's process.

To address EPA's prejudice caused by allowing Plaintiffs to supplement their complaint with selected scientific studies, the Court ordered that it would allow EPA to submit evidence regarding the *final* NTP Systematic Review, among other studies. *See* EPA Opp'n & Cross-Mot. 8–9 (citing Order Granting Pls.' Mot. for Leave 12). Now, in their alternative request, Plaintiffs seek to embark on a second round of discovery and trial before NTP has concluded its process with respect to its Systematic Review. Plaintiffs essentially ask the Court to reverse part of its prior decision with respect to EPA's prejudice while allowing their supplemental allegations regarding

---

[3] NASEM's website provided links to download the drafts as part of its "Meeting Materials." *See* NASEM, Peer Review of NTP Monograph (In Person Meeting 1), https://www.nationalacademies.org/event/11-06-2019/peer-review-of-the-ntp-monograph-on-systematic-review-of-fluoride-exposure-and-neurodevelopmental-and-cognitive-health-effects-in-person-meeting-1 (September 6, 2019 draft); NASEM, Review of Revised NTP Monograph (Meeting 2), https://www.nationalacademies.org/event/10-19-2020/review-of-the-revised-ntp-monograph-on-fluoride-exposure-and-neurodevelopmental-and-cognitive-health-effects-meeting-2 (September 16, 2020 draft).

select scientific studies (which caused EPA's prejudice) to remain in place. This is fundamentally unfair, and doing so would unfairly prejudice EPA for the same reasons that the Court already found to be persuasive.[4] *See* Order Granting Pls.' Mot. for Leave 12; *see also* Opp'n to Mot. to Amend Pleadings 6–10, ECF No. 285.

Plaintiffs' shifting positions with respect to NTP's Systematic Review do not reflect a true interest in following an objective scientific approach to its conclusion. Rather Plaintiffs wish to cherry pick statements in the NASEM peer reviews and interim drafts of NTP's Systematic Review and then "elaborate on them" with expert testimony. Pls.' Reply 9 & n.9. Plaintiffs express a preference for the Court to consider the 2020 draft Systematic Review but question the credibility of NTP's final Systematic Review (before NTP has even had a chance to conclude its process). *Id.* at 8–9. By no coincidence, the 2020 draft Systematic Review contains the former "presumed hazard" conclusion that NASEM criticized and NTP subsequently removed. *See* Woychik Decl. ¶ 5, ECF No. 309-1. Further, Plaintiffs speculate—primarily based on hearsay—that NTP's process is subject to "political pressures." EPA Opp'n & Cross-Mot. 9.[5] That other Department of Health and Human Services entities are reviewing NTP's draft Systematic Review in no way demonstrates some improper influence on NTP's process. Pls.' Reply 5. Indeed, earlier in this case, Plaintiffs celebrated the virtues of NTP's review process. *See* Pls.' Opp'n to Mot. to Enlarge Time 2 ("NTP's draft will undergo 12 months of peer review by the National Academy of Sciences . . . and will be subject to extensive public comments which 'are an integral part of the process.' *Synthetic Organic Chem. Mfrs. Ass'n v. Sec'y, Dep't of Health & Human Servs.*, 720 F. Supp. 1244, 1250–51 (W.D. La. 1989)."). Plaintiffs' support of peer review appears to wane when it may result in scientific conclusions that may contradict their beliefs about the alleged risk of adding

---

[4] To be clear, EPA's prejudice from Plaintiffs' supplemental allegations regarding select scientific studies is not an issue if the Court decides the merits of the case based only on the trial record.

[5] Plaintiffs double-down on their reliance on speculation and hearsay by citing EPA workplace survey responses and advocacy and press reports regarding untested (and irrelevant) allegations in a statement questioning EPA's capacity to carry out its TSCA obligations. *See* Pls.' Reply 12 nn.11–13. The Court should disregard Plaintiffs' arguments and the cited documents because they are not relevant to the instant motion and not admissible.

fluoridation chemicals to drinking water. And if the Court permits a second round of discovery and NTP finalizes its Systematic Review thereafter, Plaintiffs appear likely to try to take discovery that is wholly irrelevant to the underlying science. *See, e.g.*, Pls.' Reply 5 (speculating that NTP's Systematic Review is being "influenced" by "partisan interests").

Before considering whether to order the parties to conduct a second round of discovery and trial, the Court should wait until NTP concludes its process with respect to the Systematic Review to avoid undue prejudice to EPA.

**Third**, **Plaintiffs do not meaningfully contest EPA's demonstration that a second trial would be unfairly prejudicial to EPA**. EPA Opp'n & Cross-Mot. 13–15; *see* Pls.' Reply 12. Plaintiffs' suggestion that prejudice to EPA should be discounted because of the purported policy interests in TSCA section 21 against "bureaucratic lethargy" is unavailing. Pls.' Reply 12. The costs and burdens that EPA articulated if forced to undergo a second round of extensive discovery, including having to identify another expert epidemiologist, are not "bureaucratic lethargy." Rather, the prejudice EPA articulated would apply equally if it were a non-governmental party. Moreover, that prejudice would be a result of allowing Plaintiffs—after trial—to expand the record further beyond what was before the agency when it considered the 2016 petition. Indeed, doing so is *not* consistent with the exhaustion principles reflected in the citizen petition provisions of TSCA section 21. EPA Opp'n & Cross Mot. 12–13. And a second round of discovery and trial would only further delay finality in the district court proceeding, which is in fact the opposite of the "policy interest" that Plaintiffs attempt to invoke. EPA has committed significant resources to consideration of Plaintiffs' petition and litigating this case and is entitled to a decision. *See* Fed. R. Civ. P. 1.

Plaintiffs represent that they will restrict themselves to requesting a single document in a second round of fact discovery (what they refer to as the "May 2022 NTP report"). Pls.' Reply 10–11. But this says nothing of the far-ranging scope of expert discovery they intend to engage in with respect to over a dozen new studies, including more epidemiological research concerning an entirely new birth cohort that "Plaintiffs believe will be probative." *Id.* at 11 n.10.

Rather than justify their request for a second round of discovery, Plaintiffs rely on selective statements by the Court at the hearing on Plaintiffs' motion to supplement the complaint. *Id.* at 10. Plaintiffs ignore that the Court simultaneously expressed an intent to direct them to submit a new or supplemental petition to EPA with recently published scientific studies (including the final NTP Systematic Review). Hr'g Tr. 16:16–21 (Apr. 22, 2021) ("That's my intent, is to allow the science to develop, bring it back, at least give the EPA an opportunity to revisit it, because that's kind of part of the indication in its denial. And then if it doesn't get resolved at that level, we resume here, and we'll pick up where we left off."); *see also* Order Granting Pls.' Mot. for Leave 12. In any event, Plaintiffs make no attempt to shoulder their burden to justify reopening discovery and conducting a second trial, as they request as an alternative form of relief. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017); Civil L.R. 37-3; *see also* EPA Opp'n & Cross-Mot. 11–12.

Finally, Plaintiffs' effort to confer over the scope of discovery after they filed the instant motion and after EPA submitted its opposition and cross-motion puts the cart before the horse. Pls.' Reply 11 & Connett Decl. Ex. W. In the event the Court were to order the parties to conduct a second round of discovery and trial, the Court should first direct counsel to confer regarding the scope and schedule for additional discovery. *Cf.* Fed. R. Civ. P. 26(f).

## CONCLUSION

For the foregoing reasons, the Court should lift the abeyance only to decide this case on the trial record, which is the path forward on which the parties are in agreement. Alternatively, if the Court does not lift the abeyance to decide this case now based only on the trial record, the Court should keep the case in abeyance until NTP concludes its process with respect to its Systematic Review so as not to unfairly prejudice EPA. At such point, the parties can confer over the scope of any further proceedings.

Date: October 11, 2022
Washington, D.C.

Respectfully Submitted,

*/s/ Brandon N. Adkins*
BRANDON N. ADKINS
PAUL A. CAINTIC
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174 (Adkins)
Tel: (202) 514-2593 (Caintic)
Fax: (202) 514-8865
Brandon.Adkins@usdoj.gov
Paul.Caintic@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October, 2022, a true and correct copy of the foregoing Reply in Support of Defendants' Cross-Motion to Lift Stay to Decide Merits on Trial Record was filed electronically with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                       */s/ Brandon N. Adkins*
                                                       Brandon N. Adkins
                                                       United States Department of Justice