UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Case No.  17-cv-02162-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO LIFT THE STAY AND TAKE CASE OUT OF ABEYANCE**<br><br>Docket No. 306 |

Plaintiff Food & Water Watch, Inc. ("FWW") filed suit against Defendant Environmental Protection Agency ("EPA") after its administrative petition—requesting the initiation of rulemaking pursuant to the Toxic Substances Control Act, 15 U.S.C. §2620 ("TSCA") to prohibit the addition of fluoridation chemicals to drinking water to protect the public from neurotoxic risks—was denied by the agency.  After a bench trial, the Court stayed the case.  FWW filed a motion to lift the stay and take the case out of abeyance.

For the following reasons, the Court **GRANTS** FWW's Motion to Lift Stay and Take the Case Out of Abeyance with limited post-trial discovery.

## I.        BACKGROUND

FWW is a national nonprofit advocacy organization that educates consumers about food and water health safety.  Docket No. 1 ("Compl.") ¶¶ 29–30.  Its members live in fluoridated communities across the United States. Compl. ¶ 31.  In 2016, FWW petitioned EPA to initiate a proceeding to issue a rule under 15 U.S.C. §2605 prohibiting the addition of fluoridation chemicals to public drinking water supplies.  Compl. ¶ 24.  EPA denied the petition.  Compl. ¶ 25.

FWW filed suit in district court for de novo review under 15 U.S.C. § 2620(b)(4)(B).

1    Compl. ¶ 106.  After the parties engaged in fact and expert discovery, the Court held a 7-day

2    bench trial, which included extensive expert testimony regarding the state of the scientific research

3    on fluoride neurotoxicity.  Docket No. 219, 238.

4            On August 10, 2020, the Court stayed the case over concerns about FWW's standing.

5    Docket No. 262 ("Stay Order").  The Court also explained that the stay would allow EPA to

6    consider scientific studies published after EPA's denial of FWW's administrative petition (e.g.,

7    pooled analysis of the ELEMENT/MIREC data,[1] Spanish birth cohort study[2]) and allow the Court

8    to consider the imminent publication of the National Toxicology Program's ("NTP") systematic

9    review "Monograph on the Systematic Review of Fluoride Exposure and Neurodevelopmental and

10   Cognitive Health Effects."  *Id.* at 3–4.  The Court directed FWW to "file a new petition with EPA

11   . . . to address the serious standing issues [and] afford EPA an opportunity to consider the

12   significant scientific developments that have occurred since the original petition was filed."  *Id.* at

13   4–5.  FWW filed a supplemental administrative petition for reconsideration to the EPA.  Docket

14   No. 270.  EPA again denied the petition.  Docket No. 278.

15           On September 12, 2022, FWW filed this motion to lift the stay and take the case out of

16   abeyance.  Docket No. 306 ("MLS").  FWW asked the Court to consider supplemental allegations

17   about standing and the scientific developments that have occurred since the June 2020 trial,

18   including the ELEMENT/MIREC analysis, the Spanish study, and the most recent 2022 NTP draft

19   and peer reviews.  EPA filed an opposition and cross-motion that the case should come out of

20   abeyance only to be decided on the June 2020 trial record.  Docket No. 309 ("Opp.").  FWW filed

21   a reply.  Docket No. 312 ("FWW's Repl.").  EPA filed a reply in support of its cross-motion.

22   Docket No. 313 ("EPA's Repl.").

23                          **II.      MOTION TO LIFT THE STAY**

24           The Court now lifts the stay.  A district court has "broad discretion" to stay proceedings.

25   *Clinton v. Jones*, 520 U.S. 681, 683 (1997).  "The corollary to this power is the ability to lift a stay

26

27   _____
     [1] Docket No. 291-1.

28   [2] Docket No. 279, at 7; Docket No. 278-1, at 6–7.

2

United States District Court
Northern District of California

1    previously imposed." *Boyle v. Cty. of Kern*, No. 1:03-cv-05162, 2008 WL 220413, at *5 (E.D.

2    Cal. Jan. 25, 2008). "Courts within the Ninth Circuit have recognized that 'the court may abandon

3    its imposed stay of litigation if the circumstances that persuaded the court to impose the stay in the

4    first place have changed significantly.'" *Tribe v. U.S. Bureau of Reclamation*, No. 19-CV-04405-

5    WHO, 2021 WL 4482117, at *3 (N.D. Cal. Sept. 30, 2021).

6         As a preliminary matter, FWW appears to have cured its standing defects. In its stay order,

7    this Court explained that it had serious concerns regarding standing:

8              [T]he evidence at trial focused on whether fluoride poses a threat of
               neurotoxic harm during critical developmental periods, such as the
9              gestational and neonatal periods . . . None of the standing Plaintiffs
               in this case claim to be subject to that risk of harm; there are no
10             allegations that the named Plaintiffs are pregnant, planning to
               become pregnant, or caring for infants.
11

12   Stay Order, at 1–2. Since the stay was imposed, one of the Plaintiffs, Jessica Trader, became

13   pregnant with her first child in December 2020 and plans to have several more children. Docket

14   No. 279-1 ¶¶ 40–45. Ms. Trader's pregnancy satisfies Article III standing. Article III standing

15   requires three elements: (1) an injury-in-fact that is concrete and particularized and actual or

16   imminent, (2) a causal connection between the injury and the conduct complained of, and (3)

17   probable redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, the

18   neurodevelopmental harm from fluoride exposure to Ms. Trader's child and future children is

19   concrete and imminent; there is a credible causal connection between that neurodevelopmental

20   harm and EPA's regulation of fluoride exposure or lack thereof; and the harm would likely be

21   redressed if EPA were to pass a rule prohibiting the addition of fluoridation chemicals to public

22   drinking water supplies. Indeed, EPA has not since filed any motion to dismiss for lack of

23   standing and previously conceded that standing would be satisfied by "someone who is an

24   expectant parent who—who could be consuming fluoridated water, and, and—that could have

25   potential effects on the baby she's carrying in utero. It could be a potential—a parent, someone

26   with very young children." Docket No. 133 at 14:9–17. FWW has satisfactorily addressed the

27   Court's questions regarding standing such that a stay is no longer warranted based on standing

28   concerns.

United States District Court
Northern District of California

1   The Court lifts the stay without awaiting the publication of the final publication of the NTP

2   review.  In granting and lifting stays, a court must weigh "the length of the stay against the

3   strength of the justification given for it."  *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000).  "If

4   a stay is especially long or its term is indefinite, we require a greater showing to justify it."  *Id.*

5   "Generally, stays should not be indefinite in nature."  *Dependable Highway Exp., Inc. v.*

6   *Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).  At the time the Court imposed the stay,

7   the Court explained that "release [of the final NTP review] . . . is imminent, and its findings are

8   likely to add substantially to the body of scientific analysis relevant to the precise questions before

9   this court."  Stay Order, at 4.  But as of today, the circumstances no longer support awaiting the

10  final publication of the NTP review.  First, the final publication is no longer "imminent" because

11  the NTP may never publish the final version.  Here, EPA anticipates the following publication

12  timeline:

> Looking forward, NTP currently anticipates that the membership of
> the working group assisting the BSC with this review will be
> finalized by November 2022 and that the working group can report
> on its findings to the BSC [Board of Scientific Counselors] at a
> public meeting in early 2023.  *Id.*  ¶ 7.  After the BSC makes its
> recommendations, Director Woychik will decide about potential
> publication and dissemination of the State of the Science
> Monograph and the Meta-Analysis Manuscript.  *Id.* ¶ 8.

18  Opp. at 10 (citing Docket No. 309-1 (Declaration of Richard Woychik ("Woychik Decl."))).  NTP

19  Director Woychik's statements indicate that publication is not guaranteed.  Woychik Decl. ¶ 8.

20  Woychik may decide that the review has no publication potential and should not be disseminated,

21  though the likelihood and timing of publication is a matter which may warrant further

22  examination, including potential examination of Director Woychik.  While an "indefinite" stay is

23  not necessarily fatal to maintaining a stay, EPA does not provide a "great showing to justify it."

24  *Yong*, 208 F.3d at 1119.

25   Second, the Court's decision to wait because scientific developments prior to the final

26  publication would "shed important light on the issues contested in this case" no longer carries as

27  much weight.  Stay Order, at 4.  The two relevant scientific studies (*e.g.*, the ELEMENT/MIREC

28  analysis, the Spanish study) have since been published in peer reviewed journals.  The NTP

4

1    systematic review has since undergone three additional rounds of peer review, resulting in a

2    revised May 2022 draft.  The Court lifts the stay to permit discovery—focused on obtaining the

3    May 2022 draft to share with the parties and the Court so that the Court may assess future

4    scheduling (including whether the next phase of trial should await the final publication of the NTP

5    report).

6          The Court rejects EPA's suggestion that all post-trial scientific developments should be

7    excluded from consideration and that the case should be decided now on the trial record from the

8    June 2020 bench trial.  Opp. at 1.  The evolving science and the narrow, targeted scope of

9    discovery warrant consideration of the scientific developments; that was a primary purpose of the

10   Court's stay.  *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1072 (9th Cir. 2017)

11   (holding that the district court abused its discretion in denying a motion to reopen discovery and

12   constraining the evidence to an outdated 2011 scientific report when, by 2015, "[t]he record

13   demonstrates that the science of stable isotope analysis evolved significantly during this case's

14   first journey through the appellate system").  Indeed, the revised May 2022 NTP review appears to

15   be relevant and could be relied upon by experts under the Federal Rules of Evidence.  *See* Fed. R.

16   Evid. 702, 703.

17         Thus, FWW's motion to lift the stay is **GRANTED**.  Without opining upon the

18   admissibility or weight of the evidence, the Court lifts the stay to allow for production of the May

19   2022 NTP draft review subject to a protective order, as the government has properly stated a

20   concern that an unpublished draft should not be disseminated to the public at this juncture.

21   Having the draft review will help the Court determine future scheduling.  The Court lifts the stay

22   to permit commencement of expert review of the new scientific evidence.  However, the timing of

23   further expert disclosures and depositions should await further scheduling by this Court.

24   ///

25   ///

26   ///

27   ///

28   ///

United States District Court
Northern District of California

1    The Court sets a further status conference to discuss future scheduling for January 10,

2  2023, at 2:30 p.m. via Zoom.  The parties shall file a joint status report by January 3, 2023.

3    This order disposes of Docket No. 306.

4

5    **IT IS SO ORDERED**.

6

7  Dated: October 28, 2022

8

9  _____

10  EDWARD M. CHEN
   United States District Judge

United States District Court
Northern District of California