BRANDON N. ADKINS
PAUL A. CAINTIC
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Email: Brandon.Adkins@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al.,<br><br>       Plaintiffs,<br>   v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>       Defendants. | Case No. 17-CV-02162 EMC<br><br>**DEFENDANTS' ADMINISTRATIVE MOTION TO GOVERN FUTURE PROCEEDINGS** |

The Court lifted the stay for the limited purpose of allowing Plaintiffs to take discovery on two draft National Toxicology Program ("NTP") documents. The Court directed Plaintiffs to submit the drafts to the Court under seal to assist the Court in deciding whether to set a schedule for expert discovery and trial. Pursuant to Local Rule 7-11, EPA respectfully requests that the Court wait to schedule expert discovery deadlines and trial until NTP completes its process with respect to the draft documents. The Court should instead set a status conference in six months and direct the parties to submit a proposed schedule one week in advance of that status conference.

## BACKGROUND

In September 2022, Plaintiffs moved to take the case out of abeyance. ECF No. 306. EPA opposed Plaintiffs' motion and filed a cross-motion to lift the stay. ECF No. 309. EPA argued that the Court should lift the stay only to decide the merits on the trial record, but, if the Court does not decide the case now based only on the trial record, the Court should keep the case in abeyance until NTP completes its process with respect to its systematic review of fluoride.

NTP's review has generically been referred to as the "draft monograph" throughout this litigation. *See, e.g.*, Pls.' Opp'n to Defs.' 3d Mot. in Limine 1, ECF No. 141. To be precise, NTP has now split its review into two separate draft documents: a State of the Science Monograph (consisting of a systematic review without a "hazard conclusion") and a Meta-Analysis Manuscript (consisting of a quantitative statistical analysis of epidemiologic studies). First Woychik Decl. ¶ 5, ECF No. 309-1. Depending on the results of its review process, NTP would publish the State of the Science Monograph itself, whereas the Meta-Analysis Manuscript would be submitted to a peer-reviewed scientific journal for publication. 2d Woychik Decl. ¶ 25, Exhibit A (attached).

The Court lifted the stay to permit production of a May 2022 draft of NTP's monograph subject to a protective order and "to permit commencement of expert review of the new scientific evidence." Order Granting Pls.' Mot. to Lift Stay 5, ECF No. 319. The Court ordered that "the timing of further expert disclosures and depositions should await further scheduling by this Court." *Id.* The Court directed Plaintiffs to file NTP's drafts under seal because they might "inform [the Court], then, when we get together in January, what might be the schedule." Hr'g Tr. 29:17–23 (Oct. 26, 2022).

On December 14, 2022, Plaintiffs filed under seal a six-page "notice" to which they attached a draft of the State of the Science Monograph, two drafts of the Meta-Analysis Manuscript, and five emails.[1] ECF No. 329. A status conference is set for January 12, 2023.

## ARGUMENT

The Court should continue to wait to schedule expert discovery deadlines or trial to allow NTP more time to complete its review process. EPA requests that the Court set a status conference in six months and direct the parties to submit proposed deadlines one week in advance.

NTP appears to be close to completing its process with respect to the State of the Science Monograph and Meta-Analysis Manuscript. In February 2022, Richard P. Woychik, Ph.D., the director of NTP, asked the NTP Board of Scientific Counselors ("BSC") to evaluate (with the assistance of a working group) comments and concerns raised by agency subject-matter experts and NTP's responses to those concerns regarding the Meta-Analysis Manuscript and, in June 2022, expanded that request to include NTP's response to the reviews of the State of the Science Monograph. 2d Woychik Decl. ¶¶ 17–20. As Dr. Woychik had anticipated, subject-matter experts have now been identified for the working group assisting the BSC after being screened to prevent conflicts of interest, and the working group began its evaluation in October 2022. *Id.* ¶ 21. Dr. Woychik currently expects that the working group will present its report at a BSC meeting in early 2023. *Id.* ¶ 22. The BSC meeting will be open to the public, and, following NTP's standard process, the BSC could accept the working group report and convey it to Dr. Woychik as written, revise the report and convey the revised report, or offer other recommendations, which could include expanding the monograph and meta-analysis to add more studies published over the past year. *Id.* ¶¶ 22–24. Upon acceptance of the working group report, the BSC will make a

---

[1] EPA objects to Plaintiffs' purported "notice." The Court requested that Plaintiffs file under seal the May 2022 draft monograph. Hr'g Tr. 29:17–19 (Oct. 26, 2022). Plaintiffs attached to their "notice" several emails that exceed the scope of what the Court requested. Plaintiffs also characterized those communications to advocate for proceeding with discovery before NTP concludes its process with respect to the drafts. Plaintiffs' "notice" appears to be an improper attempt to supplement the arguments Plaintiffs presented in their Motion to Lift the Stay. If Plaintiffs wished to submit further advocacy, they should have filed a motion, to which EPA would have had an opportunity to respond. *See* Local Rule 7-2(a).

1    recommendation to Dr. Woychik who will make a final decision whether to publish the State of
2    the Science Monograph and whether to submit the Meta-Analysis Manuscript for publication. *Id.*
3    ¶ 25. Dr. Woychik states that he will "make [his] decision as quickly as possible" but that his
4    "obligation as director of NTP is to uphold the most rigorous scientific principles when providing
5    scientific background that may inform the public health policies of the nation." *Id.* ¶¶ 26–27.

6    　　　　Waiting to schedule expert discovery deadlines and a second trial until after a status
7    conference in six months should allow sufficient time for NTP to complete its process (or at least
8    be very near to a decision). If NTP completes its process sooner than anticipated, the parties can
9    begin working on a proposed schedule at that time and submit that proposed schedule to the Court
10   as appropriate. Plaintiffs will not be unduly prejudiced by waiting an additional six months.
11   Presenting NTP's final assessment of the scientific literature surrounding fluoride exposures will
12   significantly aid the Court in reaching its decision and will likely conserve the parties' resources.

13   　　　　NTP's review is of unquestionable relevance and importance to inform a decision whether
14   the practice of community water fluoridation presents an unreasonable risk of injury to human
15   health. But the Court should wait for NTP's *final* documents and *not* rely on drafts that could
16   change before they are finalized (or expert testimony that must rely on drafts because the Court
17   imposed discovery deadlines before the final report became available). Indeed, drafts of NTP's
18   monograph have already changed in meaningful ways. For example, prior drafts identified fluoride
19   as a "presumed hazard." NTP Statement 1, ECF No. 281-2. The drafts underwent two peer reviews
20   by the National Academies of Science, Engineering, and Medicine ("NASEM"), in which the
21   reviewers did *not* concur with the findings that NTP presented. 2d Woychik Decl. ¶¶ 8–13. NTP
22   then removed the proposed "hazard classification" for fluoride. *Id.* ¶ 13; *see also* NTP Statement
23   1, ECF No. 281-2. A subsequent May 2022 draft of what NTP now refers to as the State of the
24   Science Monograph was also subject to an inter-agency review process that resulted in criticism
25   by external subject-matter experts. 2d Woychik Decl. ¶¶ 14–17. Dr. Woychik states that he "could
26   not, in good conscience, authorize publication of the monograph in May 2022 when so many
27   concerns about the science and conclusions were still being raised by agency subject matter
28   experts." *Id.* ¶ 29. NTP's State of the Science Monograph and Meta-Analysis Manuscript have the

potential to be significant scientific documents that will inform a wide array of public health and regulatory decisions (including in this case). And this Court's decision about the risk that community water fluoridation poses to human health will also be significant and consequential. Dr. Woychik is correct in stating that "it is imperative that the science is strong." *Id.* If the Court relies on the draft State of the Science Monograph and Meta-Analysis Manuscript (or expert testimony based on those drafts), the Court would be relying on draft documents for which "the scientific review is not complete" and that NTP's Director cautions "should not be released to the public, or referenced, at this time." *Id.* ¶ 4.

If the Court restarts expert discovery now and NTP releases its final report in the middle of (or, worse yet, after the conclusion of) a second period of expert discovery, the parties may have to redo expert disclosures and reports, depositions, or other work. A more orderly way to proceed would be to wait six months so the parties can propose a schedule that appropriately reflects the outcome of NTP's process.

Finally, EPA's proposal is consistent with two Orders of this Court. First, the Court already held that "EPA should be given a chance to weigh in[] on, *e.g.*, the *final* NTP monograph." Order Granting Pls.' Mot. for Leave 12, ECF No. 290 (emphasis added). Indeed, the Court observed that "[t]he *final* NTP monograph is thus *essential* for the EPA to properly assess the merits of Plaintiffs' supplemental petition and any similar petition Plaintiffs might file in the future." *Id.* at 4 (emphasis added). The Court concluded, "The Court intends to continue to hold the case in abeyance *at least* until the *final* NTP monograph is released . . . ." *Id.* at 12 (emphasis added).

Second, contrary to their position today, Plaintiffs rejected EPA's 2019 request for a short extension of pretrial deadlines to accommodate the imminent release of an earlier draft of NTP's systematic review. *See* Mot. to Enlarge Time for Limited Expert Discovery 2–3, ECF No. 113; Carfora Decl. ¶¶ 20–23, ECF No. 113-1. At that time, Plaintiffs questioned the trustworthiness of NTP's report because it was a *draft*. *See, e.g.*, Pls.' Opp'n to EPA Mot. to Enlarge Time 1–2, ECF No. 114 ("Federal courts have long recognized the reduced trustworthiness of draft government reports, holding them inadmissible under Federal Rule of Evidence 803. . . . The conclusions of the draft review, therefore, will not necessarily reflect the conclusions in the final report."). The

Court agreed with Plaintiffs and denied EPA's motion. Order Denying Defs.' Mot. for Extension of Time, ECF No. 115. The Court stated, "[T]he upcoming release will be a draft version of the document only. And the [NTP] disclaims the finality of the draft's conclusions because it must still undergo 12 months of peer review by the National Academy of Sciences as well as extensive public comment prior to finalization." *Id.* at 3 (internal quotation marks and citation omitted).

To be sure, the drafts that Plaintiffs submitted under seal do not contain the exact same notice that appeared in the September 2019 and revised September 2020 draft monographs that were submitted to NASEM for peer review: "This DRAFT Monograph is distributed solely for the purpose of pre-dissemination peer review and does not represent and should not be construed to represent any NTP determination or policy." *Compare* September 2020 draft monograph, ECF No. 270-4, *with* May 2022 draft monograph, ECF No. 328-4 (filed under seal). But that same notice would not have made sense to include in the drafts that Plaintiffs submitted under seal. After all, the 2019 and 2020 draft monographs would be (and were) released through NASEM's website as part of NASEM's normal practice ahead of peer-review meetings.[2] *See, e.g.*, Carfora Decl. ¶ 21, ECF No. 113-1. The same is not true of the May 2022 draft State of the Science Monograph or the two drafts of the Meta-Analysis Manuscript that Plaintiffs submitted under seal. Nevertheless, the drafts that Plaintiffs submitted contain various other "draft" marks on each page that are indicia of non-finality. *See* ECF Nos. 328-4, 328-7, 328-8 (filed under seal).

There is no principled reason to upset the pre-trial Orders of the Court. And to do so would be unfairly prejudicial to EPA after the Court guaranteed an opportunity for EPA to "weigh in" on NTP's "final" systematic review and after the Court rejected (in part because NTP's report was a "draft") EPA's attempt to incorporate NTP's work in an orderly way before the first trial.

## CONCLUSION

For the foregoing reasons, the Court should set a status conference in six months and direct the parties to submit a proposed discovery and trial schedule one week before that status conference.

---

[2] NTP has never published a draft of the State of the Science Monograph or Meta-Analysis Manuscript. *See* EPA's Reply in Supp. of Cross-Motion to Lift Stay 2 & n.3, ECF No. 314.

| | |
|---|---|
| Date: December 22, 2022<br>Washington, D.C. | Respectfully Submitted,<br><br>*/s/ Brandon N. Adkins*<br>BRANDON N. ADKINS<br>PAUL A. CAINTIC<br>United States Department of Justice<br>Environment & Natural Resources Division<br>P.O. Box 7611<br>Washington, D.C. 20044<br>Tel: (202) 616-9174 (Adkins)<br>Tel: (202) 514-2593 (Caintic)<br>Fax: (202) 514-8865<br>Brandon.Adkins@usdoj.gov<br>Paul.Caintic@usdoj.gov<br><br>*Attorneys for Defendants* |

**ATTORNEY CONFERENCE CERTIFICATION**

I certify that I have conferred with counsel for Plaintiffs and that the parties were unable to stipulate to the relief requested in this motion. The parties have reached agreement with respect to an enlargement of time for Plaintiffs to respond to this motion. A stipulation and proposed order will be filed in due course.

                                                   */s/ Brandon N. Adkins*
                                                 Brandon N. Adkins
                                                 United States Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of December, 2022, a true and correct copy of the foregoing Defendants' Administrative Motion to Govern Future Proceedings was filed electronically with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Brandon N. Adkins*
Brandon N. Adkins
United States Department of Justice
