Hon. Edward M. Chen                                                                                        March 8, 2023
District Judge
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom 5 – 17th Floor, San Francisco, CA 94102

Re:  *Food & Water Watch v. EPA*, Case No. 17-cv-02162-EMC – Discovery Letter Brief

Dear Judge Chen:

On February 28, 2023, Plaintiffs sent EPA two subpoenas for the fact depositions of Jayanth Kumar in Sacramento, CA and Christine Wood in Reno, NV. These depositions are currently noticed for March 15 and 17, about two weeks from when Plaintiffs notified EPA. EPA argues these subpoenas cannot proceed, and at minimum they should be suspended until the Court enters an order delineating the scope of any added discovery. The parties engaged in multiple meet and confers[1] to resolve this dispute. Lead trial counsel for both parties now conclude that no agreement can be reached.

### A)  Statement of EPA's Position on the Subpoenas

Plaintiffs are on an unsanctioned fishing expedition regarding issues that have little relevance to this case and before the Court has imposed a scheduling order. To persuade the Court to lift the stay before NTP completes its monograph, Plaintiffs represented that the only fact discovery they would take would be to discover a May 2022 draft of the NTP monograph. The Court lifted the stay on that condition. But now, Plaintiffs seek to unilaterally expand fact discovery by subpoenaing Kumar and Wood in violation of the Court's express prohibition. Even if these depositions were relevant and proportionate to the needs of this case, Plaintiffs' discovery tactics are unfairly prejudicial. They gave EPA only two-weeks' notice, and they now refuse to produce documents they obtained since the first trial that they may use to support their claims. This refusal contravenes Plaintiffs' continuing obligations under Rule 26(e) to update their discovery responses with new fact witnesses and new documents. The Court should enforce its orders foreclosing open discovery until after the April 2023 status conference and a scheduling order is in place.

### i)    The Current Scope of Discovery Does Not Allow These Depositions

The Kumar and Wood depositions are outside the discovery limitations currently imposed by this Court. After the October 26, 2022 status conference, this Court allowed limited discovery for two discrete purposes:  (1) fact discovery only to "allow for the production of the May 2022 NTP draft review . . . [to] help the Court determine future scheduling," and (2) expert discovery insofar as to allow "commencement of expert review of the new scientific evidence." ECF No. 319 at 5. But the Court made clear that "the timing of further expert disclosures *and depositions should await further scheduling by this Court.*" *Id.* (emphasis added). Nothing in the Court's later orders expanded this limited universe of discovery or changed the Court's command that no depositions be taken until further notice. *See, e.g.,* ECF No. 340 at 3. The subpoenas cannot proceed on this basis alone.

These depositions also fall outside the scope of discovery that Plaintiffs represented to this Court they needed. EPA objected to a phase-two trial because of the significant resource burdens EPA envisioned a second trial would take. ECF No. 309 at 13-15. Plaintiffs, however, stated they were "willing to forego any additional fact discovery, with the limited exception of obtaining a copy of the May 2022 NTP report." ECF No. 312 at 10-11. Plaintiffs said "With the exception of this single document [the May 2022 NTP draft], the discovery would be limited to the exchange of expert reports and expert depositions." *Id.* at 11. And again, when this Court asked Plaintiffs' counsel at the October 26, 2022 conference "Besides the [May] 22nd . . . report, is there some other discovery that you are seeking?", Plaintiffs replied that they "would focus [their] fact discovery on just getting that May 2022 report and then doing expert discovery." Tr. 21:12-14; 22:3-4. The Court then asked "what's the harm" in allowing discovery of the May 2022 NTP draft "Since Mr. Connett is not asking for a whole new set of, I assume, broad discovery requests and contentio[us] interrogatories. He's looking for something very specific . . . ." Tr. 23:8, 23:15-18. Based on Plaintiffs' representations, the Court adopted the compromise position of re-opening fact discovery for the limited purpose of obtaining the May 2022 NTP draft. The Court allowed the parties' experts to begin

---

[1] The meet and confers were telephonic. Pursuant the Court's Civil Standing Order 4(a), there is good cause for not having an in-person meeting because counsel for the Parties are located in different states.

reviewing the new scientific evidence, but it disallowed expert disclosures or depositions until the Court orders otherwise. ECF No. 319 at 5. Plaintiffs' surprise subpoenas are both outside the limited discovery this Court permitted and outside the discovery Plaintiffs represented to this Court.[2]

### ii) The Depositions are Unfairly Prejudicial, Irrelevant, and Disproportionate.

The Kumar and Wood depositions are of questionable relevance and allowing them before a scheduling order is in place and the parties have exchanged initial disclosures is unfairly prejudicial to EPA. Indeed, Plaintiffs have refused to disclose any documents they have obtained since the first trial that they may use to support their claims, including documents that may be relevant to the Kumar and Wood depositions. Plaintiffs do not deny their intent to introduce information and documents at these depositions that have never been disclosed to EPA. This is precisely the kind of ambush discovery tactic that the Federal Rules are designed to prevent, and which initial disclosures would protect against by requiring advance disclosure of witnesses and documents to be relied upon. Here, the parties did waive initial disclosures before the first trial (before the Court decided review was not limited to the administrative record). But EPA's discovery requests seek nearly verbatim the same information that Plaintiffs would have had to disclose under Rule 26(a). *See, e.g.,* Ex. A (Interrogatory Nos. 1-2; Request for Production No. 1.). If fact discovery is wide-open, Plaintiffs are required under Fed. R. Civ. P. 26(e) to supplement their responses to those requests with any documents they have obtained since the June 2020 trial that they may use to support their claims. Plaintiffs refuse to do so, arguing that there is an "information asymmetry." This contention is irrelevant and does not relieve them of their continuing obligation to supplement. Further, if the Court finds that the discovery at issue does not come within the scope of EPA's prior requests, then EPA should be allowed to propound new requests and receive responses thereto before the depositions go forward.

The depositions are also neither relevant nor proportionate to the needs of this case. These depositions relate to Plaintiffs' narrative that the NTP draft has been subjected to improper "partisan" interference. Dr. Kumar is the California State Dental Director and provided some feedback on the NASEM review of the NTP draft (he was not a NASEM-committee member or scientist). Christine Wood is executive director of the Association of State and Territorial Dental Directors. The credibility of the NTP draft can be judged on its own, and Plaintiffs' experts will opine on those topics. This fishing expedition is of little-to-no relevance to the issues in this litigation, and it is not proportionate to the needs of this case. *Riveria v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("district courts need not condone the use of discovery to engage in fishing expeditions"). And where, as here, governmental bias is speculative, Plaintiffs cannot justify added discovery. *United States v. Litton Indus., Inc.* 462 F.2d 14, 18 (9th Cir. 1972)

At minimum, Plaintiffs have not supplied a valid reason why they must take the depositions before a scheduling order is in place. Given the Court's recent rulings and the procedural posture of this litigation, the parties should first submit a proposed schedule and trial dates ahead of the April 2023 status conference and exchange initial disclosures. While the parties waived initial disclosures before, exchanging initial disclosures focused on evidence and witnesses the parties will use at the second trial makes imminent sense given the reasons above. The Court should enforce its discovery orders and suspend the depositions until after the April conference and a scheduling order is in place.

### B) Statement of Plaintiffs' Position on the Subpoenas

EPA once again resists Plaintiffs' efforts to understand the circumstances that led the HHS to quash NTP's May 2022 monograph. At issue in this dispute here is not a "fishing expedition," nor a "broad discovery request," but two properly noticed and served depositions of non-party fact witnesses. Plaintiffs noticed the depositions after obtaining documents showing that Dr. Kumar and Ms. Wood have relevant and probative knowledge about the actual reasons why the May 2022 monograph was not published. Plaintiffs anticipate the elicited testimony will controvert EPA's representations about the monograph, and will be relevant to controverting EPA's defenses at trial. The depositions will thus advance the primary purpose of discovery: to seek the truth. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) ("The ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed.")

---

[2] Plaintiffs have already served discovery beyond what this Court allowed. They have asked not just for the May 2022 NTP draft, but also emails of Dr. Woychik, and, *inter alia*, identifying information of the names of commenters on the May 2022 draft.

### i) EPA Lacks Standing to Quash These Subpoenas as They Are Directed at Non-Parties

Throughout the course of this litigation, EPA has focused considerable time on the issue of standing. Yet, here, in moving to quash two subpoenas directed at *non-parties*, EPA ignores the longstanding rule that parties do not have standing to quash subpoenas that are directed at non-parties. *See California Sportfishing Prot. All. v. Chico Scrap Metal, Inc*., 299 F.R.D. 638, 643 (E.D. Cal. 2014)("The general rule . . . is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought.").*Crispin v. Christian Audigier, Inc*., 717 F. Supp. 2d 965, 973 (C.D. Cal. 2010)  (same). EPA's only response to this issue is to remove the word "quash" from its brief after receiving Plaintiffs' half of the filing. But just because EPA has removed the word "quash" (which it had used 5 times in its initial draft) does not change the nature of the relief it seeks.

### ii) The Depositions Easily Meet the Liberal Relevance Standard for Discovery

While professing to know little about the reasons for the depositions, EPA summarily asserts that the depositions will be "irrelevant." Beyond this summary assertion, EPA makes little attempt to grapple with the liberal standard for relevance under the federal discovery rules. As Plaintiffs' counsel has explained during the parties' meet and confers, the depositions will address the central piece of evidence for the phase 2 trial: the NTP monograph. The EPA has already made a number of representations to the Court about the circumstances that led NTP to forego publishing the May 2022 monograph, and Plaintiffs anticipate one of EPA's defenses at trial will be that the May 2022 monograph should be given little weight due to its "draft status" and the "extensive criticism" it has received. Given this context, Plaintiffs seek to depose Dr. Kumar and Ms. Wood as their testimony is expected to (1) controvert some of EPA's representations and anticipated defenses regarding the May 2022 monograph, and (2) highlight the perils of waiting for a "final" monograph where, as here, HHS is working with trade associations and lobbying organizations to discredit the NTP review and prevent it from being published. As but one example, HHS gave Dr. Kumar (who is a member of the American Dental Association's National Fluoridation Advisory Committee) a copy of the NTP monograph at the same time it was telling the public, and this Court, that it was a "privileged" document that no one in the public should see. While the rest of the public was prevented from seeing the monograph (including the Plaintiffs), Dr. Kumar was busy drafting criticisms of the monograph that the ADA then submitted to the BSC. The ADA submitted these criticisms to the BSC before the public, Plaintiffs, and this Court, even knew the BSC was doing a review.

### iii) The Depositions Do Not Exceed the Scope of Discovery

The Court lifted the stay in this case for the purpose of permitting fact discovery into the NTP monograph. In its initial order, the Court permitted discovery of the May 2022 monograph and associated meta-analysis. Later, at the January 12 hearing, the Court extended the scope of discovery to include materials related to the NTP monograph, such as the agency subject matter comments. ECF No. 342 at 29:6-18. Moreover, the Court rejected EPA's argument that Plaintiffs must first file a formal motion for leave before requesting this additional discovery. *Id.* There is no compelling reason to take a different approach here, particularly since the witnesses are not federal employees (which minimizes any potential prejudice on EPA) and no documents are being requested (which minimizes the burden on EPA).

### iv) The Depositions Will Not Prejudice EPA, Nor Place Any Meaningful Burden on It

EPA's claim that it will be "unfairly prejudiced" by attending two fact depositions of non-parties is meritless. EPA appears to base this contention on the fact that Plaintiffs have not given the EPA the documents they have received under the Freedom of Information Act (FOIA). But Plaintiffs are under no obligation to do so. As Plaintiffs' counsel has explained during the meet and confers, the parties waived their FRCP Initial Disclosures (ECF No. 23 at 2) and the FOIA documents that Plaintiffs will be using at the depositions do not come within the scope of EPA's prior document requests. Moreover, the FOIA documents are correcting an information asymmetry that otherwise would exist in favor of the government, as, unlike the Plaintiffs, the EPA does not need to use FOIA requests to learn what the federal agencies are doing.  In other words, the government does not need to rely on citizen groups to understand what the government itself is doing. The Court should deny EPA's attempt to quash the depositions.

*/s/ Brandon Adkins*
BRANDON N. ADKINS
PAUL A. CAINTIC
Trial Attorneys
U.S. Department of Justice
Environmental & Natural Resources Division

EMMET P. ONG
Assistant United States Attorney

*Attorneys for Defendants*

*/s/ Michael Connett*
MICHAEL CONNETT
C. ANDREW WATERS
KAY GUNDERSON REEVES (*pro hac vice*)
WATERS, KRAUS & PAUL

*Attorneys for Plaintiffs*