Hon. Edward M. Chen  June 26, 2023
U.S. District Court, Northern District of California
450 Golden Gate Avenue, Courtroom 5—17th Floor
San Francisco, CA 94102

Re:   *Food & Water Watch v. EPA*, Case No. 17-cv-02162-EMC – Fifth Discovery Letter Brief

Dear Judge Chen:

Plaintiffs noticed a Rule 30(b)(6) deposition of EPA, the notice for which is attached. EPA moves for a protective order forbidding the deposition, while Plaintiffs move for leave to take the deposition pursuant to Rule 30(a)(2). Lead counsel conferred telephonically because of the distance between their offices and could not resolve the dispute.

**A)   Statement of EPA's Position**

Plaintiffs noticed what would be a second Rule 30(b)(6) deposition of EPA and identified over twenty new topics of inquiry. Plaintiffs already reached their limit of ten fact depositions (including two recent depositions of third parties concerning alleged "political influence" on the National Toxicology Program). Thus, as a threshold matter, Plaintiffs must seek leave to take the proposed deposition. *See* Fed. R. Civ. P. 30(a)(2)(A)(i)–(ii).

The Court should forbid the deposition because (1) it will concern topics and documents that have nothing to do with fluoride; (2) it will be disproportionate to the needs of the case; and (3) it will risk disclosure of privileged information. Fed. R. Civ. P. 26(b)(2)(C).

First, the deposition will not bear on a relevant issue. Plaintiffs wish to depose EPA regarding the first ten risk evaluations under amended TSCA. None of the evaluations concerns fluoride. The second phase of trial is meant to focus on the National Toxicology Program monograph and other forthcoming scientific developments concerning fluoride, like the Spanish INMA cohort study and the pooled MIREC/ELEMENT data. *See* Abeyance Order 4, ECF No. 262. The Court recently confirmed that it will proceed on the merits of the science at issue. *See* Minute Entry 2, ECF No. 352. Plaintiffs' proposed fact deposition has nothing to do with the monograph or recent fluoride studies.

The only potential relevance of the risk evaluations is as an "interpretive tool," as this Court determined at the final pretrial conference. Tr. 33:14–16 (May 8, 2020); *id.* at 33:17–19 (Court: "I'm not interested in sort of transposing the result of any one particular study or draft to this. It's the methodology."). Plaintiffs' counsel even agreed that "the vast majority of these documents are not relevant." *Id.* at 34:7–8. The Court instructed Plaintiffs to introduce only critical portions of the documents with context because it was "not interested in having hundreds and hundreds of pages." *Id.* at 33:23–24; *see also* Order 2, ECF No. 191. The Court was not somehow signaling that a fact deposition would be needed for context.

Second, any modicum of relevance the risk evaluations might have as an "interpretive tool" is outweighed by the burden to EPA in preparing for and undergoing a deposition on those documents. *See EEOC v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 642 (E.D. Wash. 2011). The risk evaluations are publicly available and speak for themselves (just as the drafts did at the first trial). To be sure, an entity cannot avoid a Rule 30(b)(6) deposition by merely stipulating to the authenticity of documents that purportedly represent the entity's positions. *See Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008). But discovery must be proportional. *See* Fed. R. Civ. P. 26(b)(1).

Here, Plaintiffs do not dispute that their experts can review and synthesize the documents—<u>just as their risk assessor Dr. Kathleen Thiessen did at the first trial</u>. Dr. Thiessen opined extensively concerning EPA's draft risk evaluations. *E.g.*, 3 Trial Tr. 472:3–478:17, 494:7–15, 498:4–10 (June 10, 2020); Thiessen Decl. ¶¶ 18, 55, 145, 194, 196–99, 211, 217, 223. Plaintiffs <u>never</u> sought—or claimed it was necessary—to take EPA's deposition regarding the drafts before the first trial.

Taking a purported fact deposition to distill public (irrelevant) documents will place an undue burden on EPA. Congress placed considerable demands and deadlines on EPA to complete risk evaluations and subsequent risk-management proceedings under amended TSCA. *See* DeBell Decl. ¶¶ 2–4, Ex. B. Even now, there are thirty-four chemicals undergoing risk evaluation and rulemaking. *Id.* ¶ 5. Time spent preparing an EPA designee to testify—estimated over forty hours—and then testifying will force the Agency to redirect limited resources to this litigation and away from its efforts to comply with statutory mandates. *Id.* ¶¶ 6–11. Scarce resources should not be wasted on depositions over irrelevant documents.

<u>Third</u>, the proposed deposition risks the disclosure of information that is protected by the deliberative-process privilege. That privilege prevents testimony that "reflect[s] advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120–21 (N.D. Cal. 2003) (Chen, J.). Courts generally permit depositions of government agents to clarify ambiguities in produced documents but bar depositions that seek only to clarify or interpret the agency's written determinations. *See, e.g.*, *EEOC v. Pinal Cnty.*, 714 F. Supp. 2d 1073, 1077–78 (S.D. Cal. 2010).

Here, Plaintiffs have identified no ambiguity in the risk evaluations that requires clarification. Rather, deposition topics 3 through 7 seek interpretations of what is written in the risk evaluations. The risk of disclosure of deliberative information is especially acute here because the risk evaluations are not yet considered final agency action. *See* 15 U.S.C. § 2605(i)(2). And deposition topics 1, 2, and 8 seek opinions from EPA about future agency action under the guise of fact depositions. Counsel for EPA can of course instruct the witness not to answer questions that call for the disclosure of privileged information. But the risk of disclosure is nevertheless another reason why the Court should forbid the proposed deposition. *See Wal-Mart Stores*, 276 F.R.D. at 642 (interpretations of agency document would be deliberative).

**B)** **Statement of Plaintiffs' Position**

Plaintiffs move for leave to depose EPA on risk evaluations that were *published after the June 2020 trial* in order to further clarify how EPA makes "unreasonable risk" determinations under TSCA. At the first trial, EPA's own expert admitted that EPA "held the plaintiffs to a standard [of risk] that *EPA has never once held any other chemical under Section 6*." ECF No. 244 at 987:16-18. The Court agreed, noting "EPA appears to have applied a standard of causation which, from my read of TSCA, is not accurate. . . . It's not the proper standard." ECF No. 245 at 1131:5-9; *see also id.* 1137:20-22. Through this deposition Plaintiffs seek to ensure that the *correct* framework is used to assess the new science on fluoride, including NTP's systematic review.

The arguments EPA advances to avoid answering questions are meritless. <u>First</u>, the testimony is clearly relevant. As this Court has already explained, EPA's risk evaluations are "interpretive tools" that assist in understanding the "methodology" for determining risk under TSCA. ECF No. 194 at 33:9-19. It matters not whether the risk evaluations specifically address

2

fluoride, as it is the *methodology* that is at issue. Further, the deposition will facilitate the Court's fact-finding mission by distilling those aspects of the (lengthy) evaluations that are actually relevant to this case, in a context where EPA can correct any misunderstandings Plaintiffs (and their experts) may have. *See In re Colonial Pipeline Co*., 968 S.W.2d 938, 941 (Tex. 1998) ("The ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed.").

Second, the fact that EPA will have to spend some staff time[1] to prepare for the deposition does not constitute "undue burden." EPA's argument implies that the Agency's responsibilities under Section 21 are of lesser importance or priority than its responsibilities under Section 6. But there is nothing in the statute that would justify this dismissive treatment of Section 21. Indeed, Congress enacted Section 21 to be "an unusually powerful procedure [] for citizens to force EPA's hand" and EPA's annoyance at having to spend some staff time working on a citizen petition is the very type of "bureaucratic lethargy" that Section 21 was designed to protect against. *See Food & Water Watch v. EPA*, 291 F. Supp. 3d 1033, 1048 (N.D. Cal. 2017) (citations omitted).

EPA's assertion that "Plaintiffs never sought—or claimed it was necessary—to take EPA's deposition regarding the drafts before the first trial" is a red herring. EPA omits that fact discovery for the first trial had *ended* (i.e., June 13, 2019) *before* EPA released its first draft risk evaluation (i.e., July 1, 2019). ECF No. 98 at 4; ECF No. 143 at 2:6-15. Moreover, Plaintiffs do not seek here to depose EPA on the *draft* evaluations, but on the *final* evaluations. The *final* evaluations, which were modified based on numerous public comments, *were not published until after the June 2020 trial*. The fact that Plaintiffs can read these evaluations does not foreclose their right to the "favored" tool of deposition. *See Great Am. Ins. Co*., 251 F.R.D. at 539 ("Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored. Similarly, in responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position.").

Third, EPA's novel assertion of the deliberative process privilege for *final* agency risk evaluations would expand this narrow privilege past its breaking point. *See Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 610 (N.D. Cal. 2020) ("The privilege 'must be strictly confined within the narrowest possible limits consistent with the logic of its principles.'"). The risk evaluations are final Agency documents that were published after public notice and comment. *See, e.g*., 85 Fed. Reg. 26464 (announcing *draft* PCE risk evaluation and inviting public comment); 85 Fed. Reg. 82474 (announcing *final* PCE risk evaluation). It matters not that the risk *management* process is still ongoing, because risk *evaluation* is entirely separate from risk management. As to Topics 1 and 2, EPA has already *publicly* asserted that its evaluations satisfy TSCA's scientific requirements *despite* NASEM's extensive criticisms of EPA's systematic review method. Plaintiffs should be allowed to ask EPA about this public position as it will help inform the weight to give NTP's systematic review, which also received criticism from NASEM.

Finally, given the unique posture of the case, wherein fact discovery was re-opened to prepare for a *second* trial, good cause exists to justify exceeding the default limit of 10 depositions. Plaintiffs thus respectfully move the Court for leave to permit the deposition. FRCP 30(a)(2).

---

[1] Self-serving statements from EPA management about lack of resources should be treated with a degree of skepticism given the slew of whistleblower complaints, staff surveys, and Office of Inspector General (OIG) findings indicating management's *improper interference with science* has undermined the effective enforcement of TSCA. *See, e.g*., https://tinyurl.com/whistleblower-complaints, https://tinyurl.com/staff-surveys, & https://tinyurl.com/OIG-Findings.

3

| | |
|---|---|
| */s/ Brandon N. Adkins*<br>BRANDON N. ADKINS<br>PAUL A. CAINTIC<br>Trial Attorneys<br>U.S. Department of Justice<br>Environmental & Natural Resources Division<br><br>EMMET P. ONG<br>Assistant United States Attorney<br><br>*Attorneys for Defendants* | */s/ Michael Connett (with permission)*<br>MICHAEL CONNETT<br>C. ANDREW WATERS<br>KAY GUNDERSON REEVES (pro hac vice)<br>WATERS, KRAUS & PAUL<br><br>*Attorneys for Plaintiffs* |

Attachments:

    Exhibit A (Notice of Deposition)
    Exhibit B (DeBell Declaration)