# EXHIBIT B
# (EPA Declaration)

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al.,<br><br>    Plaintiffs,<br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>    Defendants. | Case No. 3:17-cv-02162 EMC<br><br>**DECLARATION OF KEVIN DEBELL** |

I, Kevin DeBell, submit the following declaration in support of the United States Environmental Protection Agency's ("EPA") discovery letter brief requesting a protective order forbidding the second deposition of EPA that Plaintiffs have noticed in this case.

1.  I am the Acting Deputy Office Director for Management for the Office of Pollution Prevention and Toxics ("OPPT"), where I am a management official. I have held this position since May 2023. I hold a Bachelor of Arts in English from the University of Massachusetts Boston, a Master of Arts in Political Science from Loyola University Chicago, and a Ph.D. in Conflict Analysis and Resolution from George Mason University. As the Acting Deputy Director for Management within OPPT, I am a part of the management team that leads and directs the office in developing and implementing both scientific and policy approaches for conducting risk evaluation and risk management activities mandated by the Toxic Substances

Control Act ("TSCA") and its implementing regulations.

2. On June 22, 2016, the Frank R. Lautenberg Chemical Safety for the 21st Century Act (Pub. L. 114-182) was signed into law. It included substantial changes to EPA's authorities and responsibilities under TSCA. These amendments – including new mandatory deadlines for EPA to evaluate chemicals; a risk-based standard for addressing unreasonable risks of injury to health or the environment; increased transparency for chemical information; new and expanded information gathering authorities; and a process to receive, grant, and conduct risk evaluations requested by chemical manufacturers – have necessitated substantial changes within OPPT and require significant time, effort, and resources to implement.

3. OPPT's work under TSCA can broadly be divided into two areas: (1) new chemicals (*i.e.,* those chemicals that are not yet in commerce and not listed on the TSCA inventory) under section 5; and (2) existing chemicals (*i.e.,* those chemicals that are in commerce and listed on the TSCA inventory) under section 6. OPPT also exercises EPA's information gathering authorities under sections 4 and 8 as needed to support actions under TSCA.

4. With respect to existing chemicals, section 6's scheme is divided into three parts: prioritization, risk evaluation, and risk management. The changes to section 6 of TSCA were substantial. A defining feature of the amended TSCA is the requirement that EPA must now systematically prioritize and evaluate tens of thousands of existing chemicals in commerce and manage unreasonable risks as determined within the risk evaluation. EPA must complete each action within specific timeframes per TSCA sections 6(b)(1), 6(b)(4)(G) and 6(c)(1).

5. Currently, OPPT staff is working on 25 risk evaluations, including 2 supplemental risk evaluations, 3 manufacturer-requested risk evaluations, and 20 high-priority substance risk evaluations, as well as risk management rules on 9 of the first 10 chemicals that underwent risk evaluation. Simultaneously, EPA is working to identify the next candidates for prioritization, mindful of the statutory deadlines in the amended TSCA.

6. I am familiar with the amended Rule 30(b)(6) deposition notice of EPA that Plaintiffs served in the above-referenced case, including the matters for examination in

the notice.

7. EPA would designate Dr. Stanley Barone to testify at the deposition. Dr. Barone is presently the Senior Science Policy Advisor for the Office of Chemical Safety and Pollution Prevention (OCSPP), which is the overarching office in which OPPT, the Office of Pesticide Programs (OPP), and the Office of Program Support (OPS) reside. In that position, Dr. Barone provides technical advice and guidance to senior management concerning scientific integrity, science policy development, and science coordination. This includes, but is not limited to, an understanding of the Agency's scientific integrity policy and risk assessment procedures under TSCA, the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), and the Federal Food, Drug, and Cosmetic Act (FFDCA). As part of this role, Dr. Barone reviews and provides feedback on each of OPPTs ongoing risk evaluations and risk management rulemakings.

8. Dr. Barone provides leadership and scientific expertise to the Agency in the development of present and future science policies for the evaluation of chemicals and pesticides. Dr. Barone is an authoritative liaison on health and environmental risk assessment and science policy issues for OCSPP on high level Agency, Inter-Agency, and international work groups. He liaisons with research organizations, including EPA's Office of Research and Development and other agencies, industry task forces, and international organizations by identifying the most significant and relevant human health and environmental risk concerns and providing critical advice on key research information needed to achieve sustainability, improve human health and environmental risk assessments, and ensure safe use of chemicals and pesticides. Lastly, Dr. Barone provides information and conducts briefings for OCSPP senior managers and other high-level Agency officials about human health and ecological science policy issues that will be used to inform regulatory options.

9. EPA preparation for the proposed deposition will require a significant time commitment of Dr. Barone. At a minimum, Dr. Barone will review the first 10 TSCA risk evaluations (each of which is hundreds of pages long) and consult with program staff to ensure he is prepared to testify on the several topics identified in the amended Rule 30(b)(6) notice.

10. Due to the broad scope of the topics raised for the deposition, EPA anticipates it will require at least 40 hours to coordinate across OCSPP and to prepare Dr. Barone. This will involve multiple staff (chemical risk evaluation workgroup members and risk management rule leads) who are currently working on the next risk evaluations and first 10 risk management rules that have associated statutory deadlines.

11. Time spent by Dr. Barone (and other program staff assisting him) preparing for this deposition and then testifying will take time away from Dr. Barone's many duties listed in paragraphs 7 and 8 and thus further burden an EPA office with numerous statutory deadlines that is already understaffed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 23, 2023, in Washington, DC.

KEVIN DEBELL
Digitally signed by KEVIN DEBELL
Date: 2023.06.23 13:05:48 -04'00'

Kevin DeBell
Acting Deputy Director, Office of Pollution Prevention and Toxics
United States Environmental Protection Agency