C. ANDREW WATERS, ESQ., CA Bar No. 147259
MICHAEL CONNETT, ESQ., CA Bar No. 300314
KAY REEVES, ESQ., *Pro Hac Vice*
WATERS, KRAUS & PAUL
11601 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
310-414-8146 Telephone
310-414-8156 Facsimile

*Attorneys for Plaintiffs*

*Additional counsel listed in signature pages*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| FOOD & WATER WATCH, INC., et al.,<br><br>Plaintiffs,<br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Case No. 17-CV-02162 EMC<br><br>**JOINT BELLWETHER EXHIBIT OBJECTIONS** |

Pursuant to the Scheduling Order (ECF No. 355) and the Court's Civil Pretrial Instructions, the parties submit this joint statement identifying representative exhibits that will provide a bellwether as to how the Court will rule on other exhibits.

## I.  PLAINTIFFS' BELLWETHER OBJECTIONS TO EPA'S EXHIBITS

Plaintiffs have withdrawn their objections to EPA Exhibits 653 and 654, and thus have no remaining objections to the exhibits that EPA intends to offer in the second phase of trial.

## II.  EPA'S BELLWETHER OBJECTIONS TO PLAINTIFFS' EXHIBITS

### A.  Exhibit 76: Alleged Political Influence on NTP Draft Monograph

EPA seeks a ruling on its objections to Plaintiffs' Trial Exhibit 76. Exhibit 76 will provide a bellwether as to how the Court may rule on EPA's objections to Plaintiffs' Trial Exhibits 72 through 80.

Trial Exhibit 76 is irrelevant because it relates solely to Plaintiffs' theory regarding alleged political influence on the development of the NTP draft monograph. In fact, Plaintiffs' counsel identified the same email that is Trial Exhibit 76 (and others in the exhibit list) as evidence "of past political interference with NTP." *See* Adkins Decl. ¶¶ 4–5 (ECF No. 374). The Court has already held that alleged political influence concerning the draft NTP monograph is not relevant. Status Conf. Tr. 15:13–16:11 (ECF No. 374); Minute Order 2 (ECF No. 352). The Court should sustain EPA's relevance objection based on its prior ruling. *See also* Mot. in Limine 3–4, ECF No. 374 (explaining why the probative value of testimony regarding the history of the draft monograph is substantially outweighed by the danger it will confuse the issues, waste time, or be needlessly cumulative).

Further, Trial Exhibit 76 is inadmissible hearsay. The exhibit is an email from Director of the National Institute of Environmental Health Sciences Richard Woychik to former Acting Principal Deputy Director of the National Institutes of Health Tara A. Schwetz. All the statements in the email are squarely within the prohibition against hearsay. *See* Fed. R. Evid. 801, 802. To be sure, part of the exhibit also includes an email from Brian Berridge, whom Plaintiffs intend to call as a fact witness at trial. EPA explained in its motion in limine why Dr. Berridge's proposed testimony should be excluded. ECF No. 374. But even if Dr. Berridge is permitted to testify at

trial, the entire exhibit should still not be admitted into evidence. Specific statements by Dr. Berridge in the email could only conceivably be admitted in narrow circumstances under Rule 801(d)(1)—that is, as a prior inconsistent statement or a prior consistent statement in certain limited circumstances.

Plaintiffs respond that Exhibit 76 is excepted from the rule against hearsay because it is either a record of regularly conducted activity under Rule 803(6) or a public record under Rule 803(8). Neither exception applies. Nothing in the email suggests the declarants were making a record that was "a regular practice of that activity." Fed. R. Evid. 803(6)(C). Nor can Plaintiffs offer the necessary supporting testimony or certification to satisfy the exception's conditions. *See* Fed. R. Evid. 803(6)(D). Simply put, the "element of unusual reliability" that comes with regularity and continuity in keeping business records is not present. Fed. R. Evid. 803, 1972 cmts. to paragraph (6). And—again, on their face—the emails are not "a record or statement of a public office." Fed. R. Evid. 803(8). Under Plaintiffs' reading, any email of a government employee would be excepted from the rule against hearsay.

Finally, only Dr. Berridge is listed as the sponsoring witness. The Court should sustain EPA's objections to Trial Exhibit 76 for the additional reasons provided in EPA's motion in limine that Dr. Berridge's testimony should be excluded.[1] ECF No. 374.

---

[1] Plaintiffs also list their experts Drs. Grandjean and Thiessen as sponsoring witnesses for Exhibit 80, for which Exhibit 76 is a bellwether. Exhibit 80 appears to be a letter to the NTP Board of Scientific Counselors commenting on the working group report on the draft monograph. Dr. Berridge was not disclosed as an expert witness, and Plaintiffs should be not permitted to short-circuit their disclosure obligations by offering expert opinions through an exhibit. *See* Mot. in Limine 4, ECF No. 374. In any event, in forming their opinions, the parties' experts reviewed and considered the comments to the NTP draft monograph, the NTP authors' responses, and the BSC working group's assessment of the responses. While expert opinions may be based on hearsay (such as Dr. Berridge's letter or other comments to the NTP draft monograph), Fed. R. Evid. 703, that an expert relied on hearsay not automatically make the hearsay admissible. At trial, the expert may be required to disclose facts on which the expert's opinion is based. Fed. R. Evid. 705. And there may be a basis to read into evidence certain hearsay statements from scientific studies the expert considered—but even then the evidence is not received as an exhibit. *E.g.*, Fed. R. Evid. 803(18).

### B.  Exhibits 82-86: Undisclosed Expert Exhibits

After additional meet and confer, Plaintiffs have agreed to withdraw Exhibits 82 to 86 in exchange for an agreement that these materials can be used as demonstrative exhibits with Plaintiffs' experts. As such, there are no objections for the Court to rule upon regarding these exhibits.

### C.  Exhibit 89: Incomplete Deposition Exhibits

EPA seeks a ruling on its objections to Plaintiffs' Trial Exhibit 89. Exhibit 89 will provide a bellwether as to how the Court may rule on EPA's objections to Plaintiffs' Trial Exhibits 89 through 93.[2]

Exhibit 89 is an exhibit from the deposition of EPA in this case. Dr. Stanley Barone, who is one of EPA's testifying experts, was also EPA's designee at the deposition under Rule 30(b)(6). Plaintiffs' counsel asked Dr. Barone whether the statements in the exhibit were true or false. In some instances, Dr. Barone made shorthand comments in the margins to reflect qualifications he explained at the deposition to the binary questions listed in the exhibit. In others, Dr. Barone provided qualifications and clarifications that are explained in the transcript of the deposition and not reflected or reflected fully in the document. For example, Dr. Barone explained that certain questions were incomplete. Barone Tr. 276:22–25 ("It's not just – that's not the complete condition of use. That's my quandary with how this [question 6 of Trial Exhibit 89] is being described in point/counterpoint."). When Dr. Barone tried to offer qualifications during Plaintiffs' direct examination, he was rebuffed. *E.g.*, Barone Tr. 121:2–8 ("Q. Okay. So let's go back to Exhibit 6 [Trial Exhibit 89] the true/false questions. A. May I add to that? Q. I think you've answered the question, sir. Counsel can ask you questions later if they want to. A. Okay."). And Dr. Barone qualified his answers by providing definitions to the terms used in the exhibit. *E.g.*, Barone Tr. 278:16–24 (explaining that wording of question 9 in Trial Exhibit 89 is "wonky" because "causality is not required for the unreasonable risk determination). When Dr. Barone asked whether a similar document (Trial Exhibit 90) with his notations was correct, he testified that it

---

[2]  On January 2, Plaintiffs informed EPA they withdraw Exhibits 81 and 94, for which Exhibit 89 would be bellwether.

was "[o]verall" but with the caveat that "there's a lot of general assumptions that I've already brought attention to in my testimony." Barone Tr. 162:12–16.

Plaintiffs could have served interrogatories if their object was to obtain written admissions from EPA. EPA would have been able to respond with the appropriate qualifications and explanation. But by deposing EPA "by oral examination" under Rule 30, the record of the EPA's admissions at the deposition is *the transcript of the oral testimony*. The heavily notated and qualified exhibits are incomplete and misleading without the important qualifications offered orally and reflected in the deposition transcript. *See* Fed. R. Evid. 403; *cf.* Fed. R. Evid. 106. The Court should sustain EPA's objection.

## III. PLAINTIFFS' RESPONSES TO EPA'S BELLWETHER OBJECTIONS

### A. Exhibits 72-80: NTP Emails

EPA's bellwether objection to Exhibits 72 through 80 is premature and should be denied. First, Plaintiffs will be calling Dr. Brian Berridge, who—as NTP's former Scientific Director—has the requisite knowledge to establish the business record exception for most of these exhibits. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990), as *amended on denial of reh'g* (Apr. 23, 1991) ("The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system."). For example, Dr. Berridge will explain that Dr. Mary Wolfe's announcement on April 28, 2022 of the Monograph's imminent publication was made at or near the time the NTP decided to publish the report; that the sharing of this information with federal stakeholders is part of the ordinary course of NTP's activity; and that official emails of this nature are, as a matter of policy, saved in NTP's email system to permit future retrieval.

Second, EPA's concern about the email threads containing correspondence that does not include Dr. Berridge as a sender/recipient can be readily addressed by redacting those portions of the emails that Dr. Berridge does not have the requisite knowledge to address. For example, for Exhibit 74, Plaintiffs would be fine excluding everything other than the email from NTP's Dr. Wolfe, wherein Dr. Wolfe announces the imminent publication of the NTP monograph. Similarly, for Exhibit 76, Plaintiffs would be fine eliminating everything other than Dr. Berridge's May 12,

2022 email wherein Dr. Berridge expresses his concerns about non-NTP entities "attempting to influence the outcomes" of NTP's review.

Finally, given that this is a bench trial, the Court is well positioned to assign due weight to the exhibits upon receiving testimony regarding same from qualified witnesses such as Dr. Berridge. There is no need to make blanket rulings prior to trial and prior to receiving said testimony. *See also* 1 MCCORMICK ON EVID. § 60 (8th ed.) ("[J]udges possess professional experience in valuing evidence, greatly lessening the need for exclusionary rules. At common law, there was a sense that it was inexpedient to apply these restrictions to judges. That sense caused appellate courts to conclude that the same strictness need not be observed in applying the rules of evidence in bench trials as in jury trials.").

EPA's objections should be overruled, without prejudice to EPA raising these objections if and when Plaintiffs seek to offer them into evidence.

B.   **Exhibits 89-93: Party Admissions**

Plaintiffs now address EPA's bellwether objection to Exhibits 89 to 93, which EPA characterizes as "incomplete deposition exhibits."

EPA's objections to these five exhibits are meritless and should be overruled. EPA's 30(b)(6) representative, Dr. Stanley Barone, expressly admitted the accuracy of the statements in each of these five exhibits. The exhibits are thus *party admissions* that come squarely within the scope of FRE 801(d)(2). First, EPA does not dispute, nor could it, that the statements within these exhibits are within the scope of the topics for which EPA's representative was prepared and authorized to speak on behalf of the Agency. Second, while Dr. Barone did add a few written notations to the documents to clarify some of the statements, he admitted that all statements, including those that were modified, are factually correct. Here, for example, is the testimony confirming the factual accuracy of Exhibits 90, 91, and 92.

Exhibit 90:

Q.  Dr. Barone, with the additional comments that you've provided on Exhibit [90], is all the information on that document now correct?

A. Overall it's correct.[3]

Exhibit 91:

Q. Now, looking at my little cheat sheet on Exhibit [91], is there any information on that sheet that is in any way incorrect?

A. So I think you've captured what we have discussed as far as the condition of use and the estimation -- risk estimation summary. The part that I'm still confused by is your attachment to this estimated human exposure being 1/274th of the POD.

Q. Right. We have a difference perhaps in a perspective on that, but you would agree that mathematically that's correct, right?

A. I agree that mathematically it's correct. Conceptually it means nothing.

Q. Okay. With that caveat, Dr. Barone, you would agree that the information on this page, Exhibit [91], is correct, right?

A. Yes.[4]

Exhibit 92:

Q. And with those notations, the information on Exhibit [92] is correct, right?

A. It's correct and complete.[5]

Finally, to the extent that EPA is concerned that the few written notations on these documents are not sufficiently clear, EPA will have ample opportunity at trial to clarify these notations because Dr. Barone will be testifying live, both during Plaintiffs' case and EPA's case. There is no legal justification for EPA to hide these written admissions from the Court.

---

[3] EPA 30(b)(6) Dep Tr. at 162:8-12.
[4] EPA 30(b)(6) Dep Tr. at 171:16-172:11.
[5] EPA 30(b)(6) Dep Tr. at 162:8-12.

Dated: January 8, 2024                          Respectfully submitted,

*/s/ Michael Connett*
MICHAEL CONNETT
KAY REEVES
C. ANDREW WATERS
WATERS, KRAUS & PAUL
11601 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025

*Attorneys for Plaintiffs*

Date: January 8, 2024                           TODD KIM
                                                Assistant Attorney General

*/s/ Paul A. Caintic*
PAUL A. CAINTIC
BRANDON N. ADKINS
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174 (Adkins)
Tel: (202) 514-2593 (Caintic)
Fax: (202) 514-8865
Brandon.Adkins@usdoj.gov
Paul.Caintic@usdoj.gov

ISMAIL J. RAMSEY
United States Attorney

MICHELLE LO
Chief, Civil Division

EMMET P. ONG
Assistant United States Attorney
1301 Clay Street, Suite 340S
Oakland, California 94612-5217
Tel: (510) 637-3929
Fax: (510) 637-3724
Emmet.Ong@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of January, 2024, a true and correct copy of the foregoing Joint Bellwether Exhibit Objections was filed electronically with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

>	*/s/ Paul A. Caintic*
>	Paul A. Caintic