C. ANDREW WATERS, ESQ., CA Bar No. 147259
MICHAEL CONNETT, ESQ., CA Bar No. 300314
KAY REEVES, ESQ., *Pro Hac Vice*
WATERS, KRAUS & PAUL
11601 Wilshire Blvd, Suite 1900
Los Angeles, CA 90025
310-414-8146 Telephone
310-414-8156 Facsimile

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

FOOD & WATER WATCH, et al.,

          Plaintiffs,

vs.

U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.

          Defendants.

Civ. No. 17-CV-02162-EMC

**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SHORT CLOSING BRIEF**

## INTRODUCTION

Pursuant to Local Rule 7-11, Plaintiffs respectfully request leave from the Court to file a short closing brief. Plaintiffs file this motion because EPA's rebuttal contains serious misrepresentations—including outright error—as well as statements that directly contradict key admissions from EPA's own expert. While EPA has taken steps to rectify some of the serious errors in its rebuttal (ECF No. 425), the problems with EPA's rebuttal extend beyond those particular errors. Plaintiffs thus seek leave to file a short 7-page brief to identify and address EPA's misrepresentations for the record.[1]

## FACTUAL SUMMARY

The following are *some* of the misrepresentations and disavowals of its own expert's admissions that EPA made in its rebuttal which Plaintiffs seek to address:

1. **EPA disavowed and disputed opinions and facts that its own risk assessment expert, Dr. Stanley Barone, admitted to under oath.** *Weyerhaeuser Co. and Subsidiaries v. U.S.*, 32 Fed. Cl. 80, 118 (Fed. Cl. 1994) ("[E]videntiary admissions can be in the form of expert witness testimony."). For example:

- EPA *now* disputes that the NTP Monograph establishes Hazard ID for fluoride neurotoxicity, despite Dr. Barone's admission to the contrary. *ECF No. 421 at 13:12-15* (disputing Dr. Barone's testimony that the NTP Monograph demonstrates Hazard ID for neurotoxicity).

- EPA *now* disputes that fluoride interferes with the functions of the brain in animal studies, despite Dr. Barone's admission to the contrary. *Id. at 6:14-7:2* (disputing the NRC's conclusion that fluoride interferes with the functions of the brain, despite Dr. Barone's express agreement with NRC's conclusion).

- EPA *now* disputes that a minimum Benchmark MOE of 10 should apply to fluoride neurotoxicity, despite Dr. Barone's admission to the contrary. *Id. at 190:14-191:7* (disputing that 10 is the minimum Benchmark MOE for fluoride neurotoxicity, despite Dr. Barone testifying that it is based on the current evidence).

- EPA goes so far as to dispute the (indisputable) fact that 10 is the lowest Benchmark MOE that EPA used in its first 10 risk evaluations, despite Dr. Barone agreeing that this is correct. *Id. at 188:22-*

---
[1] EPA opposes Plaintiffs' request for an additional brief.

1
PLAINTIFFS' MOTION FOR LEAVE TO FILE A SHORT CLOSING BRIEF

*189:4.*

2.  In an attempt to rewrite the evidence on the *hazard* of *higher-level* fluoride exposure, EPA states that Dr. Barone's admission that fluoride is associated with neurotoxicity above 2 mg/L[2] is nothing more than a meaningless admission that the hazard "could be anywhere from 2 mg/L to **infinity**." *Id. at 52:16-20 & 54:13-14* (emphasis added). But at no time did Dr. Barone ever use the word "infinity," or any other such language that would so thoroughly erase the large body of research linking fluoride to neurotoxicity in the 2 to 4 mg/L region. *See Barone Trial Tr. (ECF No. 415) at 1373:1-13 (Feb. 12, 2024)* (agreeing there is a lot of data on adverse effects at around 4 mg/L, and agreeing there is a "jump" in data from 2 to 4 mg/L). Further, EPA does not cite any studies with appreciably higher fluoride levels than 4 mg/L that it believes could be driving Dr. Barone's, or NTP's, conclusions.

3.  In order to support its *new* theory that the hazard level of fluoride exposure might be "infinity," EPA repeatedly cites certain selective results from eTables 4 and 5, but never once acknowledges NTP's expert conclusion about which of the analyses in these tables provide the "best model fit." *E.g., 26:15-27:2 & 54:5-9.* Page 10 of NTP's meta-analysis states clearly that the best model fits are represented in eFigures 17 and 18, which utilize *all* of the dose-response data (not just a small subset of the data) and show significant reductions in IQ at low levels for both water and urinary fluoride. *Trial Ex. 68 at NIEHS_000389 & 000462-463*; *see also Trial Ex. 69 at 324* (commenting on the *non-linear* dose-response analysis in eFigure 17 and noting "there was no obvious threshold").

4.  In order to rewrite its theory on the hazards of higher fluoride exposures, EPA jettisoned the principles on "goodness of fit" that it once claimed to be critical. Specifically, EPA told the Court in its rebuttal that the non-linear dose-response models for urinary fluoride in eTables 4 and eTable 5 are of "comparable fit" to the linear model, and suggested that the non-significant findings from these models should be given equal weight to the linear models. *ECF No. 421 at 26:15-19, 26:24-25, & 54:6-9.* In doing so, EPA failed to disclose to the Court that the **non-linear models for urinary fluoride have much higher AIC values than the linear model** (i.e., up to 5.4 points higher in eTable 5 and up to 11.5 points higher in eTable 4). *See Trial Ex. 68 at NIEHS_000457 (eTable 4) & NIEHS_000460 (eTable 5).* EPA's reliance on

---

[2] *See Barone Trial Tr. (ECF No. 418) at 1424:24-1425:3 (Feb. 13, 2024)* (agreeing that fluoride is associated with neurotoxic effects "somewhere over 2 parts per million").

dose-response models that have AIC scores **more than 3 points higher** than the linear model is striking given that EPA has previously told this Court that a comparable fit requires the AIC score to be **"within 3 points."**[3] *ECF No 421 at 152:10-11* ("If an AIC score is within three points of each other, then the model fit is comparable."). EPA has also previously told this Court that **"the lower the AIC score, the better the model fit"** and criticized Dr. Grandjean for selecting a BMCL from a linear model because it was 1.3 points higher on the AIC scale than a non-linear model. *Id. at 152:11-12 & 152:25-153:1*.

5. In its rebuttal, EPA wholesale dismissed the value of NTP's **regression slopes** analysis (despite the fact that it used individual-level data) because, in part, the analysis addresses "only" 9 to 12 studies whereas the dose-response analysis looks "at all 55 studies." *Id. at 28:18-21*. However, none of the dose-response analyses look at all 55 studies,[4] and **EPA *repeatedly* relies on *subsets* of the dose-response analysis that looked at only 3 to 7 studies, which is *less* than the number of studies analyzed in the regression slopes analysis**. *E.g., id. at 52:22-26* (relying on dose-response analyses of water fluoride that included just 3 to 7 studies); *id. at 54:9-11* (relying on dose-response analyses of urine fluoride that included 5 to 9 studies); *id. at 26:21-23* (same); *id. at 26:26-27:1* (same).

6. Finally, EPA's rebuttal states that Plaintiffs erred in citing NTP for the statement that the "**vast majority**" of the 72 epidemiological studies on fluoride and IQ show an association between fluoride and IQ decrements. *ECF No. 421 at 13:18-28*. To support this error, EPA cited a quote on a *separate subject* that Plaintiffs did *not* reference and told the Court this was the quote that Plaintiffs were relying upon, when it was not.[5] *Id.* (EPA quoting Trial Ex. <u>67</u> at 65, whereas Plaintiffs cited Trial Ex <u>69</u> at 65).

## LEGAL AUTHORITY

The Court has inherent authority to grant the relief requested. Good cause exists here because EPA's errors, misrepresentations and disavowals of its own expert's testimony constitute new evidence and

---

[3] EPA appears to justify this abrogation based on cursory *qualitative* testimony from Dr. Thiessen that the models are comparable, but this does not excuse EPA for proffering evidence that it knows or believes to be incorrect., particularly since Dr. Thiessen explained that she does not have a detailed familiarity with the AIC goodness of fit statistic. *Thiessen Trial Tr. (ECF No. 401) at 853:1-6 (Feb. 6, 2024)* ("Q: [T]he lower AIC values indicate a better-fitting model, correct? A: That's not what it looks like, but I – I'm not a statistician, so I don't know these things in detail.").

[4] *See Trial Ex. 68 at NIESH_000456-57* (identifying a maximum of 29 studies in the All Data <u>Water</u> Fluoride analysis, and a maximum of 19 studies in the All Data <u>Urinary</u> Fluoride analysis).

[5] Plaintiffs asked EPA to correct this error for the record, but EPA declined to do so.

argument which Plaintiffs could not have anticipated and preempted in their previous submissions. *See, e.g.*, *McGechie v. Atomos Limited*, No. 22-cv-01812, 2023 WL 2918681 at *1 (E.D. Cal. April 12, 2023) ("Good cause to permit a party to file a sur-reply may exist 'where the movant raises new arguments in its reply brief.' As such, it appears that plaintiff has stated good cause for the filing of a sur-reply" (citation omitted)); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[T]he district court should not consider the new evidence [introduced in reply] without giving the [non-]movant an opportunity to respond.").

Further, if this Court, as the factfinder, is denied an opportunity to consider the response requested, its truth-finding mission will suffer. *See generally Taylor v. Illinois*, 484 U.S. 400, 412 & n. 17 (1988) (noting "the broader public interest in a full and truthful disclosure of critical facts" and admonishing that the adversarial nature of litigation is not a "poker game in which players enjoy an absolute right always to conceal their cards until played").

## **CONCLUSION**

Plaintiffs seek the instant relief because litigation is first and foremost a fact-finding mission, and EPA's rebuttals risk frustrating that mission. To make an appropriate record, Plaintiffs respectfully request the Court's leave to file a short closing brief (up to, and not to exceed, 7 pages in length).

March 8, 2024                                   Respectfully submitted,

*/s/ Michael Connett*
MICHAEL CONNETT
Attorney for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing this 8th day of March, 2024, upon all ECF registered counsel of record using the Court's CM/ECF system.

                                                            /s/ Michael Connett
                                                            MICHAEL CONNETT