MICHAEL CONNETT, ESQ., CA Bar No. 300314
SIRI GLIMSTAD LLP
700 Flower St, Suite 1000
Los Angeles, CA 90017
213-376-3739 Telephone
646-417-5967 Facsimile

C. ANDREW WATERS, ESQ., CA Bar No. 147259
KAY REEVES, ESQ., *Pro Hac Vice*
WATERS, KRAUS & PAUL
11601 Wilshire Blvd, Suite 1900
Los Angeles, CA 90025
310-414-8146 Telephone
310-414-8156 Facsimile

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

|  |  |
|---|---|
| FOOD & WATER WATCH, et al., | Civ. No. 17-CV-02162-EMC |
| Plaintiffs, | **DECLARATION OF RICHARD M.** |
| vs. | **PEARL IN SUPPORT OF PLAINTIFFS'** |
| | **MOTION FOR ATTORNEY FEES AND** |
| U.S. ENVIRONMENTAL PROTECTION | **EXPENSES** |
| AGENCY, et al. | DATE: TBD |
| Defendants. | TIME: TBD |
| | Courtroom: 5, 17th Floor |
| | Judge: Hon. Edward M. Chen |

- 1 -

I, Richard M. Pearl, declare as follows:

1.     I am a member in good standing of the California State Bar.  I am in private practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California.  I specialize in issues relating to court-awarded attorney fees, including the representation of parties in fee litigation and appeals, serving as an expert witness and or consultant of fee issues; and serving as a mediator and arbitrator in disputes concerning attorney fees and related issues.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.  I make this declaration in support of the Motion for Award of Attorneys' Fees in the instant action filed herewith on behalf of Plaintiffs Food & Water Watch et al.

2.     Specifically, along with Richard Drury of Lozeau Drury LLP, I have been retained by Plaintiffs through their counsel, Michael Connett of Siri Glimstad LLP and C. Andrew Waters and Kay Gunderson Reeves of Waters, Krause & Paul --   "Plaintiffs' Counsel" or just "Counsel" -- to represent them on the instant motion for an award of reasonable attorneys' fees and expenses from the Defendants U.S. Environmental Protection Agency ("EPA") et al for their highly-successful work in this action.

## MY BACKGROUND AND EXPERIENCE

3.     Briefly summarized, my professional background is as follows:  I am now in my 56th year of legal practice.  I graduated in 1969 from Berkeley School of Law (then Boalt Hall), University of California, Berkeley.  I took the California Bar Examination in August 1969 and learned that I had passed it in November of that year, but because I was working as an attorney in Atlanta, Georgia for the Legal Aid Society of Atlanta ("LASA"), I was not formally admitted to the California Bar until February 1970.  I also passed the Georgia Bar Exam and worked for LASA until the summer of 1971.  I then went to work in California's Central Valley for California Rural Legal Assistance, Inc. ("CRLA"), a statewide legal services program. From mid 1971 until mid-1974, I was a Staff Attorney, then Directing Attorney of CRLA's four-attorney office in McFarland, Kern County.  From 1974 to 1977, I was the Directing Attorney of CRLA's Statewide "Backup Center" in San Francisco, a four-attorney program tasked with assisting other

legal services programs with their impact litigation as well as carrying our own impact litigation caseload. From 1977 to 1982, I was CRLA's Director of Litigation, supervising more than fifty attorneys as well as handling my own impact litigation caseload.

4.    In 1982–1983, I transitioned into private practice, first in a small law firm, then as a sole practitioner. Martindale Hubbell rates my law firm "AV." A true and correct copy of my Resume is attached as **Exhibit A**.

5.    Since 1982, my legal work has focused on general civil litigation and appellate practice. More recently, my focus has been almost exclusively on cases and appeals involving court-awarded attorney fees. I have lectured and written extensively on both court-awarded fees, fees as damages, and attorney-client fee disputes. I am the author of *California Attorney Fee Awards* (3d ed., Cal. Cont. Ed. Of Bar 2010) ("Cal. Fee Awards") and its cumulative annual Supplements and Updates between 2011 and April 2025. I also was the author of *California Attorney Fee Awards* (2d Ed., Cal. Cont. Ed. of Bar 1994), and its 1995 through 2008 annual Supplements. Several courts have referred to this treatise as "[t]he leading California attorney fee treatise." *Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal.App.4th 608, 621 (2015); *see also, e.g.*, *Int'l Billing Servs., Inc. v. Emigh*, 84 Cal.App.4th 1175, 1193 (2000) ("the leading treatise"); *Stratton v. Beck*, 30 Cal.App.5th 901, 911 (2018) ("a leading treatise"); *Orozco v. WPV San Jose, LLC*, 36 Cal.App.5th 375, 409 (2019) ("a leading treatise on California attorney's fees"). My treatise also has been cited by the California Supreme Court and the California Court of Appeal on numerous occasions. *See, e.g.*, *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 576, 584 (2004); *Lolley v. Campbell*, 28 Cal.4th 367, 373 (2002); *In re Conservatorship of Whitley*, 50 Cal.4th 1206, 1214–15, 1217 (2010); *Sonoma Land Trust v. Thompson*, 63 Cal.App.5th 978, 986 (2021); *Yost v. Forestiere*, 51 Cal.App.5th 509, 530 n.8 (2020); *Highland Springs Conference & Training Ctr. v. City of Banning*, 42 Cal.App.5th 416, 428 n.11 (2019); *Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*, 36 Cal.App.5th 970, 988 (2019); *Hardie v. Nationstar Mortg. LLC*, 32 Cal.App.5th 714, 720 (2019); *Syers Props III, Inc. v. Rankin*, 226 Cal.App.4th 691, 698, 700 (2014). California Superior Courts also cite my treatise with approval. *See, e.g., Davis v. St. Jude Hosp.*, No. 30201200602596CUOECX, 2018 WL 7286170, at *4

(Orange Cnty. Super. Ct. Aug. 31, 2018); *Hartshorne v. Metlife, Inc.*, No. BC576608, 2017 WL 1836635, at *10 (Los Angeles Super. Ct. May 02, 2017). Federal courts also have cited my treatise with approval. *See, e.g.*, *In re Hurtado*, No. 09-16160-A-13, 2015 WL 6941127, at *4 n.1 (E.D. Cal. Nov. 6, 2015); *TruGreen Companies LLC v. Mower Brothers, Inc.,* 953 F. Supp. 2d 1223, 1236 nn.50, 51 (D. Utah 2013).  I also authored the 1984 through 1993 annual Supplements to the predecessor treatise, CEB's *California Attorney's Fees Award Practice*.  In addition, I authored a federal manual on attorney fees entitled, "Attorneys' Fees: A Legal Services Practice Manual," published by the Legal Services Corporation.  I also co-authored the chapter on "Attorney Fees" in Volume 2 of CEB's Wrongful Employment Termination Practice, 2d Ed. (1997).

6.     More than 98% of my current practice is devoted to issues involving attorney fees.  I have appeared as an attorney of record in connection with over 200 attorney fee applications in state and federal courts, both trial and appellate.  I have served as a consultant and expert witness in hundreds more.  I also have been a member of the California State Bar's Attorneys' Fees Task Force and have testified before the State Bar Board of Governors and the California Legislature on attorney fee issues.

7.     I have briefed and argued more than 40 appeals, at least 30 of which have involved attorney fees issues.  I have been selected as a Northern California "Super Lawyer" in Appellate Law for 2005-08 and 2010-25.

8.     I have won five cases in the California Supreme Court involving court-awarded attorney fees: (1) *Maria P. v. Riles*, 43 Cal.3d 1281 (1987), which upheld a C.C.P. section 1021.5 fee award based on a preliminary injunction obtained against the State Superintendent of Education, despite the fact that the case ultimately was dismissed under C.C.P. section 583; (2) *Delaney v. Baker*, 20 Cal.4th 23 (1999), which held that heightened remedies, including attorney fees, are available in suits against nursing homes under California's Elder Abuse Act; (3) *Ketchum v. Moses*, 24 Cal.4th 1122 (2001), which reaffirmed that contingent risk multipliers are an essential consideration under California attorney fee law; (4) *Flannery v. Prentice*, 26 Cal.4th 572 (2001), which held that under California law, in the absence of an agreement to the contrary,

statutory attorney fees belong to the attorney whose services they are based upon; and (5) *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553 (2004), which held, *inter alia,* that the "catalyst" theory of fee recovery remained viable under California law and that lodestar multipliers could be applied to fee motion work.  I also represented and argued on behalf of *amicus curiae* in *Conservatorship of McQueen*, 59 Cal.4th 602 (2014), which held that attorney fees incurred for appellate work were not "enforcement fees" subject to California's Enforcement of Judgments law. Along with Richard Rothschild of the Western Center on Law and Poverty, I also prepared and filed an *amicus curiae* brief in *Vasquez v. State of California*, 45 Ca1.4th 243 (2009).  An expanded list of some of the reported decisions in cases I have handled is set out in **Exhibit A** at pages 4–8.

9.    In this case, I am serving as counsel for Plaintiffs on this fee motion and not as an expert witness or consultant. Until the mid-2010's, my primary area of practice was representing other attorneys, and occasionally myself, on contested fee motions and appeals. Since then, my practice has shifted to primarily serving as a consultant and/or expert witness on attorney fee issues. As such, I am very familiar with the hourly rates that are charged and awarded for complex litigation in California, especially in the San Francisco Bay Area.  I estimate that I have prepared opinions and/or live testimony on attorney fee matters in over two hundred cases, and numerous federal and state courts have relied expressly on my testimony on attorney fee issues. For example, in *Wit v. United Behavioral Health*, 578 F.Supp.3d 1060, 1079 (N.D. Cal. Jan. 5, 2022), *vacated and remanded on the merits*, 2023 U.S. App. LEXIS 33343 (9th Cir. 2023), the Court's Fee Order stated that "the Court place[d] significant weight on Pearl's opinion that the rates charged by all of the timekeepers listed above are reasonable and 'in line with the standard hourly noncontingent rates charged by Bay Area law firms that regularly engage in civil litigation of comparable complexity.' . . . Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts in Northern California (including the undersigned) in determining reasonable billing rates." Other examples from the Northern District of California include: *Human Rights Defense Center v. County of Napa*, No. 20-cv-01296, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021); *Andrews v.*

*Equinox Holdings, Inc.,* No. 20-cv-00485 (N.D. Cal. Nov. 9, 2021), Dkt. 110 (Order on Motion for Attorney Fees and Costs) at 4; *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 U.S. Dist. LEXIS 39832, at *9 (N.D. Cal. 2011) (thorough discussion), *aff'd*, 2013 U.S. App. LEXIS 6369 (9th Cir. 2013); *A.D. v. California Highway Patrol*, 2009 U.S. Dist. LEXIS 110743, at *4 (N.D. Cal. 2009), *rev'd on other grounds*, 712 F.3d 446 (9th Cir. 2013), *reaffirmed and additional fees awarded on remand*, 2013 U.S. Dist. LEXIS 169275 (N.D. Cal. 2013).

### **My Role and Work on this Case**

10.      As noted, I was retained by Plaintiffs and their attorneys to handle, along with Richard Drury, the fee motion proceedings in this Court, including the pre-motion meet and confer efforts with Defendants. As Mr. Connett explains, Mr. Drury and I were retained to handle this motion because we have much greater expertise and experience with fee motions in large fee cases like this one, and  merits counsel believed they would need that experience to best litigate a request of this size and complexity, especially in the Northern District of California. In addition, Mr. Drury had prior experience with fees in TSCA cases and with negotiating settlements on fee matters with Brandon Adkins, Defendant's counsel.

11.      Generally, my role has been, in conjunction with Mr. Drury, Michael Connett, and other merits counsel, to develop the legal issues, authorities, and strategies that underlie this motion. In the end, I took principal responsibility for drafting the Memorandum of Points and Authorities filed herewith, albeit with significant input from Mr. Connett and Mr. Drury. Throughout the process of developing this motion, Mr. Drury and I have worked efficiently with each other and with merits counsel, dividing assignments based on expertise and availability while also developing the most effective way to present Plaintiffs' fee motion. As the process went on, we met often (by Zoom) to discuss and decide how to proceed on the unique issues this case presented, especially the requirement that historic hourly rates must be used, which  meant that hours and rates had to proven on a year- by- year basis beginning in November 2016, which is when work on this matter began.  In addition, a comprehensive declaration for all merits counsel was prepared by Mr. Connett, with input from Mr. Drury, me, and the other merits counsel. Mr. Drury also reached out to Plaintiffs' expert witness Linda Dardarian, and we both

assisted with the preparation of her declaration. As I said, I took the lead in preparing the

Memorandum of Points and Authorities, which Mr. Drury and all merits counsel reviewed and

edited or commented on; Mr. Connett's input was especially comprehensive and significant.

### My Time on this Motion.

12.     Under the TSCA, as with most other federal fee-shifting statutes, Plaintiffs are

entitled to be compensated for the time they have reasonably spent on recovering their reasonable

attorneys' fees, including the time spent by attorneys brought in for the fee motion. *See, e.g.*

*United States v. City & County of San Francisco,* 748 F. Supp. 1416, 1438 (N.D. Cal. 1990), aff'd

in relevant part sub nom *Davis v City & County of San Francisco,* 976 F2d 1536, 1544 (9th Cir.

1992), modified on other grounds, 984 F.2d 345 (9th Cir. 1993).

13.     The time I have spent on this matter has been recorded on contemporaneous time

records of the type I use for all clients.  A typed and edited version of my time records through

May 31, 2025, is attached hereto as **Exhibit B**.  These records show that I have spent 45 hours on

Plaintiffs' initial fee motion, including the pre-filing meet and confer. Time spent after that date

will be claimed subsequently.

### My Hourly Rate Is Reasonable.

14.     As noted, through my writing and practice, I have become familiar with the non-

contingent market rates charged by attorneys in the San Francisco Bay Area and elsewhere.  I have

developed this familiarity by: (a) handling attorney fee litigation; (b) discussing fees with other

attorneys; (c) obtaining declarations regarding prevailing market rates in cases in which I represent

attorneys seeking fees; and (d) reviewing attorney fees applications and awards in other cases, as

well as articles on attorney fees in the legal newspapers and treatises.  I also have testified before

trial courts and arbitrators on numerous occasions and have submitted expert testimony by

declaration on hundreds of occasions.  Each of these efforts required me to be aware of the hourly

rates being charged in the relevant community, especially in the San Francisco Bay Area where I

have practiced since 1974.

15.     In this case, as my co-counsel have done, I am requesting an hourly rate of $1,244,

based on the LSI Laffey Matrix 20+ year rate, with a 9.25% adjustment for the difference in the

cost-of-living between Wasshington D.C. and San Francisco. See

www.uscourts.gov/careers/compensation/judiciary-salary-plan-pay-rates.[1] No multiplier is

requested for my work. While Plaintiffs have agreed to pay me at a lower expert witness rate, I

believe the Laffey rate is more appropriate here, based on the responsibilites I have taken on as co-

lead counsel on this multi-million dollar fee motion and breadth of my legal and practical

experience litigating fee motions. (Given the need to show historical hourly rates dating back to

2016, I also believe that the Laffey rates provide a convenient and credible basis on which to set

the applicable rates for each year. See fn. 1, infra.)

16.     Based on my background and experience, I submit that a $1,244 hourly rate is well

within the range of hourly rates charged by and awarded to comparably qualified San Francisco

Bay Area attorneys for comparable work and results.  (The data on which I base this view of course

would also apply to Plaintiffs' merits counsel.)

17.     In addition to my background and experience, my opinion is based on

the hourly rates found reasonable for comparably qualified Bay Area attorneys providing similar

services, including this Court's recent award in *United States of America v. Academy Mortgage

Corp.* (*Gwen Thrower, Relator*), No. 3:16-cv-02120-EMC, Dkt. 500 (N.D. Cal. May 31, 2024)

(Doc 500) ("*Thrower*") (copy attached hereto as **Exhibit C**), and the rate data provided by the

Wolter Kluwer's 2024 Real Rate Report (attached as **Exhibit D**).

---

[1] For many years, there have been two versions of the Laffey Matrix: the LSI or "Adjusted" Laffey Matrix set out in www.laffeymatrix.com, and the USAO versions, based on the original Laffey rates but with increases based on CPI increases for all goods and not limited to complex litigation. In *DL v District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019), the D.C. Circuit thoroughly examined the USAO "*Laffey* Matrix" and rejected it for use in complex litigation in favor of the LSI "*Laffey* Matrix," which is based on the complex litigation market. More recently, the USAO *Laffey* Matrix was replaced by the USAO "Fitzpatrick Matrix", which is ostensibly based on a survey of rates awarded in D.C. area complex cases. However, it suffers from the fact that it does not include any cases in which the higher rates were based on the LSI version *and* it reflects the amount the U.S. Attorney's office is willing to pay in settlement, which may well be lower than hourly rates that would meet the *"Blum* standard. Regardless of the Fitzpatrick Matrix, however, the District of Columbia Circuit held in the *DL* case that for purposes of determining reasonable rates, the LSI version provides an adequate basis on which to support a finding that the requested rate is reasonable. 924 F.3d at 591. And, while the Ninth Circuit rejected the Laffey Matrix in favor of forum rates (*Prison Legal News v Schwarzenegger,* 608 F.3d 446, 454 (9th Cir. 2010), it is particularly useful here because of its year by year calculations, its adjustment for differences in localities, and the fact that its rates are conservative in comparison to Bay Area rates and thus in cases like this one handled by highly-skilled attorneys would not lead to rates higher than forum rates.

18.    Initially, my rate is squarely in line with the hourly rates found reasonable by this and other Bay Area courts, which re entitled to significant weight.  They include the following:

**2024 Rates**

- In *Sutter' Place, Inc. dba Bay 101 v. S.J. Bayshore Development, Inc.*, Santa Clara Superior Ct. No. 22CV397119, Order After Hearing on Plaintiff/Cross-Defendants' Motion for Attorney Fees, filed Dec. 23, 2024, a business contract dispute in which the fee award was based on a contractual fee clause, the following hourly rates were determined to be reasonable:

| Firm | Role | Law School Grad. Year | Rate |
|---|---|---|---|
| **Coblentz, Patch Duffy & Bass LLP** | Overall lead attorney and lead for trial | 1979 | $1,225 (2022)<br>$1,310 (2023)<br>$1,450 (2024) |
| | Partner and second chair | 1994 | $990 (2022)<br>$1090 (2023)<br>$1200 (2024) |
| | Partner | 2011 | $775 (2023)<br>$870 (2024) |
| | | 2013 | $680 (2022)<br>$775 (2023)<br>$870 (2024) |
| | Associate and Partner | 2015 | $565 (2022)<br>$650 (2023)<br>$770 (2024) |
| | Associate | 2017 | $535 (2022)<br>$600 (2023)<br>$680 (2024) |
| | Senior associate | 2018 | $550 (2023)<br>$640 (2024) |
| | | 2018 | $465 (2022)<br>$525 (2023)<br>$630 (2024) |
| | Associate | 2020 | $600 (2024) |
| | Senior Paralegal | N/A | $340 (2022)<br>$400 (2023)<br>$450 (2024) |
| | | N/A | $320 (2022)<br>$400 (2023)<br>$450 (2024) |
| | | N/A | $285 (2023)<br>$400 (2024) |

| Firm | Role | Law School Grad. Year | Rate |
|---|---|---|---|
| | Trial Technician | N/A | $270 (2023) $300 (2024) |

- In *Smith v. Kaiser Foundation Health Care Plan, Inc.,* JAMS Arbitration Nos. 1100115944, Ruling on Attorney Fees Application filed October 21, 2024, an action challenging Kaiser's wheelchair replacement policies, the Honorable Wynne Carvill (Ret.), found, based in large part on my declaration, that the following hourly rates were reasonable:

| Timekeeper | Position | Law School Class | 2024 Rate |
|---|---|---|---|
| **RBGG** | | | |
| | Partner | 1997 | $1,100 |
| | Senior Counsel | 2011 | $800 |
| | Associate | 2017 | $575 |
| **DREDF** | | | |
| | Legal Director | 1992 | $995 |
| | Public Policy Director | 2002 | $880 |
| | Senior Staff Attorney | 2014 | $535 |
| | Attorney | 2017 | $490 |
| | Paralegal | N/A | $290 |

- In *Toscano v. City of Oakland*, Alameda County Superior Ct. No. RG21094864, Fee Order filed August 22, 2024, an individual employment discrimination and retaliation case, the court found, citing my declaration, that the following rates for plaintiff's counsel were reasonable (before applying a 1.4 lodestar multiplier):

| Firm | Role | Law School Grad. Year | Rate |
|---|---|---|---|
| **Vinick Hyams LLP** | Attorney | 1982 | $1,100 |
| | Attorney and Co-lead at trial | 1987 | $1,100 |
| | Law Clerk | N/A | $250 |
| | Paralegal/Legal Assistant | N/A | $225 |
| **Law Offices of Wendy Musell** | Partner | 1999 | $1,000 |
| | | 2000 | $950 |
| | Senior Counsel and Co-lead at trial | 2021 | $875 |
| | Law Clerks | N/A | $250 |
| | Paralegal | N/A | $225 |

- In *United States of America v. Academy Mortgage Corp.*, N.D. Cal. No. 16-cv-02120-EMC, Order Granting in Part Relator Gwen Thrower's Motion re Accrual of Interest and for Supplemental Attorneys' Fees (Doc. No 519), filed September 13, 2024, 2024 U.S Dist. LEXIS 165565, 2024 WL 4194800 ("*Thrower*"),  a qui tam action, the court found the following 2023 hourly rates reasonable for counsel's fee motion work:

| Firm | Role | Law School Grad. Year | Rate |
|------|------|------------------------|------|
| **Rosen Bien Galvan & Grunfeld LLP** | Attorney | 1962 | $1,475 |
| | | 2008 | $875 |
| | | 2005 | $925 |
| | | 2018 | $525 |
| | | 2008 | $825 |
| | Paralegal | N/A | $435 |
| | | N/A | $405 |
| | | N/A | $435 |

- In an earlier award in *Thrower,*  the same case, *United States of America v. Academy Mortgage Corp.* (*Gwen Thrower, Relator),* No. 3:16-cv-02120-EMC, Dkt. 500 (N.D. Cal. May 31, 2024) (Doc 500) (copy attached hereto as **Exhibit C**), this Court awarded Plaintiffs' fees counsel their fees based on their 2017 hourly rates, including a finding that $1,000 per hour was reasonable for a 55-year attorney (a rate which had increased to $1,475 per hour in 2023).

- In *American Lung Assn. v. Breathe Southern California*, Alameda County Superior Ct. No. RG05228892, Fee Order filed February 26, 2024, a contract dispute, the court awarded attorney fees to the prevailing Defendant based on hourly rates that included:
  - $1,010 per hour for an attorney with 42 years' experience;
  - $950 per hour for an attorney with 11 years' experience; and
  - $250-475 per hour for paralegals.

- In *Prison Legal News v. Ryan*, United States Court of Appeal for the Ninth Circuit, Order filed March 21, 2023, the Appellate Commissioner found the following hourly rates reasonable for the Plaintiff-Appellee's appellate work:

| Firm | Title | Law School Grad. Year | Rate |
|------|-------|------------------------|------|
| **Rosen Bien Galvan & Grunfeld LLP** | Partner | 1962 | $1,350 |
| | | 2006 | $850 |
| | Associate | 2016 | $575 |
| | Paralegal | N/A | $400 |

### 2022 Rates

- In *Bronshteyn v. State of California*, Los Angeles County Superior Ct. No. 19SMCV00057, Order Granting Plaintiff's Motion for Statutory Attorneys' Fees and

Costs filed March 30, 2023, an individual FEHA action brought by two Bay Area law firms (Levy, Vinick, Burrell & Hyams LLP and Law Offices of Wendy Musell, the court found the following 2022 hourly rates reasonable (before applying a 1.75 lodestar multiplier for work up to and through the verdict):

| Firm | Role | Law School Grad. Year | Rate |
|------|------|-----------------------|------|
| **Levy, Vinick, Burrell & Hyams LLP** | Co-lead at trial | 1989 | $1,100 |
| | Attorney | 1982 | $1,000 |
| | | 1987 | $1,000 |
| | | 1995 | $1,000 |
| | Law Student | N/A | $300 |
| | Paralegal/Legal Assistant | N/A | $225 |
| **Law Offices of Wendy Musell** | Overall Lead and Co-lead at trial | 1999 | $1,000 |
| | Senior Associate | 2000 | $850 |
| | Associate | 2021 | $425 |
| | Law Clerks | N/A | $350 |
| | Paralegal | N/A | $225 |

- In *Richmond Compassionate Care Collective v. Richmond Patient's Group et al.*, Contra Costa Superior Ct. No. MSC16-01426, Order Granting Plaintiff RCCC's Motion for Attorneys' Fees etc., filed November 1, 2022, an antitrust case, as part of its lodestar cross-check, the court found that the following hourly rates billed by the prevailing Plaintiff's attorneys were reasonable:

| Firm | Title | Years of Experience | Rate |
|------|-------|---------------------|------|
| **Alioto Law Firm** | Joseph M. Alioto | 53 | $1,500 |
| **Foreman & Brasso** | Ronald D. Foreman | 48 | $1,050 |

**2021 Rates**

- In *Yo LLC v. Krucker*, Santa Clara Superior Ct. No. 17CV306261, Fee Order filed February 9, 2022, a contractual fee case involving a disputed lease, the court found the following hourly rates billed by the prevailing Defendant's attorneys reasonable:

| Firm | Title | Law School Grad. Year | Rate |
|------|-------|-----------------------|------|
| **Cooley LLP** | Partner | 1994 | $1,275 |
| | Special Counsel | 1994 | $1,090 |
| | Associate (2020 rate) | 2009 | $1,010 |

- In *West Pueblo Partners, LLC v. Stone Brewing Co., LLC,* Napa County Superior Ct. No. 21CV000498, Order After Hearing Granting Plaintiff's Motion for Attorneys' Fees filed March 11, 2022, another contractual fee case, the court found that the following hourly rates billed by the prevailing plaintiff's attorneys were reasonable:

| Firm | Title | Law School Grad. Year | Rate (discounted to client) |
|---|---|---|---|
| **Munger, Tolles & Olson LLP** | Partner | 1988 | $1,043.58 |
| | | 1989 | $981.86 |
| | Associate | 2017 | $800.10 |
| | | 2015 | $674.45 |

- In *Kang v. Wells Fargo Bank NA*, 2021 U.S. Dist. LEXIS 235524, at *53 (N.D. Cal. Dec. 8, 2021), a consumer class action, the court found that plaintiffs' appellate attorneys' rates of $640-$1,150 and trial counsel's rates of $325-$950 were "in line with other fee awards in this district for similarly experienced attorneys".

- In *Wit v. United Behavioral Health*, 578 F.Supp.3d 1060 (N.D. Cal. Jan. 5, 2022), the court found the following 2021 hourly rates reasonable:

| Firm | Title | Years of Experience | Rate |
|---|---|---|---|
| **Zuckerman Spaeder LLP** | Partner | 39 | $1,145 |
| | | 35 | $1,145 |
| | | 24 | $1,040 |
| | | 21 | $980 |
| | Associate | 6 | $595 |
| | Paralegals | N/A | $250-$390 |

- In *Andrews v. Equinox Holdings, Inc.*, No. 20-cv-00485 (N.D. Cal. Nov. 9, 2021), Dkt. 110 (Order on Motion for Attorney Fees and Costs), an individual age discrimination case that settled by acceptance of the defendant's Fed. R. Civ. P. Rule 68 offer, the court found the following 2021 rates reasonable (before applying a 1.3 lodestar multiplier):

| Firm | Title | Law School Grad. Year | Rate |
|---|---|---|---|
| **Rosen Bien Galvan & Grunfeld LLP** | Partner | 1962 | $1,250 |
| | | 1997 | $875 |
| | Senior Counsel | 2010 | $600 |
| | Associate | 2018 | $350 |
| | Summer Associates | N/A | $300 |
| | Paralegals | N/A | $240-$275 |

**2020 Rates**

- In *UFCW & Employers Benefit Trust et al v. Sutter Health, et al.*, San Francisco County Superior Court, Case No. CGC-14-538451, consolidated with Case No. CGC-18-565398, Order re Plaintiffs' Counsel's Joint Motion for Attorneys' Fees, Costs, and Service Award, filed August 27, 2021, the court found the following 2020 rates

reasonable as part of its lodestar-cross check, including the then current rates charged by two of Betchart's law firms, Farella Braun and Cohen Milstein, including at least three attorneys for whom fees are requested here (Daniel A. Small, Christopher C. Wheeler, and Matthew W. Ruan):

| Firm | Title | Law School Grad. Year | Rate |
|---|---|---|---|
| **Pillsbury & Coleman, LLP** | Of Counsel | 1979 | $960 |
| | Partner | 1976 | $675 |
| | Associate | 2010 | $475 |
| | Paralegal | N/A | $225 |
| **Farella Braun + Martel LLP** | Partner | 2002* (Christopher C. Wheeler) | $785 |
| | | 1994* | $895 |
| | | 1972* | $1250 |
| | | 1980* | $975 |
| | | 1985* | $935 |
| | | 1982* | $925 |
| | | 1991* | $795 |
| | Associate | 2012* | $675 |
| | | 2014* | $650 |
| | | 2015* | $560 |
| | | 2018* | $515 |
| | | 2017* | $460 |
| | Paralegals | N/A | $355-$190 |
| | Litigation Support | N/A | $325-$285 |
| **McCracken, Stemerman & Holsberry LLP** | Partner | 1975 | $850 |
| | | 1983 | $850 |
| | | 1990 | $800 |
| | | 2008 | $750 |
| | Associate | 2011 | $575 |
| | | 2012 | $575 |
| | | 2014 | $575 |
| | | 2014 | $575 |
| | | 2017 | $400 |
| | | 2018 | $400 |
| | | 2019 | $400 |
| **Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.** | Partner | 1995* | $1,095 |
| | | 2005* | $890 |
| | | 2011* | $890 |
| | | 1997* | $890 |
| | Of Counsel | 1988* | $835 |
| | Associate | 2014* | $805 |
| | | 2015* | $750 |
| | | 2017* | $690 |
| | | 2017* | $690 |

| Firm | Title | Law School Grad. Year | Rate |
|------|-------|------------------------|------|
| | | 2016* | $635 |
| | | 2018* | $535 |
| | | 2007* | $460 |
| | | 2000* | $460 |
| | | 1997* | $460 |
| | | 2002* | $460 |
| | Staff Attorney | 1998* | $400 |
| | | 1977* | $400 |
| | | 1999* | $460 |
| | | 1991* | $460 |
| | | 2012* | $400 |
| | Paralegal Director | N/A | $430 |
| | Paralegals | N/A | $430-$275 |
| | Summer Associates | N/A | $185 |
| | Research Manager | N/A | $260 |
| | Research Analyst | N/A | $160 |
| | IT Director | N/A | $200 |
| | Litigation Support Specialist | N/A | $145 |
| | Trial Coordinator | N/A | $115 |
| Cohen Milstein Sellers & Toll PLLC | Partner | 1975 | $975 |
| | | 1983 | $995 |
| | | 1986 (Daniel A. Small) | $975 |
| | | 2005 | $720 |
| | | 2007 | $680 |
| | Of Counsel | 2003 (Matthew W. Ruan) | $725 |
| | Associate | 2009 | $650 |
| | | 2014 | $535 |
| | Discovery Counsel | 2002 | $550 |
| | Staff Attorney | 1993 | $445 |
| | | 2002 | $430 |
| | | 2005 | $415 |
| | | 2006 | $415 |
| | Investigator | N/A | $515 |
| | Paralegals | N/A | $325-$310 |

*Bar admission date.

- In *Human Rights Defense Center v. County of Napa*, No. 20-cv-01296 (N.D. Cal. March 28, 2021), Dkt. 50 at 18 (Order Granting In Part And Denying In Part Motion For Attorneys' Fees, Costs And Expenses), a prisoner rights action, the court found that counsel's 2020 hourly rates listed below were reasonable:

| Firm | Title | Law School Grad. Year | Rate |
|------|-------|------------------------|------|
| **Rosen Bien Galvan & Grunfeld LLP** | Partner | 1962 | $1,110 |
| | | 1981 | $950 |
| | Senior Counsel | 2009 | $625 |
| | Senior Paralegal | N/A | $350 |

- In *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-CV-00236-WHO, 2020 WL 7626410, at *3 & n.4 (N.D. Cal. Dec. 22, 2020), a RICO action challenging the defendants' invasive tactics, the court found that Plaintiffs' counsel's 2020 hourly rates were "reasonable given the scope and complexity of this case, as well as in light of rates approved in this District for partners, associates, and paralegals for similarly experienced counsel and staff at similar firms."

| Firm | Title | Bar Admission Date | Rate |
|------|-------|--------------------|------|
| **Arnold & Porter Kaye Scholer LLP** | | 1974 | $1,280 |
| | | 1993 | $1,150 |
| | Partner | 1990 | $1,085 |
| | | 2005 | $1,015 |
| | | 2002 | $925 |
| | | 2005 | $910 |
| | Senior Associate | 2012 | $910 |
| | | 2015 | $815 |
| | Associate | 2018 | $675 |
| | Staff Attorney | 2008 | $545 |
| | Paralegal | N/A | $405 |
| | | N/A | $390 |
| **Planned Parenthood** | General Counsel | 1982 | $1,115 |
| | Sr. Staff Attorney | 2012 | $910 |

- In *Schneider v. Chipotle Mexican Grill*, 336 F.R.D. 588, 601 (N.D. Cal. 2020), a consumer class action, the court found that counsel for the putative class's 2020 hourly rates listed below were "on the high end, although in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."

| Firm | Title | Bar Admission Date | Rate |
|------|-------|--------------------|------|
| **Kobre & Kim LLP** | | 1993 | $1,275 |
| | Partner | 1987 | $1,275 |
| | | 1997 | $995 |
| | Associate | 2011 | $695 |
| | Analyst | N/A | $495 |
| | Legal Assistant | N/A | $195 |

| Firm | Title | Bar Admission Date | Rate |
|------|-------|--------------------|------|
|  |  | N/A | $195 |

- In *Lashbrook v. City of San Jose*, No. 20-cv-01236, Order Granting Approval of Class Action Settlement, Awarding Attorneys' Fees and Service Award; Judgment (N.D. Cal. Sep. 2, 2020), Doc 25, a disability access class action, the court found the following hourly rates reasonable:

| Firm | Title | Bar Admission Date | Rate |
|------|-------|--------------------|------|
| Goldstein, Borgen, Dardarian & Ho | Partner | 1987 | $945 |
|  |  | 2006 | $750 |
|  | Associate | 2017 | $415 |
|  | Senior Paralegal | N/A | $325 |
|  | Paralegal | N/A | $285 |

- In *Lee One, LLC v. Facebook, Inc.*, No. 4:16-cv-06232 (N.D. Cal. June 26, 2020), Dkt. 211 (Order and Judgment Granting Motion for Final Approval of Class Action Settlement and Awarding Attorneys' Fees, Costs, and Service Awards), a class action challenge to Facebook's systems for justifying the rates charged advertisers, the court approved a fee constituting 30% of the $40 million settlement fund, and in cross-checking that fee against counsel's lodestar, found the following 2019 hourly rates reasonable (before applying a 1.68 lodestar multiplier):

| Firm | Title | Bar Admission Date | Rate |
|------|-------|--------------------|------|
| Cohen Milstein Sellers & Toll PLLC | Partner | 1983 | $940 |
|  |  | 2000 | $790 |
|  |  | 2004 | $740 |
|  | Associate | 2012 | $545 |
|  |  | 2014 | $505 |
|  | Staff Attorney | 2012 | $395 |
|  | Law Clerk | 2019 | $290 |
|  | Contract Attorney | 2003 | $395 |
|  |  | 2014 | $250 |
|  |  | 2017 | $250 |
| The Gibbs Law Group | Partner | 1995 | $910 |
|  |  | 2000 | $750 |
|  |  | 2003 | $720 |
|  |  | 2007 | $710 |
|  | Associate | 2014 | $460 |
|  |  | 2016 | $430 |
| Eglet Adams | Partner | 1988 | $870 |

| Firm | Title | Bar Admission Date | Rate |
|---|---|---|---|
| | | 1998 | $800 |
| | | 1999 | $690 |
| | | 1999 | $650 |
| | Associate | 2011 | $450 |
| | Contract Attorney | 1998 | $200 |
| | Investigator | N/A | $490 |
| | Paralegals | N/A | $300-$315 |

- In *Perez v. Rash Curtis & Associates*, No. 4:16-cv-03396 (N.D. Cal. Apr. 17, 2020), Dkt. 427 (Order, *inter alia*, Granting in Part and Denying in Part Motion for an Award of Attorneys' Fees, Costs, and Expenses), a consumer protection action under both federal and state law resulting in a $267 million judgment, the court awarded counsel a percentage-based common fund fee of 25% of the fund, cross-checked against a lodestar-based fee comprised of a $634.48 blended rate, and a lodestar multiplier ranging from 13.42 to 18.15 depending on the number of hours eventually spent. The 2020 hourly rates from which the blended rate was derived were as follows:

| Firm | Title | Bar Admission Date | Rate |
|---|---|---|---|
| **Bursor & Fisher, P.A.** | | 1997 | $1,000 |
| | | 2002 | $850 |
| | Partner | 2006 | $750 |
| | | 2009 | $650 |
| | | 2013 | $550 |
| | | 2010 | $550 |
| | | 2013 | $525 |
| | Associate | 2016 | $400 |
| | | 2017 | $375 |
| | | 2019 | $325 |
| | Law Clerk | N/A | $300 |
| | Senior Litigation Support Specialist | N/A | $275-$300 |
| | Litigation Support Specialist | N/A | $200-$250 |

- In *In re Wells Fargo & Company Shareholder Derivative Litigation*, No. 16-cv-05541 (N.D. Cal. Apr. 7, 2020), Dkt. 312 (Order Granting Motion for Final Approval and Motion for Attorneys' Fees), a shareholder derivative class action, the court found the following 2020 hourly rates reasonable:

| Firm | Title | Law School Graduation Year | Rate |
|---|---|---|---|
| | Partners | 1972 | $1,075 |

| Lieff Cabraser Heimann & Bernstein LLP | | 1998 | $950 |
|---|---|---|---|
| | | 1993 | $900 |
| | | 1984 | $850 |
| | | 2000 | $775 |
| | | 2001-2002 | $700 |
| | | 2005 | $650 |
| | | 2007 | $590 |
| | | 2008 | $560 |
| | Associates | 2012 | $480-$510 |
| | | 2015 | $440 |
| | | 2017 | $395 |
| | Law Clerk | N/A | $375-$395 |
| | Paralegal/Clerk | N/A | $345-$390 |
| | Litigation Support/Research | N/A | $345-$495 |

- In *Moen v. Regents of Univ. of California*, Alameda County Superior Court No. RG10-530493, Order (1) Granting Final Approval of Class Settlement and (2) Granting Motion for Award of Fees and Costs, filed April 10, 2020, a class action to enforce contractual health care rights, the court approved the following hourly rates as reasonable (indicating in addition that a 1.5 multiplier would have been applied but for the parties' agreed ceiling):

| Firm | Title | Law School Graduation Year | Rate |
|---|---|---|---|
| Law Offices of Dov Grunschlag | Partner | 1966 | $975 |
| Sinclair Law Office | Partner | 1976 | $875 |
| Calvo Fisher LLP | Partner | 1976 | $875 |
| | Partner | 1990 | $775 |
| | Senior Counsel | 2000 | $650 |
| | Senior Counsel | 2004 | $625 |
| | Senior Paralegal | N/A | $300 |
| | Paralegal | N/A | $225 |

My hourly rate is in line with the range of rates found reasonable in each of these cases.

### The Rates Data Reported in Credible Surveys.

19.    My opinion also is confirmed by the 2024 Real Rate Report published by Wolters Kluwer, relevant excerpts of which are attached as **Exhibit D.** The Real Rate Report surveys and analyzes hundreds of law firm invoices to determine the range of hourly rates actually charged in a particular locale. For counsel with high-level experience, expertise, and skills, the Report's Third

- 19 -

1   Quartile rates—*i.e.*, rates that, by definition, are lower than those charged by the top 25% of Bay

2   Area billers—can be used as a starting point to help assess whether the rates requested are in line

3   with local rates that are actually paid. *See, e.g.*, *Monster Energy Co. v. Vital Pharms., Inc.*, 2023

4   U.S. Dist. LEXIS 211875, at *69 (C.D. Cal. Oct. 6, 2023) (citing to Report's Third Quartile rates);

5   *French v. City of Los Angeles*, No. 20-cv-00416, 2022 WL 2189649, at *18 (C.D. Cal. May 10,

6   2022) ("[T]his Court has found that the [2021] Real Rate Report provides a helpful reference point

7   and consults it here," citing Report's Third Quartile rates).

8       20.    As applied here, the 2024 Report squarely confirms that my requested rate is "in

9   line with" the rates charged in the San Francisco Bay Area legal services marketplace for

10  comparable services.  For example, page 22 of the 2024 Report describes the rates charged by 166

11  San Francisco Area "Litigation" partners. For this category, the Third Quartile San Francisco Area

12  rate was $1,208 per hour. Likewise, page 32 of the same Report finds that the Third Quartile rate

13  charged by 338 San Francisco partners was $1,188 per hour. Given that rates have tended to

14  increase by at least 4-6% since mid-2024[2],  my $1,244 rate is squarely in line with this Report.

15      I declare under penalty of perjury under the laws of the United States that the foregoing is

16  true and correct.  Executed June 2, 2025, in Berkeley, California.

17  

18  _____

       Richard M. Pearl

19

20

<hr/>

21   [2] My hourly rate (and those of my co-counsel) also are consistent with reported rates and
     rate increases in the legal services marketplace generally. See, e.g., David Thomas & Mike

22   Scarcella, *More lawyers join the $3,000-an-hour club, as other firms close in*, Reuters (Feb. 27,
     2025), https://www.reuters.com/legal/legalindustry/3000-an-hour-lawyer-isnt-unicorn-anymore-

23   2025-02-27/ (top partners at Quinn Emanuel Urquhart & Sullivan and Susman Godfrey charging
     $3,000 an hour, with several other firms charging hourly rates above $2,500); Matt Hamilton &

24   David Zahniser, *DWP secures law firm, at up to $1,975 an hour, to defend against Palisades fire
     lawsuits*, LA Times (Feb. 14, 2025), https://www.latimes.com/california/story/2025-02-14/law-firm-

25   1975-an-hour-defend-against-Palisades-fire-lawsuits (Los Angeles Department of Water and Power
     approved $10-million contract with Munger, Tolles & Olson to defend against lawsuits from

26   residents of homes destroyed in Palisades fire, with partners charging $1,975 an hour); Debra
     Cassens Weiss, *Some top partners in BigLaw will bill nearly $3,000 per hour next year, data says*,

27   ABA Journal (Sept. 26, 2024) (noting that in 2023, top partners at Wilson Sonsini Goodrich &
     Rosatti P.C. billed $2,720 per hour, top partners at McDermott Will & Emery billed up to $2,590

28   per hour, and next year, "standard billing rates for the nation's 50 top-grossing firms . . . are
     expected to be $2,100 for senior partners and $1,900 for other partners").

# EXHIBIT A

# RESUME OF RICHARD M. PEARL

**RICHARD M. PEARL**
**LAW OFFICES OF RICHARD M. PEARL**
1816 Fifth Street
Berkeley, CA 94710
(510) 649-0810
(510) 548-3143 (facsimile)
rpearl@interx.net (e-mail)

**EDUCATION**

University of California, Berkeley, B.A., Economics (June 1966)
Berkeley School of Law (formerly Boalt Hall), Berkeley, J.D. (June 1969)

**BAR MEMBERSHIP**

Member, State Bar of California (admitted February 1970)
Member, State Bar of Georgia (admitted June 1970) (inactive)
Admitted to practice before all California State Courts; the United States Supreme Court; the United States Court of Appeals for the District of Columbia and Ninth Circuits; the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, for the District of Arizona, and for the Northern District of Georgia; and the Georgia Civil and Superior Courts and Court of Appeals.

**EMPLOYMENT**

LAW OFFICES OF RICHARD M. PEARL (April 1987 to Present): Civil litigation practice (AV rating), with emphasis on court-awarded attorney fees, class actions, and appellate practice. Selected Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024, and 2025.

QUALIFIED APPELLATE MEDIATOR, APPELLATE MEDIATION PROGRAM, California Court of Appeal, First Appellate District (October 2000 to 2013) (program terminated).

ADJUNCT PROFESSOR, HASTINGS COLLEGE OF THE LAW (January 1988 to 2014): Taught *Public Interest Law Practice*, a 2-unit course that focused on the history, strategies, and issues involved in the practice of public interest law.

PEARL, McNEILL & GILLESPIE, Partner (May 1982 to March 1987): General civil litigation practice, as described above.

1

CALIFORNIA RURAL LEGAL ASSISTANCE, INC. (July 1971 to September 1983) (part-time May 1982 to September 1983):

>   Director of Litigation (July 1977 to July 1982)
>   Responsibilities: Oversaw and supervised litigation of more than 50 attorneys in CRLA's 15 field offices; administered and supervised staff of 4-6 Regional Counsel; promulgated litigation policies and procedures for program; participated in complex civil litigation.

>   Regional Counsel (July 1982 to September 1983 part-time)
>   Responsibilities: Served as co-counsel to CRLA field attorneys on complex projects; provided technical assistance and training to CRLA field offices; oversaw CRLA attorney's fee cases; served as counsel on major litigation.

>   Directing Attorney, Cooperative Legal Services Center (February 1974 to July 1977) (Staff Attorney February 1974 to October 1975)
>   Responsibilities: Served as co-counsel on major litigation with legal services attorneys in small legal services offices throughout California; supervised and administered staff of four senior legal services attorneys and support staff.

>   Directing Attorney, CRLA McFarland Office (July 1971 to February 1974) (Staff Attorney July 1971 to February 1972)
>   Responsibilities: Provided legal representation to low income persons and groups in Kern, King, and Tulare Counties; supervised all litigation and administered staff of ten.

HASTINGS COLLEGE OF THE LAW, Instructor, Legal Writing and Research Program (August 1974 to June 1978)
Responsibilities: Instructed 20 to 25 first year students in legal writing and research.

CALIFORNIA AGRICULTURAL LABOR RELATIONS BOARD, Staff Attorney, General Counsel's Office (November 1975 to January 1976, while on leave from CRLA)
Responsibilities: Prosecuted unfair labor practice charges before Administrative Law Judges and the A.L.R.B. and represented the A.L.R.B. in state court proceedings.

ATLANTA LEGAL AID SOCIETY, Staff Attorney (October 1969 to June 1971)
Responsibilities: Represented low-income persons and groups as part of 36-lawyer legal services program located in Atlanta, Georgia.

**PUBLICATIONS**

Pearl, *California Attorney Fee Awards, Third Edition* (Cal. Cont. Ed. Bar 2010) and February 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, and March 2024 Supplements

Pearl, *California Attorney Fee Awards, Second Edition* (Cal. Cont. Ed. Bar 1994), and 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2008 Supplements

*Best Practices for Litigating a Civil Code Section 1717 Motion for Attorney Fees,* with the Hon. Elizabeth R. Feffer (Ret.), California Litigation (The Journal of the Litigation Section of the California Lawyers Association, Vol. 35, No. 1, 2022)

*Graham v. DaimlerChrysler Corp.* and *Tipton-Whittingham v. City of Los Angeles*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Feb. 2005)

*Current Issues in Attorneys' Fee Litigation*, California Labor and Employment Law Quarterly (September 2002 and November 2002)

*Flannery v. Prentice: Shifting Attitudes Toward Fee Agreements and Fee-Shifting Statutes*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Nov. 2001)

*A Practical Introduction to Attorney's Fees*, Environmental Law News (Summer 1995)

*Wrongful Employment Termination Practice, Second Edition* (Cal. Cont. Ed. Bar 1997) (co-authored chapter on "Attorney Fees")

*California Attorney's Fees Award Practice* (Cal. Cont. Ed. Bar 1982) (edited), and 1984 through 1993 Supplements

Program materials on attorney fees for numerous trainings, including for California Continuing Education of the Bar, the California Employment Lawyers Association, the California Lawyers Association, the California Department of Fair Housing and Employment, the Environmental Law, Labor Law, and Appellate Sections of the California State Bar, the California Academy of Appellate Lawyers, and many others.

*Settlors Beware/The Dangers of Negotiating Statutory Fee Cases* (September 1985) Los Angeles Lawyer

Program Materials on Remedies Training (Class Actions), sponsored by Legal Services Section, California State Bar, San Francisco (May 1983)

Attorneys' Fees: A Legal Services Practice Manual (Legal Services Corporation 1981)

**PUBLIC SERVICE**

Member, Attorneys' Fee Task Force, California State Bar

Member, Board of Directors, California Rural Legal Assistance Foundation

Former Member, Border of Directors, Meals on Wheels of San Francisco (former)

**RECOGNITION**

"AV" Rating -- Martindale Hubbell

Northern California "Super Lawyer" in Appellate Law: 2005 – 2008; 2010 -2025.

**REPRESENTATIVE CASES**

*ACLU of N. Cal. v. DEA*
        (N.D. Cal. 2012) 2012 U.S.Dist.LEXIS 190389

*Alcoser v. Thomas*
        (2011) 2011 Cal.App.Unpub.LEXIS 1180

*Arias v. Raimondo*
        (2018) 2018 U.S.App.LEXIS 7484

*Boren v. California Department of Employment*
        (1976) 59 Cal.App.3d 250

*Cabrera v. Martin*
        (9th Cir. 1992) 973 F.2d 735

*Camacho v. Bridgeport Financial, Inc.*
        (9th Cir. 2008) 523 F.3d 973

*Campos v. E.D.D.*
        (1982) 132 Cal.App.3d 961

*Center for Biological Diversity v. County of San Bernardino*
        (2010) 185 Cal.App.4th 866

*Children & Families Commission of Fresno v. Brown*
        (2014) 228 Cal.App.4th 45

*Committee to Defend Reproductive Rights v. A Free Pregnancy Center*
        (1991) 229 Cal.App.3d 633

**REPRESENTATIVE CASES (cont.)**

*David C. v. Leavitt*
    (D. Utah 1995) 900 F.Supp. 1547

*Delaney v. Baker*
    (1999) 10 Cal.4th 23

*Dixon v. City of Oakland*
    (2014) 2014 U.S.Dist.LEXIS 169688

*Employment Development Dept. v. Superior Court (Boren)*
    (1981) 30 Cal.3d 256

*Environmental Protection Info. Ctr. v Department of Forestry & Fire Protection*
    (2010) 190 Cal.App.4th 217

*Environmental Protection Information Center, Inc. v. Pacific Lumber Co.*
    (N.D. Cal. 2002) 229 F. Supp.2d 993, *aff'd* (9th Cir. 2004) 103 Fed. Appx. 627

*Flannery v Prentice*
    (2001) 26 Cal. 4th 572

*Graham v. DaimlerChrysler Corp.*
    (2004) 34 Cal. 4th 553

*Guerrero v. Cal. Dept. of Corrections etc.*
    (2016) 2016 U.S.Dist.LEXIS 78796, *aff'd in relevant part,* (9th Cir. 2017) 701
    Fed.Appx. 613

*Heron Bay Home Owners Assn. v. City of San Leandro*
    (2018) 19 Cal.App.5th 376

*Horsford v. Board of Trustees of Univ. of Calif.*
    (2005) 132 Cal.App.4th 359

*Ketchum v. Moses*
    (2001) 24 Cal.4th 1122

*Kievlan v. Dahlberg Electronics*
    (1978) 78 Cal.App.3d 951, *cert. denied* (1979)
    440 U.S. 951

*Lealao v. Beneficial  California, Inc.*
    (2000) 82 Cal.App.4th 19

**REPRESENTATIVE CASES (cont.)**

*Lewis v. California Unemployment Insurance Appeals Board*
　　　　(1976) 56 Cal.App.3d 729

*Local 3-98 etc. v. Donovan*
　　　　(N.D. Cal. 1984) 580 F.Supp. 714,
　　　　*aff'd* (9th Cir. 1986) 792 F.2d 762

*Mangold v. California Public Utilities Commission*
　　　　(9th Cir. 1995) 67 F.3d 1470

*Maria P. v. Riles*
　　　　(1987) 43 Cal.3d 1281

*Martinez v. Dunlop*
　　　　(N.D. Cal. 1976) 411 F.Supp. 5,
　　　　*aff'd* (9th Cir. 1977) 573 F.2d 555

*McQueen, Conservatorship of*
　　　　(2014) 59 Cal.4th 602 (argued for *amici curiae*)

*McSomebodies v. Burlingame Elementary School Dist.*
　　　　(9th Cir. 1990) 897 F.2d 974

*McSomebodies v. San Mateo City School Dist.*
　　　　(9th Cir. 1990) 897 F.2d 975

*Molina v. Lexmark International*
　　　　(2013) 2013 Cal.App. Unpub. LEXIS 6684

*Moore v. Bank of America*
　　　　(9th Cir. 2007) 2007 U.S. App. LEXIS 19597

*Moore v. Bank of America*
　　　　(S.D. Cal. 2008) 2008 U.S. Dist. LEXIS 904

*Mora v. Chem-Tronics, Inc.*
　　　　(S.D. Cal. 1999) 1999 U.S. Dist. LEXIS 10752,
　　　　5 Wage & Hour Cas. 2d (BNA) 1122

*Nadaf-Rahrov v. Nieman Marcus Group*
　　　　(2014) 2014 Cal.App. Unpub. LEXIS 6975

**REPRESENTATIVE CASES (cont.)**

*Orr v. Brame*
(9th Cir. 2018) 727 Fed.Appx. 265, 2018 U.S.App.LEXIS 6094

*Orr v. Brame*
(9th Cir. 2019) 793 Fed.Appx. 485

*Pena v. Superior Court of Kern County*
(1975) 50 Cal.App.3d 694

*Ponce v. Tulare County Housing Authority*
(E.D. Cal 1975) 389 F.Supp. 635

*Ramirez v. Runyon*
(N.D. Cal. 1999) 1999 U.S. Dist. LEXIS 20544

*Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017), *aff'd on merits (fees not appealed)* 269 F.3d 1066 (9th Cir. 2020)

*Robles v. Employment Dev. Dept.*
(2019) 38 Cal.App.5[th] 191

*Rubio v. Superior Court*
(1979) 24 Cal.3d 93 (amicus)

*Ruelas v. Harper*
(2015) 2015 Cal.App. Unpub.LEXIS 7922

*Sokolow v. County of San Mateo*
(1989) 213 Cal. App. 3d. 231

*S.P. Growers v. Rodriguez*
(1976) 17 Cal.3d 719 (amicus)

*Swan v. Tesconi*
(2015) 2015 Cal.App. Unpub. LEXIS 3891

*Tongol v. Usery*
(9th Cir. 1979) 601 F.2d 1091,
*on remand* (N.D. Cal. 1983) 575 F.Supp. 409,
*revs'd* (9th Cir. 1985) 762 F.2d 727

**REPRESENTATIVE CASES (cont.)**

*Tripp v. Swoap*
> (1976) 17 Cal.3d 671 (amicus)

*United States (Davis) v. City and County of San Francisco*
> (N.D. Cal. 1990) 748 F.Supp. 1416, *aff'd in part*
> *and revs'd in part sub nom Davis v. City and County*
> *of San Francisco* (9th Cir. 1992) 976 F.2d 1536,
> *modified on rehearing* (9th Cir. 1993) 984 F.2d 345

*United States v. City of San Diego*
> (S.D.Cal. 1998) 18 F.Supp.2d 1090

*Vasquez v. State of California*
> (2008) 45 Cal.4th 243 (*amicus*)

*Velez v. Wynne*
> (9th Cir. 2007) 2007 U.S. App. LEXIS 2194

**FEBRUARY 2025**

# EXHIBIT B

*Moms Against Fluoridation et al v. EPA.* –

**Time Records of Richard M. Pearl**

**January 22, 2025 – May 31, 2025**

| Date | Services Performed | Time |
|------|--------------------|------|
| 1/2225 | Review Court orders (.2), phone conf. w/ Michael Cornett (MC), Kay Reeves (KR), Richard Drury (RD) re facts, fee issues, my role (.7) | .90 |
| 1/28/25 | Review file re call (.1), phone conf. w/ Andrew Waters (AW), RD re motion strategy (.5) | .60 |
| 1/31/25 | Exchange emails w/ RD re rates issues | .10 |
| 2/6/25 | Prepare memo to counsel re motions | .10 |
| 2/8/25 | Prepare MPA | .25 |
| 2/14/25 | Review file documents, model MPA (.75), prepare notes re call (.2), phone conf. w/ counsel re strategy, assignments, rates (1.10), review email from RD re lodestar issue (.1) | 2.15 |
| 2/15/25 | Review excel doc. Re lodestar (.1), legal research re current rates | .30 |
| 2/23/25 | Prepare MPA (2.2), legal research re rates (.4) | 2.60 |
| 2/24/25 | Review emails re settlement, meet & confer (.2), Zoom conf. w/ counsel re settlement (.5), prepare email re hours chart (.1) | .30 |
| 2/25/25 | Prepare notes re rates | .20 |
| 2/27/25 | Review Motion to Extend Time, emails re same | .10 |
| 3/3/25 | Exchange emails re settlement letter | .20 |
| 3/4/25 | Revise settlement letter (.8), review emails from counsel re same (.2) | 1.00 |
| 3/5/25 | Legal research re rates (.35), phone conf. w/ MC, KR re settlement letter (.3), revise letter to Brandon Adkins (BA) (.5), review Birnbaum decl., email to MC and KC re same (.2), review KR's edits and revise letter to Adkins (.3) | 1.65 |
| 3/6/25 | Review emails from BA (.1), exchange emails w/ counsel re responses (.3) | .40 |
| 3/7/25 | Exchange emails w/ MC re time logs (.25), review emails from RD, KR, and MC re same (.1) | .35 |
| 3/8/25 | Exchange emails w/ MC re hours, letter to BA | .10 |
| 3/10/25 | Exchange emails w/ MC re response to BA (.25), exchange emails /w BA re settlement (.1) | .35 |
| 4/3/25 | Review emails re settlement, new case (.1), prepare email to counsel re new data, letter to BA (.3) | .40 |
| 4/14/25 | Review letter from BA re settlement (.2), exchange numerous emails w/ counsel re response (.4) | .60 |
| 4/15/25 | Prepare MPA (.1), exchange emails w/ counsel re response to BA (.2), prepare email to BA re settlement (.2), exchange emails w/ counsel re rates (.2) | .70 |
| 4/16/25 | Review emails re inadvertent cc to BA (.2) | NC |
| 4/17/25 | Review emails and file re call, status etc (.4), phone conf. w/ counsel re motion, then w/ RD re same (.6) | 1.00 |
| 4/18/25 | Zoom call w/ BA, RD re settlement, schedule (.3), phone conf. w/ RD re next steps (.1), exchange emails w/ counsel re case (.2) | .60 |

| | | |
|---|---|---|
| 4/24/25 | Exchange emails w/ counsel re continuance, Assoc. of Counsel (.1) | NC |
| 5/8/25 | Review MC draft decl., file re call (.4), phone conf. w/ all counsel re fee motion issues (.8), review my files re MPA (.1) | 1.30 |
| 5/11/25 | Prepare MPA | .80 |
| 5/14/25 | Review email from MC re his decl. (.1), exchange emails w/ MC, RD re import of other case (.2), review new Northern Dist. Fee award from MC (.2) | .50 |
| 5/15/25 | Review and respond to MC re his declaration | .20 |
| 5/20/25 | Review file re multipliers, other issues for call (.5), Zoom conf. re rates, multipliers etc (.7), phone conf. w/ RD re same (.2) | 1.40 |
| 5/21/25 | Prepare MPA | 2.60 |
| 5/22/25 | Prepare MPA re multiplier (1.9), review *Thrower* award, other files (.6), prepare MPA (.2) | 2.70 |
| 5/23/25 | Revise MPA | .40 |
| 5/24/25 | Prepare MPA (1.1), phone conf. w/ RD re rates (.25) | 1.35 |
| 5/26/25 | Prepare MPA | 4.80 |
| 5/27/25 | Phone conf. w/ RD, Linda Dardarian (LD) re rates (.4), phone conf. w/ RD re LD declaration (.2), revise MPA (2.3), Zoom call with counsel (.6) | 3.50 |
| 5/28/25 | Revise MPA (3.7), exchange emails w/ RD re rates (.3), prepare email to counsel re MPA (.1) | 4.10 |
| 5/29/25 | Revise MPA (2.8), prepare email to counsel re MPA (.1), revise LD declaration , phone conf. w. RD re same (.45), revise RD declaration (.4) | 3.75 |
| 5/30/18 | Revise LD declaration, exchange emails re same | .50 |
| 5/31/25 | Review revised MPA from MC (.1), Zoom call re motion issues, MPA, MC declaration etc (.7), revise MPA re expenses (.2), revise MPA (.25), prepare my declaration (.9) | 2.15 |
| **TOTAL HOURS 1/22/25 – 5/31/25** | | **45.00** |

EXHIBIT C

1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA,                  Case No.  16-cv-02120-EMC

8                      Plaintiffs,              **FILED UNDER SEAL**

9            v.                                 **ORDER GRANTING IN PART
                                                RELATOR'S MOTION FOR FEES**
10   ACADEMY MORTGAGE
     CORPORATIONN,
11                    Defendants.               Docket No. 440

12
                          **I.    INTRODUCTION**
13

14         Presently pending before this Court is Relator, Gwen Thrower's Motion for Attorney's

15   Fees and Expenses.  Docket No. 440 ("Mot.").  Relator requests an award of $13,706,930.87, for

16   work performed by two law firms in connecting with this *qui tam* action alleging fraudulent

17   practices of certifying residential mortgage loans by the Defendant, Academy Mortgage.  *See id.*

18   The request is made pursuant to the False Claims Act's fee-shifting provision, 31 U.S.C. §

19   3730(d)(2), which governs civil actions for false claims and awards fees to the Relator in instances

20   of settlement.  This amount reflects a "lodestar" multiplier of 2.0 for merits work performed by

21   one of Relator's law firms, and also reflects fees in connection with the motion for fees—though

22   the multiplier does not apply to those fees.  The litigation ensued in 2016, Docket No. 1, and the

23   case settled in August 2022 for $38,500,00.00, aside from attorney's fees and costs prior to trial

24   but after briefing on motion for summary judgment.

25         In its motion, Relator seeks the following: (1) merits fees of $12,622,146.70

26   ($6,203.542.35 (T&S) and $215,062.00 (RBGG)), and a 2.0 enhancement on T&S's fees); (2)

27   $995,346.85 for work on the fee motion; and (3) $89,437.77 for litigation expenses.  Mot. at 2-3.

28   In total, Relator seeks $13,706,930.87.  *Id.*

United States District Court
Northern District of California

Case 3:17-cv-02162-EMC   Document 450   Filed 05/02/24   Page 35 of 79

In consideration of the parties' briefing, including supplemental briefs filed by the parties, the Court **GRANTS in part and DENIES in part** Relator's request, as modified herein.  In total, Relator is awarded: **$8,585,530.20** in attorney's fees, and perhaps interest added to reimbursements for T&S's payments to RBGG—and **$89,437.77** for expenses. The attorney's fees are comprised of $7,798,146.44 for merits work ((T&S) $7,655,431.44 and (RBGG) $142,715) and $787,383.76 for fee motion fees.  A summary of reductions is as follows:

| Subject | Reduction | Reduction Amount |
|---|---|---|
| **Merits Work Fees** | | |
| T&S Hourly Rates | Reduce rates of attorneys: JNT $888 vs. $1200; JF $630 vs. $800; ML $860 vs. $1000; JL $840 vs. $925; CT $437.50 vs. 550.<br><br>Reduce rates of paralegals from $435 to $325, aside from Sarah Hulbert | **$1,467,949.00** pre-multiplier<br><br>($1,449,117.00 (attorneys) + $18,832.00 (paralegals)) |
| RBGG rates | Reduce hourly rates from 2023 market rates to 2017 rate | **$72,347.00** reduction |
| Specific reductions: email entries | Reduce recovery of four unsupported email entries | **$2,740** pre-multiplier |
| Reduction for fees in drafting initial complaint | 50% reduction on 87.5 hours of drafting initial complaint | **$242,920.75** pre-multiplier |
| Time spent locating counsel | Eliminate 125.6 hours of redundant work in search for trial counsel. | **$115,400** reduction pre-multiplier |
| Lodestar multiplier | Reduce from 2.0 to 1.75 | |
| Total fee award:   **$7,798,146.44**  (T&S: $7,655,431.44 ($4,374,532.25 x 1.75); RBGG $142,715 ($215,062.00 requested - $72,347.00 reduction for hourly rates)). | | |
| **Fee Motion Fees** | | |
| RBGG re-reviewing T&S time entries | Reduce hours from the re-reviewing of time entries | **$120,476**/178 hours |
| Overall reduction | Overall 10% reduction | |
| Total fee award:   **$787,383.76** (($995,346.85 - $120,476) x 0.90). | | |
| **Expenses** | | |
| Total expenses awarded:  **$89,437.77** (no reductions) | | |

United States District Court
Northern District of California

## II.    FACTUAL AND PROCEDURAL BACKGROUND

A.    History of the Case

This suit involves allegations by Gwen Thrower (the "Relator") against Academy Mortgage ("Academy"), a lender that participated in the Federal Housing Administration ("FHA") Direct Endorsement ("DE") program.  Docket No. 45 ("FAC") ¶ 23.  Academy, as a program participant, is permitted to underwrite and endorse eligible residential mortgages for government insurance.  *Id.*  ¶ 20.  If a borrower defaults, the Department of Housing and Urban Development ("HUD") becomes liable for the loan.  *Id.* ¶ 7.  Lenders that are part of the DE program can endorse loans for insurance without government review; HUD relies on lender certifications to ensure only eligible loans with acceptable risk are endorsed.  ¶¶ 146-50.

The Relator is a former underwriter at Academy and stepped forward to disclose evidence that Academy was engaging in practices that allegedly contravened federal regulations and caused the government to insure unacceptably risky loans.  *See id.*  Relator pursued the action qui tam action on behalf of the United States pursuant to the False Claims Act ("FCA") 31 U.S.C. § 3730(d).  *See generally id.*

In such actions, the United States may intervene if it deems the case worth the cost-benefit analysis.  After Relator filed her initial complaint, the Government considered Relator's evidence and declined to intervene in the case.  *See* Docket No. 440, Thomas Decl.  ¶ 68.  In January 2017, Relator informed the Government she would exercise here right to proceed with the case.  *Id.* ¶ 72. Thomas & Solomon LLP ("T&S"), the first of Relator's firms, was involved in the case from the outset.  *See* Docket No. 1 (initial complaint).  Once Relator decided to proceed without the government's involvement, T&S hired RBGG as local counsel in January 2017.  Docket No. 440, Rosen Decl. ¶ 5.  RBGG was paid by T&S monthly.  *Id.*

Thereafter, Academy filed a motion to dismiss the complaint and a motion to transfer the action to the district of Utah.  Docket Nos. 23, 27.  Relator filed an Amended Complaint in April 2017, expanding the scope of its claims temporally and geographically, setting forth allegations to a more pervasive and systemic fraud.  Docket No. 45.   In June 2017 Academy again moved to dismiss or transfer.  Docket Nos. 50, 48.

United States District Court
Northern District of California

United States District Court
Northern District of California

In July 2017 the Government moved to dismiss Relator's Amended Complaint arguing that it performed a cost-benefit analysis and determined the case was not worth pursuing.  Docket No. 60.  The Court denied the Government's motion to dismiss.  Docket No. 97.  The Court reasoned that the Government failed to meet its burden of demonstrating a valid purpose for dismissing the case and that it failed to fully or adequately investigate the Amended Complaint's allegations.  *Id.* at 2.  The government filed a notice of appeal of this decision and a motion to stay proceedings before the Court in July and August 2018.  Docket Nos. 106, 115.  In August the Ninth Circuit issued an Order to Show Cause directing the Government to show why the appeal should not be dismissed for lack of appellate jurisdiction.  *See United States v. Academy Mortgage*, No. 18-16408 (9th Cir.) ("Ninth Circuit") Docket No. 8.  Academy also filed a motion to certify the Court's order for interlocutory appeal, arguing that it raised complex and "novel" issues relating to certification and promissory fraud theories in the Amended Complaint.  Docket No. 134 at 3.  During this time, the parties also engaged in discovery.  In December 2018 the Ninth Circuit granted the Government's motion to stay proceedings in the district court and to expedite the appeal.  Ninth Circuit Docket No. 17.  The case remained stayed until August 2020 when the Ninth Circuit dismissed the appeal for lack of jurisdiction.  Ninth Circuit Docket No. 62 at 5.

Thereafter, the parties continued engaging in discovery and prepared for both settlement negotiations and trial.  In May 2021 Relator engaged an additional firm, Reese Marketos as trial counsel and, according to Relator, to take the lead on remaining discovery. Docket No. 440, Thomas Decl. ¶ 169.  The parties briefed and held oral argument on a summary judgment motion in summer of 2022.  *See* Docket No. 318.

In August 2022, the parties engaged in mediation before Judge Leonidas Rosen and the parties settled the case for $38,500.000, excluding attorney's fees and costs.  *See* Rosen Decl. ¶ 53 (describing settlement); Mot. at 2; Docket No. 117 at 1-5 (Order Denying MTD and to transfer); *see also Academy Mortgage Corporation Agrees to Pay $38.5 Million to Settle False Claims Act Allegations Related to Mortgages Insured by the Federal Housing Administration*, Office of Public Affairs (December 14, 2022), https://www.justice.gov/opa/pr/academy-mortgage-corporation-agrees-pay-385-million-settle-false-claims-act-allegations (describing settlement

4

terms).

In May 2023, Relator filed its motion for fees that is presently pending before this Court which seeks fees for two of its firms: T&S and RBGG.  Docket No. 440.  Academy requested supplemental discovery, asking the Court for leave to seek additional information to substantiate the fee request including fee agreements and raw time entries.  Docket No. 449.  The Court granted that request and ordered supplemental briefing to address any updates to the motion for fees that the parties wanted to set forth per that supplemental discovery.  Docket No. 451.  Thereafter, Academy raised a discovery dispute as to the scope of supplemental discovery before Magistrate Judge Kim.  Docket No. 461.  Judge Kim denied Academy's request to compel additional documents—particularly Academy's request for the Relator's firms to produce all raw time entries and associated metadata. Docket No. 467.  Academy then moved this Court for relief from that order, Docket No. 469, which this Court denied, Docket No. 471.

B.    Motion for Fees and Expenses

In its motion, Relator seeks the following: (1) fees for its merits work in the amount of $12,622,146.70[1] ($12,407,084.70 for T&S ($6,203,542.35 for 7,277.3 hours of work multiplied by a 2.0 lodestar multiplier) and $215,062.00 for RBGG (222.6 hours of work with no multiplier applied); (2) an award of $995,346.85 for fee motion work through August 2023; and (3) $89,437.77 for litigation expenses.  Mot. at 2-3.  In total, Relator seeks $13,706,930.87.

To support its request, Relator submits a declaration by Richard Pearl who is an attorney that focuses upon cases and appeals involving court-awarded attorney's fees, and who is a preeminent author regarding attorney's fees in California.  *See* Docket No. 440-3, Pearl Decl.  ¶¶ 5-7 (explaining 98% of his practice involves attorney's fees and that he authored works including *California Attorney Fee Awards* (3d ed. Cal. CEB 2010) and its cumulative annual Supplements for the years 2011 through March 2023).  Mr. Pearl analyzed recent hourly rate determinations made by San Francisco Bay Area courts, along with a compilation of attorney fee rates charged in

---

[1] This amount reflects a reduction of $1,227,950.65 or 16.1% reductions per billing judgment reductions made by the firms, reducing fees associated with duplicative or otherwise unsubstantiated work.  *See* Mot. at 21.

United States District Court
Northern District of California

United States District Court
Northern District of California

the area.  Pearl Decl., Ex. B (court determinations); Pearl Decl. Ex. C (list of fee rates).  Mr. Pearl also reviewed two reports: the 2021 Real Rate Report by Wolters Kluwer, which is a report of law firm rates and the 2018 Peer Monitor Public Rates Report of Bay Area law firms.  Pearl Decl., Ex. D (Wolters Kluwer Real Rate Report); Pearl Decl. Ex. E (Peer Monitor Public Rates).  Mr. Pearl's opinion is that, in relation to rates in the area, the hourly rates employed by both firms are reasonable.  *See* Pearl Decl. ¶¶ 16-25.

To support its motion, Relator also submits a declaration by Nelson Thomas, partner of T&S attesting to the billing practices of its firm, the necessity of work performed, expertise of its staff, and the general appropriateness of the fee request.  *See* Docket No. 440-1, Nelson Decl.  Relator also submitted a line-by-line accounting of the work performed in the matter by T&S.  Docket No. 440-1, Nelson Decl., Exs. N-P.  Relator also submits case expense reports and receipts.  Docket No. 440-1, Nelson Decl., Ex. Q-R.  Relator also submits the resumes of attorneys in this action.  *See* Docket No. 440-1, Nelson Decl., Exs. B-G.  Similarly, Jay Rosen, partner at RBGG submitted a comparable declaration and set of exhibits.  Docket No. 440-2, Rosen Decl., & Attachment 1, Exs. A-K.

Academy, for its part, submits the declaration of its expert, Grant Stiefel, arguing for a substantially reduced amount of attorney's fees.  Docket No. 448-2, Stiefel Decl.  Mr. Stiefel is the founder of a legal fee auditing and consulting firm (Litigation Limited) wherein he has provided billing consulting for more than ten years.  Stiefel Decl. ¶¶ 1-4.  He also regularly acts as an expert witness in federal court fee disputes, including testifying in over one hundred matters regarding attorney fee rates.  *Id.* ¶ 5.  Mr. Stiefel notes that he testified for both plaintiffs and defendants and employs the same methodology in both instances.  *Id.* ¶ 9, Ex. B (list of 120 matters wherein Mr. Steifel has testified).  Mr. Stiefel opines that T&S's rates are "extraordinarily high rates for any lawyers, but particularly for attorneys who do not appear to have ever tried a case." *Id.* ¶ 90.  Mr. Stiefel rests his opinion on similar reports as those referenced by Mr. Pearl, along with analysis of recent court decisions regarding rates and fees in the area.  *See generally id.*

//

//

6

### III. <u>LEGAL STANDARD</u>

In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (citation omitted). There is a presumption that the lodestar figure represents a reasonable fee, but "[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan*, 815 F.2d at 1262-63; *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979-80 (9th Cir. 2008). Additionally, "[t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *See Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation omitted). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party . . . ." *Id.* at 1397-98.

In assessing the appropriate fee, Courts consider "some or all of twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)." *Carter v. Caleb Brett, LLC*, 757 F.3d 866, 868- 69 (9th Cir. 2014) (citation omitted). The *Kerr* factors are: (1) time and labor required; (2) novelty and difficulty of the questions presented; (3) skill required of the attorneys; (4) attorney's ability to take on other work during the engagement; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount at stake and the results obtained; (9) the experience, reputation, and ability of the attorneys involved; (10) the desirability of the case; (11) the nature of the relationship with the client; and (12) awards in similar cases. *Id.* at 869 (citation omitted).

//

//

//

7

## IV.  **DISCUSSION**

Relator seeks reasonable attorney's fees and costs pursuant to the fee-shifting provision in the False Claims Act, 31 U.S.C. § 3730(d)(2), which governs civil actions for false claims.  This statute contemplates attorney's fees to be awarded in a qui tam action (private suit on behalf of the United States to recovery money fraudulently obtained) such as this action.  *Id.*  This statute provides:

> If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. ***Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.*** All such expenses, fees, and costs shall be awarded against the defendant.

*Id.* (emphasis added).  This subsection applies because the government did not pursue an action in this matter; rather, Relator Gwen Thrower pursued the suit and prevailed in reaching a settlement with Defendant Academy for 38.5 million dollars.  *Academy Mortgage Corporation Agrees to Pay $38.5 Million to Settle False Claims Act Allegations Related to Mortgages Insured by the Federal Housing Administration*, Office of Public Affairs (December 14, 2022), https://www.justice.gov/opa/pr/academy-mortgage-corporation-agrees-pay-385-million-settle-false-claims-act-allegations (describing settlement terms).  Just under 27 million will go to the U.S. government and taxpayers.  *Id.*

In calculating the lodestar, the fee applicant has the initial burden of producing "evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) (internal quotations omitted).  If the fee applicant meets this burden, the burden shifts to the defendant to submit evidence showing the fee requested is not reasonable, the defendant must then submit evidence showing the requested fee is unreasonable.  *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

Academy agrees that the Relator is entitled to reasonable attorney's fees and costs.  *See*

1 Opp. at 9 ("Again, Academy does not contest the entitlement to fees as a result of the settlement,

2 the statute makes that clear."). But Academy argues that the amount of fees requested for merits

3 work is unreasonable for several reasons including that the hourly rate sought is too high, the

4 number of hours billed is excessive, and the multiplier sought (2.0) is not appropriate. *See* Opp. at

5 5-21. Academy also argues that Relator should not be compensated for fees associated with filing

6 its fee award petition because they are facially unreasonable and because Relator incurred

7 excessive fees for failure to negotiate in good faith. *See* Opp. at 21-25.

8 A.    Fees for Merits Work

9       At the outset, it is important to note that courts afford a level of deference to counsel's

10 judgement as to what they had to do and the time they had to spend to achieve the results in the

11 case. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the

12 court should defer to the winning lawyer's professional judgment as to how much time he was

13 required to spend on the case; after all, he won…."); *Greenpeace, Inc. v. Stewart*, No. 17-35945,

14 2020 WL 2465321, at *9 (9th Cir. May 12, 2020) (similar). To this end, "determination of fees

15 should not result in a second major litigation." *Perez v. Safety-Kleen Sys., Inc.*, 448 F. App'x 707,

16 709 n.1 (9th Cir. 2011). While the fee applicant must submit sufficient documentation to meet the

17 burden of establishing entitlement, "trial courts need not, and indeed should not, become green-

18 eye-shade accountants." *Id.* The essential goal is "to do rough justice, not to achieve auditing

19 perfection." *Id.* Though, a district court is still required to review the legitimacy of fees

20 requested, including by imposing "up to a 10 percent—a haircut—based purely on the exercise of

21 discretion without more specific explanation." *Greenpeace*, 2020 WL 2465321, at *9.

22      The following *Kerr* factors are most relevant to the case and inform the reasoning

23 employed in the remainder of the analysis.[2] First, the time and labor required in the action was

24

25 _____

26 [2] The factors included: (1) time and labor required; (2) novelty and difficulty of the questions
presented; (3) skill required of the attorneys; (4) attorney's ability to take on other work during the
engagement; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations;
27 (8) the amount at stake and the results obtained; (9) the experience, reputation, and ability of the
attorneys involved; (10) the desirability of the case; (11) the nature of the relationship with the
28 client; and (12) awards in similar cases. *Id.* at 869 (citation omitted).

United States District Court
Northern District of California

extensive, given that the case spanned over seven years (from 2016 to the present).  *See* Docket No. 1.  Specifically, the parties engaged in substantial motion practice, including for a motion to dismiss the complaint or transfer by Academy and a motion to dismiss by the Government, an appeal before the Ninth Circuit, and briefing on a motion for summary judgment.  This is somewhat undermined because of a stay before this Court that spanned from 2018 to 2020 while an appeal proceeded before the Ninth Circuit, though that appeal also required work by Relator's counsel.  As to novelty and difficulty of questions, the case involved some novelty as Academy argued, on appeal that interlocutory review was appropriate on this basis.  Additionally, for T&S—but not RBGG—the fee arrangement with relator was contingent, meaning that T&S incurred risk when taking on the case.[3]  Likewise, the desirability of the case was low and the risks high at the outset—given that the government opposed the action and actively sought its dismissal.  These factors, and additional *Kerr* factors are discussed more in depth below in relation to Academy's specific objections to the fee award.

   1. <u>Reasonableness of Rates</u>

  "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015) (internal quotation marks omitted); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("prevailing market rate" is "normally deemed to be reasonable").  "[T]he relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

   a. <u>Thomas & Solomon LLP ("T&S")</u>

  The hourly rates T&S use in their lodestar calculation range from $325/hour to $1,200/hour depending on title and experience of the timekeeper.  The rates requested by the Relator, and the proposed modifications by Academy are as follows:

---

[3] Although T&S was not to be paid absent Relator's recovery, T&S received a separate Contingency Fee, i.e., 40% of Relator's award, which reduces the impact of risk incurred by T&S on this analysis.  *See* Docket No. 485-2, Ex. 3 at 1-2, 5

United States District Court
Northern District of California

| Timekeeper | Position | Class | Rate | Academy Proposal |
|---|---|---|---|---|
| J. Nelson Thomas | Partner | 1993 | $1,200 | $800 |
| Jonathan Ferris | Partner (Oct 2022-present); Associate (2012-Oct 2022) | 2012 | $800 | $600 |
| Michael Lingle | Partner | 2000 | $1,000 | $750 |
| Jessica Lukasiewicz | Partner | 2008 | $925 | $750 |
| Conor Tallet | Associate | 2018 | $550 | $400 |
| Adam Sanderson | Associate | 2018 | $550 | $400 |
| Adam Sanderson | Law Clerk | N/A | $325 | N/A |
| Sarah Hulbert (SKH) | Lead Paralegal | N/A | $435 | $275 |
| Samuel Noto (SJN) | Paralegal | N/A | $325 | $275 |
| Jonathan Francisco (JDF) | Paralegal | N/A | $435 | $275 |
| MLH | Paralegal | N/A | $435 | $275 |
| CSS | Paralegal | N/A | $435 | $275 |
| GJS | Paralegal | N/A | $435 | $275 |
| MMY | Paralegal | N/A | $325 | $275 |
| MAH | Paralegal | N/A | $325 | $275 |
| CMM | Paralegal | N/A | $325 | $275 |
| AMM | Paralegal | N/A | $325 | $275 |
| JEB | Paralegal | N/A | $325 | $275 |

Academy argues: (1) rates are inflated relative to the market and past rates pursued by T&S; (2) fees are not warranted because T&S offers no proof that it actually charges the rates requested; and (3) paralegal rates are inflated as T&S provided insufficient information to support the variation of rates amongst paralegals.  Opp. at 6-8.

i.      Inflation of Rates

Relators argues that the fees it has requested are reasonable and in line with prevailing market rates.  Mot. at 15-16.  Academy argues that the rates requested are inflated.  Opp. at 6-8.

To support the reasonableness of fees, Mr. Pearl attests that "[i]n my opinion, Relator Counsel's hourly rates and their request for a lodestar enhancement are in line with how the legal marketplace would compensate them for similar services accomplishing similar results."  *Id.* ¶ 11.  To support this finding, Mr. Pearl prepared a document compiling the recent hourly rate

determinations made by San Francisco Bay Area courts, along with a compilation of attorney fee rates charged in the area. Pearl Decl., Ex. B (court determinations); Pearl Decl. Ex. C (list of fee rates). Mr. Pearl also reviewed two reports: the 2021 Real Rate Report by Wolters Kluwer, which is a report of law firm rates and the 2018 Peer Monitor Public Rates Report of Bay Area law firms. Pearl Decl., Ex. D (Wolters Kluwer Real Rate Report); Pearl Decl. Ex. E (Peer Monitor Public Rates). Mr. Pearl's opinion is that, in relation to rates in the area, the hourly rates employed by both firms are reasonable. *See* Pearl Decl. ¶¶ 16-25.

Academy argues, however, that T&S's rates employed for attorneys—which range from $550 for a fourth-year associates to $1475 for partners is "extraordinarily high" for attorneys in the Northern District of California. Opp. at 5-9. Instead, Academy proposes reduced rates (reflected above).

To support this proposition, Academy's expert, Mr. Stiefel opines that T&S's rates are "extraordinarily high rates for any lawyers, but particularly for attorneys who do not appear to have ever tried a case." *Id.* ¶ 90. Mr. Stiefel explains that for each of the attorneys listed, there is no indication any has tried a case. *Id.* Additionally, Mr. Stiefel states that the requested rates are hundreds of dollars higher than objective rate date for the legal market and two times higher than rates these specific lawyers have previously been awarded in the district for comparable litigation, and four times higher rates lawyers were awarded in nearly identical litigation in other jurisdictions. *Id.*

The rates requested are on the high end of the scale for large firms in the area, though not entirely out of range. According to the Real Rate Report from 2022, upon which experts for both parties rely, the mean for rates of litigation partners in San Francisco was $742. Docket No. 448-2 (Real Rate Report) at 21, 51. The third quartile rate for a litigation partner in San Francisco was $995. *Id.* at 21. The rates requested for partners here are: $800, $925, $1,000, and $1,200. *See* Mot. at 14-15.

Importantly, T&S requested fees in this district two years ago for the same attorneys working on this case that were notably lower. In *Hutto v. Albertsons Companies, Inc.*, Case No. 3:20-cv-07541-MMC (N.D. Cal. 2021), for example, Mr. Thomas requested $740/hour compared

12

to $1,200/hour—a $460/hour or 62% increase over two years.  *See also Sullivan v. Safeway, Inc.*, 3:19-cv-03187-MMC (N.D. Cal. 2021) (similar).  With the exception of Michael Lingle and Adam Sanderson, who did not work on the *Hutto* or *Sullivan* litigation, other attorneys working on this case sought similarly lower fees in this district in those cases relative to this case, which overall include increases ranging from 32% to 62%.[4]

The general increase in market rates over the last two years does not account for these increases.  In another declaration submitted by the Relator (primarily focused upon the RBGG fees), Sanford J. Rosen, partner at RBGG discussed the increase in national rates in the last three years.   Docket No. 440.2, Decl. of S. Rosen at ¶ 38.  Mr. Rosen attested that national rates have increased, on the upper end, 5.6% on 2021, 5.9% in 2022, and were expected to increase 7-8% in 2023, for a total of an approximately 19.5% increase from 2021 to 2023—on the high end.  *See id.* Relator's expert, Mr. Pearl, estimates an even lower increase, attesting that "over the past four years, San Francisco area rates have risen an average of 4-6% per year," or, 18% on the highest side of the range over three years.  *See* Pearl Decl. ¶19.  Relator accounts for the discrepancy by stating that Ms. Lukasiewicz "only later learned that the rates she used were substantially below the rates awarded by courts in this District in comparable class action cases."  *Id.*  But in those cases, T&S (particularly, Ms. Lukasiewicz) repeatedly and extensively attested that, based on the experience and skills of the attorneys in the suit the requested fees were appropriate.  *See, e.g.*, Stiefel Decl., Ex W (Lukasiewicz Decl. in *Hutton*) at 5-7.  And additionally, she attested that the rates asserted were the "standard hourly rates of each attorney and paralegal involved in the matter," (specifically, those the attorneys whose rates are also at issue in this litigation).  *Id.* at 7.  And the attestations were made in multiple suits.  It is thus difficult to simply disregard these sworn statements now.

Accordingly, some reduction of rates for T&S's lawyers is appropriate.  However,

---

[4] Jessica Lukasiewicz's rate increased from $700/hour to $925/hour now (32% increase); Jonathan Ferris from $525/hour to $800/hour (52% increase); Connor Tallet from $350/hour to $550/hour (57% increase).  *Compare Hutto*, No. 3:20-cv-07541-MMC *and Sullivan*, 3:19-cv-03187-MMC *with* Mot. at 14-15.

United States District Court
Northern District of California

United States District Court
Northern District of California

Academy's proposal is too drastic; it does not even account for year-over-year market increases. Instead, the Court finds it is appropriate to apply the rates T&S sought in 2021, increased by 20% to account for year-over-year inflation. This approach accommodates T&S's delay in payment by accounting for inflation. *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989) (holding that courts have discretion to increase award to compensate for delay in payment).

| Timekeeper | Position | Class | 2021 Rate | Rate + 20% increase |
|---|---|---|---|---|
| J. Nelson Thomas | Partner | 1993 | $740 | $888 (vs. $1200) |
| Jonathan Ferris | Partner | 2012 | $525 | $630 (vs. $800) |
| Michael Lingle | Partner | 2000 | N/A | $860 (vs. $1000)[5] |
| Jessica Lukasiewicz | Partner | 2008 | $700 | $840 (vs. $925) |
| Conor Tallet | Associate | 2018 | $350 | $437.5 (vs. 550) |

Additionally, the rate of Jonathan Ferris is to be reduced. Mr. Ferris requests to be compensated as a partner (at a rate of $800/hour), but T&S's filings show that Mr. Ferris was not promoted to partner until after the case settled in August 2022. *See* Thomas Decl. at ¶ 21 ("Mr. Ferris was promoted to partner at Thomas & Solomon LLP in October 2022. Before becoming a partner at the firm, Mr. Ferris was an associate attorney from August 2012 to October 2022."). Mr. Ferris was awarded $525/hour in *Hutto* and *Sullivan* as an associate. Applying the same 20% market increase reflected above, an appropriate rate is $630/hour for Mr. Ferris.

Multiplying these rates by the hours provided to the Court for each attorney, *see* Docket No. 491, the recovery for each lawyer should is as follows:

| Timekeeper | Hours | Requested | Rate | Total at New Rate | Reduction |
|---|---|---|---|---|---|
| J. Nelson Thomas | 2,558.50 | $3,070,200.00 | $888 | $2,271,948.00 | $798,252.00 |
| Jonathan Ferris | 2,956.90 | $2,365,520 | $630 | $1,862,847.00 | $502,673.00 |
| Michael Lingle | 512.80 | $512,800.00 | $860 | $441,008.00 | $71,792.00 |
| Jessica Lukasiewicz | 74 | $68,450.00 | $840 | $62,160.00 | $6,290.00 |
| Conor Tallet | 623.2 | $342,760 | $437.50 | $272,650.00 | $70,110.00 |
| **Total** | | | | | **$1,449,117.00** |

---

[5] This rate splits the difference between the rate for Nelson Thomas and Jessica Lukasiewicz, as Michael Lingle is in the middle of those two partners in terms of seniority.

ii.    Actual Rates or Reasonable Market Rates

Academy also argues that rates sought by T&S should be reduced because they reflect, at most, a reasonable market rate and not actual rates that T&S charges to its clients. *Id.* Specifically, Academy argues that there is no indication that T&S actually charged or that the Relator paid these rates, or that T&S actually charges any clients the rates requested. *Id.* at 6.

On this point, Academy sought supplemental discovery from T&S to discern standard billing rates it charges clients. *See* Docket No. 449, Ex. 1 (Defendant Academy Mortgage Corporation's [Sixth] Set of Document Requests to Relator Gwen Thrower) at 6 (Request No. 51 "Documents sufficient to identify the rates actually charged by Counsel to clients for work performed in the Northern District of California from 2017 to the present." And Request No. 52 "Documents sufficient to identify Counsel's standard billing rates for new clients from 2017 to the present."). In the Responses and Objections, T&S replied: "Thomas & Solomon LLP has not 'actually charged' any clients for work performed in the Northern District of California from 2017 to the present." Docket No. 471, Ex. B (Response to Request for Documents) at 5-6. And further, "Thomas & Solomon LLP does not have 'standard billing rates for new clients from 2017 to the present.' Thomas & Solomon LLP has not filed any cases on a fee-for-service basis since January 1, 2017." *Id.* at 6.

Ninth Circuit precedent does not dictate that a rate must be reduced unless the firm shows it actually billed clients the rates requested. Rather, although the court may consider actually billing rates, *Polee v. Cent. Contra Costa Transit Auth.*, 516 F. Supp. 3d 993, 998 (N.D. Cal. 2021) (citing *White*, 713 F.2d at 461), counsel is not required to submit evidence of "their own actual billing rates," but can rely upon evidence of a reasonable, community standard in supporting request for fees. *White v. City of Richmond*, 713 F.2d 458, 461 (9th Cir. 1983), *disapproved on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 718 n.4, (1987). *See id.* ("[W]e take judicial notice of the fact that many civil rights practitioners do not bill their clients at an hourly commercial rate.").

That T&S does not submit evidence of rates it actually charges clients affords the Court room to reduce the hourly rates now claimed. *See also Ferguson* v. *County of Los Angeles*, No.

15

CV 18-6861 DSF (KKX), 2021 WL 3516260, at *7 (C.D. Cal. Jan. 4, 2021).

iii.     <u>Paralegal Rates</u>

In regard to paralegals, Academy also argues that the rates should be reduced from $435/hour and $325/hour to $275/hour unilaterally.  Opp. at 7.

| Timekeeper | Position | Class | Rate | Academy Proposal |
|---|---|---|---|---|
| Sarah Hulbert (SKH) | Lead Paralegal | N/A | $435 | $275 |
| Samuel Noto (SJN) | Paralegal | N/A | $325 | $275 |
| Jonathan Francisco (JDF) | Paralegal | N/A | $435 | $275 |
| MLH | Paralegal | N/A | $435 | $275 |
| CSS | Paralegal | N/A | $435 | $275 |
| GJS | Paralegal | N/A | $435 | $275 |
| MMY | Paralegal | N/A | $325 | $275 |
| MAH | Paralegal | N/A | $325 | $275 |
| CMM | Paralegal | N/A | $325 | $275 |
| AMM | Paralegal | N/A | $325 | $275 |
| JEB | Paralegal | N/A | $325 | $275 |

As Academy points out, aside from Sarah Hulbert, which T&S identifies as a lead paralegal, T&S has not submitted sufficient information about the paralegals, such as years of experience, to justify the increase of rates from $325 to $435.  *See* Pearl Decl. ¶ 21 (opining that "Relator's paralegal rates ($325-$435) also are in line with these court awards"); *see also* Thomas Decl. ¶¶ 37-40 (providing limited information regarding Jonathan Francisco but omitting information about all other paralegals with the increased rate).  Indeed, eight of eleven paralegals are not identified by name in Relator's motion, including three paralegals which are billed at increased rates as Sarah Hulbert, Lead Paralegal (MLH, CSS, GJS).  As the specific "skill, experience, and reputation," is necessary in assessing propriety of fees, *see, e.g.*, *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015), the Court finds this is not sufficient information to assess if the deviation in paralegal fees is appropriate.  Accordingly, aside from Ms. Hulbert, the increased $435 rate is not sufficiently supported.

On the other hand, Academy's argument that the rate should be reduced to $275 for all

United States District Court
Northern District of California

United States District Court
Northern District of California

paralegals is not meritorious.  Recent decisions in the district, even in previous years, find a higher range reasonable.  *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2020 WL 7626410 (N.D. Cal. Dec. 22, 2020) (Orrick, J.) (finding paralegal rates of $390-$405 reasonable).  Accordingly, the Court finds the $325 rate appropriate for the paralegals listed aside from Sarah Hulbert, Lead Paralegal, whose position supports the increased $435 rate.  *See id.*

This accounts for reductions as follows:

| Timekeeper | Hours | Requested | Billed at $325 Rate | Reduction |
|---|---|---|---|---|
| Samuel Noto (SJN) | 88.1 | $28,632.50 | $28,632.5 | $0.00 |
| Jonathan Francisco (JDF) | 77.8 | $33,843.00 | $25,285 | $8,558.00 |
| MLH | 37.3 | $16,225.50 | $12,122.5 | $4,103.00 |
| CSS | 35.1 | $15,268.50 | $11,407.5 | $3,861.00 |
| GJS | 21 | $9,135.00 | $6,825 | $2,310.00 |
| MMY | 28.5 | $9,262.50 | $9,262.5 | $0.00 |
| MAH | 28.1 | $9,132.50 | $9,132.5 | $0.00 |
| CMM | 26.3 | $8,547.50 | $8,547.5 | $0.00 |
| AMM | 23.7 | $7,702.50 | $7,702.5 | $0.00 |
| JEB | 21.8 | $7,085.00 | $7,085 | $0.00 |
| **Total** | | | | **$18,832.00** |

b.    Rosen Bien Galvan & Grunfeld LLP ("RBGG")

Academy also argues that RBGG's hourly rates are inflated because the firm seeks to be compensated at rates for 2023 for work it performed as local counsel from the inception of the case through 2021 when it withdrew—despite fees for its merits work already having been paid at its lower rates during the litigation.  Opp. at 9-10.  Academy proposes applying RBGG's 2017 rates to account for the fee award, as reflected in its invoices charged.  *Id.*  Indeed, the hourly rates Rosen Bien use in their lodestar calculation range from $405/hour to $1,475/hour depending on title and experience of the timekeeper and reflect its 2023 rates.  The rates are as follows:

| Timekeeper | Position | Class | 2023 Rate | 2017 Rate |
|---|---|---|---|---|
| Sanford Rosen | Partner | 1962 | $1,475 | $1,000 |
| Van Swearingen | Partner | 2008 | $875 | $575 |
| Lisa Ells | Partner | 2005 | $925 | $650 |
| Michael Freedman | Senior Counsel | 2008 | $825 | $575 |
| Karen Stilber | Senior Paralegal | N/A | $435 | $225 |
| Linda Woo | Senior Paralegal | N/A | $435 | $225 |
| F. Gail LaPurja | Senior Paralegal | N/A | $405 | $225 |

17

United States District Court
Northern District of California

1    Relator contends that the 2023 rates are warranted because RBGG charged only the 2017

2  rates as an exercise of an "extra-generous billing judgment reduction, due to multiple factors."

3  Reply at 5.  According to Mr. Rosen, partner of RBGG, its firm chose to apply the 2017 rates for

4  local counsel to T&S, who hired RBGG to act as local counsel and who paid RBGG on a monthly

5  basis because T&S was working on a wholly contingent fee basis.  Rosen Reply Decl. (Docket

6  No. 456) ¶ 22.  Accordingly, RBGG argues, it should be compensated for the difference due to the

7  delay in payment.  *Id.*

8    Courts have the discretion to compensate for delay in payment.  *Missouri v. Jenkins*, 491

9  U.S. 274, 282 (1989).  There, the Court explained that:

10
> Clearly, compensation received several years after the services were
11
> rendered—as it frequently is in complex civil rights litigation—is
> not equivalent to the same dollar amount received reasonably
12
> promptly as the legal services are performed, as would normally be
> the case with private billings. We agree, therefore, that an
13
> appropriate adjustment for delay in payment—whether by the
> application of current rather than historic hourly rates or
14
> otherwise—[may be appropriate].

15 *Id.* at 283-84.   In other words, applying an increased rate may be appropriate to account for

16  inflation such that attorneys are not being penalized for receiving a payment later in time when,

17  had they received the payment in the year the work was performed, each dollar received would

18  have been worth more.  *See id.*  And the Ninth Circuit explained that: "attorney's fees are to be

19  based on market rates and such rates are based on the assumption that bills will be paid reasonably

20  promptly; delays in payment thus deprive successful litigants of the market rates." *Anderson v.*

21  *Director, OWCP*, 91 F.3d 1322 (9th Cir.1996).  If courts deem such compensation appropriate,

22  compensation can be done either: "(1) by applying the attorneys' current rates to all hours billed

23  during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime

24  rate enhancement."  *In re: Wash. Pub. Power Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

25    These cases are inapposite with the present circumstance.  Specifically, RBGG was paid

26  contemporaneously by T&S as work was performed.  In other words, there was no delay in

27  payment.

28    Instead, the payment made to RBGG by T&S should be treated like any other litigation

18

cost that T&S incurred during the course of litigation, and T&S should be compensated for the amount it paid to RBGG, not more.

Accordingly, the Court adopts Academy's proposed rates, which compensates T&S for the amounts actually paid to RBGG reflecting 2017 rates —not RBGG's current rates.  However, the Court recognizes that due to the passage of time, T&S may not be made whole if it is only reimbursed for the amount it paid out to RBGG in previous years given e.g., inflation.  The parties have not specific if and what amount of interest, if any, should be added to these rates if any to compensate T&S for the expense it incurred years ago.  The Court finds the below sums are properly awarded to Relator's counsel but leaves open the question of whether interest should be added to this amount.[6]

| Timekeeper | Hours | Requested | 2017 Rate | Granted | Reduction |
|---|---|---|---|---|---|
| Sanford Rosen | 41.9 | $61,802.50 | $1,000 | $41,900 | $19,902.50 |
| Van Swearingen | 146.0 | $127,750.00 | $575 | $83,950 | $43,800.00 |
| Lisa Ells | 20.9 | $19,332.50 | $650 | $13,585 | $5,747.50 |
| Michael Freedman | 0.5 | $412.50 | $575 | $288 | $125.00 |
| Karen Stilber | 12.3 | $5,350.50 | $225 | $2,768 | $2,583.00 |
| Linda Woo | 0.3 | $130.50 | $225 | $68 | $63.00 |
| F. Gail LaPurja | 0.7 | $283.50 | $225 | $158 | $126.00 |
| Total reduction:  $72,347.00 Total awarded:  **$142,715** ($215,062.00 requested - $72,347.00) | | | | | |

2.    Lodestar Multiplier

Parties also disagree as to whether Relator's requested lodestar multiplier of 2.0 is appropriate.  Relator requests the multiplier be applied only to fees incurred by T&S for merits work, but not for fee motion work or RBGG's work.[7]  *See* Mot. at 6, 8, 24-25; Reply at 15. Relator primarily argues a multiplier is appropriate because of the unusual skill of merits counsel and the purportedly extraordinary result of the $38.5 million settlement.  *See* Mot. at 19-21; Reply at 15.   Academy argues that the bases Relator relies upon for its multiplier have been accounted

---

[6] Figures below are derived from Docket No. 440-2, Rosen Decl. Attachment 1; Opp. at 9-10.

[7] Academy argues against applying a multiplier for work on the fee award or for RBGG fees. Opp. at 15. But the Relator makes clear it is only requesting the 2.0 multiplier for T&S merits fees.  Reply at 15.

19

1   for in its hourly rate and that the result it claims is extraordinary is not so.  *See* Opp. at 10-14.

2           Generally, there is a "strong presumption that the lodestar," absent a multiplier, is

3   sufficient.  *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (quoting *Perdue v.*

4   *Kenny A. ex rel. Winn,* 559 U.S. 542, 546-52 (2010)).  Thus, adjustments are reserved only for

5   "rare and exceptional circumstances."  *Chambers*, 980 F.3d at 665.  Such rare circumstances

6   include where an attorney engages in superior performance shown to achieve results "more

7   favorable than would have been predicted based on governing law and the available evidence," an

8   upward calculation can be appropriate.  *Perdue*, 559 U.S. at 554.  However, the Court in *Perdue*

9   made clear that such increases are not warranted where the exceptional result is due to something

10  other than attorney performance, e.g., a particularly sympathetic jury.  *Id.*  Additionally, the

11  *Perdue* Court explained that the purpose of the multiplier is to account for factors that are not

12  already incorporated into the rates that attorneys charge.  *See id.* at 554-55.

13          In applying *Perdue*, the Ninth Circuit held that bases subsumed in the hourly rate should

14  not be the bases to support a multiplier.  *Whirlpool*, 980 F.3d at 665-668.  There, the Ninth Circuit

15  explained that "a multiplier may not be awarded based on a factor that is subsumed in the lodestar

16  calculation."  *Id.* at 665 (internal quotations omitted).  *See also In re Bluetooth*, 654 F.3d at 942

17  n.7 (many of the *Kerr* factors for determining reasonable attorney's fees are "subsumed within the

18  initial calculation of hours reasonably expended at a reasonable rate") (citation omitted); *Parsons*

19  *v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020) ("Any reliance on factors that have been held to be

20  subsumed in the lodestar determination will be considered an abuse of the trial court's discretion.")

21  (citation omitted).

22          The Court finds that Relator's counsel's work resulted in an exceptional result, warranting

23  an upward multiplier.  T&S achieved in an exceptional result in keeping this case alive,

24  notwithstanding the Government's attempts to extinguish it.  This was an unexpected and positive

25  result for the Relator.  However, the multiplier should be somewhat reduced because T&S's

26  involvement in the case became more limited as the case progressed.

27          Here, T&S—on behalf of whistleblower Gwen Thrower who was a former underwriter for

28  Academy—secured a $38,500,000 settlement, restoring just under $27,000,000 to the U.S.

United States District Court
Northern District of California

1   Treasury (less $11,511,500 to Gwen Thrower) for an allegedly fraudulent and pervasive scheme of

2   insuring loans that should not have been insured.  *See* Rosen Decl. ¶ 53 (describing settlement);

3   Mot. at 2; Docket No. 117 at 1-5 (Order Denying MTD and to transfer); *see also Academy*

4   *Mortgage Corporation Agrees to Pay $38.5 Million to Settle False Claims Act Allegations Related*

5   *to Mortgages Insured by the Federal Housing Administration*, Office of Public Affairs (December

6   14, 2022), https://www.justice.gov/opa/pr/academy-mortgage-corporation-agrees-pay-385-

7   million-settle-false-claims-act-allegations (describing settlement terms).  As Academy correctly

8   notes, the recovery amount is in line with a median range of settlements in other False Claims Act

9   recovery cases which vary substantially in amounts.  *See* Docket No. 448-1, McElroy Decl., Ex.

10   13 (list of FCA settlement amounts ranging from $4.1 million to $9.6 billion against Bank of

11   America in a case relating to the 2008 financial crisis).

12          However, what is clearly distinct about this case is that the Relator prevailed in receiving a

13   settlement, notwithstanding the Government seeking to prevent the case from proceeding.  Docket

14   No. 60.  Relator thus was not only battling Defendant Academy Mortgage, but also the

15   Government.  *See id.* The Government argued that it performed a cost-benefit analysis in pursuing

16   the case, and the case failed that analysis.  *Id.*  This Court denied the motion to dismiss filed by the

17   Government—and allowed the case to continue, reasoning that the Government's investigation of

18   the claims was arbitrarily limited to just one location and a limited timeframe of an 18-month

19   period.  *See* Docket No. 97.  The Government described the decision as unprecedent, explaining

20   that "no court had ever permitted the continuation of a qui tam action in the United States' name

21   that the United States sought to end."  Reply Brief for United States, Ninth Circuit ECF No. 51 at

22   2, 2019 WL 4132218.  The decision attracted media attention, given the unique issues involved.

23   *See* Thomas Decl. ¶ 146 & Exs. K, L.  Academy does not refute Relator's assertion that the suit

24   surviving, which resulted in the settlement here, was if not the first of its kind, very rare.

25          And the case surviving is directly attributable to T&S's investigative work.  Specifically,

26   the narrowness of the Government's investigation, which was the basis for denying the motion to

27   dismiss, was made apparent precisely because of the scope and breadth of the investigation that

28   T&S engaged in in bringing its claims against Academy.  T&S engaged in a multi-week

investigation, expanding the scope to assess Academy's policies and practices throughout the country by identifying, locating, and interviewing former employees across the country to see if Relator's experiences were indeed pervasive. *See* Docket No. 440-1, Thomas Decl. ¶¶ 79-91. These efforts included cold calling individuals not only based upon an employee list but by combing through phone numbers to try and locate employees not necessarily listed and by using skip tracing to find individuals with bad phone numbers. *Id.* ¶¶ 85-86. Through extensive interviews T&S found evidence of fraudulent schemes, including pressuring management to make exceptions for government-required conditions on files, allowances to override underwriter's conditions, improper bonus payments, and adverse actions against employees who did not approve loans. *Id.* ¶ 85. Through this, T&S filed an amended complaint alleging a significantly more pervasive and systemic practice of fraudulent loan underwriting than the Government's investigation portrayed. Docket No. 45. Additionally, the legal theories asserted involved fraud requiring that the complaint meet a heightened pleading standard of Fed. R. Civ. P. 9(b), again increasing the hurdle T&S faced in keeping the suit alive.

Accordingly, an upward multiplier is appropriate in this case. *See Perdue*, 559 U.S. at 554 (finding that attorney's performance resulting in more favorable outcomes "than would have been predicted based on governing law and the available evidence" warranting a multiplier); *Espinosa*, 926 F.3d at 657-68, 572 (upward calculation appropriate based in part upon counsel's involvement in achieving settlement).[8]

However, Relator also justifies the multiplier on the basis that T&S worked on this case on a contingency basis; T&S thus should receive an increased fee award multiplier to account for that risk. The parties dispute whether contingency is ever an appropriate factor to consider in awarding

---

[8] Relator also cites *Kelly v. Wengler*, 822 F.3d 1085, 1093, 1103 (9th Cir. 2016) to support its argument. But that case is distinguishable. There, the Ninth Circuit affirmed multipliers of 2.0 and 1.3 based upon "extraordinary performance yielding extraordinary results," and because the "quality of work that produced these results [was] underrepresented in the hourly fee." *Id.* But fees were being awarded pursuant to the Prison Litigation Reform Act ("PLRA") which caps the reasonable, hourly fee result. *Id.* at 1103. The Ninth Circuit recognized that the "prevailing rates are very unlikely to be as low as the PLRA rate." *Id.* Accordingly-the multiplier was used to correct deflated rates under the PLRA. *Id.* Here, there is no cap on fees or other deflation of fees per the FCA.

United States District Court
Northern District of California

1  an upward multiplier.  *See* Docket No. 493 at 3-4 ("[R]isk, like extraordinary results and

2  undesirability, remains a principal factor to set a multiplier."); Docket No. 488 at 2 ("[T]he

3  Supreme Court has concluded that a contingency fee enhancement is 'incompatible' with fee

4  shifting statutes.").  Even assuming it is an appropriate factor to consider, an upward multiplier

5  solely to account for the contingency fee arrangement is not compelling in the present suit.  As

6  exhibited in a supplemental filing by Academy, T&S entered into a separate agreement with

7  Relator, providing that T&S would be compensated 40% of the settlement fee paid to the Relator,

8  *in addition* to receiving the assignment of Relator's right to recovery attorneys' fees under the

9  False Claims Act as a "Contingency Fee."  *See* Docket No. 485-2, Ex. 3 at 1-2, 5.[9]  Accordingly,

10  the contingency agreement which serves to supplement T&S' compensation above and beyond the

11  fee award herein (with no offset or credit) serves somewhat as a counterbalance to the risk that

12  T&S incurred.

13          Additionally, as the suit progressed, T&S took somewhat of a reduced level of

14  involvement.  Specifically, T&S conducted only one deposition and attended but did not defend

15  Relator's deposition; that was done by Reese Marketos (a trial-specific firm brought on by T&S

16  and the Relator).  *See* Docket No. 440-1, Thomas Decl. ¶ 169.  And T&S attorneys did not attend

17  or partake in other depositions including of Relator's designated expert witnesses.  *Id.* ¶¶ 170-174.

18  Additionally, though T&S effected the exceptional result achieved in the case by keeping it alive

19  against stacked odds at the outset, T&S does not contest Academy's assertion that T&S was not

20  primarily responsible for negotiating the ultimate settlement resolving the matter.  *See* Opp. at 13;

21  Reply at 15.  .  *See, e.g.*, *United States ex rel. Carranza v. Guaranteed Rate, Inc.*, No. 1:17-cv-637

22  (MAD/DJS), 2021 U.S. Dist. LEXIS 24997, at *18 (N.D.N.Y. Feb. 10, 2021); (reducing award in

23  part because, while T&S "may have expended a great deal of effort in this case, they did not settle

24  it. The United States Government intervened in the case on April 29, 2020 and settled the

25

26

27  _____

[9] The DOJ reported that the Relator has or will collect $11,511,500 from the settlement. *See*
https://www.justice.gov/opa/pr/academy-mortgage-corporation-agrees-pay-385-million-
28  settlefalse-claims-act-allegations.  Thus, T&S stands to recover $4,604,600 ($11,511,500 x .4).

1   case.").[10]

2        In summation, the Court finds that a multiplier is appropriate, but the full 2.0 multiplier for

3   T&S requested by Relator is not warranted considering all the circumstances.  Though T&S

4   achieved an exceptional result and did undertake a substantial litigation risk given the position of

5   the United States, warranting a multiplier, the firm took a lesser role as the suit progressed, was

6   not primarily responsible for negotiating the settlement, and the risk it took was counterbalanced

7   to some extent by the private contingency agreement entitling it to fully 40% of the settlement fee

8   paid to relator (roughly $4 million) in addition to the fee awarded herein (with no offset or credit).

9   Accordingly, to account for T&S's substantial, successful and heroic work that kept this case

10  alive, allowing for the unlikely, positive settlement in Relator's favor—but in consideration of the

11  aforementioned mitigating factors—the Court finds a **1.75 upward multiplier** appropriate,

12  applied only to T&S merits work.

13        3.    Excessive or Duplicative Fees

14        Academy argues several tasks performed by T&S are excessive or duplicative including:

15  (1) sending and reading emails; (2) time entries for internal conferencing; (3) and that specific

16  projects including search for trial counsel, hours to draft the appeal brief, and reviewing transcripts

17  were excessive; and (4) that T&S billed excessive hours for recycled work product.  Opp. at 14-

18  21.   Academy also argues that Relator's failure to provide raw data entries warrants a reduction in

19  fees.  Docket No. 463 (Academy's First Supplemental Opposition) at 1-4; Docket No. 470

20  (Academy's Second Supplemental Opposition) at 1-4 (reasserting arguments).   Each argument is

21  addressed in turn below.

22        As explained above, a level of deference is afforded counsel's judgement as to what they

23  had to do and the time they had to spend to achieve the results in the case.  *Moreno*, 534 F.3d at

24

25  _____

    [10] Academy also argues against a multiplier because the Supreme Court, after this case settled,
26  clarified the standard for approving a government's dismissal of a qui tam action under the FCA—
    making it more favorable to the government.  *United States ex rel. Polansky v. Executive*
27  *Health Res., Inc.*, 216 L. Ed. 2d 370 (U.S. 2022); Opp. at 14.  But that only addresses the merits
    of the case surviving now—not whether T&S engaged in work worthy of a multiplier.  If anything,
28  this argument highlights the uncertainty in the law that T&S faced at the time of the decision.

1112; *Greenpeace, Inc.*, 2020 WL 2465321, at *9.  Still, there are particular aspects of the fee request that warrant closer analysis, as addressed below.

            a.     <u>Sending and Reading Emails and Internal Conferencing</u>

      Academy takes issue with T&S's time entries for what it describes as a "pattern and practice" of engaging in excessive and duplicative billing for sending and reading "simple emails." Opp. at 15-17.  Particularly, T&S takes issue with the fact that, as explained by its expert, of 10,148 line-item billing entries reviewed 49.4%[11] are related to reviewing or sending an email and of those, 90.4% were billed at 0.2 hours or more with an average of 0.27 hours for each.  Stiefel Decl. ¶ 34.  Additionally, T&S points to particular examples of what they call egregious billing, such as charging 3.2 hours to exchange four emails with Academy regarding a stipulation to adjourn dates for two weeks in the matter.  Opp. at 15.  To account for these purported errors, Academy's expert proposes a 75% deduction to the time billed for emails.  Stiefel Decl. ¶ 98.

      Courts recognize that in modern litigation, attorneys regularly rely on email communication to conduct legal work.  *See, e.g.*, *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1103 (N.D. Cal. 2008); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F Supp 3d 975, 988 (N.D. Cal. 2017).  In *Prison Legal News*, Judge Illston considered whether entries billing for email exchanges were impermissibly vague or otherwise unsupported.  561 F. Supp. 2d at 1103.  Judge Illston explained that the surrounding language provided additional context and recognized that, "it is not unreasonable to expect that the partner supervising the case would have multiple entries for … emailing with the associates working with him." *Id.*  However, in *De Leon v. Ricoh USA, Inc.*, Judge Corley determined "individual attorneys separately billed for reviewing the same email (for the same amount of time)" did not reflect sound billing judgment, as "counsel should make a food faith effort to exclude from a few request hours that are excessive, redundant, or otherwise unnecessary." *De Leon v. Ricoh USA, Inc.*, 2020 WL 1531331, at *16 (N.D. Cal. Mar. 31, 2020).

      The findings by courts such as *Prison Legal News* and *Ridgeway* are sound insofar as they

---

[11] In Academy's opposition it states  that this percentage relates to 9,917 time entries reviewed, but its expert used the figure 10,148—which represents time billing entries also including entries removed per judgment reduction by Relator.  *Compare* Opp. at 15 *with* Stiefel Decl. ¶ 34.

reflect that emails are a valid and substantive part of case management in today's world. As Relator points out, email exchanges are often the forum wherein substantive legal work is exchanged and replace what would previously have been billed as e.g., drafting or reviewing a legal memorandum or letter. To this end, Relator's expert, Mr. Pearl explains that "managing a complex case with a large team necessarily generates a great deal of email traffic." Pearl Decl. ¶ 36. And the emails are used as a more efficient means to share "critical information, compared to scheduling and holding meetings and phone calls." *Id.* Given this, that a large percentage of time entries appear to have centered around email exchanges does not necessarily indicate that the work involved therein was not compensable.

However, Academy rightfully points to particular entries that reflect unnecessary or redundant billing for email exchanges that reflect the sort of unsound billing judgment described by Judge Illston in *De Leon.* Specifically, the following entries reflect redundancies or excessive billing and are to be reduced from the award: 0.6 hours ($600 before multiplier) billed by three attorneys (two associates and two partners) to J. McElroy on March 29, 2017, reading "Thanks, Jason. Yes, we are planning on amending." Thomas Decl., Ex. M. at 173; 0.6 hours ($600 before multiplier) billed by three attorneys (two partners and on associate) reviewing a May 22, 2017, email from J. McElroy that read "Jon: Please let me know when you have a minute to talk today." *Id.* at 181; 0.9 hours ($900 before multiplier) billed by six attorneys (four partners and two associates) spent reviewing a December 13, 2028, email from J. McElroy that read "Good afternoon: Please find attached a copy of the Proposed Order relating to Defendant's Motion to Compel Rule 45 Subpoena served today in the above captioned matter. The proposed order relates to docket number 157. Best regards, Jason W. McElroy." *Id.* at 228; 0.6 hours ($640 before multiplier) billed by three attorneys (two partners and on associate) reviewing an October 12, 2021, email from J. McElroy that read "All: Please find attached Academy Mortgage Corporation's Second Set of Requests for Admission. Please note that we have encrypted and password-protected the file due to the confidential documents attached as exhibits. I will send the password via separate communication." This results in a reduction of **$2,740** pre-multiplier.

However, Academy's assertion that this represents a "pattern and practice" of inflated

United States District Court
Northern District of California

billing regarding emails is not supported.  These represent only four examples of errors from close to 10,000 entries that were submitted to the Court, which is a negligible percentage.  Thus, an across-the-board reduction of 75% as Academy's expert suggests is not warranted here.

### b. Internal Conferencing

Generally, excessive time spent for internal communications or "intra-office conferencing" such as time spent conferring and strategizing should be reduced.  *See De Leon*, 2020 U.S. Dist. LEXIS 56285, at *49; *Hernandez v. Taqueria El Grullense*, No. 12-cv-03257, 2014 U.S. Dist. LEXIS 61020, at *33 (N.D. Cal. Apr. 30, 2014).  Academy argues that what it describes as excessive time spent conferencing, conferring, meeting, calling, strategizing, commenting, sending/reviewing memos, and other communications.  Stiefel Decl. ¶ 24, Ex. D.  To support its assertion Mr. Stiefel, Academy's expert, compiled an exhibit identifying the entries that it deems are offensive internal communications.  Stiefel Decl., Ex. D.  Mr. Stiefel explains that these entries among to 1,856.4 billable hours that should be reduced for reflecting excessive internal communications and conferences amongst T&S attorneys.  Stiefel Decl. ¶¶ 24, 33.   However, Relator submitted a convincing rebuttal declaration identifying—line by line—errors made in the submission of Mr. Stiefel in its exhibit purporting to identify internal communications. Rosen Reply Decl. ¶¶ 29-33 & Ex. B.  Specifically, Mr. Rosen highlighted in yellow each entry of the hundreds of entries listed that either (1) involve external communications; (2) entries lacking indication of any conferring; (3) wherein conferencing is just one of multiple activities in the same description; or (4) entries including in Mr. Stiefel's report that were marked as no-charge based upon billing judgment reductions.  *See id.*  In reviewing the line-by-line annotations, Mr. Rosen's accounting is reflective of the communications and serves to expose errors in Mr. Stiefel's exhibit.  Accordingly, the Court rejects the recommendation by Academy's expert to reduce the internal conferencing fees unilaterally by 75%.

### c. Recycled Work Product

Courts also warn against billing for complaints that are drafted that are either boilerplate or nearly identical to other complains.  *G & G Closed Circuit Events, LLC v. Hung Ho*, No. 11-CV-03096-LHK, 2012 U.S. Dist. LEXIS 104029, at *6-7 (N.D. Cal. July 25, 2012).  Academy argues

that time spent working on Relator's initial complaint and amended should be deemed duplicative or excessive. Opp. at 20-21. In review of Complaints filed by the United States in another case, *United States v. Quicken Loans*, Inc., No. 15-cv-00613, ECF No. 1, ¶¶ 28-97, 99-101 (D.D.C. April 23, 2015) and the initial complaint here, Docket No. 1 ¶¶ 27-91, 115-17, it appears that certain allegations are nearly identical. Relator does not dispute Academy's argument as to this point. *See generally* Reply. Accordingly—a reduction of fees for the 87.5 hours drafting the initial complaint is appropriate. However, as explained in reference to the appropriateness of the multiplier in this case, the amended complaint in this action, Docket No. 45, which withstood the government's motion to dismiss based upon an extensive investigation of Academy's practices cannot likewise be said to be anything close to "boilerplate," particularly given that it resulted in the unprecedented event of the case continuing despite the government's opposition. No reduction is warranted per the drafting of the amended complaint.

> d.     <u>Specific Projects</u>

Academy also argues that other specific projects do not warrant compensation. Opp. at 19-20. First, Academy argues that the appeal brief drafted before the Ninth Circuit should not have taken 333.2 hours to draft. *Id.* at 20 (citing *Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 U.S. Dist. LEXIS 79231, at *28 (N.D. Cal. June 5, 2013) (reducing excessive drafting time)). However, Academy bases this argument on the fact that the appeal was ultimately dismissed for an issue raised *sua sponte*, i.e, lack of appellate jurisdiction. Opp. at 20. Yet that outcome was not known to Relator at the time that it filed the appellate brief. As explained in Relator's opening motion, the Relator spent substantial time conducting research and drafting the brief on the merits of the issue that was permitted for review on interlocutory appeal—namely issues as to certification and promissory fraud raised in the amended complaint. *See* Mot. at 9; Docket No. 134 at 3. The Ninth Circuit *also* directed the parties to address jurisdiction, but that does not negate the need to argue on the merits. It would be irresponsible for the Relator to forego addressing the merits and to have opted only to argue about appellate jurisdiction. Accordingly, Academy's contention that "T&S does not explain why this time was justified," is not true. Opp. at 20. This argument is thus rejected.

United States District Court
Northern District of California

Next, Academy argues that T&S should not be afforded 125.6 hours in its search for trial counsel. *Id.* at 19. Academy is correct that time spent locating counsel should be reduced or omitted. *See Ferguson*, 2021 U.S. Dist. LEXIS 196302, at *20 (excluding time requested for locating local counsel). Spending over 100 hours finding counsel is excessive; and time spent solely identifying trial counsel should be excluded. *See id.* On the other hand, certain of the identified time entries by Academy do not relate to the search for counsel at all, but involve substantive communications between trial counsel and T&S. *See* Stiefel Decl. ¶ 71 & Ex. O (identifying, e.g., time entries involving "deposition updates" for those that should be excluded). These substantive entries involving trial counsel stand.

Lastly, Academy argues that time spent (69 hours) reviewing transcripts from another case— United States of *America v. Allied Home Mortgage Corporation, et al.*, Case No. 4:12-cv-02676 (S.D. Tex) should be excluded entirely because that is a distinct case not relevant to this one. Opp. at 20 (citing *Skidmore v. Gilbert*, No. 20-cv-06415, 2022 U.S. Dist. LEXIS 180114, at *24 (N.D. Cal. Sep. 30, 2022) (reducing time spent reviewing deposition transcripts in another case as excessive). Relator justifies the time by explaining that the *Allied* case involved the same defense counsel firm as here and because it also involved an FHA mortgage fraud case under the False Claims Act. Reply at 9; Thomas Reply Decl. ¶ 40. To this end, Relator reviewed the transcripts from that trial to "effectively and efficiently identify the types of documents to obtain in discovery to show elements such as scienter and materiality." *Id.* This strategy appears to be sound, given that the two actions overlapped both in terms of counsel litigating the case and in the idiosyncratic subject matter at issue. Accordingly, and in light of the deference afforded to counsel that have obtained a successful outcome in work that is necessary to succeed, *Moreno*, 534 F.3d at 1112, this project is compensable.

### e.    Raw Data Entries

Academy also argued in its supplemental filings (spurred by post-judgment discovery targeting the fee request), arguing that the fee award should be reduced because Relator did not submit raw data entries. *See* Docket No. 463 (Academy's First Supplemental Opposition) at 1-4; Docket No. 470 (Academy's Second Supplemental Opposition) at 1-4 (reasserting arguments).

Academy argues that the raw data entries are necessary to prove that the time entries were created contemporaneously instead of subsequently reconstructed.  However, this Court previously rejected this argument in its order denying Academy's Request for Relief from a Magistrate Judge's decision, citing the attestations of Relator's counsel that the entries were contemporaneous, and lack of evidence presented by Academy to negate the attestations.  Docket No. 478 at 2 (explaining that Academy's basis for arguing reconstruction occurred per number of hours spent reviewing time entries is explained by the need for counsel to review and vet time entries across seven years of litigation for numerous timekeepers).  The fee award is not to be reduced on this basis.

### 4.   Summary of Fees for Merits Work

Relator seeks the following: (1) merits fees of $12,622,146.70  , based on a merits lodestar of $6,418,604.35(7,277.3 hours (T&S) multiplied by varying hourly rates ($6,203,542.35) and 222.6 hours (RBGG) multiplied by varying hourly rates ($215,062.00)), and a 2.0 multiplier).

The Court finds an appropriate lodestar is $4,735,593 ($6,203,542.35 - $1,467,949.00 reduction for hourly rates of attorneys and paralegals) for merits work, less $2,740 (email entry reductions), $242,920.75 (reduction for redundant work in drafting initial complaint, and $115,400 (time spent locating counsel); this amounts to $4,374,532.25 pre-multiplier.  Accounting for the multiplier of 1.75, T&S is to be awarded **$7,655,431.44** ($4,374,532.25 x 1.75) for its merits work. RBGG is to be awarded **$142,715** ($215,062.00 requested - $72,347.00 reduction for hourly rates) and potentially additional interest. This amounts to a total merits fee award of **$7,798,146.44**.

## B.   Fee Award for Work on Fee Application

The Relator initially sought $737,379.55 for work it performed regarding the fee application ($403,522.88 for T&S and $333,826.68 for RBGG) for 836.8 hours of work performed through May 2023 when the initial motion was filed.  Mot. at 23.  This incorporates a 19.7% judgment reduction (bringing the total down $181,110.95).  *Id.*  This work extended to May 2023. *Id.*  In a supplemental filing, Relator increased the amount sought, asking for additional fees incurred due to additional work on the fee motion between May 20 and June 16 performed by RBGG in that amount of $111,530.50, relating to the reply brief and other work in connection

with the fee motion.  Docket No. 447 ¶ 5.  And subsequently, Relator requests an additional $146,436.80 for work performed by RBGG from June 17 through August 13.  Docket No. 456 at 14; Rosen Supp. Decl. ¶ 68 & Attachment 1.  In total, Relator requests $995,346.85 for work spend on its fee motion for over 1,000 hours of work on the fee motion.  Rosen Supp. Decl. (Dkt. 447) Ex. C; Rosen Second Supp. Decl. (Docket No. 456) ¶ 68.

Academy concedes that the Relator is entitled to recover fees for time spent pursuing a motion for attorney's fees and costs under the FCA.  Opp. at 21.  However, Academy argues that the extent of the fees requested are facially unreasonable, that the fees should be reduced because T&S refused to negotiate in good faith, increasing work to be done, and because the motion contains excessive time spent reviewing time entries.  *See* Opp. at 21-22.  Academy re-raised these arguments in its supplemental filings (spurred by post-judgment discovery targeting the fee request).  *See* Docket No. 463 at 3-4; Docket No. 470 at 3-4.   Academy's expert proposes applying a reduction model, which would eliminate tasks such as duplicative work and time vague billing, would allow accreditation for 502.2 hours of work ($267,163.13) relating to the fee motion.  Docket No. 448-2 at 99.  Relator's position is that the fees are reasonable, necessary for the motion, and that Academy unnecessarily increased the amount of work that its counsel had to spend on its fee motion (not the other way around).  Reply at 11-14.

A. <u>Reasonableness</u>

In several cases (cited by Academy) courts in this circuit have found that much fewer hours than 1,000 spent on a fee motion are excessive.  *See Dytch v. Lazy Dog Rests., LLC*, No. 16-cv-03358-EDL, 2019 2019 WL 3928752, at *6-8 (N.D. Cal. Aug. 16, 2019) (94.6 claimed hours on motion for fees unreasonable and excessive and reducing to 60.0 hours); *Rodriguez*, 53 F. Supp. 3d at 1284-85 (123.5 hours on motion for fees unreasonable and excessive); *Hernandez v. Spring Charter Inc.*, No. 19-cv-01479-TSH, 2020 U.S. Dist. LEXIS 42395, at *15-16 (N.D. Cal. Mar. 11, 2020) (25 hours on motion for fees unreasonable and excessive); *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1008-09 (N.D. Cal. 2012) ($85,570 spent on motion for fees unreasonable and excessive); *Pub. Resource.org v. U.S. Internal Revenue Service*, No 13-cv-02789, 2015 U.S. Dist. LEXIS 175943, at *24-25, (N.D. Cal. Nov. 20, 2015) (58.7 hours on

1    motion for fees unreasonable and excessive).

2        But this does not necessarily end the inquiry.  In most of those cases, the court found the

3    fees excessive because the filing should have been "straightforward," or "boilerplate" and the fees

4    were not heavily contested, and the litigation was shorter.  *See Dytch*, 2019 WL 3928752, at *7

5    (fee request should have been a  "straightforward filing" and only three-year litigation);

6    *Defenbaugh*,  2004 U.S. Dist. LEXIS 16256, at *39-40 (motion was "to a large degree,

7    boilerplate"); *Rosenfeld*, 904 F. Supp. 2d at 1009 (finding similar and employing 20% reduction

8    for the fees on fee); *Pub. Resource.org*, 2015 U.S. Dist. LEXIS 175943, *24-25 (similar).  And in

9    *Rodriguez*, the court noted that this particular firm "frequently requests unreasonably high fees" on

10   fee motions and accounted for it in the filing.  53 F. Supp. 3d at 1285.

11       Here, Relator justifies the time spent on the fee motion, writing that it required a "massive

12   effort."  Docket No. 456-1, Pearl Decl. ¶ 74.  There are certain aspects of the suit that made the

13   motion more complicated.  There were seven years of time records to review, both for legitimacy

14   and to redact privileged information.  *Id.*  Additionally, Mr. Thomas (partner at T&S) drafted a

15   substantial declaration to explain the history of the case, including "all of its twists and turns,"

16   including the interactions between Relator and the government.  *Id.*  On top of that, it is certainly

17   true that this fee motion has been contested fairly extensively by the parties.  *See* Docket Nos. 440,

18   447-48, 456, 463-65, 470-74 (briefing regarding fee motion).  Indeed, the issue of fees was

19   specifically carved out from the settlement agreement, *see* Docket No. 438 (Order Approving

20   Partial Dismissal), indicating to Relator's counsel that this would be a motion that would endure a

21   fight.

22       Still, these factors do not seem so extreme as to account for the large difference between

23   fees which courts have regularly recognized as reasonable and the 1,000 hours spent here.  To this

24   end, Relator does not assert, nor is the Court aware of cases awarding fees for 1,000 hours spent

25   on a motion fee.  In one instance, a court approved a request for 600 hours of fee-related work.

26   *United States v. City & Cnty. of San Francisco*, 748 F. Supp. 1416, 1438 (N.D. Cal. 1990), *aff'd in*

27   *in relevant part Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) (finding

28   that "the total number of hours expended [on the fee motion], just under 600, is quite reasonable

United States District Court
Northern District of California

given the vigor with which the City challenged the fee petition.").  Relator cites to one additional case, *Wit v. United Behavioral Health*, 578 F.Supp.3d 1060, 1086 (N.D. Cal. Jan. 5, 2022), where in the court compensated the attorneys for 1,279 hours of fee motion work).  However, the fee award was subsequently vacated and remanded—though summarily due to non-opposition of the parties.  *Wit v. United Behav. Health*, No. 22-15184, 2023 WL 8723695, at *1 (9th Cir. Dec. 15, 2023).

The Court finds it appropriate to apply a discretionary 10% overall "haircut" to the fees-on-fees work.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (holding that a district court may apply a 10% haircut on fee award as a matter of general discretion); *see also Greenpeace*, 2020 WL 2465321, at *9 (citing *Moreno*, 534 F.3d at 1112).  The fee motion here is certainly more complex than a typical motion, but the over 1,000 hours spent on it is exceeds that spent on other complicated fee motions.  *See, e.g.*, *City & Cnty. of San Francisco*, 748 F. Supp. at 1438 (awarding fees for 600 hours of fee motion work).[12]

C.  Failure to Negotiate in Good Faith

Academy also argues that T&S refused to negotiate reasonably regarding its fees and held up the negotiations by refusing to provide detailed time records in a timely fashion.  Opp. at 22-23.  T&S did engage in some stalling.  Specifically, T&S declined to provide detailed time records in September 2022 to facilitate fee discussions, though offering to provide general time entries, and provided the records only one week before filing its motion for fees in May 2023.  *See* Docket No. 448-1, McElroy Decl., Ex 3 (email from J. Nelson to J. McElroy, September 26, 2022, explaining "In terms of turning the time records, I don't see the need to exchange the records here as we have never done so in the past and have resolved fee disputes with your firm. If it would put an end to the issue, I would consider making an exception and providing the time worked by timekeepers for the general stages of the case.").

However, it does not appear based on the evidence submitted by Academy that Academy

---

[12] Academy seeks a reduction to 503 hours (reflecting over a 50%) reduction.  But such a severe reduction is not appropriate; the litigation here spanned seven years (culminating in 9,000-time entries), was thoroughly vetted by Relator's counsel, and also that the motion was heavily litigated by the parties.

United States District Court
Northern District of California

United States District Court
Northern District of California

took T&S up on its offer to provide more general time entries, or took a collaborative approach in regard to negotiations, either. *See id.* (repeating only Academy's request to receive detailed time entries when Mr. Nelson offered general time entries to facilitate settlement discussions). And it is doubtful that providing the specific time entries would have impactful upon settlement discussions, particularly given the wide difference between fees Academy thinks are appropriate and those sought by the Relator, along with the numerous arguments Academy has raised to rebut fees in its opposition to the fee award motion. Additionally, Academy, for its part, also made choices that drove up time spent on the fee petition. This includes requesting extensions for the fee hearing, Docket Nos. 445 and 450, seeking supplemental discovery on the fee petition, Docket No. 449, raising a discovery dispute via letter before Magistrate Judge Kim, Docket No. 461 (which Academy also challenged before this Court, Docket No. 469). Relator's counsel, however, is not requesting fees for the time spent on this supplemental discovery and in continuing to defend its fee petition. Accordingly, the Court does not apply an additional reduction on this basis.

D.    Time Spent Vetting Entries

Academy also argues that the fee award motion includes excessive fees because the amount of time spent reviewing and preparing documents for the fee request was excessive (approximately 178.9 hours) and because the work was duplicative insofar as RBGG also reviewed and checked T&S's work vetting those fees. Opp. at 23-24.

The Court previously determined in its order denying relief from the Magistrate Judge's decision that the amount of time spent vetting the records in this case appeared appropriate, considering that the entries were associated with seven years of billing records, involved thousands of time entries, and were vetted against emails and documents. Docket No. 478. This was in context of rejecting Academy's argument that the hours necessarily were indicative of reconstructing time entries (as opposed to vetting contemporaneously submitted time entries). However, the Court did not consider whether the time RBGG engaged in reviewing the entries was duplicative or whether the time spent on this task was warranted.

Courts outside of this circuit have explained that lawyers have an "ongoing duty

34

throughout the litigation to maintain an accurate record of its time[.]"  *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 52 (D.D.C. 2016); *see also Perez v. Garcia*, No. 15-20615-CIV, 2016 U.S. Dist. LEXIS 78517, at *16 (S.D. Fla. June 16, 2016) ("Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney.").  In this sense, the contemporaneous billing records could have been maintained throughout litigation and submitted to the Court with little review or additional billing.  However, courts in this circuit regularly, and rightfully warn counsel applying for fees to "review all entries" carefully and to "exercise the judgment necessary" to ensure issues such as e.g., overbilling do not take place in submitting fees. *Dusty S. v. Kijakazi*, 2021 WL 9763052, at *3 (E.D. Wash. Sept. 23, 2021).  *See also Charlotte J. v. Kijakazi*, No. 2:20-CV-00278-MKD, 2021 WL 9747975, at *2 (E.D. Wash. Sept. 15, 2021) ("Plaintiff's counsel is asked to review all entries and exercise the judgment necessary to ensure overbilling does not occur.").  Indeed, it was this review of entries and exercise of judgment that led to a reduction of approximately 19% of Relator's counsel's overall fees.  *See* Mot. at 3; Thomas Decl. ¶¶ 211-213; Rosen Decl. ¶¶ 45 & Ex. H, 56-57.  Accordingly, it is an appropriate task to review time entries and to vet those entries against emails and documentation, along with entries by other attorneys to ensure the fees requested are appropriate.

On the other hand, it is not clear why T&S had its work regarding its fee records double checked by RBGG. Decl. of N. Thomas at ¶ 191.  Relator has not established that this is a necessary practice.  And generally, duplicative work is not compensable.  *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (explaining that attorneys producing overlapping work product is duplicative unless redoing the work is necessary, e.g., in updating research to account for additional case law development).  Accordingly, the time RBGG spent double-checking the time entries should be omitted from the calculation. This amounts to a reduction of **$120,476** (178 hours).

In summation, the Court imposes a 10% reduction in the fee motion award to account for hours appearing somewhat excessive (over 1,000 hours).  Additionally, the Court reduces the fee motion award for duplicative work that RBGG engaged in for reviewing T&S's time entries.

1    In total, Relator is awarded **$787,383.76** for its fee motion work (($995,346.85[13] ]. -

2    $120,476) x 0.90).

### V.    EXPENSES

4    Relator also seeks reimbursement for expenses incurred in relation to the case amounting

5    to $89,437.77.  Separate from attorney's fees, the FCA provides for payment of litigation

6    expenses, including expert fees, to a prevailing Relator.  *See* U.S.C. § 3730(d)(2); *see also United*

7    *States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1413 (9th Cir. 1995) ("under the

8    FCA, fees, expenses, and costs are three distinct categories").  Relator submits detailed listings of

9    its expenses, *see, e.g.*, Docket No. 440-1, Nelson Decl., Ex. Q-R., and Academy does not oppose

10   the request, *see generally* Opp.  Accordingly, the expense costs are granted.

### VI.    CONCLUSION

12   For the reasons stated herein, the Court **GRANTS in part and DENIES in part** Relator's

13   motion for fees and expenses as modified by this order.  As to merits work, the reductions include:

14   a reduced lodestar multiplier of 1.75; reductions to T&S's hourly rates in accordance with its 2021

15   submissions in the district, accounting for year-over-year inflation; RBGG hourly rates reduced to

16   reflect 2017 rates as opposed to 2023 rates (but for which a  factor may be applied to represent to

17   time value of money lost by T&S which paid RBGG); and reductions to specific projects and line

18   items identified as excessive, duplicative, or otherwise not warranted.  As to the fee motion work,

19   the overall hours for fees on fees are excessive and will be reduced by 10%.  Further, duplicative

20   work identified by Academy in cross-checking the time entries for this motion by RBGG is

21   omitted from the calculation.  Relator's request for expenses is granted.  Relator is awarded

22   **$8,585,530.20**, and possible additional interest on the RBGG payments, in attorney's fees and

23   **$89,437.77** for expenses.  The parties shall meet and confer to reach an agreement on what interest

---

25   [13] The Relator initially sought $737,379.55 for work it performed regarding the fee application.
26   Mot. at 23.  In a supplemental filing, Relator increased the amount sought, asking for additional
     fees incurred due to additional work on the fee motion between May 20 and June 16: $111,530.50,
27   and then again, asked for an additional $146,436.80 for work performed by RBGG from June
     17 through August 13.  Docket No. 456 at 14; Rosen Supp. Decl. ¶ 68 & Attachment 1.  In total,
28   Relator requests $995,346.85 for work spend on its fee motion.  Rosen Supp. Decl. (Dkt. 447) Ex.
     C; Rosen Second Supp. Decl. (Docket No. 456) ¶ 68.

United States District Court
Northern District of California

adjust, if any, should be applied to the RBGG expenses. If the parties cannot reach an agreement, they shall file cross-briefs on the issue no later than June 14, 2024.

The Clerk of Court is directed to file this order provisionally under seal. The parties are directed to submit their proposal as to sealing no later than June 14, 2024. This order disposes of Docket No. 440

**IT IS SO ORDERED**.

Dated: May 31, 2024

_____
EDWARD M. CHEN
United States District Judge

# EXHIBIT D



*ELM Solutions*

# 2024 Real

# Rate Report®

The industry's leading analysis of law firm rates, trends, and practices

 Wolters Kluwer



**Report Editor**

**Jennifer McIver**
Director, Legal Operations and Industry Insights
Wolters Kluwer ELM Solutions

**Lead Data Analysts**

**Carol Au**
Business Systems Quantitative Analyst
Wolters Kluwer ELM Solutions

**Aaryak Shandilya**
Data Scientist
Wolters Kluwer ELM Solutions

**ELM Solutions Creative**

**David Andrews**
Senior Graphic Designer
Wolters Kluwer ELM Solutions

**Contributing Analysts and Authors**

**Jason Bender**
Legal Analytics Product Manager
Wolters Kluwer ELM Solutions

**Haemi Jung**
Strategic Business Intelligence Manager
Wolters Kluwer ELM Solutions

**Margie Sleboda**
Lead Technology Product Manager
Wolters Kluwer ELM Solutions

**Executive Sponsor**

**Brian Jorgenson**
Vice President, Product Management
Wolters Kluwer ELM Solutions

© 2004 - 2024 Wolters Kluwer ELM Solutions. All rights reserved. This material may not be reproduced, displayed, modified, or distributed in any form without the express prior written permission of the copyright holders. To request permission, please contact:

ELM Solutions, a Wolters Kluwer business
2929 Allen Pkwy Ste 3300
Houston, TX 77019 United States
ATTN: Marketing
ELMSolutionsSales@wolterskluwer.com

**LEGAL CAVEAT**

Wolters Kluwer ELM Solutions has worked to ensure the accuracy of the information in this report; however, Wolters Kluwer ELM Solutions cannot guarantee the accuracy of the information or analyses in all cases. Wolters Kluwer ELM Solutions is not engaged in rendering legal, accounting, or other professional services. This report should not be construed as professional advice on any particular set of facts or circumstances. Wolters Kluwer ELM Solutions is not responsible for any claims or losses that may arise from any errors or omissions in this report or from reliance upon any recommendation made in this report.

# Table of Contents - 2024 Real Rate Report

**A Letter to Our Readers • 4**

**Report Use Considerations • 5**

**Section I: High-Level Data Cuts • 8**
- Partners, Associates, and Paralegals
- Partners and Associates by City and Matter Type
- Partners and Associates by City
- Partners, Associates, and Paralegals by Practice Area and Matter Type
- Partners and Associates by Firm Size and Matter Type
- Partners by City and Years of Experience
- Associates by City and Years of Experience

**Section II: Industry Analysis • 65**
- Partners, Associates, and Paralegals by Industry Group
- Partners and Associates by Industry Group and Matter Type
- Basic Materials and Utilities
- Consumer Goods
- Consumer Services
- Financials (Excluding Insurance)
- Health Care
- Industrials
- Insurance
- Technology and Telecommunications

**Section III: Practice Area Analysis • 88**
- Bankruptcy and Collections
- Commercial
- Corporate: Mergers, Acquisitions, and Divestitures
- Corporate: Regulatory and Compliance
- Corporate: Other
- Employment and Labor
- Environmental
- Finance and Securities
- General Liability (Litigation Only)
- Insurance Defense (Litigation Only)
- Intellectual Property: Other
- Intellectual Property: Patents
- Intellectual Property: Trademarks
- Real Estate

**Section IV: In-Depth Analysis for Select US Cities • 175**
- Boston, MA
- Chicago, IL
- Los Angeles, CA
- New York, NY
- Philadelphia, PA
- San Francisco, CA
- Washington, DC

**Section V: International Analysis • 195**

**Section VI: Matter Staffing Analysis • 220**

**Appendix: Data Methodology • 225**

# A Letter to Our Readers

**Welcome to the latest edition of Wolters Kluwer ELM Solutions Real Rate Report®, the industry's leading data-driven benchmark report for lawyer and paralegal rates.**

Our Real Rate Report has been a relied upon data analytics resource to the legal industry since its inception in 2010 and continues to evolve, providing you with the most comprehensive rate benchmarking insights, trends, and practices. The Real Rate Report is powered by the Wolters Kluwer ELM Solutions LegalVIEW® data warehouse, which has grown to include $180B+ in anonymized legal data.

The depth and granularity of the data within the Real Rate Report empowers users to benchmark and negotiate effectively and make well-informed investment and resourcing decisions for the organization.

As with previous Real Rate Reports, our data is sourced from corporations' and law firms' e-billing and time management solutions. We have included lawyer and paralegal rate data filtered by specific practice and sub-practice areas, metropolitan areas, and types of matters. This level of detail gives legal departments and law firms the precision they need to identify areas of opportunity. We strive to make the Real Rate Report a valuable and actionable reference tool for legal departments and law firms.

As always, we welcome your comments and suggestions on what information would make this publication more valuable to you. We thank our data contributors for participating in this program. And we thank you for making Wolters Kluwer ELM Solutions your trusted partner for legal industry domain expertise, data, and analytics and look forward to continuing to provide market-leading, expert solutions that deliver the best business outcomes for collaboration among legal departments and law firms.

Sincerely,

**Brian Jorgenson**
Vice President, Product Management
Wolters Kluwer ELM Solutions

# Report Use Considerations

**2024 Real Rate Report**
- Examines law firm rates over time
- Identifies rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal)
- Itemizes variables that drive rates up or down

All the analyses included in the report derive from the actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment.

Examining real, approved rate information, along with the ranges of those rates and their changes over time, highlights the role these variables play in driving aggregate legal cost and income. The analyses can energize questions for both corporate clients and law firm principals.

Legal departments might ask whether they are paying the right amount for different types of legal services, while law firm principals might ask whether they are charging the right amount for legal services and whether to modify their pricing approach.

Some key factors[1] that drive rates[2]:

**Attorney location -** Lawyers in urban and major metropolitan areas tend to charge more when compared with lawyers in rural areas or small towns.

**Litigation complexity -** The cost of representation will be higher if the case is particularly complex or time-consuming; for example, if there are a large number of documents to review, many witnesses to depose, and numerous procedural steps, the case is likely to cost more (regardless of other factors like the lawyer's level of experience).

**Years of experience and reputation -** A more experienced, higher-profile lawyer is often going to charge more, but absorbing this higher cost at the outset may make more sense than hiring a less expensive lawyer who will likely take time and billable hours to come up to speed on unfamiliar legal and procedural issues.

**Overhead -** The costs associated with the firm's support network (paralegals, clerks, and assistants), document preparation, consultants, research, and other expenses.

**Firm size –** The rates can increase if the firm is large and has various timekeeper roles at the firm. For example, the cost to work with an associate or partner at a larger firm will be higher compared to a firm that has one to two associates and a paralegal.

---

1 **David Goguen, J.D., University of San Francisco School of Law (2020) Guide to Legal Services Billing Retrieved from:** https://www.lawyers.com/legal-info/research/guide-to-legal-services-billing-rates.html
2 **Source: 2018 RRR.** Factor order validated in multiple analyses since 2010

# Section I: High-Level Data Cuts

All data and analysis based on data collected thru Q2 2024

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2024 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2024 | 2023 | 2022 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **San Diego CA** | **Litigation** | Partner | 43 | $252 | $400 | $907 | $568 | $539 | $550 |
| | | Associate | 44 | $195 | $250 | $343 | $315 | $303 | $303 |
| | **Non-Litigation** | Partner | 75 | $401 | $523 | $889 | $678 | $676 | $717 |
| | | Associate | 57 | $250 | $374 | $458 | $412 | $393 | $378 |
| **San Francisco CA** | **Litigation** | Partner | 166 | $420 | $825 | $1,208 | $856 | $821 | $760 |
| | | Associate | 120 | $431 | $614 | $824 | $659 | $606 | $534 |
| | **Non-Litigation** | Partner | 220 | $460 | $770 | $1,172 | $838 | $832 | $790 |
| | | Associate | 167 | $342 | $575 | $860 | $625 | $578 | $566 |
| **San Jose CA** | **Litigation** | Partner | 36 | $650 | $830 | $1,303 | $996 | $990 | $899 |
| | | Associate | 29 | $497 | $640 | $833 | $682 | $678 | $674 |
| | **Non-Litigation** | Partner | 57 | $703 | $931 | $1,350 | $1,069 | $1,097 | $1,046 |
| | | Associate | 46 | $474 | $600 | $1,055 | $752 | $759 | $637 |

# Section I: High-Level Data Cuts

## Cities
By Role

**2024 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2024 | 2023 | 2022 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Richmond VA** | Partner | 81 | $424 | $665 | $878 | $656 | $666 | $640 |
| | Associate | 56 | $320 | $406 | $553 | $457 | $485 | $395 |
| **Rochester NY** | Partner | 19 | $354 | $440 | $583 | $466 | $426 | $517 |
| **Sacramento CA** | Partner | 19 | $430 | $556 | $718 | $600 | $531 | $503 |
| | Associate | 14 | $318 | $397 | $431 | $374 | $344 | $316 |
| **Salt Lake City UT** | Partner | 59 | $291 | $395 | $458 | $404 | $396 | $390 |
| | Associate | 21 | $236 | $315 | $367 | $319 | $292 | $247 |
| **San Diego CA** | Partner | 102 | $316 | $491 | $904 | $637 | $625 | $661 |
| | Associate | 94 | $225 | $295 | $435 | $365 | $359 | $353 |
| **San Francisco CA** | Partner | 338 | $430 | $788 | $1,188 | $846 | $828 | $778 |
| | Associate | 265 | $395 | $595 | $849 | $639 | $591 | $553 |
| **San Jose CA** | Partner | 82 | $693 | $864 | $1,335 | $1,043 | $1,058 | $994 |
| | Associate | 70 | $495 | $600 | $921 | $729 | $735 | $647 |
| **San Juan PR** | Partner | 12 | $240 | $255 | $385 | $315 | $313 | $248 |