MICHAEL CONNETT, ESQ., CA Bar No. 300314
SIRI GLIMSTAD LLP
700 Flower St, Suite 1000
Los Angeles, CA 90017
213-376-3739 Telephone
646-417-5967 Facsimile

C. ANDREW WATERS, ESQ., CA Bar No. 147259
KAY REEVES, ESQ., *Pro Hac Vice*
WATERS, KRAUS & PAUL
11601 Wilshire Blvd, Suite 1900
Los Angeles, CA 90025
310-414-8146 Telephone
310-414-8156 Facsimile

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

|  |  |
|---|---|
| FOOD & WATER WATCH, et al., | Civ. No. 17-CV-02162-EMC |
| Plaintiffs, | **DECLARATION OF LINDA M. DARDARIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS** |
| vs. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al. | |
| Defendants. | |

I, Linda M. Dardarian, declare:

1.     I have personal knowledge of the facts contained in this declaration and, if called as a witness, am competent to testify as to those facts.

2.     I am currently the managing partner of the law firm Dardarian, Ho, Kan & Lee ("DHKL"), a 9-attorney firm located in Oakland, California formerly known as Goldstein, Borgen, Dardarian & Ho.  I am an attorney admitted to the practice of law before the Courts of the State of California, the United States District Courts for the Northern, Central and Eastern Districts of California, the United States Courts of Appeals for the First and Ninth Circuits, and the United States Supreme Court.

1
DECLARATION OF LINDA DARDARIAN

3.      DHKL is one of the premier plaintiffs' public interest class action law firms in the country.  Founded in 1972, DHKL represents plaintiffs against large companies and public entities in complex, class, and collective actions nationally in a variety of public interest practice areas, including employment discrimination, wage and hour enforcement, disability access, voting rights, consumer rights, and environmental justice.  DHKL has long been recognized as one of the top plaintiffs' firms in the United States.  In 1992, the *National Law Journal* ("A National Who's Who of the Top Lawyers in Employment Litigation") called the firm "[i]n a league of their own on the plaintiffs' side, handling the largest class actions nationwide."  Every year since 2004, DHKL partners have been named "Northern California Super Lawyers" by their peers, in recognition of their outstanding legal achievements and high ethical standards.  DHKL partners are rated "AV Preeminent" by Martindale Hubbell, indicating that our peers rank us at the highest level of professional excellence.

4.      I am a 1987 graduate of Berkeley Law, at University of California, Berkeley.  I have been a member of the California State Bar since 1987.  From September 1991 until December 1997, I was an associate at DHKL.  I became a DHKL partner in January 1998 and the managing partner in 2016.  Prior to joining DHKL, I worked at the law firms of Duane, Lyman & Seltzer and Carroll, Burdick & McDonough performing civil litigation and appeals.  A true and correct copy of my resume, which further details my relevant legal experience, is attached hereto as Exhibit A.

5.      While at DHKL, I have been involved in litigating, negotiating and supervising attorneys in litigating numerous civil rights, complex, and class action lawsuits affecting the public interest.  I have written and lectured on civil rights litigation subjects, including attorney's fees, and I frequently litigate attorneys' fee petitions for my firm, which is a predominantly contingency fee practice, depending on awards of our reasonable attorneys' fees, expenses and costs under civil rights and other public interest fee and cost shifting statutes.  I also serve as a mediator for the United States District Court for the Northern District of California's Alternative Dispute Resolution panel to help parties resolve attorneys' fees and other civil rights disputes.

DECLARATION OF LINDA M. DARDARIAN

6.    DHKL has successfully litigated and settled a variety of cutting-edge, complex class actions for which I was lead or co-lead counsel for the plaintiffs.  Among my significant cases are:

a.    *Munguia- Brown v. Equity Residential,* No. CV 16-01225-JSW-TSH (N.D. Cal.), a successful certified class action on behalf of approximately 200,000 California tenants of Equity Residential properties who were charged fees for late payment of rent, in which a two-week bench trial was held in June 2023, resulting in an April 2024 liability finding and declaratory relief holding that Equity's late fee is unlawful and ordering further post-trial briefing on injunctive relief and how much Equity owes its tenants in restitution, which has been pending before the Honorable Jeffrey S. White since August 2024.

b.    *Githieya, et al. v. Global Tel Link Corp.*, No. 1:157-CV-986-AT (N.D. Ga. 2022), a nationwide certified class action settlement on behalf of families and friends of prison inmates with prepaid telephone accounts with GTL, the largest provider of telecommunications services to prisons and jails in the United States allowing them to receive calls from inmates.  The settlement required GTL to pay up to $67 million in reimbursements for funds taken from prepaid accounts, and to reform its account practices.  In approving settlement, the court found that Class Counsel "are highly experienced in litigating class-action and complex cases" and our 2022 hourly rates were "reasonable and appropriate."  Order Granting Final Approval of Class Action Settlement and Awarding Attorneys' Fees, Costs and Expenses, ECF No. 369 at 17-18 (Aug. 30, 2022).

c.    *Muehe, et al. v. City of Boston*, No. CV-21-11080-RGS (D. Mass.), a certified class action settlement on behalf of persons with mobility disabilities, which reached a final settlement on November 2, 2021, requiring the City of Boston to spend in excess of $70 million on constructing or remediating an average of 1,630 curb ramps per year, which, in approximately 10 years, will result in the City's pedestrian right of way achieving complete compliance with the curb ramp accessibility requirements of federal law.  The presiding judge lauded the settlement as "a 'game changer' for the class (and, indeed, for all residents and visitors of the City)."  *See* 569 F. Supp. 3d 80, 84 (D. Mass. Nov. 2, 2021).

DECLARATION OF LINDA M. DARDARIAN

d.  *Nevarez, et al. v. Forty Niners Football Co. LLC, et al.*, No. 16-cv-07013-LHK (SVK) (N.D. Cal. 2020), a certified class action on behalf of people with mobility disabilities under the Americans with Disabilities Act, requiring the Forty Niners and City of Santa Clara to remediate over 2,600 disability access barriers within Levi's Stadium and creating a $24 million-dollar settlement fund, the largest class damages fund ever achieved in a disability access case against a private entity.

e.  *Lashbrook v. City of San Jose*, No. 20-cv-01236-NC (N.D. Cal. 2020), a certified class action under the Americans with Disabilities Act and Rehabilitation Act of 1973, which requires the City of San Jose to spend approximately $130 million over the next eighteen years building more than 27,000 accessible curb ramps in order to improve the accessibility of the City of San Jose's curb ramp system for people with mobility disabilities.  In approving the settlement, the Honorable Nathanael Cousins praised it as "remarkable" and a "service to the community."

f.  *Bazerman v. American Airlines, Inc.*, No. 1:17-CV-11297-WGY (D. Mass. 2019), a consumer class action for breach of contract, which reached a final settlement in 2019, and provided approximately $11 million in monetary relief to a nationwide class of American Airlines passengers who were systematically charged fees to check bags that under the terms of the passengers' contracts should have been checked for free.  Under the settlement, the vast majority of the 191,000 members of the settlement class received a full refund of their incorrectly charged checked bag fees, plus interest.  The remaining settlement class members received a refund of 75% of their bag check fees.  At the final approval hearing, Judge William G. Young of the District of Massachusetts praised the settlement and described the work of DHKL as "exemplary."

g.  *Hines v. City of Portland*, No. 3:18-cv-00869-HZ (D. Ore. 2018), a class action settlement for persons with mobility disabilities under the ADA and Rehabilitation Act requiring the City of Portland to construct or remediate 1,500 curb ramps per year over a twelve-year period, guaranteeing the construction or remediation of 18,000 curb ramps, at a cost of over $100 million.

DECLARATION OF LINDA M. DARDARIAN

h.    *Reynoldson v. City of Seattle*, No. 2:15-cv-01608-BJR (W.D. Wash. 2017), a class action settlement under the ADA and Rehabilitation Act requiring the City of Seattle to spend nearly $300 million constructing and remediating 1,250 curb ramps per year over an 18-year period, guaranteeing the construction or remediation of 22,500 curb ramps over the course of the settlement.

i.    *Willits v. City of Los Angeles*, No. CV 10-05782 CBM (MRW) (C.D. Cal. 2016), a class action brought on behalf of approximately 280,000 persons with mobility disabilities who have been denied access to the City of Los Angeles's pedestrian right of way, resulting in the largest settlement under the ADA and Rehabilitation Act of 1973. The *Willits* class settlement agreement requires the City of Los Angeles to fund significant access improvements to the City's pedestrian right of way over a thirty-year period and guarantees spending of more than $1.4 billion in improvements to existing pedestrian facilities, as well as unlimited amounts on newly constructed and altered facilities.

j.    *Olson v. Sutter Health*, No. RG06-302354 (Alameda Cnty. Super. Ct. 2008), a class action in which plaintiffs obtained a ten-year consent decree, now extended to twelve years, requiring Sutter Health to remove architectural barriers in all of its acute care and foundation facilities (clinics and doctor offices); install medical diagnostic and treatment equipment that is accessible to patients with mobility disabilities (*i.e.*, accessible examination chairs, tables, weight scales, mammography equipment, and lift equipment); revise its policies and procedures to increase accessible patient care services; ensure that the websites and mobile applications, including telehealth platforms and programs, for Sutter Health and all of its affiliates are accessible to individuals who are blind, low vision, deaf, hard of hearing, or have other disabilities; and train medical staff to ensure that all services and information are fully and equally accessible to patients and visitors with disabilities.

k.    *Lin v. Siebel Software Systems, Inc.*, No. CIV 435601 (San Mateo Cnty. Super. Ct. 2007), a California class action settlement on behalf of software engineers, recovering $27.5 million in unpaid overtime wages.

5

DECLARATION OF LINDA M. DARDARIAN

l.    *Lane v. State of Tennessee*, No. 3:98-0731 (M.D. Tenn. 2005), enforcing the rights of persons with mobility disabilities under the ADA and the United States Constitution to have access to the state courts in dozens of Tennessee counties by requiring architectural barrier removal and transfer of programs to accessible facilities.

m.    *Lieber, et al. v. Macy's West, Inc.*, No. C96-02955 MHP (N.D. Cal. 2001) and *Camalo, et al. v. Macy's West, Inc.*, No. C98-2350 MHP (N.D. Cal. 2001), consolidated class actions brought under the ADA, California Unruh Civil Rights Act, and the California Disabled Persons Act, resulting in a settlement that required Macy's to remove architectural barriers at all Macy's stores throughout California, improve customer service for people with mobility disabilities, and create what was at that time the largest class damages fund in any disability rights public accommodation class action.

n.    *Butler v. Countrywide Home Loans, Inc.*, No. BC 268250 (Los Angeles Cnty. Super. Ct. 2005), a $30 million California class action settlement on behalf of "account executives" recovering overtime wages, meal period compensation, unlawfully deducted wages, and other monetary relief.

o.    *San Francisco BayKeeper v. Dow Chemical Co.*, No. C97-01988 (Contra Costa Cnty. Super. Ct.), a Safe Drinking Water and Toxic Enforcement Act of 1986 action to protect a Contra Costa County water supply from discharges of carcinogens and reproductive toxins, resulting in a consent decree that required Dow to implement a wastewater treatment program and pay more than $6 million in monetary relief.

p.    *Citizens for a Better Environment v. Union Oil Co.*, No. C-94-0712 TEH (N.D. Cal.), and *Citizens for a Better Environment v. Exxon Oil Co.*, No. CV-S-94-1151 GEB (E.D. Cal.), Clean Water Act citizens suits that resulted in the adoption of wastewater treatment programs limiting refinery discharges of selenium into San Francisco Bay and requiring payment of millions of dollars to local foundations to fund projects dedicated to the health of San Francisco Bay and its ecosystem.

q.    *Disability Rights California v. County of Alameda*, 3:20-cv-05256-CRB (N.D. Cal.), a complex action that settled in November 2023, resolving claims that the County of

6

DECLARATION OF LINDA M. DARDARIAN

Alameda, California unnecessarily and illegally channeled people with mental health disabilities into psychiatric institutions instead of providing them with services they need to live in the community.

7.       DHKL also maintains a varied employment, consumer, and civil rights plaintiffs' class action practice. A sampling of some representative complex cases is as follows:

a.       *Rasmussen, et al. v. The Walt Disney Co.*, No. 19STCV10974 (Los Angeles Cnty. Super. Ct.), a gender pay discrimination class action on behalf of approximately 9,000 female employees of certain Disney-related companies, which recently settled for $43.25 million; preliminary approval of the class action settlement was granted on May 20, 2025.

b.       *Abrisamacar, et al. v. Oracle America, Inc.*, No. CIV 535490 (San Mateo Cnty. Super. Ct.) (May 29, 2025), a Private Attorneys General Act (PAGA) lawsuit on behalf of Oracle sales employees who challenged the company's sales compensation plan and commission practices, which settled for $15.5 million after two phases of a three-phase trial. In approving Class Counsel's attorneys' fees at our 2025 hourly rates, the Honorable Nicole S. Healy found that, based on her "own experience, both as a litigator for over twenty years in the Bay Area, and since then as a judge reviewing other motions and applications for attorneys' fees, … plaintiffs' counsel's rates are reasonable within the Bay Area legal community." Order Granting Plaintiffs' Motion to Approve PAGA Settlement, Exh.1 at 8-9. A true and correct copy of this order is attached hereto as Exhibit B.

c.       *United States of America ex rel. Denika Terry, et al. v. Wasatch Advantage Group, LLC*, et al. No. 2:15-cv-00799-KJM-SCR (Feb. 5, 2025), final approval of a $16.5 million class action and false claims settlement on behalf of approximately 2,600 tenants who receive Section 8 housing vouchers challenging defendants' excessive rent charges, resulting in class counsel being named 2025 California Lawyers of the Year by the *Daily Journal.*

d.       *Kaku v. City of Santa Clara*, No. 17-CV-308056 (Santa Clara Cnty. Super. Ct.), a voting rights case challenging the City of Santa Clara's at-large election system on behalf of Asian American voters under the California Voting Rights Act. The City was ordered to implement district-based elections starting with the November 2018 election.

7

DECLARATION OF LINDA M. DARDARIAN

e.      *Flowers v. Twilio, Inc.*, No. RG16804363 (Alameda Cnty. Super. Ct.), a certified class action challenging Twilio's practice of recording phone conversations without class members' consent in violation of the California Invasion of Privacy Act. This action resulted in a $10 million settlement that received final approval in June 2019.

f.      *Siciliano v. Apple, Inc.*, 2013-I-CV-257675 (Santa Clara Cnty. Super. Ct.), a certified class action challenging Apple's failure to ensure that products sold in its online store comply with the disclosure and consent provisions of California's Automatic Renewal Law. Following class certification, this case was resolved by a settlement providing $16 million to class members.

g.      *Garcia v. Oracle*, JCCP No. 004597 (Alameda Cnty. Super. Ct.), a wage and hour class action on behalf of quality assurance engineers, customer support engineers, and project managers who have worked for Oracle (and PeopleSoft) in California who were denied required overtime pay and proper off-duty meal periods. The case resulted in a $35 million settlement that was approved in 2012.

h.      *McClain v. Lufkin Industries, Inc.*, No. 97-cv-0063 (E.D. Tex.), a race discrimination class action on behalf of approximately 1,000 African American workers, alleging that Lufkin's subjective employment practices had an unlawful disparate impact on African Americans in initial job assignments and promotions. I was one of the DHKL lawyers representing the plaintiff class in this action. Litigated over a 13-year period including trial and multiple appeals, final judgment issued in 2010. It included a permanent injunction prohibiting Lufkin from continuing to discriminate against African American workers and requiring Lufkin to implement objective and non-discretionary promotion procedures, and provided more than $10.5 million in monetary relief.

i.      *Bullock v. Automobile Club of Southern California*, No. 01CC09035 (C.D. Cal.), a federal opt-in collective action and California class action for Sales Agents seeking overtime compensation, resulting in a $19.5 million settlement that was approved in December 2004.

DECLARATION OF LINDA M. DARDARIAN

j.      *Butler v. Home Depot*, No. C94-4335-SI (N.D. Cal.), a gender discrimination class action, for which I was among class counsel, challenging defendant's job application, assignment, promotion, training and compensation practices, and which resulted in a consent decree covering employees in Home Depot's western division.  The settlement, reached in 1997, provided $87.5 million in monetary relief and extensive injunctive relief expanding employment opportunities for the class of female employees and applicants.

k.      *Shores v. Publix, Inc.*, No. 95-1162-CIV-T-25E (M.D. Fla.), a gender discrimination class action, in which I was among class counsel, obtaining a companywide consent decree providing extensive injunctive relief to improve assignment, training, compensation and promotion opportunities for female employees, and payment of $92 million in monetary relief.

l.      *Kraszewski v. State Farm General Ins. Co.*, No. C-79-1261-TEH (N.D. Cal.), a gender discrimination class action brought on behalf of women who were denied positions as insurance agents, which resulted in over $200 million in monetary relief to the class and extensive injunctive relief.  I was among class counsel on this action as well.

m.      *Stender v. Lucky Stores*, No. C-88-1467 MHP (N.D. Cal.), a gender discrimination class action on behalf of female employees of Lucky Stores in Northern California, in which I was among class counsel.  The Consent Decree entered in this case provided for extensive changes to Lucky's personnel and promotion practices and resulted in monetary relief of approximately $80 million.

n.      *Haynes v. Shoney's, Inc.*, No. 89-30093 RV (N.D. Fla.), a nationwide class action on behalf of African American employees of Shoney's Restaurants.  The consent decree settling the case provided $132.5 million in monetary relief as well as extensive injunctive relief.  Subsequent to the settlement, the University of Georgia Press published a book describing this action, S. Watkins, *The Black O:  Racism and Redemption in an American Corporate Empire* (1997).

DECLARATION OF LINDA M. DARDARIAN

o.    *Ridgeway v. Denny's, Inc.*, No. C-93-20202 JW (N.D. Cal.), a statewide class action on behalf of African American customers of Denny's Restaurants in California that was settled for $32.5 million in monetary relief and extensive injunctive relief.

8.    DHKL periodically (typically on an annual basis) establishes hourly rates for the firm's billing personnel.  DHKL establishes the rates based on prevailing market rates for attorneys and law firms in the San Francisco Bay Area that have attorneys and staff of comparable skill, experience, and qualifications, doing similar work.  As managing partner of the firm, I do significant research on a regular basis to obtain information concerning market rates from other attorneys in the area that have similar experience doing similar work, from information that occasionally appears in the local press and national bar publications, in court orders awarding attorneys' fees in similar cases, and from surveys conducted by local attorneys' fees experts.

9.    In addition to litigating my firm's entitlement to attorneys' fees and costs in our own cases, my firm also litigates fee applications on behalf of other counsel.  Because of the importance of recovery of attorneys' fees awards in such cases to a plaintiffs' contingency practice firm such as mine, my firm keeps current on federal and California state law developments on the subject of attorneys' fees.  And, as a result of my background in trial and appellate practice, my role as managing partner in the firm, and my work on attorneys' fee matters for my own and other law firms, I am familiar with the prevailing market rates for leading attorneys in the San Francisco Bay Area legal community, both private and public interest, for both trial court and appellate litigation of important issues, particularly in complex litigation.

10.    My firm's billing rates are charged to and paid by defendants with whom we have settlement agreements that require monitoring, and are paid by the hour on a regular billing basis.  They are also the rates we claim in our fee applications in all of our contingent, fee shifting cases.  For years, DHKL's hourly rates have consistently been approved by federal and state courts within the Bay Area and elsewhere, including our 2025 rates in the *Abrisamacar* case, our 2022 rates in the *Githieya* case, our 2020 rates in the *Lashbrook* action, and our 2019 rates in the *Nevarez* action listed above, as well as in the matters of *Foster v. Advantage Sales & Marketing LLC*, Case No.

DECLARATION OF LINDA M. DARDARIAN

18-cv-07205-LB (N.D. Cal., May 28, 2020) (finding that GBDH's "billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work."), and *Flowers v. Twilio, Inc.*, Case No. RG16804363 (Alameda Cnty. Super. Ct., June 13, 2019) (finding that "the Class Counsel's 2019 hourly rates are reasonable and commensurate with the prevailing rates for class actions."). Fees using DHKL's 2023 rates were approved in the case of *Reni v. Reach*, Case No. RG 20072101 (Ala. Cty. 2023). Our 2024 hourly rates, including my then-current rate of $1,225 per hour, have also been paid by several defendants with whom we are monitoring implementation of settlement agreements in California, including the Forty Niners Football Company, City of Long Beach, City of San Jose, and Kaiser Permanente. DHKL's 2023 rates were paid by these entities (aside from Kaiser Permanente) as well as E*Trade, TransUnion, Equifax, and Experian. GBDH's 2025 rates represent a market-based increase from our 2024 rates.

11. Based on my research into the local market, I understand that hourly rates in this District have increased substantially over the past three years.

12. My 2025 hourly rate is $1275, as is the rate for my other senior partner who has 31 years of experience and my firm's "of counsel" (former partner) who has more than 40 years of experience. Our other partner rates are $1125 for lawyers with 19-20 years of experience, and $900 for lawyers with 10 years of experience. DHKL's 2025 hourly rates for associates with one to two years of experience are $550-600, with 4 years of experience is $700; and with 10 years of experience is $850. DHKL's 2025 hourly rates for law clerks is $475, and for paralegals are $425 to $475. These rates are consistent with, if not lower than, the rates charged by comparable attorneys in the San Francisco Bay Area for work on important complex litigation. My firm's billing practices are similarly comparable to those of other attorneys in the San Francisco Bay Area and elsewhere in California.

13. I am familiar with the work and reputations of the attorneys in the firm of Lozeau Drury, from having worked with Richard Drury as co-counsel in environmental litigation and also from being a colleague doing similar work in the same community. I am very familiar with Mr. Drury's work. Mr. Drury is a highly respected attorney in complex environmental litigation with a track record of successful litigation as well as general expertise surrounding state and federal

DECLARATION OF LINDA M. DARDARIAN

environmental laws.  Based on my knowledge of his skills, tenacity and accomplishments, and of the skills, reputation and experience of other attorneys litigating environmental protection cases in California, it is my opinion that Lozeau Drury are leaders in this field.  In my opinion, his $1,244 rate is well in line with Bay Area rates.

14.    I am familiar with the work and reputations of the attorneys in the firm of the Law Office of Richard Pearl.  Mr. Pearl is the most respected and relied upon attorney in complex attorney fee litigation in California, with a track record of successful litigation as well as general expertise surrounding state and federal attorney fee laws.  As the author of the leading treatise on California Attorney Fee Awards published by the Continuing Education of the Bar (CEB), Mr. Pearl is the leading expert on attorney fees in the State of California.  Based on my knowledge of his skills, reputation, experience and accomplishments, and of the skills, reputation and experience of other attorneys litigating attorney fee cases in California, it is my opinion that Mr. Pearl is the pre-eminent leader in this field.  In my opinion, his $1,244 rate also is well in line with Bay Area rates.

15.    I have reviewed key pleadings and documents in this case and am familiar with the complex issues and significant results obtained by Plaintiffs in the litigation.

16.    I have reviewed the hourly rates requested by Plaintiffs' counsel, which include the following annualized hourly rates for each attorney.  I understand that the rates set forth for the attorneys in this paragraph are based on the Adjusted Laffey Matrix published by LSI and available at www.laffeymatrix.com, because it sets forth historic hourly rates on an annual basis. The Laffey Matrix rates are specifically designed as a tool for assessing legal fees in the Washington DC/Baltimore area and are generally significantly lower than Bay Area rates.  While some California Courts have relied on Laffey Matrix rates along with other information, (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 702), other courts have appropriately noted that the Laffey rates are generally lower than San Francisco Bay Area market rates, particularly for complex litigation.  (*Prison Legal News v. Schwarzenegger* (9th Cir. 2010) 608 F.3d 446, 454 (rejecting Laffey Matrix rates in favor of higher Bay Area rates).)  I understand that because this case requires the use of annualized hourly rates for each attorney, to simplify

12

DECLARATION OF LINDA M. DARDARIAN

calculation, Plaintiffs have chosen to rely on the lower Laffey rates for all attorneys except Michael Connett.  As discussed in the Declaration of Richard Pearl filed herewith, Plaintiffs multiplied the Laffey Matrix rates by 9% to account for the higher cost of living in the Bay Area. I understand that the Laffey Matrix is set to adjust again soon for the period of June 1, 2025-May 31, 2026, but even though Plaintiffs are submitting this fee petition during this upcoming period, they are using the Laffey Matrix's 2024-25 rates that will be outdated and presumably lower than the soon to be announced rates for the upcoming 2025-26 annual period.  I find the following rates to be reasonable and within the range of market rates charged by attorneys of comparable skill and experience in the Bay Area. Those rates are as follows:

    a.    C. Andrew Waters, the founding partner of Waters, Kraus, Paul & Siegel, in Los Angeles, California, who is a 1986 graduate of the University of Houston Law School.

        i.    2017: $900 per hour;

        ii.    2018: $942 per hour;

        iii.    2019: $974 per hour;

        iv.    2020: $980 per hour;

        v.    2021: $996 per hour;

        vi.    2022: $1002 per hour;

        vii.    2023: $1087 per hour;

        viii.    2024: $1152 per hour;

        ix.    2025: $1243 per hour.

    b.    Kay Gunderson Reeves, who graduated from the University of Texas Law School in 1991.

        i.    2019: $974 per hour;

        ii.    2020: $980 per hour;

        iii.    2021: $996 per hour;

        iv.    2022: $1002 per hour;

        v.    2023: $1087 per hour;

        vi.    2024: $1152 per hour;

DECLARATION OF LINDA M. DARDARIAN

vii.    2025: $1244 per hour.

c.    Christopher Nidel, who graduated from the University of Virginia Law School in 2003.

i.    2017: $747 per hour;

ii.    2018: $782 per hour;

iii.    2019: $809 per hour;

iv.    2020: $814 per hour;

v.    2021: $827 per hour;

vi.    2022: $833 per hour;

vii.    2023: $1087 per hour;

viii.    2024: $1152 per hour;

ix.    2025: $1244 per hour.

d.    Paralegals/Law Clerks.

i.    2017: $204 per hour;

ii.    2018: $214 per hour;

iii.    2019: $220 per hour;

iv.    2020: $221 per hour;

v.    2021: $224 per hour;

vi.    2022: $227 per hour;

vii.    2023: $245 per hour;

viii.    2024: $260 per hour;

ix.    2025: $281 per hour.

e.    Richard Pearl, a 1970 graduate of the University of California School of Law (formerly Boalt Hall). All of Mr. Pearl's work was done in 2025 at a rate of $1244 per hour.

f.    Richard Toshiyuki Drury, a 1990 graduate of the Yale Law School.  All of Mr. Drury's work was done in 2025 at a rate of $1244 per hour.

17.    I have reviewed the hourly rates requested by lead Plaintiffs' counsel, Michael Connett.  Mr. Connett is a 2011 graduate of Temple Law School, where he was a Beasley Scholar

14

DECLARATION OF LINDA M. DARDARIAN

and served as Editor-in-Chief of the *Temple Law Review*.  I conclude that Mr. Connett's unique skills, experience and knowledge in the highly technical and complex issues in this case merit an upward adjustment from the standard rates set forth in the Laffey Matrix.  Mr. Connett was a sixth-year associate when he began work on this case in 2017.  However, Mr. Connett conceived of this case and served as lead counsel throughout this case, and performed sophisticated duties more typical of a junior partner than a senior associate.  After graduating law school, Mr. Connett served as a judicial clerk for two federal judges.  From 2011 to 2012, he served as a law clerk to Judge Franklin Van Antwerpen of the United States Court of Appeals for the Third Circuit, and from 2012 to 2013 he served as a law clerk to Judge Michael Baylson of the United States District Court for the Eastern District of Pennsylvania.  As discussed in his declaration filed herewith, Mr. Connett has extensive experience in toxic tort litigation, including several cases involving asbestos, benzene, pesticides, and perfluorinated chemicals.  Particularly relevant to this action, Mr. Connett has extensive knowledge of fluoride issues, which is highly unusual for an attorney.  As set forth in Mr. Connett's declaration, prior to going to law school, Mr. Connett spent 8 years researching fluoride issues for the American Environmental Health Studies Project (AEHSP), and its affiliated organization Fluoride Action Network, where he served as Project Manager.  He has reviewed thousands of papers on fluoride from digital and non-digital archives, including the libraries of Cornell University, Dartmouth College, Havard University, St. Lawrence University, and the University of Vermont.  He compiled and published an online "Health Effects Database," which provided references to, and quotations from, published studies on fluoride toxicology spanning over 100 years.  Mr. Connett has authored and/or co-authored

DECLARATION OF LINDA M. DARDARIAN

four papers on the health effects of fluoride that have been published in peer-reviewed scientific literature.[1,2,3,4]

18.    Due to Mr. Connett's highly unusual and unique qualifications and duties in this action, I conclude that the following annualized hourly rates are appropriate for his outstanding work in this matter.  I find the following rates for Mr. Connett to be reasonable and within the range of market rates charged by attorneys of comparable skill and experience in the Bay Area:

        i.    2016: $663 per hour;

        ii.    2017: $693 per hour;

        iii.    2018: $809 per hour;

        iv.    2019: $814 per hour;

        v.    2020: $826 per hour;

        vi.    2021: $827 per hour;

        vii.    2022: $833 per hour;

        viii.    2023: $904 per hour;

        ix.    2024: $957 per hour;

        x.    2025: $1033 per hour.

19.    My conclusion that the rates claimed by Plaintiffs' counsel are reasonable and within the range of Bay Area market rates charged by attorneys and paralegals of comparable skill and experience is based on my own firm's rates and my knowledge of the legal market.  They are also

---

[1] Neurath C., Limeback H., Osmunson B., **Connett M.,** Wells C.R. Resolving Questions About the Validity of the CDC's Fluorosis Data. *JDR Clin Trans Res.* 2019 Oct;4(4):310-311. doi: 10.1177/2380084419871932. Epub 2019 Aug 22. PMID: 31437080.

[2] Neurath C., Limeback H., Osmunson B., **Connett M.,** Kanter V., Wells C.R. Dental Fluorosis Trends in US Oral Health Surveys: 1986 to 2012. *JDR Clin Trans Res.* 2019 Oct;4(4):298-308. doi: 10.1177/2380084419830957.  Epub 2019 Mar 6. PMID: 30931722.

[3] Neurath C., Beck J.S., Limeback H., Sprules W.G., **Connett M.,** Osmunson B., Davis D.R. Limitations of fluoridation effectiveness studies: Lessons from Alberta, Canada. *Community Dent Oral Epidemiol.* 2017 Dec;45(6):496-502. doi: 10.1111/cdoe.12329.  Epub 2017 Oct 10. PMID: 28994462.

[4] **Connett M.P.** Vulvar Paget's disease: Recovery without surgery following change to very low-fluoride spring and well water. *Fluoride* 2007 Apr-June;40(2):96-100.

16

DECLARATION OF LINDA M. DARDARIAN

lower than those charged by other California firms for lawyers of similar years of practice, background, and skill, who are knowledgeable and experienced in complex public interest cases.

20.     I understand that a lodestar multiplier is appropriate under the Toxic Substances Control Act (TSCA") to account for "public benefit and delay in receipt of payments." (*Env't Def. Fund, Inc. v. Env't Prot. Agency*, 672 F.2d 42, 60 (D.C. Cir. 1982).)  While multipliers may no longer be available in federal court to account for contingent risk (*City of Burlington v Dague*, 505 U.S. 557 (1992)), multipliers remain appropriate to compensate counsel for superior work, excellent results obtained, broad public benefit, and delay in payment.  (*Perdue v Kenny A.*, 559 U.S. 542, 553 (2010); *Staton v Boeing Co.*, 327 F.3d 938 (9th Cir. 2003); *Vizcaino v Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); *In re Washington Pub. Power Supply Sys. Sec. Litig.* 19 F.3d 1291 (9th Cir. 1994)).  In light of the almost nine-year delay in payment, the superior work performed, and the clear public benefit provided by this case, which is catalyzing change around the country, in my opinion, the claimed multiplier of 2.0 on Plaintiffs' lodestar fee is reasonable.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this Declaration was executed this 31st day of May, 2025, in Oakland, California.

Linda M. Dardarian
Linda M. Dardarian

17

DECLARATION OF LINDA M. DARDARIAN

# EXHIBIT A

## <u>RESUME</u>

**LINDA M. DARDARIAN**
Dardarian Ho Kan & Lee
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 763-9800 (phone)
(510) 835-1417 (fax)
ldardarian@dhkl.law

## <u>EDUCATION</u>

**University of California, Berkeley School of Law (Berkeley Law),** J.D., 1987.
**Activities:**  Notes & Comments Editor, <u>Berkeley Women's Law Journal</u>, 1985-87; Summer Grants Administrator, Berkeley Law Foundation, 1986-87.

**California State University, Chico,** B.A., Political Science and American History, 1983, *magna cum laude* and with highest honors.

## <u>PROFESSIONAL EXPERIENCE</u>

**Dardarian Ho Kan & Lee** (formerly Goldstein, Borgen, Dardarian & Ho, Saperstein, Goldstein, Demchak & Baller, and Saperstein, Seligman, Mayeda & Larkin), Oakland, CA
   January 1998 to present – Partner
   September 1991 to December 1997 – Associate.

**Duane, Lyman & Seltzer**, Berkeley, CA, June 1988 to September 1991 – Associate, specializing in law and motion practice in state and federal courts.

**Carroll, Burdick & McDonough**, San Francisco, CA, September 1987 to June 1988 - Associate, specializing in law and motion and appellate work.

## <u>BAR MEMBERSHIPS</u>

Bar of the State of California (1987), United States Supreme Court (1992), United States District Courts for the Northern, Central and Eastern Districts of California; United States Court of Appeals for the First and Ninth Circuits.

Member – Federal Bar Association, Disability Rights Bar Association.

## <u>AWARDS AND HONORS</u>

Appointed to the Mediation Panel of the United States District Court for the Northern District of California, November 2019.

"The Best Lawyers in America," Litigation: Labor & Employment, recognized each year from 2010 to the present.

607774.25

1

<u>Law & Politics Magazine</u>, Northern California Super Lawyer award, received each year from 2005 through the present.

Law Dragon, Top 500 Employment Lawyers, nationally, each year from August 2018 to the present.

2021 Elite Trial Lawyers Award Finalist, National Law Journal, for work in Disability Rights, May 2021.

Public Justice 2021 Trial Lawyer of the Year Award Nominee, in recognition of work in *Nevarez v. Forty Niners Football Co., et al.*, March 2021.

Public Justice 2017 Trial Lawyer of the Year Award Finalist, in recognition of work in *Willits v. City of Los Angeles*, June 2017.

Disability Leadership Award, World Institute on Disability, awarded October 2015.

<u>California Lawyer Magazine</u>, California Lawyer Attorney of the Year ("CLAY Award") for extraordinary achievement in Disability Rights, awarded 2014; also noted for extraordinary achievement in Disability Rights, December 2000.

<u>Law & Politics Magazine</u>, The Top 50 Women, Northern California Super Lawyers award, August 2009.

2007 Achievement Award, American Council of the Blind, for excellence in representing blind and visually impaired persons in obtaining access to technology.

2008 Access Award, American Foundation for the Blind, for representing blind and visually impaired persons in obtaining independent access to information through talking ATMs, tactile point of sale machines, alternative formats for printed materials, and accessible pedestrian signals.

Legal Aid At Work (formerly Legal Aid Society of San Francisco – Employment Law Center), June 1999 to present – member, Board of Directors.

Disability Rights Advocates, October 2007 to February 2020 – member, Board of Directors; Chair of Board of Directors, March 2015 to March 2018; Advisory Committee member – March 2020 to present.

World Institute on Disability, January 2008 to December 2015 – member, Board of Directors; Vice Chair of Board of Directors, 2013-2015.

Disability Rights Bar Association, January 2013 to January 2021 – member, Executive Committee; Vice Chair of Executive Committee, June 2015 to January 2021.

**PUBLICATIONS AND LECTURES**

Executive Co-Editor, Lindemann & Grossman, *Employment Discrimination Law*, 2008 Supplement (BNA) (4th Ed.);

Executive Co-Editor, Lindemann & Grossman, *Employment Discrimination Law* (BNA) (4th Ed. 2007);

607774.25

2

Executive Co-Editor, Lindemann & Grossman, *Employment Discrimination Law*, 2002 Supplement (BNA) (3d Ed. 2002);

Co-author, Discovery Chapter, Lindemann & Grossman, *Employment Discrimination Law,* 1998 and 2000 Supplements (BNA) (3d Ed.);

Co-author, Attorneys' Fees Chapter, *Wrongful Employment Termination Practice* (CEB) (2nd Ed. 1997);

Co-author, Discovery Chapter, Lindemann & Grossman, *Employment Discrimination Law* (BNA) (3d Ed. 1996);

Presenter, *The Americans with Disabilities Act Turns 30 – How Have Class Actions Fared?*, Impact Fund Class Action Conference, February 21, 2020;

Presenter, *Ethical Considerations in Representing Clients with Disabilities*, Disability Rights Bar Association Annual Conference, March 24, 2019;

Presenter, *Doctors without Barriers:  Achieving Accessible Health Care*, 2018 Jacobus tenBroek Disability Law Symposium, March 22, 2018;

Presenter, *Structured Negotiation:  A Winning Alternative to Lawsuits*, American Bar Association Dispute Resolution section meeting, March 29, 2017;

Presenter, *Digital Accessibility Legal Update*, California State University, Northridge Center on Disabilities' 32nd Annual Assistive Technology Conference, March 1 & 2, 2017;

Presenter, *War and Peace – The Saga of Willits v. City of Los Angeles, a Class Action Battled on Four Fronts with Historic Results*, Disability Rights Bar Association Annual Conference, April 1, 2016;

Presenter, *Digital Accessibility Annual Legal Update*, California State University, Northridge Center on Disabilities' 31st Annual International Technology and Persons with Disabilities Conference, March 23, 2016;

Presenter, *Litigation Strategy in Disability Rights Actions*, Disability Rights Bar Association Annual Conference, April 2014;

Presenter, *Digital Accessibility Annual Legal Update*, California State University, Northridge Center on Disabilities' 29th Annual International Technology and Persons with Disabilities Conference, March 2014;

Presenter, *Structured Negotiations, A Winning Strategy for Technology and Information Access*, 2014 Impact Fund Class Action Conference, February 2014;

Presenter, *Digital Accessibility: 2013 Legal Update*, and *Structured Negotiations: A Winning Strategy for Technology and Information Access,* California State University, Northridge, Center on Disabilities' Annual International Technology and Persons with Disabilities Conference, March 2013;

607774.25

3

Presenter, *Disability Rights Class Actions after Dukes v. Walmart*, Disability Rights Bar Association Annual Conference, April 2012;

Presenter, *Web Accessibility: the Role of Law*, California State University, Northridge, Center on Disabilities' Annual International Technology and Persons with Disabilities Conference, March 2012;

Lecturer, *Web Accessibility Under the ADA*, Law Seminars International, January 2012;

Lecturer, *Retainer Agreements and Attorney's Fees Recovery*, Berkeley Law, October 2010;

Instructor, *Trial Advocacy Workshop*, Stanford Law School, September 2010;

Lecturer, *New ADA Regulations for Public Accommodations*, Law Seminars International, September 2010 & June 2011;

Trainer, *Effective Direct Examination Skills*, Disability Rights California 2008 All Staff Training, September 2008;

Lecturer, *How to Assist Our Clients and Still Get Paid, a Re-Examination*, California Applicants' Attorneys Association Annual Convention, June 2007;

Lecturer, *Subjective Decision-making: Proper or Problematic?,* American Bar Association EEO Committee Mid-winter Meeting, March 2006;

Lecturer, *Of Course My Opinion Matters—I'm an Expert!,* American Bar Association Annual Meeting, Section of Labor & Employment Law, August 2005;

Lecturer, *Curveballs in EEO Litigation*, American Bar Association EEO Committee Mid-winter Meeting, April 2005;

Lecturer/Instructor, *Techniques for Effective Taking and Defending Depositions*, Bar Association of San Francisco Litigation Section Skills Seminar, February 2004;

Lecturer, *Attorney's Fees*, Impact Fund Title VII Class Action Conference, January 2004;

Lecturer, *The Year in Review:  Update of the Most Significant Fair Employment Cases,* Law Education Institute National CLE Conference, January 2004;

Lecturer, *How to Really Use Rule 30(b)(6) Depositions,* National Employment Lawyers Association Annual Convention, June 1999;

Lecturer, *Litigating Under Business & Professions Code § 17200*, California Employment Lawyers Association Chapter Meeting, May 1999;

Lecturer, *Attorney's Fees Litigation After <u>Dague</u>*, National Employment Lawyers Association Annual Convention, June 1993.

607774.25

4

**SIGNIFICANT LITIGATION EXPERIENCE AND NEGOTIATED SETTLEMENTS**

Since 1995, Ms. Dardarian has represented the American Council of the Blind, its various state affiliates, the American Foundation for the Blind, and many individuals nationwide, negotiating more than 50 non-litigated, groundbreaking settlements with some of the country's largest corporations to ensure that their information and services nationwide are accessible to and usable by individuals who are blind or have low vision. Highlights include:

Settlement agreements with Bank of America, Wells Fargo, Bank One/Chase, Citibank, American Express, Equifax, TransUnion and Experian, E*Trade, and other financial institutions to ensure that blind and low vision consumers have independent access to automated teller machines, and systemic access to websites, mobile applications, and printed materials including bank statements, mortgage information, and credit file disclosures.

Settlement agreements with national retail and mail-order pharmacies, including Wal-Mart, Caremark, CVS/pharmacy, Humana, Rite Aid, and Walgreens to establish nationwide programs to provide talking pill bottles and alternative formats nationwide to their pharmacy customers who are blind or have low vision.

Settlement agreements with some of the nation's largest retailers, including Wal-Mart, CVS, Rite Aid, Target, RadioShack, 7-Eleven, and Trader Joe's, to make their point-of-sale machines and websites accessible to blind consumers nationwide.

Settlement agreements with Major League Baseball to ensure access to MLB.com and all 30 club websites for blind baseball fans; with Weight Watchers to ensure that its online programs and weekly meeting printed materials are accessible to members who are blind or visually impaired; and with Cinemark Theatres to ensure that blind patrons have access to audio description of movie visual images.

Systemic settlement agreement with Kaiser Permanente to ensure that its blind and low vision patients throughout California have access to patient care information and services through the provision of talking pill bottles; braille, large print, audio, and other alternative formats for patient specific and general medical forms and documents; accessible websites, information and check-in kiosks, and mobile applications; training staff on provision of services to patients; and removal of architectural barriers affecting blind patients.

Settlement agreements with the City and County of San Francisco to install talking pedestrian signals throughout the City's pedestrian right of way for pedestrians who are blind or visually impaired, and with the University of California San Francisco Medical Center to remove architectural barriers and install accessible medical equipment on behalf of patients with mobility impairments.

Settlement agreement with the Golden State Warriors to provide legally-mandated wheelchair accessible seating throughout KP Arena in Santa Cruz, California, the venue for the Warriors' minor league team.

Ms. Dardarian's significant litigation experience includes the following:

Munguia-Brown, et al. v. Equity Residential, et al., No. CV 16-01225-JSW-TSH (N.D. Cal.) (bench trial victory in certified class action on behalf of 200,000 tenants of Equity Residential properties in California who have been charged one or more late fees of $50 or 5% of their monthly rental

amount for late payment of rent; court declared the late fee "null and void" for violating California Civil Code section 1671(d) and Unfair Competition Law, Cal. Business & Prof. Code § 17200); see 2024 WL 1530571 (N.D. Cal. Apr. 4, 2024) (Findings of Fact and Conclusions of Law); 2017 WL 4838822 (N.D. Cal. Oct. 23, 2017) (class certification order); 337 F.R.D. 509 (N.D. Cal. Feb. 18, 2021) (discovery order finding that defendants waived attorney work product protection); 2020 WL 6130887 (N.D. Cal. Oct. 19, 2020) (discovery order finding that defendants waived attorney-client privilege); 2019 WL 3779523 (N.D. Cal. Aug. 12, 2019) (order granting in part plaintiffs' motion for summary judgment); 2021 WL 4951460 (N.D. Cal. Oct. 25, 2021) (order expanding class action, dismissing defendant's extraneous debt claims against the class, and denying defendant's motion for summary judgment on its voluntary payment doctrine defense).

Nevarez, et al. v. Forty Niners Football Co., et al., No. 16-CV-07013-LHK (N.D. Cal.) (certified class action under the Americans with Disabilities Act and California's Unruh Civil Rights Act for injunctive relief and damages resulting from defendants' failure to build Levi's Stadium in compliance with disability access standards, resulting in a comprehensive settlement agreement requiring extensive, systemic barrier removal in the Stadium and its related parking lot and pedestrian right of way, policy changes to ensure that people with mobility disabilities may fully and fairly obtain accessible seating, and establishing a damages fund of $24 million, the largest ever in a disability access class action against a place of public accommodation); see 326 F.R.D. 562 (N.D. Cal. 2018).

Willits, et al. v. City of Los Angeles, No. CV-10-5782 CBM RZX (C.D. Cal.) (certified class action on behalf of all persons with mobility disabilities who have been denied access to pedestrian rights of way in the City of Los Angeles as a result of defendant's failure to provide and maintain accessible sidewalks and curb ramps throughout the City, resulting in a settlement valued in excess of $1.4 billion); see 925 F. Supp. 2d 1089 (C.D. Cal. 2013).

Lashbrook v. City of San Jose, No. CV-20-01236-NC (N.D. Cal) (certified class action settlement on behalf of persons with mobility disabilities, requiring the City of San Jose to spend in excess of $130 million on curb ramp construction and remediation over the course of a 12-year consent decree, which will result in the construction or remediation of nearly 2,000 curb ramps per year during the first ten years of the settlement; the presiding judge praised the settlement as "remarkable" and "a service to the community.").

Muehe, et al. v. City of Boston, No. CV-21-11080-RGS (D. Mass.) (certified class action settlement on behalf of persons with mobility disabilities, requiring the City of Boston to spend in excess of $70 million on constructing or remediating an average of 1,630 curb ramps per year, which, in approximately 10 years, will result in the City's pedestrian right of way achieving complete compliance with the curb ramp accessibility requirements of federal law; the presiding judge lauded the settlement as "a 'game changer' for the class (and, indeed, for all residents and visitors of the City)." See 569 F. Supp. 3d 80, 84 (D. Mass. 2021); 340 F.R.D. 229 (D. Mass. 2022).

Reynoldson, et al. v. City of Seattle, No. CV-15-01608 MJP (W.D. Wash.) (certified class action on behalf of all persons with mobility disabilities who have been denied access to pedestrian rights of way in the City of Seattle as a result of defendant's failure to provide and maintain accessible curb ramps throughout the City's pedestrian right of way, resulting in a settlement valued at approximately $300 million).

607774.25

6

Githieya, et al. v. Global Tel Link Corp., No. CV-15-00986-AT (N.D. Ga.) (certified class action on behalf of all persons nationwide who established an funded a prepaid account through GTL's interactive-voice response system and had the money in their account taken by GTL after a certain period of account inactivity, resulting in a settlement valued at $67 million).

Bazerman, et al. v. American Airlines, No. CV-17-11297-WGY (D. Mass.) (certified class action on behalf of American Airlines passengers who were charged to check bags that should have been free under governing contracts, resulting in an $11 million class settlement that provided full refunds plus interest or a 75% refund of incorrectly charged checked bag fees, depending on the nature of the claim, to approximately 191,025 class members; in approving the settlement, Judge William G. Young praised GBDH's work as "exemplary.").

Hines, et al. v. City of Portland, No. CV-18-00869-HZ (D. Or.) (certified class action on behalf of Portland's residents and visitors with mobility disabilities who have been denied full and equal access to the City's sidewalks and crosswalks due to the lack of legally-compliant curb ramps, resulting in a settlement valued at approximately $113 million; final approval granted in September 2018).

Balero, et al. v. Lumber Liquidators, No. CV 15-01005 JST (N.D. Cal.) (class action on behalf of California consumers who purchased laminate wood flooring products manufactured in China and sold by Lumber Liquidators, which Lumber Liquidators falsely advertised as compliant with California formaldehyde emission limits).

Ochoa, et al. v. City of Long Beach, CV 14-04307 DSF FFM (C.D. Cal.) (certified class action on behalf of persons with mobility disabilities who have been denied access to pedestrian rights of way in the City of Long Beach as a result of defendant's failure to provide and maintain accessible sidewalks and curb ramps throughout the City's pedestrian right of way, resulting in a settlement valued at approximately $200 million).

Greater Los Angeles Agency on Deafness, Inc., et al. v. Cable News Network, Inc., No. CV-11-3458 LB (N.D. Cal.) (class action on behalf of all persons in California who are deaf or hard of hearing and have been denied access to video content on CNN.com because of CNN's failure to provide captioning); see 2012 WL 99647 (N.D. Cal. Mar. 23, 2012), 742 F.3d 414 (9th Cir. 2014).

Bautista-Perez, et al. v. Holder, et al., No. C 07-4192 TEH (N.D. Cal.) (certified class action on behalf of 400,000 immigrants from El Salvador, Nicaragua and Honduras who have been overcharged by the US Government to re-register for Temporary Protected Status); see 2009 WL 2031759 (N.D. Cal. July 9, 2009), 2009 WL 1202261 (N.D. Cal. May 1, 2009).

Center for Self-Improvement and Community Development v. Lennar Corporation, et al., No. CGC07-465738 (San Francisco County Superior Court) (Proposition 65 citizen suit and tort claims against Lennar Corporation and related entities for generating dust containing asbestos, hexavalent chromium, and other hazardous materials during construction of housing in Bayview Hunters Point).

Olson, et al. v. Sutter Health, No. RG06-302354 (Alameda County Superior Court) (class action under the ADA and California disability access laws resulting in a 10-year Consent Decree requiring Sutter Health to remediate architectural barriers, install accessible medical equipment, and enhance policies and procedures to ensure accessible services for persons with mobility,

visual, hearing, or speech disabilities at all of its hospitals and clinics throughout Northern California).

Lane v. Tennessee, No. 3:98-0731 (M.D. Tenn.) (Americans with Disabilities Act case against State of Tennessee and various Tennessee counties for denying constitutionally guaranteed access to court proceedings to citizens with mobility impairments, resulting in architectural barrier removal from courthouses across the state of Tennessee); see 541 U.S. 509 (2004).

Butler v. Countrywide Home Loans, Inc., No. BC 268250 (Los Angeles County Superior Court) ($30 million class action under California wage and hour laws on behalf of "account executives" seeking overtime, meal period compensation, reimbursement of unlawfully deducted wages and other monetary relief).

Lin v. Siebel Software Systems, Inc., No. CIV 435601 (San Mateo County Superior Court) ($27.5 million class action under California wage and hour laws on behalf of software engineers, seeking unpaid overtime wages).

Lieber, et al. v. Macy's West, Inc., No. C96-02955 MHP and Camalo, et al. v. Macy's West, Inc., No. C98-2350 MHP (California statewide class actions under the Americans with Disabilities Act, California Unruh Civil Rights Act, and California Disabled Persons Act on behalf of persons with mobility disabilities, resulting in systemic injunctive relief requiring removal of architectural barriers at all Macy's stores in California and resulting in what was at the time the largest class fund in any disability rights public accommodation class action); see 80 F. Supp. 2d 1065 (N.D. Cal. 1999).

San Francisco BayKeeper v. Dow Chemical Company, No. C97-01988 (Safe Drinking Water and Toxic Enforcement Act of 1986 action to protect Contra Costa County water supply from discharges of carcinogens and reproductive toxins).

Citizens for a Better Environment v. Union Oil Co., Case No. C-94-0712 TEH (N.D. Cal.). See 861 F. Supp. 889 (N.D. Cal. 1994), aff'd, 83 F.3d 1111 (9th Cir. 1996), cert. denied, 519 U.S. 1101 (1997); 996 F. Supp. 934 (N.D. Cal. 1997) (citizens suit under the Clean Water Act to limit refinery discharges of selenium into San Francisco Bay). Listed as one of the year's top 10 environmental cases, California Lawyer Magazine, December 1995.

Citizens for a Better Environment v. Exxon Oil Co., Case No. CV-S-94-1151 GEB (E.D. Cal.) (citizens suit under the Clean Water Act to limit refinery discharges of selenium into San Francisco Bay).

Shores v. Publix Super Markets, No. 95-1162-CIV-T-25E (M.D. Fla.) (class action under Title VII challenging gender discrimination in defendant's job assignment, promotion, training and compensation practices, resulting in systemic improvements to job assignment and promotion procedures and more than $84 million in monetary relief); see 69 Empl. Prac. Dec. (CCH) ¶ 44,477, 87681 (M.D. Fla. 1996).

Butler v. Home Depot, No. C-94-4335 SI (N.D. Cal.) (class action under Title VII challenging gender discrimination in defendant's job application, assignment, promotion, training and compensation practices, resulting in systemic improvements to personnel practices and procedures and approximately $85 million in monetary relief); see 70 Fair Empl. Prac. Cas. (BNA) 51 (N.D. Cal. 1996); 984 F. Supp. 1257 (N.D. Cal. 1997).

607774.25

8

Pines, AARP, et al. v. State Farm General Ins. Co., No. SA CV 89-631 (C.D. Cal.) (nationwide ADEA collective action).

Stender v. Lucky Stores, Inc. No. C-88-1467 MHP (N.D. Cal.) (Title VII class action alleging gender discrimination in initial job placement, allocation of hours, movement from part-time to full-time employment, and promotion, resulting in systemic improvements to personnel policies and practices and in excess of $60 million in monetary relief); see 803 F. Supp. 259 (N.D. Cal. 1992).

Kraszewski v. State Farm General Ins. Co., No. C 79-1261 TEH (N.D. Cal.) (statewide Title VII sex discrimination class action resulting in the hiring or promotion of women into 50% of agent positions and approximately $250 million in monetary relief); see 38 Fair Empl. Prac. Cas. (BNA) 197 (N.D. Cal. 1985).

Allison v. Citgo Petroleum Corp., No. 96-30489, 151 F.3d 402 (5th Cir. 1998) (counsel for plaintiffs/appellants in petition for rehearing en banc, which resulted in court of appeal modifying and clarifying its original opinion).

Ketchum v. Moses, 24 Cal. 4th 1122 (2001) (counsel for amici curiae Asian Law Caucus, East San Jose Community Law Center, Employment Law Center, La Raza Centro Legal, The Impact Fund, and Golden Gate University School of Law's Women's Employment Rights Clinic in appeal to California Supreme Court establish the availability of contingent risk multipliers to the prevailing party in actions under California fee shifting statutes).

Cortez v. Purolator Products Air Filtration Company, 23 Cal. 4th 163 (2000) (counsel for amici curiae Asian Law Caucus, East San Jose Community Law Center, Employment Law Center, La Raza Centro Legal, The Impact Fund, and Golden Gate University School of Law's Women's Employment Rights Clinic in appeal to California Supreme Court to determine method of calculating restitution and disgorgement, application of class certification procedures, defenses and applicable statute of limitations in unlawful business practice cases under Cal. Business & Professions Code § 17200).

Crommie v. California Public Utilities Com'n, 840 F. Supp. 719 (N.D. Cal. 1994), aff'd in part sub. nom., Mangold v. Public Utilities Com'n., 67 F.3d 1470 (9th Cir. 1995) (counsel for amici curiae Employment Law Center, Equal Rights Advocates, Disability Rights Education Defense Fund, The Impact Fund, The Lawyers Committee for Civil Rights for the San Francisco Bay Area, and Mexican American Legal Defense and Education Fund regarding application of California substantive attorney's fees law to civil rights case filed in federal court).

607774.25

9

# EXHIBIT B

Xinying Valerian (SBN 254890)
xinying@valerian.law
Dan Gildor (SBN 223027)
dan@valerian.law
VALERIAN LAW, P.C.
2222 Harold Way
Berkeley, CA 94704
Tel:    (888) 686-1918
Fax:    (510) 982-4513

Laura L. Ho (SBN 173179)
lho@dhkl.law
James P. Kan (SBN 240749)
jkan@dhkl.law
Ginger L. Grimes (SBN 307168)
ggrimes@dhkl.law
DARDARIAN HO KAN & LEE
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel:    (510) 763-9800
Fax:    (510) 835-1417

Michael Palmer (*pro hac vice*)
mpalmer@sanfordheisler.com
Eli Watkins (*pro hac vice*)
ewatkins@sanfordheisler.com
SANFORD HEISLER SHARP MCKNIGHT, LLP
17 State Street, 37st Floor
New York, NY 10004
Tel:    (646) 402-5653
Fax:    (646) 402-5651

*Attorneys for Plaintiffs*

Electronically
**FILED**
By Superior Court of California, County of San Mateo
ON        05/29/2025
By      /s/   Correa, Haley
**Deputy Clerk**

Electronically
**RECEIVED**
5/12/2025
CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN MATEO**

| | |
|---|---|
| MARYAM ABRISHAMCAR and KAVI KAPUR,<br><br>Plaintiffs,<br><br>vs.<br><br>ORACLE AMERICA, INC. and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. CIV 535490<br><br>ASSIGNED TO HONORABLE NICOLE S. HEALY FOR ALL PURPOSES<br> NH<br>**[P~~ROPOSED~~] ORDER APPROVING PAGA SETTLEMENT AGREEMENT AND ENTERING FINAL JUDGMENT**<br><br><br>Date:  April 30, 2025<br>Time: 2:00 p.m.<br>Dept: 28 |

[PROPOSED] ORDER APPROVING PAGA SETTLEMENT AGREEMENT AND
ENTERING FINAL JUDGMENT

Case No. CIV 536490

On April 30, 2025, a hearing was held on the motion of Plaintiffs Maryam Abrishamcar and Kavi Kapur ("Plaintiffs") for approval of a settlement agreement pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq.* Valerian Law, P.C., Dardarian Ho Kan & Lee, and Sanford Heisler Sharp McKnight LLP appeared for Plaintiffs, and Sheppard, Mullin, Richter & Hampton LLP appeared for Defendant Oracle America, Inc. ("Defendant") (together with the Plaintiffs, the "Parties"). The Court having considered all papers filed and proceedings herein and otherwise being fully informed, and having made this Judgment which constitutes a final adjudication of this matter, and good cause appearing, the Court finds, orders, and adjudges as follows.

## FINDINGS AND CONCLUSIONS ON APPROVAL

### THE COURT NOW FINDS AND ORDERS AS FOLLOWS:

1. All terms used for purposes of this Order and Judgment, not otherwise defined, shall have the same meaning as given in the Private Attorneys General Act Settlement Agreement (the "Settlement") executed between the Parties on or around April 4, 2025.

2. Plaintiffs' Motion to Approve PAGA Settlement Agreement is GRANTED. The Settlement is ORDERED APPROVED in its entirety. The Court's order granting the motion is attached hereto as Exhibit 1. The Settlement Agreement is attached hereto as Exhibit 2. The terms of the Settlement Agreement are incorporated, and made part of this Order, as if copied herein, and shall be effective, implemented, and enforced as provided in the Settlement Agreement. The Parties to the Settlement are directed to effectuate its terms.

3. The Court finds that the Settlement is, in all respects, fair, reasonable, and adequate. Specifically, the Court finds that:

   (a) The Settlement was the result of extensive, arm's-length negotiations among the Parties;

   (b) The negotiations were fully informed by extensive investigation, discovery, motion practice and trial, which has provided the Parties with sufficient information to allow them to become intimately familiar with the strengths and weaknesses of the

representative claims, and allows the Court to act intelligently in reviewing the settlement;

(c) Plaintiffs' Counsel is experienced in similar class and representative litigation and strongly endorse the Settlement as an excellent result given the risks of an inferior outcome after judgment and appeal.

(d) The Gross Settlement Amount of $15,500,000 is fair, reasonable, and adequate, especially in light of the significant litigation risks detailed in Plaintiffs' Motion. Moreover, the Settlement is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of the state's labor laws.

4. The Labor Workforce and Development Agency ("LWDA") has been given notice of the Settlement. The Court finds that the Settlement has been submitted to the LWDA and that the LWDA has not sought to intervene or appear in this action. The Court finds and determines that Plaintiff's notice of the Settlement complied with the statutory requirements of PAGA. (Former Lab. Code, § 2699, subd. (l)(2) and (l)(4), amended by Stats.2016, c. 31 (S.B.836).)

5. The Court confirms approval of the Settlement as to the following group of individuals, collectively referred to as the "Aggrieved Employees":

> all persons who were employed by Oracle as sales personnel subject to an Incentive Compensation Plan or Agreement or were in a Incentive Compensation Plan or Agreement-eligible sales position in California during the period from July 24, 2014 to September 18, 2015 or the period from October 30, 2016 to February 9, 2018, consistent with the Court's Case Management Order No. 17. Employees who did not work for Defendant in California in either of those two time periods are not "Aggrieved Employees" as defined herein and therefore are not included within the scope of this Agreement.

6. The Court finds that the Gross Settlement Amount and the methodology to be used to calculate and pay the Aggrieved Employee PAGA Payments, in accordance with the Settlement, are fair and reasonable.

7. The Court approves the allocation and payment of $8,619,846.76 (the "PAGA Penalty Amount") as for the compromise of claims brought under PAGA, to be paid in accordance with the

3

terms of the Settlement. Under the terms of the Settlement, 75% of the PAGA Penalty Amount will be paid to the LWDA, and the remaining 25% of the PAGA Penalty Amount shall be distributed to Aggrieved Employees in accordance with the terms of the Settlement.

8.      The Court authorizes the Settlement Administrator to distribute the Gross Settlement Amount, in accordance with the terms of the Settlement.

9.      The Court finds that the requested attorneys' fees award of $6,200,000 (*i.e.* 40 percent of Gross Settlement Amount) is fair and reasonable, considering the relevant factors. Specifically, the Court finds that:

(a)      Plaintiffs' Counsel's requested attorneys' fee award is consistent with market rates for contingency fees in employment litigation;

(b)      Plaintiffs' Counsel's requested attorneys' fee award is within the ordinary range of fee percentages of common fund settlements approved by courts;

(c)      Plaintiffs' Counsel obtained an excellent result;

(d)      Plaintiff's Counsel are highly skilled and experienced in wage and hour representative and class actions, and the requested fee award falls well within the norm for attorneys with Plaintiff's Counsel's skills and depth of experience;

(e)      The Court further finds that the requested fee award is reasonable based on a lodestar cross-check. Plaintiffs' Counsel have expended $16,320.335.50 in lodestar fees using their customary and reasonable hourly rates through January 31, 2025. Accordingly, the Court finds that awarding $6,200,000 in attorneys' fees, which represents 38% of the lodestar, is presumptively reasonable under both the lodestar method *and* the percentage method for calculating fees is common fund cases.

10.      The Court further finds that Plaintiff's Counsel's litigation costs of $555,153.24 were reasonable and necessary to the prosecution of the case and consists of costs that are customarily reimbursed in costs awards or billed to non-contingency clients. The Court approves these costs in full.

[PROPOSED] ORDER APPROVING PAGA SETTLEMENT AGREEMENT AND      Case No. CIV 536490
ENTERING FINAL JUDGMENT

11. Accordingly, the Court approves and ORDERS payment of $6,200,000.00 for Plaintiffs' attorneys' fees and an additional $555,153.24 in costs, both to be paid from the Gross Settlement Amount, in accordance with the terms of the Settlement.

12. The Court finds that the requested service awards of $65,000 to Plaintiff Abrishamcar and $45,000 to Plaintiff Kapur are fair and reasonable, considering the relevant factors. Specifically, the Court finds that:

(a)    The two Plaintiffs incurred substantial risks, both financial and otherwise, in commencing and prosecuting a PAGA-only suit for civil penalties;

(b)    The two Plaintiffs spent significant time and effort over ten years of litigation to advance the enforcement goals of PAGA, including testifying multiples times in deposition and testifying in two phases of trial; and

(c)    The two Plaintiffs feared retaliation and experienced personal and professional difficulties in shouldering the responsibilities of service as the named plaintiffs.

13. Therefore, the Court approves payment of the service awards from the Gross Settlement Amount, in accordance with the terms of the Settlement.

14. The Court approves payment in the amount of up to $15,000 to the Administrator for Administration Expenses. This amount shall be paid be paid from the Gross Settlement Amount, in accordance with the terms of the Settlement.

15. Checks for the Aggrieved Employee PAGA Payments shall be valid for 180 days after issuance. Funds remaining from any checks for Aggrieved Employee PAGA Payments uncashed after 180 days will be disbursed *cy pres* to Bay Area Legal Aid.

16. The Court further finds that notice of the settlement is not required to be provided to Aggrieved Employees; however, the Court approves the letter attached hereto as "Exhibit 3," and the Administrator shall distribute the letter to Aggrieved Employees at the same time that it distributes the Aggrieved Employee PAGA Payments.

17. Plaintiffs are directed to submit a copy of this Order and Judgment to the LWDA in conformity with California Labor Code § 2699, subd. (l)(3).

[PROPOSED] ORDER APPROVING PAGA SETTLEMENT AGREEMENT AND                    Case No. CIV 536490
ENTERING FINAL JUDGMENT

## JUDGMENT

### THE COURT NOW ORDERS AND ADJUDGES AS FOLLOWS:

18.    IT IS HEREBY ORDERED in accordance with the Settlement that upon the Settlement's Effective Date, Plaintiffs, on behalf of the State of California, releases and discharges the Released Parties from the Released PAGA Claims as set forth in paragraph 5.1 of the Settlement. The period of the Released PAGA Claims shall be for the PAGA Release Period, *i.e.* July 24, 2014 to May 31, 2018.

19.    IT IS HEREBY ORDERED that final judgment be entered on the PAGA claims asserted in the First Amended Complaint in accordance with the terms of the Settlement and this Order.

20.    The Court retains exclusive and continuing jurisdiction over this Action for purposes of supervising, administering, implementing, interpreting, and enforcing this Order and Judgment, as well as the Settlement.

21.    Within thirty days of the check void date, the Parties are directed to file a joint status report attaching the Administrator's compliance declaration. If based on the joint status report the Court is satisfied that the appropriate payments have been made, the Court will close this case.

22.    This Order of Approval and Judgment is final for purpose of appeal and the Clerk is hereby directed to enter judgment thereon.

**IT IS SO ORDERED AND ADJUDGED.**

Electronically
**SIGNED**
By /s/ Healy, Nicole
05/29/2025

Dated: _____, 2025

_____
Hon. Nicole S. Healy
Judge of the Superior Court

6

# Exhibit 1

Xinying Valerian (SBN 254890)
xinying@valerian.law
Dan Gildor (SBN 223027)
dan@valerian.law
VALERIAN LAW, P.C.
2222 Harold Way
Berkeley, CA 94704
Tel:    (888) 686-1918
Fax:    (510) 982-4513

Laura L. Ho (SBN 173179)
lho@dhkl.law
James P. Kan (SBN 240749)
jkan@dhkl.law
Ginger L. Grimes (SBN 307168)
ggrimes@dhkl.law
DARDARIAN HO KAN & LEE
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel:    (510) 763-9800
Fax:    (510) 835-1417

Michael Palmer (*pro hac vice*)
mpalmer@sanfordheisler.com
Eli Watkins (*pro hac vice*)
ewatkins@sanfordheisler.com
SANFORD HEISLER SHARP MCKNIGHT, LLP
17 State Street, 37st Floor
New York, NY 10004
Tel:    (646) 402-5653
Fax:    (646) 402-5651

*Attorneys for Plaintiffs*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN MATEO**

| | |
|---|---|
| MARYAM ABRISHAMCAR and KAVI KAPUR,<br><br>Plaintiffs,<br><br>vs.<br><br>ORACLE AMERICA, INC. and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. CIV 535490<br><br>ASSIGNED TO HONORABLE NICOLE S. HEALY FOR ALL PURPOSES<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT**<br><br>Date:  April 30, 2025<br>Time: 2:00 p.m.<br>Dept: 28 |

1

On April 30, 2025, a hearing was held on the motion of Plaintiffs Maryam Abrishamcar and Kavi Kapur ("Plaintiffs") for approval of a settlement agreement pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq.* Xinying Valerian, James Kan and Michael Palmer appeared for Plaintiffs, and Lucky Meinz and Lowell Ritter appeared for Defendant Oracle America, Inc. ("Defendant") (together with the Plaintiffs, the "Parties"). The Court GRANTS the motion.

**A.    Background**

***1.    Procedural History***

Nearly ten years ago, on September 18, 2015, plaintiff Maryam Abrishamcar (Abrishamcar) filed this PAGA action against defendant Oracle America, Inc. (Oracle or defendant) alleging that it had violated the Labor Code in connection with commission sales compensation. Plaintiff Kavi Kapur (Kapur, and with Abrishamcar, plaintiffs) joined the lawsuit on October 30, 2017.

Since then, the court, the Honorable Marie S. Weiner (retired), conducted two (phase one and phase two) non-jury trials. On August 30, 2022, following the U.S. Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, Oracle moved to compel arbitration of the individual PAGA claims and to dismiss the representative claims. Judge Weiner denied Oracle's motion. The First District Court of Appeal reversed that decision and remanded the case to the trial court in an unpublished opinion, *Abrishamcar v. Oracle America, Inc.* (1st Dist. June 24, 2024) Case No. A167116. Upon Judge Weiner's retirement, the case was reassigned for all purposes to Department 28, the Honorable Nicole S. Healy.

The declarations submitted by plaintiffs and their counsel detail the lengthy history of this lawsuit. The court briefly summarizes that history based on those representations.

Throughout the pendency of the proceeding, the parties engaged in extensive motion practice and substantial discovery. The named plaintiffs were each deposed for two or more days, and each testified at trial, as did additional employees.

Oracle propounded 192 document requests, to which plaintiffs responded, producing over 5,600 pages of documents, including from other employees. (Declaration of Xinying Valerian

2

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT

[Valerian Decl.] iso Motion for Approval of PAGA Settlement, ¶ 15.) Oracle also served 56 requests for admission, multiple sets of form interrogatories, and twenty special interrogatories, as well as supplemental discovery requests. (*Id.*, ¶ 16.)

Plaintiffs propounded 499 requests for production, and Oracle produced over 14 gigabytes of data; and responded to ten sets of special interrogatories, and four sets of requests for admissions. Plaintiffs deposed Oracle's persons most knowledgeable for 25 days. (Valerian Decl., ¶ 17.) Plaintiffs also twice served *Belaire* notices, eventually identifying over 5,000 potentially aggrieved employees. (*Id.*, ¶ 13.)

The phase one bench trial took place over nine days, beginning in January 2019. The phase two trial took place beginning in November 2019, lasting eleven days. More than a dozen Oracle corporate witnesses, as well as the two named plaintiffs, and five other Oracle employees testified. (Valerian Decl., ¶ 20.) The parties introduced over 900 trial exhibits. (*Id.*, ¶ 21.) Following the close of the evidence, the court heard oral closing argument, and the parties submitted closing briefs. (*Id.*, ¶ 20.) The court issued proposed statements of decision for each phase of the trial, and reviewed and considered the parties' objections. (*Id.*, ¶¶ 24-25.)

In phase one, the court found Oracle liable as to three Labor Code sections and on the following theories: "(1) Oracle failed to provide employees with signed copies of commission contracts in violation of Labor Code section 2751(b); (2) in discrete instances Oracle failed to set forth the method by which commissions would be computed and paid in contracts with employees in violation of Labor Code section 2751(a); and (3) Oracle's mandatory confidentiality agreements prohibiting employees from discussing their wages violates Labor Code section 232." (Valerian Decl., ¶ 24.) In phase two, the court found Oracle liable as to three Labor Code sections, on the following theories: "(1) Oracle failed to provide employees with timely commission contracts at the start of their employment in a commission-eligible position in violation of Labor Code section 2751(a); (2) Oracle unlawfully took back paid wages from sales employees in violation of Labor Code section 221; and (3) Oracle failed to timely pay all incentive compensation wages in violation of Labor Code section 204." (*Id.*, ¶ 25.)

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT

In February 2024, before she retired, Judge Weiner issued a Final Statement of Decision After Phase One Court Trial and Final Statement of Decision After Phase Two Court Trial. The court held that plaintiffs had proven "violations of Labor Code sections 2751(a), 2751(b), 232, 204, and 221 in certain specified circumstances and failed to prove violations of Labor Code sections 201, 202, 203, 226, and 232.5." (Valerian Decl., ¶ 31.) The parties disputed how the court had ruled on the alleged violation of section 432.5. The parties and the court (Judge Healy) began to plan for a phase three trial that would focus on the penalties to be imposed and began conducting discovery relating to phase three. (*Id.*, ¶¶ 31-32.) Oracle also advised the court that it intended to renew its motion to compel arbitration. (*Id.*, ¶ 32.)

Thereafter, the parties re-engaged with the mediator, Michael E. Dickstein, which ultimately resulted in a mediator's proposal, which became the settlement now before the court. (Valerian Decl., ¶¶ 35-40.)

### 2.    *Settlement Terms*

According to the Motion, there are approximately 5,167 aggrieved employees who worked approximately 229,711 pay periods. The proposed settlement provides for a gross payment by Oracle of $15.5 million. (Valerian Decl., exh. 1, ¶ 3.1.) Of the gross settlement amount, $8,610,000 will be paid to the California Labor and Workforce Development Agency (LWDA) and the aggrieved employees, with the LWDA receiving 75% ($6,457,500) and the employees, 25% ($2,152,500). The settlement provides the aggrieved employees with an average PAGA payment of approximately $67.48 per pay period. (*Id.*, ¶ 3.3(a).)

The settlement agreement provides for service award payments to plaintiffs Abrishamcar ($65,000) and Kapur ($45,000). (Id., ¶ 3.3(b).) Plaintiffs' counsel has requested a fee and expense award of $6.2 million in fees, plus costs of $555,153.24. (*Id.*, ¶ 3.3(c); Valerian Decl., ¶¶ 68-69, 75.)

The settlement will be administered by Atticus Administration, which has submitted a declaration from its representative, Bryn Bridley, regarding its qualifications and experience. (Valerian Decl., exh. 2.) The payment to Atticus will not exceed $15,000. (Valerian Decl., ¶¶ 41-

4

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT

42.)

Plaintiffs have provided notice of the settlement to the LDWA as required by Labor Code, section 2699, subdivisions (l)(2) and (l)(4). (Valerian Decl., ¶ 44.)

### 3.    Legal Standards

In ruling on class action and PAGA settlements, this court has a duty to independently determine whether a settlement is fair, reasonable and adequate. (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 76-77, disapproved of on other grounds by *Turrieta v. Lyft, Inc.* (2024) 16 Cal.5th 66 [the "trial court should evaluate a PAGA settlement to determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws."]; *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129 ["'The court has a fiduciary responsibility as guardians of the rights of the absentee class members when deciding whether to approve a settlement agreement.'"]; *In re Microsoft I-V Cases* (2006) 135 Cal.App.4th 706, 723.)

Trial courts have broad discretion to determine the fairness of the settlement. Both the federal circuit courts and our Court of Appeal have adopted a mix of relevant considerations, including "[1] the strength of plaintiffs' case, [2] the risk, expense, complexity and likely duration of further litigation, [3] the risk of maintaining class action status through trial, [4] the amount offered in settlement, [5] the extent of discovery completed and the stage of the proceedings, [6] the experience and views of counsel, . . . and [7] the reaction of the class members to the proposed settlement." (*Dunk, supra*, 48 Cal.App.4th at p. 1801.) Further, "a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." (*Ibid.*)

The court has the following comments about the Motion and Notice:

- The parties should direct that funds from any uncashed checks go to their designated *cy pres* recipient, Bay Area Legal Aid.

- The void date for uncashed checks should be 180 days from mailing.

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT

- The parties shall clarify why the PAGA release period is more comprehensive than the PAGA periods defining aggrieved employees. (*Compare* Valerian Decl., exh. 1, Settlement Agreement, ¶ 1.3 [aggrieved employees are persons "employed by Oracle as sales personnel subject to an Incentive Compensation Plan or Agreement or were in an Incentive Compensation Plan or Agreement-eligible sales position in California during the period from July 24, 2014 to September 18, 2015 or the period from October 30, 2016 to February 9, 2018] *with id*., ¶ 1.20 [the PAGA release period runs from July 24, 2014 to May 31, 2018].)

- The parties should clarify how fees will be split among the law firms. (See Weil & Brown, Cal. Prac. Guide: Civ. Pro Before Trial (Rutter, June 2024 Update) ¶ 14:145.5: "Where several firms have rendered services on behalf of the class (or have filed separate actions), the division of fees 'should be resolved by the trial court before an award of attorney fees, rather than by co-liaison counsel afterwards.'")

Aside from these concerns, the court finds that the settlement is fair, reasonable, and adequate in view of PAGA's purposes.

At the hearing, Plaintiffs' counsel provided information that satisfied the court's questions. The Parties will comply with the Court's points one and two above.  With respect to point three, the time period for the identification of both the aggrieved employees and the release period were based on Judge Weiner's rulings in Case Management Order #17 filed on December 7, 2018. The Court suggests including a footnote in the notice to the employees to state that basis for the particular time periods in the definition of aggrieved employees and in the definition of the release period. Regarding the court's question about the fee split, Plaintiffs' counsel represented at the hearing that the law firms have a written agreement for a division of attorneys' fees based on lodestar to which Plaintiffs have consented. (See also Valerian Decl. ¶ 14.) These explanations are reasonable and sufficient to address the court's questions.

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT

**B.      Plaintiffs' Counsels' Request for Attorneys' Fees and Costs is Reasonable Under the Circumstances**

*1. Fees and Expenses Requested*

Plaintiffs are seeking a fee award of $6.2 million, or 40% of the gross settlement fund. (Valerian Decl., ¶ 61.) Plaintiffs have been represented by counsel from multiple law firms: Valerian Law; Kastner Kim; Sanford Heisler Sharp McKnight, LLP (Sanford Heisler); and Dardarian Ho Kan & Lee (Dardarian). All of plaintiffs' counsel are experienced in PAGA and class action litigation, focusing on employment disputes. (Valerian Decl., ¶¶ 83-96 [noting that Xinying Valerian was formerly an attorney with Sanford Heisler]; Declaration of Michael D. Palmer iso Motion [Palmer Decl.], ¶¶ 7-18; Declaration of James Kan iso Motion [Kan Decl.], ¶¶ 5-6, 8-9.)

Plaintiffs' counsel aver that they have collectively performed 22,526.5 hours of work in connection with this case over the approximately ten years that the matter has been pending. (Valerian Decl., ¶¶ 65, 67, 77-79.) Each firm provided summaries of the hours billed by their attorneys and other professionals, excluding those who billed less than 10 hours each. Valerian Law billed 2,957.1 hours for a total of $2,828,412.50 at 2025 billing rates. (*Id.*, ¶ 79.) Former counsel Kastner Kim will share in the fee award. Kastner Kim billed 428.9 hours for a total of $320,830.00. (*Id.*, ¶¶ 3, 62, 67.) Sanford Heisler billed 13,233.0 hours, for a total of $7,812,767.50 at their reported hourly rates. (Palmer Decl., ¶¶ 27-28.) Dardarian billed 5,907.5 hours, totaling $5,368,325.00 at 2025 hourly rates. (Kan Decl., ¶ 7.)

Valerian Law's hourly rates are $1,050 for attorneys with more than 17 years' experience, and $300-375 for support staff. Sanford Heisler's hourly rates range from $1,400 for attorneys with more than 20 years' experience to $300-$325 for support staff. Dardarian's hourly rates range from $1,275 for attorneys with 20 years' or more of experience to $425 for support staff. Based on the Laffey Matrix, these rates are generally consistent with those charged in the Bay Area, as adjusted based on federal locality pay tables. (Valerian Decl., ¶¶ 98, 100.)

Plaintiffs have also requested costs and expenses of $555,153.24. Plaintiffs' request is supported by summaries of expenses incurred in connection with the litigation. Such costs and

7

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT

expenses include expert witness and trial consultants' fees; court reporter fees and transcripts; ESI hosting, processing, and user access; court filing fees; private mediation fees; and travel expenses; expenses relating to the preparation and copying of trial exhibits; and other litigation expenses. (Valerian Decl., ¶¶ 69, 70, 75; Palmer Decl., ¶ 30; Kan Decl., ¶ 16.)

### *2. Legal Authority*

The "fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*); *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) "'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.'" (*PLCM Group*, *supra*, 22 Cal.4th at p. 1095, quoting *Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3d 999; see also *id.*, at p. 1004: "The reasonable hourly rate is that prevailing in the community for similar work.")

The California Supreme Court has endorsed the use of a lodestar cross-check as a way to determine whether the percentage allocated is reasonable. (*Lafitte v. Robert Half International (*2016) 1 Cal.5th 480, 503 (*Lafitte*).) In *Lafitte*, our Supreme Court stated: "If the multiplier calculated by means of a lodestar cross-check is extraordinarily high or low, the trial court should consider whether the percentage used should be adjusted so as to bring the imputed multiplier within a justifiable range, but the court is not necessarily required to make such an adjustment." (*Id.*, at p. 505.) Here, plaintiffs' counsel performed a lodestar crosscheck, which yielded a result of $16,320,260.50 at 2025 rates. (Valerian Decl., ¶ 65.) The requested fees total 40% of the gross settlement fund, resulting in a negative lodestar of 0.38. (MPA, at p. 21.) Plaintiffs' counsel notes that courts have approved attorneys' fee awards of 45% where the request results in a negative lodestar adjustment. (*Id.*, at pp. 19¬21.)

The court may rely on its own experience, both as a litigator for over twenty years in the Bay Area, and since then as a judge reviewing other motions and applications for attorneys' fees. Based on this experience, the court finds that plaintiffs' counsel's rates are reasonable within the

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT

Bay Area legal community. (See *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 587.) The court has also reviewed the invoices submitted by plaintiffs' counsel. The court agrees that the rates are reasonable. Further, the time spent appears reasonable given the number of parties, the length of the litigation, and the complexity of the proceedings, and that the case was taken on a contingency basis. As the California Supreme Court has explained, "'[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable.'" (*Ketchum, supra*, 24 Cal.4th at p. 1132, quoting *Rader v. Thrasher* (1962) 57 Cal.2d 244, 253.) Accordingly, the court finds that the fees are reasonable and awards plaintiffs' counsel $6.2 million in attorneys' fees. The court further awards plaintiffs' counsel $555,153.24 in expenses.

### C.    The Claims Administrator's Fee is Reasonable and Necessary

As noted above, Atticus Administration, LLC, the proposed claims administrator, has submitted a declaration from its representative, Bryn Bridley, regarding its qualifications and experience. (Valerian Decl., exh. 2.) Based on these representations, the court finds that Atticus Administration, LLC is an experienced third-party claims administrator (Valerian Dec., ¶ 42, exh. 2) and approves its retention.

Moreover, the "not to exceed" fee of $15,000 to be paid for claims administration is reasonable. (Valerian Decl., ¶¶ 41-42.) Therefore, the court approves the requested payment of up to $15,000 to Atticus Administration, LLC.

### D.    Plaintiffs' Request for Substantial Incentive Awards is Granted

Each of the named plaintiffs has requested a substantive incentive award: $65,000 to Ms. Abrishamcar and $45,000 to Mr. Kapur. Both named plaintiffs were actively involved in the litigation, including testifying in depositions and at the phase one and two trials. Both were concerned that their involvement in this litigation would affect their professional reputations and careers. (Valerian Decl., exh. 8 [Declaration of Maryam Abrishamcar iso Mot. (Abrishamcar Decl.)] ¶¶ ; and exh. 9 [Declaration of Kavi Kapur iso Mot. (Kapur Decl.) ¶¶ 15, 29-30.)

Ms. Abrishamcar initiated this lawsuit and has participated in this matter from the

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT

beginning. She avers that she assisted counsel with their investigation; responded to discovery requests; sat for two days of deposition testimony; testified at the phase one and two trials and attended many days of both trials; and also attended the mediation. (Abrishamcar Decl., ¶¶ 3, 9, 10, 14, 15, 19, 21, 23, 26.) In addition, she reports that she was concerned that her participation in this matter would affect her employability. Ms. Abrishamcar avers that defendant had included on their witness list someone from her then-current employer to attend the phase one trial, but that the court granted a motion to quash that subpoena. (*Id.*, ¶ 17.) Overall, Ms. Abrishamcar estimates that she spent hundreds of hours relating to this lawsuit over the ten-year period since its inception. (*Id.*, ¶ 29.)

Similarly, Mr. Kapur, who joined the case when the amended complaint was filed, avers that he assisted counsel with their investigation and in responding to discovery requests; sat for two-and-a-half days of deposition testimony; testified at the phase one and two trials; and attended the mediation. (*Id.*, exh. 9 [Declaration of Kavi Kapur iso Mot.] ¶¶ 10, 11, 12, 14, 17, 19, 21, 25.) Mr. Kapur stated that defendant had included on their witness list a custodian from his then-current employer to attend the phase one trial, but that the court granted a motion to quash that subpoena. (*Id.*, ¶ 15.) Overall, Mr. Kapur estimates that he spent hundreds of hours relating to this lawsuit in the eight-year period of his involvement in this matter. (*Id.*, ¶ 28.) Based on their declarations, the named plaintiffs' participation in this lawsuit was substantial and sustained over a lengthy period that included two phases of trial at which they each testified. Ultimately, the matter resulted in a significant settlement. Accordingly, the court finds that the requested incentive awards are appropriate under the facts and circumstances of this lawsuit, and grants the request for awards of $65,000 to Ms. Abrishamcar and $45,000 to Mr. Kapur.

\* \* \*

Having reviewed the papers filed in support of the settlement, the court finds that it is fair, reasonable, and adequate. The court will sign the final order and append this order, the settlement agreement, and the notice letter to employees.

10

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT

Dated: _____, 2025

_____
Hon. Nicole S. Healy
Judge of the Superior Court

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE PAGA SETTLEMENT